# EXHIBIT P

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NEXPOINT STRATEGIC OPPORTUNITIES
FUND,

        Plaintiff,

   v.

ACIS CAPITAL MANAGEMENT, L.P., U.S.
BANK, N.A., JOSHUA N. TERRY,
BRIGADE CAPITAL MANAGEMENT, L.P.,

        Defendants.

Case No. 1:21-cv-04384-GHW

---

**ACIS CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**AND FOR ATTORNEYS' FEES AND COSTS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Jonathan E. Pickhardt
Blair A. Adams
Misha Boutilier
51 Madison Ave., 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
jonathanpickhardt@quinnemanuel.com
blairadams@quinnemanuel.com
mishaboutilier@quinnemanuel.com

*Attorneys for Acis Capital Management, L.P.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

I. THE PARTIES AND THE GOVERNING CONTRACTS............................................. 2

 A. The Parties' Relationships ................................................................................ 2

 B. The Indenture And PMA Delimit NexPoint's Rights And Protect ACM .............. 3

II. NEXPOINT'S ALLEGATIONS ............................................................................... 3

III. PROCEDURAL HISTORY....................................................................................... 4

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ....................................................................................................................... 5

I. NEXPOINT LACKS A PRIVATE RIGHT OF ACTION TO PURSUE ITS IAA
 CLAIMS ............................................................................................................... 5

II. THE COURT SHOULD EXERCISE JURISDICTION OVER NEXPOINT'S
 REMAINING CLAIMS........................................................................................... 9

III. NEXPOINT'S REMAINING CLAIMS ARE DERIVATIVE AND MUST BE
 DISMISSED ......................................................................................................... 11

 A. NexPoint's Remaining Claims Are Derivative.................................................. 11

 B. NexPoint's Claims Do Not Meet Any Of The Four *Davis* Exceptions ............... 13

IV. NEXPOINT'S REMAINING CLAIMS ARE BARRED FOR ADDITIONAL
 REASONS ............................................................................................................ 17

 A. The Indenture's No Action Claims Bars NexPoint's Remaining Claims........... 17

 B. NexPoint's Remaining Tort Claims Must Be Dismissed As Duplicative ........... 18

 C. The Economic Loss Rule Bars NexPoint's Negligence And Conversion Claims 19

V. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE
 GRANTING LEAVE TO AMEND FOR A THIRD TIME WOULD BE FUTILE ........ 20

VI. THE DEFENDANTS ARE ENTITLED TO FEE SHIFTING........................................ 20

CONCLUSION.................................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.*,
   957 F. Supp. 1308 (S.D.N.Y. 1997)............................................................ 12, 16, 17

*Alfandary v. Nikko Asset Mgmt., Co.*,
   2019 WL 4747994 (S.D.N.Y. Sept. 30, 2019)................................................ 9, 11

*Basis Pac-Rim Opportunity Fund v. TCW Asset Mgmt. Co.*,
   124 A.D.3d 538 (1st Dep't 2015) ..................................................................... 19

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013)............................................................................... 8

*Bilinski v. Keith Haring Found., Inc.*,
   96 F. Supp. 3d 35 (S.D.N.Y. 2015), *aff'd in part*, 632 F. App'x 637 (2d Cir.) ......... 9

*BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l
   Ass'n*, 247 F. Supp. 3d 377 (S.D.N.Y. 2017)...................................................... 18

*City of Harper Woods Employees' Ret. Sys. v. Olver*,
   589 F.3d 1292 (D.C. Cir. 2009) ....................................................................... 13

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   70 N.Y.2d 382 (1987) ..................................................................................... 18

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992).............................................................................. 18

*CVS Pharmacy, Inc. v. Press Am., Inc.*,
   377 F. Supp. 3d 359 (S.D.N.Y. 2019)................................................................ 19

*Davis v. Scottish Re Grp. Ltd.*,
   160 A.D.3d 114 (1st Dep't 2018) ................................................................. 13, 17

*Douglass v. Beakley*,
   900 F. Supp. 2d 736 (N.D. Tex. 2012) ................................................................ 8

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011)............................................................ 18, 19

*Fei Hang Chen v. Jing Fong Rest., Inc.*,
   582 F. Supp. 2d 602 (S.D.N.Y. 2008)................................................................ 10

*Fluor Corp. v. Citadel Equity Fund Ltd.*,
   2011 WL 3820704 (N.D. Tex. Aug. 26, 2011) ........................................................ 21

*Goldenson v. Steffens*,
   2014 U.S. Dist. LEXIS 201258 (D. Me. 2014) .......................................................... 8

*Hajny v. Best Roofing of N.J., Inc.*,
   2011 WL 2493737 (S.D.N.Y. June 22, 2011) ......................................................... 10

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013) .................................................................... 19

*KDH Consulting Grp. LLC v. Iterative Capital Management L.P.*,
   2020 WL 7251172 (S.D.N.Y. June 29, 2020) ....................................................... 6, 8

*LeeHim v. New York City Dep't of Educ.*,
   2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017) ........................................................... 9

*MBIA Insur. Corp. v. Tilton*,
   2021 WL 3124298 (Bankr. D. Del. July 23, 2021) ................................................. 12

*Mutter v. Eastern and Midlands Railway*,
   38 Ch.D 92 (Eng. Ct. App. 1888) .......................................................................... 15

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   772 F.3d 740 (2d Cir. 2014) .................................................................................. 11

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
   439 F. Supp. 3d 275 (S.D.N.Y. 2020) .................................................................... 19

*Norddeutsche Landesbank Girozentrale v. Tilton*,
   149 A.D.3d 152 (1st Dep't 2017) .......................................................................... 19

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   19 N.Y.3d 584 (2012) ...................................................................................... 12, 20

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
   -- F. Supp. 3d --, 2021 WL 2403088 (S.D.N.Y. June 11, 2021) .......................... 5, 20

*In re Old Carco LLC*,
   509 F. App'x 77 (2d Cir. 2013) ............................................................................... 7

*Omega Overseas Partners, Ltd. v. Griffith*,
   2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ..................................................... 6, 7, 8

*In re Optimal U.S. Litig.*,
   813 F. Supp. 2d 351 (S.D.N.Y. 2011) .................................................................... 12

iii

*Parnell v. Tremont Capital Mgmt. Corp.*,
  2007 WL 528821 (S.D.N.Y. Feb. 16, 2007) .......................................................... 22

*In re Part 60 Put-Back Litig.*,
  146 A.D.3d 566 (1st Dep't 2017) ........................................................................ 17

*Prudential Assurance Co. Ltd. v. Newman Industries Ltd. (No. 2)*,
  [1982] Ch. 204 (Eng. Ct. App. 1981) ............................................................... 16, 17

*RLI Ins. Co. v. King Sha Grp.*,
  598 F. Supp. 2d 438 (S.D.N.Y. 2009) .................................................................. 19

*Saratoga Advantage Tr. Tech. & Commc'ns Portfolio v. Marvell Tech. Grp., Ltd.*,
  2016 WL 4364593 (N.D. Cal. Aug. 16, 2016) ...................................................... 16

*Schweitzer v. Dep't of Veterans Affs.*,
  23 F. App'x 57 (2d Cir. 2001) ............................................................................. 9

*Shenwick v. HM Ruby Fund, L.P.*,
  106 A.D.3d 638 (1st Dep't 2013) ........................................................ 13, 14, 15, 16

*Spinelli v. Nat'l Football League*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ..................................................................... 19

*STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*,
  149 A.D.3d 667 (1st Dep't 2017) ........................................................................ 18

*Sudler v. City of New York*,
  689 F.3d 159 (2d Cir. 2012) ............................................................................... 20

*Tobia v. United Grp. of Cos., Inc.*,
  2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) ............................................... 6, 7, 8

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ..................................................................................... 5, 6, 7, 8

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
  549 U.S. 443 (2007) .......................................................................................... 20

*In re Tyco Int'l*,
  340 F. Supp. 2d 94 (D.N.H. 2004) ......................................................... 14, 15, 16

*State ex rel. Udall v. Colonial Penn Ins. Co.*,
  812 P.2d 777 (N.M. 1991) .................................................................................. 8

*Voss v. Sutardja*,
  2015 WL 349444 (N.D. Cal. Jan. 26, 2015) ........................................................ 16

*Winn v. Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007)............................................................................ 14

*Zohar CDO 2003-1 Ltd. v. Patriarch Partners LLC*,
    2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021)....................................... 2, 11, 12, 13, 14, 19, 20

## **Rules / Statutes**

12 U.S.C. § 611 *et seq.*................................................................................................................ 9

15 U.S.C. § 80b-1 *et seq.*.. ......................................................................................................... 1

15 U.S.C. § 80b-6 ............................................................................................................... 6, 7

15 U.S.C. § 80b-15 .................................................................................................................. 7

15 U.S.C. § 80b-15(b)....................................................................................................... 5, 6, 8

28 U.S.C. § 1367 .................................................................................................................... 9

28 U.S.C. § 1367(c)(3)........................................................................................................... 9

Fed. R. Civ. P. 9(b) ............................................................................................................... 14

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 5

Fed. R. Evid. 201(b)(2)............................................................................................................ 7

## **Other Authorities**

K. W. Wedderburn, *Shareholders' Rights and the Rule in Foss v. Harbottle*, 1957
    Cambridge L.J. 194................................................................................................... 15, 16

T. L. Hazen, 6 *Treatise on the Law of Securities Regulation* (2021) ............................................ 6

Defendant Acis Capital Management, L.P. ("ACM") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff NexPoint Strategic Opportunities Fund's ("NexPoint") Second Amended Complaint ("Complaint" or "SAC," Dkt. 42).

## PRELIMINARY STATEMENT

This action is the latest in a series of meritless lawsuits brought by entities functionally-controlled by NexPoint's owner, James Dondero, whose history of vexatious litigation is well-documented.[1] NexPoint's Complaint advances scattershot and conclusory allegations against ACM for alleged mismanagement of an investment fund called Acis CLO 2015-6 Ltd. ("Acis CLO 6"). Despite filing *three* separate complaints, NexPoint's lawsuit remains riddled with standing defects and substantive holes that are fatal to all claims.

The Complaint is anchored by a claim under the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b-1 *et seq.*, for which NexPoint lacks a private right of action under settled Supreme Court precedent. As for NexPoint's remaining state law causes of action, they are all predicated on harm allegedly incurred by Acis CLO 6, and felt only derivatively by NexPoint through its minority investment in the Subordinated Notes. Derivative claims, however, are broadly prohibited under the applicable Cayman Islands law, and the exceptions to that rule asserted by NexPoint are facially deficient. Even if NexPoint could muster standing for its remaining state law claims, they would be barred by a laundry-list of substantive defects for which NexPoint has no answer. For example, all of NexPoint's remaining claims are barred by the no action clause

---

[1] *See* Transcript Ruling, *In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj-11 (Bankr. N.D. Tex. Jun. 25, 2021), Dkt. 2500 at 109:17–22 (observing "vexatious litigation behavior"); *id.*, 2021 WL 3418657, at *12 (Bankr. N.D. Tex. Aug. 4, 2021) (finding Dondero in contempt of bankruptcy order for bringing "frivolous" lawsuit).

appearing in Acis CLO 6's governing indenture (the "Indenture," Ex. A).[2]  Meanwhile, NexPoint's

remaining tort claims are barred as duplicative of its breach of contract claim, and its negligence

and conversion claims are barred by the economic loss rule.

NexPoint has no way to cure any of these fatal flaws.  NexPoint's Complaint should be

dismissed with prejudice because any additional amendment would be futile and NexPoint should

be ordered to reimburse Defendants for the cost of defending this meritless lawsuit in accordance

with Section 5.15 of the Indenture.

**STATEMENT OF FACTS**

I.  **THE PARTIES AND THE GOVERNING CONTRACTS**

A.  **The Parties' Relationships**

Acis CLO 6 is an investment fund organized in the Cayman Islands and administered by

independent Cayman Islands-based directors.  Indenture § 7.4.  ACM acts as portfolio manager

and investment adviser for Acis CLO 6 under that fund's Portfolio Management Agreement (the

"PMA," Ex. B).  SAC ¶¶ 37, 42, 44.  ACM originally was majority-owned by Mr. Dondero, but

was transferred to one of his co-founders, Defendant Joshua N. Terry, following an involuntary

bankruptcy.  *Id.* ¶ 47.  ACM appointed Defendant Brigade Capital Management, L.P. ("Brigade")

to serve as a sub-advisor.  *Id.*  U.S. Bank serves as Acis CLO 6's Trustee under the Indenture.  *Id.*

¶ 40.  Acis CLO 6 issued notes to third-party investors, including the Subordinated Notes held by

---

[2]  All Exhibits cited herein are attached to the Declaration of Jonathan E. Pickhardt, dated January
27, 2021, submitted with this motion.  "When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced in the complaint, documents that
the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the
plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Zohar
CDO 2003-1 Ltd. v. Patriarch Partners LLC*, 2021 WL 4460547, at *7 (S.D.N.Y. Sept. 29, 2021)
(quotations omitted); *see also id.* at *16 (finding that the Zohar Funds' indentures and collateral
management agreements were "referenced and relied upon" in the complaint, and therefore the
"Court may consider them" when deciding a motion to dismiss).

NexPoint. *Id*. at 2 & ¶¶ 12, 38-39. It is uncontested that intervenor Highland CLO Funding, Ltd. ("HCLOF") holds the vast majority—87%—of the Subordinated Notes (which are the only notes still outstanding). Dkt. 44 (HCLOF Mot. to Intervene) at 8; Dkt. 45 (Itkin Decl.) ¶¶ 2, 6. ACM advises Acis CLO 6, not NexPoint. SAC ¶ 147 (describing Acis CLO 6, but not NexPoint, as "the *advisee*[]" of ACM (emphasis in original)).

### B. The Indenture And PMA Delimit NexPoint's Rights And Protect ACM

The PMA and Indenture carefully define NexPoint's rights as a noteholder and protect ACM from unwarranted litigation. The PMA governs ACM's rights and obligations as portfolio manager for Acis CLO 6. NexPoint is not a party to the PMA. And the PMA is clear that "no … Holder of Notes"—such as NexPoint—"is a third party beneficiary of this Agreement." PMA § 31. The Indenture governs the rights and obligations of Acis CLO 6's noteholders and the Trustee. The Indenture contains a no action clause that prohibits noteholders, like NexPoint, from "institut[ing] any Proceedings … with respect to this Indenture …, or for any other remedy hereunder" unless the noteholder first garners support of 25% of the Controlling Class, requests in writing that U.S. Bank institute the proceeding in its own name, and U.S. Bank refuses to do so. Indenture § 5.8.

## II. NEXPOINT'S ALLEGATIONS

NexPoint names ACM as a Defendant in five counts: **Count 1** (Violations of the IAA), **Count 2** (Breach of Fiduciary Duty), **Count 3** (Breach of Contract), **Count 6** (Negligence), and **Count 7** (Conversion). Each of these counts is based on the same scattershot allegations that ACM mismanaged Acis CLO 6 by buying loans that violated contractual thresholds in the Indenture and charging expenses to Acis CLO 6 that were not permitted under the PMA. SAC ¶¶ 77-108. NexPoint speculates that ACM made its allegedly improper investment decisions to "maximize fees." *Id*. ¶ 188. NexPoint admits that the only damages it alleged—a reduction in the "net asset

value" of its notes—reflects a loss "in value from [Acis] CLO[] [6]" that ACM's conduct allegedly caused. *Id.* at 2. NexPoint's tort and contract claims both seek those lost value damages. *Id.* ¶¶ 189, 192, 222, 231-33. The only allegedly tortious conduct that NexPoint alleges is ACM's failure to "discharg[e] [its] duties under the Advisers Act, the Acis Indenture, and the PMA[]," *id.* ¶ 221, and charging Acis CLO 6 expenses it is not contractually "obligated to pay," *id.* ¶¶ 229, 231.

NexPoint cursorily alleges that its claims are direct. SAC ¶¶ 166, 190, 221, 229-34. In the alternative, it claims that it has derivative standing because "Acis [CLO 6] … is controlled by the Defendants" and "Mr. Terry[] would not have sued himself," Brigade, or US Bank. *Id.* ¶¶ 181, 191, 226, 235. The Complaint does not allege that ACM or Mr. Terry hold notes in Acis CLO 6, does not deny that HCLOF owns the majority of the remaining notes, *see* Dkt. 44 at 8, and never explains how ACM or Mr. Terry control Acis CLO 6 or could block Acis CLO 6 from suing ACM.

The Complaint also admits NexPoint's "noncompliance" with the Indenture's no action clause in bringing this suit. SAC ¶ 243. NexPoint attempts to "excuse[]" that noncompliance by claiming that "it would be absurd … to ask the Trustee to sue itself," *id.* (quotation omitted), but does not allege that it would be absurd to ask the Trustee to sue ACM or the other Defendants.

## III. PROCEDURAL HISTORY

NexPoint commenced this action on May 14, 2021. Dkt. 1. On September 27, 2021, ACM filed a pre-motion letter to dismiss the original complaint because its five counts "each suffer from fatal procedural and substantive deficiencies." Dkt. 33 at 2. In addition to those deficiencies, the original complaint included "claims based on [ACM's] conduct in purchasing, holding, and selling loans prior to the Effective Date" of the ACM bankruptcy plan. Order, *In re Acis Capital Mgmt., L.P.*, No. 18-30264-SGJ-11 (N.D. Tex. Sept. 24, 2021), Dkt. 1254 at 6. In September 2021, U.S. Bankruptcy Court Judge Jernigan ruled that proceeding with the pre-Effective Date claims would

"violat[e]" the ACM bankruptcy plan. *Id*. at 7. Two months later, NexPoint twice amended its

complaint to withdraw those claims. *See* Dkt. 41 (First Amended Complaint); Dkt. 42 (SAC). In

the SAC, NexPoint withdrew allegations that ACM mismanaged a related fund, Acis CLO 2014-

3 Ltd., because NexPoint's investment in that fund was fully redeemed.[3] Dkt. 50 at 1. NexPoint's

amendments fail to address the fatal deficiencies in its claims, so ACM again moves to dismiss

here.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Off. Sol.*

*Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, -- F. Supp. 3d --, 2021 WL 2403088, at *5 (S.D.N.Y.

June 11, 2021) (Woods, J.) (quotation omitted). "A claim is facially plausible when a plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. (quotation omitted). "[L]egal conclusions" need not be

"accept[ed] as true," and "labels and conclusions … will not do." *Id*. at *4-5 (quotations omitted).

## ARGUMENT

## I. NEXPOINT LACKS A PRIVATE RIGHT OF ACTION TO PURSUE ITS IAA CLAIMS

Section 215(b) of the IAA establishes "a limited private remedy under the [IAA] to void

an investment advisers contract." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 24

(1979).[4] In *Transamerica*, the Supreme Court ruled that "the [IAA] confers no other private causes

---

[3]    NexPoint's original complaint alleged that these same notes, which were repaid in full at
redemption within months of the original complaint, had lost 60% of their value due to ACM's
misconduct. *See* Dkt. 1 at 2. Subsequent events have proven this allegation to be false.

[4]    Section 215(b) states: "Every contract made in violation of any provision of [the IAA] … shall
be void" if "the performance of [that contract] involves the violation of, or the continuance of any
relationship or practice in violation of any provision of [the IAA]." 15 U.S.C. § 80b-15(b).

of action, legal or equitable," *id*., so IAA claims that fall outside of the "limited private remedy" that Section 215(b) creates, including claims based on the Section 206 anti-fraud provision, must be dismissed, *id*.; *see Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *2-3, *9 (S.D.N.Y. Aug. 7, 2014) (Sullivan, J.).

To state a claim under Section 215(b)'s narrow private right of action, NexPoint must allege that the PMA was made illegally or requires illegal performance. *Omega*, 2014 WL 3907082, at *3 (holding that Section 215(b) "codifi[es] [] the common-law principle that illegal contracts are invalid," so a party must "allege[] that the contract was made illegally or requires illegal performance … to state a claim under § 215(b)"). Because "[Section] 215 targets problems in the formation of contracts and in [their] contents …, and not the actions taken pursuant to contracts," *id*. at *4, a party that merely alleges that "an investment adviser defraud[ed] a client in violation of the IAA … ha[s] failed to state a claim," *id*. at *2-3. Textbooks and caselaw alike confirm the ruling in *Omega*. *See* T. L. Hazen, 6 *Treatise on the Law of Securities Regulation* § 21.21 (2021); *KDH Consulting Grp. LLC v. Iterative Capital Management L.P.*, 2020 WL 7251172, at *10 (S.D.N.Y. June 29, 2020); *Tobia v. United Grp. of Cos., Inc.*, 2016 WL 5417824, at *20 (N.D.N.Y. Sept. 22, 2016). NexPoint has identified no contrary authority. Dkt. 58 at 1-2. Any other determination would ignore the Supreme Court's ruling in *Transamerica* that no private right of action exists under Section 206 of the IAA, which furnishes the federal fiduciary standard for investment advisers governed by the IAA. *Transamerica*, 444 U.S. at 24 ("The dispositive question," in assessing whether Section 206 creates a private right of action, "remains whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end."); *Omega*, 2014 WL 3907082, at *2 (holding that the limited private right of

6

action under Section 215 of the IAA "is [not] a backdoor to the private right of action that the Supreme Court refused to find under § 206" in *Transamerica*).

NexPoint's IAA claim must be dismissed because NexPoint has not alleged that the PMA was made illegally or requires illegal performance by ACM.  Instead, like the unsuccessful plaintiff in *Omega*, NexPoint alleges that ACM committed "subsequent fraud" after the PMA was executed by incurring unnecessary expenses and maximizing fees in violation of Section 206 of the IAA. *Omega*, 2014 WL 3907082, at *2; SAC ¶¶ 141-55.  These breaches all post-date contract formation, and NexPoint conceded that it is not alleging that the PMA was made illegally in arguing to the U.S. Bankruptcy Court that this lawsuit does not violate the ACM plan injunction.[5] Transcript, *In re Acis Capital Mgmt., L.P.*, No. 18-30264-SGJ-11 (N.D. Tex. Sept. 8, 2021), Dkt. 1250 at 132:21-25 (representing that this lawsuit is "seeking to void the contract based on things that happened after February 15th, 2019"—namely post-formation conduct and admitting that "if that means that there is no cause of action, then there is no cause of action").  NexPoint also conceded that the PMA does not require illegal performance by affirmatively alleging that the PMA *prohibits* ACM from engaging in the same conduct that grounds NexPoint's IAA claim. SAC ¶¶ 187-88 (alleging that ACM breached the PMA by "incur[ring] [unnecessary] expenses" and "maximiz[ing] [its] fees").[6]  NexPoint's admissions are dispositive, and its IAA claim must

---

[5]  The Court can take judicial notice of the U.S. Bankruptcy Court hearing transcript because it is publicly available from the U.S. Bankruptcy Court so it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013) (affirming taking judicial notice of bankruptcy filing "to establish that certain matters have been publicly asserted" on motion to dismiss).

[6]  NexPoint cannot salvage its IAA claim by seeking to void unspecified "transaction[s] in violation of the Advisers Act" between ACM and unnamed "third part[ies]."  SAC ¶ 157. NexPoint has neither identified these transactions nor alleged how they violate the IAA. *See Tobia*, 2016 WL 5417824, at *20.  Nor has NexPoint alleged that ACM's transactions with unnamed third

be dismissed.  *See Omega*, 2014 WL 3907082, at *2-3, *9 (dismissing IAA claim because plaintiffs

"have not alleged that the contract was made illegally or requires illegal performance"); *KDH*

*Consulting Grp. LLC*, 2020 WL 7251172, at *10 (same); *Tobia*, 2016 WL 5417824, at *20 (same).

NexPoint's argument that "Advisers Act violations are actionable via state-law fiduciary

duty claims" does nothing to save NexPoint's IAA claim from dismissal.  Dkt. 58 at 1.  As

NexPoint's own cited cases confirm, a state law claim for fiduciary duty informed by IAA

fiduciary standards—if such a claim exists[7]—remains a state law claim, not an IAA claim.  *Tobia*,

2016 WL 5417824, at *19-22 (analyzing IAA claim and state law fiduciary duty claim separately

on motion to dismiss); *Goldenson v. Steffens*, 2014 U.S. Dist. LEXIS 201258, at *137 (D. Me.

2014) (IAA supplied standard for state law fiduciary duty claim); *Douglass v. Beakley*, 900

F. Supp. 2d 736, 751-52 (N.D. Tex. 2012) (same); *State ex rel. Udall v. Colonial Penn Ins. Co.*,

812 P.2d 777, 785 (N.M. 1991) (ruling that advisers were state law fiduciaries based on the IAA).[8]

---

parties involved investment advisory contracts as Section 215(b) of the IAA requires.  *Id.* at *20
n.17.

[7]  Far from endorsing the use of the federal fiduciary standard supplied by Section 206 of the IAA
as the basis for a common law breach of fiduciary duty claim, NexPoint's own authorities raise
serious questions about whether common law can be used to "circumvent[]" the Supreme Court's
limitations on private causes of action under the IAA in *Transamerica* "simply by hanging the
label 'state law' on an otherwise forbidden federal claim."  *Belmont v. MB Inv. Partners, Inc.*, 708
F.3d 470, 502 (3d Cir. 2013) (citation omitted).

[8]  Because it is settled law that NexPoint lacks a private right of action under Section 206 of the
IAA, the Court need not reach whether a hypothetical private right of action under the IAA would
be barred by the no action clause or for lack of derivative standing and non-compliance with the
no action clause.  *See* Sections III & IV(A), *infra*.  Were the Court to consider these additional
grounds for dismissal, it is clear that NexPoint's non-existent IAA claim, like its remaining state
law claims, arises entirely from ACM's and U.S. Bank's alleged breaches of Acis CLO 6's
governing agreements, and therefore falls squarely within the universe of claims derivative
standing rules and the no action clause are intended to bar.  *See* Dkt. 79 (HCLOF Mem.) at 14-18.

## II. THE COURT SHOULD EXERCISE JURISDICTION OVER NEXPOINT'S REMAINING CLAIMS

While NexPoint's IAA claim is untenable, the Court retains federal subject matter jurisdiction over the remaining claims under the Edge Act (for counts naming U.S. Bank),[9] 12 U.S.C. § 611 *et seq.*, and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Even if all Edge Act counts are dismissed, the Court should not decline supplemental jurisdiction over NexPoint's remaining claims. While it is often appropriate to do so where all claims with original jurisdiction are dismissed, *see* 28 U.S.C. § 1367(c)(3), that outcome is not always warranted. Courts in this District have retained jurisdiction at the motion to dismiss stage over "straightforward" non-federal claims because "[c]onvenience and judicial economy weigh heavily in favor of resolving" them together with federal claims, *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 48 (S.D.N.Y. 2015), *aff'd in part*, 632 F. App'x 637 (2d Cir.); *see also Alfandary v. Nikko Asset Mgmt., Co.*, 2019 WL 4747994, at *7 (S.D.N.Y. Sept. 30, 2019) (retaining jurisdiction over non-federal claims that did not involve "novel or unsettled issues of state law"); *LeeHim v. New York City Dep't of Educ.*, 2017 WL 5634128, at *8 (S.D.N.Y. Nov. 21, 2017) (same), and the Second Circuit has affirmed such decisions, *Schweitzer v. Dep't of Veterans Affs.*, 23 F. App'x 57, 60 (2d Cir. 2001). The interest of judicial economy would be particularly served here by the Court retaining supplemental jurisdiction for at least three reasons:

*First*, as explained in Section III, *infra*, NexPoint's negligence claim against ACM—one of the hooks for Edge Act jurisdiction because it is also pled against U.S. Bank—is fatally deficient for lack of derivative standing. That same lack of derivative standing is equally fatal to all other claims pled by NexPoint against ACM and the other non-U.S. Bank Defendants. It thus serves

---

[9] Edge Act jurisdiction exists because (1) this suit is a civil action, (2) U.S. Bank is a national banking association, SAC ¶ 5, and (3) the suit arises out of U.S. Bank's international banking or financial operations with Acis CLO 6, a Cayman company, *id.* ¶¶ 40, 109-31.

judicial efficiency to dispense with all claims defeated by this single defense at once, rather than taking them piecemeal.

*Second*, another action among the parties is currently pending before this Court, which will require the Court to determine whether other Dondero-affiliated entities that invested in both Acis CLO 6 and other, related ACM-managed CLOs "can[] assert derivative standing" "under Cayman Islands law." *U.S. Bank Nat'l Ass'n v. The Charitable Donor Advised Fund, L.P.*, No. 1:21-cv-11059-GHW (S.D.N.Y.), Dkt. 1 (Compl.) ¶ 57. The "substantially identical" legal … issue that NexPoint lacks derivative standing under Cayman Islands law resolves the remaining claims here as well, *see* Section III, *infra*, so "judicial economy [favors] maintaining supplemental jurisdiction." *Fei Hang Chen v. Jing Fong Rest., Inc.*, 582 F. Supp. 2d 602, 603 (S.D.N.Y. 2008) (retaining jurisdiction over claims raising "issues … substantially identical" to related case). Moreover, ACM intends to exercise its right to amend the complaint in the related case in the coming days to add the same declaratory judgment claims against NexPoint. As such, the remaining state law claims, and NexPoint's derivative standing to bring them, will be before this Court whether or not it exercises supplemental jurisdiction, and it would be most efficient for the Court to simply handle them here on this fully briefed motion. *See Hajny v. Best Roofing of N.J., Inc.*, 2011 WL 2493737, at *7 (S.D.N.Y. June 22, 2011) (retaining jurisdiction over "mirror-image" state law claims that "involve the same factual issues" as federal claims at motion to dismiss stage).

*Third*, retaining jurisdiction would avoid hardship to the parties by bringing an end to actual and threatened litigation that has delayed distributions to investors in Acis CLO 6. NexPoint's meritless lawsuit is disrupting the normal operation of Acis CLO 6 by "holding up … distributions … to HCLOF," the holder of 87% of the outstanding Notes. Dkt. 44 at 10. HCLOF "does not

support" NexPoint's suit, *id.* at 8, and timely dismissal would free up funds for distribution to HCLOF. It is precisely for this reason that ACM and U.S. Bank brought the Related Case in the first place. Avoiding the continued delay of payment on HCLOF's Subordinated Notes, alone, warrants an exercise of this Court's discretion to fully resolve the issues raised by NexPoint within its chosen forum, rather than declining supplemental jurisdiction such that NexPoint can continue its vexatious litigation efforts in another court. In these circumstances, "declining jurisdiction over the state-law claims" would require "re-submission of motions" and "would [not] further … fairness"; rather, it would cause "hardship to [all] parties." *Alfandary*, 2019 WL 4747994, at *7.

## III. NEXPOINT'S REMAINING CLAIMS ARE DERIVATIVE AND MUST BE DISMISSED

NexPoint's remaining claims against ACM must be dismissed because they are derivative claims that Cayman Islands law prohibits NexPoint from bringing.[10]

### A. NexPoint's Remaining Claims Are Derivative

"In assessing whether a claim is derivative, Cayman Islands law looks to whether the shareholder's loss is merely a reflection of the loss suffered by the company and would be made good if the company enforced its full rights against the party responsible." *Zohar CDO 2003-1 Ltd.*, 2021 WL 4460547, at *11 (Castel, J.) (internal citations and quotations omitted). That is the case here: NexPoint's claims against ACM are all predicated on the allegation that ACM caused Acis CLO 6 to (a) buy inappropriate or prohibited assets and (b) cover expenses of ACM that were not properly chargeable to Acis CLO 6 under the governing agreements. SAC at 2 & ¶¶ 171-74, 187-89, 221-22, 229-34. In each case, the direct harm was allegedly done to Acis CLO 6, and impacts NexPoint only by virtue of its investment in Acis CLO 6. Indeed, NexPoint admits as

---

[10] Cayman Islands law governs because "whether a claim is direct or derivative" is governed by the law of the corporation's place of incorporation. *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d Cir. 2014).

much.  *See* SAC at 2 (describing its loss as derived from the loss of "value from the CLOs" caused by ACM's alleged misconduct*); id.* ¶ 171 (admitting that ACM's alleged breach of fiduciary duty "improperly impos[ed] expenses on the Acis CLOs"); *id.* ¶ 189 (admitting that ACM's alleged breach of contract caused "damage to the CLOs"); *id.* ¶ 221 (admitting that ACM's allegedly negligent "manag[ement] [of] the investments of [that] CLO[]" caused losses to Acis CLO 6); *id.* ¶ 234 (asserting that "payment of [] Acis CLO[] [6's] administrative expenses" gives rise to a conversion claim).  Thus, as in *Zohar*, NexPoint's claims as a CLO investor are derivative because "any loss caused … would be suffered by the [CLO] Funds and the [investors] would only suffer a loss as a result of the [CLO] Funds' loss."  *Zohar*, 2021 WL 4460547, at *12; *ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.*, 957 F. Supp. 1308, 1332 (S.D.N.Y. 1997) (under Cayman Islands law, "claims based on breach of fiduciary duty … that result in the diminution of share value" are derivative).[11]

---

[11]   NexPoint in any event lacks direct standing to pursue the claims asserted.  NexPoint cannot sue ACM directly for breach of fiduciary duty or negligence because ACM's duties run to Acis CLO 6, and ACM owes no duty, fiduciary or otherwise, to NexPoint.  *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) ("While the collateral managers may have owed fiduciary and contractual duties to the [investment funds they managed], there is no factual basis to create fiduciary duties running from the managers to the mezzanine noteholders."); *see also MBIA Insur. Corp. v. Tilton*, 2021 WL 3124298, at *15 (Bankr. D. Del. July 23, 2021) (dismissing breach of fiduciary duty claims brought by noteholder against CLO manager where supporting allegations "simply describe the relationship between the [CLO] Funds" and collateral manager) (applying New York law); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 377-78 (S.D.N.Y. 2011) (finding plaintiffs lacked standing to assert a direct claim for negligence because their allegations, which amounted to "a classic claim of fund mismanagement," involved duties owed only to the fund and not to the individual plaintiffs).  NexPoint lacks a direct claim for breach of the PMA because NexPoint is neither a party nor a third-party beneficiary of the PMA.  PMA § 31 ("Other than as provided below, no party, including any Holder of Notes, is a third party beneficiary of this Agreement.").  And NexPoint lacks a direct conversion claim because the property allegedly taken was Acis CLO 6's cash, not NexPoint's cash.  SAC at 2 & ¶ 229.

**B.    NexPoint's Claims Do Not Meet Any Of The Four *Davis* Exceptions**

Under Cayman Islands law, "a shareholder is not permitted to bring a derivative action" subject to "four narrow exceptions" for conduct that (1) "infringed on the shareholder's personal rights;" (2) "would require a special majority to ratify;" (3) "qualifies as a fraud on the minority;" or (4) "consists of *ultra vires* acts." *Davis v. Scottish Re Grp. Ltd.*, 160 A.D.3d 114, 116 (1st Dep't 2018). NexPoint has the "burden of establishing" a prima facie case that one of those exceptions applies. *City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) (applying English law); *Shenwick v. HM Ruby Fund, L.P.*, 106 A.D.3d 638, 639 (1st Dep't 2013) (Cayman Islands law is based on English derivative law). In pre-motions letters, NexPoint sought to invoke the fraud on the minority exception and personal rights exception, Dkt. 58 at 2, but neither apply here for the reasons explained below.

Fraud On The Minority Exception: The fraud on the minority exception does not apply because NexPoint failed to allege either of its required elements: that ACM (1) "controlled a majority of the stock with voting rights," and (2) "committed fraud." *Davis*, 160 A.D.3d at 116.

To plead control, NexPoint must allege that ACM "own[s] a majority of [Acis CLO 6's] shares or ha[s] acquired de facto control of those voting shares." *Davis*, 160 A.D.3d at 116. But ACM does not own *any* of Acis CLO 6's only remaining securities—the Subordinated Notes that are held by NexPoint and intervenor HCLOF. SAC at 2; Dkt. 44 at 8. NexPoint does not allege that ACM controls HCLOF, and it is apparent that ACM does not have such control given the positions taken by HCLOF adverse to ACM in this very proceeding. Dkt. 44 at 8, 10. The failure to plausibly plead control is fatal to the fraud on the minority exception. *Zohar CDO 2003-1 Ltd.*, 2021 WL 4460547, at *13 (finding fraud on the minority exception "meritless" where CLO investor failed to allege that collateral manager controlled majority of CLO voting shares); *Davis*,

160 A.D.3d at 116-17 (rejecting fraud on the minority exception because company directors did not "control[] the company's voting shares")

To plead fraud, NexPoint must allege that ACM "obtained a personal benefit at the company's expense" "as a result of [its] wrongful conduct." *Shenwick*, 106 A.D.3d at 639 (applying Cayman Islands law). As the Court explained in *Shenwick*, the allegation that a fund manager "artificially inflat[ed] the fund's net asset value so they would receive higher compensation" is not sufficient to meet the fraud requirement, because there is no allegation that this "resulted in compensation beyond the normal emoluments of office, or came, in some special way, at the expense of shareholders." *Id.* at 638-39; *see also Winn v. Schafer*, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007) (allegations of entrenchment by directors, without allegations of "additional benefits … beyond the normal emoluments of office" are "precisely the type of allegations that were found to be insufficient in *Tyco* and which are consistently found to be insufficient to prove director self-interest in the analogous context of derivative actions applying American law"); *In re Tyco Int'l*, 340 F. Supp. 2d 94, 100 (D.N.H. 2004) (same). ACM's alleged misconduct here—acquiring discounted assets for Acis CLO 6 with the intent to increase Acis CLO 6's asset balance and ACM's fees—is directly analogous to the conduct alleged in *Shenwick* and is therefore insufficient to invoke the fraud on the minority exception.

NexPoint's only other claim of self-dealing is that ACM caused Acis CLO 6 to cover expenses that were not properly chargeable to the CLO, SAC ¶ 171, but this allegation is conclusory and does not meet the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). *Zohar CDO 2003-1 Ltd.*, 2021 WL 4460547, at *8 (fraud claim failed because plaintiffs "fail[] to meet the particularity requirement … under Rule 9(b)"), *13 (fraud on the minority exception did not apply because plaintiffs "fail to allege any fraud"). In particular,

NexPoint does not identify any particular fee or payment that was improper, and merely deduces from the total quantum of administrative expenses charged to Acis CLO 6 that some of those administrative expenses are not permitted. SAC at 3 & ¶ 61. Unable to identify a single, particularized instance of improper expenses being charged to Acis CLO 6, NexPoint's administrative expense allegations fail to satisfy the fraud element of the fraud-on-the-minority exception.

<u>Personal Rights Exception</u>: NexPoint cannot rely on the personal rights exception because it has asserted corporate rights, not personal rights, and has failed to identify any statutory or contractual right unique to NexPoint that has been violated. *See* Ex. C ("Wedderburn"), K. W. Wedderburn, *Shareholders' Rights and the Rule in Foss v. Harbottle*, 1957 Cambridge L.J. 194, 209 (explaining that personal rights are either "statutory" or "arise from contracts," including both the entity's constitutive document or other contracts).[12]

To satisfy the statutory branch of the personal rights exception, the plaintiff's claim must invoke a "right [the statute] confers upon him" and fall within "the limit of [that] right." Ex. D, *Mutter v. Eastern and Midlands Railway*, 38 Ch.D 92, 106 (Eng. Ct. App. 1888) (cited in Wedderburn at 209 n.96 as leading case on statutory branch). The only statutory claim pled here against ACM is the IAA claim, which fails for the reasons set forth in Section I, *supra*. NexPoint's assertion of the statutory branch of the personal rights exception fails for the same reasons.

To satisfy the contractual branch of the personal rights exception, the plaintiff must allege wrongdoing by the company itself in failing to honor the plaintiffs' personal "rights of

---

[12] Courts have recognized Wedderburn's article as authoritative on English derivative law, *In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d at 98, from which Cayman derivative law derives, *Shenwick*, 106 A.D.3d at 639.

membership" such as voting, transferring shares, the ability to offer shares, registration and delivery of share certificates, enforcing declared dividends, proper notice of meetings, and correcting procedural irregularities.  Wedderburn at 203, 210-11.  Because personal rights are process-based, they are remedied "mainly … [by] declaration or injunction," not by money damages.  *Id*. at 211.  Under English common law, which Cayman Islands law follows, *see Shenwick*, 106 A.D.3d at 639, the personal rights exception does not apply when the shareholder is attempting to recover "the diminution in the market value of his shares … because such a 'loss' is merely a reflection of the loss suffered by the company," not a "personal loss."  Ex. E ("*Prudential*"), *Prudential Assurance Co. Ltd. v Newman Industries Ltd. (No. 2)*, [1982] Ch. 204, 222-23 (Eng. Ct. App. 1981).  Consistent with the English rule, multiple U.S. courts have observed that a "plaintiff's personal rights as a shareholder are not implicated" if the claim is properly characterized as a derivative action seeking to address harm to the company "'because a shareholder's suit to protect her personal rights is not brought as a derivative action.'"  *Saratoga Advantage Tr. Tech. & Commc'ns Portfolio v. Marvell Tech. Grp., Ltd.*, 2016 WL 4364593, at *4 (N.D. Cal. Aug. 16, 2016) (quoting *Tyco*, 340 F. Supp. 2d at 98).  Thus, both U.S. courts to consider the personal rights exception ruled that it did not apply to investor claims based on lost share value.  *Saratoga*, 2016 WL 4364593, at *4; *Voss v. Sutardja*, 2015 WL 349444, at *10 (N.D. Cal. Jan. 26, 2015).

Here, NexPoint has not alleged violation of any process-based rights or any wrongdoing by Acis CLO 6.  Instead, NexPoint's remaining claims against ACM seek money damages for the diminished value of its notes caused by wrongs allegedly committed against Acis CLO 6 itself by its portfolio manager, ACM, in providing services to Acis CLO 6 under the PMA.  SAC at 2.  Such "claims that result in the diminution of share value belong to" Acis CLO 6, *ABF Cap. Mgmt.*, 957

16

F. Supp. at 1332, and do not implicate NexPoint's personal rights, *see Prudential*, [1982] Ch. at 222-23.[13]

## IV. NEXPOINT'S REMAINING CLAIMS ARE BARRED FOR ADDITIONAL REASONS

### A. The Indenture's No Action Claims Bars NexPoint's Remaining Claims

NexPoint's admitted "noncompliance" with the no action clause, SAC ¶ 243, bars its remaining claims. The no action clause in the Acis CLO 6 Indenture provides that "[n]o Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any remedy hereunder, unless" certain prerequisites are met, including:

(a) written notice to the Trustee of an Event of Default,

(b) written direction by at least 25% of the outstanding noteholders,

(c) the Trustee's failure to institute the requested action for 30 days, and

(d) the absence of a competing direction by the Majority of the Controlling Class.

Indenture § 5.8. The no action clause applies to both direct and derivative claims. *In re Part 60 Put-Back Litig.*, 146 A.D.3d 566, 568 (1st Dep't 2017).

Each of the remaining claims are covered by the no action clause because they are all "with respect to th[e] Indenture." Indenture § 5.8. NexPoint's claims are all predicated on ACM's alleged failure to comply with Indenture-based investment criteria (*e.g.*, the WARF and WAL tests) and ACM's alleged efforts to charge Acis CLO 6 for expenses that are not permitted under

---

[13] Even if NexPoint could somehow establish one of the *Davis* exceptions, derivative standing is likely *still* unavailable because NexPoint's investment is structured as debt—the Subordinated *Notes*—and it is unlikely that Cayman Islands law would recognize the theory of creditor derivative standing that has been adopted in some United States jurisdictions. The Court need not reach the availability of creditor derivative standing to resolve this motion against NexPoint, but ACM reserves the right to raise its creditor-derivative-standing argument later in the proceeding if the present motion does not dispose of the case in full.

the Indenture's definition of Administrative Expenses.  SAC ¶¶ 184-188, 221, 229, 231; *see* Indenture § 1.1 (definition of "Administrative Expenses").  These claims are thus the type of claims that "arise out of the [] agreements" and could be brought by the Trustee, placing them squarely within the no action clause's coverage.  *STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*, 149 A.D.3d 667, 668 (1st Dep't 2017).  Moreover, NexPoint cannot escape the application of the no action clause as to ACM under *Cruden v. Bank of N.Y.*, 957 F.2d 961 (2d Cir. 1992), by asserting parallel claims against U.S. Bank.  SAC ¶ 243 (citing *Cruden*, 957 F.2d at 968).  Rather, *Cruden* only excuses no action clause compliance for claims against the Trustee and does not apply to "asking [the trustee] to sue a third party."  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (Sullivan, J.) (quotations omitted).

## B.     NexPoint's Remaining Tort Claims Must Be Dismissed As Duplicative

Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).  Tort claims that merely "assert violations of a duty … identical to and indivisible from the contract" thus "cannot be sustained" because they are "duplicative" of breach of contract.  *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 394 (S.D.N.Y. 2017) (quotations omitted). Here, NexPoint's tort claims assert that NexPoint breached its duties (for the fiduciary duty and negligence claims) and converted property (for the conversion claim) when it engaged in, or caused, breaches of the Indenture and PMA, SAC ¶ 183; *see also id*. ¶¶ 173-74, 229-31, and "caused the CLOs to incur expenses that" were not "contractually permissible," *id*. ¶ 187; *see also id*. ¶¶ 171, 229-31.  Because the "sole basis" of these tort claims "is [ACM's] alleged breach of its contractual obligations," the tort claims must be dismissed as duplicative.  *BlackRock Allocation Target Shares: Series S. Portfolio*, 247 F. Supp. 3d at 394 (dismissing as duplicative negligence

claim against RMBS trustee); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 134 (S.D.N.Y. 2015) (dismissing breach of fiduciary duty claim "based on the same allegations and alleged duties owed" under contracts as "duplicative"); *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 444 (S.D.N.Y. 2009) ("New York law does not recognize a cause of action for the negligent performance of a contract."); *Zohar CDO 2003-1, Ltd.*, 2021 WL 4460547, at *15 (dismissing conversion claim against CLO credit enhancer that was "based on contract"); *Ellington Credit Fund, Ltd.*, 837 F. Supp. 2d at 204 (dismissing conversion claims against RMBS servicer that failed to "allege[] wrongs and damages distinct from those predicated on a breach of contract").

### C. The Economic Loss Rule Bars NexPoint's Negligence And Conversion Claims

NexPoint's negligence and conversion claims are also barred by the economic loss rule. "[A] plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence," subject to a narrow exception where "a special relationship requires the defendant to protect against the risk of harm to plaintiff." *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 385 (S.D.N.Y. 2019) (Woods, J.). The rule applies here because NexPoint attempts to recover its notes' lost value and expenses charged to Acis CLO 6, damages that "are the same and occurred in the same manner as the contract claim's damages." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 439 F. Supp. 3d 275, 283 (S.D.N.Y. 2020) (Stanton, J.) (economic loss doctrine barred negligence claim for losses to trust investments); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013) (economic loss doctrine barred conversion claim that "does no more than recite a breach of contract"); *see* SAC at 2 & ¶¶ 222, 229, 231. No exception to the economic loss rule applies because NexPoint has not pled a special relationship between it and ACM. Nor could any such relationship be pled as New York law is clear that no special relationship exists between investors in a structured finance vehicle and the vehicle's

collateral manager. *See Norddeutsche Landesbank Girozentrale v. Tilton*, 149 A.D.3d 152, 162 (1st Dep't 2017) (no special relationship between investors and CDO's collateral manager); *Basis Pac-Rim Opportunity Fund v. TCW Asset Mgmt. Co.*, 124 A.D.3d 538, 539 (1st Dep't 2015) ("involvement of a collateral manager in an arm's length transaction does not establish a special relationship as a matter of law"). Any existing special relationship runs between ACM and Acis CLO 6 itself, not noteholders like NexPoint. *See Oddo Asset Mgt.*, 19 N.Y.3d at 593-94; *In re Zohar III, Corp.*, 2021 WL 3124298, at *14-15.

## V. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE GRANTING LEAVE TO AMEND FOR A THIRD TIME WOULD BE FUTILE

"Where the problem with [a complaint] is substantive [and] better pleading will not cure it, leave to amend should be denied as futile." *Off. Sol. Grp., LLC*, 2021 WL 2403088, at *10 (quotation omitted). That is precisely the situation here. NexPoint was given an opportunity to amend its complaint after ACM's original pre-motion letter identified the complaint's numerous fatal defects and NexPoint twice amended, but it still failed to state a claim against ACM. Moreover, there is no indication that NexPoint "is in possession of facts that would cure the problem with its claims," *Off. Sol. Grp., LLC*, 2021 WL 2403088, at *10, and NexPoint "could add no facts … that would change in [its] favor the state of the law," *Sudler v. City of New York*, 689 F.3d 159, 179 (2d Cir. 2012). Accordingly, further leave to amend should not be granted.

## VI. THE DEFENDANTS ARE ENTITLED TO FEE SHIFTING

Under the so-called "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," but "this rule can, of course, be overcome by statute" or "an enforceable contract allocating attorney's fees." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (internal quotations and citations omitted).

Here, Defendants are entitled to attorneys' fees and costs pursuant to Section 5.15 of the Acis CLO

6 Indenture, which states:

> All parties to this Indenture agree, and each Holder of any Note by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, or omitted by it as the Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.15 (Undertaking for Costs) shall not apply to any suit instituted by the Trustee, to any suit instituted by any Holder, or group of Holders, holding in the aggregate more than 10% in Aggregate Outstanding Amount of the Controlling Class, or to any suit instituted by any Holder for the enforcement of the payment of the principal of or interest on any Note on or after the applicable Stated Maturity (or, in the case of redemption, on or after the applicable Redemption Date).

Section 5.15 applies here because this suit was "instituted" by NexPoint on May 14, 2021, *see* Dkt.

1, at a time when it was not a holder of any Notes in the Controlling Class, and its claims are

meritless for the reasons described above.[14]  *See Fluor Corp. v. Citadel Equity Fund Ltd.*, 2011

WL 3820704, at *3 (N.D. Tex. Aug. 26, 2011) (awarding attorneys' fees pursuant to materially

identical fee-shifting provision in note indenture).  Fee shifting is particularly warranted here in

light of Mr. Dondero's long history of vexatious litigation against his perceived enemies.  *See*

Transcript Ruling, *In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj-11 (Bankr. N.D. Tex.

Jun. 25, 2021), Dkt. 2500 at 109:17–22 (observing "vexatious litigation behavior"); *id.*, 2021 WL

3418657, at *12 (Bankr. N.D. Tex. Aug. 4, 2021) (finding Dondero in contempt of bankruptcy

order for bringing "frivolous" lawsuit).  Alternatively, if the Court were to find Section 5.15

---

[14]  Because the applicability of Section 5.15 tied to NexPoint's holdings at the time the action was "instituted," Indenture § 5.15, it is irrelevant that the Subordinated Notes, of which NexPoint owns 13%, later became the controlling class due to the redemption conducted months after NexPoint initiated the action. *See* Dkt. 44 at 6-7; Dkt. 45-4.

inapplicable, ACM respectfully requests that the Court award attorneys' fees "pursuant to its inherent authority" to shift fees to a party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Parnell v. Tremont Capital Mgmt. Corp.*, 2007 WL 528821, at *2 (S.D.N.Y. Feb. 16, 2007).

## CONCLUSION

For the reasons stated above, NexPoint's Complaint should be dismissed with prejudice.

Dated: January 27, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:     */s/ Jonathan E. Pickhardt*
        Jonathan E. Pickhardt
        Blair A. Adams
        Misha Boutilier
        51 Madison Ave., 22nd Floor
        New York, New York 10010
        Tel: 212-849-7000
        Fax: 212-849-7100
        jonathanpickhardt@quinnemanuel.com
        blairadams@quinnemanuel.com
        mishaboutilier@quinnemanuel.com

        *Attorneys for Defendant Acis Capital Management, L.P.*