quinn emanuel trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

March 21, 2022

**BY ECF**
The Honorable Gregory H. Woods
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

Re: *U.S. Bank National Association, in its capacity as Trustee, et al. v. The Charitable Donor Advised Fund, L.P., et al.*, No. 1:21-cv-11059 (S.D.N.Y.)

Dear Judge Woods:

Pursuant to Rule 2(C) of Your Honor's Individual Rules of Practice, we write on behalf of Plaintiffs U.S. Bank National Association, in its capacity as trustee (the "Trustee"), Joshua N. Terry ("Mr. Terry"), and Acis Capital Management, L.P. ("ACM," and, collectively, with the Trustee and Mr. Terry, "Plaintiffs") in response to Defendants The Charitable Donor Advised Fund, L.P.'s ("DAF") and CLO HoldCo, Ltd.'s ("CLO HoldCo," and, collectively with "DAF," the "DAF Defendants") pre-motion letter (Dkt. 23).

**Background**

Plaintiffs seek a declaratory judgment that the DAF Defendants are barred from bringing claims against Plaintiffs concerning the purported mismanagement of Acis CLO 2014-4 Ltd., Acis CLO 2014-5 Ltd., and Acis CLO 2014-6 Ltd. (collectively, the "ACIS CLOs"). DAF first asserted these claims against Plaintiffs in 2019 (the "2019 Lawsuit"), Dkt. 15 ("Complaint" or "AC") ¶¶ 32-38, and the DAF Defendants sued Plaintiffs in 2020 on substantively identical allegations (the "2020 Lawsuit," and, collectively with the 2019 Lawsuit, the "2019 and 2020 Lawsuits"), *id.* ¶¶ 39-41. The DAF Defendants purported to voluntarily dismiss both lawsuits without prejudice. *Id.* ¶¶ 38, 41. Following the dismissal of the 2020 Lawsuit, they reiterated their baseless claims against Plaintiffs and threatened to "proceed to litigation" if the Trustee refused to accede to their demands. Dkt. 15-8 at 8; AC ¶¶ 42-43. That threat crystallized when defendant NexPoint Diversified Real Estate Trust ("NexPoint"), which together with the DAF Defendants is under the functional control of James Dondero, sued Plaintiffs in May 2021 and repeated the same vexatious claims previously made by the DAF Defendants.[1] AC ¶¶ 44-46. In December 2021, Plaintiffs again sought to eliminate the uncertainty created by the DAF Defendants' repeated assertion of legal claims against Plaintiffs by asking them to "release the [t]hreatened [c]laims." Dkt. 15-10 at 2; *see* AC ¶ 47. The DAF Defendants refused. Dkt. 15-11 at 2; *see* AC ¶ 47.

[1] The Court ordered that this Action be treated as related to the NexPoint suit on January 3, 2022—the cases were not merely "docketed as 'related'" as the DAF Defendants suggest (Dkt. 23 at 1 n.1).

The DAF Defendants' threatened claims create a cognizable threat and real risk of injury to Plaintiffs. The DAF Defendants sought millions in damages from Plaintiffs in the 2020 Lawsuit, Dkt. 15-7 at 3, 32, and they continue to threaten Plaintiffs with claims for those same damages, AC ¶¶ 42-43. Those threats prompted the retention of liquidation proceeds to cover the ACIS CLOs' potential indemnification obligations, which are delaying payments to subordinated noteholders. *Id.* ¶ 51. The DAF Defendants have refused to provide a release even though approximately half of the proceeds being delayed from distribution ultimately would flow to them, demonstrating that they are likely to assert claims against Plaintiffs in the future.

**The DAF Defendants' Threats Created The Controversy They Now Deny**

The DAF Defendants' assertion that the threatened claims—which they twice brought against Plaintiffs and have refused to release—do not create a controversy is unsupported and wrong. It is settled that "[a]ctual threats of litigation … create[] a case or controversy." *In re Chateaugay Corp.*, 201 B.R. 48, 67 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997). The DAF Defendants thus cannot level threats of litigation and then disavow the controversy they created as failing to satisfy the Declaratory Judgment Act. *See Museum of Mod. Art v. Schoeps*, 549 F. Supp. 2d 543, 547 (S.D.N.Y. 2008) (finding that the Declaratory Judgment Act "temper[s]" the ability of parties "to refuse to initiate a lawsuit while hanging the threat of one over" plaintiffs). The DAF Defendants' efforts to evade this clear precedent are unavailing.

*First*, the DAF Defendants claim (Dkt. 23 at 2) that the injury, which they characterize as delayed payments to noteholders, is not "traceable" to their threats to sue. But they ignore that they threatened to sue Plaintiffs for millions of dollars. Dkt. 15-7 at 3, 32. That repeated and "non-speculative threat of litigation" itself establishes a "risk of real harm" directly traceable to their actions that satisfies the injury requirement.[2] *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 4993895, at *7 (S.D.N.Y. Oct. 26, 2021) (quotation omitted).

While no more is required, the delayed payments to noteholders also satisfy the traceable injury requirement because the Complaint alleges that liquidation proceeds were retained, and distributions delayed, *because* the DAF Defendants threatened litigation. AC ¶ 51. That allegation must be taken as true, *Choi's Beer Shop, LLC v. PNC Merch. Servs. Co.*, 855 F. App'x 20, 22 (2d Cir. 2021), and it more than satisfies the traceability test that "defendants … engaged in conduct that ***may have*** contributed to causing the injury." *NRDC v. FDA*, 710 F.3d 71, 85 (2d Cir. 2013) (emphasis added). Indeed, Plaintiffs calculated the retained amounts in part based on the damages the 2019 and 2020 Lawsuits alleged. The DAF Defendants cannot overcome these well-pled allegations with a conclusory assertion that Plaintiffs are somehow at fault for the reserves that the DAF Defendants instigated by serially abusing the litigation process.[3] *Id.*

---

[2] The DAF Defendants' reliance (Dkt. 23 at 2) on *Election Computer Servs., Inc. v. Aristotle Pub., Inc.*, 1997 WL 438798, at *2 (S.D.N.Y. Aug. 4, 1997) is misplaced. *Election Computer* relied on a case in which the threatening party assured plaintiff it would not sue—which the DAF Defendants refused to do here. 1997 WL 438798, at *2 (citing *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1156 (D. Mass. 1995)).

[3] *Taylor v. Bernanke* does not assist the DAF Defendants (*contra* Dkt. 23 at 2) because proceeds were retained to effect contractual indemnification obligations, not Plaintiffs' "personal choices" about where to deposit money. 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013).

*Second*, the DAF Defendants claim (Dkt. 23 at 2-3) that the injuries to Plaintiffs are not redressable. But they are. The DAF Defendants ignore the threatened injury of imposing millions of dollars in liability on Plaintiffs. Granting declaratory judgment "would redress … [those] threatened injuries" by "barring" the DAF Defendants' threatened claims and "protecting [Plaintiffs] … from the legal fees and other costs associated" with those claims. *U.S. Bank Nat'l Ass'n*, 2021 WL 4993895, at *8; *see Museum of Mod. Art*, 549 F. Supp. 2d at 548 (declaratory judgment "relieves potential defendants 'from the Damoclean threat of impending litigation'").

The DAF Defendants' suggestion that a declaratory judgment might be ineffective because they might "later acquir[e] standing" after judgment (Dkt. 23 at 3) fails because it "requires both improper speculation and unnecessary certainty." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016). The DAF Defendants admit that they do not own any subordinated notes that could ground standing (Dkt. 23 at 3 n.3) and have not shown that they will later acquire direct ownership. Even if they did, they could only do so subject to Highland CLO Funding, Ltd.'s release of the very claims the DAF Defendants continue to threaten. AC ¶ 50; Dkt. 15-12 § 10. It is sufficient that the declaratory judgment redresses the injuries that the DAF Defendants have caused or threatened. Plaintiffs need not also show that it would prevent every conceivable future injury.

The DAF Defendants' further speculation (Dkt. 23 at 3) that a declaratory judgment might be ineffective because it might not result in a release of Plaintiffs' litigation reserves is even farther afield. As already explained, Plaintiffs need not rely on the litigation reserves to establish injury-in-fact; the DAF Defendants' multimillion dollar litigation threat more than suffices to check that box. *See supra* at 2. In any event, Plaintiffs expressly allege that prevailing on their declaratory judgment claims would "free up funds" for distribution, AC ¶ 52, and the DAF Defendants fail to provide any reason, let alone a compelling one, to discredit these well-pled facts.

**Plaintiffs Are The Real Parties In Interest**

The DAF Defendants' argument (Dkt. 23 at 3) that the Plaintiffs they twice sued, subsequently threatened to sue, and most recently refused to withdraw claims against are somehow not the real parties in interest under Fed. R. Civ. P. 17(a) fails. This argument is predicated on the inaccurate assumption that Plaintiffs are bringing the claims solely "on behalf of the holders of subordinated notes." *Id.* Instead, Plaintiffs are bringing the claims on their own behalf and are real parties in interest because they face millions in potential liability from the DAF Defendants' threatened claims. *See Humm v. Lombard World Trade, Inc.*, 916 F. Supp. 291, 298 (S.D.N.Y. 1996) (investors were "real parties in interest" because they "face[d] … liability"). That assumption is also irrelevant, because "the real party in interest is the one who has the power to *enforce* the right in question, even if that party does not *benefit* from the right's vindication." *House of Eur. Funding I Ltd. v. Wells Fargo Bank*, 2015 WL 5190432, at *5 (S.D.N.Y. Sept. 4, 2015). That standard is met because Plaintiffs have the power to enforce the right to seek declaratory judgment to be free from the threat of litigation.

Further, even if the DAF Defendants' theory that the action is brought solely to protect subordinated noteholders' ability to receive payment on their notes were correct, the Trustee would be the real party in interest because the Indenture grants it the right to bring such claims. *See* Indentures § 5.6 (granting the Trustee the right to prosecute "rights of action and claims under this Indenture or under any of the Secured Notes … in its own name").

Respectfully submitted,

*/s/ Jonathan E. Pickhardt*
Jonathan E. Pickhardt
Quinn Emanuel Urquhart & Sullivan, LLP
*Counsel for Acis Capital Management, L.P. & Joshua N. Terry*
Tel: (212) 849-7115
Email: jonathanpickhardt@quinnemanuel.com

*/s/ Mark D. Kotwick*
Mark D. Kotwick
Seward & Kissel LLP
*Counsel for U.S. Bank National Association*
Tel: (212) 574-1545
Email: kotwick@sewkis.com

cc: Counsel of Record (by ECF)