# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

URI A. ITKIN
DIRECT DIAL: (212) 506-3344
DIRECT FAX: (212) 500-3599
UItkin@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

March 30, 2022

**VIA ECF**

The Honorable Gregory H. Woods
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

> Re:  *U.S. Bank Nat'l Ass'n, et al. v. The Charitable Donor Advised Fund, L.P., et al.*, No. 1:21-cv-11059-GHW

Dear Judge Woods:

We write on behalf of non-party Highland CLO Funding Ltd. ("HCLOF") to respond to the March 14 letter sent by two Defendants in this case, ECF No. 23. HCLOF is not a party to this case, but it is the supermajority investor in the three CLOs at issue here[1] and a party to the related case before Your Honor involving the ACIS 6 CLO, *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P. et al*, No. 1:21-cv-04384 (the "*NexPoint* Case").

As an investor directly affected by Defendants' conduct, HCLOF is compelled to respond to Defendants' March 14 letter (which in fact invited HCLOF's response). Defendants' refusal to disavow claims against Plaintiffs (the CLOs' portfolio manager, trustee, and others) and Plaintiffs' resulting holdback of the CLOs' funds are both devastating for HCLOF.

Like the *NexPoint* Case, this action arises from the long-running war between James Dondero and Plaintiffs. Although the CLOs at issue were redeemed long ago, Plaintiffs reserved $40 million of the CLOs' funds to defend themselves and their affiliates from threatened claims asserted by Mr. Dondero's proxies. As a result, even though the CLOs' funds were supposed to be distributed to holders of the CLOs' subordinate notes (the only remaining notes in each of the CLOs), the funds are now held up in Plaintiffs' litigation reserve. HCLOF — which owns 100% of the subordinate notes in ACIS 4 and ACIS 5, and 87% of the subordinate notes in ACIS 6 — is caught in the middle. While the reserve may be immaterial to Defendants, whose ACIS 4 and ACIS 5 holdings were redeemed in full nearly a year ago, it is highly material and detrimental to HCLOF, which is due most of that $40 million.

---

[1] The CLOs at issue are ACIS CLO 2014-4 Ltd. ("ACIS 4), ACIS CLO 2014-5 Ltd. ("ACIS 5"), and ACIS CLO 2015-6 Ltd. ("ACIS 6") (collectively, the "CLOs").

KASOWITZ  BENSON  TORRES LLP

March 30, 2022
Page 2

  Defendants could easily put an end to this case — and to Plaintiffs' litigation reserve — by disavowing the existence of any purported claims against Plaintiffs. Defendants know full well that they have no standing or basis to sue Plaintiffs: Defendants' ACIS 4 and ACIS 5 notes have been repaid in full, Defendants withdrew both lawsuits they filed against Plaintiffs, and NexPoint has struggled to justify its claims against Plaintiffs in the *NexPoint* Case. But Defendants are instead playing coy here, asserting that they might somehow acquire standing someday and that Plaintiffs' claims need to be "ratified" by subordinate noteholders. This is a farce. None of Defendants' assertions have merit, and, more importantly, none of their assertions preclude the relief sought by Plaintiffs here.

  Indeed, Defendants (including NexPoint) have no ability whatsoever to assert claims against Plaintiffs in any of the CLOs as a matter of law. To ensure that is the case, HCLOF has waived all of the purported violations that gave rise to their threats. Specifically, by letters dated March 29, 2022, HCLOF, as the supermajority holder of the Controlling Class in each of the CLOs, has waived all of the alleged "defaults" that could form the basis for Defendants' (and NexPoint's) claims in accordance with Section 5.14 of the CLOs' respective indentures (which are the same in all material respects). This waiver is binding on Defendants, and it is dispositive of any claims they might have against Plaintiffs.[2]

  To be sure, HCLOF believes that Defendants' threats are meritless and there is no justification for Plaintiffs' litigation reserve. The positions taken by both sets of parties are, in HCLOF's view, wasteful and improper. But above all, what is paramount for HCLOF and, respectfully, for the Court is *finality*. Defendants have already filed two meritless suits they later withdrew, and NexPoint is taxing the Court's and the CLOs' resources through its meritless claims. Absent finality, these tactics will repeat, and they will continue to tax judicial resources and the CLOs' funds (via the reserve). HCLOF therefore supports any ruling by the Court that will put an end to Defendants' threats once and for all.

  We thank the Court for its attention to this matter, and although HCLOF is not appearing as a party in this case, we are available to answer any questions at the Court's convenience.

            Respectfully submitted,

            */s/ Uri A. Itkin*

            Uri A. Itkin

cc: All Counsel of Record (via ECF)

---

[2] True and accurate copies of the waiver letters are attached hereto as Exhibit A.