IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT STRATEGIC OPPORTUNITIES FUND,<br><br>*Defendants*. | No. 1:21-cv-11059 (GHW-JLC)<br><br>**Oral Argument Requested** |

## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd. ("Defendants" or "DAF/CLOH"), submit this Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") under Rules 12(b)(1), 12(b)(6), and 17(a) and respectfully seek dismissal of Plaintiffs' Amended Complaint (ECF No. 15) ("Complaint") because there is no case or controversy under Article III of the United States Constitution, and Plaintiffs are not the real parties in interest regarding the asserted claims.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

OVERVIEW ........................................................................................................................................ 2

FACTS ................................................................................................................................................. 3

ARGUMENT ....................................................................................................................................... 8

1. The Complaint must be dismissed because there is no case or controversy. ................................................................................................................ 8

   (a) Plaintiffs allege no "injury," much less one fairly traceable to DAF/CLOH. ..................................................................................................... 9

   (b) Plaintiffs' alleged "injury" will not be redressed by the requested relief. ......................................................................................................... 12

2. The Complaint should be dismissed, alternatively, because Plaintiffs are not the real parties in interest. ............................................................................... 13

3. The Court should exercise its discretion to refrain from declaring the litigants' rights. ............................................................................................... 15

CONCLUSION ................................................................................................................................. 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bandler v. Town of Woodstock,*
   832 F. App'x 733 (2d Cir. 2020)..................................................................................... 9

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013).................................................................................................. 10, 11

*Election Computer Servs., Inc. v. Aristotle Pub., Inc.,*
   1997 WL 438798 (S.D.N.Y. Aug. 4, 1997) ............................................................... 10

*Koons v. XL Ins. Am., Inc.,*
   620 F. App'x 110 (3d Cir. 2015)................................................................................... 11

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).................................................................................................. 8, 10

*Marcavage v. City of N.Y.,*
   689 F.3d 98 (2d Cir. 2012) ............................................................................................ 8

*Museum of Mod. Art. V. Schoeps,*
   549 F. Supp. 2d 543 (S.D.N.Y. 2008)......................................................................... 11

*N.Y. Bankers Ass'n, Inc. v. City of N.Y.,*
   2014 WL 4435427 (S.D.N.Y. Sep. 9, 2014).............................................................. 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Ill. Corp.,*
   110 F.R.D. 615 (N.D. Ill. 1986)................................................................................... 11

*Olin Cop. v. Consolidated Aluminum Corp.,*
   5 F.3d 10 (2d Cir. 1993) .............................................................................................. 10

*Peconic Baykeeper, Inc. v. Suffolk Cty.,*
   600 F.3d 180 (2d Cir. 2010) ........................................................................................ 15

*QS Holdco Inc. v. Bank of Am. Corp.,*
   2019 WL 3716443 (S.D.N.Y. Aug. 6, 2019) ............................................................. 13

*Sprint Communications Co., L.P. v. APCC Svcs., Inc.,*
   554 U.S. 269 (2008)....................................................................................................... 12

*Taylor v. Bernanke*,
  2013 WL 4811222 n.5 (E.D.N.Y. Sept. 9, 2013) ........................................................................ 9

*Weston Funding, LLC v. Consorciao G Grupo Dina, S.A. De C.V.*,
  451 F. Supp.2d 585 (S.D.N.Y. 2006) ............................................................................... 7, 12

**Rules**

Fed. R. Civ. P. 12 and 17 ................................................................................................ 3, 13, 14

## OVERVIEW

Plaintiffs invite this Court to insulate Plaintiffs from their unilateral decision to withhold tens of millions of dollars owed to noteholders – on which Plaintiffs are presumably collecting fees - for a war chest to protect them from the hypothetical, speculative claims of DAF/CLO. With a war chest in hand, Plaintiffs cannot demonstrate any actual injury, much less satisfy other essential criteria to establish a genuine case or controversy.

The Complaint is premised on rank speculation that DAF/CLOH may—*at some unspecified future time*—sue Plaintiffs for vaguely described claims of securities-portfolio mismanagement and associated breaches of duty under state or federal law. Plaintiffs focus on *voluntary dismissals* of two prior lawsuits by DAF and/or CLOH against Plaintiffs **over two years ago**—in February 2020. Plaintiffs also complain of DAF/CLOH's reservations of rights in a letter sent on May 8, 2020—**nearly two years ago**. Since those events, DAF/CLOH have not filed suit and the Complaint fails to identify a single litigation "threat." Yet, Plaintiffs allege there is "little doubt" DAF/CLOH will re-assert their past claims—and new claims mimicking federal-law claims of a distinct entity (NexPoint Strategic Opportunities Fund ("NexPoint")), the plaintiff in a purportedly "related" case pending before the Court, *NexPoint Strategic Opportunities Fund v. Acis Capital Management, L.P., et al.*, Case No. 1:21-cv-04384-GHW (the "NexPoint Lawsuit").[1]

---

[1] Defendants do not admit the cases are "related;" but they note the cases have been docketed as "related."

(*See* ECF No. 15 at ¶ 46) But Plaintiffs' allegations are nothing more than crystal ball gazing that fail to establish a justiciable case or controversy. The Court, therefore, lacks subject matter jurisdiction.

The Complaint alleges that Plaintiffs suffered injury because final distributions to holders of subordinated notes were purposefully delayed based on Plaintiffs' expedient need to build cash reserves to cover indemnity obligations that *might* arise. (*See* ECF No. 15 at ¶ 1) But DAF/CLOH have no authority to compel anyone to withhold distributions from the ACIS CLOs,[2] and the unilateral decisions of others to do so does not create a genuine case or controversy. Insofar as Plaintiffs are seeking redress of injuries allegedly sustained by the holders of subordinated notes, the Plaintiffs are not the real parties in interest under Federal Rule of Civil Procedure 17, and, accordingly, they are not permitted to maintain this action, and the lawsuit should be dismissed for this further reason.

## FACTS

Plaintiffs' Complaint obfuscates the facts. Plaintiffs allege that: (1) DAF/CLOH allegedly threatened litigation against Plaintiffs; (2) DAF/CLOH allegedly continue to threaten litigation; and (3) such threats allegedly necessitated this lawsuit. (*See, generally*, *id.*) But aside from conclusory allegations, and misattributions to Defendants, Plaintiffs

---

[2] The ACIS CLOs include ACIS CLO 2014-4 Ltd. ("ACIS 4"), ACIS CLO 2014-5 Ltd. ("ACIS 5"), and ACIS CLO 2015-6 Ltd. ("ACIS 6").

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
**PAGE 3**

identify four "threatening" acts by DAF/CLOH. And a close review reveals that these four "threats" do not support Plaintiffs' claim that there is a current, ongoing litigation threat by DAF/CLOH. These four "threatening" acts include: (1) that DAF filed a lawsuit in 2019 ("2019 Lawsuit"), but voluntarily dismissed the lawsuit on February 3, 2020 (*see id.* at ¶ 32-38); (2) that DAF/CLOH filed a second lawsuit on February 6, 2020 ("2020 Lawsuit"), asserting claims identical to those set forth in the 2019 Lawsuit, but voluntarily dismissed the 2020 Lawsuit on February 25, 2020 (*see id.* at 39-41); (3) that DAF/CLOH sent a letter to U.S. Bank in May 2020, complaining of misconduct that had been the subject of the 2019 and 2020 Lawsuits (*see id.* at ¶ 42-43; *id.* at Ex. H); and (4) that on January 10, 2022—*after* Plaintiffs filed the above-captioned lawsuit—DAF/CLOH declined to release claims in response to Plaintiffs' demand letter sent December 28, 2021. (*See id.* at ¶ 47) The most recent of the three pre-lawsuit "threats" was a letter seeking compromise while reserving litigation rights—and it was sent almost two years before Plaintiffs filed the current lawsuit. (*See id.* at Ex. H) The Complaint is otherwise devoid of any allegations of any current, immediate "threats."

The remainder of the "threats" involve alleged conduct of others over whom DAF/CLOH have no right of control.[3] Plaintiffs attribute those actions to DAF/CLOH by

---

[3] *See* Ex. 1 to this Motion, Declaration of Mark Patrick in Support of DAF/CLOH's Motion to Dismiss, at ¶ 6. Ex. 1 is incorporated in its entirety in this Motion by reference.

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
**PAGE 4**

conflating the distinct identities of CLOH,[4] DAF,[5] NexPoint,[6] and non-party James Dondero ("Dondero"). But DAF's, CLOH's, Dondero's, and NexPoint's identities are not fungible, and the Complaint blurs lines and suggests that NexPoint's or Dondero's alleged actions justify this lawsuit.

Ostensibly to support their bogus suggestions, Plaintiffs peddle the fiction that NexPoint's claims are the same claims brought by DAF/CLOH in the 2019 and 2020 Lawsuits. (*See, e.g., id.* at ¶ 45 ("The NexPoint Lawsuit regurgitated the same vexatious claims that DAF and [CLOH] made in the 2019 and 2020 Lawsuits")) While NexPoint's claims may arise from Plaintiffs' similar misconduct, the claims are materially distinct from any claims previously brought by DAF/CLOH.

NexPoint's claims belong to NexPoint (who directly owns subordinated notes issued by ACIS 6). NexPoint also asserted various federal-law claims, whereas DAF/CLOH never asserted federal-law claims against Plaintiffs.[7] (*See, generally, id.* at Ex. I *cf. id.* at Ex. F and Ex. G) DAF/CLOH's claims involved misconduct related to, *inter alia*, subordinated notes presently held by HCLOF and issued by ACIS CLOs 4, 5, and 6,

---

[4] CLOH is organized under the laws of the Cayman Islands. *See* ECF No. 15 at ¶ 13; *see also* Ex. 1 at ¶ 4.
[5] DAF is a Cayman Islands limited partnership that owns 100% of CLOH's equity. *See* ECF No. 15 at ¶ 12; *see also* Ex. 1 at ¶ 2.
[6] On information and belief, NexPoint is a Delaware statutory trust managed by NexPoint Advisors, L.P. *See* ECF No. 15 at ¶ 14. Neither CLOH nor DAF owns any interest in or controls NexPoint. *See* Ex. 1 at ¶ 6.
[7] Although Plaintiffs seek a declaration that DAF/CLOH "lack standing to bring their threatened claims under the Investment Advisers Act of 1940 ('Advisers Act') . . . [and] the Trust Indenture Act of 1939 ('TIA')," *see* ECF No. 15 at ¶ 1, neither DAF nor CLOH has ever threatened those claims against Plaintiffs. *See, generally*, ECF No. 15-06 and ECF No. 15-07.

whereas NexPoint's claims pertain to subordinated notes presently held by NexPoint and issued by ACIS CLO 6. (*See id.*) Thus, NexPoint's claims are plainly distinct from those previously asserted by DAF/CLOH.

Further, the Complaint claims that the purpose of this lawsuit is to redress injuries that DAF/CLOH's so-called "threats" allegedly inflicted upon Holders of Subordinated Notes.[8] (*See, e.g., id.* at ¶¶ 1, 52) Plaintiffs allege that the "threats" have injured the Holders of Subordinated Notes issued by ACIS 4, 5, and 6, respectively, by forcing the holdback of funds to cover purported indemnity obligations, which allegedly delayed final, post-redemption distributions. (*See id.*) But Plaintiffs are not the Holders of any Subordinated Notes. (*See id.* at ¶ 31) In fact, only one party to this lawsuit is a Holder of Subordinated Notes, and that is NexPoint—*who is a defendant sued by Plaintiffs*. (*See id.* at ¶ 44)

Despite the Complaint's assertions that Plaintiffs bring this lawsuit to remedy injuries to the Holders of Subordinated Notes, Plaintiffs recently retreated from this position in their pre-motion letter, claiming instead that they filed this lawsuit to remedy their "injuries." (*See* ECF No. 30 at p. 3) In their letter, Plaintiffs argued they are the real parties in interest and suffered injuries "because they face millions in potential liability from [DAF/CLOH's] threatened claims." But the fact is Plaintiffs effectively admit they have zero exposure because they expect 100% indemnity under the relevant indentures.

---

[8] In this brief, DAF/CLOH use the nomenclature ascribed by the indentures underlying Plaintiffs' allegations, but Plaintiffs did not use the proper terms in their Complaint.

To ensure they face no out-of-pocket expenses, Plaintiffs built an indemnity cash reserve by withholding final distributions to Holders of Subordinated Notes.

Plaintiffs also claim, albeit incorrectly, that even if this lawsuit is intended to remedy injuries to the Holders of Subordinated Notes (as repeatedly stated in the Complaint), U.S. Bank would be entitled to prosecute such claims in its own name as Trustee under the relevant indentures. (*See id.*) But, although the relevant indentures may authorize U.S. Bank to sue on behalf of Holders of *Secured* Notes, they do not authorize U.S. Bank to sue on behalf of Holders of *Subordinated* Notes.

Section 5.6 of the indentures[9] grants U.S. Bank the right to prosecute, in its own name, "rights of action and claims under this Indenture or under any of the Secured Notes." But the indentures' definition of "Secured Notes" does not encompass "Subordinated Notes."[10] Plaintiffs acknowledge in the Complaint that "the ACIS CLOs have . . . redeemed their secured notes, leaving only the subordinated notes outstanding." (*See* ECF No. 15 at ¶ 51) So, Plaintiffs complain of alleged injuries to Holders of

---

[9] Each of the Indentures contains an identical Section 5.6. *See* Ex. 1 at ¶ 13; *id.* at Ex. D ("ACIS 4 Indenture"), p. 114; *id.* at Ex. E ("ACIS 5 Indenture"), p. 112; *id.* at Ex. F ("ACIS 6 Indenture"), p. 107. The ACIS 4 Indenture, ACIS 5 Indenture, and ACIS 6 Indenture are, collectively, referenced herein as the "Indentures."
[10] *See, e.g.*, the definitions set forth in the Indentures. "Secured Notes" means: "The Class X Notes, the Class A Notes, the Class B Notes, the Class C Notes, the Class D Notes, the Class E Notes, the Class F Notes and the Combination Notes;" *cf.* "Subordinated Notes" is defined at p. 62 of the ACIS 4 Indenture and has the characteristics set forth in Section 2.3 thereof. Section 2.3 makes clear that the "Subordinated Notes" are distinct from and have completely different rights than the various classes of notes that constitute "Secured Notes." DAF/CLOH respectfully request that the Court take judicial notice of the Indentures, Exhs. D, E, and F to Ex. 1, for purposes of this Motion. *See Weston Funding, LLC v. Consorciao G Grupo Dina, S.A. De C.V.*, 451 F. Supp.2d 585, 587-588 (S.D.N.Y. 2006).

Subordinated Notes, but Section 5.6 of the indentures does not authorize U.S. Bank or any of other Plaintiff to sue for injuries suffered by Holders of Subordinated Notes.

**ARGUMENT**

The Complaint must be dismissed because it fails to present a justiciable case or controversy under Article III of the United States Constitution. The Court lacks subject matter jurisdiction. Dismissal also is proper for the reason that Plaintiffs are not the real parties in interest regarding the claims set forth in the Complaint. Exercising its discretion, the Court also should decline to issue declaratory relief and should dismiss the Complaint on that basis, if necessary.

**1. The Complaint must be dismissed because there is no case or controversy.**

The Complaint does not present a justiciable case or controversy because it fails to allege an injury fairly traceable to DAF/CLOH's conduct and redressable by the requested relief. Put simply, Plaintiffs fail to meet their burden of establishing constitutional standing. *See Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (plaintiffs have the burden of establishing standing).

Article III only permits federal courts to adjudicate "cases or controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). In other words, the plaintiff must allege "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* (citation omitted).

**(a) Plaintiffs allege no "injury," much less one fairly traceable to DAF/CLOH.**

The Complaint alleges and seeks to "redress" the alleged delay of final distributions to Holders of Subordinated Notes, which Plaintiffs caused. (*See, generally*, ECF No. 15; *see also id.* at ¶ 1 (alleging DAF/CLOH's so-called threats of litigation "have delayed distributions to the ACIS CLOs' subordinated noteholders by forcing the holdback of funds from the ACIS CLOs' final distributions . . . . In order to free up funds for payment to the subordinated noteholders, Plaintiffs hereby seek a declaratory judgment"); *id.* at ¶ 52 ("Plaintiffs hope to obtain judicial determinations that the threatened claims . . . are meritless. . . . In doing so, Plaintiffs seek to free up funds that are being held in reserve from distributions to the subordinated noteholders of the ACIS CLOs . . . and stop the unnecessary delay to the subordinated noteholders who are forced to wait for payments they would otherwise receive today")). Even if (for the sake of argument only and without admitting the same) delay in the payment of funds was an injury, it is not fairly traceable to DAF/CLOH. Instead, *it is caused solely by the decisions of the non-party ACIS CLOs or U.S. Bank* to withhold distributions. (*See id.* at ¶ 1)

Plaintiffs claim that the withheld funds are intended to cover indemnity obligations to Plaintiffs that *could arise if* DAF/CLOH file suit against the Plaintiffs. (*See id.*) But the alleged "injury" arises solely from the subjective fears and unilateral conduct of the ACIS CLOs or U.S. Bank. *See Bandler v. Town of Woodstock*, 832 F. App'x 733, 734 (2d Cir. 2020) (upholding denial of standing on traceability grounds); *Taylor v. Bernanke*, No.

13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing").

The mere *possibility* of future litigation is not an injury giving rise to a justiciable "case or controversy." *See Election Computer Servs., Inc. v. Aristotle Pub., Inc.*, No. 96 CIV. 5947(DAB), 1997 WL 438798, *2 (S.D.N.Y. Aug. 4, 1997) (mem. op.) ("The *possibility* of future litigation alone, however, is not sufficient to establish an actual controversy necessary for declaratory relief") (emphasis added). The "injury-in-fact" requirement of Article III is satisfied only by an injury that is "actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (quotation marks omitted). In the declaratory-judgment context, "the question we must ask is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Olin Cop. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (citations omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (emphasis in original). Thus, the United States Supreme Court has "repeatedly reiterated that [a] 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of

*possible* future injury' are not sufficient." *Id.* (emphasis in original) (citation omitted). Plaintiffs argue that declaratory relief is proper to relieve them from "the Damoclean threat of impending litigation," *see Museum of Mod. Art. V. Schoeps*, 549 F. Supp. 2d 543, 547 (S.D.N.Y. 2008), but there are no such impending threats here.

In *Modern Art*, defendant's counsel sent a letter threatening to "take whatever actions [they] deem[ed] appropriate to protect the rights of [their] clients," and the plaintiff museums "promptly initiated [the] action for declaratory relief, asking the Court to find that [the defendant] ha[d] no valid claim to the paintings." *See id.* at 545. Here, however, in contrast to *Modern Art*, DAF/CLOH has not consistently threatened to take action, and Plaintiffs did not promptly file this lawsuit upon receipt of DAF/CLOH's May 8, 2020 letter—instead, Plaintiffs waited more than 19 months. Thus, unlike *Modern Art*, there is no "Damoclean threat of *impending* litigation" - nor is there any other threat *of sufficient immediacy and reality* to warrant issuance of a declaratory judgment.

Further, Plaintiffs have built a war chest of undistributed funds to cover defense and judgment costs that might arise in any hypothetical universe where a lawsuit is filed. *See Koons v. XL Ins. Am., Inc.*, 620 F. App'x 110, 112-13 (3d Cir. 2015) (holding that where a plaintiff has been fully indemnified for an injury forming the basis of its lawsuit, the plaintiff no longer has the requisite personal interest in the litigation to satisfy Article III's case or controversy requirement); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Ill. Corp.*, 110 F.R.D. 615, 618 (N.D. Ill. 1986) (directors had no claim where a third party

had fully indemnified them). Indeed, as of June 24, 2021, the war chest included at least $30 million of indemnity funds.[11] The war chest likely increased since that time because the ACIS CLOs had yet to liquidate other assets having an estimated market value of $21,500,000.[12] In light of the massive war chest reserved to indemnify Plaintiffs for any hypothetical liability they might incur, they have effectively failed to allege any actual or even anticipated injury.

**(b) Plaintiffs' alleged "injury" will not be redressed by the requested relief.**

Article III's case-or-controversy provision requires Plaintiffs to "show a 'substantial likelihood that the requested relief will remedy *the alleged injury in fact*.'" *Sprint Communications Co., L.P. v. APCC Svcs., Inc.*, 554 U.S. 269, 287 (2008) (citation omitted) (emphasis in original). The Complaint fails in this regard.

Plaintiffs claim they seek to free up funds for distribution to Holders of Subordinated Notes, but the requested declarations do not require U.S. Bank or the ACIS CLOs to issue final distributions. (*See* ECF No. 15 at p. 23) Indeed, Plaintiffs seek a declaration that DAF/CLOH lack standing to bring vaguely described claims, but that declaration could not redress the alleged injury. Rather, the declarations speak only to DAF/CLOH's standing *at the time of judgment*; it would not prevent DAF/CLOH from later

---

[11] *See* Ex. 1 at ¶¶ 8-12 and at Ex. A, Ex. B, and Ex. C. to Ex. 1. DAF/CLOH respectfully request that the Court also take judicial notice of Exhs. A, B, and C to Ex. 1, for purposes of this Motion. *See Weston Funding,* 451 F. Supp.2d at 587-588.
[12] *See id.*

acquiring standing. *See N.Y. Bankers Ass'n, Inc. v. City of N.Y.*, No. 13 Civ. 7212(KPF), 2014 WL 4435427, *14 (S.D.N.Y. Sep. 9, 2014) ("'A party without standing may later acquire it'") (citation omitted).

Thus, even if DAF/CLOH presently lack standing to maintain claims against the Plaintiffs, there is nothing barring DAF/CLOH from later establishing standing to sue. *See N.Y. Bankers Ass'n*, 2014 WL 4435427 at *14 ("'A party without standing may later acquire it'"). Because Plaintiffs' requested declaration on standing—which is not a decision on the merits—would not prevent DAF/CLOH from later establishing standing and suing on the claims at issue, Plaintiff's requested relief would not redress the threat of litigation even if it were an actionable injury.

In sum, there is no "case or controversy" and, respectfully, the Court lacks subject matter jurisdiction over this lawsuit.

## 2. The Complaint should be dismissed, alternatively, because Plaintiffs are not the real parties in interest.

With limited exceptions, "[a]n action must be prosecuted in the name of the real party in interest." *See* Fed. R. Civ. P. 17(a)(1). The Court must dismiss an action not prosecuted in the name of the real party in interest if, after a reasonable time following an objection, the real party in interest has not ratified, joined in, or been substituted into the action. *See id.* at (a)(3). "Generally, courts have allowed Rule 17(a) challenges to be made pursuant to Rule 12(b)(6) . . . .'" *QS Holdco Inc. v. Bank of Am. Corp.*, No. 18-cv-824(RJS), 2019 WL 3716443, *3 (S.D.N.Y. Aug. 6, 2019).

Here, Plaintiffs allege injuries to third parties: the Holders of Subordinated Notes.[13] While Rule 17 permits the trustee of an express trust to prosecute actions in its own name rather than the trust beneficiary's name, *see id.*, and U.S. Bank has styled itself as "Trustee" in this action, the Complaint fails to allege that an express trust permits U.S. Bank to prosecute the subject claims on behalf of the Holders of Subordinated Notes. Nor does the Complaint allege that any other Plaintiff is a trustee authorized to bring such claims.

In their pre-motion letter, Plaintiffs cited an indenture provision (Section 5.6) that provides U.S. Bank the authority to sue under *Secured* Notes. But the indentures do not authorize U.S. Bank to bring claims under the Subordinated Notes. The indentures' definition of "Secured Notes" does not encompass "Subordinated Notes."[14] As Plaintiffs acknowledge in the Complaint, "the ACIS CLOs have . . . redeemed their secured notes, leaving only the subordinated notes outstanding." (*See* ECF No. 15 at ¶ 51) As the injury-by-delayed-distribution claims belong to the Holders of Subordinated Notes, and Plaintiffs have no authority to bring those claims, Plaintiffs are not the real parties in interest as required by Rule 17(a).

Accordingly, DAF/CLOH object that Plaintiffs are not the real parties in interest and, alternatively, ask the Court to dismiss the Complaint if (after a reasonable time

---

[13] The Complaint acknowledges that non-party Highland CLO Funding, Ltd. owns 100%, 100%, and 87% of the subordinated notes issued by ACIS 4, 5, and 6, respectively. (*See* ECF No. 15 at ¶ 17)
[14] *See* Footnote 10, *supra*.

following this objection) the real parties in interest (*i.e.*, the holders of the subordinated notes) have not ratified, joined in, or been substituted into this action.

## 3. The Court should exercise its discretion to refrain from declaring the litigants' rights.

"The Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Peconic Baykeeper, Inc. v. Suffolk Cty.*, 600 F.3d 180, 187 (2d Cir. 2010). Whether the Court should issue declaratory relief "may depend upon equitable considerations and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* Among other factors, the Court should consider "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved." Plaintiffs' requested declarations would not serve a useful purpose in clarifying or settling the legal issues involved, and in light of the remote, attenuated, and hypothetical nature of the "threats" identified by Plaintiffs, the Court should decline to provide declaratory relief.

## Conclusion

For the reasons stated above, Plaintiffs' Amended Complaint should be dismissed as to all claims asserted against Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd.

| | |
|---|---|
| Dated: April 18, 2022 | Respectfully submitted,<br><br>*/s/ Lindsey R. Skibell*<br>Lindsey R. Skibell<br>E-mail: rskibell@glennagre.com<br>Jewel K. Tewiah<br>E-mail: jtewiah@glennagre.com<br>GLENN AGRE BERGMAN & FUENTES LLP<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>Telephone: 212.358.5600<br><br>Sawnie A. McEntire<br>*Admitted Pro Hac Vice*<br>Texas Bar No.: 13590100<br>Fed ID #3476<br>PARSONS MCENTIRE MCCLEARY PLLC<br>1700 Pacific Avenue, Suite 4400<br>Dallas, Texas 75201<br>Telephone: (214) 237-4300<br>Fax: (214) 237-4340<br>E-mail: smcentire@pmmlaw.com<br><br>Roger L. McCleary<br>*Admitted Pro Hac Vice*Texas Bar No.: 133937000<br>Fed. ID #205<br>PARSONS MCENTIRE MCCLEARY PLLC<br>One Riverway, Suite 1800<br>Houston, Texas 77056<br>Telephone: (713) 960-7315<br>Fax: (713) 960-7347<br>E-mail: rmccleary@pmmlaw.com<br><br>**Counsel for Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO Holdco, Ltd.** |