UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br> Plaintiffs, <br><br> -against- <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> Defendants. | Case No. 1:21-cv-11059 (GHW) |

## NEXPOINT DIVERSIFIED REAL ESTATE TRUST'S MOTION TO DISMISS

**SBAITI & COMPANY PLLC**

*Mazin A. Sbaiti*
Mazin A. Sbaiti
New York Bar No. 4339057
mas@sbaitilaw.com
Griffin S. Rubin
Texas Bar No. 24121809
gsr@sbaitilaw.com
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: 214.432.2899
F: 214.853.4367

**COUNSEL FOR DEFENDANT NEXPOINT DIVERSIFIED REAL ESTATE TRUST**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.     INTRODUCTION ..............................................................................................................1

II.    BACKGROUND ................................................................................................................2

III.   ARGUMENTS AND AUTHORITIES ..............................................................................4

        A.     The Claim is Premature, Unripe, and the Court Lacks Jurisdiction .....................4

        B.     Dismissal is Proper Under the First-Filed Rule ......................................................6

        C.     The Claim Should be Dismissed on the Merits .......................................................8

IV.   CONCLUSION ...................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases**

*Acis Capital Management, L.P. et al vs. James Dondero, et al.*,
   BK-18-30264-sgj-11, BK-18-30265-sgj-11, Adversary No. 20-03060-sgj11..........................1

*Adam v. Jacobs*,
   950 F.2d 89 (2d Cir. 1991).................................................................................................7, 8

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010).................................................................................................7-8

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
   893 F.2d 26 (2d Cir. 1990)......................................................................................................7

*Emplrs Ins.  v. Fox Entm't Grp., Inc.*,
   522 F.3d 271, 275 (2d Cir. 2008)...........................................................................................6

*F.T. Mar. Servs. v. Lambda Shipholding, Ltd.*,
   533 F. Supp. 3d 149 (S.D.N.Y. 2021) ....................................................................................8

*Harris v. Steinem*,
   571 F.2d 119 (2d Cir. 1978)................................................................................................4, 5

*In re MTBE Prods. Liab. Litig.*,
   725 F.3d 65 (2d Cir. 2013).....................................................................................................4

*Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*,
   208 F.R.D. 59 (S.D.N.Y. 2002) .............................................................................................7

*Isaacs v. Bowen*,
   865 F.2d 468 (2d Cir. 1989)...................................................................................................5

*Marchi v. Bd. of Coop. Educ. Servs.*,
   173 F.3d 469 (2d Cir. 1999)...................................................................................................5

*MPM Silicones, LLC v. Union Carbide Corp.*,
   966 F.3d 200 (2d Cir. 2020)...................................................................................................4

*Nordco A.S. v. Ledes*,
   No. 95-cv-7753 (RJW), 1999 U.S. Dist. LEXIS 19605 (S.D.N.Y. 1999)..............................8

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)...................................................................................................6

*N.Y. Times Co. v. Gonzales*,
 459 F.3d 160 (2d Cir. 2006)..................................................................................................7

*Ontel Prods. v. Project Strategies Corp.*,
 899 F. Supp. 1144 (S.D.N.Y. 1995).......................................................................................6

*Revitalizing Auto Cmtys. Envtl Response Tr. v. Nat'l Grid USA*,
 10 F.4th 87 (2d Cir. 2021) ......................................................................................................5

*Samsung Elecs. Co., Ltd. v. Solas OLED Ltd.*,
 2022 U.S. Dist. LEXIS 18324 (S.D.N.Y. 2022)....................................................................7

*Simmonds v. INS*,
 326 F.3d 351 (2d Cir. 2003)................................................................................................ 5-6

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
 559 U.S. 662 (2010)...............................................................................................................4

*UA Theatre Circuit, Inc. v. Shearson Hayden Stone Inc.*,
 No. 77 Civ.908 (GLG), 1977 U.S. Dist. LEXIS 14795 (S.D.N.Y. July 27, 1977)..................4

**Rules**

FED. R. CIV. P. 13(a) .......................................................................................................................7

I.

**INTRODUCTION**

Plaintiffs complain about having to answer and litigate the claims in the *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P. et al.*, No. 1:21-cv-04384-GHW (the "Main Action"), and that they are part of a strategy by Mr. James Dondero, who they claim is behind the scenes triggering multifarious litigation, and who is not even named as a party here. Yet here they have filed a third lawsuit alleging claims that clearly—at best—should be counterclaims in the Main Action. In addition to this lawsuit and the Main Action, they recently ignited litigation in Dallas against Mr. Dondero personally, as well as against the Charitable Donor Advised Fund (the "DAF")'s subsidiary, CLO HoldCo, Ltd. ("HoldCo").[1] With this backdrop in mind, Defendant NexPoint Diversified Real Estate Trust ("NexPoint") respectfully moves to dismiss the First Amended Complaint (Doc. 15) (the "Complaint"). A few reasons justify this Motion.

*First*, whatever the alleged factual bases of the claim against NexPoint might be, it is essentially an unripe "malicious prosecution" claim. The claim against NexPoint is premature under Second Circuit precedent. It is also arguably not ripe and identifies no constitutionally cognizable injury. Therefore, this Court arguably lacks subject-matter jurisdiction over it.

*Second*, the claim should be dismissed under the first-filed rule. Even if there is a basis for subject-matter jurisdiction, the claim plainly arises out of the same transaction or occurrence as the claims in the Main Action—in fact, Plaintiffs *fully admit that it does.* Thus, if the Court possesses subject-matter jurisdiction at all, the claim should have been brought in the Main Action

---

[1] The case is *Acis Capital Management, L.P. et al vs. James Dondero, et al.*, BK-18-30264-sgj-11, BK-18-30265-sgj-11, Adversary No. 20-03060-sgj11.

as a compulsory counterclaim. Regardless of how the Main Action turns out, Plaintiffs' declaratory-judgment claim will either be rendered meritless or moot—final judgment on NexPoint's claims will be res judicata as to any claims against it in this suit.

***Third***, the claim should be dismissed on the merits. A key element thereof is successful resolution of the Main Action in Plaintiffs' favor. The Complaint fails to plead this key feature.

It is odd indeed that Plaintiffs beseeched the Court in the Main Action to stay discovery because of the cost, only then to file this action in which they supposedly intend to engage in the very same discovery that they claimed they had to avoid in the Main Action. Plaintiffs have put in issue the merits of the very claims they contend are meritless, and thus seek to initiate the very discovery into those merits that they claimed should not occur in the Main Action.

For these reasons, as more fully explicated below, NexPoint respectfully requests that the Court dismiss the claims against it without leave to amend until the Main Action is resolved.

## II.

## BACKGROUND

As the Court is aware, NexPoint and each of the Plaintiffs are parties to the Main Action before this Court. The declaratory judgment here simply seeks to declare that the claims brought by NexPoint in the Main Action were baseless—plainly a predicate to additional relief. But the bases for the declaratory judgment action have been asserted in the Main Action.

Indeed, in the Main Action, Plaintiffs raised several issues on 12(b)(6), namely:

- NexPoint lacks standing to bring any claims under the Advisers Act and lacks standing to bring claims against the RIA Defendants for breach of fiduciary duty, breach of contract, etc. *See* Main Action Docs. 83–84 (Acis Motion to Dismiss), 86–87 (Terry Motion to Dismiss), 78–79 (HCLOF Motion to Dismiss, joining other bases); and

- NexPoint's claims against U.S. Bank are foreclosed. *See* Main Action Docs. 80–81 (US Bank Motion to Dismiss).

That the Complaint seeks declaratory relief on all the same arguments is highly telling. *Compare e.g.*, *id.*, with Complaint ¶¶ 1,[2] 6,[3] 52.[4]

The Complaint further alleges that:

> [T]here is **substantial factual overlap between this Action and the NexPoint Lawsuit because they concern the same transactions, events, and property**; [sic] **identical disputed contractual provisions; and related parties**. Also as explained above, this Action seeks declaratory judgment that Defendants lack standing to bring **the same claims** alleging mismanagement of ACIS 6 by ACM, Mr. Terry, and Brigade and failure to prevent mismanagement by U.S. Bank that NexPoint brought in the NexPoint Lawsuit—namely, that ACM had effected transactions involving ACIS CLO assets that did not satisfy the WAL test and the WAM test, permitted the WARF to increase, and permitted the ACIS CLOs to incur unjustified and exorbitant fees, as well as that the Trustee had breached its duties of due care and to avoid conflicts of interest by declining to intervene.

Complaint ¶ 54 (bolding added).

The Complaint thus concedes outright that it seeks declaratory relief over the exact same issues that are presently being decided in the Main Action and which were raised via the Plaintiffs' 12(b)(6) motions. Plaintiffs did not wait for the Court to simply rule on those motions. Instead, they filed this lawsuit in an attempt to gerrymander the decision process in the preposterous claim

---

[2] Complaint ¶ 1 ("Defendant NexPoint lacks standing to bring its claims under the Advisers Act and other causes of action against Mr. Terry, ACM, and Brigade[.]").

[3] Complaint ¶ 6 ("Meanwhile, NexPoint continues to prosecute meritless claims against Plaintiffs that suffer from many of the same fatal flaws as the claims threatened by DAF and CLO HoldCo. NexPoint, like DAF and CLO HoldCo, lacks direct standing to bring its claims against Mr. Terry and ACM, and it cannot assert derivative standing on behalf of the ACIS CLOs under Cayman Islands law.").

[4] Complaint ¶ 52 ("Moreover, by asserting declaratory judgment claims against NexPoint, Plaintiffs ACM and Mr. Terry hope to obtain judicial determinations that NexPoint's **nearly identical claims** are equally meritless, to the extent NexPoint attempts to maneuver to avoid their dismissal with prejudice in the NexPoint Lawsuit. In doing so, Plaintiffs seek to free up funds that are being held in reserve from distributions to the subordinated noteholders of the ACIS CLOs to cover the ACIS CLOs' indemnity obligations to Plaintiffs and stop the unnecessary delay to the subordinated noteholders who are forced to wait for payments they would otherwise receive today.").

that spending money on this case would "free up funds" in the hands of the trustee. Complaint ¶ 52.

With these facts in mind, we turn to the substantive arguments for dismissal.

### III.

### ARGUMENTS AND AUTHORITIES

A. **THE CLAIM IS PREMATURE, UNRIPE, AND THE COURT LACKS JURISDICTION**

NexPoint respectfully joins the DAF and HoldCo's arguments as to the lack of injury being a basis to deny subject-matter jurisdiction and adds to it a lack of ripeness.

To the extent that the Complaint seeks a remedy for the filing of a frivolous or baseless lawsuit, it is in the guise of a "malicious prosecution" claim. The Second Circuit has specifically held that "a claim in the nature of a malicious prosecution, which arises out of the bringing of the main action . . . is premature prior to the determination of the main action." *Harris v. Steinem*, 571 F.2d 119, 124 (2d Cir. 1978) (internal quotation marks, citation, and emphasis omitted). In so holding, the Second Circuit was affirming the dismissal of a libel counterclaim that arose out of the filing of the main action for lack of jurisdiction. This Court's sister chamber has held that—regardless of how artfully claims like Plaintiffs' claim have been pleaded—they are essentially malicious-prosecution or sham-litigation claims, and such a "claim of malicious prosecution would have to be dismissed as premature" if filed before resolution of the main action. *See UA Theatre Circuit, Inc. v. Shearson Hayden Stone Inc.*, No. 77 Civ.908 (GLG), 1977 U.S. Dist. LEXIS 14795, at *11 (S.D.N.Y. July 27, 1977).

While none of the courts cited above expressly used the term "ripe," the lack of prudential ripeness[5] is glaring given the structure of the analysis the *Harris* court went through. For a claim to be prudentially ripe, its proponent must meet two standards: First, whether the issue is fit for judicial decision, and second, the hardship to the parties of withholding court consideration. *See Revitalizing Auto Cmtys. Envtl Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 100 (2d Cir. 2021).

"[T]he 'fitness' analysis 'is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur.'" *Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003) (quoting *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989)). The hardship analysis asks "whether the challenged action creates a direct and immediate dilemma for the parties." *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999).

Indeed, the *Harris* court's decision tracks these inquiries without expressly saying so. It first noted that the claim was contingent on the outcome of the main action, and then explained that "postponement of suits that will ordinarily not arise if plaintiff wins the main action and avoidance of the 'dangerous potentialities of counterclaims [in the nature of] malicious prosecutions as a defensive stratagem,'" was further reason to dismiss such claims, however styled or named. *See Harris*, 571 F.2d at 124. Therefore, the *Harris* court's use of the term "premature" conceivably implicated the ripeness doctrine—especially given that it was affirming a dismissal for lack of jurisdiction.

---

[5] "Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)); *see In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 109–10 (2d Cir. 2013) (comparing the constitutional and prudential aspects of ripeness). Here, NexPoint contests only prudential ripeness, as the Court should "decline to exercise its jurisdiction [because] . . . 'the case will be better decided later.'" *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 233 (2d Cir. 2020) (citation omitted).

Here, whether the claim is ripe is highly contingent on at least two future events: The first is whether the Main Action is resolved in Plaintiffs' favor, and the second is whether the claims are dismissed before that event with an imminent threat of refiling. Accordingly, the fitness inquiry reveals that the claim is not ripe. And here, there is no prejudice—the resolution of the Main Action would almost certainly dispose of the claim here one way or the other, and because all questions raised in this lawsuit will be litigated there, the dismissal of this action will not "create an immediate dilemma" for Plaintiffs. *Simmonds,* 326 F.3d at 360. Tellingly, NexPoint did not dismiss the Main Action at the first sight of a 12(b)(6) motion, as Plaintiffs alleged occurred in the past with the DAF and HoldCo. Therefore, there is no pleaded basis for the declaratory action. Thus, the hardship factor likewise runs in favor of a lack of ripeness. *Id.*

Because it will obviously not be necessary to address Plaintiffs' claims once the Main Action is done, the case is not ripe, and this Court should dismiss prudentially for lack of jurisdiction.

## B. DISMISSAL IS PROPER UNDER THE FIRST-FILED RULE

The "first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted). The rule "avoids duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995). The rule is a presumption in favor of proceeding in the case where the first complaint was filed. *Emplrs Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

This rule "determine[s] whether a cause of action needs to be adjudicated as a compulsory

counterclaim and provides that 'where there are two competing lawsuits involving substantially the same issue, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.'" *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 208 F.R.D. 59, 64 (S.D.N.Y. 2002) (citations omitted). A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," FED. R. CIV. P. 13(a), and "determining what constitutes the same 'transaction or occurrence' is whether there exists a logical relationship between the claim and the counterclaim," *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990).

Juxtaposing the claims brought by NexPoint in the Main Action and the claim brought here demonstrates that they arise out of the same transaction or occurrence. Indeed, as shown above, Plaintiffs admit that their claim arises out of the same underlying facts. And a comparison of the Rule 12(b)(6) motions brought in the Main Action shows that the issues are identical.

Therefore, *at best,* the claim brought by Plaintiffs here against NexPoint should have been brought as a compulsory counterclaim in the Main Action. *Accord Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (vacating the district court judgment and ordering the district court to dismiss an action that should have been raised as a compulsory counterclaim in the first-filed action).

Moreover, because the claim brought by the Plaintiffs is presented to the Court via the Declaratory Judgment Act, "district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule[.]" *Samsung Elecs. Co., Ltd. v. Solas OLED Ltd.*, 2022 U.S. Dist. LEXIS 18324, at *8 (S.D.N.Y. 2022) (internal quotation marks and citation omitted); *see N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 165–66 (2d Cir. 2006). Staying or dismissing the claim

against NexPoint in the instant action would comport with the "ordinarily require[d]" "sound judicial discretion" that "the second court decline consideration of the action in deference to the proceedings pending before the first court." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 724 (2d Cir. 2010); *see Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991) (explaining that the "same policies are furthered by [a] second court's exercising of judicial self-restraint" as those by a first court's issuing an injunction).

## C. THE CLAIM SHOULD BE DISMISSED ON THE MERITS

Although styled as a declaratory-judgment claim, Plaintiffs' claim seeks a declaration that the claims brought in the Main Action—or that perhaps could have been brought—are meritless. However, a key element of such a declaration would have to be that the Main Action was resolved in Plaintiffs' favor. *Accord Nordco A.S. v. Ledes*, No. 95-cv-7753 (RJW), 1999 U.S. Dist. LEXIS 19605, at *30 (S.D.N.Y. 1999) ("One of the elements of a malicious prosecution claim is that the action brought against the pleader terminated in the pleader's favor.").

Plaintiffs cannot and have not pleaded this core element. Therefore, dismissal is proper under Rule 12(b)(6) for failure to state a claim. Leave to amend should not be granted prior to the culmination of the Main Action for the reasons already set forth and because it would be futile. *See F.T. Mar. Servs. v. Lambda Shipholding, Ltd.*, 533 F. Supp. 3d 149, 155 (S.D.N.Y. 2021).

Dated: May 6, 2022                    Respectfully submitted,

**SBAITI & COMPANY PLLC**

*Mazin A. Sbaiti*
Mazin A. Sbaiti
New York Bar No. 4339057
mas@sbaitilaw.com
Griffin S. Rubin
Texas Bar No. 24121809
gsr@sbaitilaw.com
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: 214.432.2899
F: 214.853.4367

**COUNSEL FOR DEFENDANT NEXPOINT DIVERSIFIED REAL ESTATE TRUST**