UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, and ACIS CAPITAL MANAGEMENT, L.P.,

    *Plaintiffs*,

v.

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., and NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

    *Defendants*.

Case No. 1:21-cv-11059-GHW

---

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NEXPOINT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Misha Boutilier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (202) 574-1200
  *Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

I.     PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS ARE RIPE ............................ 4

II.    NEITHER THE FIRST-FILED RULE NOR THE COMPULSORY
COUNTERCLAIM RULE BARS PLAINTIFFS' CLAIMS ........................................... 9

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page**

### Cases

*Adam v. Jacobs*,
  950 F.2d 89 (2d Cir. 1991) ............................................................................................ 9, 10

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010) ................................................................................................ 9

*Burke v. Bimbo Bakeries USA, Inc.*,
  2020 WL 4547219 (S.D.N.Y. Aug. 6, 2020), *reconsideration denied*, 2020 WL
  5518469 (S.D.N.Y. Sept. 14, 2020) .................................................................................. 10

*Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*,
  47 A.D.3d 608 (2d Dep't 2008) .......................................................................................... 6

*Emplrs Ins. v. Fox Entm't Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008) ................................................................................................ 9

*Great Am. Ins. Co. v. A.G. Ship Maint. Corp.*,
  368 F. Supp. 2d 364 (S.D.N.Y. 2005) ............................................................................... 10

*Harris v. Steinem*,
  571 F.2d 119 (2d. Cir. 1978) ............................................................................................... 6

*Horowitz v. 148 S. Emerson Assocs. LLC*,
  888 F.3d 13 (2d Cir. 2018) ............................................................................................ 9, 10

*Inn-One Home, LLC v. Colony Speciality Ins. Co.*,
  2020 WL 3456823 (D. Vt. June 24, 2020) ....................................................................... 10

*Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*,
  208 F.R.D. 59 (S.D.N.Y. 2002) .......................................................................................... 9

*Levin v. Epshteyn*,
  2014 WL 1408523 (N.Y. Sup. Ct. Apr. 4, 2014) ................................................................ 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................................ 5

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013) .................................................................................................. 5

*Mutual Fire, Marine & Inland Ins. Co. v. Adler*,
  726 F. Supp. 478 (S.D.N.Y. 1989) ................................................................................... 10

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010) ................................................................................................ 9

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) .......................................................................................... 5, 7

*Ontel Prods. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y. 1995) .................................................................................. 9

*Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*,
   10 F.4th 87 (2d Cir. 2021) .............................................................................................. 5, 7

*Samsung Elecs. Co., Ltd. v. Solas OLED Ltd.*,
   2022 U.S. Dist. LEXIS 18324 (S.D.N.Y. 2022) .............................................................. 9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ......................................................................................................... 5

*Target Corp. v. Frederick Mut. Ins. Co.*,
   302 F. Supp. 3d 695 (E.D. Pa. 2018) .............................................................................. 11

*U.S. Bank Nat'l Ass'n. v. Triaxx Asset Mgmt. LLC*,
   2021 WL 4993895 (S.D.N.Y. Oct. 26, 2021) .................................................................. 6

*UA Theatre Circuit, Inc. v. Shearson Hayden Stone Inc.*,
   1977 U.S. Dist. LEXIS 14795 (S.D.N.Y. July 27, 1977) ................................................. 6

Plaintiffs U.S. Bank, National Association, in its capacity as trustee ("U.S. Bank" or the "Trustee"), Joshua N. Terry ("Mr. Terry"), and Acis Capital Management, L.P. ("ACM," and, collectively with the Trustee and Mr. Terry, "Plaintiffs") submit this memorandum in opposition to Defendant NexPoint Diversified Real Estate Trust's ("NexPoint") motion to dismiss the Amended Complaint (Dkt. 46, the "Motion" or "Mot.").

**PRELIMINARY STATEMENT**

NexPoint's Motion raises various challenges to Plaintiffs' declaratory judgment claims against NexPoint on the basis that the issues raised here are fully presented in a related case before this Court, *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P.*, Case No. 1:21-cv-04384-GHW (the "NexPoint Lawsuit"). NexPoint's Motion ignores that Plaintiffs' claims here were brought precisely to ensure that the Court presiding over the NexPoint Lawsuit has jurisdiction, and the opportunity, to fully resolve the entire dispute among the parties. Plaintiffs believe that the Court has subject matter jurisdiction to do so in the NexPoint Lawsuit. In the event the Court determines otherwise, or NexPoint attempts to preclude the Court from finally adjudicating the claims, Plaintiffs have brought this case to provide the Court with alternative jurisdictional grounds to reach a complete resolution of the dispute.

NexPoint's arguments for dismissal of Plaintiffs' declaratory judgment claims are meritless. *First*, NexPoint argues that Plaintiffs' claims are not ripe, because they may be resolved in the NexPoint Lawsuit. But the NexPoint Lawsuit is merely an alternative path to resolve the parties' concededly ripe dispute. The fact that the NexPoint Lawsuit *might* resolve the claims here means that the claims here might be mooted or subject to judicial estoppel if the Court rules in the NexPoint Lawsuit first. It does not mean the claims are not ripe, and NexPoint's effort to defeat ripeness by mischaracterizing Plaintiffs' declaratory judgment claims as premature malicious prosecution claims is meritless. *Second*, NexPoint argues that Plaintiffs' claims are barred by the

1

first-filed rule. But that rule does not apply to related lawsuits filed before the same judge. *Third*, NexPoint argues that Plaintiffs' claims cannot be brought here because they are mandatory counterclaims in the NexPoint Lawsuit. But the time to bring mandatory counterclaims in the NexPoint Lawsuit has not yet arrived, and there is no basis for forcing Plaintiffs to wait to file their declaratory judgment claims against NexPoint until the time for mandatory counterclaims—which might never come if the Court were to find it lacks subject matter jurisdiction over NexPoint's state law claims or NexPoint otherwise withdraws its claims before the Court has the opportunity to finally resolve them.

Because Plaintiffs' declaratory judgment claims are ripe, appropriate for declaratory judgment, and properly before this Court, NexPoint's Motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs brought this action to address NexPoint's ongoing lawsuit related to its investments in ACIS CLO 2015-6 Ltd. ("ACIS 6" and, collectively with ACIS CLO 2014-4 Ltd. ("ACIS 4"), and ACIS CLO 2014-5 Ltd. ("ACIS 5"), the "Acis CLOs"). Dkt. 15 ("Complaint" or "AC") ¶ 1. Plaintiffs are hopeful that their declaratory judgment claims against NexPoint will be mooted by dismissal, with prejudice, of the NexPoint Lawsuit. Plaintiffs have brought this declaratory judgment action against NexPoint out of an abundance of caution in the event the Court in the NexPoint action either determines it lacks subject matter jurisdiction to fully resolve the matters before it, or the claims are otherwise withdrawn by NexPoint before they are finally resolved.[1] This case provides an alternate route to the full and final resolution of all claims between the parties.

---

[1] Entities controlled by James Dondero, who also controls NexPoint, twice commenced lawsuits against Plaintiffs (and others) based on the same allegations in the NexPoint Lawsuit, only to

2

The Acis CLOs are investment funds organized in the Cayman Islands with independent Cayman Islands-based directors. AC ¶¶ 15, 25. The Acis CLOs raised money in 2014 and 2015 by issuing notes to investors in private offerings. U.S. Bank serves as the Acis CLOs' Trustee. *Id.* ¶¶ 9, 27. One investor, Highland CLO Funding, Ltd. ("HCLOF"), purchased and continues to hold all of the junior-most subordinated notes (the "Subordinated Notes") issued by ACIS 4 and ACIS 5, and 87% of the Subordinated Notes issued by ACIS 6. *Id.* ¶¶ 17, 25. NexPoint purchased and continues to hold the remaining 13% of Subordinated Notes issued by ACIS 6.[2] *Id.* ¶ 17. The Acis CLOs repaid all of their outstanding notes except for the Subordinated Notes in mid-2021. *Id.* ¶ 51.

ACM acts as portfolio manager and investment advisor for the Acis CLOs. AC ¶¶ 11, 26. Brigade Capital Management, L.P., is ACM's sub-advisor. *Id.* ¶ 16. James Dondero was the original majority owner of ACM. *Id.* ¶ 28. In January 2019, a federal bankruptcy court in Texas transferred ownership of ACM to Mr. Terry in satisfaction of an unpaid judgment that Mr. Terry held against ACM. *Id.* ¶¶ 28-31.

Since that time, Mr. Dondero has carried out a litigation campaign against Mr. Terry, including through claims brought by NexPoint. On May 14, 2021, Mr. Dondero caused NexPoint to bring both federal claims and state law claims against Plaintiffs in this District. *Id.* ¶ 44. The NexPoint Lawsuit seeks millions of dollars in damages from Plaintiffs for alleged mismanagement of ACIS 6 and caused disruption in ACIS 6's normal operations by delaying distributions to HCLOF, the principal holder of ACIS 6's Subordinated Notes. AC ¶¶ 46, 51. Plaintiffs moved to

---

voluntarily dismiss the actions, thereby precluding the Court from resolving the alleged claims. *See* AC ¶ 2.

[2] Before November 8, 2021, NexPoint's name was NexPoint Strategic Opportunities Fund. *See* Dkt. 34.

3

dismiss NexPoint's claims for, among other issues, lack of direct or derivative standing under Cayman Islands law. NexPoint Lawsuit, Case No. 1:21-cv-04384-GHW, Dkt. 84 at 11-17. Plaintiffs' motions are fully briefed and before the Court for decision.

One question raised by that briefing, and at the pre-motion conference before this Court, was whether the Court has subject matter jurisdiction to resolve certain state law claims in the NexPoint Lawsuit. It is Plaintiffs' position that the Court does have subject matter jurisdiction to do so. NexPoint Lawsuit, Dkt. 84 at 9-11. In the event the Court finds otherwise, Plaintiffs seek declaratory judgment on the same issue that is already before the Court on Plaintiffs' motions to dismiss the NexPoint Lawsuit: NexPoint's lack of direct and derivative standing under Cayman Islands law to advance the claims it brought in the NexPoint Lawsuit against ACM and Mr. Terry. *Compare* AC ¶¶ 61, 63, 65, *with* NexPoint Lawsuit, Dkt. 84 at 11-17. Plaintiffs' declaratory judgment claims in this action ensure that NexPoint's claims will not be left unresolved if the Court were to find that its jurisdiction does not extend to NexPoint's state law claims or NexPoint otherwise makes a tactical decision to withdraw the claims in an effort to preclude the Court from resolving the claims.[3]

## ARGUMENT

### I. PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS ARE RIPE

Plaintiffs' declaratory judgment claims are ripe because they are primed for adjudication and judgment would end the hardship to ACM, Mr. Terry, and the Subordinated Noteholders that

---

[3] Edge Act jurisdiction covers this entire action because the Trustee is bringing both counts, AC ¶ 20, so supplemental jurisdiction is not necessary; in contrast, in the NexPoint Lawsuit, the Court might need to resort to supplemental jurisdiction if it were to dismiss all federal claims and all claims against the Trustee, *see* NexPoint Lawsuit, Dkt. 84 at 9. The Court nonetheless has supplemental jurisdiction over Plaintiffs' non-Advisers Act and non-TIA declaratory judgment claims in this action because they arise from the same facts as the Advisers Act and TIA claims. AC ¶ 21.

the NexPoint Lawsuit caused. NexPoint does not contest that constitutional ripeness is met (Mot. at 5 n.5), because it cannot—there is nothing "conjectural or hypothetical" about the claims that NexPoint in fact brought and continues to pursue against Plaintiffs in the NexPoint Lawsuit. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013). Instead, NexPoint challenges (Mot. at 5 n.5) prudential ripeness, a "narrow exception to the strong principle of mandatory exercise of jurisdiction" that the Supreme Court has ruled must be applied with "caution."[4] *Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 102 (2d Cir. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)).

That narrow exception plays no role here because Plaintiffs' claims easily satisfy both prudential ripeness factors: fitness for judicial decision and hardship. Plaintiffs' claims are "fit[] . . . for judicial decision" because they have "sharpened into a live case." *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 691 (2d Cir. 2013). NexPoint has already sued Plaintiffs and, as NexPoint acknowledges, the issues on which Plaintiffs seek declaratory judgment in this action are already before the Court on Plaintiffs' motions to dismiss the NexPoint Lawsuit. *See* Mot. at 2-3. NexPoint cannot claim that Plaintiffs' declaratory judgment claims based on "the same arguments" are somehow unripe. *Id.* at 3. Further, withholding resolution of Plaintiffs' claims would cause hardship to ACM, Mr. Terry, and the Subordinated Noteholders by perpetuating the "direct and immediate dilemma" that NexPoint's actions have already produced, *see Nat'l Org. for Marriage*, 714 F.3d at 691—the threat of millions of dollars in liability,

---

[4] Because NexPoint does not contest constitutional ripeness and only challenges prudential ripeness, its unsupported assertion (Mot. at 1) that the Court "lacks subject-matter jurisdiction" is incorrect—prudential ripeness does not concern subject matter jurisdiction and only applies "where jurisdiction exists." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d at 110.

disruption of the Acis CLOs' operations, and delayed distributions to the Subordinated Noteholders. AC ¶¶ 7, 51. Plaintiffs brought this action to resolve those hardships in the event that the NexPoint Lawsuit does not fully resolve them. *Id.* ¶ 52. NexPoint's contrary arguments are meritless:

*First*, NexPoint mischaracterizes Plaintiffs' declaratory judgment claims as malicious prosecution claims that are "premature" prior to the determination of the NexPoint Lawsuit. *See* Mot. at 4. They are not. Plaintiffs' claims are quintessential declaratory judgment claims because they seek to free ACM and Mr. Terry from NexPoint's ongoing prosecution of meritless claims that threaten them with millions of dollars in liability. AC ¶¶ 6-7, 51-52; *see, e.g., U.S. Bank Nat'l Ass'n. v. Triaxx Asset Mgmt. LLC*, 2021 WL 4993895, at *8 (S.D.N.Y. Oct. 26, 2021) (declaratory judgment proper where defendants "have not merely threatened suit; they have sued"). Plaintiffs' claims are not in the nature of malicious prosecution because Plaintiffs (1) seek declaratory judgment, not compensatory damages, (2) have not alleged that NexPoint "interfere[d] with [their] person or property because of resort to a provisional remedy," and (3) do not require the Court to resolve whether NexPoint acted with malice. *See Levin v. Epshteyn*, 2014 WL 1408523, at *10 (N.Y. Sup. Ct. Apr. 4, 2014) (establishing elements of malicious prosecution); *Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*, 47 A.D.3d 608, 609 (2d Dep't 2008) (similar).[5] Because Plaintiffs' declaratory judgment claims are not "in the nature of [] malicious prosecution"

---

[5] NexPoint's reliance (Mot. at 4) on *Harris v. Steinem*, 571 F.2d 119 (2d. Cir. 1978) and *UA Theatre Circuit, Inc. v. Shearson Hayden Stone Inc.*, 1977 U.S. Dist. LEXIS 14795(S.D.N.Y. July 27, 1977) for the proposition that Plaintiffs' declaratory judgment claims are "in the nature of malicious prosecution" is therefore misplaced. Both cases involved counterclaims for damages, in one case for libel contained in the complaint, *Harris*, 571 F.2d at 124, and, in the other case, for interference with business relations caused by a lawsuit, *UA Theatre*, 1977 U.S. Dist. LEXIS 14795, at *4-5. Further, *UA Theatre* rejected the argument that the counterclaims were in the nature of malicious prosecution. *Id.* at *12.

(*contra* Mot. at 4), NexPoint cannot transplant the rule that malicious prosecution claims are "premature if filed before resolution of the main action" (*id.* (quotation omitted); *see id.* at 5, 8) onto Plaintiffs' claims.

*Second*, NexPoint asserts that Plaintiffs' claims are not ripe for decision because they are "contingent" on the resolution of the NexPoint Lawsuit. *See* Mot. at 6. But NexPoint conflates "the fitness of the issues for judicial decision," *see Nat'l Org. for Marriage*, 714 F.3d at 691, with the sequence of adjudicating this action and the related NexPoint Lawsuit. Plaintiffs' claims for declaratory judgment regarding NexPoint's standing to bring litigation are fit for adjudication because NexPoint has already sued Plaintiffs, thus putting NexPoint's standing to bring those claims at issue. Indeed, NexPoint's standing to sue is not only fit for judicial decision but has already been submitted for judicial decision in the Plaintiffs' motions to dismiss in the NexPoint Lawsuit. The only future contingencies NexPoint identifies—the Court's ruling on the motions to dismiss and whether NexPoint responds to that ruling by refiling (Mot. at 6)—"are not determinative" or "necessary to resolv[e]" Plaintiffs' claims because they only concern the sequence of adjudication, not whether NexPoint's standing to sue is fit for adjudication. *See Revitalizing Auto Communities Env't Response Tr.*, 10 F.4th at 100. While a favorable ruling on Plaintiffs' motions to dismiss "would likely be res judicata" against NexPoint in this action, as NexPoint admits, *see* Dkt. 38 at 3, the NexPoint Lawsuit is not necessary to resolve Plaintiffs' claims, as the Court is equally capable of resolving NexPoint's standing to sue in this action, whether before or after the NexPoint Lawsuit has been resolved.[6] In any event, as a practical

---

[6] Further confirming that Plaintiffs' claims are ripe, if the Court were to dismiss NexPoint's federal claims and decline to exercise supplemental jurisdiction over NexPoint's remaining claims, then Plaintiffs' claims "could remain unresolved" absent this action. *See Revitalizing Auto Communities Env't Response Tr.*, 10 F.4th at 101.

matter, Plaintiffs have no intention of prosecuting their claims against NexPoint in this action further if the Court finds it has jurisdiction to fully resolve the issues in the NexPoint Lawsuit and otherwise has the opportunity to address the merits of the claims. Thus, Plaintiffs' claims against NexPoint in this action will not cause any waste or duplication; they merely exist to preserve this Court's jurisdiction over the full scope of the NexPoint Lawsuit in the event NexPoint has brought that suit in a manner that fails to properly invoke this Court's jurisdiction over all of NexPoint's claims or the claims are otherwise withdrawn before they are resolved.

*Third*, NexPoint asserts that Plaintiffs do not face "an immediate dilemma" because the NexPoint Lawsuit will "dispose of [Plaintiffs'] claim[s]." *See* Mot. at 6. NexPoint relatedly asserts (*id.* at 7-8) that the Court should exercise discretion to dismiss Plaintiffs' request for declaratory relief because the dispute with NexPoint is not ripe in light of the NexPoint Lawsuit. Plaintiffs agree that the motions to dismiss in the NexPoint Lawsuit should fully resolve the dispute among the parties but have brought this case in the event the Court finds it lacks subject matter jurisdiction to resolve the NexPoint Lawsuit. The NexPoint Lawsuit itself has caused an immediate dilemma because NexPoint is seeking millions of dollars in damages from Plaintiffs. AC ¶¶ 43-46, 51-52. That dilemma persists every day NexPoint continues to prosecute the NexPoint Lawsuit. *Id.* ¶¶ 51-52. But dismissal of the NexPoint Lawsuit for lack of jurisdiction, rather than on the merits, will not resolve the dispute among the parties. Thus, the pendency of the NexPoint Lawsuit does not undermine the ripeness of this case, it merely provides an alternative path to resolve already ripe issues presented in this case. Plaintiffs are hopeful that those issues can be resolved in full in the NexPoint Lawsuit but have brought this lawsuit in case they cannot or are not.

**II.     NEITHER THE FIRST-FILED RULE NOR THE COMPULSORY COUNTERCLAIM RULE BARS PLAINTIFFS' CLAIMS**

NexPoint does not dispute that the NexPoint Lawsuit and this action are related cases that are both before this Court or that Plaintiffs moved to dismiss the NexPoint Lawsuit instead of filing a responsive pleading. Mot. at 2-3. NexPoint's argument that the first-filed or compulsory counterclaim rules nonetheless bar this action is unavailing.

*First*, NexPoint misconstrues the first-filed rule as granting the Court discretion to bar Plaintiffs' claims because they postdate the NexPoint Lawsuit. *See* Mot. at 6-8. The first-filed rule does not do so. As NexPoint's own cited authority holds, the "first-filed rule . . . ***determine[s] the proper venue***[] where there are two competing lawsuits" filed in different districts.[7] *Id.* at 6 (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (emphasis added) (upholding denial of motion to transfer lawsuit filed in this District to the Eastern District of Louisiana)). But venue is not in dispute here because both lawsuits are pending in this District. Moreover, "[t]he 'first-filed' rule has no import where, as here, the two cases at issue reside on the docket of the same district judge." *Horowitz v. 148 S. Emerson Assocs. LLC*, 888

---

[7] NexPoint's other cited cases also concerned venue disputes. Mot. at 6-8 (citing *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (applying first-filed rule to determine proper venue for "lawsuits . . . pending in two federal districts"); *Emplrs Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (applying first-filed rule to determine proper venue for lawsuits pending in this District and the Central District of California); *Internet L. Libr., Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59, 64 (S.D.N.Y. 2002) (finding that Texas court applied first-filed rule in transferring later-filed Texas action to this District); *Adam v. Jacobs*, 950 F.2d 89, 93-94 (2d Cir. 1991) (applying first-filed rule to dismiss competing lawsuit in this District filed after Eastern District of Michigan lawsuit); *Samsung Elecs. Co., Ltd. v. Solas OLED Ltd.*, 2022 U.S. Dist. LEXIS 18324, at *8-9 (S.D.N.Y. 2022) (applying first-filed rule on motion to transfer case from this District to the Eastern District of Texas); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 723-24 (2d Cir. 2010) (staying action in this District in favor of first-filed Texas action).

F.3d 13, 22 (2d Cir. 2018).[8]  The rule would thus serve no purpose in this case because "[t]he able district judge is perfectly capable of consolidating the[] [two cases] as necessary," *id.*, which the Court effectively has already done by treating this action and the NexPoint Lawsuit as related.

*Second*, NexPoint stretches to assert that the compulsory counterclaim rule applies to bar Plaintiffs' claims in this action before Plaintiffs have even filed a responsive pleading in the NexPoint Lawsuit.  *See* Mot. at 7.  The compulsory counterclaim rule will only be triggered if and when Plaintiffs file an answer or other pleading in the NexPoint Lawsuit.[9]  *See Great Am. Ins. Co. v. A.G. Ship Maint. Corp.*, 368 F. Supp. 2d 364, 366 (S.D.N.Y. 2005).  Plaintiffs did not trigger that rule in the NexPoint Lawsuit because they moved to dismiss NexPoint's complaint instead of answering or filing a pleading.  *Id.* (filing a motion to dismiss did not trigger compulsory counterclaim rule because it was not a "pleading" under the Federal Rules); *see also Mutual Fire, Marine & Inland Ins. Co. v. Adler*, 726 F. Supp. 478, 482 (S.D.N.Y. 1989) (same).  If the Court grants Plaintiffs' motions to dismiss, Plaintiffs will never be required to answer, and the compulsory counterclaim rule will never apply.  *Mutual Fire*, 726 F. Supp. at 482 (compulsory counterclaim rule did not bar claims asserted in subsequent action because "the procedural stage at which [plaintiff] would be required to file an answer [in first action] was never reached"); *see also Great Am. Ins. Co.*, 368 F. Supp. 2d at 366 (similar).  And in the interim, while the Court's

---

[8]  *See also Burke v. Bimbo Bakeries USA, Inc.*, 2020 WL 4547219, at *2 (S.D.N.Y. Aug. 6, 2020) (following *Horowitz* and declining to apply first-filed rule to "cases with similar claims and parties . . . pending in the same court"), *reconsideration denied*, 2020 WL 5518469 (S.D.N.Y. Sept. 14, 2020); *Inn-One Home, LLC v. Colony Speciality Ins. Co.*, 2020 WL 3456823, at *3 (D. Vt. June 24, 2020) ("the first-filed rule is inapplicable to cases 'resid[ing] on the docket of the same district judge'") (quoting *Horowitz*, 888 F.3d at 22).

[9]  NexPoint's reliance (Mot. at 7) on *Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991), is misplaced because the plaintiffs in that case had been required to file a pleading in the first-filed action, thus triggering the compulsory counterclaim rule; indeed, the defendant had to commit to "not oppose the filing of counterclaims" in the first-filed action because they otherwise would have been untimely, *see* 950 F.2d at 94.

10

decision on those motions is pending, the compulsory counterclaim rule does not apply. *See*, *e.g.*, *Target Corp. v. Frederick Mut. Ins. Co.*, 302 F. Supp. 3d 695, 699 n.29 (E.D. Pa. 2018) (rejecting argument that plaintiff's claims should have been brought as compulsory counterclaims in previously-filed action as "premature" because plaintiff "need not file compulsory counterclaims" until the court ruled on its motion to dismiss that action).

Once again, as a practical matter, Plaintiffs do not intend to prosecute the claims against NexPoint in this action separately from the NexPoint Lawsuit. Plaintiffs are hopeful that the motion to dismiss the NexPoint Lawsuit will resolve all issues raised by Plaintiffs' declaratory judgment claim against NexPoint here. In the event the Court determines it lacks subject matter jurisdiction to resolve certain claims raised in the NexPoint Lawsuit or NexPoint withdraws its claims before they are resolved, that lawsuit will no longer exist and the declaratory judgment claims in this case afford an alternative path to fully resolving the dispute between the parties. With this context, NexPoint's arguments about the first-filed rule and the compulsory counterclaim rule are not only doctrinally flawed, but also seek to resolve a problem that does not exist. There ultimately will be only one litigation prosecuted to conclusion before this Court concerning the dispute between Plaintiffs and NexPoint, and the filing of this lawsuit is not intended to achieve any different process.

## CONCLUSION

For the reasons stated above, the Motion should be denied.

Dated: New York, New York
      May 27, 2022                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                                   By: */s/ Jonathan E. Pickhardt*
                                                       Jonathan E. Pickhardt
                                                       Blair A. Adams
                                                       Misha Boutilier

>51 Madison Avenue, 22nd Floor
>New York, New York 10010
>(212) 849-7000
>
>*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*
>
>**SEWARD & KISSEL LLP**
>
>By: */s/ Mark D. Kotwick*
>  Mark D. Kotwick
>  Thomas Ross Hooper
>  Julie J. Hong
>  One Battery Park Plaza
>  New York, New York 10004
>  (202) 574-1200
>
>*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

12