IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT STRATEGIC OPPORTUNITIES FUND,<br><br>*Defendants*. | No. 1:21-cv-11059 (GHW)<br><br>**Oral Argument Requested** |

**THE DAF DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO THE DAF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd. ("DAF Defendants" or "Defendants") submit this Reply to Plaintiffs' Memorandum of Law in Opposition to the DAF Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 61) ("Response"). In sum, the Response adds nothing consequential to the jurisdictional issue, and Defendants' Motion to Dismiss the Amended Complaint (ECF No. 41-1) ("Motion") should be granted.

This is a Declaratory Judgment Action in a futile search for an actual, justiciable case or controversy. Regarding Plaintiffs' argument this action was filed to "address the

DAF Defendants' continuing threat of litigation . . . ,"[1] the Response, like Plaintiffs' Amended Complaint ("Amended Complaint" or "AC"), is devoid of any plausible allegation that meets Plaintiffs' burden to demonstrate that any such "litigation" is more than conjectural or hypothetical, and is instead real, certainly impending, and imminent.[2] Instead, the Response relies upon misdirection contradicted by the Plaintiffs' pleadings and the exhibits attached to those pleadings.

For example, Plaintiffs mischaracterize the NexPoint Lawsuit as a "near-carbon copy" of lawsuits Defendants *dismissed nearly two-and-a-half years ago*. (*See* Response at 7) Plaintiffs also say NexPoint Diversified Real Estate Trust ("NexPoint") asserts "virtually copied and pasted" claims asserted in those lawsuits. (*See id.* at 13) Yet, NexPoint's claims are manifestly distinct because, among other reasons, they: (a) belong to NexPoint and were NOT filed by Defendants;[3] and (b) state *different federal causes of action* never raised by Defendants (who, as the Response admits, unlike NexPoint, are **not** direct investors in the Acis CLOs at issue) (*see id.* at 3).[4] Moreover, by definition, voluntary dismissals of the earlier lawsuits did just that – "dismissed" any actual or purported threats specifically from those lawsuits. Contrary to Plaintiffs' suggestions, Defendants' letter sent on May 8,

---

[1] Response at 2.

[2] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Election Computer Servs., Inc. v. Aristotle Pub., Inc.*, No. 96 CIV. 5947(DAB), 1997 WL 438798, *2 (S.D.N.Y. Aug. 4, 1997) (mem. op.).

[3] *See* ECF No. 15-09.

[4] Compare ECF Nos. 15-06 and 15-07 to ECF No. 15-09.

2

2020 ("May 2020 Letter") did not say that the Trustee would "face 'litigation'" if it failed to "'fulfill its duties'" (*see* Response at 5); in fact, the term "litigation" is only used in the nonwaiver/reservation paragraph of the two-year-old May 2020 Letter. (*See* ECF No. 15-8 at 8)

Plaintiffs also misquote Defendants' Motion to suggest Defendants asserted that "they may bring their threatened claims after 'later acquiring standing' regardless of how this Court rules." (Response at 15) In reality, Defendants are simply identifying the *legal proposition* that a party who lacks standing at the time of judgment may later acquire it (therefore, a declaration that Defendants lack standing *today* would not *per se* preclude future litigation; therefore, Plaintiffs' requested relief fails to redress Plaintiffs' alleged injury. As such, there is no justiciable case or controversy.

Plaintiff's contentions regarding James Dondero's ("Dondero") purported control of the DAF Defendants remain irrelevant, conclusory, self-serving, and not legally substantiated. Plaintiffs offer no support for this jurisdictional goose chase.[5] They simply do not substantiate alleged threats by (of for) the DAF Defendants, regardless of the purported control issue.[6]

---

[5] Not all allegations raised by Plaintiffs must be taken as true: Conclusory, self-serving statements are not to be accepted as true. *See Bandler v. Town of Woodstock*, 832 F. App'x 733, 734 (2d Cir. 2020) (only non-conclusory factual allegations must be accepted as true); *citing Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

[6] The public record also confirms that the contempt proceedings against Dondero on which Plaintiffs rely for this argument (*see* Response at 2, n. 2) are on appeal and are not final. *See* ECF No. 195 (*In Re Highland Cap. Mgmt., L.P.*, Case No. 20-3190-sgj11, Bankr. N.D. Tex.); ECF No. 2712 (*In Re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj11, Bankr. N.D. Tex.); Civil Docket Report (*James Dondero, et al. v. Highland Capital*

3

Plaintiffs also are not the real parties in interest. Their threat-of-litigation argument remains easily debunked. Despite their pleadings purporting to seek redress of injuries that belong to the Holders of Subordinated Notes ("Subordinated Noteholders"), Plaintiffs *now* claim that this lawsuit is brought to redress their *own* alleged injuries, not those of the Subordinated Noteholders. But Plaintiffs' Amended Complaint admits this action was brought "to stop James Dondero . . . from holding investors in subordinated notes . . . hostage . . . ." (S*ee* AC at 1, ¶ 1; *see also*, AC at 17, ¶¶ 51 and 52) The style of this case also shows otherwise—U.S. Bank filed this suit *as trustee*. By definition, a trustee acts for beneficiaries. Apparently recognizing their mistake, Plaintiffs claim, albeit implausibly, that this lawsuit was never *really* about redressing alleged injuries to Subordinated Noteholders, and this retreat is telling.

Further, Plaintiffs cannot escape their admission that "liquidation proceeds were retained to cover the ACIS CLOs' potential future indemnity obligations." (*See* AC at 17, ¶ 51).[7] Plaintiffs' decision to withhold a war chest of funds, insulating Plaintiffs from any

---

*Management, L.P.*, Case No. 3:21-cv-01979-S, Bankr. N.D. Tex.) ("Case 01979"), and Civil Docket Report (*James Dondero, et al. v. Highland Capital Management, L.P.*, Case No. 3:21-cv-01974-X, Bankr. N.D. Tex.) ("Case 01974" - into which the Case 01979 appeal was consolidated per Case 01979 at ECF No. 12).

[7] Having been indemnified before this lawsuit began, Plaintiffs are not real parties in interest under Rule 17(a). Plaintiffs claim otherwise, citing *Stoncor Gp., Inc. v. Peerless Ins. Co.*, but *Stoncor* dealt with a party's contractual rights to enforce a contract, and the case's Rule 17(a) analysis was dictum because Rule 25 applies to post-lawsuit transfers of interest. 2021 WL 2215558, *6 (S.D.N.Y. June 2, 2021) ("Peerless does not argue that Stoncor did not satisfy Rule 17's requirements at the beginning of this lawsuit. . . . Peerless argues . . . that Stoncor no longer has any real interest in the case. But such a scenario would be governed not by Rule 17, but by Rule 25 . . . . Thus, . . . Stoncor's dismissal from this case is not warranted because Rule 17's requirements do not apply to this situation").

purported exposure, is not a factually or legally valid "injury" belonging to Plaintiffs. The Response fails to demonstrate otherwise.

The Response cites scores of inapposite cases. None of the approximately forty-one (41) cases cited in the Response involves a plaintiff suing for a declaration that a defendant lacks standing to sue. Presumably, Plaintiffs would have cited such a case if it existed. But theirs is a novel theory: that a plaintiff pleads a justiciable controversy by seeking a declaration that there is no justiciable controversy. Surely, such a claim is not a prudent use of party or judicial resources.

Plaintiffs rely upon patent or trademark infringement cases that are plainly distinct. (*See, e.g.*, Response at 13-15) In patent or trademark cases, courts are more liberal in finding that an actual case or controversy exists.[8] Unlike many of Plaintiffs' cited cases, this case is not a patent or trademark dispute. In patent or trademark cases, the purpose of the Declaratory Judgment Act was fulfilled—preventing the accrual of avoidable damages by declaring the parties' rights.[9] Indeed, where a party alleges trademark or

---

[8] *See Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, -- F. Supp. 3d --, 2020 WL 1659832, *4 (W.D.N.Y. 2020) ("'the finding of an actual controversy should be determined with some liberality' in such a [trademark] case") (citation omitted); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 455 (S.D.N.Y. 2015) (same); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969) ("a liberal interpretation has been given to charges of infringement in patent cases for the purpose of taking jurisdiction in declaratory judgment actions"); *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996) ("Declaratory judgment actions involving trademarks are analogous to those involving patents . . . and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks") abrogated on other grounds by *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

[9] *See, e.g., Sasson v. Hachette Filipacchi Presse*, 15-CV-00194 (VM) (SN), 2016 WL 1599492, *4 (S.D.N.Y. Apr. 20, 2016) ("'The very purpose of the declaratory judgment procedure is to prevent the accrual' of 'avoidable damages'") (citation omitted) (magistrate's opinion); *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) ("'The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the

patent infringement, the alleged infringer must choose whether to cease the contested activity or continue its activities while perpetually risking increased exposure to liability. Not so here. The Acis CLOs have wound down, so the Plaintiffs are not at risk of perpetually accruing liability. (*See* Response at 3) Thus, for this reason and others, Plaintiffs do not seek to prevent "the accrual of avoidable damages" by obtaining a declaratory relief.

Plaintiffs cite two cases for the proposition that Defendants' post-lawsuit refusal to disclaim or release claims "confirms" Plaintiffs' "reasonable" fears of future litigation. (*See* Response at 12-13 (citing *Baur v. Veneman*, 352 F.3d 625, 637 n.11 (2d Cir. 2003); *Sketchworks Indus. Strength Comedy, Inc. v. Jacobs*, 2021 WL 1226955, *3 (S.D.N.Y. Mar. 31, 2021)) Yet, both cases are inapt,[10] and this argument begs the question of whether there was a real, certainly impending, and imminent threat at the time of suit.[11]

---

allegedly infringing party relief from uncertainty and delay regarding its legal rights'") (citation omitted); *Sketchworks Indus. Strength Comedy, Inc. v. Jacobs*, 2021 WL 1226955, *3 (S.D.N.Y. Mar. 31, 2021) ("Plaintiff is in a position of either abandoning its intention to 'perform and otherwise exploit Vape in the future . . . or risking litigation. That is the 'dilemma that it was the very purposes of the Declaratory Judgment Act to ameliorate") (citation omitted).

[10] *Baur* involved a potentially harmful food product safety issue - **not** a post-filing request for a release. Plaintiffs mischaracterize *Sketchworks* as "finding controversy **because** defendants refused plaintiffs' requests to 'provide[] assurances . . . that they would refrain from litigating'" (emphasis added). (*See* Response at 13) *Sketchworks* is another trademark/copyrights case with a distinctly different history, including (among other things) a cease and desist letter issued less than *two weeks before suit was filed*; *repeated claims of infringement only four days before the lawsuit was filed*; coerced cancellation of allegedly infringing scheduled shows; post-lawsuit withdrawal of the cease and desist letter; post-lawsuit failure to provide a covenant not to sue/release; an initial pre-trial conference *admission by defendants' counsel that counterclaims would be asserted if the case was not dismissed*; and a "present and actual injury" preventing the plaintiff from scheduling additional performances. *Id*. at *1-5.

[11] *See* n. 2 of this Reply.

Plaintiffs also fail to grapple with the obvious reality that, *at some point*, the passage of time *must* be sufficient to nullify a would-be case or controversy. In the *Micron* case, Plaintiffs point out that the court held that a justiciable controversy existed despite the passage of four years since the defendant's first litigation threat against the plaintiff. (*See* Response at 15) But that is not the whole story. Over the course of that four-year period, Mosaid Technologies, Inc. (the defendant in *Micron*) clearly signaled its intent to sue Micron Technology, Inc. (the declaratory-judgment plaintiff). The *Micron* court observed as follows:

> [T]hreatening letters and behavioral observations are not Micron's only evidence about the authenticity of this dispute. **MOSAID's recent public statements and annual reports also confirm its intent to continue an aggressive litigation strategy.** In sum, the record evidence amply supports a real and substantial dispute between these parties. The record evidence at the time of filing in the California district court strongly suggested that MOSAID **would sue Micron soon Indeed, that suit, filed only one day later, was actually pending in Texas at the time that the California district court made its ruling** [on Mosaid's motion to dismiss for lack of subject matter jurisdiction]. Thus, the parties in this dispute are really just contesting the location and right to choose the forum for their **inevitable** suit.

*Micron*, 518 F.3d at 901-02 (emphasis added). Unlike the defendant in *Micron*, there is no allegation or record here that Defendants have made any recent public statements or filed annual reports suggesting an intention to sue any of the Plaintiffs. Nor did the Defendants run to a different forum and file suit the day (or at any time) after Plaintiffs filed suit. The facts supporting jurisdiction in *Micron* are simply absent from this case.

The indemnity cases Plaintiffs cite also are off-point and have no precedential value. Each of those cases comes from the Federal Court of Claims—an Article I court—whose opinions lack precedential value here. (*See* Response at pp. 17-18 (citing *Alta Wind I Owner Lessor C v. U.S.*, 150 Fed. Cl. 152 (Fed. Cl. 2020); *Kawa v. U.S.*, 77 Fed. Cl. 294, 299 (Fed. Cl. 2007)). Under New York law, an indemnitor becomes equitably subrogated to the indemnitees' claims respecting which the indemnitor has provided indemnity. *See Fasso v. Doerr*, 12 N.Y.3d 80, 86 (2009). As shown in Defendants' Motion, Plaintiffs have been indemnified—upfront—for the potential costs of litigation and judgment. Before filing this lawsuit, Plaintiffs determined how much money would be adequate to protect and fully indemnify them against undefined and imaginary claims of the Defendants. Plaintiffs admit they withheld that amount from distribution (*see* AC at 17, ¶ 51) - contrary to Plaintiffs' speculation that the amount they determined to be adequate might not, in fact, be sufficient to cover their liability for undefined and hypothetical claims (which does not create a concrete injury supporting jurisdiction). (*See* Response at 19)

The Response also cites cases for the proposition that an *assignee* who is assigned legal title to a claim may litigate the claim even though his recovery may flow to the assignor. (*See* Response at 17-18) This is hardly a novel proposition. But whether an assignee may have standing to pursue a claim is irrelevant in this case. Here, Plaintiffs are not assignees of legal title to the Subordinated Noteholders' claims (nor have they claimed to be) and Plaintiffs fail to show otherwise despite having the burden to do so.

8

*See Citibank (South Dakota), N.A. v. Martin*, 807 N.Y.S. 2d 284, 291 (Civil Ct. 2005) ("it is essential that an assignee show its standing . . .. It is the assignee's burden to prove the assignment"). Instead, Plaintiffs provide only surface-level treatment of the subject. (Response at 23) Their Response fails to engage with the substance of the Defendants' argument that, under the Indentures, Plaintiff U.S. Bank, National Association ("U.S. Bank") has no right to litigate the Subordinated Noteholders' claims. Plaintiffs argue that U.S. Bank, as Trustee, is the real party in interest because it has the right to litigate any "rights of action and claims under this Indenture," (*see id.*) but Plaintiffs failed to show that the Subordinated Noteholders' claims arise under the Indentures (rather than under the Subordinated Notes). The Indentures plainly give U.S. Bank no right to litigate the Subordinated Noteholders' claims regarding amounts withheld by the Plaintiffs. Further, Plaintiffs conspicuously fail to explain how, even if U.S. Bank could proceed as Trustee, the other Plaintiffs would have standing to litigate the Subordinated Noteholders' claims. Thus, Plaintiffs' arguments and case law regarding assignees fail to move the needle.

## Conclusion

In sum, Plaintiffs' Response changes nothing. The Motion to Dismiss the Amended Complaint should be granted. Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd. respectfully ask this Court to grant the Motion and enter an order dismissing with prejudice Plaintiffs' Amended Complaint for lack of subject matter jurisdiction.

July 8, 2022                               Respectfully submitted,

By: /s/ *Sawnie A. McEntire*
    Sawnie A. McEntire
    *Admitted Pro Hac Vice*
    Texas Bar No.: 13590100
    Fed ID #3476
    PARSONS MCENTIRE MCCLEARY PLLC
    1700 Pacific Avenue, Suite 4400
    Dallas, Texas 75201
    Telephone: (214) 237-4300
    Fax: (214) 237-4340
    E-mail: smcentire@pmmlaw.com

    Roger L. McCleary
    *Admitted Pro Hac Vice*
    Texas Bar No.: 133937000
    Fed. ID #205
    PARSONS MCENTIRE MCCLEARY PLLC
    One Riverway, Suite 1800
    Houston, Texas 77056
    Telephone: (713) 960-7315
    Fax: (713) 960-7347
    E-mail: rmccleary@pmmlaw.com

    Lindsey R. Skibell
    E-mail: rskibell@glennagre.com
    Jewel K. Tewiah
    E-mail: jtewiah@glennagre.com
    GLENN AGRE BERGMAN & FUENTES LLP
    55 Hudson Yards, 20th Floor
    New York, NY 10001
    Telephone: 212.358.5600

**Counsel for Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.**

3105416.2