

April 27, 2023

**Via E-File**

Honorable Gregory H. Woods
U.S. District Judge
Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

  Re: *U.S. Bank, National Association, et al v. The Charitable Donor Advised Fund, L.P. et al*, Case No. 1:21-cv-11059-GHW, United States District Court, Southern District of New York

Dear Judge Woods:

  Defendant NexPoint Diversified Real Estate Investment Trust ("NexPoint") respectfully files this response to Counter-Defendants' pre-motion letters seeking permission to file motions to dismiss or for summary judgment or judgment on the pleadings. NexPoint contends that this Court should not grant leave to file the motion(s) as contemplated for the following reasons:

## A. The Motions Are Premature

  NexPoint first points out that the theories advanced for dismissal are most appropriate as motions for summary judgment (as opposed to Rule 12 motions). Yet, discovery has barely begun, and therefore, the motions are premature per Rule 56(d). The need for this discovery was discussed at the status conference, the transcript of which was attached to Plaintiffs' response to NexPoint's motion to add Brigade Capital Management, LP under Rule 13(h) (*see* Dkt 88-1 at pp. 11–12).

## B. The Motions Would Lack Merit if Brought

### (i) Tortious Interference

  Counter-Defendants on the one hand contend that NexPoint has no duties owed to it by any Counter-Defendant because all of its rights are governed by its contract with the Issuer. NexPoint has accordingly pleaded a tortious-interference-with-contract claim.[1] Thus, even if this Court were to agree with their arguments—that (i) there is no trust, (ii) there are no duties owed directly to NexPoint by any of the Counter-Defendants, and (iii) because NexPoint is not a signatory to the Indenture (and Counter-Defendants were likewise not signatories to the Indenture or the Notes), NexPoint lacks standing to bring any claim upon those instruments—NexPoint would still have a claim for tortious interference with its rights under the Notes. Counter-Defendants cite no case or

---

[1] *Lovatio v. Petróleos De Venezuela, S.A.*, No. 1:19-cv-4799, 2020 U.S. Dist. LEXIS 181114, at *10–12 (S.D.N.Y. Sept. 30, 2020) (recognizing that notes issued pursuant to an indenture are both securities and contracts).

statute holding that the alleged breach of one contract (*e.g.*, the Portfolio Management Agreement (the "PMA")) absolves them of liability for inducing the breach of another, *i.e.*, the Notes. They claim to cite caselaw that applies the economic-loss rule to preclude a tortious-interference claim, but their caselaw does not say anything near that. Counter-Defendants made no argument for dismissal of this claim otherwise.

### (ii) Fiduciary Duty/Negligence

There are alternative fiduciary-duty theories challenged. First, fiduciary duties are imposed by § 206 of the Investment Advisers Act of 1940.[2] Certain of those duties—for example, those found in § 206(4)—are owed directly to investors of advisee funds. Courts, including *Goldstein* on which they rely, have recognized that the duties under § 206(4) were not limited to those in privity with the advisor (*e.g.*, the advisor's "clients"), but extended to investors in managed funds.[3] These duties were fleshed out in Rule 206(4)-8. But because § 206(4) has already been found by the Supreme Court to impose fiduciary duties, Counter-Defendants' contention that Rule 206(4)-8 imposed no *new* fiduciary duties over and above what was already recognized is irrelevant. NexPoint contends that the breach of those duties is actionable through state fiduciary-duty law. While NexPoint admittedly has not yet found a case explicitly holding that violations of the IAA are actionable via New York state law (whether as a breach of fiduciary duty or negligence), several cases support the position that they would be,[4] and NexPoint contends that New York law separately recognizes a fiduciary obligation given the nature of the relationship of the parties.[5]

---

[2] *SEC v. Cap. Gains Rsch. Bureau, Inc*., 375 U.S. 180, 194 (1963); *Transamerica Mortg. Advisors, Inc. v. Lewis (TAMA)*, 444 U.S. 11, 17 (1979).

[3] *See Abrahamson v. Fleschner,* 568 F.2d 862, 871 (2d Cir. 1977) (finding duties owed by advisors directly to fund participants under § 206(4) because "[t]hese provisions reflect the fact that many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds"), *rev'd in part on other grounds, TAMA,* 444 U.S. at 11; *Goldstein v. SEC*, 451 F.3d 873, 881 n.6 (D.C. Cir. 2006) ("[Section 206] also applies, however, to persons other than clients." (citing 15 U.S.C. § 80b-6(4))); *United States v. Elliott*, 62 F.3d 1304, 1311 (11th Cir. 1995) (§ 206(4) duties owed to investors in funds and not merely to those in direct privity because § 206(4) does not use the word 'clients' where §§ 206(1) and (2) did").

[4] *See, e.g.*, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502–06 (3d Cir. 2013) (holding that state fiduciary-duty claims are a recognized vehicle for enforcing violations of the IAA); *Douglass v. Beakley*, 900 F. Supp. 2d 736, 751–52 & n.16 (N.D. Tex. 2012); *see also Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc*., 964 F. Supp. 783, 799 (S.D.N.Y. 1997) (fiduciary duty imposed by Investment Company Act actionable under state law), *rev'd in part on other grounds*, 282 F.3d 162 (2d Cir. 2002). *Cf., e.g.*, *Feldman v. CSX Transp., Inc.*, 821 N.Y.S.2d 85, 90 (N.Y. App. Div. 2006) (holding that breach of duties imposed by Federal Railroad Administration regulations gives rise to state tort claims).

[5] Counter-Defendants' own case, *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012), supports the position. Defendants cited the case because it denied recovery to mezzanine note holders—*i.e.*, senior debt—which is not the position NexPoint occupies. NexPoint occupied the equity position that the court acknowledged fiduciary duties would be owed.

Honorable Gregory H. Woods
April 27, 2023
Page 3

Additionally, the Indenture created a New York trust either literally or by implication.[6] Notably, when U.S. Bank sought to declare its rights and obligations under a similar indenture, it used Article 77 of the CPLR, which is strictly reserved for trusts.[7] New York also recognizes that where the traditional duties of a trustee are divided between a trustee and an investment advisor, the latter independently owes fiduciary duties to the beneficiaries, which are actionable when breached.[8] To be clear, the advisors' fiduciary duties are not coterminous with the trustee's—while the Indenture limits U.S. Bank's fiduciary duties as "Trustee," as this Court previously found, it does not waive or limit the advisors' fiduciary duties, and neither does the PMA.

As to the argument on derivative standing, *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011) is factually distinct because, there, the plaintiff conceded that it did not have a direct claim, and that it was a noteholder of the Cayman Islands issuer and thus required derivative standing. Here, NexPoint concedes no such thing given the assignment language in the Indenture, which also raises a mixed question of law and fact.

### (iii) The Equitable Claims and Negligence

Counter-Plaintiffs' remaining claims are not precluded by the existence of the PMA or other contracts because Counter-Defendants cannot enforce those agreements. Counter-Defendants ignore the fact that this was a pool of money with an identifiable share belonging to NexPoint, making them the custodians of those funds on NexPoint's behalf. To say they owed *no duty* at all not to expropriate those funds while not citing any law is a non-starter.[9] While Counter-Defendants are correct that NexPoint has no claim if there is no breach of those agreements, if Counter-Defendants violated those agreements and took what would have otherwise belonged to NexPoint, then there is no basis for application of the economic-loss rule. Granted, NexPoint may have to elect a remedy since those claims are pleaded in the alternative, but it need not do so now.

---

[6] *See Orentreich v. Prudential Ins. Co. of Am.,* 713 N.Y.S.2d 330, 331–32 (N.Y. App., 1st Dep't, 2000) ("An express trust may be created orally or in writing; no particular form of words is necessary, and it may arise by implication from the settlor's conduct [if] [a]ll of the essential elements of a trust—a designated beneficiary, a designated trustee, a clearly identifiable res, and delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee . . . have been demonstrated."); RESTATEMENT (SECOND) OF TRUSTS § 2 cmt. h (AM. L. INST. 1959).

[7] *U.S. Bank N.A. v. Xxx*, No. 650630/2021, 2021 N.Y. Misc. LEXIS 3747, at *17 (N.Y. Sup. Ct. June 28, 2021).

[8] *In re Est. of Rubin*, 540 N.Y.S.2d 944, 947 (N.Y. Sur. Ct. 1989); *Mercury Bay Boating Club, Inc. v. San Diego Yacht Club*, 557 N.E.2d 87, 95 (N.Y. 1990); 106 N.Y. Jur. 2d Trusts § 348 ("Since the relationship between a trustee and advisor is that of a cotrustee, with the advisor having the controlling power, the trustee is justified in complying with the directives of the advisor and will not, generally, be held liable for any losses."); J. R. Kemper, *Construction and Operation of Will or Trust Provision Appointing Advisors to Trustee of Executor*, 56 A.L.R.3d 1249, § 10 ("Consonant with the status of a nonbeneficiary advisor as a quasi-trustee, or assistant to a trustee, it has generally been held or recognized that such an advisor stands in a fiduciary relationship to the beneficiaries of a[] . . . trust.").

[9] *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 434-35 (S.D.N.Y. 2010) (circumstantial evidence of particular relationship may extend duty of care to investors in fund).

### C. Summary

NexPoint respectfully submits that these issues should await summary judgment, the deadline for which is just a few months away, and at which time the Court can fully consider the facts and evidence that are relevant to these threshold questions.

Yours very truly,

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti