

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 1:21-cv-11059-GHW

BETWEEN

U.S. BANK NATIONAL ASSOCIATION in its capacity as Trustee
JOSHUA N. TERRY
ACIS CAPITAL MANAGEMENT L.P.

<u>Plaintiffs</u>

-and-

THE CHARITABLE DONOR ADVISED FUND L.P.
CLO HOLDCO LIMITED
NEXPOINT DIVERSIFIED REAL ESTATE TRUST

<u>Defendants</u>

_____

**DECLARATION OF TODD WILLIAM MCGUFFIN**

_____

| | |
|---|---|
| **1.** | **Qualifications** |
| 1.1. | I am an Advocate of the Royal Court of Guernsey and am qualified to practice and appear before all the courts of the Bailiwick of Guernsey including the Guernsey Court of Appeal and before the Judicial Committee of the Privy Council. |
| 1.2. | I am a Partner and the Head of the Disputes & Risk team of the Guernsey law firm, Babbé LLP. I was firstly admitted as a Solicitor of the Supreme Court of New South Wales in May 2003 and as a Solicitor of the High Court of Australia in January 2004.  Subsequently, I was admitted as a Solicitor of the Supreme Court of England and Wales in November 2007 and was called to the Guernsey Bar in January 2013. I was admitted as a solicitor of the High Court of Ireland in 2018. |
| 1.3. | In addition to my various undergraduate legal qualifications, I have a number of post-graduate qualifications including a *Certificat d'Etudes Juridiques Françaises et Normandes from l'université de Caen Normandie* (France) and a Master of Laws from the University of London with a specialisation in Equity and Trusts (with Merit). |
| 1.4. | I have practised law in Guernsey since October 2008 primarily with respect to commercial litigation involving investment funds, trusts, financial services regulation and insolvency.  I regularly appear before the Royal Court of Guernsey in complex high value proceedings including trials with Jurats (who function as a professional jury) and have appeared before the Guernsey Court of Appeal on multiple occasions.  I have also previously provided expert opinions on aspects of Guernsey law in proceedings before the Supreme Court of Queensland (Australia) and the United States Bankruptcy Court (Northern District of Texas, Dallas Division) including being subject to deposition and cross-examination.  A copy of my Curriculum Vitae is at Appendix 1. |
| **2.** | **Instructions** |
| 2.1. | I am instructed by Quinn Emanuel Urquhart & Sullivan LLP to provide an opinion on aspects of Guernsey law with respect to proceedings before the United States District Court between the U.S. Bank National Association in its capacity as Trust and others and The Charitable Donor Advised Fund LP and others (Case No. 1:21-cv-11059-GHW).  Specially, I have been asked to answer the following questions: |

       2.1.1.    By reference to relevant legislation, codes or case law, conclusions regarding the law of Guernsey:

              (a)    Do Guernsey companies owe fiduciary duties to their shareholders?

              (b)    Do the directors of Guernsey companies owe fiduciary duties to shareholders?

              (c)    Are shareholders able to bring derivative claims on behalf of a company with respect to alleged breaches of fiduciary duty by directors?

3. **Guernsey Legal system and Guernsey Company Law**

3.1  Guernsey is administered as part of the Bailiwick of Guernsey, a self-governing dependency of the British Crown. It is not part of the United Kingdom, but His Majesty's Government has certain responsibilities for the Bailiwick such as international affairs and military. The British monarch is the head of state, and the head of Guernsey's government (the States of Guernsey) is the President of the Policy and Resources Committee (known as the Chief Minister of Guernsey). Guernsey has power to make its own laws by is own legislature known as the States of Deliberation which is presided over by the Bailiff (as President) and elected members (Deputies).

3.2  The court system in Guernsey is presided over by the Bailiff (as Chief Justice), his deputy, lieutenant bailiffs, judges of the Royal Court and magistrates all of which are appointed by the Crown. The main two courts in Guernsey are the Magistrates Court and the Royal Court of Guernsey. The Royal Court is the primary court for civil matters. Guernsey has its own Court of Appeal (constituted by judges from the United Kingdom and the Bailiff of the Bailiwick of Jersey) and from that court lies, with leave, a right to appeal to the Judicial Committee of the Privy Council. Appeal rights also lie to the European Court of Human Rights with respect to alleged infringement of rights under the *Convention for the Protection of Human Rights and Fundamental Freedoms* as adopted into Guernsey law by the *Human Rights (Bailiwick of Guernsey) Law 2000*.

3.3.  The rule of precedent applies in Guernsey. The Guernsey Court of Appeal in *Morton v Paint* provided the clearest statement to the rule where Justice of Appeal Southwell stated[1]:

> *In Guernsey the hierarchy of the courts and the doctrine of precedent requires the Royal Court and the Court of Appeal to follow the decisions of the Privy Council, when hearing appeals from the Courts of Guernsey. Privy Council decisions on appeals from other Commonwealth jurisdictions are not binding but are persuasive authority on the common law where relevant circumstances in Guernsey do not differ markedly from those in the other jurisdictions. The decisions of the House of Lords* [now read as the High Court of Justice of England and Wales] *are not binding on the Guernsey Courts. But in so far as the Guernsey courts follow English decisions on the common law, the decisions of the House of Lords carry considerable weight, and it would be only in rare cases that the Guernsey courts would not follow such a decision of the House of Lords. The decisions of the Guernsey Court of Appeal (and of its precursor, the Cour des Jugements et Records) are binding on the Royal Court but not binding on the Court of Appeal itself . . . As regards the decisions of the English Court of Appeal, while the Guernsey Courts always treat them with due respect, they are not bound by them, and are free to review them and to depart from them if they are considered to be wrong or not appropriate in the particular circumstances of Guernsey.*

---

[1] [1996] 21 GLJ 61 at paragraph 55E

3.4 The above statement concisely summarises the wide boundaries inhabited by the common law of Guernsey and its influences.

3.5 The foundation of modern Guernsey company law is prescribed in the *Companies (Guernsey) Law, 2008* (the **Companies Law**) beyond which, whilst not binding, English common law is persuasive in Guernsey noting in *Flightlease Holdings (Guernsey) Ltd v Flightlease (Ireland) Ltd,* the Royal Court of Guernsey held [2],

> "…. the concept of a limited company was imported into Guernsey law from English law [and] … since its importation into Guernsey in the late 1880s, it has naturally been appropriate to look to English law to help in the solution of problems concerning companies which are not covered by Guernsey statutes or customary law."[3]

4. **Do Guernsey companies owe fiduciary duties to their shareholders?**

4.1 A company incorporated in Guernsey does not owe fiduciary duties to its shareholders (members). Further, shareholders (even controlling shareholders) do not have fiduciary duties to a company, by reason only of being shareholders.

4.2 The relationship between a company and shareholders is regulated by the articles and memorandum of association of the company (the **Articles**). The Articles bind the members *inter se* and the members and the company and this is reflected in section 20(3) of the Companies Law:

> "Subject to the provisions of this Law, the memorandum and articles of a company are, from the time of incorporation, binding on the company and its members in all respects as if the memorandum and articles – (a) were comprised in an agreement duly executed by the company and each member, and (b) contained covenants on the part of the company and each member to observe all provisions thereof."

4.3 The Guernsey Court of Appeal in *Perpetual Media Capital Limited v Enevoldsen*[4] confirmed that the effect of such statutory provisions was accurately described in *John v Price Waterhouse* [2002] 1 WLR 953, 960: "*The articles of a company constitute a contract between the members of the company inter se and between each of them and the company but they do not, without more, constitute a contract between the company and its directors.*"

*Unfair Prejudice*

4.4 Pursuant to section 349(1) of the Companies Law a shareholder (member) of a company may apply to the Royal Court of Guernsey for an order under section 350 of the Law on the grounds that:

---

[2] [2009–10] GLR 38
[3] Supra, at paragraph 85
[4] (2014) GLR 57 at paragraph 29

> *"(a)   the affairs of the company are being or have been conducted in a manner that is unfairly prejudicial to the interests of its members generally or of some part of its members (including at least himself), or*
>
> *(b)   an actual or proposed act or omission of the company (including an act or omission on its behalf) is or would be so prejudicial."*

Section 350 provides that:

> *"(1)   if the Court is satisfied that an application under section 349 is well founded it may make such order as it thinks fit for giving relief in respect of the matters complained of.*
>
> *(2)   Without prejudice to the generality of subsection (1), an order of the Court may –*
>
> *…*
>
> *(c)   authorise civil proceedings to be brought in the name and on behalf of the company by such persons and on such terms as the Court may direct,*
>
> *(d)   provide for the purchase of shares of any member of the company by other members of the company or by the company itself and, in the case of a purchase by the company itself, the reduction of the company's capital accordingly,*

4.5   As the then Bailiff held in *Prodefin Trading Limited v Midland Resources* "*There is little, if any, Guernsey authority on the interpretation and application of the unfair prejudice provisions. Consequently both counsel addressed me on English authorities on the similar (but not identical) provisions contained in Sections 994 et seq of the UK Companies Act 2006 which, I accept, are persuasive authority in this jurisdiction.*"[5] The Court further held that the English provisions in regards to ascertaining what conduct is deemed as unfairly prejudicial was summarised by Justice Hildyard in *Apex Global Management Limited v Fi Call Limited*[6] holding that a petitioner, bringing an application, must establish:

> *"(1)   first, that the matters of which he complains are either actual or proposed acts or omissions of the company or consist of the conduct of the company's affairs;*
>
> *(2)   secondly, that those matters have caused prejudice to his interests as a member of the company; and*
>
> *(3)   thirdly, that the prejudice is unfair."*

4.6   As regards the nature of the prejudice that must be established, the High Court of England and Wales in *Re Coroin Limited*[7] (affirmed by the Court of Appeal in the same matter at [2013] EWCA Civ 781), held that prejudice is capable of being established either as economic

---

[5] Royal Court, 14 February 2017, Judgement 7/2017, unreported at paragraph 55
[6] [2015] EWHC 3269 (Ch) at paragraphs 34 to 51
[7] (No 2) [2012] EWHC 2343 (Ch)

prejudice in some capacity connected with the members' shareholding or in a non-economic sense:

> *"The prejudice must be to the petitioner in his capacity as a member but this is not to be strictly confined to damage to the value of his shareholding. Moreover, prejudice need not be financial in character. A disregard of the rights of a member as such, without any financial consequences, may amount to prejudice falling within the section."*[8]

4.7    As regard to what could amount to unfairness, certain English authorities were cited in *Profedin* including *O'Neill v Phillips* [1999] 1BCLC 1, *Ebrahimi v Westbourne Galleries Limited* [1973] A.C. 360 and *Grace v Biagioli* [2006] 2 BCLC 70. The judgment in *O'Neill* was further cited by the Royal Court in *Fonds v GCRF*[9] where, citing *Grace v Biagioli*[10] the Court held:

> *"(1)    The concept of unfairness, although objective in its focus, is not to be considered in a vacuum. An assessment that conduct is unfair has to be made against the legal background of the corporate structure under consideration. This will usually take the form of the articles of association and any collateral agreements between shareholders which identify their rights and obligations as members of the company. Both are subject to established equitable principles which may moderate the exercise of strict legal rights when insistence on the enforcement of such rights would be unconscionable;*
>
> *(2)    It follows that it will not ordinarily be unfair for the affairs of a company to be conducted in accordance with the provisions of its articles or any other relevant and legally enforceable agreement, unless it would be inequitable for those agreements to be enforced in the particular circumstances under consideration. Unfairness may, to use Lord Hoffmann's words, "consist in a breach of the rules or in using rules in a manner which equity would regard as contrary to good faith": see p. 1099A; the conduct need not therefore be unlawful, but it must be inequitable;*
>
> *(3)    Although it is impossible to provide an exhaustive definition of the circumstances in which the application of equitable principles would render it unjust for a party to insist on his strict legal rights, those principles are to be applied according to settled and established equitable rules and not by reference to some indefinite notion of fairness;*
>
> *(4)    To be unfair, the conduct complained of need not be such as would have justified the making of a winding-up order on just and equitable grounds as formerly required under s. 210 of the Companies Act 1948;*

---

[8] Supra, n7, at paragraph 630
[9] [2022] GRC 039
[10] [2005] EWCA Civ 1222 at paragraph 61

> *(5) A useful test is always to ask whether the exercise of the power or rights in question would involve a breach of an agreement or understanding between the parties which it would be unfair to allow a member to ignore. Such agreements do not have to be contractually binding in order to found the equity;*
>
> *(6) It is not enough merely to show that the relationship between the parties has irretrievably broken down. There is no right of unilateral withdrawal for a shareholder when trust and confidence between shareholders no longer exist. It is, however, different if that breakdown in relations then causes the majority shareholder to exclude the petitioner from the management of the company or otherwise to cause him prejudice in his capacity as a shareholder."*

4.8   The unfairly prejudicial conduct must relate to the affairs of the company, as opposed to, for example, the actions of a minority of a board of directors, or the personal actions of a member of a board.

4.9   The right to bring an unfair prejudice application under section 349 of the Companies Law does not create any fiduciary duty between the applicant shareholder and the company and a breach of a fiduciary duty of itself is not necessary to successfully secure a grant of relief in the terms of section 350. Indeed, a breach of fiduciary duty by a director is not of itself necessarily unfair prejudice for the purposes of the section 349. Real prejudice must have been suffered by the breach[11].

4.10   The fact that that the proper plaintiff to prosecute a breach of fiduciary duty is the company is not of itself a bar to an unfair prejudice application[12]. Indeed, permitting an applicant to maintain an action in the name of the company is one of the specific remedies provided for by section 350. However, where such relief is sought in an unfair prejudice application, the court will pay close attention to the principles restricting the bringing of derivative actions and preventing the recovery of reflective loss (see further below) and seek to tailor any relief in a way which does minimum violence to the company and its affairs[13]. An unfair prejudice application is a distinct statutory cause of action and separate from a derivative action[14] albeit, in appropriate circumstances, such action may be authorised by the Court upon a finding of unfair prejudice subject to the requirements in *Jackson v Dear* (see further below).

## 5.   Do the directors of Guernsey companies owe fiduciary duties to shareholders?

5.1   The directors of a Guernsey company owe fiduciary duties to the company, but those duties do not extend to shareholders.

---

[11] Rock (Nominees) Limited v RCO (Holdings) plc [2004] EWCA Civ 118
[12] Re Saul D Harrison & Sons plc [1994] BCC 475 at paragraph 489 per Hoffmann LJ
[13] Apex v Fi Call Ltd [2014] BCC 286 at paragraphs 119 to 125
[14] Zedra Trust Company (Jersey) Limited v The Hut Group Limited [2020] EWHC 5 (Ch) paragraph 42

5.2  In *Carlyle Capital Corporation Limited v Conway & Ors*[15], the leading Guernsey authority in this area (and confirmed by the Guernsey Court of Appeal), held that the only fiduciary duty that Guernsey law imposes on directors is *"[t]he duty to act in what the director bona fide believes is the best interests of the company is the essential fiduciary duty of a company director."* The Court further clarified that *"[o]ther such duties described as 'fiduciary' duties are really particular applications of this essential duty."*[16]

5.3  As to the nature of those duties, the Royal Court further held in *Carlyle* that this fiduciary duty is subjective, not objective.[17] As the Court stated, *"a claim for breach of <u>fiduciary</u> duty will only lie where it is shown that the directors did not honestly consider their action to be in the best interests of the company."*[18] Likewise, directors who *"acted honestly, and gave consideration to the interests of… [the company] …. then they would not be liable for breach of <u>fiduciary</u> (I emphasise) duty, even if their actions had been incompetent or arguably unreasonable."*[19]

5.4  As confirmed in *Carlyle*, directors owe their fiduciary duties to the company alone and not to shareholders.[20]  This position is consistent with English common law where the Court of Appeal of England and Wales held in *Peskin v Anderson*,[21] that, *"in general the directors do not, solely by virtue of their office of director, owe fiduciary duties to the shareholders, collectively or individually"*[22] and the High Court of England and Wales held in *Sharp v Blank*[23], that, while *"[a] director is a fiduciary for a company,"* a director *"does not have, by virtue of his appointment as a director, any direct relationship with the shareholders"* that could give rise to a fiduciary duty[24].

5.5  Absent a *prima facie* case that the directors acted dishonestly, Guernsey law affords great deference to their commercial judgment.  For example, in *Jackson v Dear*,[25] the Royal Court considered whether plaintiffs had derivative standing to sue directors for breach of fiduciary duty in undertaking an arm's length transaction with another party.  Plaintiffs alleged that directors *"broke their fiduciary duties [to the company] in voting in favour of the GORE Transaction"* with a third party[26].  The Court held that Plaintiffs were required to establish a prima facie case that directors acted dishonestly by entering into the agreement.  Moreover, the Court held that it would not "not substitute its view" of the transaction for the director's view because entering into contracts with counterparties *"involve[s] commercial judgement on the*

---

[15] Royal Court, 4 September 2017, Judgment 38/2017, unreported
[16] Supra, n15, at paragraph 370
[17] Supra, n15, at paragraph 374
[18] Supra, n15, at paragraph 379
[19] Supra, n15, at paragraph 379
[20] Supra, n15, at paragraph 471
[21] [2001] BCC 874
[22] Supra, n 21, at paragraph 28
[23] [2015] EWHC 3220 (Ch)
[24] Supra, n 23, at paragraph 13
[25] (2013) GLR 167
[26] Supra, n25, at paragraph 3

*part of directors and the Courts are, as a general rule, ill-equipped to enter into consideration of such matters."*[27]

6. **Are shareholders able to bring derivative claims on behalf of a company with respect to alleged breaches of fiduciary duty by directors?**

6.1 Under Guernsey law, a company is considered a separate legal entity as expressed in the *"doctrine of corporate personality"*[28] and therefore the company is the only proper plaintiff able to sue to redress a wrong done to the company itself. This rule is based on the seminal English decision in *Foss v Harbottle*.[29] This rule, often referred to as the "reflective loss rule", generally bars shareholders from bringing claims to recover personal losses that are merely a reflection of the losses suffered by the company in which they have invested.

6.2 The Supreme Court of the United Kingdom decision in *Marex Financial Ltd v Sevilleja*[30] provides the latest and most authoritative commentary on rule on reflective loss. The majority decision in *Marex* was applied by the Royal Court of Guernsey in *Pilatus (PTC) Limited v RBC Trustees (Guernsey) Limited*.[31]

6.3 In *Marex,* the Supreme Court confirmed that shareholders cannot sue individually to recover reflective loss. If the shareholder's loss *"is the consequence of loss sustained by the company"* such as when the loss is *"in the form of a diminution in share value or in distributions"* the shareholder cannot sue individually.[32] Rather, *"only the company which has a cause of action in respect of its loss,"*[33] and *"the shareholder cannot bring proceedings in respect of the company's loss."*[34]

6.4 *Marex* further confirmed that the rule against reflective loss may apply even if a defendant breached a duty to the shareholder as well as the company. As the Court explained, shareholders cannot *"bring a personal action for a fall in share value consequent on the company's loss"* because this would improperly *"circumvent"* the rule in *Foss v Harbottle* and *"compromise"* the company's control over its own cause of action.[35]

6.5 Applying these principles, claims that directors breached their fiduciary duties to the company are derivative because the wrong was done to the company itself and any loss to the shareholder is the consequence of loss sustained by the company. This conclusion follows from *Foss v. Harbottle* itself, where the court held that a breach of a duty by the directors of the company was a wrong done to the company for which it alone could sue.

---

[27] Supra. n25. At paragraph 146
[28] Saloman v Saloman & Co. Ltd [1897] A.C. 22 at paragraph 30: *"it seems to me impossible to dispute that once the company is legally incorporated it must be treated like any other independent person with its rights and liabilities appropriate to itself…"*
[29] [1843] 2 Hare 461
[30] [2020] UKSC 31
[31] [2021] GRC 063 at paragraphs 44, 56 to 57
[32] Supra, n 30, at paragraph 79
[33] Supra, n 30, at paragraph 80
[34] Supra, n 30, at paragraph 80
[35] Supra, n 30, at paragraph 82

6.6  Importantly, the Supreme Court held that even where the rule against reflective loss applies, shareholders may have "*the right to bring a derivative claim to enforce the company's rights if the relevant conditions are met.*"[36].

6.7  Under Guernsey law, shareholders must seek leave (permission) of the Royal Court to commence a derivative claim on behalf of a company. In determining whether leave will be granted, the Royal Court of Guernsey in *Jackson v Dear*[37] followed the restrictive approach of the English common law in this area whereby the applicant shareholder, to overcome the rule against reflective loss, must satisfy the Court of the existence of one or more of certain limited exceptions to the rule in *Foss v Harbottle,* as follows:

   6.7.1  Where the act complained of results in an infringement of the rights of the shareholders as to what is prescribed in the constitution (the articles and memorandum of association) of the company;

   6.7.2  Where the action in question amounts to a fraud on the minority shareholders and the wrongdoers are themselves in control of the company (see further below);

   6.7.3  Where the act complained of could only have been validly undertaken by a special resolution or similar mechanism, which requires the concurrence of a greater majority;

   6.7.4  Where the act complained of is *ultra vires* the objects of the company or illegal and is, therefore, incapable of ratification by the members.

6.8  In addition to establishing that an exception to the rule in *Foss v Harbottle* exists, Guernsey law also requires the applicant shareholder to establish a *prima facie* case on all or any of the alleged claims and that this requirement imposes "*quite a high hurdle for the hurdle for the Plaintiff*" because "*the right to bring a derivative action is to be regarded as an exceptional right*".[38] Specifically, the applicant shareholder must show that it has "*more than a good arguable case*"[39] that its case "*is sufficiently strong to justify granting leave.*"[40]

6.9  I note that the additional requirement of establishing a *prima facie* case was adopted by the Royal Court in *Jackson v Dear* from the judgment of the Grand Court of the Cayman Islands in *Renova Resources v Gilbertson*.[41]

6.10  For the fraud on the minority exception, the plaintiff must establish a prima facie case of the necessary (higher) ingredients of both fraud and wrongdoer control to proceed.[42] There is limited precedent in Guernsey regarding the application of the fraud on the minority exception, so the Royal Court in *Jackson v Dear* relied on English common law in its application of the exception.

---

[36] Supra, n 30, at paragraph at 83
[37] Supra, n 25
[38] Supra, at paragraph 135
[39] Supra, at paragraph 21
[40] Supra, at paragraph 21
[41] [2009] CIFsd 10 (14 April 2009), at paragraph 21
[42] Prudential Assurance Co. Ltd. v Newman Industries Ltd. and Others (No. 2) [1982] Ch 204

I declare under penalty of perjury under the laws of the United States of America that the foregoing is my true and correct opinion.

_____

Advocate TW McGuffin

Babbé LLP

St Peter Port, Guernsey

15 May 2023

Appendix 1

**Curriculum Vitae**

<u>Qualifications & Admissions</u>

| | |
|---|---|
| 2000 | Awarded Diploma in Law, Legal Practitioners' Admission Board, Sydney |
| 2002 | Awarded Graduate Diploma in Legal Practice, College of Law, Sydney |
| 2003 | Admission as a Solicitor of the Supreme Court of New South Wales |
| 2004 | Admission as a Solicitor of the High Court of Australia |
| 2007 | Admission as a Solicitor to the Supreme Court of England and Wales |
| 2012 | Awarded *Certificat d'Etudes Juridiques Françaises et Normandes, l'université de Caen Normandie* |
| 2013 | Called to the Guernsey Bar |
| 2016 | Awarded Master of Laws (Equity and Trusts), University of London |
| 2018 | Admission as a Solicitor to the High Court of Ireland |

<u>Professional Employment Summary</u>

| | |
|---|---|
| Since 2008 | Babbé LLP, Guernsey, Channel Islands<br>Head of Dispute Resolution 2022<br>Partner 2016<br>Senior Associate 2008 |
| 2008 | Freshfields, London<br>EU and Competition Law Group (temp)<br>May to June |
| 2008 | Berwin Leighton Paisner (as it was then), London<br>EU and Competition Law Group (temp)<br>June to August |
| 2002 to 2007 | Swaab Attorneys, Sydney<br>Associate then Senior Associate<br>Commercial Litigation Team |
| 1996 to 2002 | Associate to Her Honour Judge HG Murrell SC<br>District Court of New South Wales<br>Drug Court of New South Wales (Senior Judge)<br>President, Administrative Decisions Tribunal of New South Wales (Equal Opportunity Division) (as it was then)<br>Land and Environment Court of New South Wales (Acting Justice) |

## Appendix 2

## List of Authorities

### Guernsey

**Exhibit 1,** *Morton v Paint* [1996] 21 GLJ 61

**Exhibit 2,** *Flightlease Holdings (Guernsey) Ltd v Flightlease (Ireland) Ltd* [2009–10] GLR 38

**Exhibit 3,** *Perpetual Media Capital Limited v Enevoldsen,* [2014] GLR 57

**Exhibit 4,** *Prodefin Trading Limited v Midland Resources* Royal Court, 14 February 2017, Judgement 7/2017, unreported

**Exhibit 5,** *Fonds v GRCF* [2022] GRC 039

**Exhibit 6,** *Carlyle Capital Corporation Limited v Conway & Ors* Royal Court, 4 September 2027, Judgment 38/2017, unreported.

**Exhibit 7,** *Jackson v Dear* (2013) GLR 167

**Exhibit 8,** *Pilatus (PTC) Limited v RBC Trustees (Guernsey) Limited* [2021] GRC 063

### England and Wales

**Exhibit 9,** *Apex Global Management Limited v Fi Call Limited* [2015] EWHC 3269 (Ch)

**Exhibit 10,** *Re Coroin Limited* (No 2) [2012] EWHC 2343 (Ch)

**Exhibit 11,** *Grace v Biagioli* [2005] EWCA Civ 1222

**Exhibit 12,** *Rock (Nominees) Limited v RCO (Holdings) plc* [2004] EWCA Civ 118

**Exhibit 13,** *Re Saul D Harrison & Sons plc* [1994] BCC 475

**Exhibit 14,** *Apex v Fi Call Ltd* [2014] BCC 286

**Exhibit 15***, Zedra Trust Company (Jersey) Limited v The Hut Group Limited* [2020] EWHC 5

**Exhibit 16,** *Peskin v Anderson* [2001] BCC 874

**Exhibit 17,** *Sharp v Blank* [2015] EWHC 3220

**Exhibit 18,** *Saloman v Saloman & Co. Ltd* [1897] A.C. 22

**Exhibit 19,** *Foss v Harbottle* [1843] 2 Hare 461

**Exhibit 20,** *Marex Financial Ltd v Sevilleja* [2020] UKSC 31

**Exhibit 21***,* *Prudential Assurance Co. Ltd. v Newman Industries Ltd. and Others* (No. 2) [1982] Ch 204

### Cayman Islands

**Exhibit 22,** *Renova Resources v Gilbertson* [2009] CIFsd 10