**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,

*Plaintiffs*,

v.

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT STRATEGIC OPPORTUNITIES FUND,

*Defendants*.

No. 1:21-cv-11059-GHW

---

## AMENDED COMPLAINT

Plaintiffs U.S. Bank, National Association, in its capacity as trustee ("U.S. Bank" or the "Trustee"), Joshua N. Terry ("Mr. Terry"), and Acis Capital Management, L.P. ("ACM," and, collectively with the Trustee and Mr. Terry, "Plaintiffs") file this Amended Complaint against Defendants The Charitable Donor Advised Fund, L.P. ("DAF"), CLO HoldCo, Ltd. ("CLO HoldCo"), and NexPoint Strategic Opportunities Fund ("NexPoint," and, collectively with DAF and CLO HoldCo, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1. ~~Plaintiffs bring this action to stop James Dondero, the former majority owner of Plaintiff ACM, from holding investors in subordinated notes issued by ACIS CLO 2014-4 Ltd. ("ACIS 4"), ACIS CLO 2014-5 Ltd. ("ACIS 5"), and ACIS CLO 2015-6 Ltd. ("ACIS 6" and, collectively with ACIS 4 and ACIS 5, the "ACIS CLOs") hostage by threatening to bring meritless litigation against Plaintiffs. Acting through Defendants, which he functionally controls, Dondero has previously commenced vexatious and meritless lawsuits against ACM for purported~~

EXHIBIT

4

exhibitsticker.com

mismanagement of the ACIS CLOs' investments and against U.S. Bank, the Trustee of the ACIS CLOs, for purported failures to prevent ACM's alleged mismanagement. Dondero's lawsuits and the continued threat of additional claims have delayed distributions to the ACIS CLOs' subordinated noteholders by forcing the holdback of funds from the ACIS CLOs' final distributions to cover potential indemnity obligations to U.S. Bank, ACM, Mr. Terry (ACM's owner), and Brigade Capital Management, L.P. ("Brigade") (ACM's sub-advisor). In order to free up funds for payment to the subordinated noteholders, Plaintiffs hereby seek a declaratory judgment that (a) Defendants DAF and CLO HoldCo lack standing to bring their threatened claims under the Investment Advisers Act of 1940 ("Advisers Act"), the Trust Indenture Act of 1939 ("TIA"), and other causes of action, and Defendant NexPoint lacks standing to bring its claims under the Advisers Act and other causes of action against Mr. Terry, ACM, and Brigade and (b) Defendants DAF and CLO HoldCo's claims are barred by a settlement agreement between ACM and Highland CLO Funding, Ltd. ("HCLOF"), the actual owner of the subordinated notes on which DAF and CLO HoldCo's threatened claims are based.

2.    Dondero has harassed Plaintiffs through threatening letters and legal actions ever since a bankruptcy judge terminated his ownership of ACM in January 2019. Acting through Defendants DAF and CLO HoldCo, in 2019 and 2020, he twice commenced lawsuits in this District that baselessly alleged mismanagement of the ACIS CLOs by ACM and Mr. Terry and breach of duties by U.S. Bank (the "2019 and 2020 Lawsuits"), only to voluntarily dismiss those lawsuits before service was effected as to all parties or any responsive pleading was filed.

3.    Since the second voluntary dismissal, Dondero, acting through Defendants, has continued to threaten litigation against Plaintiffs. And earlier this year, Dondero, acting through Defendant NexPoint, initiated a lawsuit related to one of the ACIS CLOs (ACIS 6) in a case

captioned *NexPoint Strategic Opportunities Fund v. Acis Capital Management, L.P.*, *et al.*, Case No. 1:21-cv-04384-GHW (S.D.N.Y.) (the "NexPoint Lawsuit"). In the NexPoint Lawsuit, NexPoint has asserted, among other things, claims under the Advisers Act against Mr. Terry and ACM and claims under the TIA against U.S. Bank. ~~The *NexPoint* complaint blatantly copies and pastes allegations from the 2019 and 2020 Lawsuits, reinforcing the continuing threat that DAF and CLO HoldCo will also pick up their swords and pursue similar claims against Plaintiffs.~~

4. ~~DAF and CLO HoldCo's tactical dismissals have, to date, evaded judicial consideration of both those same fatal flaws and other additional fatal flaws in their claims. For example, neither DAF nor CLO HoldCo has direct standing to assert claims against Plaintiffs or Brigade related to the ACIS CLOs because neither owns any subordinated notes in the ACIS CLOs—which are the only notes issued by the ACIS CLOs that remain outstanding. Instead, DAF, through CLO HoldCo, is a minority investor in *another* entity, HCLOF, that directly holds the subordinated notes. HCLOF, meanwhile, entered into a settlement agreement with ACM on April 28, 2021 (the "HCLOF Settlement Agreement"), releasing any and all claims related to the management of the ACIS CLOs, including the claims asserted by DAF and CLO HoldCo against Plaintiffs in the 2019 and 2020 Lawsuits. Further, like NexPoint, DAF and CLO HoldCo cannot assert derivative standing on behalf of the ACIS CLOs under Cayman Islands law. Thus, DAF and CLO HoldCo's claims fail at the outset because DAF and CLO HoldCo cannot establish either level of the double-derivative standing (both at the HCLOF level and at the ACIS CLO level) necessary to proceed. But even if they could, DAF and CLO HoldCo cannot assert claims derivatively on behalf of HCLOF that HCLOF has released under the HCLOF Settlement Agreement.~~

5. ~~Undeterred by this dispositive standing deficiency, DAF and CLO HoldCo have refused to withdraw their threat of litigation against Plaintiffs related to ACM's purported~~

~~mismanagement of the ACIS CLOs. Indeed, as recently as January 10, 2022, DAF and CLO HoldCo again unequivocally rejected Plaintiffs' request to avoid unnecessary litigation by refusing to confirm they would release their threatened claims.~~

~~6. Meanwhile, NexPoint continues to prosecute meritless claims against Plaintiffs that suffer from many of the same fatal flaws as the claims threatened by DAF and CLO HoldCo. NexPoint, like DAF and CLO HoldCo, lacks direct standing to bring its claims against Mr. Terry and ACM, and it cannot assert derivative standing on behalf of the ACIS CLOs under Cayman Islands law.~~

~~7. By bringing the NexPoint Lawsuit and hanging the perpetual threat of further litigation brought by DAF and CLO HoldCo over Plaintiffs' heads, Dondero and Defendants have disrupted the normal operation of the ACIS CLOs and delayed distributions to third-party investors in the ACIS CLOs (who, as explained further below, also happen to be in litigation with Dondero). This inequitable scenario is exactly what the Declaratory Judgment Act is designed to address.~~

8. Accordingly, Plaintiffs assert claims for declaratory judgment that Defendants' threatened claims against Plaintiffs and Brigade are barred because (a) Defendants DAF and CLO HoldCo lack direct or derivative standing to bring the threatened causes of action against Plaintiffs and Brigade and Defendant NexPoint lacks direct or derivative standing to bring the causes of action against Mr. Terry, ACM, and Brigade in the NexPoint Lawsuit and (b) the claims threatened by DAF and CLO HoldCo were released by HCLOF, the holder of those claims, in the HCLOF Settlement Agreement.

## **THE PARTIES**

### A. **Plaintiffs**

9. Plaintiff U.S. Bank is a national banking association and serves as Trustee for the ACIS CLOs under (i) that certain Indenture (the "ACIS 4 Indenture"), dated as of June 4, 2014,

among ACIS 4, ACIS CLO 2014-4 LLC, and U.S. Bank, as Trustee; (ii) that certain Indenture (the "ACIS 5 Indenture"), dated as of November 18, 2014, among ACIS 5, ACIS CLO 2014-5 LLC, and U.S. Bank, as Trustee; and (iii) that certain Indenture (the "ACIS 6 Indenture" and, together with the ACIS 4 Indenture and the ACIS 5 Indenture, the "ACIS Indentures"), dated as of April 16, 2015, among ACIS 6, ACIS CLO 2015-6 LLC, and U.S. Bank, as Trustee.

10.     Plaintiff Mr. Terry is an individual and citizen and resident of Texas.  Mr. Terry is the President of Shorewood GP, LLC ("Shorewood"), the general partner of ACM.

11.     ~~Plaintiff ACM is a Delaware limited partnership.   ACM is located at 4514 Cole Avenue, Suite 600, Dallas, Texas 75205.  ACM's general partner is Shorewood, a limited liability company organized under the laws of Delaware.   Mr. Terry is the indirect 100% owner of Shorewood and holds, through an affiliate, 100% of the limited partnership interests in ACM. Pursuant to portfolio management agreements that ACM executed with ACIS 4, ACIS 5, and ACIS 6 (collectively, the "ACIS Portfolio Management Agreements"), ACM was authorized to serve as Portfolio Manager to the ACIS CLOs and make decisions about how to manage the ACIS CLOs' assets.~~

**B.     Defendants**

12.     Defendant DAF is a limited partnership organized in the Cayman Islands and administered by Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.  DAF is the 100% owner of CLO HoldCo.

13.     Defendant CLO HoldCo, a Cayman Islands exempted company, is wholly owned by DAF.  CLO HoldCo's registered office is 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.  CLO HoldCo owns 49% of HCLOF.

14.     Defendant NexPoint Strategic Opportunities Fund is a Delaware statutory trust managed by NexPoint Advisors, L.P.  Its business address is 2515 McKinney Avenue, Suite 1100, Dallas, TX 75201.

**C.     Relevant Non-Parties**

15.     ACIS 4, ACIS 5, and ACIS 6 are exempted limited liability companies incorporated in the Cayman Islands.  Each of the ACIS CLOs maintains a registered office located at P.O. Box 1093, Queensgate House, Grand Cayman, KY1-1102, Cayman Islands, and conducts its business through directors located in the Cayman Islands.  The ACIS CLOs are investment funds managed by ACM, and they issued, among other things, certain subordinated notes to investors pursuant to the ACIS Indentures in private offerings.

16.     Brigade is the sub-advisor to ACM for the ACIS CLOs.

17.     ~~HCLOF is a collective investment scheme registered in the island nation of Guernsey.  HCLOF owns 100% of the subordinated notes issued by ACIS 4 and ACIS 5 and 87% of the subordinated notes issued by ACIS 6.~~

18.     Highland Capital Management, L.P. ("Highland"), is the 51% owner of HCLOF. Highland's current CEO and Chief Restructuring Officer is James P. Seery ("Mr. Seery").

19.     Dondero is an individual resident of Texas.  ~~Dondero functionally controls NexPoint.  Upon information and belief, Dondero also functionally controls DAF and, through it, CLO HoldCo.  Dondero formerly owned ACM.  He also formerly served as CEO of Highland.~~

**JURISDICTION AND VENUE**

20.     ~~There are actual, justiciable controversies between the parties.  NexPoint's decision to advance meritless claims in the NexPoint Lawsuit, and DAF and CLO HoldCo's refusal to release meritless claims, for which they have twice pursued litigation, have created a justiciable controversy regarding the administration of monies currently held in reserve in the ACIS CLOs.~~

6

This Court has subject matter jurisdiction over this action pursuant to the Edge Act, 12 U.S.C. § 632, because Plaintiff U.S. Bank is a national banking association and this action arises out of transactions involving U.S. Bank's international banking and/or financial operations. The ACIS CLOs are Cayman Islands exempted limited liability companies and U.S. Bank, as the ACIS CLOs' Trustee, has provided international financial services to the ACIS CLOs. Those same international financial services form the subject of NexPoint's claims, and DAF and CLO HoldCo's threatened claims, against Plaintiffs.

21. Separately and additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This Court has federal question jurisdiction over Plaintiffs' declaratory judgment claims that Defendants lack standing to bring Advisers Act and TIA claims under 28 U.S.C. § 1331 because "a coercive action brought by the declaratory judgment defendant[s]" under the Advisers Act and/or the TIA "would necessarily present a federal question." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (internal quotation marks omitted); *see also Paysafe Holdings UK Ltd. v. Accruit, LLC*, No. 18 Civ. 75 (ER), 2019 WL 1115054, at *2 (S.D.N.Y. Mar. 11, 2019) (finding federal question jurisdiction because plaintiffs seeking declaratory judgment "ask the Court to resolve several potential claims [by defendants] that could arise under federal laws"). This Court has supplemental jurisdiction over Plaintiffs' declaratory judgment claims that Defendants lack standing to bring non-Advisers Act and non-TIA claims because those claims and the Advisers Act and TIA claims "derive from a common nucleus of operative fact." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

22. This Court has specific personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k) and N.Y. C.P.L.R. § 302.

23.     The ACIS Portfolio Management Agreements and the ACIS Indentures are governed by New York law.

24.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

### A.     ACM Manages The ACIS CLOs

25.     The ACIS CLOs are offshore investment funds managed by ACM pursuant to the ACIS Portfolio Management Agreements.  The ACIS CLOs raised money through the private sale of secured and subordinated notes and used the proceeds to purchase senior-secured debt instruments issued by corporations.  Income generated by the ACIS CLOs' investments are used to pay the ACIS CLOs' expenses, as well as principal and interest owed to the secured and subordinated noteholders of the ACIS CLOs.

26.     ACM is the Portfolio Manager of the ACIS CLOs.  As Portfolio Manager, it is responsible for identifying and purchasing the assets that are held in the ACIS CLOs, monitoring those assets, and monetizing those assets in specified circumstances.

27.     U.S. Bank is the Trustee under each of the ACIS Indentures.  As Trustee under the ACIS Indentures, its duties at all relevant times were limited to those set forth in the ACIS Indentures, which were ministerial and administrative and did not include any duties to monitor or supervise ACM or approve its investment decisions or particular trades.

### B.     Dondero Commences A Vexatious Litigation Campaign Against Mr. Terry, ACM, And U.S. Bank

28.     This action is necessary because of the vexatious conduct of Dondero, ACM's former owner, through the Defendant entities he functionally controls.  Dondero lost control of

ACM during an involuntary bankruptcy instigated by a series of wrongful acts he committed.  In 2016, Dondero wrongfully terminated Mr. Terry, ACM's Portfolio Manager.  In arbitration that ensued, the arbitrator held ACM and its general partner, Acis Capital Management GP, LLC ("ACM GP"), liable to Mr. Terry for $8 million in damages.

29.     Rather than direct ACM and ACM GP to pay the judgment, Dondero attempted to frustrate Mr. Terry's ability to enforce it by stripping ACM and ACM GP of their assets.  Mr. Terry stopped that scheme by commencing a bankruptcy case against ACM and ACM GP.  *See In re Acis Cap. Mgmt., L.P.*, Case No. 18-30264-sgj11 (N.D. Tex. Bankr.).

30.     On January 31, 2019, Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas approved a bankruptcy plan that transferred 100% of the equity in ACM and ACM GP to Mr. Terry.  *Id.* ECF 827, attached hereto as **Exhibit A**.

31.     Unwilling to accept Judge Jernigan's ruling, Dondero has pursued a vendetta against Mr. Terry and ACM through the entities that he controls.  Dondero functionally controls NexPoint, as its founder and portfolio manager.  Upon information and belief, Dondero also functionally controls DAF,[1] which, through CLO HoldCo, holds a 49% ownership stake in

---

[1]     In a decision holding Dondero, DAF, and CLO HoldCo in contempt, Judge Jernigan made numerous factual findings showing that Dondero exercised functional control over DAF. *See In re Highland Capital Mgmt., L.P.*, Case No. 19-34054-sgj11, ECF 2660 (N.D. Tex. Bankr.), attached hereto as Exhibit B.  Judge Jernigan found that (1) Dondero was the founder of and primary donor to DAF and serves as the president and director of the foundations that hold participation shares in DAF; (2) he formerly served as DAF's managing member; (3) DAF's subsequent managing members were a longtime friend of Dondero and then a former Highland employee, neither of whom had charitable sector experience; and (4) Dondero served as DAF's informal investment advisor without any agreement.  *Id.* at 2-3, 3 n.10, 20.  Judge Jernigan found that Dondero had induced DAF to commence a lawsuit in violation of the Bankruptcy Court's order and that DAF's current managing member, a former Highland employee, "basically abdicated responsibility to Mr. Dondero."  *Id.* at 21.  Further, on September 23, 2020, Dondero's former counsel told Judge Jernigan that "Mr. Dondero – and … entities with which he is identified" had "brought or threatened suit against Mr. Terry and Acis," a clear reference to the 2019 and 2020

HCLOF.  Highland holds a majority, 51% stake in HCLOF.  HCLOF, in turn, owns 100% of the subordinated notes in ACIS 4 and ACIS 5 and 87% of the subordinated notes in ACIS 6.  Dondero has sought to weaponize his indirect interest in the ACIS CLOs' subordinated notes to harass Plaintiffs through the court system.  U.S. Bank became the target of Dondero's vendetta after, consistent with the ministerial and administrative nature of its duties, U.S. Bank declined to interfere with ACM's management of the ACIS CLOs.

32.   First, on October 24, 2019, Dondero caused DAF to file a complaint in this District against U.S. Bank, alleging mismanagement of the ACIS CLOs by ACM.  *See The Charitable Donor Advised Fund, L.P. v. U.S. Bank Nat'l Ass'n, et al.*, 1:19-cv-9857-NRB, ECF 1 (S.D.N.Y.) (the "2019 Lawsuit").

33.   On November 1, 2019, DAF filed an Amended Complaint that added Moody's Investors Service, Inc. ("Moody's"), as a defendant,[2] *id.* ECF 6, which it refiled on November 4, 2019, *id.* ECF 8.

34.   The Court *sua sponte* wrote to counsel for DAF on January 6, 2020, observing that there was no indication that the Amended Complaint had been served and directing DAF to effect service by February 3, 2020, or the Court would dismiss the Amended Complaint.  *Id.* ECF 17.

35.   In response, on January 31, 2020, DAF filed a Second Amended Complaint, adding ACM and Mr. Terry as defendants.  *Id.* ECF 18, attached hereto as **Exhibit F**.

---

Lawsuits that DAF and CLO HoldCo brought.  *See* September 23, 2021 Ltr. from D. Michael Lynn to Hon. Stacey Jernigan, attached hereto as Exhibit C.

[2]   On August 6, 2019—less than three months before the 2019 Lawsuit was filed—other entities controlled by Dondero, including NexPoint, sent demand letters to U.S. Bank and Moody's advancing the same allegations that DAF later made in the 2019 Lawsuit.  *See* August 6, 2019 Ltr. from Michael K. Hurst to Daniel P. Novakov, attached hereto as Exhibit D; August 6, 2019 Ltr. from Michael K. Hurst to Shana Sethi, attached hereto as Exhibit E.  These demand letters confirm Dondero's functional control over DAF.

36.     The Second Amended Complaint alleged that ACM had effected transactions involving ACIS CLO assets that did not satisfy the Weighted Average Life Test ("WAL test") and the Minimum Weighted Average Moody's Recovery Rate Test ("WAM test"); had permitted the Weighted Average Moody's Rating Factor ("WARF") to increase; and had permitted the ACIS CLOs to incur unjustified and exorbitant fees, as well as that Moody's ratings of the ACIS CLOs were false. *Id.* ¶¶ 60-70, 73, 78-83.  It further alleged that U.S. Bank had breached its duties to exercise due care in the performance of non-discretionary, ministerial tasks and to avoid conflicts of interest. *Id.* ¶¶ 84-99.

37.     In the 2019 Lawsuit, DAF sought damages allegedly suffered by the subordinated notes owned by HCLOF.  *See id.* ¶ 87 (claiming damages for subordinated notes that DAF "owns indirectly pursuant to the ACIS Indentures").  As explained above, HCLOF owns the subordinated notes, and DAF only has an indirect minority interest in HCLOF via CLO HoldCo.

38.     But Dondero wanted to hold the sword of litigation above Plaintiffs' heads rather than actually litigate claims he would lose.  So although DAF served the Second Amended Complaint on U.S. Bank, it never served Moody's, ACM, or Mr. Terry.  Instead, DAF filed a letter requesting voluntary dismissal of the lawsuit without prejudice for lack of service on each of the defendants on February 3, 2020, *id.* ECF 20, which the Court entered on February 5, 2020, *id.* ECF 22.

39.     ~~Dondero then tried the same trick a second time.~~  On February 6, 2020—the day after the voluntary dismissal of the 2019 Lawsuit was entered, DAF filed a new lawsuit in this District making substantively identical allegations.  *See The Charitable Donor Advised Fund, L.P. v. U.S. Bank Nat'l Ass'n*, 1:20-cv-1036-LGS, ECF 1 (S.D.N.Y) (the "2020 Lawsuit"), attached

11

hereto as **Exhibit G**.  ~~This time, Dondero added CLO HoldCo as an additional plaintiff, while alleging claims against Plaintiffs, Moody's, and Brigade.  *Id.*~~

40.    Like the 2019 Lawsuit, the 2020 Lawsuit alleged that ACM had effected transactions involving ACIS CLO assets that did not satisfy the WAL test and the WAM test, permitted the WARF to increase, and permitted the ACIS CLOs to incur unjustified and exorbitant fees, as well as that Moody's ratings of the ACIS CLOs were false.  *Id.* ¶¶ 61-71, 74, 79-84.  Like the 2019 Lawsuit, the 2020 Lawsuit alleged that U.S. Bank had breached its duties to exercise due care in the performance of non-discretionary, ministerial tasks and to avoid conflicts of interest. *Id.* ¶¶ 85-100.  Like the 2019 Lawsuit, the 2020 Lawsuit claimed for damages to the subordinated notes that DAF "owns indirectly pursuant to the ACIS Indentures"—in short, for damages to the subordinated notes that HCLOF owns.  *Id.* ¶ 88.

41.    ~~Rather than test the allegations in the 2020 Complaint in court,~~ DAF and CLO HoldCo, ~~after serving U.S. Bank but before serving the other defendants,~~ filed a notice of voluntary dismissal without prejudice on February 25, 2020.  *Id.* ECF 14.  The court so ordered that dismissal the following day.  *Id.* ECF 15.

42.    ~~On May 8, 2020—scarcely two months after the voluntary dismissal of the 2020 Lawsuit—DAF and CLO HoldCo confirmed in writing that they intended to continue to hold the sword of litigation over Plaintiffs' heads.  On that date, DAF and CLO HoldCo sent a demand letter (the "May 8 Letter") to U.S. Bank's counsel, copying ACM's counsel, attached hereto as **Exhibit H**.~~[3]

---

[3] ~~Grant Scott signed the letter on behalf of DAF and CLO HoldCo.  Judge Jernigan found that Scott, DAF's then-managing member, "was Mr. Dondero's long-time friend, college housemate, and best man at his wedding."  Ex. B at 2.  In deposition testimony, Scott described Dondero as "my closest friend."  *Id.* at 2 n.7.  Scott's authorship of the letter confirms that Dondero is behind the threatened litigation campaign against Plaintiffs.~~

43. ~~DAF and CLO HoldCo's letter repeated the allegations from the 2019 and 2020 Lawsuits, namely that ACM had effected transactions involving ACIS CLO assets that did not satisfy the WAL test and the WAM test, permitted the WARF to increase, and permitted the ACIS CLOs to incur unjustified and exorbitant fees and that Moody's ratings of the ACIS CLOs were false. *Id.* at 2-7. The 2020 Lawsuit, DAF and CLO HoldCo explained, was intended to "put US Bank and the other defendants on notice" of DAF and CLO HoldCo claims to induce ACM to change its management of the ACIS CLOs. *Id.* at 2. DAF and CLO HoldCo told the Trustee that it "appear[ed] unwilling or unable to fulfill its duties," and "expressly reserve[d] [all rights] should this matter proceed to litigation." *Id.* at 7. The May 8 Letter made crystal clear what was already apparent from the 2019 and 2020 Lawsuits—DAF and CLO HoldCo have no intention of withdrawing their baseless claims of misconduct or conceding their lack of standing to pursue those claims.~~

44. ~~Although Dondero and his controlled entities went silent with respect to the ACIS CLOs for a period of time after the exchange of correspondence related to the May 8 Letter, on May 14, 2021, scarcely two weeks after the HCLOF Settlement Agreement was executed and before ACM had commenced the ACIS CLOs redemption process,~~ NexPoint, ~~another Dondero-controlled entity,~~ commenced the NexPoint Lawsuit against Plaintiffs and Brigade in this District. *See NexPoint Strategic Opportunities Fund*, Case No. 1:21-cv-04384-GHW. A copy of the operative complaint in that lawsuit, *id.* ECF 42, is attached hereto as **Exhibit I**. In that lawsuit, NexPoint brought, among other causes of action, claims under the Advisers Act against ACM and Mr. Terry, *id.* ¶¶ 132-81, as well as claims under the TIA against U.S. Bank, *id.* ¶¶ 193-201.

NexPoint is an investor in ~~only one of the ACIS CLOs,~~ ACIS 6, and its claims concern ACM's management of ACIS 6 and another ACM-managed CLO,[4] ~~but not ACIS 4 or ACIS 5~~.

45. ~~The NexPoint Lawsuit regurgitated the same vexatious claims that DAF and CLO HoldCo made in the 2019 and 2020 Lawsuits: that ACM had effected transactions involving ACIS CLO assets that did not satisfy the WAL test and the WAM test, permitted the WARF to increase, and permitted the ACIS CLOs to incur unjustified and exorbitant fees, as well as that U.S. Bank had breached its duties of due care and to avoid conflicts of interest by not interfering with ACM's management of the ACIS CLOs. Id. ¶¶ 33-36, 65-108, 119, 202-11. The claims against ACM, Mr. Terry, and U.S. Bank in the NexPoint Lawsuit are based on those same factual allegations from the 2019 and 2020 Lawsuits. See id. ¶¶ 132-218. Indeed, portions of the complaint in the NexPoint Lawsuit appear to be lifted verbatim from the complaints in the 2019 and 2020 Lawsuits. Plaintiffs repeatedly warned NexPoint that its claims were fatally flawed, see NexPoint Strategic Opportunities Fund, Case No. 1:21-cv-04384-GHW, ECF 35-36, 50-51, 71, but NexPoint refused to withdraw them despite twice amending its complaint.~~

46. ~~The NexPoint Lawsuit confirmed that Dondero's threat to use DAF and CLO HoldCo to bring further litigation related to the ACIS CLOs remained. There is little doubt that DAF and CLO HoldCo will eventually bring for a fourth time the claims they asserted in the 2019 and 2020 Lawsuits and that Dondero, through NexPoint, brought again in the 2021 NexPoint Lawsuit. In addition, because the NexPoint Lawsuit brought claims under the Advisers Act and the TIA based on the same factual allegations as in the 2019 and 2020 Lawsuits and the May 8~~

---

[4] ~~NexPoint was also an investor in now-redeemed secured notes of ACIS CLO 2014-3, Ltd., which is not one of the defined "ACIS CLOs" in this Complaint.~~

Letter, there is equally little doubt that DAF and CLO HoldCo will also eventually bring Advisers Act claims against ACM and Mr. Terry, as well as TIA claims against U.S. Bank.

47.    On December 28, 2021, in a letter attached hereto as **Exhibit J**, Plaintiffs wrote to DAF and CLO HoldCo and requested that they "release … the [t]hreatened [c]laims" "[t]o avoid further unnecessary litigation expense." On January 10, 2022, in a letter attached hereto as **Exhibit K**, DAF and CLO HoldCo refused, stating that they "do not agree to execute a release of … [the] '[t]hreatened [c]laims.'"  DAF and CLO HoldCo's latest refusal on January 10, 2022 to release their threatened, albeit meritless, claims removes any remaining doubt that they continue to threaten to bring further litigation related to the ACIS CLOs.

### C.    ACM And HCLOF Settle HCLOF's Claims

48.    In January 2021, Highland acquired a 51%, controlling stake in HCLOF.  Upon acquiring this position, Highland's CEO, Mr. Seery, directed Highland and HCLOF to investigate the claims that DAF and CLO HoldCo brought in the 2019 and 2020 Lawsuits.  Rather than perpetuate the adversarial relationship that Dondero had fostered with ACM, on information and belief, Highland and HCLOF chose to work collaboratively with ACM to liquidate the ACIS CLOs' collateral and return cash to their investors, including HCLOF.

49.    On April 28, 2021, HCLOF, ACM, ACM GP, and Mr. Terry executed the HCLOF Settlement Agreement, attached hereto as **Exhibit L**.  Pursuant to the HCLOF Settlement Agreement, HCLOF released "any and all claims … against [ACM GP], [ACM], and [Mr.] Terry, in any capacity, Brigade Capital Management, LP, U.S. Bank National Association, Moody's Investor Services, Inc., [and] the Acis CLOs."  Ex. J § 10.  The release of claims covered "any claims for breach of any duties or obligations owed by [ACM and ACM GP] to the Acis CLOs under the [ACIS Portfolio Management Agreements] arising prior to the Effective Date, including but not limited to any fees and expenses paid by the Acis CLOs to [ACM or ACM GP]."  *Id.*  The

releases were intended to facilitate "the optional redemption of certain Acis CLOs on terms directed by HCLOF." *Id.* at 2. To that end, ACM and ACM GP agreed to "execute in good faith the redemptions of the Acis CLOs." *Id.* § 5.

50. The HCLOF Settlement Agreement released the claims that DAF and CLO HoldCo attempted to advance derivatively on behalf of HCLOF in the 2019 and 2020 Lawsuits. *See* Ex. F ¶ 87; Ex. G ¶ 88. DAF and CLO HoldCo can stand in no better position than HCLOF and are bound by the HCLOF Settlement Agreement that HCLOF reached with ACM, ACM GP, and Mr. Terry. DAF and CLO HoldCo are collaterally estopped from asserting the Advisers Act, TIA, and other claims that HCLOF released pursuant to that agreement. And in a separate settlement agreement, Highland similarly granted Mr. Terry, ACM, and the Acis CLOs a "general" release, and also released U.S. Bank and Brigade from "any and all claims … which were or could have been asserted in, in connection with, or with respect to the DAF Lawsuits." General Release Agreement §§ 1(b), (c), attached hereto as **Exhibit M**; *see also id.*, § 4 (defining "DAF Lawsuits" as the 2019 and 2020 Lawsuits).

### D. Redemption Of The ACIS CLOs And The Inequitable Impact Of Defendants' Ongoing And Threatened Litigation

51. In June 2021, the ACIS CLOs liquidated their assets and redeemed their secured notes, leaving only the subordinated notes outstanding. The liquidation of the ACIS CLOs generated sufficient proceeds to make significant payments to the holders of subordinated notes— which in the case of ACIS 4 and ACIS 5, are owned entirely by HCLOF, and in the case of ACIS 6, owned primarily by HCLOF. NexPoint's ongoing lawsuit and DAF and CLO HoldCo's ongoing litigation threat, however, have frustrated the ACIS CLOs' ability to make the full distributions to the subordinated notes that they otherwise would. Faced with ongoing and threatened litigation against Plaintiffs and the ACIS CLOs' obligation to indemnify Plaintiffs in

connection with that ongoing and threatened litigation, liquidation proceeds were retained to cover the ACIS CLOs' potential future indemnification obligations. As a result, significant payments that HCLOF and other subordinated noteholders would otherwise receive from the liquidation of the ACIS CLOs have been delayed.[5]

52. With this action, Plaintiffs seek to finally resolve Defendants' standing to pursue claims, including under the Advisers Act and TIA, with respect to the ACIS CLOs, and confirm that all of DAF and CLO HoldCo's threatened claims have been released by HCLOF under the HCLOF Settlement Agreement. Plaintiffs hope to obtain judicial determinations that the threatened claims and other causes of action that DAF and CLO HoldCo have hung over Plaintiffs' heads without actually filing are meritless. Moreover, by asserting declaratory judgment claims against NexPoint, Plaintiffs ACM and Mr. Terry hope to obtain judicial determinations that NexPoint's nearly identical claims are equally meritless, to the extent NexPoint attempts to maneuver to avoid their dismissal with prejudice in the NexPoint Lawsuit. In doing so, Plaintiffs seek to free up funds that are being held in reserve from distributions to the subordinated noteholders of the ACIS CLOs to cover the ACIS CLOs' indemnity obligations to Plaintiffs and stop the unnecessary delay to the subordinated noteholders who are forced to wait for payments they would otherwise receive today.

---

[5] Upon information and belief, the delay in payments to HCLOF and its majority owner, Highland, may be partially motivating Defendants' refusal to abandon their vexatious campaign against ACM and the ACIS CLOs. Dondero at one time owned and controlled Highland, which he placed into bankruptcy in October 2019. During the course of the bankruptcy, control was transferred to an independent manager, Mr. Seery. Ever since, Dondero has directed vexatious litigation towards Highland and Mr. Seery, and has twice been held in contempt for his actions. *See In Re Highland Cap. Mgmt., L.P. v. Dondero*, Case No. 20-3190-sgj, ECF 190 (N.D. Tex. Bankr.), attached hereto as Exhibit N; Ex. B at 26-27, 30. In the second contempt order, DAF was held in contempt alongside Dondero.

## STATEMENT OF RELATEDNESS TO THE NEXPOINT LAWSUIT

53.     This Action and the NexPoint Lawsuit are related cases under ~~Local Civil~~ Rule 13(a)(1) because (a) this Action and the NexPoint Lawsuit concern the same or substantially similar parties, property, transactions or events; (b) there is substantial factual overlap between this Action and the NexPoint Lawsuit; and (c) there would be a substantial duplication of effort and expense for the Court and the parties if this Action and the NexPoint Lawsuit were not treated as related.

54.     As explained above, there is substantial factual overlap between this Action and the NexPoint Lawsuit because they concern the same transactions, events, and property; identical disputed contractual provisions; and related parties.  Also as explained above, this Action seeks declaratory judgment that Defendants lack standing to bring the same claims alleging mismanagement of ACIS 6 by ACM, Mr. Terry, and Brigade and failure to prevent mismanagement by U.S. Bank that NexPoint brought in the NexPoint Lawsuit—namely, that ACM had effected transactions involving ACIS CLO assets that did not satisfy the WAL test and the WAM test, permitted the WARF to increase, and permitted the ACIS CLOs to incur unjustified and exorbitant fees, as well as that the Trustee had breached its duties of due care and to avoid conflicts of interest by declining to intervene.  *Compare* Ex. F ¶¶ 60-70, 73, 78-99 *and* Ex. G ¶¶ 61-71, 74, 79-100, *with* Ex. I ¶¶ 33-36, 65-108, 119, 203-11.  Further, although NexPoint did not invest in the subordinated notes of ACIS 4 and 5, the purchases that the NexPoint Lawsuit and the 2019 and 2020 Lawsuits all challenge were allocated among the ACIS CLOs.  Both the NexPoint Lawsuit and this Action concern the same purchases of collateral securities, alleged to violate the same contractual eligibility tests.  The parties to the lawsuits are also similar.  Plaintiffs and NexPoint are parties to both this Action and the NexPoint Lawsuit; and ~~NexPoint, DAF, and CLO~~

HoldCo are effectively affiliated parties because they are all entities that Dondero functionally controls.

55.     Because this Action and the NexPoint Lawsuit concern the same facts, transactions, events, and property, and similar parties, there would be a substantial duplication of effort and expense if this Action and the NexPoint Lawsuit were not treated as related.  Treating the cases as related would streamline litigation of identical and/or similar issues and avoid duplication of effort and expense by the parties and the Court.  Given Dondero's history of vexatious litigation, there is a significant risk that Dondero will respond to dismissal of the claims in the NexPoint Lawsuit by re-filing identical claims on behalf of DAF and CLO HoldCo in the hopes of finding a more sympathetic court.  *See* Tr. Ruling, *In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj11, Dkt. 2500, attached hereto as **Exhibit O**, at 109:17-22 (THE COURT: "I have commented before that we seem to have vexatious litigation behavior with regard to Mr. Dondero and his many controlled entities."); Ex. B at 26 (Judge Jernigan's finding Dondero and others in civil contempt of a bankruptcy injunction and observing that the offending lawsuit "*is, from this court's estimation, wholly frivolous*" (emphasis in original)).  The administration of these two cases together will prevent such gamesmanship and dispose of all standing issues related to claims brought by Dondero's various related entities in a single proceeding.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT THAT THE ADVISERS ACT, TIA, AND OTHER CLAIMS ARE BARRED FOR LACK OF STANDING
### (Against All Defendants)

56.     Plaintiffs incorporate paragraphs 1-55 as if fully set forth herein.

57.     DAF and CLO HoldCo brought claims in the 2019 and 2020 Lawsuits premised on HCLOF's subordinated notes in the ACIS CLOs.  While DAF and CLO HoldCo voluntarily dismissed the 2019 and 2020 Lawsuits, they purportedly did so without prejudice.  They have

continued to threaten Plaintiffs with the claims alleged in those lawsuits and other claims based on the same factual allegations ever since, including via the NexPoint Lawsuit, and have refused to release those claims.

58.     Further, because the NexPoint Lawsuit brought claims under the Advisers Act and the TIA based on the same factual allegations as in the 2019 and 2020 Lawsuits and the May 8 Letter, there is little doubt that DAF and CLO HoldCo will eventually attempt to bring Advisers Act claims against ACM and Mr. Terry and TIA claims against U.S. Bank.

59.     NexPoint has in fact brought claims under the Advisers Act and the TIA, as well as other claims, against Plaintiffs in the NexPoint Lawsuit.  Plaintiffs have repeatedly warned NexPoint that its claims suffer from fatal flaws, but NexPoint declined to withdraw those claims.

60.     DAF and CLO HoldCo lack direct standing to bring Advisers Act and TIA claims and other claims from the 2019 and 2020 Lawsuits against Plaintiffs because neither Defendant owns any subordinated notes in the ACIS CLOs.

61.     NexPoint also lacks direct standing to pursue the claims asserted against Mr. Terry and ACM in the NexPoint Lawsuit.  For the reasons explained in ACM's motion to dismiss in the NexPoint Lawsuit, NexPoint's claims are derivative under Cayman Islands law because they are all predicated on direct harm allegedly done to Acis CLO 6 that impact NexPoint only by virtue of its investment in Acis CLO 6.  *See* **Exhibit P**, *NexPoint Strategic Opportunities Fund*, Case No. 1:21-cv-04384-GHW, ECF 84 at 17-18.

62.     Under Guernsey law, DAF and CLO HoldCo cannot assert derivative standing on behalf of HCLOF.

63. ~~Further, under Cayman Islands law, Defendants cannot assert derivative standing on behalf of the ACIS CLOs, including for the reasons explained in ACM's motion to dismiss in the NexPoint Lawsuit. *See* Ex. P at 19-23.~~

64. ~~An actual controversy has arisen between Plaintiffs and Defendants in that, as described above, (1) NexPoint has brought Advisers Act and other claims against Plaintiffs Mr. Terry and ACM, for which it lacks standing; and (2) DAF and CLO HoldCo have threatened to bring those same claims against Plaintiffs Mr. Terry and ACM, and claims under the TIA and other claims against Plaintiff U.S. Bank, for which they also lack standing, and have refused to release those claims.~~

65. Plaintiffs request a judicial declaration that Defendants DAF and CLO HoldCo lack standing to bring the Advisers Act and TIA claims and other claims set out in the 2019 and 2020 Lawsuits, and the May 8 Letter, and that Defendant NexPoint lacks standing to bring the Advisers Act and other claims against Mr. Terry and ACM in the NexPoint Lawsuit.

66. ~~A judicial determination is necessary and appropriate at this time and under these circumstances for the Parties to ascertain their rights and obligations to one another and to avoid the hardship caused on the Parties, Highland, and the investors in the ACIS CLOs by a protracted dispute and the further delay that will tie up substantial funds that could otherwise be distributed to investors.~~

**COUNT II: DECLARATORY JUDGMENT THAT ANY CLAIMS BY DEFENDANTS RELATED TO THE ACIS CLOS ARE BARRED BY THE HCLOF SETTLEMENT AGREEMENT**
**(Against Defendants DAF And CLO HoldCo)**

67. Plaintiffs incorporate paragraphs 1-66 as if fully set forth herein.

68. Plaintiff ACM and HCLOF are parties to the HCLOF Settlement Agreement ~~and are releasees under that agreement.~~

69. ~~Plaintiffs Mr. Terry and U.S. Bank and non-party Brigade are third-party releasees under the terms of the HCLOF Settlement Agreement.~~

70. Under the HCLOF Settlement Agreement, HCLOF released "any and all claims … against [ACM GP], [ACM], and [Mr.] Terry, in any capacity, Brigade Capital Management, LP, U.S. Bank National Association, Moody's Investors Services, Inc., [and] the Acis CLOs (with respect to any claims for breach of any duties or obligations owed by [ACM and ACM GP] to the Acis CLOs under the [portfolio management agreements] arising prior to the Effective Date, including but not limited to any fees and expenses paid by the Acis CLOs to [ACM or ACM GP])." Ex. J § 10.

71. ~~DAF and CLO HoldCo brought claims in the 2019 and 2020 Lawsuits concerning HCLOF's subordinated notes in the ACIS CLOs. While DAF and CLO HoldCo voluntarily dismissed the 2019 and 2020 Lawsuits, they purportedly did so without prejudice, and they have continued to threaten Plaintiffs with the claims alleged in those lawsuits and other claims based on the same factual allegations ever since.~~

72. ~~An actual controversy has arisen between Plaintiffs, and DAF and CLO HoldCo, in that, as described above, DAF and CLO HoldCo have threatened to bring claims derivatively on behalf of HCLOF that HCLOF released in the HCLOF Settlement Agreement, and have refused to release those claims.~~

73. Plaintiffs request a judicial declaration that DAF and CLO HoldCo's Advisers Act, TIA, and other claims against Plaintiffs as set out in the 2019 and 2020 Lawsuits, and the May 8 Letter are barred by the HCLOF Settlement Agreement.

74. ~~A judicial determination is necessary and appropriate at this time and under these circumstances for the Parties to ascertain their rights and obligations to one another and to avoid~~

~~the hardship caused on the Parties, Highland, and the subordinated noteholders in the ACIS CLOs,~~
~~including HCLOF, by a protracted dispute and the further delay that will tie up substantial funds~~
~~that could otherwise be distributed to investors.~~

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully prays for judgment as follows:

a.   A declaration that Defendants DAF and CLO HoldCo do not have standing to assert claims against Plaintiffs and Brigade with respect to the ACIS CLOs and that Defendant NexPoint lacks standing to assert claims against Mr. Terry, ACM, and Brigade with respect to the ACIS CLOs;

b.   A declaration that DAF and CLO HoldCo's threatened claims against Plaintiffs and Brigade with respect to the ACIS CLOs are barred by the HCLOF Settlement Agreement; and

c.   Such other and further relief as this Court deems just and proper.

Respectfully submitted this 23rd day of February, 2022.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Jonathan E. Pickhardt*
Jonathan E. Pickhardt
Blair A. Adams
Misha Boutilier
51 Madison Avenue, 22nd Floor,
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry,*
*and Acis Capital Management, L.P.*

SEWARD & KISSEL LLP

By:   *Mark D. Kotwick*
Mark D. Kotwick
Thomas Ross Hooper

Julie J. Hong
One Battery Park Plaza
New York, New York 10004
(202) 574-1200

*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*