A  # Re Hydrodan (Corby) Ltd.
Chancery Division.
Millett J.
Judgment delivered 17 December 1993.

B
*Wrongful trading – Shadow director – De facto director – Whether terms de facto and shadow directors overlapped – Whether directors of parent company were shadow directors of subsidiary of which parent was a shadow director – Insolvency Act 1986, s. 214.*

**1.** The liability for wrongful trading imposed by s. 214 of the Insolvency Act 1986 extended to de facto directors as well as to de jure and shadow directors.

C
**2.** An allegation that a defendant acted as de facto or shadow director, without distinguishing between the two, was embarrassing. It suggested that de facto and shadow directors were very similar, that their roles overlapped, and that it might not be possible to determine in any given case whether a particular person was a de facto or a shadow director. The terms did not overlap. They were alternatives, and in most and perhaps all cases were mutually exclusive.

D
**3.** The directors of a parent company which was alleged to be a shadow director of a subsidiary, would not ipso facto themselves be shadow directors of the subsidiary. If (which was not alleged) the directors of the parent as a collective body gave directions to the directors of the subsidiary (which were Channel Island companies) and the directors were accustomed to act in accordance with such directions, the result would be to constitute the parent, but not its directors, a shadow director of the company.

A G Boyle QC (instructed by Dibb Lupton Bromhead) for the eighth defendant.
A G Bompas (instructed Paisner & Co) for the fifth defendant.

E  Gregory Hill (instructed by Emsley Collins, Leeds) for the liquidator.

## JUDGMENT

**Millett J:** These are appeals by the fifth and eighth defendants respectively from an order made on 4 August 1993 by District Judge Whitehurst in the Northampton County Court dismissing their applications to strike out proceedings which had been brought against them.

F
The proceedings arise in the liquidation of Hydrodan (Corby) Ltd ('the company'), a wholly-owned indirect subsidiary of Eagle Trust plc ('Eagle Trust'). The company was ordered to be compulsorily wound up by the Northampton County Court on 13 December 1988 on a creditors' petition which had been presented on 17 October 1988.

On 18 February 1993 the liquidator made an application in the Northampton County Court against fourteen defendants alleging that they had been guilty of wrongful trading

G  and seeking orders against them under s. 214 of the *Insolvency Act* 1986. The defendants included Eagle Trust itself, one of its subsidiaries and all its directors. The liquidator supported his application by an affidavit setting out the evidence upon which he relied.

On 19 April 1993 the fifth defendant, Mr Thomas, applied to strike out the liquidator's application against him. He supported his application by a short affidavit. On 5 May 1993 the eighth defendant, Dr Hardwick, made a similar application. The two defendants' applications were heard by the District Judge on 18 May 1993. He gave

H  judgment on 4 August 1993 and dismissed both applications, but very sensibly ordered the liquidator to serve points of claim. Mr Thomas and Dr Hardwick now appeal to this court.

Meanwhile, on 5 October 1993, the liquidator duly served points of claim against all the defendants. Mr Hill, who appears before me for the liquidator, concedes that the points of claim truly represent the liquidator's case as supported by the evidence filed by

EXHIBIT
4

| **162** | Re Hydrodan (Corby) Ltd<br>(Millett J) | **[1994] BCC** |
|---|---|---|

him, and there is no further evidence available to him which would support any other or further pleadings.   A

Accordingly, counsel have agreed before me that the issue is exactly the same as that which would have arisen had the points of claim been before the District Judge and the question is whether they should be struck out as disclosing no reasonable cause of action against Mr Thomas and Dr Hardwick. The company or the group structure is not entirely clear, but for the purpose of present appeals I must take the structure to be that alleged   B
by the liquidator. Eagle Trust had a wholly-owned subsidiary, Midland City Partnerships Ltd ('MCP') which in turn had a wholly-owned subsidiary, Landsaver MCP Ltd (which I will call 'Landsaver 19'). The liquidator alleges that the company is a wholly-owned subsidiary of Landsaver 19 and thus a wholly-owned indirect subsidiary of Eagle Trust. Eagle Trust had eight or nine directors, some of whom were executive directors and some of whom were non-executive directors. As one would expect, the executive directors were also directors of MCP and of Landsaver 19, the operating companies; but they were not   C
directors of the company. The titular and only directors of the company were two Channel Island companies: Tuscan Investments Ltd and Ithaca Investments Ltd, which were appointed directors of the company on 18 March 1986.

The liquidator alleges that the company was trading wrongfully from 24 April 1986 until 17 October 1988, the date on which the winding-up petition was presented. As against Mr Thomas and Dr Hardwick, the liquidator alleges that they became responsible   D
for the wrongful trading of the company as from 15 April 1987, the date on which they were appointed to be directors of Eagle Trust.

Liability for wrongful trading is imposed by s. 214 of the *Insolvency Act* 1986. The statutory liability is imposed exclusively upon persons who are or were at the material time directors of the company in liquidation. But s. 214(7) provides that in the section 'director' includes a shadow director. A shadow director is defined in s. 251 of the   E
*Insolvency Act* 1986 in these terms:

> ' "Shadow director", in relation to a company, means a person in accordance with whose directions or instructions the directors of the company are accustomed to act . . .'

I need not recite the proviso to that definition.

Directors may be of three kinds: de jure directors, that is to say, those who have been   F
validly appointed to the office; de facto directors, that is to say, directors who assume to act as directors without having been appointed validly or at all; and shadow directors who are persons falling within the definition which I have read.

The defendants accept, though for the purpose of these appeals only, that the liability imposed by s. 214 extends to de facto directors as well as to de jure and shadow directors. It appears to me that that concession is plainly correct. Liability for wrongful trading is   G
imposed by the Act on those persons who are responsible for it, that is to say, who were in a position to prevent damage to creditors by taking proper steps to protect their interests. Liability cannot sensibly depend upon the validity of the defendant's appointment. Those who assume to act as directors and who thereby exercise the powers and discharge the functions of a director, whether validly appointed or not, must accept the responsibilities which are attached to the office. Nevertheless, the statutory liability is imposed exclusively upon directors of one or other of the three kinds that I have   H
mentioned. Accordingly, the liquidator must plead and prove against each defendant separately that he or it was a director of the company.

Mr Thomas and Dr Hardwick were never appointed directors of the company. It is submitted on their behalf that the liquidator has neither pleaded the necessary facts nor put forward the necessary evidence to establish that either of them was a de facto or

| ChD | Re Hydrodan (Corby) Ltd | **163** |
|---|---|---|
| | *(Millett J)* | |

A  shadow director of the company. In para. 1.7 of the points of claim under the heading 'Summary', the liquidator has pleaded the substance of his case as follows:

> 'The individual respondents also personally acted as de facto or shadow directors of the company as hereinafter pleaded in relation to them respectively.'

This makes it necessary to examine the later allegations in the pleadings in order to discover what the facts are relied upon to support the allegation that Mr Thomas and Dr
B  Hardwick were de facto or shadow directors of the company.

I would interpose at this point by observing that in my judgment an allegation that a defendant acted as de facto or shadow director, without distinguishing between the two, is embarrassing. It suggests – and counsel's submissions to me support the inference – that the liquidator takes the view that de facto or shadow directors are very similar, that their roles overlap, and that it may not be possible to determine in any given case whether
C  a particular person was a de facto or a shadow director. I do not accept that at all. The terms do not overlap. They are alternatives, and in most and perhaps all cases are mutually exclusive.

A de facto director is a person who assumes to act as a director. He is held out as a director by the company, and claims and purports to be a director, although never actually or validly appointed as such. To establish that a person was a de facto director of a company it is necessary to plead and prove that he undertook functions in relation
D  to the company which could properly be discharged only by a director. It is not sufficient to show that he was concerned in the management of the company's affairs or undertook tasks in relation to its business which can properly be performed by a manager below board level.

A de facto director, I repeat, is one who claims to act and purports to act as a director, although not validly appointed as such. A shadow director, by contrast, does not claim
E  or purport to act as a director. On the contrary, he claims not to be a director. He lurks in the shadows, sheltering behind others who, he claims, are the only directors of the company to the exclusion of himself. He is not held out as a director by the company. To establish that a defendant is a shadow director of a company it is necessary to allege and prove: (1) who are the directors of the company, whether de facto or de jure; (2) that the defendant directed those directors how to act in relation to the company or that he was one of the persons who did so; (3) that those directors acted in accordance with such
F  directions; and (4) that they were accustomed so to act. What is needed is, first, a board of directors claiming and purporting to act as such; and, secondly, a pattern of behaviour in which the board did not exercise any discretion or judgment of its own, but acted in accordance with the directions of others.

In the present case, there were titular directors of the company. They were Channel Island companies. That fact alone may be sufficient to justify an inference that they were
G  accustomed to act in accordance with the directions of others; in which case there were shadow directors of the company. But there is nothing pleaded in the points of claim to suggest that there were, in addition to the titular directors, any other persons who claimed to be directors of the company at all.

Counsel have argued the case before me on the footing that sufficient facts are pleaded to justify the inference that Eagle Trust, and possibly MCP as well, acted as a shadow director of the company. I shall assume that that is so. Against Dr Hardwick – I take
H  him first as the simpler of the two – what is alleged is pleaded under the heading of 'The respondents' respective involvement' and is contained in para. 23 of the points of claim, as follows:

> 'Dr Hardwick, as a director of Eagle Trust, is, with the other directors thereof, collectively responsible for the conduct of that company [i.e. Eagle Trust] . . . in relation to the company.'

It is therefore the liquidator's case that Eagle Trust was a director of the company (presumably a shadow director); and Dr Hardwick's liability is based exclusively upon the fact, being the only fact alleged against him, that he was one of the directors of Eagle Trust. As one of the directors of a shadow director, it is alleged, he was one of those collectively responsible for Eagle Trust's conduct; and was accordingly a shadow director of the company. In my judgment the conclusion does not follow from the premise.

The liquidator submitted that where a body corporate is a director of a company, whether it be a de jure, de facto or shadow director, its own directors must ipso facto be shadow directors of the company. In my judgment that simply does not follow. Attendance of board meetings and voting, with others, may in certain limited circumstances expose a director to personal liability to the company of which he is a director or its creditors. But it does not, without more, constitute him a director of any company of which his company is a director.

It is not alleged against Dr Hardwick that he did anything at all in relation to the affairs of the company, not even that he voted as a director of Eagle Trust in respect of any matter in relation to the affairs of the company.

In my judgment the mere fact that Dr Hardwick was a director of Eagle Trust does not establish that he was either a shadow director or a de facto director of the company. The expression 'collectively responsible' obscures the relevant legal relationship. By reason of his appointment as a director of Eagle Trust, Dr Hardwick owed fiduciary duties and a duty of care to Eagle Trust, but it does not follow that he ever gave instructions to the directors of the company or that the directors of the company were accustomed to act on his instructions. Nor does it follow that he ever acted as a director of the company.

It is possible (although it is not so alleged) that the directors of Eagle Trust as a collective body gave directions to the directors of the company and that the directors of the company were accustomed to act in accordance with such directions. But if they did give such directions as directors of Eagle Trust, acting as the board of Eagle Trust, they did so as agents for Eagle Trust (or more accurately as the appropriate organ of Eagle Trust) and the result is to constitute Eagle Trust, but not themselves, shadow directors of the company.

In practice, in a case of the present kind, it is much more likely that it will be found that the executive directors of the ultimate parent company (or some of them) have from time to time individually and personally given directions to the directors of the subsidiary and thereby rendered themselves personally liable as shadow directors of the subsidiary. But if all they have done is to act in their capacity as directors of the ultimate holding company, in passing resolutions at board meetings, then in my judgment the holding company is the shadow director of the subsidiary, and they are not.

Against Mr Thomas, the liquidator has pleaded rather more. He has pleaded as follows:

'1. [Mr Thomas] participated in the decision to sanction the disposal of Landsaver 19's assets to another company, Company 22, and Company 22 to Central Pacific Securities and to [two named gentlemen], which disposals had the effect of impeding the identification of the company's assets and of increasing the costs of the liquidation.'

Then follows the same allegation as that against Dr Hardwick:

'2. Generally as a director of Eagle Trust [he] is, with the other directors thereof, collectively responsible for the conduct of that company in relation to the company.'

| ChD | Re Hydrodan (Corby) Ltd | **165** |
|---|---|---|
| | (Millett J) | |

A      The first of those pleadings does not allege anything in relation to the affairs of the company. It does not in terms allege that Mr Thomas gave any directions to the directors of the company or that he acted in any way in relation to the company's affairs. On the contrary, all that he appears to have done is to have participated in a decision – I take it a decision of Eagle Trust – to sanction, that is, to approve or authorise, certain disposals not by the company, but by another company, Landsaver 19.

B      I find it difficult to extract from that pleading any relevant relationship between Mr Thomas and the company. But assuming that such a connection can be extracted, the most that is alleged against Mr Thomas is that as one of the directors of Eagle Trust, he was party to a decision by Eagle Trust to authorise or approve of a disposal of its assets by a wholly-owned subsidiary. That allegation in my judgment is not even sufficient to constitute Eagle Trust a shadow director of the company. It is a commonplace that the disposal of a subsidiary or a subsidiary's business by its directors would require the

C      sanction or approval of the parent company, acting in this instance as the shareholder. Provided that the decision is made by the directors of the subsidiary, exercising their own independent discretion and judgment whether or not to dispose of the assets in question, and that the parent company only approves or authorises the decision, then in my judgment there is nothing which exposes the parent company to liability for the decision or which constitutes it a shadow director of the subsidiary.

D      In my judgment therefore the liquidator has neither pleaded nor adduced any evidence to support any allegation that either Mr Thomas or Dr Hardwick is or was at any material time a director of the company. Accordingly the proceedings against those two defendants must fail and ought now to be struck out. I allow the appeals accordingly.

*(Order accordingly)*

E

F

G

H