M. R.        RUSSELL *v.* WAKEFIELD WATERWORKS COMPANY.
*1875*
*May* 28.                     [1875 R. 43.]

*Company—Suit by Shareholder on behalf of Himself and other Shareholders—*
*Illegal Payment by Directors—Ultrà Vires—Form of Suit.*

> Where a shareholder in an incorporated company filed his bill on behalf of himself and all other shareholders against the directors and the promoters of a bill in Parliament for a rival purpose, alleging an illegal payment of the company's money to such promoters to buy off their opposition, and praying that it might be replaced:—
> 
> *Held*, on demurrer, that it was not sufficiently alleged in the bill that the payment was *ultrà vires*:
> 
> *Held*, also, there being no allegation that the company would not sue, that it was not a case in which the suit could be maintained in its present form; and that the demurrer must be allowed, with leave to amend.
> 
> Observations on the exceptions to the general rule, that the company and not an individual corporator must sue when the trust funds of the company have been misapplied.

# DEMURRER.

The bill was filed by the Plaintiff *Henry Edward Russell*, on behalf of himself and all other the shareholders in the *Wakefield Waterworks Company*, except such of the Defendants as were shareholders therein.

The Defendants were the said *Wakefield Waterworks Company*, the six directors of the same company, and the six promoters of an undertaking called the *Wakefield and District New Water Bill*.

The bill alleged that in the year 1874 the Plaintiff became, by purchase, the duly registered owner of two fully paid-up shares in the Defendant company; that he afterwards heard of the payment of £5500 to the promoters of the *Wakefield and District New Water Bill* to buy up their opposition; that in the balance-sheet for the half-year ending the 30th of June, 1874, there was the following entry in the capital account: "Parliamentary expenses, £8517 14*s.* 9*d.*"; and that the balance-sheet for the half-year ending the 31st of December, 1874, contained the following entry: "Parliamentary expenses, £9083 10*s.* 11*d.*"; but that neither the balance-sheets nor the reports contained any explanation of these entries:

EXHIBIT 16

That the Plaintiff's solicitor was informed by the secretary to the company that the sum of money paid to the promoters of the New Water Bill was included in the said sum of £8517 14s. 9d., and charged to the capital account of June, 1874, and was paid by the directors in accordance with a resolution of the shareholders, authorizing them to do all necessary acts, and in exercise of the lawful powers of the directors, and that the accounts containing the payments had since been passed and confirmed by the shareholders:

M. R.
1875
RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

That the Plaintiff had ascertained the following facts with reference to the transaction in question:—During the session of Parliament in the year 1874 the Defendants, the directors of the waterworks company, introduced a bill into Parliament authorizing them to make new reservoirs and works, and to raise more money, and to extend their limits of supply. During the same session a bill was introduced by the Defendants, the promoters thereof, intituled the *Wakefield and District New Water Bill*, whereby it was proposed to erect waterworks of a similar character to those proposed by the Defendant company for the supply of *Wakefield* and its neighbourhood, and the promoters lodged a petition against the bill introduced by the said directors. On the 9th of April the promoters of the *Wakefield and District New Water Bill* withdrew their bill, such withdrawal being, as the Plaintiff alleged, the result of a corrupt agreement made between the promoters of that bill and the directors of the Defendant company, and which was in the following terms:—

"Terms of arrangement between the *Wakefield Waterworks Company* and the *Wakefield New Waterworks Company* made this 7th of April, 1874. The directors of the *Wakefield Old Waterworks Company* pledge their words as men of honour to proceed with their present application to Parliament for a supply of water from *Langsett*, and to use their utmost endeavours to secure the passing of their new bill in both Houses of Parliament during the present session, and will also pay to the directors of the *Wakefield New Waterworks Company* the sum of £5500 for the costs and expenses incurred by them in connection with their present scheme, on condition that the *Wakefield New Waterworks Company* do forthwith withdraw their bill now before Parliament, and

M. R.
1875
Russell
v.
Wakefield
Waterworks
Company.

also withdraw at once the petition filed by the *Wakefield New Waterworks Company* and the inhabitants and consumers of water in *Wakefield* and its neighbourhood, recently lodged or filed, and do use their influence, and do render all the assistance in their power to the directors of the *Wakefield Old Waterworks Company* (if and when required by them) at the expense of the said last-named company, to secure the passing of the present bill of the *Wakefield Old Waterworks Company*, now before Parliament, into law during the present session of Parliament. As witness the hands of the directors of the said two companies." This agreement was signed by the several Defendants the directors of the Defendant company, and by the several Defendants the promoters of the said bill, on the 7th of April, 1874, and on or about that date the directors of the Defendant company paid to the promoters of the said bill out of the moneys of the Defendant company the sum of £5500.

The bill alleged that the promoters had express notice that the sum of £5500 was paid out of the moneys of the Defendant company, and that the directors had no authority so to pay the same; that no general meeting of the shareholders of the Defendant company was held, and no resolution passed for the purpose of authorizing the said agreement, or the payment of the said £5500.

The Plaintiff insisted that the transaction was illegal, and that its illegality was known to the directors and promoters; and he charged that the said sum of £5500 was illegally paid out of the capital and funds of the Defendant company to the said promoters, and that they received such moneys with full notice and knowledge that the same was being so paid to them illegally, and by a breach of trust; that the promoters concurred in such breach of trust; and that the directors and promoters were liable to repay the same.

The bill prayed that it might be declared that the agreement of the 7th of April, 1874, and the said payment of the sum of £5500 were not within the powers of the Defendant company; that an account might be taken of the moneys so paid, and that the Defendants, the directors and promoters, might be ordered to repay the same.

The Defendants demurred generally for want of equity.

Case 1:21-cv-11059-GHW   Document 141-16   Filed 06/14/23   Page 4 of 10

Mr. *Bagshawe*, Q.C., and Mr. *Bunting*, for the Defendants, in support of the demurrer:—

M. R.
1875
RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

This bill seeks to recover back a sum of money paid by the Defendants, the directors of the waterworks company, to the other Defendants, the promoters of the bill which was withdrawn, on the ground that such payment was *ultrà vires*; but there are, we submit, no sufficient allegations in the bill to shew that the act complained of was beyond the powers of the directors.

Further, the suit is wrongly framed. A bill like this, to recover moneys belonging to a corporate body alleged to be improperly paid to a stranger, cannot be filed by an individual shareholder, unless it is distinctly alleged that the corporation or company have refused to sue, or that there is some reason which prevents the company from suing: *Gray* v. *Lewis* (1); *Mozley* v. *Alston* (2); *Foss* v. *Harbottle* (3).

It is not alleged in this bill either that the Defendant company has refused to sue, or that it is incapable of suing: on these grounds, therefore, as well as on the first, we contend that the demurrer should be allowed.

Mr. *Chitty*, Q.C., and Mr. *W. W. Cooper*, for the Plaintiff, in support of the bill:—

The conduct of the directors of the waterworks company in entering into the agreement with the promoters of a rival company, and paying them the sum of £5500 to buy off their opposition, was, on the facts alleged in the bill, both illegal and *ultrà vires*. The directors were in the position of trustees for the company, and, as such, they are liable in this Court to account for the company's money which they have misapplied. The bill alleges that the promoters received the money with notice that it was the property of the company. That would be sufficient to render them in this Court liable to account for it: *Ferguson* v. *Wilson* (4); *Hodgkinson* v. *National Live Stock Insurance Company* (5); *Maunsell* v. *Midland Great Western (Ireland) Railway Company* (6); *Atwool* v. *Merryweather* (7).

(1) Law Rep. 8 Ch. 1035.　　(4) Law Rep. 2 Ch. 77.
(2) 1 Ph. 790.　　　　　　　(5) 4 De G. & J. 422.
(3) 2 Hare, 461.　　　　　　(6) 1 H. & M. 130.
　　　　(7) Law Rep. 5 Eq. 464, n.

M. R.
1875

RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

In *Salomons* v. *Laing* (1), where money belonging to one railway company had been improperly paid over by the directors to the directors of another company who had notice of the breach of trust, and a bill was filed by a shareholder of the first company on behalf of himself and the other shareholders against the directors of both companies to recover back the fund, it was held on demurrer that the directors of the second company were properly made parties to the suit, and also that such a suit might be instituted by an individual shareholder, although it was not alleged that the company had refused to sue. That case is a direct authority in favour of the bill being framed in its present form.

Mr. *Bagshawe*, in reply, on the question whether the Plaintiff should have leave to amend.

SIR G. JESSEL, M.R. :—

I am of opinion that this bill is open to general demurrer on two grounds. The nature of the case which I suppose was intended to be made by the bill is that the waterworks company were not authorized to pay a sum of £5500 to the promoters of an opposition company, who were opposing a bill for extending the powers of what I will call the old company, in order to buy off the opposition. The bill seeks to make liable both the directors of the old company who had paid the money and the promoters of the new company who received the money.

The two objections, which I think are well founded, are these: first, it is said there is no case made by the bill shewing that the act complained of was beyond the powers of the old company, there being no direct allegation of fraud, although the word "corrupt" is used; and secondly, it is said that, even if the act complained of was shewn to be *ultrà vires*, it was a case in which the old company, which was an incorporated company, ought to sue. [His Honour then reviewed the allegations in the bill, and considered that the bill did not sufficiently allege that the payment complained of was beyond the powers of the old company.]

A great deal of the argument in this case turned upon what

(1) 12 Beav. 377.

Case 1:21-cv-11059-GHW   Document 141-16   Filed 06/14/23   Page 6 of 10

may be described perhaps, in one sense, as a technical objection, but which is a very formidable and important objection. It was said that this is a bill to make a stranger pay back money belonging to a company which the stranger has illegally or improperly possessed himself of, or appropriated to his own use, and that any person who takes possession of a trust fund is liable to be sued in equity by the owner of the trust fund if he had notice at the time that it was a trust fund; and although he gave value, still in that way the bill can be maintained against him.

M. R.
1875
RUSSELL
v.
WAKEFIELD
WATERWORKS
COMPANY.

The answer was, that where the owner of the trust fund is an incorporated company, the corporation is the only party to sue; the stranger has nothing whatever to do with the individual corporators; and although in a sense it is their property, because individual corporators make up the corporation, yet in law it is not their property, but the property of the corporation, and therefore the right person to sue is the corporation, who is the *cestui que trust* or equitable owner of the fund. That I take to be the general rule of this Court. In this Court the money of the company is a trust fund, because it is applicable only to the special purposes of the company in the hands of the agents of the company, and it is in that sense a trust fund applicable by them to those special purposes; and a person taking it from them with notice that it is being applied to other purposes cannot in this Court say that he is not a constructive trustee.

But the general rule being that the *cestui que trust* must sue, and not the individual corporator who has only an ultimate beneficial interest, the only point remaining to be considered is, whether there are any exceptions to the general rule. I entirely agree that the general rule, if I may say so respectfully, is correctly stated by Lord Justice *James* in the case of *Gray* v. *Lewis* (1): "Where there is a corporate body capable of filing a bill for itself to recover property, either from its directors or officers, or from any other person, that corporate body is the proper plaintiff, and the only proper plaintiff." I do not understand the Lord Justice to intend to state more than the general rule, because he began by saying: "It is very important, in order to avoid oppressive litigation, to adhere to the rule laid down in *Mozley* v. *Alston* (2), and *Foss* v.

(1) Law Rep. 8 Ch. 1035, 1050. (2) 1 Ph. 790.

M. R.
1875

RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

*Harbottle* (1), which cases have always been considered as settling the law of this Court." So that in laying down the general rule he did not intend to impeach or interfere with those cases, but only to express the result of them. In reality *Mozley* v. *Alston* (2) simply affirmed *Foss* v. *Harbottle*, and therefore when you want to find the rule you must look to *Foss* v. *Harbottle*, where you will find the general rule is that which I have stated. But that is not a universal rule; that is, it is a rule subject to exceptions, and the exceptions depend very much on the necessity of the case; that is, the necessity for the Court doing justice.

In *Foss* v. *Harbottle* (3) Vice-Chancellor Sir *J. Wigram* says this: "The first objection taken in the argument for the Defendants was that the individual members of the corporation cannot in any case sue in the form in which this bill is framed. During the argument I intimated an opinion to which, upon further consideration, I fully adhere, that the rule was much too broadly stated on the part of the Defendants. I think there are cases in which a suit might properly be so framed. Corporations like this of a private nature are in truth little more than private partnerships, and in cases which may easily be suggested it would be too much to hold that a society of private persons associated together in undertakings which, though certainly beneficial to the public are nevertheless matters of private property, are to be deprived of their civil rights *inter se* because, in order to make their common objects more attainable, the Crown or the Legislature may have conferred upon them the benefit of a corporate character. If a case should arise of injury to a corporation by some of its members, for which no adequate remedy remained except that of a suit by individual corporators in their private characters, and asking in such character the protection of those rights to which in their corporate character they were entitled, I cannot but think that the principle so forcibly laid down by Lord *Cottenham*, in *Wallworth* v. *Holt* (4) and other cases would apply, and the claims of justice would be found superior to any difficulties arising out of technical rules respecting the mode in which corporations are required to sue." That I take to be the correct law on the subject.

(1) 2 Hare, 461.
(2) 1 Ph. 790.
(3) 2 Hare, 491.
(4) 4 My. & C. 619, 635.

M. R.
1875
RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

It remains to consider what are those exceptional cases in which, for the due attainment of justice, such a suit should be allowed. We are all familiar with one large class of cases which are certainly the first exception to the rule. They are cases in which an individual corporator sues the corporation to prevent the corporation either commencing or continuing the doing of something which is beyond the powers of the corporation. Such a bill, indeed, may be maintained by a single corporator, not suing on behalf of himself and of others, as was settled in the House of Lords in a case of *Simpson* v. *Westminster Palace Hotel Company* (1). If the subject matter of the suit is an agreement between the corporation acting by its directors or managers and some other corporation or some other person strangers to the corporation, it is quite proper and quite usual to make that other corporation or person a Defendant to the suit, because that other corporation or person has an interest, and a great interest, in arguing the question and having it decided, once for all, whether the agreement in question is really within the powers or without the powers of the corporation of which the corporator is a member. So that in these cases you must always bring before the Court the other corporation.

The cases are so numerous on this subject, that one ought not perhaps to refer to them. But I may mention a few of them. There is, first, the well-known case of *Hare* v. *London and North-Western Railway Company* (2); there is the case of *Simpson* v. *Denison* (3); there is a case of *Beman* v. *Rufford* (4); and a vast number of cases as regards agreements between railway companies which have been held to be *ultrà vires*. When you have got the second corporation or person a party to the suit, it may happen that, in addition to the relief that you are entitled to as regards the first, you are entitled to have relief against the second for something that has been done under the *ultrà vires* agreement. You may be entitled to have money paid back which has been paid under the *ultrà vires* agreement, as in the case of *Salomons* v. *Laing* (5), and you may be entitled to have property returned or other acts done. If the detainer or holder of the money or property, that is, the

(1) 8 H. L. C. 712.        (3) 10 Hare, 51.
(2) 2 J. & H. 80.          (4) 1 Sim. (N.S.) 550.
                (5) 12 Beav. 377.

M. R.
1875
RUSSELL
v.
WAKEFIELD
WATERWORKS
COMPANY.

second corporation or other person, is already a party, and a necessary party, to the suit, it would be indeed a lame and halting conclusion if the Court were to say it could do justice in a suit so framed by ordering the money to be returned or the property restored. It is a necessary incident to the first part of the relief which can be obtained by individual corporators, and will do complete justice on each side, and that has always been the practice of the Court. Therefore, in a case so framed there is no objection to a suit by an individual corporator to recover from another corporator, or from any other persons being strangers to this corporation, the money or property so improperly obtained. But that is not the only case. Any other case in which the claims of justice require it is within the exception.

Another instance occurred in the case of *Atwool* v. *Merryweather* (1), in which the corporation was controlled by the evil-doer, and would not allow its name to be used as Plaintiff in the suit. It was said that justice required that the majority of the corporators should not appropriate to themselves the property of the minority, and then use their own votes at the general meeting of the corporation to prevent their being sued by the corporation, and consequently in a case of that kind the corporators who form part of the minority might file a bill on their own behalf to get back the property or money so illegally appropriated. It is not necessary that the corporation should absolutely refuse by vote at the general meeting, if it can be shewn either that the wrong-doer had command of the majority of the votes, so that it would be absurd to call the meeting; or if it can be shewn that there has been a general meeting substantially approving of what has been done; or if it can be shewn from the acts of the corporation as a corporation, distinguished from the mere acts of the directors of it, that they have approved of what has been done, and have allowed a long time to elapse without interfering, so that they do not intend and are not willing to sue. In all those cases the same doctrine applies, and the individual corporator may maintain the suit. As I have said before, the rule is a general one, but it does not apply to a case where the interests of justice require the rule to be dispensed with. I do not intend by the observations I have made in any way to restrain

(1) Law Rep. 5 Eq. 464, n.

Case 1:21-cv-11059-GHW   Document 141-16   Filed 06/14/23   Page 10 of 10

the generality of the terms made use of by the learned Judge who decided the case of *Foss* v. *Harbottle* (1). Therefore I cannot help seeing it is quite possible so to amend this bill as to get rid of the difficulty which now exists, and I think that on this part of the case I should give leave to amend. Of course, in allowing the demurrer, I allow it in the usual form.

M. R.
1875
RUSSELL
*v.*
WAKEFIELD
WATERWORKS
COMPANY.

Solicitor for the Plaintiff: Mr. *Horace Philbrick*.
Solicitors for the Defendants: Messrs. *Singleton & Tattershall*; Messrs. *Torr & Co.*

---

## ATTORNEY-GENERAL *v.* WEBSTER.

[1871 A. 65.]

*Parish Property—Charitable Trust.*

M. R.
1875
*June* 4.

A trust of property in favour of a parish or the parishioners of a parish for ever can only be upheld on the ground of its being a charitable trust.

In 1585 property was conveyed to two persons upon a secret trust for a *London* parish. The income of the property was afterwards received by the churchwardens and applied to charitable purposes:—

*Held*, that the property was subject to a charitable trust.

THIS was an *ex officio* information by the Attorney-General for the purpose, 1, of having it declared that certain properties known as the *Parish Estates of St. Stephen's, Coleman Street*, in the city of *London*, were held upon charitable trusts, and not (according to a claim set up as to part thereof) simply the private property of the parishioners; 2, of having the specific trusts affecting the several properties distinguished; and, 3, of establishing a scheme for the regulation of the charities.

The Defendants were the churchwardens of *St. Stephen's, Coleman Street*, and the feoffees in trust of the said estates appointed by an indenture dated the 3rd of April, 1856.

The instruments by which the several properties were originally devoted to the purposes of the parish had all been lost; and in later times the practice had prevailed of conveying the whole of the estates from time to time from one set of feoffees or trustees

(1) 2 Hare, 461.