**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**The Hon Mr Justice Andrew J. Jones QC**
**In Chambers on 8th June and 7th July**
**And in open court on 22nd July 2011**

**Cause No. FSD 83 of 2011 (AJJ)**

**IN THE MATTER OF THE COMPANIES LAW (2010 REVISION) (AS AMENDED)**

**AND IN THE MATTER OF CHINA MILK PRODUCTS GROUP LIMITED**

**Appearances**:  Mrs Sandie Corbett and Mr Barnaby Gowrie of Walkers for the Company

Mr Ross McDonough and Ms Kirsten Haughton of Campbells for the Majority Bondholders (as defined)

Ms. Rachel Baxendale of Maples and Calder for Silkwood Enterprisers Ltd, (the Beneficial owner of shares registered in the name of a custodian)

**<u>RULING</u>**

INTRODUCTION AND FACUAL BACKGROUND

1.  China Milk Product Group Ltd is an investment holding company which was incorporated on 20th September 2005. Its shares were listed on the Singapore Stock Exchange. Its sole asset is its investment in a subsidiary called Daqing Yinlou Dairy Co Ltd ("Yinlou"), the shares of which are held through an intermediate holding company

EXHIBIT

27

incorporated in the British Virgin Islands. Yinlou  is incorporated in the Peoples' Republic of China and carries on a dairy business in Heilongjiang Province. It has a herd of some 22,000 cows with an annual production capacity of about 150,000  tons of milk products. It also produces pedigree bull semen and dairy cow embryos.

2.  On 5th January 2007 China Milk raised finance through the issue of  zero coupon convertible bonds in the aggregate principal amount of US$150 million (which was subsequently reduced to US$146.2 million as a result of a repurchase concluded in March 2009).  The Bonds are also listed on the Singapore Stock Exchange.  The Bonds are convertible at the option of the bondholders into fully paid ordinary shares at an initial conversion price of S$2.00 per share.  The terms of the bond issue also provide for the Bondholders to have an option, exercisable on or after 5th January 2010, whereby they can require China Milk to redeem some or all of their Bonds at 116.82% of their principal amount.  For reasons explained in the next paragraph, valid early redemption requests were received from all of the Bondholders on or about 5th January 2010, with the result that China Milk became indebted to them in the total amount of US$170.56 million.[1] China Milk was unable to pay although, initially, it only received formal demand for immediate payment in respect of about 64% of the outstanding debt.

3.  The evidence of  Mr Liu Hailong, China Milk's chief executive officer, is that a principal cause of the group's financial difficulties is what has been described as the "melamine contamination scandal". In September 2008 it was revealed that certain Chinese producers of raw cow milk and milk derivative products, such as milk powder formula for babies, had been found guilty of supplementing their products with melamine. This lead to a nation-wide recall of those products and a collapse in consumer confidence in the industry generally which, combined with the adverse effect of other macro-economic factors, led to a sharp decline in gross revenues and profit. A detailed analysis of China Milk's financial difficulties is contained in the notes to its unaudited financial statements for the half year ended 31st March 2010 and does not need to be repeated for the purposes of this Ruling.

4.  Following lengthy discussions with various Bondholders and their lawyers, China Milk's directors eventually decided in April of this year that they should present a winding up petition in the name of the company on grounds of insolvency and then apply for the appointment of provisional liquidators who would be charged with the duty of attempting to formulate a restructuring of the company's debt, thus enabling it to continue as a going

---

[1]  The Bonds are actually held by DB trustees (Hong Kong) Ltd in its capacity as trustee for the Bondholders. It follows that the creditor is the trustee, but it acts in the interests of the Bondholders in accordance with the terms of the Trust Deed executed on 5th January 2007. For present purposes it is convenient to refer to the Bondholders as if they were the actual creditors.

concern.  The winding up petition was presented on 6th May 2011. It is admitted that China Milk is insolvent. As at the date of the petition its liability to the Bondholders is about US$171 million. In addition, about $3.3 million is owed to ordinary trade creditors.

5.  China Milk's summons for the appointment of provisional  liquidators  came before the Court on 8th June 2011 when it was supported by counsel for the Majority Bondholders representing approximately 60% of the bonds by value. [2] It was adjourned for two reasons. First, I directed that the hearing of the petition and summons be advertised in an English language newspaper having a circulation in Singapore.[3] Second, I was not satisfied that the directors have power to present a winding up petition unless authorized to do so by an ordinary resolution of the shareholders passed in general meeting and I wanted to give counsel a further  opportunity to address me about the meaning and effect of section 94(2) of the Companies Law (2010 Revision).

6.  The matter came before the Court for a second time on 7th July 2011, having been duly advertised. However,  I adjourned that matter again in order to give counsel for China Milk more time in which to consider their argument about the proper interpretation of s.94(2) and possible alternative methods of achieving the result sought by the directors and supported by the Majority Bondholders.

DIRECTORS' STANDING TO PRESENT A WINDING UP PETITION PRIOR TO 1st MARCH 2009

7.  By section 94(1)(a) of the Companies Law (2010 Revision) a company is entitled to present a winding up petition in respect of itself on any of the grounds specified in section 92, including the ground of insolvency. This provision has existed in the law since it was originally enacted as Law 3 of 1961 which came into force almost 50 years ago. It is relevant to observe that the whole of Part V of the Companies Law, as originally

---

[2]  The expression "Majority Bondholders" is defined to mean the  BlackRock Global Allocation Team (in its capacity as manager of various accounts and Funds that hold bonds), Old Westbury Global Opportunities Fund, Deutsche Bank AG, Singapore Branch who together hold or manage an aggregate of 59.8% of outstanding bonds.  My understanding is that CQS Convertible Quantitative Strategies Master Fund (which owns an additional 4% of the outstanding bonds) has participated in discussions with China Milk's management but was not represented at the hearing.

[3]  Although the CWR O.4, r6(2) permits an application made by the company itself for the appointment of provisional liquidators to be made *ex parte* in an appropriate case, there was no evidence which would justify adopting such a course in this case.  In principle, all the creditors should have an opportunity to be heard on the questions (i) whether a provisional order should be made for the purpose of facilitating some form of compromise or restructuring of the company's debt, as opposed to an immediate winding up order and, in either event (ii) who should be appointed as liquidators. In fact, almost  a third of Bondholders and all of the ordinary trade creditors had been left out of the consultation process and apparently had no notice of the hearing. For these reasons, I directed that it be advertised.

enacted, was a direct reproduction of the corresponding part of the Jamaican Companies Law, Cap.69 which was itself a reproduction of the English Companies Act 1862. What is now s.94(1)(a) can be traced back to the 1862 Act. Whether or not this provision enabled the directors to present a petition in the name of the company without the authority of an express power in the articles and/or an ordinary resolution passed by its shareholders in general meeting has been the subject of some debate in several Commonwealth jurisdictions whose law is similarly derived from the English 1862 Act. In *Re Galway and Salthill Tramways Co* [1918] 1 I.R. 62 the Irish Court of Appeal held that the power to present a winding up petition in the name of the company cannot be delegated to its directors by the company's articles of association, with the result that it will always be essential for an ordinary resolution to be passed at a general meeting of the shareholders for the purpose of authorizing the directors to present the a petition in the name of the company. The argument is that the decision to terminate a company's business and put it into liquidation is reserved to its members and that a general power of management given to its directors does not include the power to terminate its affairs by presenting a winding up petition. This decision was the subject of adverse comment by the contemporary editors of *Palmer's Companies Law,* the 12th (1924) edition of which says that "there seems to be no justification for this ruling in the words of the Act and it has not been followed in the English cases".  A different approach has been adopted in Australia. In *Re Interchase Management Services Pty Ltd*  the presentation of a petition in the name of the company by its directors was upheld on the basis that they were empowered to do so by a provision in the articles that the directors "may exercise all such powers of the company as are not hereby or by statute required to be exercised by the company in general meeting".  In *Re Emmadart Ltd* [1979] 1 Ch. 540 Brightman J (as he then was) conducted an extensive review of the English and Commonwealth authorities on this subject.  He concluded (at page 547) that "The practice which seems to have grown up [in England], under which a board of directors of an insolvent company presents a petition in the name of the company where this seems to the board to be the sensible course, but without reference to the shareholders, is in my judgment wrong and ought no longer to be pursued, unless the articles confer the requisite authority, which article 80 of Table A does not." [4] The decision in *Re Emmadart Ltd* has been followed and applied in this jurisdiction.

8.  *Re Global Opportunity Fund Ltd* [1997] CILR Note-7 was a case in which the directors of a solvent company were authorized by an ordinary resolution of shareholders to present a winding up petition on the just and equitable ground. The case is not reported in

---

[4]  The model articles of association contained in Table A of the First Schedule to the Companies Law (2010 Revision) do not expressly confer any power upon the directors to present a winding up petition on behalf of and in the name of the company without shareholder approval. Article 66 of Table A in the Cayman Islands Law is exactly the same as Article 80 of Table A in the English 1948 Act to which Brightman J. was referring.

full but it appears that there must have been some issue about their power to do present this petition. In any event, the Note records that *In Re Emmadart Ltd* was applied. The following year the point was fully addressed by Smellie CJ in *Banco Economico SA –v- Allied Leasing and Finance Corporation* [1998] CILR 102. In this case the winding up petition was presented by a creditor, Banco Economico SA, on grounds of insolvency. The petitioner had secured the appointment of provisional liquidators and the company, acting by its (alleged) sole director, applied to set aside the *ex parte* order and discharge the provisional appointment. The petitioner challenged the authority of the director to act on behalf of the company. Firstly, it was said that he was not in fact the sole director and that he was not acting with the authority of the board as a whole. Secondly, even if he was the sole director, it was argued that he would have no *locus standi* to present a petition on the company's behalf without the authority of a shareholders' resolution and therefore had no power to apply for the appointment or discharge of provisional liquidators.[5] Smellie CJ reviewed the English authorities and held that the Cayman Islands law as it then existed was the same as the pre-1985 English law. He specifically held that the rule in *Re Emmadart Ltd* constituted good law in this jurisdiction, although it is clear from his comments at page 109 (lines 38-45) that he reached this conclusion somewhat reluctantly.

AMENDMENT OF PART V OF THE COMPANIES LAW

9.  Part V of the Companies Law has been the subject of a major policy review lasting over several years. It was reviewed by a private sector committee sponsored by the Law Society, whose report was, in large part, adopted by the newly created Law Reform Commission.[6] The ultimate result of this review was the enactment of the Companies (Amendment) Law 2007. The provision establishing the Insolvency Rules Committee came into force immediately and the remainder the Law was brought into force on 1st March 2009 together with the Companies Winding Up Rules and the Insolvency Practitioners' Regulations. The rule in *Re Emmadart Ltd* was one of many matters to which consideration was given as part of this policy review. It was generally agreed that, in principle, the directors of a solvent company should not have the power to present a winding up petition in the name of the company on the just and equitable ground unless authorized to do so either by an express provision in the articles of association or an ordinary resolution passed by the shareholders in general meeting. In other words, it was felt that the rule in *Re Emmadart Ltd* should be restricted to circumstances in which the directors of a solvent company seek to present a winding up petition on the just and equitable ground, as was the case in *Re Global Opportunity Fund Ltd*. However, it was

---

[5]  This surprising argument rested upon a highly artificial application of the English Insolvency Rules, rr.4.25(1) and 4.31(1) which have no application in this jurisdiction today.

[6]  The private sector committee's report was delivered to the Law Reform Commission in September 2005 and the Law Reform Commission's own report was delivered to the Attorney General in April 2006.

generally accepted that different considerations come into play if a company is insolvent or of doubtful solvency.

10. In my view, there are sound policy reasons why the board of directors of an insolvent company should be allowed to present a winding up petition (either on behalf of and in the name of the company or in their own right) whether or not they are empowered to do so by the articles of association or an ordinary resolution passed by the shareholders in general meeting. When a company becomes insolvent, its shareholders cease to have any economic interest and the directors must act in the interests of its creditors. In my view it is wrong in principle that the directors' ability to commence an insolvency proceeding and seek the protection of the automatic stay imposed by section 97 should be dependent upon the terms of the company's articles of association or the co-operation of shareholders who no longer have any economic interest. For these reasons, it was proposed by the review committee that the rule in *Re Emmadart Ltd* should be abolished, at least in so far as it capable of preventing the directors of an insolvent company from presenting a winding up petition in the name of the company. As Smellie CJ observed in *Banco Economic SA –v- Allied Leasing and Finance Corporation,* the position in England was subsequently changed by s.124(1) of the Insolvency Act 1986 which empowered the directors to present a petition on grounds of insolvency in their own right, which is another way of producing the same result.

11. The contrary argument was made by capital markets lawyers who pointed out that countless transactions have been conducted through Cayman Islands incorporated companies on the basis that their directors would have no power to present a petition on grounds of insolvency and that the law should not be changed in this regard with retrospective effect. It is relevant to understand that this argument was made in relation to companies incorporated for the sole purpose of entering into conventional off  balance sheet bond issue transactions. Invariably, such companies are owned by a charitable trust, the trustee of which is a licensed trust corporation which specializes in this type of work. In such cases the power to present a winding up petition is vested in (a) the bondholders as creditors (usually acting through a trustee) and (b) the trustee of the special purpose charitable trust as sole shareholder (which will be a licensed trust corporation). In these particular circumstances there may be sensible commercial reasons for restricting the directors' right to present a winding up petition (or some other form of insolvency proceeding in a foreign jurisdiction) on their own initiative and it was said that the rating agencies took this factor into account when rating Cayman Islands bond issues. However, it should be noted that China Milk is not a special purpose bond issuing vehicle of this type.

12. It was proposed by the review committee that these conflicting arguments should be resolved by amending the law in following way. First, it would be amended to empower the directors of all the companies then in existence to present a winding up petition on behalf of and in the name of the company on grounds of insolvency, whether or not authorized to do so by their articles of association. Second, new companies incorporated after the amendment Law came into force  would  have the ability to adopt articles of association which expressly reserve to the shareholders the right to present a winding up petition (or any other kind of insolvency proceeding in any other jurisdiction) on grounds of insolvency. Companies would have no power to amend their articles in this way. Only newly incorporated companies would be able to adopt articles in this form. A review of the Memorandum of Objects and Reasons contained in the Companies (Amendment) Bill suggests that this recommendation was accepted by Government, but the language of what became s.94(2) does not, by itself, come close to enacting the intention stated in the Bill.[7]  However, when read with sections 91-95, section 104 and Order 4, Part II of the Companies Winding Up Rules, I think that the overall intention of what was actually enacted by the Legislature becomes clear.

INTERPRETAION OF SECTIONS 94(1)(a) and 94(2)

13. Section 94(2) of the Companies Law (2010 Revision) states  :-

 "Where expressly provided for in the articles of association of a company, the directors of a company incorporated after the commencement of this Law have the authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting".

I was referred by counsel to various extracts from Francis Bennion's *Statutory Interpretation* (4th Edition). I remind myself  that the basic rule of statutory interpretation is that it is taken to be the Legislature's intention that a statute will be construed in accordance with the general guides to legislative intention laid down by law.

---

[7]  It states that "Subsection (2) provides that the directors of a company incorporated after the commencement of this Law have authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting, unless the company's articles of association expressly reserve this power to the company's shareholders. The rating agencies normally require that special purpose vehicles have at least one independent director. Historically, this re1quirement has not applied to Caymanian companies because their directors had no power to present a winding up petition. The ability to exclude this power in the articles will prevent Caymanian companies being put at a competitive disadvantage in the capital markets business. In order to avoid any adverse effect upon existing transactions, this amendment will only apply to companies incorporated after the commencement of the new law." Clause 94(2) of the Bill is inconsistent with this objective.

14. At the first hearing, counsel for China Milk submitted that the phrase "incorporated after the commencement of this Law" referred to the commencement of the principal Law on 1st December 1961, rather than the commencement of the amendment Law on 1st March 2009.   Some confusion may have arisen because of the way in which statutes are "revised". It is important to understand that "revision" is an administrative exercise conducted by the Law Revision Commissioner without reference to the Legislature. He has no power to make substantive amendments to statutes. He merely consolidates frequently amended laws and re-publishes them in what is intended to be a more user friendly format. The result of the 2009 revision is that the Companies (Amendment) Law 2007 (referred to as "the Law") was consolidated into the Companies Law (2007 Revision) (referred to as "the principal Law") and published as a single document referred to as the 2009 Revision. By this process section 94(2) of the Companies (Amendment) Law is transformed into section 94(2) of the Companies Law (2009 Revision) but its meaning and effect remains unchanged. Counsel originally submitted that I should interpret the words "after the commencement of this Law" to mean after 1st December 1961, being the date on which the Companies Law, Cap.22 originally came into force. In my judgment, this interpretation is not open to me for two obvious reasons. First, it would have the effect of treating an administrative revision done by a civil servant as if it was a substantive amendment passed by the Legislature. Second, this interpretation would make section 94(2) practically meaningless. It was not possible to incorporate a company under the law of the Cayman Islands prior to 1 December 1961. At that time, this country was a dependency of Jamaica. Anyone wishing to incorporate a company had to incorporate it pursuant to the Jamaican Companies Law, Cap.69. If such a company was to carry on business in the Cayman Islands, it had to be recorded with the Registrar General. There was of course no Register of Companies at that time. If there are any such companies still in existence, which I very much doubt, they are referred to in the legislation as "existing companies". It is perfectly clear that the Legislature was not attempting to distinguish between any remaining "existing companies" incorporated in or before 1961 and the hundreds of thousands of companies which have been incorporated in the past 50 years. At the second hearing, counsel for China Milk changed his mind and accepted, rightly in my view, that the words "after the commencement of this Law" mean after the commencement of the amendment Law on 1st March 2009.

15. I must consider section 94(2) in its proper context and seek to avoid an interpretation which produces an unworkable or impractical result, which is inherently unlikely to have been intended by the Legislature. As I have already explained, section 94(2) was enacted as part of a wide ranging review and amendment of this country's corporate insolvency law and practice. Indeed, it was the first and only such a review ever to have been conducted. For present purposes, it is relevant to note that the law was amended in the

following way as a result of this review. First, the Court's jurisdiction to make winding up orders is enlarged by s.91(d) to include foreign companies. Second, the provisions of Part V of the Companies Law and the Companies Winding Up Rules applies to exempted limited partnerships.[8]  It follows that the general partner can present a winding up petition on behalf of and in the name of an exempted limited partnership on grounds of insolvency pursuant to Part V of the Companies Law. Third, those having standing to present winding up petitions is enlarged by s.94(1)(b) and (d) to contingent or prospective creditors and the Monetary Authority. By s.94(3) the Monetary Authority may present a winding up petition against any company or exempted limited partnership which is licensed to carry on a regulated business or in fact carrying on such a business without a license. Fourth, the right of contributories to present a winding up petition on just and equitable grounds is restricted by s.94(3), the principal purpose of which is to curtail  the scope for the presentation of opportunistic petitions by "vulture funds". Fifth, the remedies available to the Court in connection with contributory's petitions are enlarged by s.95(3). Sixth, s.104 sets out two quite different regimes for the appointment of provisional liquidators, which is largely (but not entirely) intended to codify the Court's previous practice. This section has to be read with CWR Order 4. Finally, and perhaps most importantly, Part V has been amended so that the distinction between solvent and insolvent liquidations would be formally recognized in the legislation.

16. Having regard to this overall legislative objective, it is clear that the Legislature must have intended to abolish or circumscribe the rule in *Re Emmadart Ltd* because it does not distinguish appropriately between solvent and insolvent companies.  As I have already said in paragraph 9 above, it is wrong in principle that the ability of the directors of an insolvent company to present a winding up petition on grounds of insolvency should vary according to the language of its articles of association or be dependent upon the co-operation of shareholders whose economic interest has disappeared. I remind myself of the rule that the Court should seek to avoid a construction of statute that produces an unworkable or impracticable result, since this is unlikely to have been intended by the Legislature.[9] The difficulties which have arisen both in this case and in the recent case of *In Re Xinhua Sports & Entertainment Limited* (FSD #48 of 2011-AJJ) demonstrate only too clearly how such a result would be unworkable and impracticable. The Court should also seek to avoid a construction that causes unjustifiable inconvenience to persons who

---

[8]  See section 15(4) of the Exempted Limited Partnership Law (2010 Revision) which came into force shortly after the Companies (Amendment) Law 2007 and the Companies Winding Up Rules.  References in Part V to a "company" include references to a limited partnership. Limited partners are treated as if they were shareholders of a company and references in Part V to "contributories" in clues general partners and references to "directors" includes general partners.

[9]  See Francis Bennion's *Statutory Interpretation* (Fourth Edition), Section 313, pages 832-9.

are subject to the statute, since this is unlikely to have been intended by the Legislature.[10] Bearing in mind that the directors of an insolvent company and the general partner of an insolvent exempted limited partnership owe duties to safeguard the interests of creditors (whereas the shareholders and limited partners do not), the Legislature cannot have intended to inconvenience their ability to seek the protections which flow from the presentation of a winding up petition. In my judgment, upon the true interpretation of s.94(1)(a) the directors of an insolvent company and general partner of an insolvent exempted limited partnership are entitled to present a winding up petition on behalf and in the name of the company/partnership without reference to the shareholders/limited partners and irrespective of the terms of the articles of association/partnership deed.  The directors of China Milk were empowered to present this petition.

17. My interpretation of s.94(1) is entirely consistent with Part II of CWR Order 4 which deals with the power of a company to apply by summons for the appointment of provisional liquidators for the reasons of the kind relied upon by the directors of China Milk. If the Insolvency Rules Committee had thought that the rule in *Re Emmadart Ltd* had survived the amendment Law, CWR O.4, r.6(3) would have required the directors' supporting affidavit to contain the evidence necessary to prove that they were empowered to present the petition and summons by the company's articles and/or an ordinary resolution of its shareholders. No such provision is contained in Rule 6(3) because these matters are now irrelevant. Article 162(1) China Milk's articles of association does in fact empower its directors in the name of and on behalf of the company to present a winding up petition, but this power is unnecessary in the case of a petition on grounds of insolvency and I would have made the same order if no such power had been included in these articles.

---

[10]   See Francis Bennion's *Statutory Interpretation* (Forth Edition), Section 314, pages 839-45.

18. Finally, I turn back to the interpretation of s.94(2). In my judgment it is clear that the Legislature must have intended that this section apply only to solvent companies. It means that the directors of a solvent company which was incorporated before 1st March 2009 cannot present a winding up petition in the name of the company on the just and equitable ground without the approval of an ordinary resolution passed by the shareholders in general meeting. In the case of a company incorporated after 1st March 2009, such a petition can be presented by the directors without the authority of an ordinary resolution if they are expressly authorised to do so by its articles of association. It follows that s.94(2) has no relevance or application in this case.

## MERITS OF THE APPLICATION FOR APPOINTMENT OF PROVISIONAL LIQUIDATORS

19. By the directors' own admission, China Milk has been in default of its obligation to redeem the Bonds since 5th January 2010. It follows that it is unable to pay its debts and is insolvent. On the basis of the evidence contained in the first and second affirmations of its chief executive officer, I am satisfied that the criteria contain in section 104(3) are made out. It follows that I have a discretion to appoint provisional liquidators and adjourn the hearing of the petition for the purpose of investigating the financial affairs of the company and exploring the possibility of restructuring its debt so that it might continue as a going concern to the advantage of all its creditors.

20. The application for the appointment of provisional liquidators was originally made *ex parte.* Although the rules permit applications of this sort to be made *ex parte,* there was in fact no urgency or other good reason for making an order without giving all the creditors an opportunity to be heard. They are entitled to be heard on the principal issue whether (a) a stay should be imposed and official liquidators appointed with a view to promoting a scheme of arrangement or (b) an immediate winding up order should be made. They are also entitled to be heard on the secondary issue which arises in either event, namely who should be appointed as official liquidators. The Majority Bondholders have been represented at every stage of this proceeding and support the appointment of Messrs Krys, Borrelli and Kardachi as provisional liquidators. At least one other Bondholder has been consulted, but the evidence was that none of the ordinary trade creditors and about 35% of the Bondholders had not been consulted or at least had not participated in the discussions with the directors. I therefore gave a direction that the hearing of the summons be advertised in an English language newspaper having a circulation in Singapore. The advertisement was duly published in *The Straits Times* on 29th June. No Bondholder or trade creditor has come forward to contest the application. In these circumstances I am satisfied that I can properly appoint provisional liquidators and adjourn the further hearing of the winding up petition until 26th October 2011. The

precise terms of the Order and directions to be given to the provisional liquidators will be settled in Chambers.

21. Those nominated for appointment as official liquidators have both sworn affidavits complying with the requirements of CWR O.3, r.4. Mr. Kenneth Krys of Krys Global, Governors Square, Building 6, 2nd Floor, PO Box 31237, Grand Cayman KY1-1205 is a qualified insolvency practitioner resident in this jurisdiction. His affidavit states that he and his firm comply with the independence and insurance requirements of Regulations 6 and 7 of the Insolvency Practitioners' Regulations. It is proposed that he be appointed jointly with Mr. Cosimo Borrelli of Borrelli Walsh Limited, Level 17, Tower 1, Admiralty Centre, Harcourt Road, Hong and also jointly with Mr Jason Kardachi, of Borrelli Walsh Pte Limited, 1404 City House, Robinson Road, Singapore. Messrs Borrelli and Kardachi have sworn affidavits attesting to their professional qualifications and experience and I am satisfied that they are eligible to be appointed jointly with Mr. Kenneth Krys. Their appointment is supported by the Majority Bondholders. No other Bondholder or trade creditor has nominated any alternative insolvency practitioners for appointment. I am therefore satisfied that Messrs Krys, Borrelli and Kaqrdachi should be appointed.

22. Order accordingly.

DATED this 22nd day of July 2011

The Hon Mr Justice Andrew J. Jones QC