## Parsons McEntire McCleary PLLC

1700 Pacific Ave., Ste. 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

Sawnie A. McEntire                                                                       (214) 237-4303
Director and Shareholder                                    smcentire@pmmlaw.com

June 19, 2023

**VIA ECF**
Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

      Re:    *U.S. Bank National Association, et al. v. The Charitable Donor Advised Fund, L.P. and CLO HoldCo Ltd.,* Civil Action No: 1:21-cv-11059-GHW

Dear Judge Woods,

      Pursuant to the Court's recent Order on June 13, 2023, and Individual Rule 2(e), this letter is intended to serve as a pre-motion letter on behalf of defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF"), and CLO Holdco, Ltd. ("CLOH") (collectively, "DAF Counter-Plaintiffs"). By this letter, the DAF Counter-Plaintiffs seek permission to file their Motion for Leave to Amend Counterclaim to better conform CLOH's substantive rights under Guernsey law to the facts of this case, and to also provide additional factual averments. By doing so, the proposed amendment will respond to the pending Motion to Dismiss the DAF Counter-Plaintiffs' Counterclaims and for Judgment on the Pleadings on Plaintiffs' Claims. (Dkt. No. 106) ("Plaintiffs' Motion").[1]

      Based on further analysis of foreign law, as well as recent discovery, the DAF Counter-Plaintiffs have determined that their counterclaims should be amended. The proposed amendment will address issues related to derivative standing and also will set forth additional causes of action that do not require derivative standing under Guernsey law. The anticipated Motion for Leave will be supported by the sworn declaration of one or more foreign law experts confirming the legal viability of those claims subject to foreign law. The proposed amendment will not require significant modification of the Court's scheduling order because many of the underlying factual allegations arise out of the same nucleus of facts already at issue. Indeed, the declaratory relief in the current counterclaim will not change substantially to the extent a collusive settlement may be voided. *See In re SageCrest II LLC*, 765 F. App'x 473, 476 (2d Cir. 2019) (collusive settlement

---

[1] Plaintiffs' Motion argues, in part, they are entitled to judgment on the pleadings because the DAF Defendants' contentions in their answer are purportedly conclusory. Accordingly, the DAF Defendants also seek to amend their answer consistent with the averments in the proposed amended counterclaim.

agreement was void pursuant to *in pari delecto*); *Rosen v. Dick*, 1974 WL 443, at *1 (S.D.N.Y. Sept. 3, 1974) (collusive settlement agreement could be "set aside").

The law of Guernsey recognizes the existence of a duty of good faith in contracts. Here, there is an express duty of good faith in the Members Agreement (dated November 15, 2017) between Highland CLO Funding, Ltd. ("HCLOF") and other signatory parties, including CLOH. This duty is identified in Paragraph 20.5, stating: "*[E]ach party shall at all times act in good faith towards the other parties and shall use all reasonable endeavors to see that this Agreement is observed*" (emphasis added). William Scott, a Director of HCLOF, signed the Members Agreement on behalf of HCLOF. As a party, HCLOF is bound by this duty.

The duty of good faith under Guernsey Law is similar to a fiduciary duty in the United States in certain limited respects. However, under Guernsey Law, the duty of good faith is a stand-alone duty and, in this instance, flows directly from HCLOF to CLOH as parties to the Members Agreement. As such, derivative standing is not required. Applied here, the duty of good faith requires, among other things, that HCLOF act honestly towards CLOH and not in a manner that ordinary reasonable and honest people would consider commercially unreasonable. *See In the Matter of Compound Photonics Group, Ltd. and in the Matter of the Companies Act 2006*; Neutral Citation No.: [2022] EWCA Civ. 1371. Relevant considerations include, *inter alia*, whether HCLOF failed to deal fairly and openly with CLOH; failed to consider CLOH's interests; and, generally, treated CLOH differently than other shareholders. The DAF Counter-Plaintiffs also intend to plead, alternatively to the extent necessary, bad faith as a separate claim. See *International Healthcare Solutions Limited v. Utmost Worldwide Limited* [2022] GRC 094.

Here, CLOH has plausible – and CLOH believes compelling – claims that HCLOF breached its duty of good faith and acted in a commercially unreasonable manner. This includes: (i) HCLOF's failure to deal honestly, fairly and openly with CLOH when HCLOF covertly agreed to allow Counter-Defendants to withhold millions of dollars in reserves to fund litigation against CLOH when HCLOF otherwise represented to CLOH that this withholding was wrongful; (ii) depriving CLOH of millions of dollars by allowing Counter-Defendants to retain reserves for purposes not in CLOH's interests; (iii) secretly entering into the 2021 and 2023 Settlement Agreements which contain terms adverse to the DAF Counter-Plaintiffs' interests and treated CLOH differently in relation to other shareholders; (iv) entering the 2021 and 2023 Settlement Agreements agreeing to foreclose CLOH from obtaining asset assignments attributable to its interests in HCLOF that would imbue CLOH with standing to sue the Counter-Defendants and otherwise purportedly releasing HCLOF's claims before CLOH acquired derivative standing to sue Counter-Defendants; and (v) entering into both the 2021 and 2023 Settlement Agreements without a reasonable, justifiable, or commercial basis and in a manner that was commercially unacceptable to ordinary honest and reasonable people.

The proposed amendment also will include a claim for tortious interference with contract against certain Counter-Defendants. These claims, which will be governed by New York law, generally require: (i) the existence of a valid contract with a third party, (ii) defendant's knowledge of that contract, (iii) intentional and unjustified act causing a breach of that contract, and (iv)

damages caused by the breach. *Rose v. Different Twist Pretzel, Inc.*, 999 N.Y.S.2d 438, 440 (N.Y. App. Div. 2014). The third element is satisfied when a defendant employed "dishonest, unfair, or improper means." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

Here, the amended counterclaim will allege facts showing that the Counter-Defendants were aware of the existence of the Members Agreement. Without limiting the foregoing, this *awareness* is effectively admitted by Counter-Defendants because the Members Agreement is identified in exhibits attached to the Plaintiffs' Complaint in this case (Dkt. 1-2) and Amended Complaint (Dkt. 15-2). The amended counterclaim also will allege facts showing HCLOF secretly negotiated the terms of the 2023 Settlement Agreement in New York, and that the attorneys spearheading these negotiations were based in New York, including counsel for HCLOF, the newly joined party. Therefore, issues relating to personal jurisdiction over HCLOF are resolved readily.

The amended counterclaim also will plead facts showing that Counter-Defendants' interfered with HCLOF's duties to CLOH without colorable justification in an effort to impede, if not destroy, CLOH's substantive and procedural rights under Guernsey law. The amended counterclaim will allege facts showing these negotiations were conducted in secrecy. In the Guernsey proceedings, which are currently pending, CLOH seeks the right to receive assets in kind under a judicial partition so CLOH may proceed independently against Counter-Defendants. The amended counterclaim will allege facts showing Counter-Defendants and HCLOF sought to conceal these negotiations until it became apparent that CLOH would be allowed to proceed in Guernsey, at which time the Counter-Defendants and HCLOF closed their deal.

CLOH was and is severely damaged as a result of the conduct described in this letter. This includes, at a minimum, the wasting of millions of dollars in assets that otherwise would have been available for distribution to CLOH, delays in obtaining proper distributions, and significant attorneys' fees that were incurred due to the wrongful conduct of others. *See irth Sols., LLC v. Diversified Underground, Inc.*, 2019 WL 5690658, at *2 (W.D.N.Y. Nov. 4, 2019) (under New York law, legal fees incurred in a separate action are recoverable where caused by a defendant's wrongful conduct).

Counter-Defendants initiated this lawsuit – thus requiring the DAF Counter-Plaintiffs to negotiate a complicated factual history and complex issues of foreign law. Under the circumstances, the DAF Counter-Plaintiffs respectfully submit they should be allowed to file a Motion to Amend and have their day in court on claims warranted under the facts and law. Accordingly, DAF Counter-Plaintiffs respectfully request the right to proceed with a Motion to Amend and an appropriate briefing schedule. This request is opposed by all counsel for all adverse parties.

Respectfully submitted,

*Sawnie A. McEntire*
Sawnie A. McEntire