# EXHIBIT 1

# SNELL'S EQUITY

### THIRTY-FOURTH EDITION

### JOHN MCGHEE QC, MA (Oxon)
*of Lincoln's Inn, Barrister*

### STEVEN ELLIOTT QC, BA (Hons), JD (Hons), DPhil (Oxon)
*of Lincoln's Inn, Barrister*

## CONTRIBUTORS

### STUART BRIDGE MA (Cantab)
*One of Her Majesty's Circuit Judges; Bencher of the Middle Temple; Life Fellow of Queens' College, Cambridge; Law Commissioner for England and Wales 2001–2008*

### MATTHEW CONAGLEN LLB (Hons) (Auck), LLM (Mich), PhD (Cantab)
*Professor of Equity and Trusts, University of Sydney; Academic Barrister, New South Wales and Door Tenant at XXIV Old Buildings*

### PAUL S. DAVIES MA (Cantab), PhD
*Professor of Commercial Law, University College London; of Lincoln's Inn, Barrister*

### DAVID FOX PhD (Cantab)
*of Lincoln's Inn, Barrister; Professor of Common Law, University of Edinburgh*

### BEN MCFARLANE MA (Oxon), BCL
*Professor of English Law, Oxford*

### RICHARD NOLAN MA (Cantab);
*Professor of Law, University of York; Barrister of the Middle Temple and Door Tenant at Erskine Chambers*

### JANET O'SULLIVAN MA, PhD (Cantab);
*University Senior Lecturer, Faculty of Law, University of Cambridge; Fellow and Director of Studies in Law, Selwyn College, Cambridge*

SWEET & MAXWELL

 THOMSON REUTERS

faith with a view to avoiding serious damage to the relationship of confidence and trust between itself and the employees.[63]

For other purposes, some of the general rules of trust law apply to pension schemes without special modification. The trustees must exercise their discretions in good faith and for the proper purposes of the scheme as a whole.[64] They do not have a duty to treat the different classes of members equally. They may have regard to the employer's financial interests and its business reasons for setting up the pension scheme.[65] Under general trust law, pension trustees are under no greater duty to disclose their reasons for exercising their discretions than the trustees of donative trusts.[66]

The oversight of pension schemes by the Pensions Ombudsman sometimes has the consequence of modifying these general law standards. The Ombudsman is authorised to investigate complaints about "maladministration" in pension scheme.[67] The definition of "maladministration" is broader than the grounds of review that would be available to a member under the general law.[68] The Pensions Ombudsman may require trustees to disclose their reasons.[69]

### 2.— CERTAINTY IN DEFINING THE ESSENTIAL ELEMENTS OF THE TRUST

**22-012**    A private express trust arises through the settlor's declaration of an intention to enter into a transaction that would, by the standards of the general law, be recognised as creating a trust. If the trust is to operate, its essential elements must be defined clearly enough to enable the trustee, or the court in default, to execute the trustee's duties.[70]

There are therefore three main ways in which an express trust must be sufficiently certain[71]:

(i)     the settlor must intend to impose legally enforceable duties of trusteeship on the owner of the property;
(ii)    the subject-matter of the trust must be certain; and
(iii)   the objects or persons intended to have the benefit of the trust must be certain.

### 1.    Intention to Create Trust

**22-013**   **(a)    Construction of the settlor's intention.**    No particular form of expression is necessary for the creation of a trust if, on the whole, it can be gathered that a trust was intended.[72] It is unnecessary for the settlor to use the word "trust": the court construes the substance and effect of the words used, against the background of any

---

[63]   *Imperial Group Pension Trust v Imperial Tobacco Ltd* [1991] 1 W.L.R. 589 at 597.
[64]   *Edge v Pensions Ombudsman* [2000] Ch. 602
[65]   *Edge v Pensions Ombudsman* [2000] Ch. 602 at 627; upholding [1998] Ch. 512 at 537.
[66]   *Wilson v Law Debenture Trust Corp* [1995] 2 All E.R. 337.
[67]   Pension Schemes Act 1993 s.146(1)(a).
[68]   *Miller v Stapleton* [1996] 2 All E.R. 449 at 462.
[69]   *Allen (Determination of the Pensions Ombudsman)* [2002] P.L.R. 333.
[70]   *Re Gulbenkian* [1970] A.C. 508 at 524.
[71]   *Knight v Knight* (1840) 3 Beav. 148 at 173.
[72]   *Page v Cox* (1852) 10 Hare 163 at 169, per Turner VC; *Dipple v Corles* (1853) 11 Hare 183 at 184; *Re Kayford Ltd* [1975] 1 W.L.R. 279 at 282; *Re Multi Guarantee Co Ltd* [1987] B.C.L.C. 257; *Re Branston & Gothard Ltd* [1999] Lloyds Rep. Banking 251; *TXU Europe Group Plc (In Administration)* [2004] Pens. L.R. 175; *Re Farepak Food and Gifts Ltd (In Administration)* [2006] EWHC 3272

relevant surrounding circumstances.[73] Indeed, the settlor need not even understand that his words or conduct have created a trust if they have this effect on their proper legal construction.[74] Conversely, it is not enough that the settlor describes the transaction as a trust if on its proper construction the transaction was not intended to operate as a trust.[75]

The settlor's intention must be clear on two main questions: (1) that they intended the trustee to owe legally enforceable duties rather than duties of a merely social or moral nature; (2) that if they intended to create a legal relationship, it was to involve trust duties as distinct from some kind of legal relationship, such as a simple relationship of debtor and creditor.

**(b)   Trusts and duties arising from precatory words.**   A testator may give **22-014** property to another in his will using words of wish, hope, desire or confidence that the donee will dispose of the property in a particular way. The question is whether these "precatory words" only impose a social or moral obligation on the donee to comply with the testator's wishes, or whether they are intended to impose the legal duties of trusteeship.

In the past it was common for the court to construe precatory words in a testamentary bequest as imposing a legally enforceable trust.[76] This practice of construction arose from a feature of the old law of inheritance. Any personal estate that the testator did not expressly dispose of by will was treated as belonging beneficially to his executor. To avoid this result, the courts construed precatory words as imposing a trust on the donee. But by the time of *Lambe v Eames*[77] in 1871, after the reform of the inheritance laws,[78] this practice was generally reversed. It was recognised that the imposition of a trust on the residuary beneficiary of a will, where none was probably intended, often caused hardship.[79]

Since *Lamb v Eames* the strong tendency has been against construing precatory words as creating a trust.[80] The question now is whether the instrument as a whole indicates an intention to create a trust, unaided by any presumption from the preca-tory words.[81] It is difficult to reconcile this approach (which seems correct in principle) with the view expressed *Re Steele's Will Trusts*.[82] That case held that if there is a reported decision that a particular form of wording creates a trust,[83] then the use of identical expressions today will also create a trust. This would be so even

---

(Ch); [2008] B.C.C. 22.

[73]   For example *Bath and North East Somerset Council v HM Attorney General* [2002] EWCA 1623; [2002] W.T.L.R. 1257.
[74]   *Paul v Constance* [1977] 1 W.L.R. 527.
[75]   See para.22-069 below.
[76]   For example *Harding v Glyn* (1739) 1 Atk. 469; 5 Ves. 501; *Palmer v Simmonds* (1854) 2 Drew. 221.
[77]   *Lambe v Eames* (1871) 6 Ch. App. 597.
[78]   Executors Act 1830 (11 Geo 4 & 1 Will 4, cap 40).
[79]   *Lambe v Eames* (1871) 6 Ch.App. 597 at 599, per James LJ.
[80]   See *Re Adams and the Kensington Vestry* (1884) 27 Ch. D. 394; *Re Diggles* (1888) 39 Ch. D. 253; *Re Hamilton, Trench v Hamilton* [1895] 2 Ch. 370; *Re Williams, Williams v Williams* [1897] 2 Ch. 12; *Hill v Hill* [1897] 1 Q.B. 483; *Re Oldfield* [1904] 1 Ch. 549; *Re Conolly* [1910] 1 Ch. 219; *Re Hill, Public Trustee v O'Donnell* [1923] 2 Ch. 259; *Re Johnson, Public Trustee v Calvert* [1939] 2 All E.R. 458 ("request"); *Re Stirling* [1954] 1 W.L.R. 763. To the contrary: *Re Burley* [1910] 1 Ch. 215; *Re Jevons* (1911) 56 S.J. 72 (contrast *Re Green, Shears v Lloyds Bank Ltd* [1935] W.N. 151); *Re Blackwood* [1953] N.I. 32 ("in accordance with my wishes").
[81]   *Re Hamilton, Trench v Hamilton* [1895] 2 Ch. 370 at 373, per Lindley LJ.
[82]   *Re Steele's Will Trusts* [1948] Ch. 603.
[83]   The earlier decision in point was *Shelley v Shelley* (1868) L.R. 6 Eq. 540.

if the earlier case was decided before the modern view of precatory words developed. The solution is simple: the draftsman should state expressly in the will that the precatory words are not to create any trust or legally binding obligation.

**22-015**   **(c)   Trust behind a contract debt.**   If A pays money to B, B may become a debtor at law for the amount of money owed to A. It is a separate question whether B holds the legal title to a fund of money on trust for A. If so, then A may claim as the beneficiary of a trust to recover the money in specie if B becomes insolvent. The question is whether the court will construe the transaction as indicating that B intended to declare himself a trustee for A, or that A intended B to hold as a trustee upon receipt of the money.

It has been said that there is a "general disinclination of the courts to see the intricacies and doctrines connected with trusts introduced into everyday commercial transactions".[84] The imposition of a trust, without strong evidence of an intention to declare one, would upset the usual proportionate distribution of assets in insolvency. So a simple advance payment of money for a particular purpose is generally not enough to indicate that the recipient was intended to hold on trust for the payer. It has been held that the relationship between a wine merchant and a customer did not create a trust of the moneys that the customer provided for a wine purchase.[85] Nor were moneys paid to a bank in anticipation of a refinancing deal which did not materialise held on trust.[86] (The disappointed payer may have a personal claim for failure of consideration but that does not give rise to a constructive trust over the proceeds of his payment.)[87]

If it can be shown that either party intended that the recipient should not have the free disposal of the money and that it should be applied solely for a specified purpose, then it may be impressed with a trust.[88] An intention that the recipient was to hold the money unmixed as a separate fund is strong evidence to this effect.[89] This rule is the foundation of the so-called "*Quistclose* Trust" considered later.[90]

In insolvency, it may be important to know whether the payer or the recipient had the relevant intention to declare a trust of the funds that created the debt. A recipient's declaration of trust for the payer may amount to an unlawful preference in the payer's favour.[91] The trust would be voidable as against the person administering the recipient's insolvent estate.

## 2.   Definition of Subject-Matter of Trust

**22-016**   The trust instrument must define with sufficient certainty the assets which are to be held on trust and the kind of interest that the beneficiaries are to take in them. The definition will be sufficiently certain if it enables the trustee or court to execute the trust according to the settlor's intentions.

---

[84]   *Neste Oy v Lloyds Banks Plc* [1983] 2 Lloyds Rep. 658 at 665; and see *Westdeutsche Bank v Islington LBC* [1996] A.C. 669 at 704.
[85]   *Re Ellis, Son & Vidler* [1994] B.C.C. 532.
[86]   *Guardian Ocean v Banco do Brasil* [1994] 2 Lloyd's Rep. 152.
[87]   *Re Goldcorp Exchange Ltd* [1995] 1 A.C. 74.
[88]   *Twinsectra Ltd v Yardley* [2002] UKHL 12; [2002] A.C. 164 at [73]–[76].
[89]   *Henry v Hamilton* [1913] 2 K.B. 515; *Cohen v Cohen* (1929) C.L.R. 91; *Re English & American Insurance* [1994] 1 B.C.L.C. 649; *Re Fleet Disposal Services* [1995] 1 B.C.L.C. 345; *Re Farepak Food and Gifts Ltd (In Administration)* [2006] EWHC 3272 (Ch); [2008] B.C.C. 22.
[90]   See para.25-033.
[91]   *Re Farepak Food and Gifts Ltd (In Administration)* [2006] EWHC 3272 (Ch); [2008] B.C.C. 22; casting doubt *Re Kayford* [1975] 1 W.L.R. 279.