# EXHIBIT 2

*TRUSTS, WILLS AND PROBATE LIBRARY*

# LEWIN ON TRUSTS

*TWENTIETH EDITION*

*But they thinke it against al right and iustice, that men shuld be bound to those laws, which other be in numbre mo then be able to be readde, or els blinder and darker, then that any man can well understand them.*

Sir Thomas More
Bencher of Lincoln's Inn
*Utopia*, book II

BY

**LYNTON TUCKER, M.A., B.C.L.**
*Barrister of Lincoln's Inn*

**NICHOLAS LE POIDEVIN, Q.C., M.A., LL.B.**
*Bencher of Lincoln's Inn*

**JAMES BRIGHTWELL M.A., LL.M.**
*Barrister of Lincoln's Inn*

EDITOR

**THOMAS FLETCHER, M.A., LL.M.**
*Barrister of The Inner Temple*

ASSISTANT EDITOR

**AIDAN BRIGGS, B.A.**
*Barrister of The Inner Temple*

SPECIAL CONTRIBUTOR

**SIMON ADAMYK, M.A., LL.M.**
*Barrister of Lincoln's Inn*

SWEET & MAXWELL  THOMSON REUTERS

formal requirements[4] (such as that of writing) have been complied with, will execute that intention, however informal the language in which it happens to be expressed, so long as the three particulars mentioned in the next paragraph can be gathered from the language used.

**The "three certainties"**

**5-003** Lord Langdale M.R. declared[5] three essentials for the creation of a trust:

"As a general rule it has been laid down, that when property is given absolutely to any person, and the same person is by the giver who has power to command, recommended, or entreated or wished, to dispose of that property, in favour of another, the recommendation, entreaty or wish shall be held to create a trust:

*First*, if the words are so used, that upon the whole, they ought to be construed as imperative,

*Secondly*, if the subject of the recommendation or wish be certain; and,

*Thirdly*, if the object or persons intended to have the benefit of the recommendation or wish be also certain."

The "three certainties" which must be found in a declaration of trust are therefore certainty of *words*,[6] certainty of *subject-matter*[7] and certainty of *objects*.[8] Although they are conceptually distinct, it has been said that in practice they can seldom be separated.[9]

**Certainty of words**

**5-004** The words of a declaration of trust must show an intention on the part of the settlor that a trust should be created. In most cases, there is no difficulty in discovering such an intention because the settlor directs that the trust property is to be held "in trust" or "upon trust". In some cases, however, it is doubtful whether the words indicate the necessary intention and the doubtful cases are discussed in the next pages. But as they mostly arise on the construction of wills, the following discussion is brief, and references are given to the leading works on that subject.[10]

**Inferred or "precatory" trusts**

**5-005** Testators often and settlors *inter vivos* occasionally[11] use words precatory[12] or recommendatory or expressing a belief when they mean to declare a trust. In the

---

[4] See §§ 3-008 onwards.
[5] In *Knight v Knight* (1840) 3 Beav. 148 at 172.
[6] See §§ 5-004 to 5-019.
[7] See §§ 3-005, 3-006.
[8] See §§ 5-045 to 5-051.
[9] *High Commissioner for Pakistan in the United Kingdom v Prince Muffakham Jah* [2019] EWHC 2551 (Ch) at [245].
[10] See generally *Jarman on Wills* (8th edn), Vol.2, Chap.XXV; *Theobald on Wills* (18th edn), Chaps 13 and 26; *Williams on Wills* (10th edn), Vol.1, Chaps 50, 53 and 82.
[11] *Liddard v Liddard* (1860) 28 Beav. 266; *Hill v Hill* [1897] 1 Q.B. 483.
[12] The term, "precatory trust" has been described as a misleading nickname, for if precatory words are held to establish a trust, then there is an imperative trust: *Re Williams* [1897] 2 Ch. 12 at 27, CA.

**Successive legal interests in chattels personal**

If by will chattels personal are bequeathed to A, with remainder to B, a trust is implied, and, either as to the property or as to the possession of the property, A is during his life a trustee for B.[52] **5-012**

**Trusts of the benefit of contracts**

Even as regards contracts to which the Contracts (Rights of Third Parties) Act 1999 applies,[53] the mere fact that the performance of a contract would benefit a person not a party to it will not automatically entitle him to enforce it; and, whatever the statutory inroads upon the principle may be, it was formerly clearly established that only a person who is a party to a contract may sue on it, and that a right to enforce a contract cannot be conferred on a stranger.[54] Such a third party, however, even if not within one of the statutory exceptions to this rule,[55] might be able to establish that the promisee entered into the contract as trustee for him. If this can be established, the trustee can sue on the contract and will be able to recover damages in full, even though he personally has suffered no damage[56]; and the beneficiary can sometimes sue directly, for instance where the trustee refuses to sue for the benefit of the beneficiary.[57] It makes no difference that the contract is under seal.[58] Even the benefit of a contract which is personal in nature, and which is expressed to be non-assignable, can be held on trust, unless the contract specifically prohibits such a trust from arising in addition to prohibiting any assignment.[59] **5-013**

*Intention to contract as trustee*

The difficulty in such cases lies in deciding whether there is sufficient certainty of words—whether the words used, viewed in the light of the circumstances, reveal an intention to create a trust. The courts will not be astute to discover such an **5-014**

---

[52] *Re Swan* [1915] 1 Ch. 829.
[53] The 1999 Act applies to (a) a contract entered into on or after May 11, 2000 and (b) a contract entered into on or after November 11, 1999 in which the parties have expressly provided that the Act is to apply, see s.10(2) and (3).
[54] *Dunlop Pneumatic Tyre Co. Ltd v Selfridge & Co. Ltd* [1915] A.C. 847 at 853, HL, *per* Viscount Haldane L.C, who said that the law knew "nothing of a *jus quaesitum tertio* arising by way of contract"; *Scruttons Ltd v Midland Silicones Ltd* [1962] A.C. 446, HL. The position has been the subject of judicial and other doubt and criticism, lying beyond the scope of this work, but see generally Law Commission Consultation Paper No. 121, Privity of Contract: Contracts for the Benefit of Third Parties (1991) and Law Commission Report on Privity of Contract: Contracts for the Benefit of Third Parties, Law Com. No.242 (1996) leading to the Contracts (Rights of Third Parties) Act 1999.
[55] See Married Women's Property Act 1882, s.11 (as amended); Law of Property Act 1925, ss.56, 78; Third Parties (Rights Against Insurers) Act 1930, s.1; Road Traffic Act 1988, s.148(7); and see Contracts (Rights of Third Parties) Act 1999, s.1, which provides for the enforcement of particular contractual terms by specifically contemplated third parties in certain circumstances. S.7(1) provides that the Act "does not affect any right or remedy of a third party that exists or is available apart from this Act".
[56] *Gregory v Williams* (1817) 3 Mer. 582; *Lloyd's v Harper* (1880) 16 Ch.D. 290, CA; *Darlington Borough Council v Wiltshier Northern Ltd* [1995] 1 W.L.R. 68, CA.
[57] See §§ 47-003, 47-006 to 47-017.
[58] *Harmer v Armstrong* [1934] Ch. 65, CA.
[59] *Don King Productions Inc v Warren* [2000] Ch. 291 at 321 (affd [2000] Ch. 291 at 335–336, CA).

intention.[60] If the parties to the contract intend to keep alive their common-law right to vary its terms consensually there can be no trust, because that would render the terms unalterable.[61]

**5-015** An intention to create a trust has been found in several reported cases. Where a husband renewed in his own name an insurance policy which he had previously assigned to his wife, he was held to be a trustee of the renewed policy for her.[62] Where the father of a man becoming a member of Lloyd's agreed with Lloyd's to guarantee his son's undertakings, Lloyd's were held to be trustees of the guarantee for all those dealing with the son.[63] Where a clause in a charterparty provided that a commission was due to the charterers' brokers it was held that the charterers were trustees of the commission for the brokers.[64] In another case, a person was held to have entered into an agreement under seal for the purchase of a certain copyright as trustee for the claimants, who were granted specific performance of the agreement.[65] Where a partnership deed provided that on the death of a partner an annuity was to be paid to his widow, who was not a party to the deed, it was held that the annuity was held on trust for the widow.[66] Likewise the rules of a friendly society have been found to create a trust in favour of the widow of a deceased member.[67] And an intention to create a trust has been found in other reported decisions.[68]

*No intention to contract as trustee*

**5-016** There have been several cases were a third party has tried but failed to establish a trust in his favour. For instance, in another case of a partnership deed, it was held that no trust was created by the particular words used,[69] and a similar conclusion was reached on the true construction of a company's articles.[70] As a general rule, a mere contract between A and B that B shall pay a certain sum to C (who is not a party directly or indirectly) will not make C a beneficiary.[71] That remains the case even after the coming into force of the Contracts (Rights of Third Parties) Act 1999,

---

[60] *Re Stapleton-Bretherton* [1941] Ch. 482; *Re Schebsman* [1944] Ch. 83, CA; *Gorbunova v Estate of Berezovsky* [2016] EWHC 1829 (Ch); [2016] W.T.L.R. 1591 at [55], [60]–[61].

[61] *Re Empress Engineering Co.* (1880) 16 Ch.D. 125 at 129, *per* Jessel M.R.; *Re Schebsman*, above, *per* du Parcq L.J.at 104; and compare *Re Flavell* (1883) 25 Ch.D. 89; see Contracts (Rights of Third Parties) Act 1999, s.2 for restrictions on the power of parties to a contract which confers a benefit on a third party within the terms of s.1 of that Act from varying its effect without the third party's consent.

[62] *Royal Exchange Assurance v Hope* [1928] Ch. 179, CA. Other cases where a trust of an insurance policy was established: *Re Webb* [1941] Ch. 225; *Prudential Staff Union v Hall* [1947] K.B. 685; *Re Foster's Policy* [1966] 1 W.L.R. 222.

[63] *Lloyd's v Harper*, above.

[64] *Les Affréteurs Reunis Société Anonyme v Leopold Walford (London) Ltd* [1919] A.C. 801, HL.

[65] *Harmer v Armstrong* [1934] Ch. 65, CA.

[66] *Re Flavell* (1883) 25 Ch.D. 89; compare *Re Schebsman*, above.

[67] *Re Gordon* [1940] Ch. 851.

[68] *Tomlinson v Gill* (1756) Amb. 330; *Gregory v Williams* (1817) 3 Mer. 582; *Lamb v Vice* (1840) 6 M. & W. 467; *Fletcher v Fletcher* (1844) 4 Hare 67; *Page v Cox* (1852) 10 Hare 163; *Robertson v Wait* (1853) 8 Ex. 299; *Gandy v Gandy* (1885) 30 Ch.D. 57. *Quaere* whether it is possible to create a trust of an exemption clause in a contract: compare cl.2 of the bills of lading in *Salmond and Sprazzon (Australia) Pty Ltd v Port Jackson Stevedoring Pty Ltd* [1981] 1 W.L.R. 138; and see now the combined effect of the Contracts (Rights of Third Parties) Act 1999, ss.1(6), 3(6) and 6(5)-(8).

[69] *Re Schebsman*, above.

[70] *Re Greene* [1949] Ch. 333.

[71] *Re Empress Engineering Co.*, above, at 129, *per* Jessel M.R.

although the 1999 Act may, subject to its detailed provisions, enable him to enforce elements of the contract as if he were a party to it. Before the coming into force of the 1999 Act, it was held that, where a father covenanted with his son to transfer property to a trustee for his illegitimate daughters and the son in return covenanted to pay his father's debts, there was no trust for the daughters, who could not, therefore, sue on the agreement.[72] If similar facts were to arise in respect of a contract governed by the 1999 Act, the daughters would be able to rely on the right created by the 1999 Act, enabling a third party to enforce a contractual term, if they could show either (i) that the contract expressly provided that they should be able to enforce the term;[73] or (ii) that, subject to it being shown that the parties to the contract did not intend the term to be enforceable at the instance of the third party,[74] the term purported to confer a benefit upon them.[75] In the same way, in addition to specific statutory exceptions,[76] and in addition to the possibility of establishing that the person who took out an insurance policy contracted as trustee for a third party,[77] a third party will be able to enforce a clause in the policy, which is in his favour, if he can bring himself within the requirements of the 1999 Act.[78] Other cases where the third party failed to establish a trust are mentioned in the footnote.[79]

*Consideration where trust created*

**5-017** It might be thought that to allow a beneficiary of a contractual right who has given no consideration to enforce the right would be a breach of the rule that equity will not assist a volunteer.[80] That rule applies where there is only a contract to create a trust.[81] Thus if the person seeking to enforce such a contract has given no consideration he cannot enforce it,[82] even if he would be a beneficiary under the trust once the contract to create it had been performed. The rule does not, however, apply in

---

[72] *Colyear v Lady Musgrave* (1836) 2 Keen 81.
[73] Contracts (Rights of Third Parties) Act 1999, s.1(1)(a).
[74] Contracts (Rights of Third Parties) Act 1999, s.2.
[75] Contracts (Rights of Third Parties) Act 1999, s.1(1)(b).
[76] See Married Women's Property Act, 1882, s.11 (as amended) (on which see §§ 5-076 onwards); Third Parties (Rights against Insurers) Act 1930, s.1; Road Traffic Act, 1988 s.148(7).
[77] As in *Royal Exchange Assurance v Hope* [1928] Ch. 179; *Re Webb* [1941] Ch. 225; *Prudential Staff Union v Hall* [1947] K.B. 685; *Re Foster's Policy* [1966] 1 W.L.R. 222.
[78] Contracts (Rights of Third Parties) Act 1999. For cases establishing the position in cases unaffected by the 1999 Act (*i.e.* the position that, in the absence of a finding of trust, such a third party is unable to enforce merely because a clause of the policy is in his favour), see *Cleaver v Mutual Reserve Life Association* [1892] 1 Q.B. 147 at 151–152, CA, *per* Lord Esher M.R. and at 157, *per* Fry L.J.; *Re Burgess* (1915) 113 L.T. 443; *Re Engelbach's Estate* [1924] 2 Ch. 348; *Vandepitte v Preferred Accident Insurance Corporation of New York* [1933] A.C. 70, PC; *Re Sinclair's Life Policy* [1938] Ch. 99; *Re Foster (No.1)* [1938] 3 All E.R. 357; *Green v Russell* [1959] 2 Q.B. 226.
[79] *Re Empress Engineering Co.*, above, *Gandy v Gandy* (1885) 30 Ch.D. 57, CA; *Swain v Law Society* [1983] A.C. 598, HL; *Eslea Holdings Ltd v Butts* (1986) 6 N.S.W.L.R. 175, NSW CA accepting that account can be taken of commercial necessities at 189–190, *per* Samuels J.A.; *Fluor Australia Pty v Engineering Pty Ltd* [2007] VSC 262; 19 V.R. 458; compare *Re Cook's Settlement Trusts* [1965] Ch. 902. See too the approach of Hoffmann J. in *Law Debenture Trust Corporation v Ural Caspian Oil Corporation Ltd* [1993] 1 W.L.R. 138; [1995] Ch. 152, CA when determining that no equitable obligation existed obliging a person acquiring property to perform positive obligations of a predecessor in title.
[80] See *Milroy v Lord* (1862) 4 De G.F. & J. 264; *Richards v Delbridge* (1874) L.R. 18 Eq. 11 and §§ 3-035 onwards.
[81] As in the case of a covenant in a marriage settlement to settle after-acquired property.
[82] Unless able to enforce it by virtue of Contracts (Rights of Third Parties) Act 1999, s.1.