# EXHIBIT 6

**[2010 (1) CILR 541]**

## IN THE MATTER OF THE TA-MING WANG TRUST

### TA-MING WANG and KUO-YING SHANG

*v.*

## CIBC BANK AND TRUST COMPANY (CAYMAN) LIMITED and T.M. WANG LIMITED

*Grand Court, Financial Services Division*

(Smellie, C.J.)

**12 April 2010**

*Companies—directors—exercise of discretion—directors' decisions subject to Hastings-Bass principle since owe fiduciary duties to company—court may declare decision void if clearly had different effect than intended because of reliance on incorrect advice—no setting aside if no evidence as to factors taken into account by directors—Hastings-Bass principle requires decision to be attributable to fiduciary alone, e.g. not to include decisions of mere nominee directors*

The plaintiffs sought to set aside the declaration of a dividend and the receipt of the dividend into a trust.

The first plaintiff was a beneficiary under a trust set up to minimize his tax liability upon immigration to Canada by taking advantage of a five-year "tax holiday," whereby any dividend paid to the trust within that period would not attract Canadian tax. The trust was established between the second plaintiff (as settlor) and the first defendant, CIBC, who, as the original trustee, owned all the common shares in the second defendant company. CIBC erroneously believed that the tax holiday would end on May 6th, 2001—in fact, it had come to an end on March 15th, 2001. On April 25th, 2001, it procured the declaration of a dividend by the company, which it received into the assets of the trust. Since the tax holiday had ended by this time, the entirety of the dividend was subject to Canadian tax. Had CIBC realized that the tax holiday had ended, it would have procured a payment by way of a distribution in the company's winding up, with the result that a much smaller sum would have been subject to Canadian tax.

The plaintiff sought to set aside the company's declaration of the dividend and CIBC's decision to procure the dividend and receive it into the trust's assets. It submitted that (a) CIBC's decision should be set aside under the *Hastings-Bass* principle since it was based on an erroneous view of the fiscal consequences; (b) since the company's declaration of the dividend was procured by CIBC, and the directors of the company were

officers of CIBC's subsidiaries and effectively CIBC's nominees, the declaration should be viewed as part of the same transaction and thus also set aside; and (c) if the company's declaration were viewed as distinct from CIBC's actions, it should nonetheless be declared void for the same reasons.

The court considered whether the *Hastings-Bass* principle applied to the actions of the company's directors.

**Held,** giving judgment in part for the plaintiffs:

(1) CIBC's decision to procure the declaration of the dividend and to receive it into the assets of the trust of which it was trustee would be declared void *ab initio.* The *Hastings-Bass* principle, which guided the court's exercise of its statutory powers under the Trusts Law (2009 Revision), s.48, allowed the court to interfere with trustees' exercise of discretion if it were clear that the effect of the exercise was different from that intended because of a failure to take into account relevant considerations, or a taking into account of irrelevant ones. In making its decision, CIBC took into account incorrect advice as to the expiry date of the Canadian tax holiday, with the consequence that a considerably larger amount of money was assessed for Canadian tax than would otherwise have been. Since CIBC made an erroneous decision with detrimental consequences for its trust, that decision was liable to be set aside (paras. 15–17).

(2) However, the declaration and payment of the dividend by the second defendant company would not be viewed as part of the same transaction as CIBC's decision. Although the directors of the second defendant were effectively CIBC's nominees, there was a legal obligation on company directors to act independently on behalf of their company. Moreover, the decisions of directors who were mere nominees could not be set aside under the *Hastings-Bass* principle, which required that the decision in question be attributable to the fiduciary decision-maker and to no-one else (para. 23).

(3) Further, the declaration of the dividend by the company's directors would not be set aside. The *Hastings-Bass* principle could in theory apply to the decisions of company directors, on the basis that the fiduciary duties owed by directors were akin to those owed by trustees to their beneficiaries, and the principle could apply to any exercise of a fiduciary power by a person in a fiduciary position. However, there was no evidence of what factors the directors took into consideration, and no basis on which the court could assume that the directors had the interests of the trust or its beneficiaries in mind when making their decision. Rather, the only reasonable inference that could be drawn was that they were simply acting in the interest of the company itself, on the instructions of the first defendant, which owned all of the common shares. There was therefore no basis on which the court could apply the *Hastings-Bass* principle to the decision of the directors (paras. 19–24).

**Cases cited:**

(1) *A v. Rothschild Trust Cayman Ltd.*, 2004–05 CILR 485, applied.

(2) *Barclays Pte. Bank & Trust (Cayman) Ltd. v. Chamberlain*, Grand Ct., Cause No. 475 of 2004, unreported, referred to.

(3) *Hastings-Bass, In re, Hastings v. Inland Rev. Commrs.*, [1975] Ch. 25; [1974] 2 W.L.R. 904; [1974] 2 All E.R. 193, applied.

(4) *Hunter v. Senate Support Servs. Ltd.*, [2005] 1 BCLC 175; [2004] EWHC 1085 (Ch), applied.

(5) *Pitt v. Holt*, [2010] 1 W.L.R. 1199; [2010] 2 All E.R. 774; [2010] W.T.L.R. 269; (2010), 12 I.T.E.L.R. 807; [2010] EWHC 45 (Ch), applied.

(6) *Sieff v. Fox*, [2005] 1 W.L.R. 3811; [2005] 3 All E.R. 693; [2005] EWHC 1312 (Ch), *dicta* of Lloyd, L.J. applied.

**Legislation construed:**

Trusts Law (2009 Revision), s.48: The relevant terms of this section are set out at para. 15.

*C. Russell* and *Ms. R. Reynolds* for the plaintiffs;

*K.J. Farrow, Q.C.* for the defendants.

1. **SMELLIE, C.J.:** The first plaintiff, Ta-Ming Wang ("TMW"), and members of his family were the beneficiaries under a trust known as the Ta-Ming Wang Trust ("the trust"), which was established by a settlement dated May 2nd, 1996 made between his mother as settlor and the first defendant ("CIBC") as the original trustee. The second plaintiff is TMW's wife, Kuo-Ying Shiang ("KYS"), and is the present trustee of the trust. The second defendant ("the company") was struck off the Register of Companies as part of the trust migration process described below, but has now been restored to the register for the purposes of this application.

2. The plaintiffs are seeking to set aside the declaration of a dividend made by the company and procured by CIBC, which owned all the common shares in the company as trustee of the trust. The ground on which the plaintiffs seek this relief is that CIBC, in deciding to procure payment of the dividend and to accept payment of it, and/or the directors of the company at the instance of CIBC, in resolving to declare and pay it, failed to take into account the fiscal consequences of their decisions. The transaction should consequently be set aside as void under the principle of English law known as the *Hastings-Bass* principle. Following the decisions in *Barclays Pte. Bank & Trust (Cayman) Ltd.* v. *Chamberlain* (2) and in *A v. Rothschild Trust Cayman Ltd. (1)*, the principle is recognized in the courts of the Cayman Islands.

3. The plaintiffs' primary case is that the declaration of the dividend should be declared void based on the ill-advised actions of CIBC in procuring the payment of the dividend through the company of which it

holds all the common shares and whose subsidiary companies (by their officers) were the directors who declared and paid the dividend (so that the entire transaction is to be regarded as that of CIBC). Further, that the actions of the company through its directors in resolving to pay and actually paying the dividend, if regarded as the decision and action of the directors as distinct from that of CIBC, should be declared void for the same reasons and based on the same principles. The plaintiffs' secondary case is that it should at least be declared that the decision of CIBC as trustee to direct the company to declare the dividend and then to receive the dividend, is void.

4. The basic facts are described in the following chronology (as adapted from the written submissions of counsel):

March 15th, 1996  TMW arrived in Canada from Taiwan.

April 20th, 1996  The company was incorporated in the Cayman Islands.

May 1st, 1996  CIBC, as trustee of the intended trust, acquired all the common shares in the company. CIBC appointed two of its subsidiaries, Commerce Corporate Services Ltd. and Commerce Advisory Services Ltd., directors of the company.

May 2nd, 1996  The trust was established by TMW's mother. CIBC was the sole trustee. The relevant terms of the trust deed are as follows: (a) The distribution date was defined as the 150th anniversary of the trust, subject to a power in the trustees to declare an earlier date. (b) The proper law of the trust was the law of the Cayman Islands, subject to a power in the trustees to change it. (c) The trust fund was to be held on discretionary trusts of a familiar kind for the benefit of a class of beneficiaries, as defined, with wide powers of appointment among the beneficiaries, power to pay or apply income for the benefit of beneficiaries with a trust to accumulate any balance of such income, and power to pay or apply capital for the benefit of beneficiaries. There was an ultimate trust for the beneficiaries living on the distribution date and, in default of there being any, for the final repository, being a person appointed by the protector. (d) The beneficiaries were defined as TMW, his two children, and KYS. The trustees had power to exclude a person from being a beneficiary or to add a person as a beneficiary.

|  |  |
|---|---|
| | (e) The trustees had power to appoint new or additional trustees, provided that no beneficiary (among others) could be appointed. TMW subscribed for preference shares in the company. |
| May 7th, 1996 | Mr. Garson Lee, TMW's accountant, advised him that May 6th, 1996 was the date on which he would be treated as having become resident in Canada for tax purposes. This would be a significant date relative to a tax holiday, a five-year period, to be explained below. |
| April 20th, 2001 | Mr. Nowak, TMW's lawyer, initiated the process of migrating the trust to Canada on the basis that the five-year period would expire on May 6th, 2001. That process included the steps which follow. |
| April 25th, 2001 | Deed of declaration of excluded person excluding KYS as a beneficiary. Procurement by trustee of resolution of company directors to declare and pay a final dividend to CIBC as trustee of the trust equal to the retained earnings, contributed surplus and current income to date of the company. Promissory note by the company in favour of CIBC (as trustee of the trust) in the sum of US$854,050, representing final dividend of retained earnings. Redemption of TMW's preference shares. |
| May 4th, 2001 | Deed of retirement and appointment, under which CIBC appointed KYS and Mr. Nowak as trustees in its place. |
| May 5th, 2001 | Deed of change of proper law executed by the new trustees, changing the proper law of the trust from that of the Cayman Islands to that of British Columbia, Canada, thus completing the process of migration. |
| May 7th, 2001 | Deed of resignation of Mr. Nowak as trustee of the trust, leaving KYS as sole trustee. |
| May 14th, 2001 | Resolution by KYS as trustee to make a capital distribution from the trust to TMW of US$830,000. Acceptance by TMW of the distribution of US$830,000. |
| June 14th, 2001 | Deed of appointment by KYS appointing July 31st, 2001 as the distribution date as defined in the trust. |
| July 31st, 2001 | Notice by KYS of an intention to distribute the balance of the capital and income of the trust, being US$52,314.75 to TMW and TMW's acceptance of the distribution. Memorandum of decision by KYS to make the distribution of the balance of the trust fund to TMW. |

|  | Deed of termination by KYS declaring that, there being no further assets or liabilities, the trust was terminated on July 31st, 2001. |
| September 28th, 2001 | The company was struck off the register of companies. |
| March 19th, 2010 | The company was restored to the register. |

**The Canadian tax position**

5. The trust was created as part of a structure ("the structure") designed to minimize TMW's Canadian tax liability during the period of 60 months (or 5 years) following his immigration to Canada ("the tax holiday"). Such structures are widely recognized and used, and are fully compliant with Canadian tax laws. In summary, they effectively ensure that foreign-source (that is, non-Canadian) income earned by a non-resident company owned by a non-resident trust does not attract Canadian tax when it is paid to the trust by way of a dividend, provided that the payment is made within the tax holiday.

6. The basis on which the structure was set up in this case, the way in which it was intended to operate and the tax consequences were set out in a detailed letter from Mr. Nowak to TMW, dated May 24th, 1996. Throughout the letter it is assumed that the date on which TMW became resident in Canada ("the Canadian residence date") was May 6th, 1996. It was an essential feature of the structure that both the trust and the company, including the directors of the company, would be resident outside Canada, and that all business of the trust and the company would be conducted outside Canada. On the basis of the trust having been so established, it was, however, decided that CIBC would not make any income distributions from the trust before its termination but would accumulate and treat as capital any income received. The trust would migrate to Canada by appointment in place of CIBC of new trustees resident in Canada on or before March 1st, 2001 or, at the latest, two days before the fifth anniversary of the Canadian residence date, and would be terminated one month after migration. Each fiscal period, the company would pay a dividend equal to its profits for that period. It appears that this was not an essential feature of the structure, but designed to limit the potential tax liability if the tax authorities challenged the Canadian residence date. The trust would not be liable to Canadian tax on foreign-source income earned prior to December 31st, 2000, or during the period from January 31st, 2001 until the migration of the trust to Canada. After migration, the trust would be liable for tax on any income earned after its migration. The beneficiaries would not be liable for tax on any capital distributions (including distributions of foreign source accumulated

income). In the event of the trust not migrating before the fifth anniversary of the Canadian residence date, it would be deemed to have become resident in Canada after the year 2000 and be liable to tax on all income earned after December 31st, 2000. The company would not be subject to tax on its foreign-source income earned prior to its being wound up.

7. As events transpired, the Canadian Revenue Agency ("CRA") determined that TMW's Canadian residence date was March 15th, 1996, with the consequence that the fifth anniversary was on March 15th, 2001 and not May 6th, 2001, as had been believed. The trust was consequently assessed for tax on the dividend of US$854,050 paid on April 15th, 2001. If the company had paid the dividend during the tax holiday, the trust would not have been subject to Canadian tax. Once the tax holiday had expired, the company, instead of declaring a dividend, could have made the same payment to the trust of its retained earnings by way of a distribution upon its winding up. If it had done so, only an amount equal to the income of the company for the period commencing on January 1st, 2001 would have been subject to tax. This amount is only US$51,317. Payment of the prior years' earnings would have been treated as a return of capital and only taxed on any increase in the value of the shares in the company between December 31st, 2000 and the date of the distribution.

8. TMW has been advised by his Canadian counsel, Mr. Kenneth Affleck Q.C., that if the court were to declare that the payment of the dividend is void, the payment made by the company to the trust will be treated as a distribution made in the course of a winding up, with the consequence that only US$51,317 will be subject to income tax. This is also advised in Mr. Nowak's second affidavit. The CRA has notice of this application and does not oppose it.

**The trustee's decision**

9. In its administration of the structure, the intention of CIBC was to assist TMW in benefiting from the tax holiday in compliance with the relevant Canadian tax laws and in accordance with Canadian tax advice. CIBC's understanding was that TMW's Canadian residence date was May 6th, 1996, and that the trust would be migrated to Canada before May 6th, 2001.

10. Mr. Walton, the senior officer dealing with the trust on behalf of CIBC, was advised in a letter dated April 20th, 2001 from Karen Wong, an attorney associate of Mr. Nowak, that prior to the migration of the trust the company should declare a dividend in respect of the trust's common shares. CIBC had no reason to believe that TMW's Canadian residence date was other than May 6th, 1996, so it acted on the advice in the letter, believing that in doing so it would be carrying out the main object of the trust. CIBC consequently, on April 25th, 2001, procured through its nominee directors of the company the declaration of the

dividend and its payment by way of the promissory note, and CIBC accepted that payment.

11. If CIBC had known that TMW's Canadian residence date was March 15th, 1996, it would have realized that the advice to pay a dividend was incorrect, since such a payment would not achieve the fiscal purpose of the trust, and would not have acted on such advice. This too is plain from Mr. Walton's affidavit. The correct advice, had it been realized that TMW's Canadian residence date might be regarded as March 15th, 1996, would have been to pay the company's retained earnings to the trust by way of a distribution in its winding up. If CIBC had been given such advice, it would have followed it, and the bulk of the income tax liability would have been avoided. Again, this is confirmed by Mr. Walton.

### The *Hastings-Bass* principle

12. This principle of English law derives its name from the Court of Appeal decision in *In re Hastings-Bass* (3), which has been applied in a large number of cases decided at first instance in England. It has also been applied at first instance in the Cayman Islands in *Barclays Pte. Bank & Trust (Cayman) Ltd.* v. *Chamberlain* (2), and *A v. Rothschild Trust Cayman Ltd. (1)*.

13. The purpose of the trust, as an "immigration trust," was to assist Mr. Wang in benefiting from the tax holiday applicable to the period of five years immediately following upon his commencement of residence in Canada. That period is deemed incontrovertibly by the CRA to have expired on March 15th, 2001, whereas Mr. Wang's advisers had believed it was to expire on May 6th, 2001. It was that belief that informed the advice they gave for the establishment of the trust and for its subsequent migration to Canada. It was that advice which, in turn, informed the decision of CIBC as trustee, in the exercise of its fiduciary discretionary powers, to procure the declaration by the company (by its directors) of the dividend, and to receive the payment of that dividend as an asset of the trust, at the point in time when CIBC did those things. It is now common ground that that advice was wrong, given on the mistaken basis that the tax holiday was to have expired on May 6th, 2001 instead of when it actually expired, on March 15th, 2001.

14. It is clear that, had CIBC received the correct advice in light of the real significance of March 15th, 2001 as the expiry date—and it is so established in the evidence of Mr. Walton on behalf of CIBC—it would not have procured the declaration of the dividend, but would have ensured that the company paid the relevant sums as a winding-up distribution, which would have minimized the trust's tax liability as to income earned on or after January 1st, 2001.

15. That being so, I must now consider whether CIBC's decision falls

within the ambit of the *Hastings-Bass* principles and of the remedial powers vested by s.48 of the Trusts Law, the powers of which this court has described (in *A v. Rothschild*) as being convergent with the *Hastings-Bass* principles, insofar as s.48 provides that—

"any trustee . . . shall be at liberty, without the institution of suit, to apply to the Court for an opinion, advice or direction on any question respecting the management or administration of the trust . . . and the trustee . . . acting upon the opinion, advice or direction given by the Court shall be deemed, so far as regards his own responsibility, to have discharged his duty as such trustee . . . in the subject matter of the said application . . ."

Thus, the *Hastings-Bass* principles are to be regarded as guidance for the exercise of the statutory powers in circumstances such as those to which the principles may be applicable.

16. The recent formulation of the *Hastings-Bass* principles which has found favour with this court as being a clear exposition of them (see *A v. Rothschild* (1)) is that given by Lloyd, L.J. in *Sieff* v. *Fox* (6) as follows ([2005] 1 W.L.R. 3811, at para. 119):

"Where trustees act under a discretion given to them by the terms of the trust, in circumstances in which they are free to decide whether or not to exercise that discretion, but the effect of the exercise is different from that which they intended, the court will interfere with their action if it is clear that they would not have acted as they did had they not failed to take into account considerations which they ought to have taken into account, or taken into account considerations which they ought not to have taken into account."

17. I am satisfied that CIBC's decision as trustee to procure the declaration of the dividend and to receive it into the assets of the trust falls well within that formulation of the principles. In deciding to procure the payment of the dividend and to receive it based on the erroneous advice which had been received, CIBC took into account May 6th, 2001 as the expiry date of the relevant tax holiday and failed to take into account the correct date for those purposes, March 15th, 2001. That is a decision which I am satisfied CIBC would not have taken had it been aware of the true consequences. On the basis of CIBC's decision as trustee having been so erroneously taken with the detrimental consequences for its trust, its decision is liable to be set aside as being a decision which CIBC was not authorized to make because it was not a decision that could operate as intended for the benefit of its trust. As such, it was a decision which was void *ab initio* (see *A v. Rothschild* (1) (*2004–05 CILR 485, at para. 13*)) and I so declare.

18. There is the further question whether the decision of the directors of the company to declare and pay the dividend should also be declared to be

void. This would facilitate the retained earnings of the company being treated as a distribution on winding up, for which purpose the company has been restored to the register. Without this further declaration, that same objective could nonetheless be achieved. However, it must be noted that it is not for me to determine whether the receipt of the dividends by CIBC has been set aside as void, and so the dividends must be regarded by the company as undistributed.

19. It is now established in the case law, at least at first instance, that the *Hastings-Bass* principle may apply to decisions of directors. The rationale is that, when they act as such, directors are fiduciaries who owe fiduciary duties which are akin to those owed by trustees to their beneficiaries. In *Hunter* v. *Senate Support Servs. Ltd.* (4), a decision of the directors of a company was set aside because they failed to take into account considerations which they should have taken into account. The decision in question was the forfeiture of the claimant's shares for non-payment of a call for subscription dues, and the directors acted on the mistaken basis that forfeiture was the only course of action open to them. In reaching his conclusion, the judge (Mr. John Randall, Q.C.), while recognizing that the analogy between company directors and trustees was not exact, considered the position of trustees and the *Hastings-Bass* principle to be relevant. He concluded that the directors' decision was flawed for neglecting to take into account matters which ought to have been taken into account, was one which would or might have been different but for that flaw, and was therefore voidable and should be set aside.

20. In *Pitt* v. *Holt* (5), a settlement and associated assignment were set aside under the *Hastings-Bass* principle on the ground that they had adverse inheritance tax consequences which had not been considered by the parties to the transactions or their advisers. The new feature of this case was that the transaction was entered into not by trustees, but by a receiver acting on behalf and in the name of the settlor— that is, acting in a fiduciary capacity. The judge in *Pitt* accepted a submission that the *Hastings-Bass* principle is capable of applying not only to trustees but also to other fiduciaries ([2010] 1 W.L.R. 1199, at paras. 25 and 39). He noted that, while there is no decided case authority to this effect, *Lewin on Trusts*, 18th ed., paras. 29–111, 29–120, 29–124 and 29–165, at 1024–1046 (2008) supports that proposition. It was found in the case that Mrs. Pitt's power to deal with her husband's property as his receiver was a fiduciary power to be exercised in his interests, and the duty to take all relevant considerations into account should apply to a discretion being exercised for the benefit of another. The principle is capable of application to the exercise of a fiduciary power by any person in a fiduciary position, not only a trustee.

21. In the present case, it is submitted by Mr. Russell, with the support of Mr. Farrow, Q.C., that it is to be assumed that the directors of the company, which was established for the purposes of facilitating Mr.

Wang's immigration trust, understood that their company held its assets for the purpose of assisting in the fulfilment of that objective. As such, the fiduciary powers held by the directors were held to be exercised only for those purposes, and the erroneous exercise of their powers which brought about or facilitated the declaration of and payment out to CIBC of the dividend with its detrimental consequences was therefore unauthorized and liable to be set aside on the *Hastings-Bass* principles.

22. While as a matter of inference that proposition appears to be reasonable, there is no evidence to enlighten me as to what the directors actually had in mind when they took their decisions. Unlike the case of CIBC, which relies on the factual evidence of Mr. Walton, there is, simply and regrettably, no evidence of what advice, if any, the directors considered, and therefore no evidence to assure me that, when the directors resolved to declare the payment of the dividend out to the trust, they so acted on the erroneous advice or belief that their decision would have had the desired benefit of achieving the objectives of the trust. It is fundamental and trite law that directors, as fiduciaries, owe their duties to their companies. Thus, there is no basis in law that allows me to assume that the directors would have had directly in mind the interests of the trust or of its beneficiaries. The holder of the common shares in the company is CIBC as trustee. It seems from all the circumstances that, in all probability, the directors acted simply on the instructions of CIBC, inquiring into and having to be satisfied about nothing more than that it was in the interest of the company itself, in the guise of CIBC as the holder of the common shares, to resolve as they did. Certainly, from all the circumstances as described in the evidence and in the absence of further evidence as to the specific state of mind of the directors, that is the only reasonable inference to be drawn. Moreover, I should add, having regard to the further submissions here, that the directors deciding and acting in that way in no sense makes their decisions and actions attributable to CIBC as CIBC's decisions and actions, simply because CIBC procured them to act.

23. I am told that the records of the company relevant to this period of time are no longer available. All that was produced before me was the impugned resolution signed by the officers of the directors which, on its face, tells nothing about what they may or may not have had in mind in relation to the erroneous advice and misconceived assumptions arising from it leading to the present issue. Without evidence that positively establishes what their state of mind was, it follows that there can be no basis for concluding that the directors' belief was itself erroneous because it would have been informed (even if indirectly through CIBC having procured them to act) by the same mistaken advice that caused CIBC to take its decision, and that, had they had the correct advice, the directors would have decided and acted differently. The practical reality of the directors' status being no more than as nominees of CIBC does not permit

the court to overlook the legal obligation placed on directors to act independently on behalf of the company of which they are fiduciaries. Indeed, it would be a contradiction in terms to hold that the decisions of directors, who are mere "nominees" and acting merely on the directions of their principal, can be set aside on *Hastings-Bass* principles which require that the decision in question is that of the fiduciary decision-maker and of no one else.

24. It follows that there is insufficient basis for concluding that the *Hastings-Bass* principle may be applied so as to regard the directors' decision as amenable to being set aside. As this Court did in *A v. Rothschild* (1) (and as Lloyd, L.J. did in *Sieff* v. *Fox* (6)), I should add that I have also considered the fact that a number of years have passed since the impugned decision was taken in this case by CIBC as trustee on April 25th, 2001. I am, however, satisfied that there can be no prejudice arising to anyone from the retrospective effect of the declaration now granted and by which the trustees' decision falls to be regarded as void. Especially in this regard and as already noted, I have in mind that the CRA are aware of this application and do not object. Accordingly, the declaratory relief sought in para. 3 of the plaintiff's originating summons (as amended) is granted for the setting aside of CIBC's decisions taken as trustee, while no such relief can be granted on paras. 1 and 2 in respect of the directors' decisions.

*Orders accordingly.*

*Ogier* for the plaintiffs; *Mourants* for the defendants.