# EXHIBIT 8

Case 1:21-cv-11059-GHW   Document 150-8   Filed 06/28/23   Page 2 of 7

## *In re* EMPRESS ENGINEERING COMPANY.

*Agreement by Promoters—Ratification by Company—Contract to pay Money to Third Party.*

C. A.
1880
July 21.

> *A.* and *B.* agreed with *C.*, on behalf of a company intended to be formed, that *A.* and *B.* should sell and the company buy a certain business, and it was a term of the agreement that sixty guineas should be paid to *J. & P.*, solicitors, for their expenses and charges in registering the company. The memorandum of association adopted this agreement, and the directors subsequently ratified it. An order having been made for winding up the company, *J. & P.* claimed to prove for the sixty guineas:—
>
> *Held* (affirming the decision of *Little*, V.C.), that the claim must be disallowed, for that the contract between *A.* and *B.* and *C.* having been entered into before the company was in existence, could not by mere ratification be made binding on the company, and that a contract between *A.* and *B.* and the company, to which *J. & P.* were in no way parties, that the company should pay money to *J. & P.*, would not entitle *J. & P.* to proceed against the company.
>
> *Gregory* v. *Williams* (1) explained.

THIS was an appeal by *Jones & Pride* from a decision of the Vice-Chancellor of the Court of Chancery of the County Palatine of *Lancaster*.

By an agreement dated the 2nd of May, 1879, made between *Glasier* and *Archer* of the one part, and *J. H. T. Cottier*, for and on behalf of a company intended to be registered as a limited company and to be called "*The Empress Engineering Company*," of the other part, reciting that *Glasier* and *Archer* had acquired the right of manufacturing "the *Empress* water motor" and had for some time past carried on the manufacture thereof upon the premises therein mentioned, and that the memorandum of association of the company had been prepared and that the nominal capital was to be £10,000 in 2000 shares of £5 each, it was agreed that *Glasier* and *Archer* should sell and the company should purchase for £3000, to be discharged in 600 fully paid-up shares of £5 each in the company, all the right of the vendors to manufacture "the *Empress* water motor," and the assets of the business. By clause 8 it was stipulated that the costs of and incidental to the agreement,

(1) 3 Mer. 582.

C. A.
1880
*In re*
EMPRESS
ENGINEERING
COMPANY.

and all preliminary and other costs, charges, and outgoings, disbursements, and expenses, either before or after the company should have been registered, should be borne and paid by the company. Clause 9: "The sum of sixty guineas shall be paid to Messrs. *Jones & Pride*, solicitors, *Liverpool*, by the company for the incorporation thereof, such sum to include only the preparation of the necessary documents and printing thereof for registration and registration fees and *London* agents' charges." This agreement was duly registered.

The company was incorporated without articles under a memorandum of association dated the 9th of May, 1879, which stated its object to be, 1. to give effect to and carry into execution the above agreement of the 2nd of May, 1879; 2. to carry on the business mentioned in the agreement and generally to carry on the business of engineers and machine makers. Certain further purposes were mentioned to which it is not necessary to refer. The liability was limited, and the capital was fixed at £10,000, divided into 2000 shares of £5 each.

At a meeting of the directors held on the 23rd of June, 1879, at which the said agreement of the 2nd of May was produced and read, a resolution was carried "that the agreement of purchase be ratified."

Messrs. *Jones & Pride*, named in the agreement, acted as solicitors to the promoters in the formation of the company, and after its registration acted as solicitors to the company.

On the 10th of December, 1879, a compulsory order for winding up the company was made on the petition of *Jones* and *Pride* in the Court of the County Palatine.

Under the winding-up *Jones & Pride* carried in a claim for £92 5s. 6d., being the amount of the above-mentioned £63 and £29 5s. 6d. for business done by them as solicitors to the company after its registration. The latter amount was not disputed, but the £63 was objected to. The matter was adjourned to be heard before the Vice-Chancellor, who disallowed the £63 and admitted the claim for £29 5s. 6d. only. *Jones & Pride* appealed.

*Snow*, for the Appellants:—

I submit that *Jones & Pride* can claim the benefit of this con-

VOL. XVI.]  CHANCERY DIVISION.  127

tract on the ground that the promoters were trustees of it for them.

[JESSEL, M.R. :—*Jones & Pride* were not parties to the contract, and were not bound by it. How can they claim the benefit of it?]

C. A.
1880
*In re*
EMPRESS
ENGINEERING
COMPANY.

The circumstances in *Gregory* v. *Williams* (1) were almost identical with those of the present case.

[JESSEL, M.R. :—In that case Sir *W. Grant* appears to have considered that there was a declaration of trust. I know of no case where, when *A.* simply contracts with *B.* to pay money to *C.*, *C.* has been held entitled to sue *A.* in equity.]

In *Touche* v. *Metropolitan Railway Warehousing Company* (2) the person for whose benefit the agreement was entered into was held entitled to sue.

[JESSEL, M.R. :—In that case the Lord Chancellor finds, as a fact, that *Walker* was to receive the money as a trustee for the plaintiffs. If you can make out that *Jones & Pride* are *cestuis que trust* that alters the case. It appears to me that they are not. The promoters were liable to *Jones & Pride*, who are simply their creditors. *A.* being liable to *B.*, *C.* agrees with *A.* to pay *B.* That does not make *B.* a *cestui que trust*.]

The cases as to the third party suing are collected in *Pollock* on Contracts (3).

[BRETT, L.J. :—How do you make out any contract by the company?]

This agreement was adopted by the memorandum of association and ratified by the directors.

[BRETT, L.J. :—As to ratification of an agreement made before the company was in existence, you are met by *Melhado* v. *Porto Alegre, &c., Railway Company* (4).]

Vice-Chancellor *Malins*, in *Spiller* v. *Paris Skating Rink Company* (5), held that the doctrine of that case was not accepted in Courts of Equity.

(1) 3 Mer. 582.
(2) Law Rep. 6 Ch. 671.
(3) 1st Ed. pp. 191, 192.
(4) Law Rep. 9 C. P. 503.
(5) 7 Ch. D. 368.

C. A.
1880
*In re*
EMPRESS
ENGINEERING
COMPANY.

[JESSEL, M.R.:—In *Gregory* v. *Williams* (1) it appears that the agreement was that the defendant would, "out of the produce" of the property, pay what was due to *Gregory* on the promissory note, and apply the residue, so far as the same would extend, in satisfaction of the defendant's demand, and pay the surplus (if any) to *Parker*. It was a parol agreement part performed, and it created a trust of property.]

If the Court is against me on that ground, I submit that the claimants can make out their case on the principle of *In re Hereford and South Wales Waggon and Engineering Company* (2), where it was held that there was a good equitable claim for services rendered before the formation of the company, of which the company had the benefit.

[JAMES, L.J.:—The question has never been tried whether the company has had the benefit of the claimant's services.

JESSEL, M.R.:—That is a question of *quantum meruit*, and the subject for a distinct application.]

*Gazdar*, for the liquidator, was not called upon.

JESSEL, M.R.:—

I must say that I do not see how it was possible for the Vice-Chancellor to have decided otherwise than he did. The contract between the promoters and the so-called agent for the company of course was not a contract binding upon the company, for the company had then no existence, nor could it become binding on the company by ratification, because it has been decided, and, as it appears to me, well decided, that there cannot in law be an effectual ratification of a contract which could not have been made binding on the ratifier at the time it was made, because the ratifier was not then in existence. It does not follow from that that acts may not be done by the company after its formation which make a new contract to the same effect as the old one, but that stands on a different principle. I am of opinion, therefore, that there was no contract binding the company to pay this £63 to Messrs. *Jones & Pride*.

(1) 3 Mer. 582.                    (2) 2 Ch. D. 621.

Supposing, however, that there was, it is then contended that a mere contract between two parties that one of them shall pay a certain sum to a third person not a party to the contract, will make that third person a *cestui que trust*. As a general rule that will not be so. A mere agreement between *A.* and *B.* that *B.* shall pay *C.* (an agreement to which *C.* is not a party either directly or indirectly) will not prevent *A.* and *B.* from coming to a new agreement the next day releasing the old one. If *C.* were a *cestui que trust* it would have that effect. I am far from saying that there may not be agreements which may make *C.* a *cestui que trust*. There may be an agreement like that in *Gregory* v. *Williams* (1), where the agreement was to pay out of property, and one of the parties to the agreement may constitute himself a trustee of the property for the benefit of the third party. So, again, it is quite possible that one of the parties to the agreement may be the nominee or trustee of the third person. As Lord Justice *James* suggested to me in the course of the argument, a married woman may nominate somebody to contract on her behalf, but then the person makes the contract really as trustee for somebody else, and it is because he contracts in that character that the *cestui que trust* can take the benefit of the contract. It appears to me, therefore, that on both the grounds mentioned by the Vice-Chancellor this claim cannot be supported.

There is another ground suggested, namely, that as the company has had the benefit of the registration they ought to pay for it. But the answer to that is this—that was not the claim brought forward. The claim brought forward was for an agreed sum of £63, and any order we make (I do not know whether it is necessary to express it) will not prejudice that claim, which is merely for an amount due for services the benefit of which has been taken by the company.

JAMES, L.J.:—

I am entirely of the same opinion.

I think it is perhaps as well that we should say that *Gregory* v. *Williams* seems to be misunderstood. When that case is considered with the careful criticism with which the Master of the

C. A.
1880
*In re*
EMPRESS
ENGINEERING
COMPANY.

(1) 3 Mer. 582.

C. A.
1880
*In re*
EMPRESS
ENGINEERING
COMPANY.

Rolls has examined it, it appears quite clear that there was there a transfer of property with a declaration of trust in favour of a third person, which was a totally different thing from a mere covenant to pay money to that person. As regards the other point, notwithstanding what was said by Vice-Chancellor *Malins* in *Spiller* v. *Paris Skating Rink Company* (1), it appears to me that it is settled, both in the Courts of Law and by us in the Court of Appeal in that case to which we have been referred of *In re Hereford and South Wales Waggon and Engineering Company* (2), that a company cannot ratify a contract made on its behalf before it came into existence—cannot ratify a nullity. The only thing that results from what is called ratification or adoption of such a contract is not the ratification or adoption of a contract *quâ* contract, but the creation of an equitable liability depending upon equitable grounds. It is inequitable for a man not to pay for the services of which he has taken the benefit. That was the only ground upon which we held that, in that case, *Walter* and *Head* would have had a claim for services before the registration of the company, had not an equitable defence been effectually set up on the ground of a fraudulent concealment of the agreement.

BRETT, L.J.:—

I am of the same opinion.

JAMES, L.J.:—

The appeal will be dismissed with costs. It will be without prejudice to any equitable claim on a *quantum meruit*. I may add, as the Master of the Rolls pointed out to me in the course of the argument, that in *Gregory* v. *Williams* (3) the man with whom the contract was made was one of the plaintiffs, and the only defence there would have been misjoinder of plaintiffs, and that is a defence which the Court was not likely to view with much favour.

Solicitors: *A. S. Mather, Liverpool; Jones & Pride, Liverpool.*

(1) 7 Ch. D. 368.                    (2) 2 Ch. D. 621.
                    (3) 3 Mer. 582.