June 29, 2023

<u>VIA ECF</u>
Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

      Re:    <u>*U.S. Bank National Association, et al. v. The Charitable Donor Advised Fund, L.P. and CLO HoldCo Ltd.,* Civil Action No: 1:21-cv-11059-GHW</u>

Dear Judge Woods,

      Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF") and CLO Holdco, Ltd. ("CLOH") (collectively, the "DAF Parties" or "Counter-Plaintiffs"), and Plaintiffs U.S. Bank National Association, in its capacity as trustee ("US Bank"), Acis Capital Management, L.P. ("ACM"), and Joshua N. Terry (collectively "Plaintiffs" or "Counter-Defendants") jointly submit this letter pursuant to the Court's Order, dated June 28, 2023, concerning further briefing on Counter-Plaintiffs' application to amend their counterclaim.

<b><u>The Counter-Plaintiffs' Statement</u></b>

### A. Current Procedural Status

      Counter-Plaintiffs believe that their pre-motion letter [Dkt. 142] provides ample support for the right to file a motion seeking leave to amend. Effectively, what the amended counterclaims would do is replace the current fiduciary duty claims with tortious interference and breach of contract claims that are based, in significant part, on newly discovered evidence. Guernsey law is not simple and involves complex nuances, and Counter-Defendants' arguments amount to little more than a complaint that the Counter-Plaintiffs should have discovered sooner that their misconduct was more properly characterized by those claims under foreign law. That does not provide a basis for opposing a party's leave to amend, particularly where, as here, the amendment is in direct response to a motion to dismiss and discovery has not even gotten off the ground.[1] Although Counter-Plaintiffs are prepared to more fully brief the issue of leave to amend and respond to certain arguments and erroneous statements raised in Plaintiffs' Reply Letter dated June 26, 2023 ([Dkt. 146]; "Plaintiffs' Pre-Motion Letter"), they respectfully submit that Counter-Defendants' substantive arguments are more properly raised on a motion for summary judgment.

      The Plaintiffs' Pre-Motion Letter also does an injustice to the record of these proceedings, and it misapplies the Court's decision in *Morelli v. Alters.*, 2020 WL 6508858, at *1-2 (S.D.N.Y

---

[1] *See, e.g.*, *I.C. v. Delta Galil USA*, 2016 WL 6208561, at *1 (S.D.N.Y. Oct. 24, 2016) (Woods, J.) (granting leave to amend where party failed to timely identify a legal issue); *CAC Atl., LLC v. Hartford Fire Ins. Co.*, 2017 WL 3149340 (S.D.N.Y. July 25, 2017) (Woods, J.) (granting leave to amend third-party complaint after close of discovery despite "lack of diligence").

Nov. 5, 2020) (Woods, J). There are multiple factors which make *Morelli* inapplicable to the current procedural status of our case. Unlike *Morelli*, (1) the Counter-Plaintiffs are seeking leave to amend to bring counterclaims based on new evidence, (2) the leave to amend involves complex issues of foreign law, (3) the case management order has not been amended twice, and (4) leave to amend is being sought in in response to a motion to dismiss. To put it another way, Counter-Plaintiffs should get, at least, one bite at the apple to address the legal issues raised by the motion to dismiss and to incorporate the newly produced evidence.[2]

Further, the Plaintiffs' Pre-Motion Letter's claim that "DAF Parties cannot show diligence because they 'could . . . have . . . reasonably met' the Case Management Order" flies in the face of the fact that critical information was not known at that time – most specifically, the terms of the 2023 "settlement" agreement ("2023 Agreement"). Although Counter-Plaintiffs became aware of the existence of this agreement on or shortly after February 28, 2023, they were never provided a copy until Counter-Plaintiffs filed their motion to dismiss [Dkt. 107-3] on May 15, 2023. Since then, emails have been produced in discovery which evidence the motive behind the 2023 Agreement. These emails were exchanged during the pendency **of this case** between the Plaintiffs' lawyers **in this case** and Highland CLO Funding, Ltd.'s ("HCLOF") lawyers. It is now clear that there was an effort singularly calculated to undermine Counter-Plaintiffs' proceedings in Guernsey which was not initiated until March 6, 2023. Indeed, execution pages were held in escrow until it became apparent that CLOH was filing the Guernsey proceedings. As such, this is not your ordinary, garden variety "settlement." Rather, the 2023 Agreement was weaponized to sabotage the Unfair Prejudices Application in Guernsey by meddling in the internal affairs of HCLOF. It seeks to prevent HCLOF from ever assigning interests in-kind to CLOH to undermine the remedies CLOH is currently seeking in Guernsey. It also provides that the Counter-Defendants may wrongfully withhold substantial reserves.

Furthermore, Counter-Defendants' assertions of prejudice are not a basis for denying leave to amend. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2020 WL 7629876, at *5 (S.D.N.Y. Dec. 22, 2020) (Woods, J.) (granting leave to amend where the amendment would not substantially alter the scope of discovery). Counter-Plaintiffs have been the ones pressing for discovery, while Counter-Defendants have delayed discovery and adopted a baseless and self-serving position that "complaints about discovery delays are a transparent attempt to . . . delay dismissal of [the counterclaims]." [Dkt. #122, at 3.] No depositions have been taken to date. There are approximately 10 depositions (only 3 of which were noticed by Counter-Plaintiffs) that remain to be scheduled, and a conference call is currently scheduled for Friday, June 30, 2023, to discuss scheduling. Indeed, Plaintiffs recently provided deposition dates for their corporate representatives that created scheduling issues for one or more of the parties. But the underlying deposition notices included deposition topics related to the proposed amended counterclaims. As such, Plaintiffs cannot credibly claim prejudice or that the case is at the "eleventh hour." Moreover, HCLOF,

---

[2] Not only is leave to amend freely given, that is true even after a party's claims have been dismissed. *See, e.g.*, *In re Amazon.com, Inc. Ebook Antitrust Litig.*, 2022 WL 4586209, at *2 (S.D.N.Y. Sept. 29, 2022) (Woods, J.) (granting leave to amend where "Plaintiffs have not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court.*")*; *GeBBS Healthcare Sols., Inc. v. Orion Healthcorp, Inc.*, 2017 WL 1251143, at *6 (S.D.N.Y. Apr. 4, 2017) (Woods, J.) (same); *Zevon v. American Express Co.*, 2021 WL 4330578 (S.D.N.Y. Sept. 22, 2021) (Woods, J.) (granting leave to amend where litigation had been ongoing for approximately 15 months and both parties had provided supplemental briefing on motion to dismiss).

recently joined as a party, has not responded to the current counterclaims. Furthermore, although Counter-Plaintiffs have been requesting these depositions for weeks, potential dates were only provided recently, after the deadline for responding to the Motion to Dismiss.

### B. The Tortious Interference and Breach of Contract Claims are not Futile.

If leave to amend is granted, Counter-Plaintiffs intend to replace the current aiding and abetting fiduciary duty breach claims with tortious interference and breach of contract claims.[3] The duty of good faith under Guernsey law is similar to a fiduciary duty in the United States. However, expert opinion is clear that a breach of contract claim based on the duty of good faith is legally viable and not futile in Guernsey. No derivative standing is required. Although the Counter-Defendants raise the economic interest defense, this defense is inapposite and, in any event, involves fact issues. With that said, specific acts of malice and specific independent wrongdoings will be alleged. The independent wrongdoings include the wrongful retention of monies.

The counterclaims the Counter-Plaintiffs seek to bring are as follows: (1) a breach of contract claim against HCLOF for breaching the contractual duty of good faith set forth in the Members Agreement (dated November 15, 2017) between HCLOF and other signatory parties, including CLOH (the "Members Agreement"); (2) a tortious interference with contract claim against the Counter-Defendants for causing a breach of the Members Agreement; and (3) a declaration the 2021 and 2023 Settlement Agreements are void as the product of collusion. Only the third claim was raised in the original counterclaims.

The Plaintiffs' Pre-Motion Letter repeats the legal argument that the 2021 and 2023 agreements comply with the Investment Advisor Act. However, that issue is ultimately immaterial. For the sake of argument only, even if the argument had merit, the agreements would still be unenforceable if the Counter-Plaintiffs' allegations of collusion are proven at trial.[4] As for the tortious interference claim, Counter-Defendants raise three arguments, none of which provide a colorable basis for futility.

---

[3] Additionally, Counter-Defendants' reliance on *Wilson v. Dantas,* 746 F.3d 530 (2d Cir. 2014), which relates to aiding and abetting breach of fiduciary claims, is misplaced. In *Wilson,* the Court held the plaintiff could not establish a claim for aiding and abetting a breach of fiduciary duty based upon "*a confidential settlement agreement in the normal course of litigation.*" *Id*. at 536 (emphasis added). Thus, *Wilson* involved different facts and a different procedural posture. Here, it defies credibility to suggest that the agreements at issue were the product of "the normal course of litigation." Indeed, the terms of these two agreements expressly target non-signatories, the Counter-Plaintiffs. The disparate targeting of the Counter-Plaintiffs in the 2021 Agreement was unrelated to the underlying issues in any litigation in which HCLOF was involved at the time. Further, the 2023 Agreement does not recite any pending litigation between Counter-Defendants and HCLOF when the 2023 Agreement was negotiated and executed, so it can hardly be described as the product of 'the normal course of litigation." Indeed, common sense strongly suggests that it is abnormal to exchange signature pages to a "*routine*" settlement agreement only after it became clear that CLOH would be entitled to pursue the Guernsey proceedings.

[4] *See, e.g.*, *In re SageCrest II LLC*, 765 F. App'x 473, 476 (2d Cir. 2019) (collusive settlement agreement was void as an illegal contract); *Rosen v. Dick*, 1974 WL 443, at *1 (S.D.N.Y. Sept. 3, 1974) (collusive settlement agreement could be "set aside").

*First*, Counter-Defendants argue that the Counter-Plaintiffs "fail to plausibly allege" in their pre-motion letter how HCLOF breached the Members' Agreement's good faith requirement. That is flatly incorrect. The letter explains that HCLOF and the Counter-Defendants secretly negotiated the 2021 and 2023 agreements; those agreements were neither supported by valid consideration nor a legitimate business purpose; they were specifically designed to selectively disadvantage CLOH as shareholder in HCLOF by, among other things, cutting it off from obtaining derivative standing; and they deprived CLOH of millions of dollars in distributions. HCLOF also dealt with CLOH in a dishonest manner – on the one hand, HCLOF was telling CLOH that the Plaintiffs were wrongfully withholding reserves; on the other hand, HCLOF was secretly negotiating with Plaintiffs to allow them to keep reserves. The so-called 2023 settlement purports to allow Plaintiffs to continue withholding millions of dollars in distributions. There should be no doubt that Counter-Plaintiffs' expert on Guernsey law will opine that these allegations—which will be detailed in an amended pleading—support a claim for breach of the contractual duty of good faith.[5]

In short, the issue of whether the 2021 and 2023 settlement agreements were negotiated in good faith, "involves issues of fact and the [Counter-Plaintiffs] should have an opportunity to conduct discovery and present evidence in support of their challenge." *Kennedy v. Basil*, 2019 WL 2348123, at *4 (S.D.N.Y. June 3, 2019) (addressing issue of whether settlement was made in good faith). Again, discovery since the filing of Plaintiffs' Motion has revealed that lawyers for the Counter-Defendants ***in this case*** negotiated the 2023 Agreement in secrecy and that the signed execution pages which were held in escrow pending a decision of the United States Bankruptcy Court for the Northern District of Texas allowing the filing of CLOH's Unfair Prejudices action in Guernsey. This "prearrangement" between parties, who are ostensibly adverse, is indicative of a lack of good faith. *Rotter v. Leahy*, 93 F. Supp. 2d 487, 496 (S.D.N.Y. 2000) (finding disputed issue of fact as to whether a settlement agreement was made in good faith).

*Second*, Counter-Defendants state that the allegations that they caused the breach are "conclusory." But public filings demonstrate that the Counter-Defendants were aware of the terms of the Members' Agreement. US Bank, Acis and Josh Terry were all parties to legal proceedings where the Members Agreement was marked as an exhibit.[6] And the only way HCLOF could have

---

[5] The Plaintiffs' Pre-Motion Letter also misstates the holdings in *Compound Photonics Group Ltd., Re*, [2022] EWCA Civ 1371 and *Int'l Healthcare Sols. Ltd. v. Utmost Worldwide Ltd.*, [2022] GRC 094 (Guernsey Royal Ct.). Their Letter cites the *Compound Photonics* court's summary of the lower court decision, which was rejected on appeal. The appellate court specifically held that breach of the duty of good faith is broad and does not require dishonesty. Rather, it encompasses conduct that would be regarded as "commercially unacceptable" by reasonable and honest people. *Compound Photonics Group,* [2022] EWCA Civ 1371 at paras. 241, 243. *Int'l Healthcare Sols.* uses the same language for the applicable standard and has the same holding. *Int'l Healthcare Sols. Ltd. v. Utmost Worldwide Ltd.*, [2022] GRC 094 at p. 10, para. 61 (quoting *Essex County Council v. UBB Waste (Essex) Limited* [2020] EWHC 2387 (TCC)).

[6] *See In re ACIS Capital Management, L.P. and ACIS Capital Management GP, LLC,* Case No. 18-30264-SGJ-11, in the United States Bankruptcy Court for the Northern District of Texas ("ACIS Bankruptcy Proceedings"). Terry and US Bank were both interested parties and represented by counsel to multiple hearings where the HCLOF Members Agreement was marked as an exhibit, and Terry was even a testifying witness at one of these hearings. *See* ACIS Bankruptcy Proceedings: Dkt. 374 (Witness and Exhibit List, Ex. 131), Dkt. 396 (July 6, 2018 Hearing Transcript, p.

entered into the 2021 and 2023 Settlement Agreements, and thereby breached the Members' Agreement, was with the assistance of the Counter-Defendants. Irrespective of who hatched the scheme first, those facts state a claim for tortious interference because a breach could not have occurred without the Counter-Defendants' misconduct. *See, e.g.*, *EVEMeta, LLC v. Siemens Convergence Creators Holding GmbH*, 2017 WL 4351748, at *2 (C.D. Cal. Sept. 28, 2017) (applying New York law and finding that causation was adequately pled "where the breaching party could not have violated the contract without the involvement of the defendant"); *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (holding that "the allegation of collusion coupled with the allegation of wrongful interference or inducement to breach, leads to the conclusion of tortious interference by the third-party.").

*Third*, although Counter-Defendants raise an economic interest defense, "the defense is inapplicable because it only applies when the alleged interfering parties have acted to protect their interest in the breaching party's business—here, [HCLOF's]—not their own." *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 484 (E.D.N.Y. 2012); *see also Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.*, 2016 WL 2622013, at *12 (W.D.N.Y. May 5, 2016) (denying motion to dismiss where defendant not alleged to have acted to protect its interest in the breaching party). Additionally, Counter-Defendants are alleged to have entered collusive settlements for the express purpose of disadvantaging the Counter-Plaintiffs and preventing them from obtaining derivative standing. Such targeted conduct amply supports a finding of malice. *See, e.g.*, *In re Zohar III, Corp.*, 631 B.R. 133, 166–67 (Bankr. D. Del. 2021) (finding malice where defendants "pursued the challenged activities to strip control rights and other assets away from the Funds to harm them and their stakeholders"); *Bausch & Lomb*, 2016 WL 2622013, at *12 (W.D.N.Y. May 5, 2016).

Finally, it should be noted that counsel for Counter-Plaintiffs were initially advised by Counter-Defendants' counsel that they did not see the benefits of further briefing. Both sides exchanged draft inserts at approximately 2:00 p.m. ET. Counter-Plaintiffs received no proposed revision from Counter-Defendants by approximately 4:59 p.m. ET, and Counter-Plaintiff's sent a proposed final letter to Counter-Defendants at that time. Unfortunately, Counter-Defendants advised shortly thereafter that Counter-Plaintiffs did not have their consent to file the letter. Counter-Defendants then spent hours, post close of business, preparing a revision in response to the fully-integrated letter Counter-Plaintiffs submitted at 4:59 p.m. ET. When Counter-Plaintiffs finally received Counter-Defendants' next insert at 8:21 p.m. ET, there were substantial revisions and additions. In essence, the Counter-Defendants are arguing the merits of the Counter-Plaintiffs' claims until the very last minute while giving lip-service to the notion that no further briefing is required.

---

5), Dkt. 529 (Highland and HCLOF'S Joint Witness and Exhibit List for First Confirmation Hearing, Ex. 91), Dkt. 804 (December 18, 2018 Hearing Transcript, pp. 3-4, 22), Dkt. 857 (Court Admitted Exhibits from December 20, 2018 Hearing).

For the foregoing reasons, Counter-Plaintiffs request an opportunity to present formal briefing, if the Court deems it necessary, on their pending application.

### Plaintiffs' Portion of Joint Letter

The Court should resolve the DAF Parties' request to file a motion for leave to amend without further briefing because the letter-briefing (Dkts. 142, 146) enables the Court to determine whether the DAF Parties have shown good cause to amend and whether amendment is futile, each of which is an independent basis to deny the request. Further briefing is unnecessary, and the most efficient course is for the Court to rule on the request based on the existing letter-briefing. Nothing in the DAF Parties' five pages of submissions changes this.[7]

#### A. The Court Can Determine Good Cause To Amend On The Letter-Briefing

The Court has the requisite record before it to determine whether the DAF Parties have good cause to amend after the expiry of the Case Management Order's April 14, 2023 deadline to do so. *See Morelli v. Alters*, 2020 WL 6508858, at *1-2 (S.D.N.Y. Nov. 5, 2020) (Woods, J.) (parties seeking leave to amend after the Case Management Order's deadline to do so has expired must show "good cause" by "demonstrat[ing] diligence" and that the opposing party would not be "prejudice[d]."). The letter-briefing establishes the inadequacy of the DAF Parties' asserted bases for diligence—that, "[b]ased on further analysis of foreign law," they need to "address issues related to derivative standing," and that their amendment is purportedly based on "recent discovery." Dkt. 142 at 1. As Plaintiffs explained, neither of these bases establishes the requisite good cause to amend. Rather, the DAF Parties have no excuse for failing to address standing issues, which they have long been on notice of, sooner, and recent discovery does not justify leave because the amendments are based on the same facts as the existing claims. Dkt. 146 at 1-2. Likewise, the letter-briefing addresses whether the amendment would cause prejudice by further extending the fact discovery schedule, Dkt. 142 at 1; Dkt. 146 at 2, an issue the Court is familiar with from prior motions. *See* Dkts. 133, 135. Further briefing on good cause will add nothing. And if the Court finds that the DAF Parties failed to show good cause, no briefing on other issues is required. *New York Bay Cap., LLC v. Cobalt Holdings, Inc.*, 2020 WL 3181661, at *4 (S.D.N.Y. June 12, 2020) (Woods, J.) (denying leave to amend for lack of good cause).

Nothing in the DAF Parties' additional submissions changes this.[8] *First*, the DAF Parties' claim that amendment is appropriate because of "newly produced evidence" (*see supra*) is nonsense. As

---

[7] The DAF Parties complain that Plaintiffs added responses to new arguments raised for the first time in the DAF Parties' portion of the joint letter. But it is the DAF Parties' decision to change arguments from their pre-motion letter submitted just last week that required these responses. It is ironic that the DAF Parties think it appropriate for them to take the position that no further briefing is required while using this joint letter, which the Court stated should address "whether further briefing is necessary," Dkt. 149, as a vehicle for their own further briefing, while objecting to the Plaintiffs responding to that further briefing and new arguments. In any event, with both parties in agreement that no further briefing is required, the Court is well-positioned to resolve the DAF Parties' motions on the merits, with two-sided argument before it on the new points raised by the DAF Parties' portion of the joint letter.

[8] The DAF Parties also mischaracterize (*supra*) this Court's decisions by omitting that four of the five cases they cite in support of their good cause arguments were Rule 15(a)(2) amendment cases that were not subject to and did not address Rule 16(b)(4)'s good cause standard at all. *See In re Amazon.com, Inc. Ebook Antitrust Litig.*, 2022 WL 4586209, at *2 (S.D.N.Y. Sept. 29, 2022) (granting leave to amend under Rule 15(a)(2)); *Zevon v. American Express Co.*, 2021 WL 4330578, at *4 (S.D.N.Y. Sept. 22, 2021) (same); *GeBBS Healthcare Sols., Inc. v. Orion Healthcorp,*

a preliminary matter, that assertion flatly contradicts the DAF Parties' statement in their pre-motion letter from just last week that the amendment is based on the "same … facts" as their existing claims, and thus on facts they already knew.  Dkt. 142 at 1; *see* Dkt. 146 at 2.  In any event, the evidence they cite—apparently the best they could come up with—is a non-event.  The DAF Parties' feigned outrage that the 2023 Settlement Agreement would be drafted so the benefit to Plaintiffs—a benefit received in exchange for releasing *millions* in reserves that were critical protection against Mr. Dondero's crusade of frivolous lawsuits—could not be easily circumvented *at any time* by a simple assignment of the Subordinated Notes to the DAF Parties is not credible.  *Of course Plaintiffs did so*.  Nothing about this aspect of the 2023 Settlement Agreement creates a plausible inference of collusion.  The so-called new evidence certainly does not justify the DAF Parties' eleventh-hour amendment to the Counterclaims.  *Second*, the DAF Parties assert that Guernsey law is "not simple and involves complex nuances."  *Supra*.  But even if that were so, that only underscores the DAF Parties' failure to do the work since at least December 2021, when they were put on notice that Plaintiffs intended to challenge their standing under Guernsey law,[9] to understand and plead viable claims under Guernsey law.  *Third*, the DAF Parties' assertion that there is no prejudice because "discovery has not even gotten off the ground" (*supra*) is simply wrong.  Rather, Plaintiffs went to great lengths to substantially complete their document productions, and both Plaintiffs and NexPoint offered deposition dates within the current fact discovery period, set to close on July 13, unlike the DAF Parties, who have failed to offer any deposition dates.  To be clear, Plaintiffs recognize the need for some limited extension of fact discovery to accommodate completion of depositions—as they noted in their response to the DAF Parties' pre-motion letter (Dkt. 146 at 2 n.1)—but that doesn't mean that the DAF Parties should be permitted to turn their case on its head at the eleventh hour.  The new tortious interference claims—which are baseless, as discussed below—will require new discovery and set back the parties in their effort to efficiently complete fact discovery in this case.

### B. The Court Can Find That Amendment Would Be Futile On The Letter-Briefing

The existing letter-briefing is sufficient to allow the Court to find that amendment would be futile because of multiple fatal flaws under U.S. law.  *See Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *9 (S.D.N.Y. Dec. 14, 2020) (Woods, J.) (denying leave to amend as futile); *New York Bay Cap., LLC*, 2020 WL 3181661, at *4 (amendments that fail to "cure [] prior deficiencies" or "state a claim" are futile).

*First*, as the parties seeking leave to amend, the DAF Parties have the onus to explain how amendment would "cure prior deficiencies" in their existing claims identified in Plaintiffs' Motion ("Mot.," Dkt. 107).  *See New York Bay Cap., LLC*, 2020 WL 3181661, at *4.  They failed to meet that burden in their letter-briefing.  They state, without providing any details, that they intend to cure the Guernsey law standing deficiencies Plaintiffs' Motion identified through amendment and a foreign law declaration.  Dkt. 142 at 1.  But as Plaintiffs' letter-brief highlighted, the DAF Parties

---

*Inc.*, 2017 WL 1251143, at *6 (S.D.N.Y. Apr. 4, 2017) (same); *I.C. v. Delta Galil USA*, 2016 WL 6208561, at *1-3 (S.D.N.Y. Oct. 24, 2016) (same).  Their only cited case that actually addressed good cause, *CAC Atl., LLC v. Hartford Fire Ins. Co.*, is inapposite because there, unlike here, the amendment did not require "*additional* discovery."  2017 WL 3149340, at *4 (S.D.N.Y. July 25, 2017) (emphasis in original).

[9]  The DAF Parties in fact should have been on notice of their need to plead derivative standing since November 2019, when they sought to sue the Trustee derivatively on behalf of HCLOF to recover damages allegedly suffered by HCLOF.  *See* Dkt. 15 ¶ 37.

had nothing to say about how amendment would cure the fatal substantive flaws in their existing claims identified in Plaintiffs' Motion, especially the Second Circuit's ruling in *Wilson v. Dantas* that a settlement party does not "aid[] and abet[] an injury to a third party by entering into a [] settlement." 746 F.3d 530, 536 (2d Cir. 2014); *see* Dkt. 146 at 2; Mot. 14-24. If the DAF Parties could address these issues, they would have explained how they intended to do so in their letter-briefing, but they did not. The Court can thus resolve whether amendment is futile under settled U.S. law without the need for further briefing or expert declarations on Guernsey law.

The DAF Parties' additional submissions confirm that amendment of their existing claims is futile. In fact, the DAF Parties abandon their aiding and abetting claims, which they mention nowhere in their submissions. Likewise, the DAF Parties effectively abandon their attempt to invalidate the 2021 and 2023 Settlement Agreements based on the Investment Advisers Act anti-waiver provision, and rely solely on their collusion theory.[10] *See supra*. But they have not pled that theory with the particularity that Rule 9(b) requires and still do not specify how their amendments will do so. *See* Mot. at 18-19; Dkt. 146 at 2. Their gesturing at unspecified "specific acts" (*supra*) of collusion they might plead does not meet their burden to "specify … how amendment would cure the[ir] pleading deficiencies." *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 419 (S.D.N.Y. 2021) (Woods, J.).

*Second*, the letter-briefing also allows the court to determine whether amendment to add a new claim against Plaintiffs for tortious interference with the HCLOF Members' Agreement is futile under New York law, which the DAF Parties admit governs. Dkt. 142 at 2. The letter-briefs adequately canvass the New York law issues concerning whether Plaintiffs intentionally interfered with the Members' Agreement and whether any such interference was justified. *See* Dkt. 142 at 3; Dkt. 146 at 3. These are not novel issues that require further briefing to analyze futility. Rather, as Plaintiffs' letter-brief identified (Dkt. 146 at 3), New York courts have repeatedly addressed (and rejected) theories that a party tortiously interfered with its counterparty's contracts with its stakeholders by settling claims with that counterparty.[11] Likewise, whether any interference was justified by Plaintiffs' economic interest in settlement is already governed by *Wilson*, whose holding that parties are entitled to act in "appropriate economic self-interest" when settling claims

---

[10] The cases the DAF Parties cite (*supra*) in support of their collusion argument are inapposite. Unlike in *In re Sage Crest II LLC*, the DAF Parties have not alleged that Plaintiffs made any side "pay-off" to HCLOF's directors to induce the settlement. 765 F. App'x 473, 476 (2d Cir. 2019) (voiding anti-competitive settlement based on "pay-off … to induce [another party] to drop out of [bankruptcy] bidding" process). *Rosen v. Dick* is inapposite because there, unlike here, the settlement was part of a broader unlawful agreement to conceal the defendants' wrongdoing. 1974 WL 443, at *1 (S.D.N.Y. Sept. 3, 1974) (settlement was "part and parcel of a broader illegal agreement … to conceal [defendant's] defalcations" from shareholders and regulators). Unlike in *Rotter v. Leahy* and *Kennedy v. Basil*, here Plaintiffs provided valuable consideration to HCLOF in exchange for the settlement. *Rotter*, 93 F. Supp. 2d 487, 496 (S.D.N.Y. 2000) (finding "genuine question of bad faith" because settling party "paid no consideration for the Release"); *Kennedy*, 2019 WL 2348123, at *2 (party contending that release was enforceable conceded that it was only supported by a "low amount of [] consideration").

[11] *See, e.g., Duane Reade v. I.G. Second Generation Partners, L.P.*, 280 A.D.2d 410, 412 (1st Dep't 2001) (dismissing tortious interference claim because counterparty did not breach implied good faith covenant of contract with plaintiff by "settl[ing] [] litigation" with tortious interference defendant); *Gov't Emps. Ins. Co. v. Hazel*, 2014 WL 4628655, at *12 (E.D.N.Y. Aug. 11, 2014) (dismissing tortious interference claim for failure to plausibly allege that defendant "intended for its … settlement … to occasion [counterparty's] breach" of a separate contract with its stakeholder, even if that was the settlement's "effect"), *aff'd*, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014); *In re George Washington Bridge Bus Station Dev. Venture LLC*, 2022 WL 4653117, at *13 (Bankr. S.D.N.Y. Sept. 30, 2022) (similar).

applies to tortious interference by settlement theories as well as aiding and abetting by settlement theories.[12]  746 F.3d at 536; *see* Dkt. 146 at 3.

The DAF Parties' primary additional submission in response—that the 2023 Settlement Agreement must have been collusive and tortious because Plaintiffs' "motive" in settling with HCLOF was to prevent the DAF Parties from suing Plaintiffs (*supra*)—is nonsensical.  The point of the 2023 Settlement Agreement was to obtain a standstill of HCLOF's potential claims and settle a portion of those claims relating to expense payments from the Acis CLO reserves in exchange for consideration.  Permitting HCLOF to assign its investments in the Acis CLOs to the DAF Parties would defeat that purpose by shifting the claims that HCLOF was to settle to non-parties to that settlement, who could deprive Plaintiffs of the finality and repose they sought to obtain.  The settlement would be meaningless if the DAF Parties could still sue on the same claims using the same Notes.  *Of course the Plaintiffs sought to protect the benefits of the 2023 Settlement Agreement from being nullified by an assignment, particularly when they had agreed to distribute <u>millions</u> in reserved funds that were critical protection against Mr. Dondero's incessant crusade of frivolous litigation against them.*  Plaintiffs thus acted in "appropriate economic self-interest" by agreeing with HCLOF to foreclose such an assignment when the DAF Parties brought suit in Guernsey to compel HCLOF to transfer a portion of its investments in the Acis CLOs to them.  *Wilson*, 746 F.3d at 536.

Nothing else in the DAF Parties' additional submissions moves the needle or requires additional briefing.  *First*, the DAF Parties' additional underlying breach submissions (*see supra*) neither contest that breaches of the Members' Agreement good faith clause must be pled with particularity under Rule 9(b) nor describe collusive conduct with particularity.[13]  *See* Dkt. 146 at 3.  *Second*, the DAF Parties' assertion (*supra*) that Plaintiffs must have intended to induce a breach of the Members' Agreement because they "were aware of" its existence is precisely the type of conclusory allegation that courts have rejected.[14]  *Gov't Empl. Ins. Co.*, 2014 WL 4628655, at *12

---

[12]  The DAF Parties' unconvincing attempts (*supra*) to distinguish *Wilson* in a footnote fail.  Their assertion that *Wilson* concerned actual litigation rather than, as here, contemplated litigation is a distinction without a difference because there are strong policy reasons to enforce settlements in both cases.  Their assertion that the 2023 Settlement Agreement was not in the normal course because it "target[ed] DAF Parties ways unrelated to HCLOF's contemplated litigation is also wrong.  Rather, as Plaintiffs explain above, the provisions of the 2023 Settlement Agreement barring assignment of HCLOF's investments in the Acis CLOs to the DAF Parties were necessary to prevent a shifting of the claims that HCLOF was to settle to non-parties to the settlement.  And their assertion that *Wilson* was a different procedural posture is wrong.  *Wilson* affirmed the trial court's dismissal of claims under Rule 12(b)(6), whose failure to state a claim standard also governs the futility analysis here.  *See New York Bay Cap., LLC*, 2020 WL 3181661, at *4 ("Proposed amendments are futile if they fail … to state a claim under Rule 12(b)(6)").

[13]  The DAF Parties' claim (*supra*) that Plaintiffs misstated *Compound Photonics Group, Ltd., Re*, [2022] EWCA Civ 1371 (Dkt. 146-1) is wrong because the portion Plaintiffs cited contained the appeal court's holding, not a summary of the trial decision.  *See id.* ¶¶ 205-209 (the appellate court disagreeing with the trial judge and ruling that the good faith clause was not "an open invitation to … impos[e] additional substantive obligations (or restrictions on action) outside the other terms of the contract.").  The DAF Parties further ignore that *Compound Photonics* held that commercially unreasonable conduct must be "taken in bad faith." *Id.* ¶ 241.

[14]  The DAF Parties' contrary reliance (*supra*) on *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.* and *EVEMeta, LLC v. Siemens Convergence Creators Holding GmbH* is misplaced because those cases addressed whether the defendants' concededly intentional interference was a "but for" cause of the breach, not the separate element relevant here—whether defendants actually intentionally interfered with the contract.  *See Antonios*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (addressing "'but for' causation"); *EVEMeta*, 2017 WL 4351748, at *2 (C.D. Cal. Sept. 28, 2017) (addressing whether defendant "was the 'but for' cause of [the] breach").

("knowledge of a contract's existence is insufficient to support allegations that the defendants 'induced' any breach"). *Third*, the DAF Parties' additional submissions on the "economic interest defense" (*supra*) misconstrue Plaintiffs' submission, namely, that the DAF Parties bear the burden to establish that interference was unjustified and have not plausibly alleged this element. Dkt. 146 at 3; *see In re George Washington Bridge*, 2022 WL 4653117, at *12-13 ("a plaintiff must allege … the procurement [of the breach] was without justification" and ruling that plaintiff had failed to plausibly allege that "any supposed 'procurement' by [settling party of its counterparty's alleged breach] was 'without justification'"). The DAF Parties do not explain why, notwithstanding New York's strong social interest favoring settlement, any interference the settlement effected was unjustified. Dkt. 146 at 3; *see Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) ("social interests" can justify interference). And their implausible assertion that the court cannot consider Plaintiffs' own economic interest in settlement when evaluating whether interference is justified flies in the face of the *Wilson* holding that settling parties are entitled to act in "appropriate economic self-interest."[15] 746 F.3d at 536. Further, the DAF Parties' gesturing (*supra*) that they "will … allege" unspecified "acts of malice" fails to meet their burden to specify why amendment is not futile.[16] *Off. Sol. Grp., LLC*, 544 F. Supp. 3d at 419.

Respectfully Submitted,

| | |
|---|---|
| /s/ Blair A. Adams (with permission) | /s/ Roger L. McCleary |
| Jonathan E. Pickhardt | Sawnie A. McEntire |
| Blair A. Adams | *Admitted Pro Hac Vice* |
| Misha Boutilier | Texas Bar No.: 13590100 |
| Michael R. Bloom | Fed ID #3476 |
| Jeffrey Arnier | PARSONS MCENTIRE MCCLEARY PLLC |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | 1700 Pacific Avenue, Suite 4400 |
| | Dallas, Texas 75201 |
| 51 Madison Avenue, 22nd Floor | Telephone: (214) 237-4300 |
| New York, New York 10010 | Fax: (214) 237-4340 |
| (212) 849-7000 | E-mail: smcentire@pmmlaw.com |
| **Counsel for Plaintiffs ACIS Capital Management, L.P., and Joshua N. Terry** | |
| | Roger L. McCleary |
| | *Admitted Pro Hac Vice* |
| /s/ Mark D. Kotwick (with permission) | Texas Bar No.: 133937000 |
| Mark D. Kotwick | Fed. ID #205 |

---

[15] The DAF Parties' contrary reliance (*supra*) on *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.* and *Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.* is misplaced because neither case addressed a party's economic interest in settlement. *See Dell's Maraschino Cherries*, 887 F. Supp. 2d 459, 483-84 (E.D.N.Y. 2012) (defendants had "interwoven … relationship" with breaching party and did not interfere with contract for the purpose of settling claims with the breaching party); *Bausch & Lomb*, 2016 WL 2622013, at *12 (W.D.N.Y. May 5, 2016) (expected future interest in acquisition target did not trigger economic interest defense).

[16] The DAF Parties' contrary reliance (*supra*) on *In re Zohar III, Corp.* and *Bausch & Lomb* is misplaced. Unlike in *Zohar III*, the DAF Parties have not alleged that HCLOF's directors "intentionally act[ed] to harm [HCLOF] in order to personally profit" or that Plaintiffs induced them to do so. 631 B.R. 133, 166 (Bankr. D. Del. 2021). Unlike in *Bausch & Lomb*, the DAF Parties have not plausibly alleged that Plaintiffs directed HCLOF to lie to them. 2016 WL 2622013, at *12 (finding malice where defendant "directed [breaching party] to falsely" represent facts to plaintiff).

Thomas Ross Hooper
Julie J. Hong
STEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
(202) 574-1200
***Counsel for Plaintiff U.S. Bank, National Association***

PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah
E-mail: jtewiah@glennagre.com
GLENN AGRE BERGMAN & FUENTES LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: 212.358.5600

***Counsel for CLO Holdco, Ltd. and The Charitable Donor Advised Fund, L.P.***