UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br> Plaintiffs, <br><br> -against- <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> Defendants. | **Case No. 1:21-cv-11059 (GHW)** |

**COUNTER-DEFENDANT BRIGADE CAPITAL MANAGEMENT, LP'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
COUNTERCLAIMS**

## **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A. NexPoint Fails to State a Claim for Breach of Fiduciary Duty Against Brigade (Count One). ........................................................................................... 2

        1. Brigade and NexPoint have no fiduciary relationship. ................................ 2

        2. NexPoint has not alleged that Brigade breached any fiduciary duty. .......... 5

    B. NexPoint Fails to State a Claim for Negligence or Gross Negligence Against Brigade (Count Two). ........................................................................... 6

    C. NexPoint Fails to Allege Conversion And Unjust Enrichment / Assumpsit / Money-Had-and-Received Against Brigade (Counts Three and Four). ............ 6

    D. NexPoint Fails to State a Claim for Tortious Interference with Contract Against Brigade (Count Five). ........................................................................... 7

    E. NexPoint Fails to State a Claim for Aiding and Abetting Against Brigade (Count Six). ........................................................................................................ 8

III. NEXPOINT LACKS STANDING TO PURSUE ITS CLAIMS. ................................... 10

IV. CONCLUSION ............................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  750 N.E.2d 1097 (N.Y. 2001)..................................................................................................6

*Bigio v. Coca-Cola Co.*,
  675 F. 3d 163 (2d Cir. 2012)....................................................................................................9

*Boykins v. Lopez*,
  2022 WL 2307684 (S.D.N.Y. Jun. 27, 2022) ..........................................................................2

*DeJesus v. Sears*,
  87 F.3d 65 (2d Cir. 1996)..........................................................................................................7

*EBC I, Inc. v. Goldman, Sachs & Co.*,
  5 N.Y.3d 11 (N.Y. 2005) ..........................................................................................................2

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
  301 F. Supp. 3d 759 (S.D. Ohio 2018), *aff'd*, 954 F.3d 852 (6th Cir. 2020).............................4

*Hoffman v. UBS-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008).......................................................................................4

*Huang v. Hong Kong and Shanghai Banking Corp.*,
  2022 WL 4123879 (S.D.N.Y. Sept. 9, 2022)............................................................................9

*Johnson v. City of N. Y.*,
  2017 WL 2312924 (S.D.N.Y. May 26, 2017) ..........................................................................5

*Kassover v. UBS AG*,
  619 F. Supp. 2d 28 (S.D.N.Y. 2008).........................................................................................4

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) .............................................................................................9

*McBride v. KPMG Int'l*,
  135 A.D.3d 576 (1st Dep't 2016) .............................................................................................9

*McMillian v. MTA Metro-N. R.R.*,
  2021 WL 4311318 (S.D.N.Y. Sept. 20, 2021).........................................................................2

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F. Supp. 3d 201 (S.D.N.Y. 2016).......................................................................................7

*NexPoint Diversified Real Estate Trust v. Acis Cap. Mgmt.*,
    620 F. Supp. 3d 36 (S.D.N.Y. 2022)......................................................................................5

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
    19 N.Y.3d 584 (N.Y. 2012) ............................................................................................1, 2

*Ossining Union Free Sch. Dist. V. Anderson LaRocca Anderson*,
    73 N.Y.2d 417 (N.Y. 1989) ...............................................................................................6

*Pope v. Rice*,
    2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) .....................................................................9

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009)................................................................................7

*Subaru Distributors Corp. v. Subaru of Am., Inc.*,
    2004 WL 3220120 (S.D.N.Y. June 1, 2003), *aff'd sub. nom. Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005) .................................................................7

*World Wide Comms., Inc. v. Rozar*,
    1997 WL 795750 (S.D.N.Y. Dec. 30, 1997) .....................................................................7

Brigade Capital Management, LP ("Brigade") respectfully submits this reply memorandum of law in support of its motion (the "Motion" or "Mot." ECF No. 120) to dismiss NexPoint's Counterclaims.

I.      **PRELIMINARY STATEMENT**

The claims against Brigade do not belong in this lawsuit. In opposing Brigade's motion to dismiss, NexPoint takes the curious path of demanding that Brigade submit documents outside the pleadings. Opposition (ECF No. 147, "Opp.") at 1, 4, 7. Of course, this is not the standard for a motion to dismiss, but it is all NexPoint has. The Counterclaims barely mention Brigade, but even accepting all of NexPoint's well-pled allegations as true, the Counterclaims against Brigade fail as a matter of law. NexPoint itself pleads that Brigade had a limited and remote role. "Acis retained Brigade," Countercl. ¶ 58, to serve "as a sub-advisor," *id.*, and Brigade performed "back and middle office functions" *id.* ¶ 62, while other counter-defendants "effectively approve[d] all trading activity" *id.* ¶ 65. And even in its Opposition, NexPoint still does not (because it cannot) allege that there was any contract between Brigade and NexPoint or even any communication between them. Under long-standing New York law, these circumstances do not give rise to the fiduciary or other duties NexPoint contends exist. *See, e.g.*, *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (N.Y. 2012) ("[I]f the parties [have] not create[d] their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them."). NexPoint's solution is to ignore the allegations of its own Counterclaims and the clear framework that New York courts have used for decades for determining when to imply tort and contractual duties that the parties themselves did not write. These claims have no basis in existing law and after multiple failed attempts to keep Brigade entangled in its litigation campaign (*see* Mot. at 3), NexPoint's Counterclaims asserted against Brigade should be dismissed with prejudice.

1

II.     **ARGUMENT**

    A.     <u>**NexPoint Fails to State a Claim for Breach of Fiduciary Duty Against Brigade (Count One).**</u>

NexPoint does not allege any basis to find it had a fiduciary relationship with Brigade, nor does it plead any breach by Brigade. Mot. at 5. The Opposition does not cure these dispositive pleading failures.

        1.     <u>Brigade and NexPoint have no fiduciary relationship.</u>

Brigade and NexPoint have no contractual relationship. Mot. at 1, 5; *see also* Opp. at 8 ("Brigade . . . is not in direct privity with NexPoint or with the Acis-6 fund.").[1] In New York, "if the parties [have] not create[d] their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." *Oddo Asset Mgmt.*, 19 N.Y.3d at 593; *see EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20 (N.Y. 2005) (holding that where no contract between the parties exists, fiduciary duty claim can only survive where plaintiff pleads facts establishing "relationship of higher trust"). Rather than address this binding framework from the New York Court of Appeals, NexPoint ignores it entirely.

NexPoint's Opposition instead doubles down on the request that this Court create new avenues for implying fiduciary duties based on (i) New York common law; (ii) the Investment Advisors Act of 1940 (the "IAA"); and (iii) New York trust law. Opp. at 5–6.[2] Each of these

---

[1] *See also* Mot. Ex. 3, Jan. 4, 2022 Pre-motion Conf., Hr'g. Tr. 31:11–21 (admitting to a "lack of a direct relationship" with Brigade). NexPoint contests that the Court may consider the transcripts attached to the Motion, Opp. at 2–3, but "courts routinely take judicial notice—at the motion to dismiss stage—of transcripts of related judicial proceedings." *Boykins v. Lopez*, 2022 WL 2307684, at *5 (S.D.N.Y. Jun. 27, 2022) (internal quotation omitted).

[2] NexPoint appears to have abandoned its argument that a fiduciary relationship between NexPoint and Brigade was created as a matter of agency law, and has therefore waived it. *McMillian v. MTA Metro-N. R.R.*, 2021 WL 4311318, at *3 n.3 (S.D.N.Y. Sept. 20, 2021) (failure to oppose results

theories fails.

*First*, NexPoint argues that New York law allows direct claims by fund investors against fund advisors "especially where the manager controls the fund and makes the decisions of what will be invested in it." Opp. at 5–7. For starters, NexPoint does not plead that Brigade had control and decision-making authority regarding investments in Acis-6. In fact, it alleges the opposite. *See* Countercl. ¶ 65 (noting another counter-defendant "effectively approves all trading activity" and "exercises complete dominion over the company and its activities"). This makes sense given that (again, based on NexPoint's own allegations) "*Acis* retained Brigade," Countercl. ¶ 58 (emphasis added)—not Acis-6, and certainly not NexPoint. As Plaintiffs argued in their motion to dismiss, even Acis Capital Management, L.P. ("Acis") only owes duties to Acis-6 itself and not directly to every Acis-6 noteholder. *See* Pls' Mot. (ECF No. 107) at 25–26; Pls' Reply (ECF No. 151) at 8–9. This argument applies with particular force to Brigade, which is one step further removed and not alleged to have interacted with the noteholders.

The Opposition borders on misrepresentation when it argues that the claim that "Brigade charges the Acis-6 fund and not [Acis] permits the plausible conclusion that [Acis] is not Brigade's client—Acis-6 is." Opp. at 7. To be sure, NexPoint does not allege—presumably because it knows it cannot do so consistent with Rule 11—that Brigade was paid by the Acis-6 fund. To the contrary, NexPoint alleges that "Brigade had charged *Acis* fifteen basis points on the Assets." Countercl. ¶ 67; *see also id.* ¶ 212 (alleging that other counter-defendants "potentially" "reimbursed" Brigade). In any event, NexPoint appears to be conflating the method for calculating Brigade's sub-advisory fee (*i.e.*, 0.15% of the overall assets managed) with the source of the

---

in waiver). This makes sense given that neither the Counterclaims nor the Opposition provides any basis for finding an agency relationship. *See* Mot. at 5, 8.

3

payments. The allegation that Brigade's compensation was derived from the same pool of assets as Acis (*i.e.*, the overall size of Acis-6) says, at most, that Acis and Brigade received compensation based on the volume of assets managed, not that they performed the same function. Indeed, advisory and sub-advisory services are not equivalent—or even comparable. *See*, *e.g.*, *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008) ("[I]nvestment advisers and sub-advisers perform distinct services."); *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 301 F. Supp. 3d 759, 770–74 (S.D. Ohio 2018) (comparing advisory fees and sub advisory fees was inapt due to different responsibilities, risks, and scope of services involved), *aff'd*, 954 F.3d 852, 861–62 (6th Cir. 2020).

*Second*, NexPoint argues that the mere fact that Brigade is an investment advisor "immediately triggers its fiduciary duties under the IAA, which are owed directly to investors of a managed fund." Opp. at 7. In other words, NexPoint claims that because Brigade is an investment advisor *to Acis* (or anyone for that matter), it therefore owes fiduciary duties to every investor of every fund it might advise. That is not the law. *See* Mot. at 7 (explaining that the IAA does not impute an investment advisor's obligations either to the advisor's third-party service providers like Brigade or the advisee's own investors like NexPoint). Absent the allegation that Brigade undertook "to provide [*NexPoint*] with investment advice," Brigade was not an "investment advisor" *to NexPoint*, and that is dispositive of NexPoint's IAA claim against Brigade. *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 33 (S.D.N.Y. 2008).[3]

*Third*, NexPoint argues that because Acis-6 is a trust, the manager is a trustee and owes fiduciary duties directly to the beneficiaries. Opp. at 6. As Plaintiffs outlined in their motion to

---

[3] NexPoint's theory of fiduciary duties emanating from the IAA fails even before it could possibly reach remote parties like Brigade because, as explained in Plaintiffs' Motion, neither Section 206 of the IAA nor IAA Rule 206(4)-8 extends fund advisor's fiduciary duties to investors in their advised funds under New York common law. *See* Pls' Mot. at 29–30, Pls' Reply, at 12–13.

4

dismiss, New York common law trust principles do not apply to this case because the actual Trustee (U.S. Bank) does not owe pre-Event of Default fiduciary duties to Acis-6 investors like NexPoint, *see NexPoint Diversified Real Estate Trust v. Acis Cap. Mgmt.*, 620 F. Supp. 3d 36, 47–48 (S.D.N.Y. 2022), and in any event, the Trustee has not delegated its non-existent fiduciary responsibilities to Acis—let alone the more remote sub-advisor, Brigade.  Pls' Mot. at 30–31, 35–37, Pls' Reply at 6–7.  Likewise, a trust does not arise under Cayman Islands law either.  Pls' Reply at 8.  Finally, NexPoint argues that Brigade's fiduciary duties "emanate from those [Brigade] assumed from" Acis,  Opp. at 6, but NexPoint cites no law suggesting that the duties of a common law trustee may "emanate" from one party to another in this manner, much less the facts that caused that to occur in this case.

2. <u>NexPoint has not alleged that Brigade breached any fiduciary duty.</u>

NexPoint does not plead any facts establishing that *Brigade* breached its purported fiduciary duties; it relies on group pleading against the "Counter-Defendants."  Mot. at 9.  The Opposition provides no response to this argument, which itself is grounds to dismiss NexPoint's claim against Brigade.  *Johnson v. City of N. Y.*, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) (Woods, J.) ("By failing to address Defendants' arguments in support of dismissing this claim, it is deemed withdrawn or dismissed as abandoned.").  In fact, the Opposition emphasizes NexPoint's failure by again expressly grouping Brigade together with Acis to assert that they "acted together. . . in doing the bad acts that led to NexPoint's injuries."  Opp. at 9.  As support for this vague contention, NexPoint cites to a range of sixty-two paragraphs, *id*., at n.13 (citing Countercl. ¶¶ 78–139), out of which Brigade is mentioned only twice and neither in the context of alleging any breach, *see* Countercl. ¶¶ 82 (alleging Brigade benefitted at the same time the counter-defendants' unspecified "tactics" decreased the value of the Assets), 89 (alleging Acis CLOs paid out distributions to equity holders prior to Brigade assuming role as sub-advisor).

5

B.  **NexPoint Fails to State a Claim for Negligence or Gross Negligence Against Brigade (Count Two).**

NexPoint fails to plead any duty owed to NexPoint that could support a negligence or gross negligence claim. Mot. at 10–11. In New York, a party does not owe tort duties to a limitless class of people; to the contrary, duties of care are created either by contract or a relationship between the parties that was "the functional equivalent of privity." *Id.* Here, there is no contract between Brigade and NexPoint, leaving NexPoint to argue that either the IAA or New York common law creates a duty between these two parties who are never alleged to have interacted. Not so. As discussed above, the IAA does not create duties between Brigade and NexPoint. *See supra* Section II.A.1. Nor does NexPoint's boilerplate assertion that Brigade allegedly knew its work could ultimately impact noteholders' financial interests, Opp. at 11–12, create a tort duty. Even if NexPoint had alleged facts in support of this conclusion (it does not), the Court of Appeals has consistently rejected this precise approach, repeatedly requiring parties to show at least the "functional equivalent of privity" in order to allege that a duty of care existed in a business relationship. *Ossining Union Free Sch. Dist. V. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424–25 (N.Y. 1989) ("We have declined to adopt a rule permitting recovery by any 'foreseeable' plaintiff . . . [even] where the reliant party or class of parties was actually known or foreseen by the defendants."); *see also 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001) ("foreseeability of harm does not define duty"). NexPoint's reliance on this repeatedly rejected legal standard confirms that its claim against Brigade fails as a matter of law.

C.  **NexPoint Fails to Allege Conversion And Unjust Enrichment / Assumpsit / Money-Had-and-Received Against Brigade (Counts Three and Four).**

NexPoint's conversion and unjust enrichment / assumpsit / money-had-and-received claims cannot survive as pleaded against Brigade. *First*, such quasi-contractual claims are barred

where, as here, written contracts—the Indenture and the PMA—govern the subject matter at issue. *See* Mot. at 12–13 (citing Pls' Mot. at 39–40). That NexPoint is a not a party to the Indenture or to the PMA, *see* Opp. to Pls' Mot. (ECF No. 139) at 31, is of no moment. *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 208 (S.D.N.Y. 2016) (agreement barred unjust enrichment claim "even though [party] was not a signatory"). *Second*, NexPoint's conversion claim fails for the independent reason that nothing in the Opposition or in the Counterclaims asserts that NexPoint ever had the requisite "ownership, possession or control" of any allegedly converted funds. Mot. at 12. *Last*, NexPoint's only basis to avoid dismissal of its unjust enrichment / assumpsit / money-had-and-received claims is that Brigade allegedly "took money directly out of a pool of funds that otherwise would have gone to [NexPoint]." Opp. at 9. This argument finds no support in the Counterclaims and should be disregarded. *See supra* Section II.A.1, at 3–4.

### D. NexPoint Fails to State a Claim for Tortious Interference with Contract Against Brigade (Count Five).

*First*, a breach of contract is an essential element of a tortious interference claim. *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 2004 WL 3220120, at *9 (S.D.N.Y. June 1, 2003), *aff'd sub. nom. Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005). But as explained in Plaintiffs' Motion, NexPoint's conclusory assertion that Acis-6 breached the terms of the subordinated note with NexPoint, Countercl. ¶ 230, falls far short of alleging the requisite breach of contract. Pls' Mot. at 24–25; Pls' Reply at 3–6.

*Second*, NexPoint's tortious interference claim would fail as to Brigade in any event because the Counterclaims do not point to a single action that *Brigade* took to intentionally cause such a breach, Mot. at 13-14. *World Wide Comms., Inc. v. Rozar*, 1997 WL 795750, at *7 (S.D.N.Y. Dec. 30, 1997) (citing *DeJesus v. Sears*, 87 F.3d 65, 70 (2d Cir. 1996) (requiring "factual specificity" to plead tortious interference claim); *RSM Prod. Corp. v. Fridman*, 643 F.

Supp. 2d 382, 405 (S.D.N.Y. 2009) (dismissing tortious interference claim where plaintiff failed to assert that *each* defendant's actions were the but for cause of the alleged breach and *each* intended to cause the breach). NexPoint has no response for either of these failures. *See generally* Opp.

*Finally*, NexPoint's other arguments regarding a justification defense (Opp. at 3) are not responsive to Brigade's Motion and, in any event, are disposed of for the reasons set forth in Plaintiffs' Motion—*i.e.*, NexPoint has not pleaded fraud, malice, or illegality in the allegedly interfering actions Acis took. *See* Pls' Mot. at 25, Pls' Reply at 5.

### E. NexPoint Fails to State a Claim for Aiding and Abetting Against Brigade (Count Six).

NexPoint's aiding and abetting claims fail on multiple grounds.[4] *First*, NexPoint offers nothing other than the conclusory assertion that Brigade had "actual knowledge" of the underlying torts it allegedly aided and abetted. The Opposition eliminates all doubt that NexPoint has not met its burden of pleading actual knowledge. Citing to nothing, NexPoint argues that it can be inferred that Brigade knew (i) of purported mismanagement of Acis-6, (ii) that this would deprive NexPoint of the "full economic benefit" of its subordinated notes, and (iii) that this constituted a breach of duties owed to NexPoint by others. Opp. at 5, 13. The Opposition cites to nothing because there are no allegations in the Counterclaims to support this unpled allegation. This falls far short of the requirement in New York to show "actual knowledge" with "facts indicating that the alleged aider

---

[4] NexPoint contends that Brigade only addressed its claim for aiding and abetting a breach of fiduciary duty. Opp. at 12. This is false. The Motion repeatedly mentioned "the underlying torts," Mot. at 14-15, making clear that its discussion applied to all aiding and abetting claims, not just breach of fiduciary duty. The Motion did, however, argue that the claim for aiding breach of fiduciary duty was particularly flawed because Brigade could not have "actual knowledge" of a purported breach of duties that the operative agreements declared to not exist. Mot. at 14; *see also* Mot. at 8 (citing Ex. 1 at 76) (noting that parties disclaimed fiduciary duties in Indenture).

and abettor had direct and clear knowledge of the wrongdoing" because "mere notice or unreasonable awareness is not enough." *Huang v. Hong Kong and Shanghai Banking Corp.*, 2022 WL 4123879, at *4 (S.D.N.Y. Sept. 9, 2022) (citation omitted); *see also Bigio v. Coca-Cola Co.*, 675 F. 3d 163, 172 (2d Cir. 2012) (dismissing aiding and abetting conversion claim based on conclusory allegations); *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) (dismissing aiding and abetting claim because actual knowledge allegations were "wholly conclusory").[5]

*Second*, NexPoint failed to allege that Brigade substantially assisted in the commission of any tort. *See* Mot. at 14. NexPoint now argues that "[r]endering advice" satisfies the "substantial assistance" standard for pleading an aiding and abetting claim, Opp. at 14. But NexPoint's own authority—derived from a comment to the *Restatement (Second) Torts* § 876 (1979) that was cited in an out of Circuit case—explains that "rendering advice" can only be "substantial assistance" when it "operates as a moral support to a tortfeasor *and* if the act encouraged is known to be tortious," Restatement § 876, cmt. d (emphasis added). Here, NexPoint barely alleges what advice Brigade gave, much less how it was "moral support" to an act known to be tortious. *See Pope v. Rice,* 2005 WL 613085, at *12 (S.D.N.Y. Mar. 14, 2005) (dismissing claim where no allegation gave "'fair notice' of how [defendant] knowingly induced or participated in any alleged breach"); *McBride v. KPMG Int'l*, 135 A.D.3d 576, 578–79 (1st Dep't 2016) (dismissing claim for failure to allege substantial assistance and finding "performing routine business services for the alleged [tortfeasor]" cannot support an aiding and abetting claim). In the alternative, NexPoint argues that

---

[5] Given its blunderbuss pleading, even NexPoint appears to lose sight of what it must allege. For instance, with respect to aiding and abetting tortious interference, Opp. at 5, NexPoint was required to allege Brigade's knowledge of the elements of *Acis's* alleged tortious interference, which requires allegations that Brigade knew of (1) a breach of the Notes by Acis-6, *see* Pls' Reply at 3–5; *and* (2) that Acis intentionally and unjustifiably induced that breach. The Counterclaims' handful of scattered references to Brigade do nothing to show any such knowledge.

9

Brigade substantially assisted Acis as the "operational arm of the investment-advisor role" and therefore played a "critical role in facilitating the schematics of Counter-Defendants' swindle." Opp. at 14. But again, NexPoint exaggerates its own Counterclaims, which makes clear that Brigade was retained "to assist the company . . . to provide the portfolio-management services *as a sub-advisor*," and that another counter-defendant "effectively approve[d] all trading activity," Countercl. ¶¶ 58, 65; *see also id*. ¶¶ 62–64. NexPoint's aiding and abetting claims therefore fail.[6]

### III. NEXPOINT LACKS STANDING TO PURSUE ITS CLAIMS.

Finally, as Plaintiffs argue, NexPoint lacks direct standing to bring its claims that are, in reality, all derivative "because they are predicated on conduct that purportedly directly injured either Acis-6 or a 'trust [ ] under New York law'. . . that the Indenture allegedly created to hold Acis-6's assets." Pls' Mot. at 25–26; *see also id.*, at 26–39; Pls' Reply at 6–19. The claims against Brigade are one step more attenuated because even if NexPoint could somehow bring claims derivatively on behalf of Acis-6 to enforce its purported rights, NexPoint pleads nothing to suggest a theory on which Acis-6 could then step into *Acis's* shoes to enforce or rescind Acis's contract with Brigade. This provides an additional, independent basis to dismiss all of the Counterclaims against Brigade.[7]

### IV. CONCLUSION

For the foregoing reasons, Brigade respectfully requests that NexPoint's Counterclaims be dismissed in full and with prejudice.

---

[6] NexPoint's reliance on *dicta* from the state court hearing to suggest that Brigade would be "on the hook for aiding and abetting" carries no weight, particularly given the Court's acknowledgment in the same excerpt that it had not read the relevant law. *See* ECF No. 147-1, at 89:15–19.

[7] NexPoint likewise ignores that to the extent it claims it has the right to pursue these claims, they would nonetheless be barred by the no-action clause of the Indenture, *see* Mot. at 15. *See also* Pls' Mot. at 41–42.

Dated: July 10, 2023
New York, New York

Respectfully submitted,

*/s/ Jason C. Hegt*
LATHAM & WATKINS LLP
Jason C. Hegt
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Jason.Hegt@lw.com
Alexis.Godfrey@lw.com

*Attorneys for Counter-Defendant Brigade Capital Management, LP*