UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,

                         Plaintiffs,

               -against-

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

                      Defendants.

Case No. 1:21-cv-11059 (GHW)

Oral Argument Requested

---

## MEMORANDUM OF LAW IN SUPPORT OF COUNTERCLAIM DEFENDANT HIGHLAND CLO FUNDING, LTD.'S MOTION TO DISMISS

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park
New York, NY 10036

*Attorneys for Highland CLO Funding, Ltd.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................1

RELEVANT FACTS .............................................................................................................3

    A.    HCLOF ...................................................................................................3

    B.    HCLOF's 2021 And 2023 Agreements With Acis And U.S. Bank........................4

        1.    The 2021 Settlement Agreement With Acis And Terry...............................4

        2.    The 2023 Forbearance Agreement With Acis And U.S. Bank ....................4

    C.    HCLOF's Members Agreement ...................................................................5

    D.    CLOH's Guernsey Action Against HCLOF ...................................................5

    E.    Procedural History ...................................................................................6

ARGUMENT .......................................................................................................................7

    I.    The Court Lacks Personal Jurisdiction Over HCLOF .............................................8

        A.    There Is No General Jurisdiction Over HCLOF .........................................8

        B.    There Is Also No Specific Jurisdiction Over HCLOF ................................9

    II.    The Court Also Lacks Subject Matter Jurisdiction Over the Counterclaims........12

    III.    Dismissal Is Also Proper Under The Doctrines of *Forum Non Conveniens* and International Comity ...................................................................................15

        A.    *Forum Non Conveniens* Requires Dismissal .............................................15

        B.    International Comity Requires Dismissal .................................................18

    IV.    The Counterclaims Are Also Substantively Meritless ..........................................19

        A.    As Non-Parties, The CLOH Parties Cannot Enforce, Let Alone Void, The 2021 Settlement Agreement Or The 2023 Forbearance Agreement........................................................................................20

        B.    The CLOH Parties Fail To Plead A Breach Of The Members Agreement........................................................................................21

CONCLUSION...................................................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. JPMorgan Chase & Co.*,
219 F. App'x 83 (2d Cir. 2007) ...............................................................16, 17, 18

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
712 F.3d 775 (2d Cir. 2013)..................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................7, 19

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016).....................................................................................8

*Burgess v. Omar*,
345 F. Supp. 2d 369 (S.D.N.Y. 2004)..............................................................14, 15

*Bybee v. Oper der Standt Bonn*,
899 F. Supp. 1217 (S.D.N.Y. 1995)...............................................................16, 17, 18

*Carvel v. Ross*,
2011 WL 856283 (S.D.N.Y. Feb. 16, 2011), *report and recommendation
adopted*, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011); ........................................7, 13

*China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*,
882 F. Supp. 2d 579 (S.D.N.Y. 2012).....................................................................10

*CVS Pharmacy, Inc. v. Press Am., Inc.*,
2018 WL 318479 (S.D.N.Y. Jan. 3, 2018) .............................................................20

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
2017 WL 476720 (S.D.N.Y. Feb. 2, 2017)..............................................................11

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010).....................................................................................8

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010).....................................................................12

*Durosene v. Bank of Am., N.A.*,
2020 WL 3403083 (E.D.N.Y. June 19, 2020) ........................................................20

*Eades v. Kennedy, PC Law Offs.*,
799 F.3d 161 (2d Cir. 2015).....................................................................................8

*Fashion Television LLC v. APT Satellite Co. Ltd.*,
  2018 WL 4300526 (S.D.N.Y. Sept. 10, 2018) .......................................................................11

*Fernando v. Fernando*,
  2010 WL 3119729 (E.D.N.Y. Aug. 5, 2010) .........................................................................12

*Hong Leong Fin. Ltd.* (*Singapore*) *v. Pinnacle Performance Ltd.*,
  297 F.R.D. 69 (S.D.N.Y. 2013) ............................................................................................13

*Ibrahim v. Pena*,
  2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017) .........................................................................7

*Ibrani v. Mabetex Project Eng'g*,
  2002 WL 1226848 (N.D. Cal. May 31, 2002) .......................................................................10

*ICBC Standard Sec., Inc. v. Luzuriaga*,
  217 F. Supp. 3d 733 (S.D.N.Y. 2016) .............................................................................18, 19

*Jackson v. Wells Fargo N.A.*,
  2020 WL 7327582 (S.D. Tex. Dec. 11, 2020) ......................................................................20

*Joslyn v. Armstrong*,
  2001 WL 1464780 (D. Conn. May 16, 2001) ..................................................................10, 11

*Lear v. Royal Caribbean Cruises Ltd.*,
  2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) ......................................................12

*MacDermid Printing Sols., LLC v. Chemence, Inc.*,
  2006 WL 8447788 (D. Conn. July 28, 2006) ........................................................................10

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) .................................................................................................12

*Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  709 F. Supp. 1279 (S.D.N.Y. 1989) .....................................................................................11

*In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*,
  580 B.R. 64 (Bankr. S.D.N.Y. 2018) ....................................................................................23

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
  667 F. Supp. 2d 369 (S.D.N.Y. 2009) ..................................................................................12

*Nexpoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*,
  620 F. Supp. 3d 36 (S.D.N.Y. 2022) (Woods, J.) ...................................................................6

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005) .................................................................................................16

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
   544 F. Supp. 3d 405 (S.D.N.Y. 2021) (Woods, J.) ..........................................19, 22

*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*,
   2013 WL 6503525 (S.D.N.Y. Dec. 9, 2013) ...........................................................9

*Román y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*,
   2015 WL 5786460 (S.D.N.Y. Sept. 29, 2015)........................................................19

*Rudersdal v. Harris*,
   2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020) (Woods, J.) .....................................8

*Rynasko v. N.Y. Univ.*,
   63 F.4th 186 (2d Cir. 2023) ..................................................................................20

*Seldon v. Magedson*,
   2012 WL 4475020 (S.D.N.Y. Sept. 28, 2012)........................................................10

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
   421 F. Supp. 2d 741 (S.D.N.Y. 2006).................................................15, 16, 17, 18

*Tagger v. Strauss Grp. Ltd.*,
   951 F.3d 124 (2d Cir. 2020)...................................................................................13

*Tasini v. N.Y. Times Co., Inc.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002)..............................................................13, 14

*Taylor v. Foremost Lloyds of Tex.*,
   2013 WL 856265 (Tex. App. Mar. 7, 2013) ..........................................................20

*Thackurdeen v. Duke Univ.*,
   130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016)............7, 8, 9, 10

*Torres v. Gristede's Operating Corp.*,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008)....................................................................15

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*,
   749 F. Supp. 1243 (S.D.N.Y. 1990), *aff'd*, 17 F.3d 38 (2d Cir. 1994) ...................20

**Other Authorities**

CPLR § 301.....................................................................................................................8

CPLR § 302.................................................................................................................8, 10

Fed. R. Civ. P. 12 .................................................................................................. *passim*

Highland CLO Funding, Ltd. ("HCLOF") submits this memorandum of law in support of its motion to dismiss the First Amended Counterclaims against it (the "Counterclaims") filed by CLO HoldCo, Ltd. ("CLOH") and Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF," and together with CLOH, the "CLOH Parties"), ECF No. 155, pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (6) and the doctrines of international comity and *forum non conveniens*.

## PRELIMINARY STATEMENT

As explained in its pre-motion letter, there is no reason to drag HCLOF into this case. Plaintiffs U.S. Bank, National Association and Acis Capital Management, L.P. are the trustee and portfolio manager of certain collateralized loan obligations ("CLOs"). They filed this case to resolve the CLOH Parties' and NexPoint Diversified Real Estate Trust's threats and claims that Plaintiffs mismanaged the CLOs. The CLOH Parties' Counterclaims, by contrast, concern alleged mismanagement of HCLOF — a shareholder dispute that CLOH is already litigating against HCLOF in Guernsey and that belongs in Guernsey.

HCLOF is a Guernsey company with no contacts to New York. It merely holds notes issued by the CLOs and has never managed the CLOs. As a noteholder, HCLOF entered into two agreements with Plaintiffs: the first, in 2021, to liquidate the CLOs, and the second, in 2023, to obtain a partial release of the CLOs' funds which Plaintiffs reserved to defend against the CLOH Parties and NexPoint. The CLOH Parties are not parties to either agreement. Rather, CLOH is just a shareholder of HCLOF, and HCLOF has no relationship with DAF.

CLOH is already suing HCLOF in Guernsey. Counterclaims ¶¶ 1-2. It filed that action in March 2023, and trial is set for October. There, like here, CLOH is challenging HCLOF's decision to enter into the 2023 agreement and is claiming that HCLOF unfairly prejudiced CLOH, as its shareholder, by not doing enough to obtain the release of the CLOs' reserves.

Here, instead of unfair prejudice, the CLOH Parties ground the Counterclaims in HCLOF's shareholder agreement (the "Members Agreement"). *Id.* ¶¶ 78-83.

To be sure, "mismanagement" of HCLOF is a shareholder dispute between CLOH and HCLOF; it has nothing to do with Plaintiffs' alleged mismanagement of the CLOs. Insofar as the CLOH Parties believe HCLOF has been mismanaged, they should take that up in Guernsey — where HCLOF is based and where CLOH is already suing HCLOF — not here. There is no reason to duplicate or interfere with that action in this Court.

This Court should therefore dismiss the Counterclaims for at least four independent reasons. *First*, the Court lacks personal jurisdiction over HCLOF as explained above, and the fact that HCLOF intervened in other (dismissed) cases or is a party to contracts not involving the CLOH Parties does not change that conclusion. *Second*, the Court also lacks subject matter jurisdiction over the Counterclaims against HCLOF. The Counterclaims concern private contracts, not any federal question, and the CLOH Parties and HCLOF are non-diverse, foreign entities. There is also no basis for the Court to exercise supplemental jurisdiction over the Counterclaims because the alleged mismanagement of the CLOs at issue in Plaintiffs' complaint is factually and legally distinct from the alleged mismanagement of HCLOF at issue in the Counterclaims. *Third*, as CLOH is already suing HCLOF in Guernsey for the latter, Guernsey is decidedly the proper forum for the Counterclaims.

*Fourth*, the Counterclaims fail as a matter of law. As non-parties to either the 2021 or the 2023 agreements between HCLOF and Plaintiffs, the CLOH Parties cannot declare those agreements void. The CLOH Parties also fail to state a claim for breach of the good faith provision in the Members Agreement, which is governed by Guernsey law. HCLOF is not required to subordinate its interests to those of minority shareholders like CLOH, and the CLOH

2

Parties fail to allege that HCLOF's actions were not to *HCLOF's* benefit.  That is dispositive.

Accordingly, the Court should dismiss the Counterclaims against HCLOF with prejudice.

## RELEVANT FACTS

This case stems from three CLOs managed by Plaintiffs U.S. Bank, as trustee and Acis, as portfolio manager.  Amended Complaint, ECF No. 15 ("Complaint") ¶¶ 1-8.  Plaintiff Joshua Terry is Acis's general partner, and Counterclaim Defendant Brigade Capital Management is Acis's sub-advisor for the CLOs.  *Id.* ¶ 16; Counterclaims ¶ 11.  Although liquidation of the CLOs commenced in 2021, it has not been completed because U.S. Bank and Acis reserved over $40 million of the CLOs' funds to defend themselves against actual and threatened litigation claims by the CLOH Parties and NexPoint regarding Plaintiffs' alleged "mismanagement" of the CLOs.  Compl.  ¶¶ 56-74; *see also* DAF and CLOH's 2nd Am. Ans., ECF No. 155 ("DAF Defendants admit that DAF filed the 2019 Lawsuit against U.S. Bank alleging mismanagement of the ACIS CLOs by ACM.").  U.S. Bank and Acis filed this case to resolve those claims and threats.  ECF No. 155-4 (the "2023 Forbearance Agreement"), at 1-2.

This motion seeks dismissal of the CLOH Parties' Counterclaims against HCLOF, which are distinct from, and unrelated to, the CLOH Parties' dispute with Plaintiffs.

### A.    HCLOF

HCLOF is an investment company located and registered in Guernsey.  Counterclaims ¶ 13.  It conducts business in Guernsey, is regulated by the Guernsey Financial Services Commission, and its directors are based in Guernsey and Jersey (a sister island to Guernsey).

CLOH is a 49% shareholder of HCLOF.  Counterclaims ¶ 20.  As CLOH is well-aware, HCLOF has no contacts to New York; it conducts no business here and has no other connections to this state.  The Counterclaims allege no facts to the contrary.

**B.      HCLOF's 2021 And 2023 Agreements With Acis And U.S. Bank**

HCLOF is an investor in the CLOs.  Counterclaims ¶ 21.  It holds 100% of the remaining notes in two of the CLOs, and 87% of the remaining notes in the third CLO.  *Id.*  As the majority investor of the remaining notes, HCLOF directed the liquidation of the CLOs in May 2021 and has sought to obtain the release of the reserves taken by U.S. Bank and Acis.  2023 Forbearance Agreement at 1.

### 1.      The 2021 Settlement Agreement With Acis And Terry

In April 2021, HCLOF entered into an agreement with Acis and Terry with respect to the CLOs (the "2021 Settlement Agreement").  ECF No. 155-3.  The 2021 Settlement Agreement resolved certain lawsuits and disputes between HCLOF and Acis to pave the way for the liquidation of the CLOs and distribution of their funds to HCLOF, among other things.  *Id.* ¶¶ 4-5, 7-8, 10.  The CLOH Parties are not parties to or third-party beneficiaries of the 2021 Settlement Agreement.

### 2.      The 2023 Forbearance Agreement With Acis And U.S. Bank

As noted, although HCLOF directed the liquidation of the CLOs in May 2021, the redemption was not completed because U.S. Bank and Acis reserved the CLOs' funds to defend against the claims asserted by the CLOH Parties and NexPoint.  Counterclaims ¶ 35.  As a result, in February 2023, HCLOF entered into an agreement with Acis and U.S. Bank.  *See* 2023 Forbearance Agreement.

In the 2023 Forbearance Agreement, HCLOF agreed to forbear on certain of its rights during the pendency of this case and NexPoint's various cases against Acis and U.S. Bank.  *Id.* at 6-8, ¶ 4.  In exchange, Acis and U.S. Bank agreed to release to HCLOF $16.5 million (or approximately 40%) of the CLOs' funds they had reserved.  *Id.* at 5, ¶ 1(a), (c), (e).  The CLOH Parties are not parties to nor third-party beneficiaries of the 2023 Forbearance Agreement.

### C.   HCLOF's Members Agreement

HCLOF and its shareholders entered into the Members Agreement in 2017.  ECF No.

155-2 at 1 (the "Members Agreement").  Dondero signed the Members Agreement on HCM's

behalf.  *Id.* at 26.

The Members Agreement is a shareholder agreement.  Counterclaims ¶ 22.  It is governed

by Guernsey law and has a non-exclusive Guernsey jurisdiction provision:

> This Agreement shall be governed by and construed in accordance with the laws of
> the Island of Guernsey and each of the Parties submits to the non-exclusive
> jurisdiction of the Royal Courts of the Island of Guernsey.

Members Agreement § 22.  Among other things, the Members Agreement requires all the

shareholders and HCLOF to deal with each other in good faith:

> Each Party shall at all times act in good faith towards the other Parties and shall use
> all reasonable endeavors to ensure that this Agreement is observed.

*Id.* § 20.5.  This is the provision raised by the Counterclaims.

### D.   CLOH's Guernsey Action Against HCLOF

On September 9, 2022, CLOH filed a motion in the Texas bankruptcy court presiding

over the HCM bankruptcy for leave to sue HCLOF in Guernsey.  *See* Motion for Leave to File

Proceeding, *In re Highland Cap. Mgmt.*, No. 19-34054, ECF No. 3507 (Bankr. N.D. Tex. Sept. 9,

2022).  CLOH filed suit against HCLOF in Guernsey in March 2023 (the "Guernsey Action").

ECF No. 155-1 (the "Guernsey Application").

In the Guernsey Action, CLOH takes issue with "the management of [HCLOF] in a

manner which has caused ongoing unfair prejudice to [CLOH] in its capacity as minority

shareholder in [HCLOF]."  *Id.* ¶ 8; *see also* Counterclaims ¶ 2 ("The Guernsey Proceedings

involve, in part, allegations relating to the mismanagement of HCLOF in a manner which has

caused unfair prejudice to CLOH.").  In essence, CLOH challenges HCLOF's handling of the

reserves taken by U.S. Bank and Acis, and seeks a proportional distribution of the CLOs' notes held by HCLOF so that CLOH can sue U.S. Bank and Acis for those reserves directly. Guernsey Application at 3; Counterclaims ¶ 2. The Guernsey Action also takes issue with the 2023 Forbearance Agreement. Counterclaims ¶¶ 71-77. The Guernsey Action is ongoing, and trial is scheduled for October 2023.

### E. Procedural History

Plaintiffs filed this case in December 2021. ECF No. 1. In a letter filed in March 2022, the CLOH Parties addressed certain issues affecting subordinated holders. ECF No. 23. In response, HCLOF sent a letter, through counsel, later that month to the Court clarifying its position. ECF No. 36. The letter unequivocally stated that HCLOF was "not appearing as a party in this case." *Id.* at 2.

Around the same time, NexPoint sued Acis, U.S. Bank, Brigade, and Terry for alleged mismanagement of the CLOs. *See Nexpoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 620 F. Supp. 3d 36, 42 (S.D.N.Y. 2022) (Woods, J.). HCLOF intervened in that case and joined the motions to dismiss filed by defendants. *Id.* at 42. This Court dismissed NexPoint's federal claims based on the Investment Advisers Act and declined to exercise supplemental jurisdiction over its state claims. *Id.* at 51. NexPoint appealed the Court's dismissal of its Investment Advisers Act claim, and the appeal is pending in the Second Circuit. *See NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, No. 22-1912 (2d Cir. 2022).

NexPoint re-filed its state law claims in New York State court. *See* Original Complaint, *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, No. 653654/2022, NYSCEF No. 1 (Sup. Ct., N.Y. Cnty. Oct. 4, 2022). HCLOF also intervened and joined the motions to dismiss in that case. *See id.*, NYSCEF No. 18. Before the motions to dismiss were resolved, NexPoint re-filed its claims in this case, and the parties agreed to dismiss its state lawsuit. *See id.*, NYSCEF

No. 148.

After the Court denied their motion to dismiss in this case, the CLOH Parties filed their answer on March 9, 2023.  ECF No. 73.  Three weeks later, on March 30, they filed an amended answer and added counterclaims against HCLOF and Brigade.  ECF Nos. 77, 79.  The CLOH Parties' initial counterclaims accused HCLOF of breaching a non-existent fiduciary duty and sought a declaration voiding the 2021 Settlement Agreement.  ECF No. 77 ¶¶ 38-56.

The CLOH Parties amended their counterclaims on July 8, 2023.  *See* Counterclaims. They withdrew the specious fiduciary duty claim and instead now claim that HCLOF violated the Members Agreement.  *Id*. ¶¶ 78-83.  They still seek a declaration to void the 2021 Settlement Agreement and have added another claim for a declaration to void the 2023 Forbearance Agreement.  *Id.* ¶¶ 66-77.

The Court granted HCLOF leave to file this motion and stayed discovery against HCLOF in the meantime.  ECF Nos. 167, 172.  This motion timely follows.

## <u>ARGUMENT</u>

The Counterclaims should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6).  The burden of proving jurisdiction falls on the CLOH Parties.  *Carvel v. Ross*, 2011 WL 856283, at *7 (S.D.N.Y. Feb. 16, 2011), *report and recommendation adopted*, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).  They cannot meet that burden by mere speculation, legal conclusion, or outright falsehood.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Ibrahim v. Pena*, 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017) ("Factual allegations must be enough to raise a right to relief above the speculative level and courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (citations and

alterations omitted).  In deciding whether they met their burden, the Court may consider "the facts alleged in the complaint," "documents incorporated by reference," and documents "'integral' to the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  As shown below, the CLOH Parties do not and cannot establish jurisdiction, and their claims fail as a matter of law.

## I.      The Court Lacks Personal Jurisdiction Over HCLOF

This case should be dismissed under Rule 12(b)(2) because this Court has no personal jurisdiction over HCLOF.  As noted above, the CLOH Parties bear the burden of proving personal jurisdiction.  *See Rudersdal v. Harris*, 2020 WL 5836517, at *4 (S.D.N.Y. Sept. 30, 2020) (Woods, J.) (Plaintiff "must make a prima facie showing that jurisdiction exists" over the defendant) (quoting *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 167-68 (2d Cir. 2015)).  Yet, they provide nothing beyond vague, conclusory allegations, even though CLOH is no stranger to HCLOF.

Under well-established precedent, this Court looks to New York State law for the personal jurisdiction analysis.  *See Thackurdeen*, 130 F. Supp. 3d at 798-809.  The CLOH Parties must establish jurisdiction by showing either: (1) general jurisdiction over HCLOF under N.Y. CPLR § 301; or (2) specific jurisdiction over HCLOF under N.Y. CPLR § 302.  *Id.*  They fail to do either, and it is not even close.

### A.      There Is No General Jurisdiction Over HCLOF

Under N.Y. CPLR § 301, a court only has general jurisdiction over a defendant corporation that is "essentially at home" in New York.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[T]he general jurisdiction inquiry . . . [is] whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum.") (citations omitted); *see also Thackurdeen*, 130 F. Supp. 3d at

798-99 (same).  A defendant corporation is "at home" where it is incorporated or where it maintains its principal place of business.  *Thackurdeen*, 130 F. Supp. 3d at 799.  A non-resident defendant is not "at home" in a forum merely by engaging in "minimal and sporadic contact with the state."  *Id.* at 800.

HCLOF is "at home" in Guernsey, not New York.  As the CLOH Parties recognize, it is a Guernsey company, incorporated in Guernsey, with a principal place of business in Guernsey.  Counterclaims ¶ 13.  Accordingly, there can be no general jurisdiction over HCLOF in New York.

The CLOH Parties cannot and do not establish otherwise.  They allege, in conclusory fashion, that HCLOF "availed itself of the benefits of doing business with the State of New York, has requisite minimum contacts with the State of New York and [its conduct] is related to or otherwise gives rise to the claims asserted against HCLOF in this Counterclaim."  *Id.* ¶ 16.  This vague allegation is well short of the specificity required to establish general jurisdiction.  *See Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, 2013 WL 6503525, at *5 (S.D.N.Y. Dec. 9, 2013) (court lacked jurisdiction where plaintiff failed to provide "concrete facts supporting" its allegations that defendants "transacted business" and "engaged in purposeful activities" in New York); *Thackurdeen*, 130 F. Supp. 3d at 798 ("The Court does not . . . draw 'argumentative inferences' in plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation.").

### B.     There Is Also No Specific Jurisdiction Over HCLOF

Personal jurisdiction exists over non-residents, only where, unlike here, the claims arise from the non-residents' actions in New York: (1) transacting business or contracting to supply goods or services in New York; (2) committing a tortious act within New York; (3) regularly soliciting business or engaging in persistent conduct or deriving substantial revenue from goods

or services in New York; or (4) owning, using, or possessing any real property in New York. *See* N.Y. CPLR § 302(a); *Thackurdeen*, 130 F. Supp. 3d at 801; *Seldon v. Magedson*, 2012 WL 4475020, at *3 (S.D.N.Y. Sept. 28, 2012) (discussing specific jurisdiction criteria under CPLR § 302(a)). Here, however, the alleged mismanagement of HCLOF does not fall within any of these categories, and certainly did not take place in New York.

The Counterclaims concern HCLOF's decision to enter into the 2021 Settlement Agreement and the 2023 Forbearance Agreement, as well as its alleged violation of the Members Agreement. Since the CLOH Parties concede that HCLOF is based in Guernsey, the CLOH Parties' causes of actions necessarily arise in Guernsey. This alone should foreclose the inquiry.

None of the CLOH Parties' efforts to establish specific jurisdiction have merit. In their Counterclaims and during the August 3, 2023 conference before this Court, the CLOH Parties suggested that HCLOF's intervention in *other* New York lawsuits (none of which involve the CLOH Parties and all of which have been dismissed) somehow establishes specific jurisdiction over HCLOF in *this* case. *See* Counterclaims ¶ 13. This argument fails as a matter of law. *See China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 592, 601-02 (S.D.N.Y. 2012) ("There is no persuasive authority for the distinct proposition . . . that the filing of a lawsuit in the same forum in which a party is defending another suit in and of itself waives any objection to personal jurisdiction in the first suit" and filing of separate lawsuit was "not the type of 'quality' contacts sufficient individually to establish personal jurisdiction."); *MacDermid Printing Sols., LLC v. Chemence, Inc.*, 2006 WL 8447788, at *4 (D. Conn. July 28, 2006) ("[P]rior lawsuits do not furnish a basis for long arm jurisdiction."); *Ibrani v. Mabetex Project Eng'g*, 2002 WL 1226848, at *8 (N.D. Cal. May 31, 2002) (defendant did not waive personal jurisdiction defense because of prior related lawsuit); *Joslyn v. Armstrong*, 2001 WL 1464780, at

*2 (D. Conn. May 16, 2001) ("[T]he defendant's consent to jurisdiction in the other cases" could not be considered in resolving issue of jurisdiction in present matter).

The CLOH Parties also claim that specific jurisdiction exists because HCLOF sent a letter to the Court in this case.  ECF No. 170 (the "CLOH Pre-Motion Letter"), at 2.  This argument also fails.  HCLOF filed an initial letter in March 2022 explicitly stating that HCLOF "is not appearing as a party."  ECF No. 36, at 2.  HCLOF also made clear in its subsequent letter to the Court on June 6, 2023, opposing the CLOH Parties' request for international discovery that HCLOF "has not yet joined issue in this case and will move to dismiss the claims against it on various grounds, including lack of personal jurisdiction."  ECF No. 126, at 1.  It is settled law that objections to personal jurisdiction are preserved and not waived where, as here, a party makes that clear in an appearance before the Court.  *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 709 F. Supp. 1279, 1282-84 (S.D.N.Y. 1989) (defendant's limited participation, including filing of limited and special notice of appearance for purpose of challenging venue and jurisdiction, did not result in waiver of personal jurisdiction defense).

The CLOH Parties further claim that jurisdiction exists because HCLOF participated in negotiations of at least one of the 2021 or 2023 Agreements "within the State of New York," and agreed to a New York jurisdiction provision in that Agreement.  Counterclaims ¶ 16.  That is also insufficient as a matter of law.  The CLOH Parties are not parties to either the 2021 or the 2023 Agreement and thus have no right to rely on HCLOF's actions or agreements with respect to either one.  *See Fashion Television LLC v. APT Satellite Co. Ltd*., 2018 WL 4300526, at *3 (S.D.N.Y. Sept. 10, 2018) (no personal jurisdiction over defendant where plaintiff was not party to the contract); *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp*., 2017 WL 476720, at *5 (S.D.N.Y. Feb. 2, 2017) (no personal jurisdiction over defendant because plaintiff was not a

third-party beneficiary of contract).

The CLOH Parties also claim in their pre-motion letter that HCLOF relied on New York counsel to negotiate the 2023 Forbearance Agreement.  CLOH Pre-Motion Letter, at 2.  As shown above, that makes no difference because that Agreement did not involve the CLOH Parties.  Moreover, involvement of New York counsel does not create the necessary nexus for personal jurisdiction where there is otherwise none.  *See Lear v. Royal Caribbean Cruises Ltd.*, 2021 WL 1299489, at *7 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) (New York courts "generally loath" finding jurisdiction where contracts are "negotiated solely by mail, telephone, [or] fax without any New York presence by the defendant.") (citations omitted); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (no personal jurisdiction existed because defendant's negotiations were limited to calls, faxes, and correspondence with "a center of gravity well outside" of New York) (citations omitted); *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 377 (S.D.N.Y. 2009) (finding that regular communication to New York by telephone, email and mail, single meeting in New York, and New York choice of law provision was not sufficient to subject foreign defendant to personal jurisdiction); *Fernando v. Fernando*, 2010 WL 3119729, at *7-8 (E.D.N.Y. Aug. 5, 2010) (rejecting plaintiff's allegation that defendant's calls, money transfers, and document deliveries to New York established personal jurisdiction).

Accordingly, the CLOH Parties fail to — and cannot — establish that this Court has personal jurisdiction over HCLOF.

## II.     The Court Also Lacks Subject Matter Jurisdiction Over the Counterclaims

The Court should also dismiss the Counterclaims for lack of subject matter jurisdiction under Rule 12(b)(1).  As with personal jurisdiction, the burden to establish subject matter jurisdiction also lies with the CLOH Parties.  *See Makarova v. United States*, 201 F.3d 110, 113

(2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). And as with personal jurisdiction, the CLOH Parties also fail to meet that burden.

Dismissal under Rule 12(b)(1) is proper where, as here, there is no diversity or federal question jurisdiction and no basis to exercise supplemental jurisdiction. *Carvel*, 2011 WL 856283, at *7 ("Rule 12(b) (1) of the Federal Rules of Civil Procedure requires that a claim be dismissed for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'"). As a threshold matter, there is no independent subject matter jurisdiction over the Counterclaims against HCLOF.

There is no diversity: HCLOF is a Guernsey entity and the CLOH Parties are Cayman entities; they are both aliens. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) (Federal courts "do not have diversity jurisdiction over lawsuits between two foreign parties."); *Hong Leong Fin. Ltd.* (*Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 73 (S.D.N.Y. 2013) ("[T]he Second Circuit has held that diversity is absent where there are foreign parties on both sides of the case.").

There is no federal question. The Counterclaims concern three contracts subject to state or foreign law. The 2021 Settlement Agreement is subject to Texas law, the 2023 Forbearance Agreement is subject to New York law, and the Members Agreement is subject to Guernsey law. There is no federal question implicated by the CLOH Parties' attempted enforcement of those Agreements. *See Tasini v. N.Y. Times Co., Inc.*, 184 F. Supp. 2d 350, 358-59 (S.D.N.Y. 2002) (declaratory judgment claim that contract was unenforceable under federal law did not result in federal question jurisdiction because "the complaint, on its face, [did] not request a remedy expressly granted" by federal law); *Hong Leong Fin.*, 297 F.R.D. at 74 (court lacked federal

13

question jurisdiction because the plaintiff failed to state a cause of action under the Lanham Act). The mere reference to federal statutes, like the Investment Advisers Act or the Declaratory Judgment Act, does not raise a federal question.[1]  *Tasini*, 184 F. Supp. 2d at 358 (merely mentioning a federal statute will not guarantee federal question jurisdiction).

So the only way for this Court to have subject matter jurisdiction over the Counterclaims against HCLOF is through the exercise of supplemental jurisdiction.  But there is no basis to do so.  To exercise supplemental jurisdiction over state claims, the claims must have a "'nucleus of operative fact' common to the jurisdiction-conferring claim" and be of such a nature that the claimant "would ordinarily be expected to try them all in one judicial proceeding."  *Burgess v. Omar*, 345 F. Supp. 2d 369, 371 (S.D.N.Y. 2004) (citations omitted).  It is clear from the face of the Counterclaims that no such nucleus exists here.

As noted above, Plaintiffs' complaint concerns alleged "mismanagement" of the CLOs. Compl. ¶ 1.  By contrast, the Counterclaims concern mismanagement of *HCLOF*.  *See e.g.*, Counterclaims ¶¶ 3-7.  No matter how the CLOH Parties twist and turn the facts, there is simply no relevant factual or legal overlap between the two.  The alleged mismanagement of the CLOs concerns various trades and other actions undertaken by Acis, U.S. Bank, Brigade, and Terry with respect to the CLOs' collateral.  *See, e.g.*, Compl. ¶¶ 28-47.  By contrast, mismanagement of HCLOF concerns decisions made by HCLOF's board of directors.  The former is a noteholder

---

[1]  There is also no subject matter jurisdiction over the Counterclaims against HCLOF pursuant to the Edge Act, contrary to the CLOH Parties' claim.  CLOH Pre-Motion Letter, at 2 n.1.  Neither HCLOF nor the CLOH Parties are federally chartered corporations, and none of the Agreements at issue in the Counterclaims are offshore banking or financial transactions contemplated by the Edge Act.  *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013) (finding that grant of federal jurisdiction and removability under Edge Act did not apply because the relevant transaction did not arise out of offshore banking or a financial transaction of a federally chartered corporation).

dispute related to the *CLOs* under New York law; the latter is a shareholder dispute related to *HCLOF* under Guernsey law.

The mere fact that HCLOF holds notes in the CLOs and entered into agreements with Acis and U.S. Bank to facilitate the liquidation of the CLOs and release the reserves does not create the necessary factual nucleus for supplemental jurisdiction. *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (Defendant "fail[ed] to make a showing sufficient to ground its counterclaims within the Court's supplemental jurisdiction" because the "sole fact connecting Plaintiffs' federal overtime claims and [Defendant's] state law counterclaims" was that the parties' claims "both arise out of Individual Plaintiffs' employment [with Defendant]"); *accord Burgess*, 345 F. Supp. 2d at 372 (supplemental jurisdiction was improper because the "focus of [the] counterclaims [was] entirely different" from the claim asserted in the complaint). There is thus no basis for subject matter jurisdiction over the Counterclaims, neither directly nor through supplemental jurisdiction.

### III. Dismissal Is Also Proper Under The Doctrines of *Forum Non Conveniens* and International Comity

Dismissal is also proper on two other procedural grounds because the Counterclaims are largely duplicative of CLOH's Guernsey Action and should be litigated in Guernsey.

#### A. *Forum Non Conveniens* Requires Dismissal

The Court should dismiss the Counterclaim on *forum non conveniens* grounds because Guernsey is plainly the proper forum for any shareholder dispute between CLOH and HCLOF. Courts apply a three-pronged approach to determine whether dismissal is proper on *forum non conveniens* grounds: (1) the "degree of deference" for plaintiff's forum choice; (2) whether defendant's proposed forum is adequate to adjudicate the parties' dispute; and (3) which forum is favored by the balance of private and public interest factors. *Strategic Value Master Fund, Ltd.*

*v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 753 (S.D.N.Y. 2006) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).  All three prongs favor dismissal here.

*First*, New York should not be afforded any degree of deference because the CLOH Parties are Cayman entities who could (and should) have sued HCLOF in Guernsey.  *See Strategic Value Master Fund, Ltd.*, 421 F. Supp. 2d at 754-55 (finding that first factor weighed in favor of dismissal despite plaintiff's choice of forum because "a lesser degree of deference is afforded a foreign plaintiff who brings suit in a United States forum."); *Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83, 86 (2d Cir. 2007) (no deference for plaintiffs' choice of forum when connections to the United States alleged by plaintiffs were "insubstantial in light of the fact that the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil"); *Bybee v. Oper der Standt Bonn*, 899 F. Supp. 1217, 1224 (S.D.N.Y. 1995) (plaintiff's choice of forum was not dipositive when plaintiff entered into a contract with a German agency to perform in Germany).

If anything, the CLOH Parties are forum shopping to avoid scrutiny of their claims under Guernsey law, which imposes cost-shifting on losing litigants.  Decl. of Alasdair Davidson ("Davidson Decl.") ¶¶ 31 & 36-38; *see also Strategic Value Master Fund*, 421 F. Supp. 2d at 755 ("[W]here it appears that a plaintiff has chosen a U.S. forum because of forum-shopping reasons, less deference will be afforded plaintiff's choice and, consequently, the greater the likelihood of dismissal.  Such forum shopping reasons include attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . [and] inconvenience and expense to the defendant resulting from litigation in that forum.") (citations omitted).

*Second*, as is clear from the fact that CLOH is already suing HCLOF in Guernsey,

Guernsey is plainly an adequate and suitable forum. *See Acosta*, 219 F. App'x at 86 ("An alternative forum is generally adequate and available when defendants are amenable to jurisdiction in that forum, unless 'the remedy offered by the other forum is clearly unsatisfactory.'") (citations omitted); *see Strategic Value Master Fund*, 421 F. Supp. 2d at 762 ("Defendant has adequately demonstrated that England is a suitable alternative forum" because defendant voluntarily submitted to jurisdiction of English courts and "plaintiffs, Bermudan and Cayman Islands corporations, can properly invoke the jurisdiction of an English court to determine this breach of contract action."); *Bybee*, 899 F. Supp. at 1223 ("[B]urden of showing a suitable alternative forum is satisfied" because "no claim [has been] made that Germany lacks jurisdiction to hear this case.").

And *third*, the private and public interest factors weigh in favor of Guernsey.  HCLOF's witnesses and documents are based in Guernsey.  *See Strategic Value Master Fund*, 421 F. Supp. 2d at 757 (The private interest factors, which concern the convenience of the litigants to proceed in the chosen forum, include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.") (citations omitted); *Acosta*, 219 F. App'x at 87 ("'[N]early all of the relevant non-party witnesses' are in Argentina and Uruguay, and [] the inconvenience of transporting witnesses and translating documents from Spanish to English weighed in favor of dismissal."); *Bybee*, 899 F. Supp. at 1223 (finding that private interest factors weigh heavily in favor of conducting trial in Germany because "[t]he need to apply foreign law is a factor that weighs in favor of dismissal" and that "the contract at issue is written in German, provides for payment in deutsche marks, and

17

defendants and certain other witnesses may require interpreters.").

And Guernsey plainly has a vested interest in its courts resolving questions of Guernsey law affecting Guernsey companies like HCLOF. *Strategic Value Master Fund*, 421 F. Supp. 2d at 770-71 (public interest factors weighed in favor of dismissal because England had a stronger interest and effects of disputed contract were felt in England despite the contract being entered into in New York); *Acosta*, 219 F. App'x at 87 (public interest weighed in favor of resolving case in Uruguay because resolution of the case "'require[d] extensive applications of both Uruguayan and Argentine law,' and that the interest of the United States pales compared to the 'immense interest' of Uruguay"); *Bybee*, 899 F. Supp. at 1224 (Germany had a far greater interest in the litigation under the public interest factor because "[n]ot only does the subject matter involve a German language contract requiring performance in Germany and payment in German currency, but it also involves an allegation against a significant cultural institution in which Germany has a substantial interest.").

Put simply, Guernsey is plainly the more appropriate and convenient forum than New York for the CLOH Parties' Counterclaims against HCLOF.

## B.     International Comity Requires Dismissal

International comity also requires dismissal. This doctrine "counsels that absent exceptional circumstances, a federal court in the exercise of its discretion should decline to assert jurisdiction and defer to the corresponding interests and laws of foreign tribunal adjudicating related disputes in proceedings involving the same parties over which they have proper jurisdiction." *ICBC Standard Sec., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733, 741 (S.D.N.Y. 2016) (citations omitted). This is plainly the case here.

As the CLOH Parties concede, the Guernsey Action is related and involves the same parties. It involves the same parties (CLOH and HCLOF) and largely the same alleged

"mismanagement" of HCLOF.  *See* Counterclaims ¶ 2.  The main difference is that the Guernsey

Action sounds in unfair prejudice whereas the Counterclaims sound in the Members Agreement.

But this is a distinction without a difference because the underlying allegations are virtually the

same, and the Members Agreement is subject to Guernsey law and has a Guernsey jurisdiction

provision (albeit non-exclusive).  *See* Members Agreement § 22.  This means that CLOH easily

could, and of course should, litigate all of its claims against HCLOF in Guernsey.

There is thus no reason for this Court to wade into the CLOH Parties' beef with HCLOF

and every reason to dismiss this case on international comity grounds in favor of the Guernsey

Action.  *See Luzuriaga*, 217 F. Supp. 3d at 741 (abstaining jurisdiction in part based on the

doctrine of international comity because of existing and related litigation in Argentina); *Román y*

*Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*, 2015 WL 5786460, at *21-23 (S.D.N.Y. Sept. 29,

2015) (considerations of judicial economy, fairness and comity were compelling reasons to

decline supplemental jurisdiction when parties were already involved in ongoing litigation in

Mexico).

## IV.     The Counterclaims Are Also Substantively Meritless

In addition to being procedurally deficient, the Counterclaims against HCLOF also fail to

state a claim for relief and must be dismissed under Rule 12(b)(6).  Rule 12(b)(6) requires

dismissal if a complaint fails to "state a claim upon which relief can be granted."  *Off. Sol. Grp.,*

*LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 411 (S.D.N.Y. 2021) (Woods, J.).

Only the CLOH Parties' "well-pleaded" factual allegations need be accepted as true.  *See id.*

("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.") (quoting *Iqbal*, 556 U.S. at 678).

A.    **As Non-Parties, The CLOH Parties Cannot Enforce, Let Alone Void, The 2021 Settlement Agreement Or The 2023 Forbearance Agreement**

It is undisputed that the CLOH Parties are neither parties to nor third-party beneficiaries of the 2021 Settlement Agreement or the 2023 Forbearance Agreement.  *See* ECF Nos. 155-3, 155-4.  And it is axiomatic both in Texas (which governs the 2021 Settlement Agreement) and New York (which governs the 2023 Forbearance Agreement) that a non-party to a contract who is not a third-party beneficiary cannot challenge the contract.  *See Rynasko v. N.Y. Univ.*, 63 F.4th 186, 194-95 (2d Cir. 2023) (finding that plaintiff lacked standing to pursue breach of contract claim because she was not an intended third-party beneficiary to the contract and thus did not suffer a cognizable injury in fact); *CVS Pharmacy, Inc. v. Press Am., Inc.*, 2018 WL 318479, at *5 (S.D.N.Y. Jan. 3, 2018) ("'A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question.'") (citations omitted); *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V*., 749 F. Supp. 1243, 1250 (S.D.N.Y. 1990), *aff'd*, 17 F.3d 38 (2d Cir. 1994) ("Where parties to a contract are satisfied with their bargain, a third party 'may not challenge the contract's validity on the basis of alleged insufficient consideration.'") (citations omitted).  *Accord Jackson v. Wells Fargo N.A*., 2020 WL 7327582, at *5 (S.D. Tex. Dec. 11, 2020) ("Non-parties to a contract generally do not have standing to challenge the contract."); *Taylor v. Foremost Lloyds of Tex.*, 2013 WL 856265, at *2 (Tex. App. Mar. 7, 2013) (affirming summary judgment decision that appellant lacked "standing to challenge the enforceability of the insurance policy because she is a stranger to the contract").[2]

---

[2]  The CLOH Parties cannot be third-party beneficiaries because neither agreement provides for let alone "clearly evidence[s] an intent to permit" them to enforce it.  *Rynasko*, 63 F.4th at 194; *see also Durosene v. Bank of Am., N.A.*, 2020 WL 3403083, at *3 (E.D.N.Y. June 19, 2020) ("[U]nder New York law in order to recover as a third-party beneficiary of a contract, a

Accordingly, the CLOH Parties' first and second causes of action, seeking to declare the 2021 Settlement Agreement and the 2023 Forbearance Agreement unenforceable, fail as a matter of law and should be dismissed.

### B.    The CLOH Parties Fail To Plead A Breach Of The Members Agreement

The CLOH Parties' third cause of action, for purported breach of the Members Agreement, also fails.  As shown, the Members Agreement is governed by Guernsey law. Members Agreement § 22.  The CLOH Parties claim that by entering into the 2021 Settlement Agreement and the 2023 Forbearance Agreement, HCLOF failed to treat CLOH in good faith, as purportedly required by the Members Agreement.  *See* Counterclaims ¶¶ 78-80.  These allegations, however, are insufficient under Guernsey law.

As a threshold matter, violations of express good faith provisions such as this one must be pled with particularity and interpreted in the context of the actual agreement.  Davidson Decl. ¶¶ 16 & 26.  The CLOH Parties' claim falls short of this requirement for several reasons.  *First*, the good faith provision the CLOH Parties reference in the Members Agreement concerns acts by one party (to the Agreement) "towards the other Parties."  Members Agreement § 20.5.[3]  Nothing in that provision or anywhere in the Members Agreement suggests that it overrides or limits HCLOF's ability to contract with third parties.  That makes sense, as the Members Agreement is an agreement between HCLOF and its shareholders, and while it gives the shareholders voting rights over certain of HCLOF's actions, HCLOF's ability to contract with third parties is not subject to those voting rights.  *See id.* § 3.

---

claimant must establish that the parties to the contract intended to confer a benefit on the third party.") (citations omitted).

   [3]  The Members Agreement has a similar provision requiring that "[a]ll transactions entered into between any Party and the Company shall be conducted in good faith and on the basis set out or referred to in this Agreement . . . ."  Members Agreement § 20.4.

Grasping for straws, the CLOH Parties cite an entirely separate provision of the Members Agreement that concerns HCLOF's ability to contract with third parties in the context of liquidation. Counterclaims ¶ 80 (citing Section 14.4 of the Members Agreement). But that provision only proves the point. When the parties wanted to regulate HCLOF's ability to enter new contracts, they knew exactly how to do so. *See* Members Agreement § 14.4. They did not do so in the good faith provision, however, which is instead limited to inter-party acts between HCLOF and the other parties to the Members Agreement (*i.e.*, the shareholders). *See* Members Agreement § 20.5. The CLOH Parties cannot use the good faith provision to add in new obligations not otherwise provided for in the Members Agreement.[4] Davidson Decl. ¶ 35.

*Second*, nothing in the Members Agreement, let alone the provisions cited by the CLOH Parties, suggests that HCLOF must subordinate its own interests to those of minority shareholders, like CLOH, when contracting with third parties (or doing anything else for that matter). The CLOH Parties base their allegations on how HCLOF's actions impacted CLOH. *See e.g.*, Counterclaims ¶ 81. But it is a matter of Guernsey law and, respectfully, common sense that HCLOF can (and is duty-bound) to maximize its own interests and the interests of all its shareholders, not just CLOH. Davidson Decl. ¶¶ 33-35.

This is reflected in the second part of the good faith provision. It provides that HCLOF and its shareholders need to use "reasonable endeavours to ensure that this Agreement is observed." Members Agreement § 20.5. In other words, the good faith duty is qualified. It

---

[4] To be sure, the CLOH Parties do not plead a breach of Section 14.4, and with good reason: HCLOF is not in liquidation, and it was not in liquidation when it entered into the 2021 and the 2023 Agreements. Decl. of Richard Michael Boleat ("Boleat Decl.") ¶¶ 2-4. This is reflected in the public record in Guernsey, Davidson Decl. ¶ 40; Boleat Decl. ¶ 4. The Court can consider these facts because they are a matter of public record. *See Office Sol. Grp., LLC*, 544 F. Supp. at 412 ("[W]hen considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of . . . relevant matters of public record.") (citations omitted).

would be *unreasonable* to require HCLOF to subordinate its own interests and the interests of all shareholders to those of a single shareholder.  *See* Appendix 2 of Davidson Decl., A-123, at A-188, *Faulkner v Vollin Holdings Limited (In re Compound Photonics Grp. Ltd.)* [2022] EWCA Civ 1371 ¶ 277 (Eng.) (good faith provision in shareholders' agreement did not require "regard to the interests of the Minorities in some undefined way over and above any requirements that would be imposed upon shareholders to have regard to the interests of the Company . . . as a matter of general company law.").

Critically, the CLOH Parties fail to plead that any of HCLOF's actions were not a benefit to HCLOF.  Nor can they.  HCLOF sought to liquidate the CLOs and obtain a distribution of their funds, but it has no control over U.S. Bank's and Acis's decision to take the reserves.  That decision was driven by the CLOH Parties' and NexPoint's threats and claims, not anything that HCLOF did.  *See* Compl. ¶ 20.  In fact, HCLOF managed to secure the release of a large part of the reserves without incurring the costs of litigation *despite* the CLOH Parties' and NexPoint's claims and threats.  *See* 2023 Forbearance Agreement at 4-6.  That was plainly a benefit to HCLOF and its shareholders, and the CLOH Parties fail to allege otherwise.

As such, the CLOH Parties do not and cannot credibly allege that HCLOF acted in bad faith under the Members Agreement in connection with the 2021 Settlement Agreement or the 2023 Forbearance Agreement, or the reserves in general.  Accordingly, their third cause of action against HCLOF, for breach of the good faith provision in the Members Agreement, should also be dismissed.[5]

---

[5]  At minimum, to avoid duplication and avoid wading into the province of the Guernsey court, the Court should stay the Counterclaims against HCLOF pending the resolution of CLOH's Guernsey Action.  *In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. 64, 103 (Bankr. S.D.N.Y. 2018) (staying matter until the dispute was resolved in Anguilla).

## **CONCLUSION**

For all these reasons, HCLOF respectfully requests that the Court grant HCLOF's motion to dismiss and dismiss all of the Counterclaims against HCLOF with prejudice and issue such other and further relief that the Court deems just and proper.

Dated: August 15, 2023
New York, New York

Respectfully Submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  ___/s/ *Uri A. Itkin*_____
    Uri A. Itkin
    Shanna L. Miles
    Michael Chen

One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

*Attorneys for Highland CLO Funding, Ltd.*