

OFFSHORE. GUERNSEY. LAW.

**Babbé**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**Case No. 1:21-cv-11059-GHW**

BETWEEN

**U.S. BANK NATIONAL ASSOCIATION in its capacity as Trustee**
**JOSHUA N. TERRY**
**ACIS CAPITAL MANAGEMENT L.P.**

<u>Plaintiffs</u>

**-and-**

**THE CHARITABLE DONOR ADVISED FUND L.P.**
**CLO HOLDCO LIMITED**
**NEXPOINT DIVERSIFIED REAL ESTATE TRUST**

<u>Defendants</u>

---

**SECOND DECLARATION OF TODD WILLIAM MCGUFFIN**

---

1. **Qualifications**

1.1.  I am an Advocate of the Royal Court of Guernsey and am qualified to practice and appear before all the courts of the Bailiwick of Guernsey including the Guernsey Court of Appeal and before the Judicial Committee of the Privy Council.

1.2.  I am a Partner and the Head of the Disputes & Risk team of the Guernsey law firm, Babbé LLP. I was firstly admitted as a Solicitor of the Supreme Court of New South Wales in May 2003 and as a Solicitor of the High Court of Australia in January 2004.  Subsequently, I was admitted as a Solicitor of the Supreme Court of England and Wales in November 2007 and was called to the Guernsey Bar in January 2013. I was admitted as a solicitor of the High Court of Ireland in 2018.

1.3.  As stated in my previous Declaration dated 15 May 2023 (the **First Declaration**, Dkt. 111), I hold various undergraduate and post-graduate legal qualifications, including a Certificat d'Etudes Juridiques Françaises et Normandes and a Master of Laws with a specialization in Equity and Trusts (with Merit). I have been practicing law in Guernsey since October 2008, primarily focused on commercial litigation involving investment funds, trusts, financial services regulation, and insolvency. I have extensive experience appearing before the Royal Court of Guernsey in complex high-value proceedings, including trials with Jurats acting as a professional jury, and have also represented clients before the Guernsey Court of Appeal. Moreover, I have provided expert opinions on aspects of Guernsey law in foreign proceedings before the Supreme Court of Queensland (Australia) and the United States Bankruptcy Court (Northern District of Texas, Dallas Division), and have undergone thorough deposition and cross-examination. Further details can be found in Appendix 1, which includes my Curriculum Vitae.

1.4.  True and correct copies of any authorities cited in this Declaration that were not previously cited in my First Declaration are attached as Appendix 2, marked "List of Authorities."  Each such authority (i.e. rule, statute or judgment) is separated by a numbered tab for each exhibit, shown as [**Exhibit reference**].  Authorities cited in this Declaration that were previously cited in my First Declaration are identified by their docket number.

2. **Instructions**

2.1.  On 18 July 2023 I was instructed by Quinn Emanuel Urquhart & Sullivan, LLP to provide a further opinion on aspects of Guernsey law with respect to proceedings before the United States District Court for the Southern District of New York, titled *U.S. Bank National Association, in its capacity as Trustee, et al v. The Charitable Donor Advised Fund, L.P., et al*, Case No. 1:21-cv-11059-GHW (the Proceedings), which were set out in my First Declaration.

2.2.  Specifically, I have since been instructed to provide a further opinion on the following further questions:

2.2.1.   Question 1: Are the DAF Parties' claims against the Plaintiffs derivative claims as a matter of Guernsey law?

2.2.2.  Question 2: Under what circumstances would a Guernsey court grant a shareholder permission to commence the claims identified in question 1 if they are derivative?

2.2.3.  Question 3: What obligations does Section 20.5 of the Members Agreement impose on HCLOF, and what conduct is required to establish a breach of those obligations?

2.2.4.  Question 4: What protections does Guernsey law provide to third parties who contract with a company against claims that the company entered into those contracts without capacity or authority?

2.3.  I note that, in questions 1 and 2 (paragraphs 2.2.1 and 2.2.2 above), I opine on whether or not the DAF Parties' claims for declaratory judgment, unjust enrichment, and tortious interference are derivative and the circumstances in which a Guernsey court would grant a shareholder permission to commence these claims, but do not opine on these claims' merits.

2.4.  In preparing my opinion I have had regard to the following documents:

2.4.1.  The Defendants', The Charitable Donor Advised Fund L.P., and CLO Holdco Ltd's Second Amended Answer and First Amended Counterclaim dated 8 July 2023 (**First Amended Counterclaim**);[1]

2.4.2.  The HCLOF Members Agreement Relating to the Company dated 15 November 2017 (the **Members Agreement**);[2] and

2.4.3.  The Defendants', The Charitable Donor Advised Fund L.P., and CLO Holdco Ltd's Letters dated 19 June 2023 and 29 June 2023 (the **Motion Letter**).[3]

## 3.  Question 1: Are the DAF Parties' claims against the Plaintiffs derivative claims as a matter of Guernsey law?

3.1.  As explained in paragraph 6.1 of My First Declaration, under Guernsey law, a company has its own legal personality, which is entirely separate from its members or shareholders, and as a consequence, when a wrong has been committed against the company, the proper claimant is the company itself. This is known as the rule in *Foss v Harbottle* and is also often referred to as the rule against reflective loss.[4] Under this rule, where the alleged wrong is a transaction which a simple majority of the members could make binding on the company and all its members, then no individual member can bring an action in respect of that matter because *"the majority [of members] rule."*[5]

3.2.  As summarized in paragraphs 6.1 to 6.4 of my First Declaration, the rule against reflective loss bars a claim by a shareholder for the recovery of a diminution in the value of his shareholding or in the distributions he received as a shareholder, which flowed from loss suffered by the company which the

---

[1] **[Dkt. 155]**
[2] **[Dkt. 155-2]**
[3] **[Dkts. 142, 153]**
[4] *Foss v Harbottle*, [1843] 2 Hare 461 **[Dkt. 111-20]**.
[5] *Edwards & Another v Halliwell & Others*, [1950] 2 All ER 1064 at page 1066 [Exhibit 1].

company had a cause of action to recover.  The rule bars such claims even if a defendant breached a duty to the shareholder as well as to the company.[6]

3.3.   In paragraphs 6.6 through 6.8 of my First Declaration, I explained that shareholders may only bring a derivative claim if they (1) demonstrate a *prima facie* case on one or more of their alleged claims, and (2) establish one or more exceptions to the rule against reflective loss. Together, these requirements impose a high hurdle. I discuss these requirements further in paragraphs 4.2 to 4.9 of this declaration.

Whether The DAF Parties' Claims Are Derivative

*Contract Invalidation Claims*

3.4.   In my opinion, the DAF Parties' first two claims for declaratory judgment are derivative because they seek to invalidate contracts between HCLOF and third parties to which the DAF Parties are not parties.

3.5.   The DAF Parties' first two claims for declaratory judgment seek to invalidate two contracts HCLOF made with third parties: (1) the 2021 Settlement Agreement between HCLOF, ACM, and Mr. Terry, and (2) the 2023 Settlement Agreement between HCLOF and all the Plaintiffs.[7]

3.6.   In my opinion, these claims are derivative.  Because these claims seek to invalidate contracts between HCLOF and third parties to which the DAF Parties are not parties, the DAF Parties would not have standing to bring these claims in their own right and could only bring them derivatively. The Royal Court of Guernsey has treated claims challenging transactions a company entered into with third parties as derivative.  For instance, in *Jackson v Dear*,[8] a company director brought a derivative action, on behalf of the company, against the other directors of the company to recover profits they had obtained from a transaction by the company in which they allegedly had a conflict of interest and had acted negligently. The Court proceeded on the basis that a derivative action was the appropriate way to proceed, and its analysis focused on the availability of derivative claims in Guernsey law, and whether or not the plaintiff satisfied one of the exceptions to the rule in *Foss v Harbottle*.[9] In my opinion this is entirely logical, considering that the plaintiff was not a party to the said transactions and would not have standing in his own right to challenge those transactions.

*Unjust Enrichment Claim*

3.7.   In my opinion, the DAF Parties' unjust enrichment claim is also derivative because the DAF Parties appear to allege that Plaintiffs have been unjustly enriched at the expense of HCLOF.

3.8.   In paragraphs 94 to 98 of the First Amended Counterclaim, the DAF Parties allege that the Plaintiffs have been enriched at CLOH's expense by reserving funds and using them for the Plaintiffs' costs and

---

[6] See *Pilatus (PTC) Limited v RBC Trustees (Guernsey) Limited,* [2021] GLR 153 [**Dkt. 111-9**], in which the Royal Court confirmed that the rule against reflective loss is part of Guernsey law.

[7] [**Dkt. 155**] ¶¶ 66-77.

[8] *Jackson v Dear,* [2013] GLR 167 [**Dkt. 111-7**].

[9] The claim ultimately failed as the plaintiff was unable to show that he had a *prima facie* case, either in relation to the alleged wrongs themselves (i.e. breach of duty) or the requirements of bringing a derivate claim (i.e. the "fraud on the minority" exception to the rule in *Foss v Harbottle*).

expenses of litigation. Based on my understanding of the First Amended Counterclaim there does not appear to be any contract or direct relationship between the Plaintiffs and CLOH.

3.9.   It appears to me that it is the company (HCLOF) at whose expense the Plaintiffs have allegedly been unjustly enriched. From my understanding of the First Amended Counterclaim, it appears that the DAF Parties allege the Plaintiffs were unjustly enriched by reserving funds to cover their litigation costs and expenses, which funds the DAF Parties allege should have been distributed by the Plaintiffs to HCLOF and then by HCLOF to its members, including CLOH.

3.10.  In my opinion, the unjust enrichment claim is derivative because the DAF Parties appear to allege that the Plaintiffs have been unjustly enriched at HCLOF's expense. The DAF Parties would not have standing to bring such a claim in their own right. As discussed in my First Declaration, the United Kingdom Supreme Court held in *Marex* that if the shareholder's loss is the consequence of loss sustained by the company it is only the company that has a cause of action in respect of its loss. Indeed, *Marex* held that if a shareholder suffers *"loss … in the form of a diminution in … distributions"* from the company that is the consequence of loss sustained by the company, then only the company has a cause of action.[10]

*Tortious Interference with Contract Claim*

3.11.  In my opinion, assuming that the DAF Parties' tortious interference claim only seeks to recover damages on behalf of the company (HCLOF) which allegedly gave rise to a reduction in distributions by HCLOF to CLOH, such claim would be of a derivative nature.

3.12.  The DAF Parties allege in the First Amended Counterclaim that the Plaintiffs knowingly and intentionally induced HCLOF to breach the Members Agreement, and specifically its duty of good faith clause, Section 20.5.[11] Both CLOH and HCLOF are parties to the Members Agreement.

3.13.  In these circumstances, CLOH's tortious interference claim against the Plaintiffs[12] appears to be an independent cause of action.

3.14.  However, as I mentioned in my First Declaration, the rule against reflective loss will apply even if a defendant breached a duty to the shareholder as well as the company—i.e. even if the shareholder has an independent cause of action—if the shareholder has not suffered a separate and distinct loss.[13]  As the Court explained in *Marex*, shareholders cannot "*bring a personal action for … distributions which a shareholder might have received from the company if it had not sustained the loss*" because this would improperly *"circumvent"* the rule in *Foss v. Harbottle* and *"compromise"* the company's control over its own cause of action.[14]  Rather, as the English Court of Appeal held in *Burnford v. Automobile Association Developments Ltd.*, a shareholder who has an independent cause of action against the defendant "*must also have suffered 'separate and distinct loss*, *and the law does not regard a reduction*

---

[10]  *Marex Financial Limited v Sevilleja* [2020] UKSC 31 ¶ 79 [**Dkt. 111-21**].
[11]  [**Dkt. 155**] page 45, ¶ 85-87.
[12]  [**Dkt. 15**] page 18.
[13]  First Declaration ¶ 6.4.
[14]  *Marex Financial Limited v Sevilleja* [2020] UKSC 31 ¶ 82 [**Dkt. 111-21**].

*in … distributions which is a knock-on effect of loss suffered by the company as 'separate and distinct.'"*[15]  This rule applies even where a shareholder alleges that its independent contractual rights have been interfered with.  For instance, in *Marex*, the court commented that a shareholder could not "*circumvent the rule in Foss v. Harbottle*" by suing to recover damages for "*a fall in the value of its shares resulting from a breach of obligations owed to the company*," even though that breach "*also involved a breach of contractual obligations owed to [the shareholder]*."[16]

3.15.  It appears that the DAF Parties will likely allege that their damages for the tortious interference claim include reduced distributions by HCLOF to CLOH, which distributions were allegedly reduced because the Plaintiffs reserved funds which the DAF Parties allege the Plaintiffs should have distributed to HCLOF.[17]  For instance, the DAF Parties allege as part of the tortious interference claim that HCLOF breached the Members Agreement by *"effectuating the wrongful withholding of millions of dollars to which [the Plaintiffs] were not entitled"* and *"delay[ing] the distribution of funds,"* and that this interference caused *"substantial damages."*[18]

3.16.  Accordingly, if the tortious interference claim only seeks to recover damages for the reduction in distributions by HCLOF to CLOH, then the tortious interference claim is likely subject to the rule against reflective loss and is derivative because the "*reduction in distributions … is a knock-on effect of loss [allegedly] suffered by the company*," HCLOF, due to the Plaintiffs' alleged reserving of funds.[19]  Accordingly, it would be for HCLOF's *"management [to] deal with [HCLOF's] claim"* to the funds allegedly reserved by the Plaintiffs *"in the way [management] considered appropriate,"*[20] unless the DAF Parties could meet the high hurdle Guernsey law imposes to bring a derivative claim.

## 4.   Question 2: Under what circumstances would a Guernsey court grant a shareholder permission to commence the claims identified in question 1 if they are derivative?

The test under Guernsey law for when a court would grant leave to pursue derivative claims.

4.1.  At paragraphs 6.7 to 6.10 of my First Declaration, I explained that Guernsey law takes a restrictive approach to shareholder derivative actions and imposes a high hurdle on shareholders seeking to bring them.

4.2.  In *Jackson v Dear*,[21] the Royal Court adopted a restrictive approach akin to the English common law prior to the enactment of the statutory regime introduced by the *Companies Act 2006 (England and Wales)*. To commence or otherwise maintain a derivative action the applicant shareholder must firstly establish a *prima facie* case on all or any of the alleged claims.[22]  This requirement establishes a

---

[15] *Lucy Burnford, Oliver Astley, Giles Fitzpatrick, Michael Symons, Kevin Gaskell v Automobile Association Developments Limited*, [2022] EWCA Civ 1943 at ¶ 30 [Exhibit 2].
[16] *Marex Financial Limited v Sevilleja* [2020] UKSC 31 ¶ 53 [**Dkt. 111-21**].
[17] [**Dkt. 155**] page 47, ¶ 92: The First Amended Counterclaim indicates that damages for the tortious interference claim will be determined at trial.
[18]   [**Dkt. 155**] pages 46-47, ¶¶ 90-92.
[19] *Lucy Burnford, Oliver Astley, Giles Fitzpatrick, Michael Symons, Kevin Gaskell v Automobile Association Developments Limited*, [2022] EWCA Civ 1943 at ¶ 30 [Exhibit 2].
[20] *Marex Financial Limited v Sevilleja* [2020] UKSC 31 ¶ 37 [**Dkt. 111-21**].
[21] *Jackson v Dear,* [2013] GLR 167 [**Dkt. 111-7**].
[22] *Jackson v Dear,* [2013] GLR 167 ¶ 21 [**Dkt. 111-7**].

significant hurdle because, as I explained in paragraphs 6.8 to 6.10 of my First Declaration, the right to bring a derivative action is regarded as an exceptional right.

4.3.   Secondly, the applicant shareholder must demonstrate the existence of one or more established exceptions to the rule in *Foss v Harbottle*. These exceptions are:

4.3.1.   When the act in question violates the shareholders' rights as prescribed in the company's constitution (i.e., the articles and memorandum of association);

4.3.2.   When the action amounts to a fraud on the minority shareholders, and the wrongdoers themselves control the company;

4.3.3.   When the act could only have been validly undertaken through a special resolution or similar mechanism that requires the concurrence of a greater majority; and

4.3.4.   When the act is ultra vires the company's objects are illegal and, consequently, cannot be ratified by the members.

<u>Fraud on the minority exception</u>

4.4.   As stated in my First Declaration, the Plaintiff must show a *prima facie* case of both wrongdoer control and fraud to meet the *"fraud on the minority"* exception.[23]

*Control*

4.5.   The first element, control, requires that "*the alleged wrongdoers are in control of the company, so that the company, which is the 'proper plaintiff,' cannot claim by itself*,"[24] because the alleged wrongdoers are "*in a position to prevent the company from pursuing the claim against them*."[25]  In *Cinematic Finance Ltd v Ryder*,[26] the English High Court emphasized that the control element is a "*long standing and fundamental principle*."[27]

4.6.   The DAF Parties allege in their First Amended Counterclaim that Highland Capital Management, L.P. (**HCM**) is using HCLOF as a "*piggybank*", effectively "*exercising this leverage*" over HCLOF by controlling HCLOF's current directors on the basis that HCLOF's directors' compensation is controlled by HCM.[28]

4.7.   However, I am not aware of any case law which has indicated that a party can establish the control element by alleging that a majority shareholder controlled the director's compensation, especially in the absence of any allegations that such compensation was excessive or improper.

---

[23] First Declaration ¶ 6.10.
[24] *Jackson v Dear*, [2013] GLR 167 ¶ 8 [**Dkt. 111-7**].
[25] *Renova v Gilbertson*, [2009] CILR 268, 276 [**Dkt. 111-23**] (cited in *Jackson v Dear* ¶ 21 [**Dkt. 111-7**]).
[26] *Cinematic Finance Ltd v Ryder*, [2012] B.C.C. 797 [Exhibit 3].
[27] *Cinematic Finance Ltd v Ryder*, [2012] B.C.C. 797 ¶ 11 [Exhibit 3].
[28] [**Dkt. 155**], page 18, ¶ 4.

4.8.   Rather, to establish control, the claimant would need to show that the directors of one company have assumed a role in the second company sufficient to impose fiduciary duties owed to that company on him/her.  In *Secretary of State for Trade and Industry v Tjolle*,[29] Jacob J noted that the test for determining whether a director of a company controls another company is whether *"this individual [was] part of the corporate governing structure?"*[30]  Jacob J emphasized that *"There would be no justification for the law making a person liable to misfeasance or disqualification proceedings unless they were truly in a position to exercise the powers and discharge the functions of a director. Otherwise they would be made liable for events over which they had no real control, either in fact or law."* [31]

*Fraud*

4.9.   The second element, fraud, requires those in control to have "*improperly benefit[ted] themselves at the expense of the company,*"[32] including by "*deliberate[ly] misappropriat[ing] company assets.*"[33]  Actions that are a good faith "*misuse of powers or an incidental profit making*" do not amount to fraud.[34]  Courts have thus dismissed derivative claims when parties fail to establish that directors *"benefitted personally from the alleged breaches of duty."*[35]

4.10.  As I noted above, the DAF Parties allege in their First Amended Counterclaim that HCM is using HCLOF as a *"piggybank"*, effectively *"exercising this leverage"* over HCLOF and controlling HCLOF's current directors by controlling their compensation.[36]  The DAF Parties do not appear to allege that the compensation that HCLOF's directors received was excessive.

4.11.  However, I am not aware of any Guernsey case law which has indicated that the fraud element can be satisfied by directors receiving remuneration that is not excessive.  Rather, Guernsey law sets a high threshold to establish fraud, and *"incidental profit making"* alone, such as directors' receipt of normal compensation, does not, in my opinion, meet that threshold.[37]

5.   **Question 3: What obligations does section 20.5 of the HCLOF Members agreement impose on HCLOF and what conduct is required to establish a breach of these obligations?**

5.1.   Section 20.5 of the Members Agreement states that *"Each Party shall at all times act in good faith towards the other Parties and shall use all reasonable endeavours to ensure that this Agreement is observed."*[38]

5.2.   English jurisprudence has established principles for interpreting good faith clauses similar to Section 20.5 of the Members Agreement, which principles Guernsey courts would consider persuasive and be likely to follow.  I discuss these principles below.

---

[29] *Secretary of State for Trade and Industry v Tjolle & Ors,* [1998] B.C.C. 282 [Exhibit 4].
[30] *Secretary of State for Trade and Industry v Tjolle & Ors,* [1998] B.C.C. 282, 290 [Exhibit 4].
[31] *Secretary of State for Trade and Industry v Tjolle & Ors,* [1998] B.C.C. 282, 290 [Exhibit 4].
[32] *Harris v. Microfusion, 2003-2 LLP,* [2017] C.P. Rep. 15 [Exhibit 5].
[33] *Jackson v Dear,* [2013] GLR 167 ¶ 8 [**Dkt. 111-7**].
[34] *Jackson v Dear,* [2013] GLR 167 ¶ 8 [**Dkt. 111-7**].
[35] *Abouraya v Sigmund,* [2014] EWHC 277 (Ch) ¶ 57 [Exhibit 6].
[36] [**Dkt. 155**] page 18, ¶ 4.
[37] *Jackson v Dear,* [2013] GLR 167 ¶ 8 [**Dkt. 111-7**].
[38] [**Dkt. 155-2**] Section 20.5

Conduct required to establish a breach of duty of good faith.

5.3.   It is well settled in English law that bad faith actions are generally required to establish a breach of a contractual obligation of good faith. For example, in *Soteria Insurance Ltd v IBM,*[39] the English Court of Appeal held that *"unless the contracting party has acted in bad faith, it is difficult to see how he can be in breach of an obligation of good faith."*[40]

5.4.   As the English Court of Appeal noted in *Faulkner & Ors v Vollin Holdings Ltd & Ors*[41], a good faith clause prohibits two forms of bad faith: (1) dishonesty, and (2) other bad faith conduct that reasonable and honest people would regard as commercially unacceptable.[42]

5.5.   The first category of bad faith, dishonesty, is a subjective test.  As the English Court of Appeal confirmed in *Re Coroin*, this category "*involves an obligation to act honestly in a subjective sense.*"[43]

5.6.   The second category of bad faith, commercially unacceptable conduct, imposes stringent standards.  In *Soteria*, the English Court of Appeal cites the Supreme Court case of *Times Travel (UK) Limited and another v. Pakistan International Airline Corporation*,[44] where, according to the Supreme Court, a "*bad faith demand"* extends beyond mere commercial self-interest; it involves conduct that must be deemed "'*reprehensible' or 'unconscionable' or 'using illegitimate means.'*"[45]

5.7.   In *Faulkner*, the English Court of Appeal confirmed that a contractual good faith clause may codify good faith duties that general company law already imposes, but generally does not impose additional obligations "*over and above any requirements that would be imposed … to have regard to the interests of the Company … as a matter of general company law.*"[46] Thus, a good faith clause may codify directors' existing obligations to act in what they honestly consider to be the best interests of the company.  In *Carlyle Capital Corporation Limited v. Conway and Others*,[47] the Royal Court confirmed that this duty of good faith is subjective,[48] and, citing English authority, is "*a duty to the company to act in what he honestly considers to be in the interests of the company.*"[49] The Royal Court recognised the "*supremacy of the directors' own bona fide decisions*,"[50] and held that the Court will not interfere, or second guess, a decision of the directors which was made properly and in good faith because it is the "*directors, not the court, to whom the management of the company is entrusted.*"[51]  The Court in *Carlyle*

---

[39] *Soteria Insurance Limited (formerly Cis General Insurance Limited) v IBM United Kingdom Limited*, [2022] EWCA Civ 440 [Exhibit 7].
[40] *Soteria Insurance Limited (formerly Cis General Insurance Limited) v IBM United Kingdom Limited*, [2022] EWCA Civ 440 ¶ 121 [Exhibit 7].
[41] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 [Exhibit 8].
[42] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶¶ 275-276 [Exhibit 8].
[43] *Re Coroin Ltd,* [2013] EWCA Civ 781 ¶ 49 [Exhibit 9].
[44] *Pakistan International Airline Corporation v Times Travel (UK) Ltd,* [2021] UKSC 40 [Exhibit 10].
[45] *Pakistan International Airline Corporation v Times Travel (UK) Ltd,* [2021] UKSC 40 ¶ 133 [Exhibit 10].
[46]  *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 277; see also ¶¶ 200-201 [Exhibit 8].
[47] *Carlyle Capital Corporation Limited (in liquidation) v Conway & Ors,* [2017] unreported [**Dkt. 111-6**].
[48] *Carlyle Capital Corporation Limited (in liquidation) v Conway & Ors,* [2017] ¶ 374 unreported [**Dkt. 111-6**].
[49] *Madoff Securities International Limited (in liquidation) v Raven,* [2014] Lloyd's Rep F C 95 ¶ 188 [Exhibit 11].
[50] *Carlyle Capital Corporation Limited (in liquidation) v Conway & Ors,* [2017] ¶ 376 unreported [**Dkt. 111-6**].
[51] *Carlyle Capital Corporation Limited (in liquidation) v Conway & Ors,* [2017] ¶ 376 unreported [**Dkt. 111-6**].

further stated that "*a management or governance decision of a director, honestly and responsibly made, amounts to due performance of that director's duty of good faith.*"[52]

Express terms to act in good faith.

5.8.   Several recent English cases have shed light on how the court will interpret a duty of good faith clause in a contract.

5.9.   First, in *Faulkner & Ors v. Vollin Holdings Ltd & Ors*,[53] the Court of Appeal rejected the trial court's broader interpretation of a good faith clause in a shareholders' agreement. The Court of Appeal specifically rejected the notion *that "minimum standards"* could be copied and pasted throughout a contract.[54] Rather, the Court of Appeal held that the good faith clause requires the parties not to act dishonestly and, depending on the context, not to act in a manner that is commercially unacceptable to reasonable and honest people. The Court of Appeal confirmed that good faith clauses do not automatically import additional obligations, and that such obligations must be "*derived… from the other terms of the contract in issue*".[55] The court thus expressed "*considerable reservations*" that the good faith clause imposed "*a duty of fidelity to the bargain.*"[56]

5.10.   In *Faulkner*, the Court of Appeal also ruled that the good faith clause neither imposed a "*procedural duty of fair and open dealing*" with minority stakeholders "*going beyond the terms of*" company legislation, nor "*required* [the majority] *to have regard to the interests of the Minorities in some undefined way over and above any requirements … to have regard to the interests of the Company*" imposed by "*general company law.*"[57]   The court reasoned that the minority shareholders could have negotiated express protections concerning information and consent rights and that, because of "*[t]he absence of such an express provision*" in a "*comprehensive and professionally drafted document*," the good faith clause could not import these protections.[58]

5.11.   *Faulkner* shows that the courts generally do not interpret an express duty of good faith broadly, unless the context indicates that was intended. *Faulkner* further confirms that a good faith clause generally does not impose obligations to deal fairly and openly with and have regard to the interests of minority stakeholders or to grant them consent rights over major company decisions over and above any requirements imposed by statute or common law if the contract's express terms do not impose these obligations.[59]

---

[52] *Carlyle Capital Corporation Limited (in liquidation) v Conway & Ors,* [2017] ¶ 378 unreported [**Dkt. 111-6**].
[53] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 [Exhibit 8].
[54] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 213 [Exhibit 8].
[55] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 243 [Exhibit 8].
[56] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 277 [Exhibit 8].
[57] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 277 [Exhibit 8].
[58] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 255 [Exhibit 8].
[59] *Mark Faulkner, Johnathan Sachs, the Minorities (As listed in Schedule 1 to the petition) v Vollin Holdings Limited, Minden Worldwide Limited, Aldon Investments Limited,* [2022] EWCA Civ 1371 ¶ 148 [Exhibit 8].

5.12. Second, in *Re Coroin*,[60] the English Court of Appeal held that a good faith clause in a shareholders' agreement did not *"impose a binding general obligation to act in a manner outside the terms of the shareholders' agreement."*  The Court rejected such a binding general obligation because there would be "*no benchmark against which the court could enforce [such an] obligation.*"[61]

5.13. Third, in *CPC Group Ltd v. Qatari Diar Real Estate Investment Company*,[62] the English High Court, citing *Overlook v. Foxtel*, confirmed that an express duty of good faith does not impose "*a duty to prefer the interests of the other contracting party*" or "*to subordinate the party's own interests.*"[63]  The court concluded that the defendant was "*permitted to consider its own commercial interests*" in performing its contractual obligations and ruled that the defendant had not breached the good faith clause.[64]

5.14. In light of the above authorities, I make the following points:

5.14.1. The express duty of good faith in Section 20.5 of the Members Agreement would impose obligations on HCLOF not to act in bad faith, meaning (1) not to act dishonestly, and (2) not to engage in conduct regarded as commercially unacceptable by reasonable and honest people.

5.14.2. Establishing a breach of the first category of bad faith requires proof that a party has acted with subjective dishonesty.

5.14.3. Establishing a breach of the second category of bad faith, the obligation not to engage in commercially unacceptable conduct, would likely require showing conduct that is reprehensible or unconscionable.  This is a high threshold because good faith clauses permit parties to act in their own commercial interests.

5.14.4. The express duty of good faith in Section 20.5 of the Members Agreement would not require HCLOF to subordinate its interests to those of CLOH or to act in a manner outside of the terms of the Members Agreement.  It is also unlikely that this clause would impose additional terms that the parties could have included as express terms but did not, such as information rights, consent rights over settlement agreements between HCLOF and third parties, and duties to have regard to the interests of CLOH as a minority member over and above those imposed by the Members Agreement's express terms and legislation.

6. **Question 4: What protections does Guernsey law provide to third parties who contract with a company against claims that the company entered into those contracts without capacity or authority?**

<u>Third parties protected by legislation: Section 113, 114 and 115 of the Companies Law</u>

6.1. Section 113 of the *Companies (Guernsey) Law, 2008* (the **Law**) provides that a company will have unlimited objects, unless the objects are specifically restricted by its memorandum. The objects

---

[60] *Re Coroin Ltd,* [2013] EWCA Civ 781 ¶ 51 [Exhibit 9].
[61] *Re Coroin Ltd,* [2013] EWCA Civ 781 ¶ 51 [Exhibit 9].
[62] *CPC Group Limited v Qatari Diar Real Estate Investment Company,* [2010] EWHC 1535 (Ch) [Exhibit 12].
[63] *Overlook v Foxtel,* [2002] NSWSC 17 ¶¶ 65-67 [Exhibit 13].
[64] *CPC Group Limited v Qatari Diar Real Estate Investment Company,* [2010] EWHC 1535 (Ch) ¶ 253 [Exhibit 12].

therefore have no bearing on what a company can do and as such, any limitations in the memorandum will not affect the company's capacity to enter transactions.

6.2. Pursuant to ss 115(1)(a) to (c) of the Law, directors have power to bind the company with third parties free of limitation from the company's memorandum, any resolution of the company, or any agreement between the company's members if third parties have acted in good faith.[65] The Law creates a presumption that third parties have acted in good faith, which the party seeking to prove bad faith must rebut.[66]

6.3. Guernsey law provides several protections that make it difficult to demonstrate bad faith on the part of the third party; these are outlined in section 115(2)(b) of the Law.

6.4. *First*, section 115(2)(b)(i), provides that third parties transacting with companies are entitled to assume that internal company regulations have been complied with. In English law this is known as the rule from *Royal British Bank v. Turquand*[67] or the 'internal management rule'. Third parties therefore have no positive obligation to enquire into the limitations on the directors' powers to bind the company.

6.5. *Second*, a third party's mere knowledge that an act is beyond the directors' powers is insufficient to demonstrate bad faith[68]. I have been unable to find any Guernsey authority which has considered what would be required to establish bad faith in the context of section 115 of the Law. However, in my opinion, the Royal Court would likely, consistent with *Faulkner*, require a showing that a third party had acted dishonestly or engaged in conduct that would be considered reprehensible or unconscionable.

---

[65] See also section 114 of the Law which provides that the validity of an act done by a company shall noy be called into question on the ground of lack of capacity by reason of anything contained in or omitted from; (a) the company's memorandum or articles; (b) any resolution of the company or; (c) any agreement between the company's members.
[66] Companies (Guernsey) Law, 2008 section 115(2)(b)(ii) [Exhibit 14].
[67] *Royal British Bank v Turquand,* [1856] [1843-60] All E.R. Rep 435 [Exhibit 15].
[68] Companies (Guernsey) Law, 2008 section 115(2)(b)(iii) [Exhibit 14].

I declare under penalty of perjury under the laws of the United States of America that the foregoing is my true and correct opinion.

**Advocate TW McGuffin**

**Babbé LLP**

**St Peter Port, Guernsey**

**August 15, 2023**

Appendix 1

**Curriculum Vitae**

<u>Qualifications & Admissions</u>

| | |
|---|---|
| 2000 | Awarded Diploma in Law, Legal Practitioners' Admission Board, Sydney |
| 2002 | Awarded Graduate Diploma in Legal Practice, College of Law, Sydney |
| 2003 | Admission as a Solicitor of the Supreme Court of New South Wales |
| 2004 | Admission as a Solicitor of the High Court of Australia |
| 2007 | Admission as a Solicitor to the Supreme Court of England and Wales |
| 2012 | Awarded *Certificat d'Etudes Juridiques Françaises et Normandes, l'université de Caen Normandie* |
| 2013 | Called to the Guernsey Bar |
| 2016 | Awarded Master of Laws (Equity and Trusts), University of London |
| 2018 | Admission as a Solicitor to the High Court of Ireland |

<u>Professional Employment Summary</u>

| | |
|---|---|
| Since 2008 | Babbé LLP, Guernsey, Channel Islands<br>Head of Dispute Resolution 2022<br>Partner 2016<br>Senior Associate 2008 |
| 2008 | Freshfields, London<br>EU and Competition Law Group (temp)<br>May to June |
| 2008 | Berwin Leighton Paisner (as it was then), London<br>EU and Competition Law Group (temp)<br>June to August |
| 2002 to 2007 | Swaab Attorneys, Sydney<br>Associate then Senior Associate<br>Commercial Litigation Team |
| 1996 to 2002 | Associate to Her Honour Judge HG Murrell SC<br>District Court of New South Wales<br>Drug Court of New South Wales (Senior Judge)<br>President, Administrative Decisions Tribunal of New South Wales (Equal Opportunity Division) (as it was then)<br>Land and Environment Court of New South Wales (Acting Justice) |

Appendix 2

**List of Authorities**

**Exhibit 1,** *Edwards and Another v Halliwell and Others* 1950 2 All ER 1064

**Exhibit 2,** *Burnford v Automobile Association Developments Ltd* [2022] EWCA Civ 1943

**Exhibit 3**, *Cinematic Finance Ltd v Ryder* [2012] B.C.C. 797

**Exhibit 4**, *Secretary of State for Trade and Industry v Tjolle & Ors* [1998] B.C.C 282

**Exhibit 5**, *Harris v Microfusion* 2003-2 LLP, [2017] C.P. Rep. 15

**Exhibit 6**, *Abouraya v Sigmund* [2015] B.C.C 503

**Exhibit 7**, *Soteria Insurance Ltd v IBM United Kingdom Ltd* EWCA Civ 440.

**Exhibit 8**, *(Faulkner) Compound Photonics Group Ltd Re* [2022] EWCA Civ 1371

**Exhibit 9**, *Re Coroin Ltd* [2014] B.C.C 14

**Exhibit 10**, *Pakistan International Airline Corporation and Times Travel (UK) Limited* [2021] UKSC 40

**Exhibit 11**, *Madoff Securities International Ltd (In Liquidation) v Raven* [2013] EHWC (Comm)

**Exhibit 12**, *CPC Group Ltd v Qatari Diar Real Estate Investment* Co [2010] EWHC 1535 (Ch)

**Exhibit 13**, *Overlook v Foxtel* [2002] NSWSC 17

**Exhibit 14**, *Companies (Guernsey) Law 2008*

**Exhibit 15**, *Royal British Bank v Turquand* [1843-60] All ER Rep 435