# EXHIBIT 1

### EDWARDS AND ANOTHER v. HALLIWELL AND OTHERS.

[COURT OF APPEAL (Sir Raymond Evershed, M.R., Asquith and Jenkins, L.JJ.), October 31, November 1, 2, 1950.]

*Trade Union—Action by member against union—Matter of substance, tinctured with oppression—Invasion of members' individual rights.*

Rule 19 of the rules of the defendant trade union provided: "The regular contributions of employed members shall be as per tables . . . and no alteration to same shall be made until a ballot vote of the members has been taken and a two-thirds majority obtained." In December, 1943, a delegate meeting of the union, without taking any ballot, passed a resolution increasing the amount of the contributions of employed members. The plaintiffs, two members of the union, claimed against two members of the executive committee of the union and the union itself a declaration that the alteration adopted at the delegate meeting was invalid.

HELD: (i) as the matter in question was not a mere irregularity in the internal management of the union, but was a matter of substance and tinctured with oppression, the court would grant the plaintiffs relief if it was proper to do so.

*Amalgamated Society of Engineers* v. *Jones* (1913) (29 T.L.R. 484), *distinguished.*

(ii) it was implicit in the rule in *Foss* v. *Harbottle* (1843) (2 Hare 461) that the matter relied on as constituting the cause of action should be a cause of action properly belonging to the general body of members of the association in question as opposed to a cause of action which some individual member could assert in his own right. In the present case, the personal and individual rights of membership of the plaintiffs had been invaded and particular damage inflicted by the invalid alteration of the tables of contributions, and in such circumstances the rule in *Foss* v. *Harbottle* had no application to individual members who were suing, not in the right of the union, but in their own right to protect from invasion their individual rights as members, and, therefore, the plaintiffs were entitled to their declaration.

*Pender* v. *Lushington* (1877) (6 Ch.D. 70), *applied.*

*Per* JENKINS, L.J.: The rule in *Foss* v. *Harbottle* does not prevent an individual member suing if the matter in respect of which he is suing can validly be done, not by a simple majority of the members of the association, but, as in the present case, only by some special majority: *Cotter* v. *National Union of Seamen* ([1929] 2 Ch. 58), *applied* . . . I cannot regard the paying by the majority of the members of the increased rates without demur as equivalent to a ballot vote at which a two-thirds majority was obtained in favour of the alteration.

[AS TO THE AMENDMENT OF THE RULES OF A TRADE UNION, see HALSBURY, Hailsham Edn., Vol. 32, p. 494, para. 787; and FOR CASES, see DIGEST, Vol. 43, p. 101, Nos. *1048-1052*, and Digest Supp.]

Cases referred to:
(1) *Foss* v. *Harbottle*, (1843), 2 Hare 461; 67 E.R. 189; 13 Digest 417, *1377*.
(2) *Amalgamated Society of Engineers* v. *Jones*, (1913), 29 T.L.R. 484; 43 Digest 101, *1050*.
(3) *Cotter* v. *National Union of Seamen*, [1929] 2 Ch. 58; 98 L.J.Ch. 323; 141 L.T. 178; Digest Supp.
(4) *Pender* v. *Lushington*, (1877), 6 Ch.D. 70; 46 L.J.Ch. 317; 9 Digest 572, *3800*.

APPEAL by the defendants from a judgment of VAISEY, J., dated July 28, 1950.
The plaintiffs, two members of the Cricklewood branch of the defendant union, claimed a declaration on behalf of themselves and all other members of the branch that the alteration of the general rules of the union adopted at

a delegate meeting in December, 1943, was invalid in so far as it purported to alter the amount of the regular contributions of employed members. The defendants were two members of the executive committee of the union sued as representatives of the committee and the union. VAISEY, J., granted the declaration. The facts appear in the judgment of ASQUITH, L.J.

*Pascoe Hayward*, K.C., and *Lindner* for the defendants.

*Milner Holland*, K.C., and *Hesketh* for the plaintiffs.

SIR RAYMOND EVERSHED, M.R.: I will ask ASQUITH, L.J., to deliver the first judgment.

ASQUITH, L.J.: This is an appeal by the defendants from a judgment of VAISEY, J., whereby he made a declaration asked for by the plaintiffs in terms to which I will refer. The plaintiffs sue on behalf of themselves and all other members of the Cricklewood branch of the National Union of Vehicle Builders, a registered trade union. The defendants are sued on behalf of themselves and all other members of the executive committee of the union, and the union itself is joined as a defendant.

The main point in the appeal is whether VAISEY, J., has rightly construed r. 19 of the rules of the union. The defendants contend that, even if he did rightly construe that provision, the plaintiffs are precluded, for other reasons, from obtaining the relief which they have been awarded. The only relevant part of r. 19 is the first five lines, which are:

" The regular contributions of employed members shall be as per tables (pp. 115 and 116) and no alteration to same shall be made until a ballot vote of the members has been taken and a two-thirds majority obtained."

In December, 1943, a delegate meeting was held at which the delegates, without any ballot, let alone a ballot resulting in a two-thirds majority, purported to increase the regular contributions of employed members and also certain benefits payable to the members. The plaintiffs contend that that alteration in the contributions is a nullity because the condition precedent to its validity laid down in r. 19 had not been satisfied. They refused to pay the amount of the increase, and were threatened or actually visited with loss of their rights as union members, including that of eligibility for election to certain offices. In the action they claimed:

" A declaration that the alteration of the general rules of the National Union of Vehicle Builders adopted at a delegate meeting in December, 1943, is invalid in so far as it purports to alter the regular contributions of employed members."

[HIS LORDSHIP considered the rules of the union; held that, on construction of them, the alteration in December, 1943, of the rates of contribution was invalid, and continued:] The other point relied on by the defendants was that, even if they were wrong on the point of construction, the court either could not, or should not, grant the plaintiffs the relief which they claim. Under this head counsel for the defendants relied on the alleged principle that, when an action is brought by an individual in respect of a mere irregularity in a matter that is *intra vires* a trade union and concerns its internal management, the court will not as a rule intervene. For this purpose he conceded that a " mere irregularity " meant something not involving fraud, oppression or unfairness. I confess I should have thought the action complained of here was strongly tinctured, not, indeed, with fraud, but with " oppression " and " unfairness." Here were men who had a right not to have their contributions increased except after a ballot resulting in a two-thirds majority. This right was clearly violated. An unauthorised increase was sought to be extorted, and when they refused to pay, as they were entitled to do, severe penalties were imposed or threatened. To call this a mere informality or irregularity without any element of oppres-

1066         [DECEMBER 2, 1950] ALL ENGLAND LAW REPORTS         [Vol. 2

sion or unfairness would be an abuse of language. When in circumstances such as I have described a remedy is sought by an individual, complaining of a particular act in breach of his rights and inflicting particular damage on him, it seems to me the principle of *Foss* v. *Harbottle* (1), which has been so strongly relied upon by the defendants, does not apply either by way of barring the remedy or supporting the objection that the action is wrongly constituted because the union is not a plaintiff. Nor, lastly, can I accept the submission that, if the action is maintainable at law, it should nevertheless be dismissed because the vast majority of members approved the action taken by the defendants. The answer to the defendants' argument under this head will, I hope, be presented more fully by my Lords who are much more familiar with this branch of the law than myself. I think the appeal should be dismissed.   A

**JENKINS, L.J.**, stated the facts and continued: I will pass to the argument based on the reluctance of the court to interfere with the domestic affairs of a company or association on the ground of mere irregularity in form in the conduct of those affairs, and the argument based on the more general proposition commonly called the rule in *Foss* v. *Harbottle* (1). As to the contention that, even though the purported alteration of the tables of contributions was invalid, the court should not interfere because the omission to hold a ballot and obtain a two-thirds majority as required by r. 19 was a mere irregularity in point of form, in my judgment, that argument can be shortly dismissed by saying that this was not a matter of form. It was a matter of substance. The relevant part of r. 19, I conceive, was designed to protect members against increases in the rates of contributions unless those increases were agreed to by a particular majority of members on a vote obtained in a particular way— that is to say, a two-thirds majority on a ballot vote. It seems to me that the executive committee's disregard of that express provision in the rules was a wrong done to each individual member on a point of substance. I say "on a point of substance," because it is *nihil ad rem* to point out that the increases in question were merely a matter of pence per week. In my judgment, this question should be viewed in precisely the same way as if the increase had been a matter of pounds, which might have made a substantial difference to the financial position of the members. In my judgment, the case cited on this part of the argument—*Amalgamated Society of Engineers* v. *Jones* (2)—has no bearing on the facts of the present case. In that case a meeting had been held and certain resolutions passed, and it was suggested that the mode of convening the meeting was irregular. The learned judge was able to hold that there had been no wrong done as a matter of substance, but that there had been a mere irregularity in procedure and he took the view that, in those circumstances, the court should not interfere. For the reasons I have endeavoured to state, I regard the present case as an entirely different one.   B C D E F

The rule in *Foss* v. *Harbottle* (1), as I understand it, comes to no more than this. First, the proper plaintiff in an action in respect of a wrong alleged to be done to a company or association of persons is *prima facie* the company or the association of persons itself. Secondly, where the alleged wrong is a transaction which might be made binding on the company or association and on all its members by a simple majority of the members, no individual member of the company is allowed to maintain an action in respect of that matter for the simple reason that, if a mere majority of the members of the company or association is in favour of what has been done, then *cadit quæstio*. No wrong had been done to the company or association and there is nothing in respect of which anyone can sue. If, on the other hand, a simple majority of members of the company or association is against what has been done, then there is no valid reason why the company or association itself should not sue. In my judgment, it is implicit in the rule that the matter relied on as constituting the cause of action should be a cause of action properly belonging to the general   G H

body of corporators or members of the company or association as opposed to a cause of action which some individual member can assert in his own right.

The cases falling within the general ambit of the rule are subject to certain exceptions. It has been noted in the course of argument that in cases where the act complained of is wholly *ultra vires* the company or association the rule has no application because there is no question of the transaction being confirmed by any majority. It has been further pointed out that where what

A  has been done amounts to what is generally called in these cases a fraud on the minority and the wrongdoers are themselves in control of the company, the rule is relaxed in favour of the aggrieved minority who are allowed to bring what is known as a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves,

B  being in control, would not allow the company to sue. Those exceptions are not directly in point in this case, but they show, especially the last one, that the rule is not an inflexible rule and it will be relaxed where necessary in the interests of justice.

There is a further exception which seems to me to touch this case directly. That is the exception noted by Romer, J., in *Cotter* v. *National Union of Sea-*

C  *men* (3). He pointed out that the rule did not prevent an individual member from suing if the matter in respect of which he was suing was one which could validly be done or sanctioned, not by a simple majority of the members of the company or association, but only by some special majority, as, for instance, in the case of a limited company under the Companies Act, a special resolution duly passed as such. As Romer, J., pointed out, the reason for that exception

D  is clear, because otherwise, if the rule were applied in its full rigour, a company which, by its directors, had broken its own regulations by doing something without a special resolution which could only be done validly by a special resolution could assert that it alone was the proper plaintiff in any consequent action and the effect would be to allow a company acting in breach of its articles to do *de facto* by ordinary resolution that which according to its own regulations

E  could only be done by special resolution. That exception exactly fits the present case inasmuch as here the act complained of is something which could only have been validly done, not by a simple majority, but by a two-thirds majority obtained on a ballot vote. In my judgment, therefore, the reliance on the rule in *Foss* v. *Harbottle* (1) in the present case may be regarded as misconceived on that ground alone.

F  I would go further. In my judgment, this is a case of a kind which is not even within the general ambit of the rule. It is not a case where what is complained of is a wrong done to the union, a matter in respect of which the cause of action would primarily and properly belong to the union. It is a case in which certain members of a trade union complain that the union, acting through the delegate meeting and the executive council in breach of the rules by which

G  the union and every member of the union are bound, has invaded the individual rights of the complainant members, who are entitled to maintain themselves in full membership with all the rights and privileges appertaining to that status so long as they pay contributions in accordance with the tables of contributions as they stood before the purported alterations of 1943, unless and until the scale of contributions is validly altered by the prescribed majority obtained

H  on a ballot vote. Those rights, these members claim, have been invaded. The gist of the case is that the personal and individual rights of membership of each of them have been invaded by a purported, but invalid, alteration of the tables of contributions. In those circumstances, it seems to me the rule in *Foss* v. *Harbottle* (1) has no application at all, for the individual members who are suing sue, not in the right of the union, but in their own right to protect from invasion their own individual rights as members.

I would be content so to hold as a matter of self-evident principle, but the

matter is not free from authority. It will, I think, be enough for the present purposes if I refer, briefly, to a passage in the judgment of SIR GEORGE JESSEL, M.R., in *Pender* v. *Lushington* (4). There was a discussion in the course of the case whether the action was one which an individual shareholder could maintain and SIR GEORGE JESSEL, M.R., said (6 Ch.D. 80):

> "But there is another ground on which the action may be maintained. This is an action by Mr. Pender for himself. He is a member of the company, and whether he votes with the majority or the minority he is entitled to have his vote recorded—an individual right in respect of which he has a right to sue. That has nothing to do with the question like that raised in *Foss* v. *Harbottle* (1) and that line of cases. He has a right to say, 'Whether I vote in the majority or minority, you shall record my vote, as that is a right of property belonging to my interest in this company, and if you refuse to record my vote I will institute legal proceedings against you to compel you.' What is the answer to such an action? It seems to me it can be maintained as a matter of substance, and that there is no technical difficulty in maintaining it."

In my judgment, precisely the same conclusions as are there expressed apply in the present case, and the rule in *Foss* v. *Harbottle* (1) affords no answer to the action. It was sought to show that this was not a matter affecting the individual rights of any particular member of the union because all were subject to the same alteration of the tables and, therefore, it was a matter which affected the general body of members as a whole. I do not agree. For one thing, the contributions to be paid by any individual member would depend on the particular category of membership to which he belonged, but, for another thing and more important, it seems to me that, although all the members are liable to pay the subscriptions appropriate to their respective categories, the right of each member to maintain himself in membership by paying his subscription—that is to say, by paying whatever subscription appropriate to his case is validly fixed and for the time being in force under the rules—is an individual right of his own which he himself is entitled to protect by an action on his own behalf.

It was pointed out in the course of the argument (though the matter was not fully developed) that the vast majority of members of the union had, in fact, paid without demur subscriptions at the new and invalid rate. It was further pointed out that those who had become entitled to benefits had taken benefits at the enhanced rate. It was further pointed out that in practice r. 19 (1) had never been resorted to for many years. Before VAISEY, J., these matters seem to have been put forward as amounting to such acquiescence as to make r. 19 (1) a dead letter which could no longer be enforced. That argument was not pressed before us, but these considerations were put as showing that the case was without substance. It was said that the fact that the vast majority of members had paid the new rate of subscriptions without demur demonstrated that the will of the union as a whole was in favour of the new subscriptions and consequently the action was without substance. I cannot agree. I cannot regard the mere paying by individual members of the increased rates without demur as equivalent to a ballot vote at which a two-thirds majority was obtained in favour of the alteration. In my judgment, the scale of contributions as fixed in the rules before the disputed alteration must stand unless and until altered in accordance with r. 19. It not having been so altered, the rates so fixed remain the only rates properly exigible, and no member is bound to pay any other rate except as a matter of individual consent. It may well be that in most cases it would be found, when the particular member's account was gone into, that he had by his conduct in paying the new rate of subscription expressed his individual consent to the alteration and thereby become bound, but I see no ground in principle or in authority

C.A.]  EDWARDS *v.* HALLIWELL (SIR. R. EVERSHED, M.R.)  1069

for holding that these individual assents arising from the conduct of individual members can have any binding effect at all on those members who say: " We are prepared to pay the contributions validly exigible under the rules and no more." Accordingly, I agree that the appeal fails and should be dismissed.

**SIR RAYMOND EVERSHED, M.R.**: I am entirely of the same opinion. On the question of the construction of the rules, the point was debated whether a delegate conference could validly by ordinary resolution of the conference revise r. 19 (1) by the abrogation or suspension of the words of prohibition on which the plaintiffs' action has been founded and then proceed by a further ordinary resolution to alter the rates of contribution payable, thereby avoiding any need to have a ballot or to obtain a two-thirds majority upon a ballot. I am not satisfied that, if a delegate conference made such an alteration or revision of r. 19 as a mere prelude to the alteration of the rates of contribution, such a procedure would successfully withstand challenge. If it is the desire of those responsible for the administration of the affairs of this union either to abrogate altogether the relevant prohibition in r. 19 or to make it inapplicable to an alteration of contribution rates by a delegate conference, I think prudence would demand that such a revision should receive the confirmation of the necessary two-thirds majority. Upon the *Foss* v. *Harbottle* (1) point, I should be guilty of repetition if I added anything to the reasons given by JENKINS, L.J., with which I find myself in entire agreement. The appeal fails and will be dismissed.

*Appeal dismissed with costs.*

Solicitors: *Rowley, Ashworth & Co.* (for the defendants); *Ernest Bevir & Son* (for the plaintiffs).

[*Reported by* F. GUTTMAN, ESQ., *Barrister-at-Law.*]

---

*Re* SCHAR (*deceased*). MIDLAND BANK EXECUTOR AND TRUSTEE CO., LTD. *v.* DAMER AND OTHERS.

[CHANCERY DIVISION (Vaisey, J.), November 7, 1950.]

*Will—Joint tenancy—Disclaimer—Release—Purported disclaimer by one joint tenant.*

By his will, dated Mar. 30, 1931, a testator, who died on Jan. 19, 1943, appointed a bank and two persons to be his executors and directed the payment of legacies and shares of his residuary estate to certain persons resident in Germany. By a codicil, dated May 31, 1940, he appointed F. and J. to be his executors with the bank in place of the persons appointed by the will, and declared that if, at the time of his death or at any time before his trustees had wound up his estate, legislation was in force in the United Kingdom by which some beneficiaries were deprived of the right to receive their benefits, then: " I give such benefits to my trustees absolutely with the request but without creating any trust that they will carry out the wishes contained in my said will or any codicil thereto when legislation permits them to do so." On Mar. 20, 1945, COHEN, J., held that, on the true construction of the will and codicil, the legacy and shares of residue thereby given to persons who survived the testator and were at his death enemies within the meaning of the Trading with the Enemy Act, 1939, were payable to the bank, F., and J. beneficially. On Nov. 19, 1945, the bank executed a deed in which the parties were described as the bank, of the one part, and F. and J. (" the beneficiaries "), of the other part. The deed, which was not executed by F. or J., recited the will and