# EXHIBIT 3

# CINEMATIC FINANCE LTD v RYDER

Chancery Division

Roth J.: October 21, 2010

[2010] EWHC 3387 (Ch); [2012] B.C.C. 797

**H1.** *Derivative claims—Application for permission to bring derivative claim—Applicant not minority shareholder—Applicant controlled companies on whose behalf derivative claim was sought—Companies insolvent—Whether derivative claims restricted to being brought by minority shareholders—Whether derivative claim appropriate where company insolvent—Whether court should grant permission to continue derivative claim—Companies Act 2006 s.261.*

    **H2.** This was an application under s.261 of the Companies Act 2006 in the second-stage procedure for permission to continue a derivative claim on behalf of a number of companies where an issue was whether permission should be granted where the claimant was the controlling shareholder in the companies which were, on the claimant's evidence, insolvent.

    **H3.** The companies, on behalf of which the claims were sought to be pursued, were set up as an investment vehicle for individuals to invest in production and exploitation of films being made, owned or controlled by "SAFE", a subsidiary of "Seven Arts", and each of the companies also entered into marketing and services agreements with Seven Arts. Two of the substantive defendants against whom the cause of action by the companies was alleged were the former directors of each of the companies. The claimant was itself a subsidiary of Seven Arts and it was not disclosed at the first stage of the of the permission application that since early June 2009 the claimant owned either all or at least the overwhelming majority of the shares in the companies. At the same time as the claimant took control of the companies, the first and second defendants resigned as directors. The claimant did not appoint replacement directors of the companies but had power to do so as it effectively controlled those companies. Thus this was not a case where the claimant was a minority shareholder and the companies for which it sought to bring a claim refused or were unwilling to bring a claim themselves, nor was it a case where a claim that lay in the companies was being stifled by the attitude of those in control. Since the claimant itself controlled the companies, the claimant could procure that the companies themselves brought these claims. The defendants asserted that in these circumstances the procedure of the derivative action was altogether inappropriate so that permission should be refused: a derivative action was an exception to the rule that a cause of action vesting in a company should be pursued by the company and not by its shareholders to deal with the circumstances when the company could not or would not bring an action against the alleged wrongdoer. The claimant submitted that this was old law that should be put aside as the proceedings for a derivative claim were now comprehensively governed by the Companies Act 2006 and under the Act it was not the requirement for a derivative claim that the claimant must be a minority shareholder.

    **H4. Held,** dismissing the application:

**H5.** 1. The Companies Act 2006 Pt 11 Ch.1 did not seek to change the basic rule that a claim that lay in a company could be pursued only by the company or to disturb the fundamental distinction between a company and its shareholders. There was nothing to suggest that the Act intended such a radical reversal of long-standing and fundamental principles. However only in very exceptional circumstances could it be appropriate to permit a derivative claim to be brought by a shareholder in control of the company and it was difficult to envisage what those exceptional circumstances might be. Indeed the court was inevitably driven to ask why the procedure of a derivative claim was resorted to in this case. This was not a case where the company could not or would not enforce its rights due to the malfeasance of the directors.

**H6.** 2. On the claimant's case the companies were insolvent companies. If they were placed into liquidation or, as may be, administration, then it would be for the liquidator or administrators to decide whether or not to pursue these claims. Derivative claims should not normally be brought on behalf of a company in liquidation or administration, which was a further reason why the present claim should not be permitted. The controlling shareholder should not seek to circumvent the insolvency regime by starting a derivative claim.

**H7. Case referred to:**
*Prudential Assurance Co Ltd v Newman Industries Limited (No.2)* [1982] 1 Ch. 204

**H8** *Emmet Coldrick* (instructed by Public Access) for the claimant.
*Max Mallin* (instructed by Davenport Lyons) for the first to third respondents.

**JUDGMENT**

**ROTH J.**
1. This is an application for permission to continue a derivative claim under the procedure set out in Ch.1 of Pt 11 of the Companies Act 2006 ("the Act"). All statutory references in this judgment are to the Act save as otherwise stated.

2. The Act sets out what is, in effect, a two-stage procedure in seeking such permission. In the first stage, in accordance with s.261(2), Lewison J. on June 21, 2010, determined on the papers that the action should not be dismissed at the outset for disclosing no prima facie case and ordered that the application be served on the defendants with directions for filing of evidence and that the application be listed for hearing. This is therefore the second stage, the hearing of the substantive application for permission under s.261(3).

3. The companies, on behalf of which the claims are sought to be pursued, have been joined in the usual way as defendants. They are the fourth to twentieth defendants and each was set up as a "close company" for the purpose of s.414 of the Income and Corporation Taxes Act 1988 to serve as an investment vehicle for individuals to invest in production and exploitation of films being made, owned or controlled by Seven Arts Filmed Entertainment UK Ltd. ("SAFE"). The individual investment companies have been referred to as "SAFECOs" but I shall call them simply "the companies". SAFE is a subsidiary of Seven Arts Pictures Plc ("Seven Arts") and each of the companies also entered into marketing and services agreements with Seven Arts.

4. The three substantive defendants against whom the cause of action by the companies is alleged are the two former directors of each of the companies and a limited liability partnership, Zeus Partners LLP ("Zeus") in which those two individuals are partners. For convenience, I shall refer to these three substantive defendants, as distinct from the companies, as simply "the defendants".

5. The claim is highly unusual as a derivative claim in that since early June 2009 the claimant has owned either all or at least the overwhelming majority of the shares in the companies, although this fundamental aspect of the case was not disclosed in either the particulars of claim or the first witness statement of Ms Katrin Hoffman, a director of the claimant, that constituted the papers in the initial application that was considered by Lewison J.

6. The way the shareholding came about is, in very brief summary, because the investors took loans from the claimant to fund their investment in the companies and under recourse arrangements in various agreements (which it is not necessary to describe) when the loan was not repaid, the claimant had recourse to the investors' shareholdings. At the same time as the claimant took control of the companies, the first and second defendants resigned as directors.

7. The claimant is itself a subsidiary of Seven Arts and among the claims made against the defendants is the fact that each company has paid various sums to Zeus, allegedly for the benefit of the first and second defendants, when payments should have been made to SAFE and Seven Arts thereby causing SAFE and Seven Arts to be in default of certain VAT liabilities. It is alleged that the defendants are in breach of a duty to protect the general interest of the company's creditors including, in particular, SAFE and Seven Arts.

8. The claimant has not appointed replacement directors of the companies but clearly has power to do so as it effectively controls those companies. Hence this is not a case where the claimant is a minority shareholder and the company for which it seeks to bring a claim refuses or is unwilling to do so. Put another way, it is not a case where a claim that lies in the company is being stifled by the attitude of those in control. Since the claimant itself controls the companies, the claimant could procure that the companies themselves bring these claims. The defendants assert that in these circumstances the procedure of the derivative action is altogether inappropriate so that permission should be refused.

9. The general rule is that a cause of action vesting in a company should be pursued by the company and not by its shareholders. A derivative action is an exception to that rule to deal with the particular circumstances when the company cannot or will not bring an action against the alleged wrongdoer. It is to address those circumstances that the court may allow a member of the company to pursue that action for the benefit of the company and thus, indirectly, all its shareholders. Hence in *Prudential Assurance Co Ltd v Newman Industries Limited (No.2)* [1982] 1 Ch. 204 the Court of Appeal stated at 210D–E:

> "A derivative action is an exception to the elementary principle that A cannot, as a general rule, bring an action against B to recover damages or secure other relief on behalf of C for an injury done by B to C. C is the proper plaintiff because C is the party injured, and, therefore, the person in whom the cause of action is vested. This is sometimes referred to as the 'Rule in *Foss v Harbottle*' (1843) 2 Hare 461 when applied to corporations but it has a wider scope and is fundamental to any rational system of jurisprudence."

10. For the claimant, Mr Coldrick submitted strongly that this was old law that should be put aside and that matters are now comprehensively governed by the provisions of the Act. He acknowledged that in most cases a shareholder in control of a company would procure that the company would bring a claim to pursue its own cause of action. But he argued that under the Act it was not the requirement for a derivative claim that the claimant must be a minority shareholder and, more specifically, he pointed out that s.263(2) sets outs specific circumstances in which permission to bring a derivative claim must be refused. He pointed to the fact that the claimant being in control of the company is not one of the enumerated circumstances which, in his submission, shows that it is wrong to make this, in effect, a bar to such a claim. I think he accepted that it may be a relevant circumstance but, he

submitted, that it was only one to be taken into account and balanced against the others, including in particular whether the company has a strong claim, and he submitted that having regard to the factors set out in s.263(3) if a director acting in the interests of the companies would pursue this claim, then the claimant should be permitted to do so notwithstanding that it has control of the companies.

**11.** I accept that proceedings for a derivative claim are now comprehensively governed by the Act. But in my judgment the Act is not seeking to change the basic rule that a claim that lies in a company can be pursued only by the company or to disturb the fundamental distinction between a company and its shareholders. There is nothing to suggest that the Act intended such a radical reversal of long-standing and fundamental principles. It is relevant that this part of the Act has its genesis in the Report of the Law Commission on *Shareholder Remedies* (Law Com No.246 (1997)). That report states at the outset in paragraph 1.2:

> "The focus of the project was on the remedies available to a minority shareholder who is dissatisfied with the manner in which the company of which he is a member is run."

**12.** The Report proceeded to set out "Guiding Principles" that the Law Commission applied as governing its proposals for reform of the law. The first of these is expressed as follows at para.1.9:

> "**(i)  Proper plaintiff**
> Normally the company should be the only party entitled to enforce a cause of action belonging to it. Accordingly, a member should be able to maintain proceedings about wrongs done to the company only in exceptional circumstances."

**13.** Although this part of the Act does not completely mirror the approach to be found in a combination of the Law Commission's draft bill and draft procedure rules, it clearly reflects the overall approach in the Law Commission's proposal and, in my view, one would expect very different language in the Act if it were adopting such a radically different approach that involved discarding the Guiding Principle that I have quoted. Indeed, in the Act the governing provision for the grant of permission by the court to continue a derivative claim is s.261(4) which makes clear that this is a discretion resting in the court.

**14.** Whilst the discretion must, of course, be exercised in accordance with established principles, in my judgment this is one such principle. I would not go so far as to say that it could never be appropriate for a derivative claim to be brought by a shareholder holding the majority of the shares in a company. A judge must be cautious about using the word "never" when faced with a statutory discretion and when this is not one of the enumerated circumstances in s.263(2) in which permission must be refused. And faced only with the facts of the instant case, it is impossible to envisage all the factual circumstances that might arise in other cases. But in my judgment, only in very exceptional circumstances could it be appropriate to permit a derivative claim brought by a shareholder in control of the company. For my part, I find it difficult to envisage what those exceptional circumstances might be.

**15.** Are there any exceptional circumstances here? For the claimant, Mr Coldrick submits that there are. He submits that when these proceedings were commenced on May 12, 2010, the claimant did not have the books and records of the companies and that although the claimant knew that it was the transferee of the shares, it did not know whether it was recorded as a shareholder, presumably so as to enable it to pass appropriate resolutions to appoint new directors. It was only on August 16, 2010, that the claimant received the company's statutory books from Davenport Lyons, the solicitors to the former directors.

16. The difficulty with that contention is that as long ago as September 2009 when the claimant was being advised by the well-known and experienced solicitors, Bryan Cave, Mr Peter Hoffman, the chief executive officer of Seven Arts was sent an email (copied to Ms Katrin Hoffman among others) stating that the solicitors had received confirmation from Davenport Lyons that the claimant held the shares in the companies and that Davenport Lyons had the companies' books. Further, the solicitor advised Mr Hoffman that because of problems over the companies' registered address, Bryan Cave were preparing resolutions to amend the companies' articles and thereafter appoint Ms Hoffman and a Mr David Bailey (who I am told was at the time the finance director of Seven Arts) as directors of the companies. The email refers expressly to only two of the 17 companies but there is no reason to suppose that the same course could not have been adopted for the others.

17. That did not happen for reasons that have not been fully explained but it is notable that there was no further communication from Bryan Cave on behalf of the claimant or the companies to Davenport Lyons seeking delivery of the companies' books. Then in February 2010 another firm of solicitors acting on behalf of the claimant, Southcombe & Haley, wrote to Davenport Lyons making allegations against the defendants and threatening to put the companies into creditors' voluntary liquidation with a view to pursuing a claim against the defendants under s.239 of the Insolvency Act 1986. But there is no request in that very full letter for delivery of the companies' books. Indeed, on the evidence before the court it appears that at no time did the claimant press Davenport Lyons for delivery of the companies' books. As Mr Mallin for the defendants observed, if the books and records had been asked for prior to the commencement of these proceedings, there is no conceivable reason why they would have been withheld. It is not in the interests of the defendants or Davenport Lyons to refuse to provide them. Moreover, Mr Mallin drew attention to an email of October 23, 2009, from Bryan Cave on behalf of the claimant to the solicitor dealing with the matter at Davenport Lyons which stated:

> "Our client controls the [companies] and therefore if necessary proceedings on behalf of the companies against the former directors and others as necessary can be brought without difficulty. Ultimately, if the companies are indeed insolvent … the companies can be placed into liquidation and the officeholder will have the full range of statutory causes of action and remedies in addition to the common law and fiduciary cause [of] action against the former officers."

18. Accordingly, the basis put forward as amounting to exceptional circumstances as to why a derivative claim is here appropriate falls away on close examination of the facts. In the light of this, one is inevitably driven to ask why the procedure of a derivative claim was resorted to in this case. In my view the explanation is to be found in the claimant's evidence, in particular, in the second witness statement of Ms Hoffman. She states at para.9:

> "The claimant did indeed research the possibility of putting the [companies] into liquidation and pursuing our remedies against the defendants via the liquidator. However, at a minimum, the starting costs for this would be in excess of £50,000. From our perspective it is deeply unfair that the shareholders of an insolvent company should be forced to pay these kinds of costs to proceed against the former directors of a company who are responsible for very the [sic] insolvency. Indeed, from our perspective this is one of the principal reasons for such a derivative proceedings i.e. when the company cannot or will not act to enforce the rights of the shareholder due to the malfeasance of the directors."

19. Further, in the email that she exhibits dated October 18, 2010, she wrote, after referring to the fact that the claimant is the sole shareholder of the companies,

"I will not, however, become Director of the [companies] as the companies are insolvent and I cannot take such a personal risk."

20. In his witness statement Mr Peter Hoffman states at para.5:

"On behalf of [Seven Arts] SAFE and Cinematic, I have determined that the [companies] are insolvent and should be placed in voluntary or involuntary liquidation. No director appointed by Cinematic can take actions on behalf of these insolvent companies in light of the enormous claims against the [companies] by SAFE [Seven Arts] and others."

21. I would comment that the reasons set out by Ms Hoffman for derivative proceedings are broadly correct save that the rights to be enforced are the rights of the company and not of its shareholders. But as I have found, this is not a case where the company cannot or will not enforce its rights due to malfeasance of the directors.

22. Here, on the claimant's case, the companies are insolvent companies. If they were placed into liquidation or, as may be, administration, then it would be for the liquidator or administrators to decide whether or not to pursue these claims. Derivative claims should not normally be brought on behalf of a company in liquidation or administration (see *Gore Brown on Companies* (Jordan Publishing.45th edn), para.18(14).) Since here, if the companies were subject to appropriate insolvency procedures—and I emphasise it is the claimant's evidence that the companies are insolvent—it would then be inappropriate for a derivative claim to lie, that is, in my judgment, a further reason why the present claim should not be permitted. The controlling shareholder should not seek to circumvent the insolvency regime by starting a derivative claim.

23. Accordingly, this application is dismissed.

*(Application dismissed)*