**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK NATIONAL ASSOCIATION, in
its capacity as Trustee, JOSHUA N. TERRY,
and ACIS CAPITAL MANAGEMENT, L.P.,

        *Plaintiffs*,

    v.

THE CHARITABLE DONOR ADVISED
FUND, L.P., CLO HOLDCO LTD., and
NEXPOINT DIVERSIFIED REAL ESTATE
TRUST,

        *Defendants*.

Case No. 1:21-cv-11059-GHW

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE DAF PARTIES' AMENDED COUNTERCLAIMS AND**
**FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Misha Boutilier
  Michael R. Bloom
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis*
  *Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  *Attorneys for Plaintiff U.S. Bank National*
  *Association, in its capacity as Trustee*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .......................................................................................................2

      A.      The Parties And Their Contracts.................................................................2

      B.      Defendants' Litigation Campaign And The Settlement Agreements .....................3

      C.      The DAF Parties' Amended Counterclaims ....................................................4

LEGAL STANDARD ................................................................................................................5

ARGUMENT .........................................................................................................................5

I.      THE DAF PARTIES LACK STANDING TO BRING THEIR COUNTERCLAIMS ............................5

II.      THE DAF PARTIES FAIL TO PLEAD ANY VIABLE GROUNDS TO INVALIDATE THE SETTLEMENT AGREEMENTS ...............................................................................9

III.      THE DAF PARTIES' NEW TORT CLAIMS MUST BE DISMISSED ...........................................13

      A.      The Tortious Interference Claim Must Be Dismissed ...........................................13

      B.      The Unjust Enrichment Claim Must Be Dismissed.................................................23

IV.      THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS ......................................................................................................24

V.      LEAVE TO AMEND THE COUNTERCLAIMS SHOULD BE DENIED.........................................25

CONCLUSION.....................................................................................................................25

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*159 MP Corp. v. Redbridge Bedford, LLC*,
    33 N.Y.3d 353 (2019) ................................................................................ 12, 13

Dkt. 182-6, *Abouraya v. Sigmund & Ors*,
    [2014] EWHC 277 (Ch) .............................................................................. 8

*Alvord & Swift v. Stewart M. Muller Const. Co.*,
    46 N.Y.2d 276 (1978) ................................................................................. 20

*Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*,
    2021 WL 2358695 (S.D.N.Y. June 9, 2021) .............................................. 22

*Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Azioni*,
    78 F.R.D. 1 (S.D.N.Y. 1978) ..................................................................... 25

*Borden v. City of New York*,
    2017 WL 744593 (S.D.N.Y. Feb. 24, 2017) .............................................. 25

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ....................................................................... 14

Dkt. 182-2*, Burnford v. Auto Assoc. Devs. Ltd.*,
    [2022] EWCA Civ 1943 ............................................................................. 9

*CapLOC, LLC v. McCord*,
    2018 WL 3407708 (S.D.N.Y. June 12, 2018) ........................................... 22

Dkt. 182-12, *CPC Grp Ltd v. Qatari Diar Real Est. Inv. Co.*,
    [2010] EWHC 1535 (Ch) ............................................................................ 14, 18

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
    2022 WL 17342495 (S.D.N.Y. Nov. 30, 2022) ......................................... 6, 23

*Davis v. Scottish Re Grp. Ltd.*,
    160 A.D.3d 114 (1st Dep't 2018) ............................................................... 7

*Denburg v. Parker Chapin Flattau & Klimpl*,
    82 N.Y.2d 375 (1993) ................................................................................. 5, 19, 22

*Diaz v. Deutsche Bank*,
    2015 WL 12777391 (S.D. Tex. Apr. 14, 2015), *aff'd*, 667 F. App'x 468 (5th Cir.
    2016) ............................................................................................................ 11

*Duane Reade v. I.G. Second Generation Partners, L.P.*,
    280 A.D.2d 410 (1st Dep't 2001) ............................................................... 18

*Durosene v. Bank of Am., N.A.*,
    2020 WL 3403083 (E.D.N.Y. June 19, 2020) ........................................... 6

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
   152 A.3d 1248 (Del. 2016) ................................................................................ 6, 9

*Ellington Credit Fund, Ltd. v. Select Portf'o Serv., Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ................................................................ 23

*Elson v. Delaney*,
   47 A.D.2d 708 (4th Dep't 1975) ........................................................................ 13

*Ente Nazionale Idrocarburi v. Prudential Securities Grp., Inc.*,
   744 F. Supp. 450 (S.D.N.Y. 1990) .................................................................... 14

Dkt. 182-8, *Faulkner v. Vollin Hldgs. Ltd.*,
   [2022] EWCA Civ 1371 ................................................................ 14, 15, 17, 18

*Ferguson v. Lion Holdings, Inc.*,
   312 F. Supp. 2d 484 (S.D.N.Y. 2004) ................................................................ 13

*Fernandez v. UBS AG*,
   222 F. Supp. 3d 358 (S.D.N.Y. 2016) ................................................................ 15

*Ferring B.V. v. Allergan, Inc.*,
   4 F. Supp. 3d 612 (S.D.N.Y. 2014) .................................................................... 20

*Finkel v. E.A. Techs., Inc.*,
   2014 WL 4364757 (E.D.N.Y. Sept. 3, 2014) .................................................... 20

Dkt. 111-20, *Foss v. Harbottle*,
   [1843] 2 Hare 461 ............................................................................................... 7

*Francisco v. Abengoa, S.A.*,
   559 F. Supp. 3d 286 (S.D.N.Y. 2021) ................................................................ 16

*Garza v. Villarreal*,
   345 S.W.3d 473 (Tex. App. 2011) ................................................................ 13, 25

*Gov't Emps. Ins. Co. v. Hazel*,
   2014 WL 4628655 (E.D.N.Y. Aug. 11, 2014) .............................................. 20, 21

*Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*,
   2012 WL 612358 (S.D.N.Y. Feb. 23, 2012) ...................................................... 10

*Health-Chem Corp. v. Baker*,
   915 F.2d 805 (2d Cir. 1990) .............................................................................. 12

*High Falls Brewing Co., LLC v. Bos. Beer Corp.*,
   852 F. Supp. 2d 306 (W.D.N.Y. 2011) .............................................................. 21

*Howe v. Bank of New York Mellon*,
   783 F. Supp. 2d 466 (S.D.N.Y. 2011) ................................................................. 7

*In re 321 Henderson Receivables Origination, LLC*,
   19 Misc.3d 504 (N.Y. Sup. Ct. 2008) ................................................................ 17

*In re Gaylord Container Corp. S'holders Litig.*,
   753 A.2d 462 (Del. Ch. 2000) ........................................................................... 10

*In re George Wash. Bridge Bus Station Dev. Venture LLC*,
  2022 WL 4653117 (Bankr. S.D.N.Y. Sept. 30, 2022) ..................................................... 20, 22

*In re Highland Cap. Mgmt., L.P.*,
  2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) ................................................................ 3

*In re Highland Cap. Mgmt., L.P.*,
  No. 19-34054-sgj-11 (Bankr. N.D. Tex. Jun. 25, 2021) .......................................................... 3

*In re Salomon Inc. S'holders Deriv. Litig.*,
  1994 WL 533595 (S.D.N.Y. Sept. 30, 1994) ........................................................................ 25

*In re Tyco Int'l, Ltd.*,
  340 F. Supp. 2d 94 (D.N.H. 2004) ...................................................................................... 7, 8

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
  655 F.3d 136 (2d Cir. 2011) .................................................................................................. 9

*Jackson v. Wells Fargo N.A.*,
  2020 WL 7327582 (S.D. Tex. Dec. 11, 2020) ........................................................................ 6

*Jemzura v. Jemzura*,
  36 N.Y.2d 496 (1975) ......................................................................................................... 13

*Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*,
  968 F.2d 286 (2d Cir. 1992) ................................................................................................ 22

*Jones Apparel Grp., Inc. v. Piccone*,
  1994 WL 260767 (S.D.N.Y. June 8, 1994) .......................................................................... 11

*Kalnit v. Eichler*, 99 F. Supp. 2d 327 (S.D.N.Y. 2000)  *aff'd*, 264 F.3d 131 (2d Cir.
  2001) .................................................................................................................................. 11

*Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*,
  2008 WL 2930546 (S.D.N.Y. July 29, 2008) ...................................................................... 23

*Lively v. Warfa Inv. Adv. Grp.*,
  6 F.4th 293 (2d Cir. 2021) ............................................................................................. 24, 25

Dkt. 111-21, *Marex Financial Ltd v Sevilleja*,
  [2020] UKSC 31 ............................................................................................................... 6, 9

*Matter of Teltronics Servs., Inc.*,
  29 B.R. 139 (Bankr. E.D.N.Y. 1983) .................................................................................. 11

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................................................................. 13

*Michael Grecco Prods., Inc. v. Time USA, LLC*,
  2021 WL 3192543 (S.D.N.Y. July 27, 2021) ...................................................................... 16

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004) .................................................................................................... 9

*NAF Hldgs, LLC v. Li & Fung (Trading) Ltd.*,
  772 F.3d 740 (2d Cir. 2014) .................................................................................................. 6

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
  544 F. Supp. 3d 405 (S.D.N.Y. 2021) ........................................................... 5, 25

Dkts. 108-7-10, *PIMCO Absolute Return Strategy v. Wells Fargo Bank*,
  Index No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017) ........................................ 19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*,
  579 F. Supp. 2d 520 (S.D.N.Y. 2008) ............................................................... 10

*Prospect Funding Holdings, LLC v. Vinson*,
  256 F. Supp. 3d 318 (S.D.N.Y. 2017) ........................................................... 20, 21

Dkt. 182-9, *Re Coroin*,
  [2013] EWCA Civ 781 ................................................................................ 14, 18

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
  68 F.3d 1478 (2d Cir. 1995)............................................................................... 23

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
  53 F. Supp. 3d 705 (S.D.N.Y. 2014).................................................................. 13

*Robinson v. Nat'l R.R. Passenger Corp.*,
  1995 WL 444322 (S.D.N.Y. July 26, 1995) ................................................. 10, 15

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015)................................................................. 5

*Rynasko v. New York Univ.*,
  63 F.4th 186 (2d Cir. 2023) ............................................................................... 6

*Saratoga Advantage Tr. Tech. & Commc'ns Portfolio v. Marvell Tech. Grp.*,
  2016 WL 4364593 (N.D. Cal. Aug. 16, 2016) ................................................... 8

*Scalisi v. Fund Asset Mgmt., L.P.*,
  380 F.3d 133 (2d Cir. 2004).............................................................................. 7

*Shenwick v. H.M. Ruby Fund, L.P.*,
  106 A.D.3d 638 (1st Dep't 2013) ................................................................... 7, 8

*Sprague v. Salisbury Bank & Tr. Co.*,
  969 F.3d 95 (2d Cir. 2020)............................................................................... 25

*Tamez v. Sw. Motor Transp., Inc.*,
  155 S.W.3d 564 (Tex. App. 2004).............................................................. 13, 25

*Thyroff v. Nationwide Mut. Ins. Co.*,
  460 F.3d 400 (2d Cir. 2006)....................................................................... 11, 14

*Tobbon v. State Farm Mut. Auto. Ins. Co.*,
  616 S.W.2d 243 (Tex. Civ. App. 1981) ............................................................. 13

*Voss v. Sutardja*,
  2015 WL 349444 (N.D. Cal. Jan. 26, 2015) ...................................................... 8

Dkt. 108-11, *Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates*,
  *Series 2007-C30*, (Minn. Dist. Ct. Oct. 26, 2022) .......................................... 19

v

*Weitz v. Bruderman*,
    14 A.D.3d 354 (1st Dep't 2005) ................................................................ 23

*Wilson v. Dantas*,
    2013 WL 92999 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014) ...................... 20

*Wilson v. Dantas*,
    746 F.3d 530 (2d Cir. 2014) ................................................................ 11, 22

*Winn v. Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007) ................................................................ 7, 8

*Yudell v. Gilbert*,
    99 A.D.3d 108 (1st Dep't 2012) ................................................................ 6, 9

*Zohar CDO 2003-1 Ltd. v. Patriarch Partners LLC*,
    2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) ................................................................ 8

**Rules**

Rule 9(b) ................................................................ 8, 10, 11, 15

Rule 12(b)(6) ................................................................ 5, 24

Rule 12(c) ................................................................ 24, 25

Plaintiffs U.S. Bank, National Association, in its capacity as trustee ("U.S. Bank" or the "Trustee"), Joshua N. Terry ("Mr. Terry"), and Acis Capital Management, L.P. ("ACM" or the "Portfolio Manager," and with Mr. Terry, the "ACM Parties") (collectively, "Plaintiffs"), submit this memorandum in support of their motions (1) to dismiss the Amended Counterclaims (Dkt. 155) brought by Defendants The Charitable Donor Advised Fund, L.P. ("DAF"), CLO HoldCo, Ltd. ("CLOH," and, collectively, the "DAF Parties"), and (2) for judgment on the pleadings on Plaintiff's claims against the DAF Parties in the Amended Complaint (Dkt. 15, "AC").

## PRELIMINARY STATEMENT

Despite months of fact discovery, the DAF Parties' Amended Counterclaims again fail to plead a cognizable claim against Plaintiffs for entering into two settlement agreements with Highland CLO Funding, Ltd. ("HCLOF") related to HCLOF's investment in the Acis CLOs. While the DAF Parties make a dozen references to "collusion" in the Amended Counterclaims, they fail to plead a single fact to support a plausible inference of collusion. Stripped of their rhetoric and bluster, the Amended Counterclaims are entirely predicated on the DAF Parties' disagreement with HCLOF's commercial judgment in settling litigation claims. The DAF Parties, as investors in HCLOF, may wish HCLOF had rejected those settlements, but that was not their decision to make. Having chosen to invest, they are bound by HCLOF's strategic choices. Any other result would make it impossible for corporate actors to settle litigation over the objection of minority stakeholders, in direct contravention of well-settled public policy under New York law.

While the DAF Parties assert shifting legal theories in the Amended Counterclaims, the relief sought remains the same. The DAF Parties seek to invalidate two settlement agreements between HCLOF and Plaintiffs—a 2021 agreement resolving HCLOF's claim that the ACM Parties mismanaged the Acis CLOs (along with multiple ACM claims against HCLOF) and a 2023 agreement resolving HCLOF's claim that Plaintiffs improperly reserved funds that would

1

otherwise have been distributed to HCLOF.  Short of invalidation, the DAF Parties seek damages to cover the benefits of hypothetical bargains they wish HCLOF had struck.

The Amended Counterclaims fail in their entirety for lack of standing.  The DAF Parties are not a party to the challenged settlements and had no right to approve or disapprove of their terms.  Even if the DAF Parties could overcome these standing deficiencies, they fail to adequately plead the necessary element of collusion required to sustain each of their claims.  Without collusion, the DAF Parties' invalidation claims fall away.  The remaining claims for tortious interference and unjust enrichment fare no better.  The Members Agreement's good faith clause does not bar HCLOF from exercising commercial judgment to settle legal claims, even if doing so prevents its stakeholders from later acquiring those claims or asserting them derivatively.  Without a breach, there is no tortious interference.  Meanwhile, the unjust enrichment claim fails because there is nothing unjust about HCLOF's exercise of its commercial judgment and that claim is barred by the numerous contracts governing the conduct on which it is based.

For these and other reasons, the DAF Parties' Amended Counterclaims should be dismissed with prejudice.  The arguments that require dismissal of the DAF Parties' counterclaims also warrant judgment on the pleadings on Plaintiffs' claims against the DAF Parties.

## FACTUAL BACKGROUND

### A.    The Parties And Their Contracts

The Acis CLOs are investment funds organized in the Cayman Islands.  Dkts. 78-1, 108-14 & 16 (the "Indentures").  They issued notes to HCLOF and other investors pursuant to the Indentures between each Acis CLO, a Co-Issuer, and the Trustee.  Dkt. 155 ¶¶ 10, 13.  ACM acts as portfolio manager for each Acis CLO under the Portfolio Management Agreements.  Dkts. 77-2, 108-13 & 15 (the "PMAs").  ACM was originally majority-owned by Mr. Dondero, but a bankruptcy court transferred ownership to Mr. Terry.  Dkt. 155 ¶ 54.

HCLOF is a limited company registered in Guernsey that holds 87% of the Subordinated Notes in Acis 6 and 100% of the Subordinated Notes in Acis 4 and 5.  Dkt. 155 ¶ 13.  HCLOF's directors govern its affairs.  *Id*. ¶¶ 4-5.  The DAF Parties do not own any notes; rather, DAF, through CLOH, holds 49% of HCLOF's shares.  *Id*. ¶¶ 8, 20.  Highland Capital Management, L.P. ("HCM") and its subsidiary are the majority shareholders of HCLOF.  *Id*. ¶ 19.  The Members Agreement (Dkt. 155-2), a contract governed by Guernsey law, governs the relationship between and among HCLOF and its shareholders.  *Id*. ¶ 22.  Plaintiffs are not parties to this contract.  *Id*.

### B.   Defendants' Litigation Campaign And The Settlement Agreements

The DAF Parties are serial and vexatious litigants that have been held in contempt by the United States Bankruptcy Court in Texas for their abuse of the legal process.[1]  The DAF Parties, along with NexPoint, have carried out a campaign of litigation and threatened litigation against Plaintiffs since Mr. Terry won control of ACM in 2019.  In late 2019 and early 2020, the DAF Parties twice filed lawsuits in this District (the "2019 and 2020 Lawsuits") purporting to assert claims on behalf of HCLOF against Plaintiffs for alleged breaches by ACM of the PMAs.  Dkt. 155-4 at 1.  The DAF Parties continued to threaten those claims after voluntarily dismissing both lawsuits, Dkt. 15-8 at 7, and refused to abandon them even after HCLOF entered into a settlement agreement (the "2021 Settlement Agreement") with ACM and Mr. Terry on April 28, 2021 by which HCLOF released "any and all claims … against … [ACM], and [Mr. Terry], in any capacity, … [and] U.S. Bank National Association."  Dkt. 155-3 § 10.  HCLOF received multiple forms of consideration in exchange, *id*. §§ 7, 9, including a release from claims that ACM had against

---

[1]  *See* Dkt. 15-15 (Transcript Ruling, *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-sgj-11 (Bankr. N.D. Tex. Jun. 25, 2021), Dkt. 2500) at 109:17-22 (observing "vexatious litigation behavior"); *In re Highland Cap. Mgmt., L.P.*, 2021 WL 3418657, at *12 (Bankr. N.D. Tex. Aug. 4, 2021) (finding the DAF Parties in contempt for bringing "wholly frivolous" lawsuit), *aff'd in part, vacated in part on other grounds*, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022).

HCLOF and ACM's agreement to cooperate to discharge the injunction prohibiting HCLOF from redeeming up to $41 million from the Acis CLOs. *Id*. § 4. Shortly afterwards, NexPoint sued Plaintiffs in a federal lawsuit that closely tracked the DAF Parties' prior suits. Dkt. 155-4 at 1.

Consistent with the 2021 Settlement Agreement, ACM (at HCLOF's request) caused a redemption of the Acis CLOs on June 24, 2021, effecting a complete repayment of all noteholders except for the Subordinated Noteholders. Dkt. 155-4 at 1. Faced with NexPoint's pending federal lawsuit and the DAF Parties' litigation threats, which interfered with the redemption process, Plaintiffs retained a portion of the redemption liquidation proceeds to secure the Acis CLOs' indemnification obligations. *Id*. at 1-4. HCLOF objected to the reserves. *Id*.; Dkt. 155 ¶¶ 42-45.

On February 28, 2023, Plaintiffs and HCLOF reached a second settlement agreement (Dkt. 155-4, the "2023 Settlement Agreement," and, together with the 2021 Settlement Agreement, the "Settlement Agreements") whereby Plaintiffs distributed $16 million from the reserves to the Subordinated Noteholders (primarily HCLOF) in exchange for HCLOF's release of claims regarding the amounts distributed and already spent and forbearance on claims related to the remaining reserves until this and other ongoing litigations are resolved. Dkt. 155-4 §§ 1, 4.

### C.     The DAF Parties' Amended Counterclaims

In December 2021, Plaintiffs initiated this lawsuit to finally resolve all remaining disputes among the parties. Plaintiffs seek declarations that: (1) all Defendants lack standing to bring their previously filed and threatened claims against Plaintiffs and (2) the 2021 Settlement Agreement bars the DAF Parties' previously brought and threatened claims. AC ¶¶ 65, 73.

The DAF Parties initially brought counterclaims seeking to invalidate the 2021 Settlement Agreement and asserting that Plaintiffs, by entering into the Settlement Agreements, aided and abetted breaches of fiduciary duty by HCLOF. Dkt. 77. In their Amended Counterclaims, the DAF Parties assert five counts. Counts I and II seek declarations that the Settlement Agreements

are unenforceable as "the product of collusion," for "lack of consideration," and because they "breached the … Members Agreement." Dkt. 155 ¶¶ 66-77.  Counts III and IV allege that HCLOF breached its Members Agreement's good faith clause by entering into the Settlement Agreements, and that Plaintiffs tortiously interfered with the Members Agreement by inducing this breach. *Id*. ¶¶ 78-93.  Count V alleges that Plaintiffs were unjustly enriched by retaining the reserves. *Id*. ¶¶ 94-98.  The Amended Counterclaims abandon the DAF Parties' aiding and abetting claims.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter … to state a claim [] that is plausible." *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (Woods, J.).  "[L]abels and conclusions … will not do." *Id*. at 413.  The court may consider documents that are integral to the allegations. *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596 (S.D.N.Y. 2015).

## ARGUMENT

The DAF Parties challenge two arms-length agreements to settle ongoing and/or contemplated litigation and distribute money to investors. The DAF Parties both lack standing to pursue these claims and do not adequately plead their substantive elements.  The Court should enforce the Settlement Agreements so that Plaintiffs and HCLOF can enjoy the "finality" that they bargained for.  *See Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (1993).

## I.     THE DAF PARTIES LACK STANDING TO BRING THEIR COUNTERCLAIMS

The DAF Parties seek to invalidate HCLOF's Settlement Agreements and assert tortious interference and unjust enrichment claims against Plaintiffs related to them.  Because the DAF Parties lack both direct and derivative standing to bring these claims, they should be dismissed.

*First*, the DAF Parties lack direct standing under New York and Texas law to pursue claims to invalidate the Settlement Agreements because they are neither a party to, nor a third-party

beneficiary of, those agreements.[2]   *See Durosene v. Bank of Am., N.A.*, 2020 WL 3403083, at *3 (E.D.N.Y. June 19, 2020) ("[A] non-party to a contract lacks standing to challenge [it] … [unless] it is a third-party beneficiary."); *Jackson v. Wells Fargo N.A.*, 2020 WL 7327582, at *5 (S.D. Tex. Dec. 11, 2020) ("Non-parties to a contract generally do not have standing to challenge [it].").

*Second*, the DAF Parties lack direct standing under Guernsey law to pursue their tortious interference and unjust enrichment claims because those claims are based on breach of duties to HCLOF that purportedly directly injured HCLOF.[3]   In particular, the DAF Parties allege that Plaintiffs wronged HCLOF and breached contractual obligations owed to HCLOF under the Indentures by creating and maintaining reserves. Dkt. 155 ¶¶ 7(v), 42-49, 57-59.  The direct impact of this alleged conduct fell on HCLOF, not on CLOH, as the DAF Parties admit.  *See, e.g., id.* ¶ 7(i) (alleging that Plaintiffs "wrongfully withh[e]ld[] … millions of dollars which should have been distributed to HCLOF and, in turn, distributed to CLOH" by HCLOF); *id.* ¶ 63 (similar).  The DAF Parties' claims are thus derivative because CLOH would only suffer loss as a result of HCLOF's loss.  Dkt. 111-21, *Marex Financial Ltd v. Sevilleja*, [2020] UKSC 31 ¶¶ 79-80 (a claim is derivative if the shareholder's loss is "a diminution in … distributions" that "is the consequence of loss sustained by the company"); 2nd McGuffin Decl. (Dkt. 182) ¶¶ 3.1-3.3, 3.7-3.16.[4]

---

[2]   New York and Texas law govern because of the Settlement Agreements' choice of law clauses.  See Dkt. 155-3 § 14; Dkt. 155-4 § 12(d); *Rynasko v. New York Univ.*, 63 F.4th 186, 194 (2d Cir. 2023) (New York law governs "[a] non-party to a contract governed by New York law['s] … standing to enforce the agreement").  The DAF Parties also lack direct standing to bring these claims under Guernsey law.  *See* 2nd McGuffin Decl. (Dkt. 182) ¶¶ 3.4-3.6; *see infra* at 6.

[3]   Guernsey law governs claims in respect of HCLOF because the "law of the [entity's] state of incorporation" governs if "a claim is direct or derivative." *NAF Hldgs, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d Cir. 2014).

[4]   A similar result would follow under New York law.  *See, e.g.*, *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 2022 WL 17342495, at *3 (S.D.N.Y. Nov. 30, 2022) (parent corporation lacked standing to pursue unjust enrichment claim concerning checks payable to subsidiary because it "was not the payee … and therefore has no injury"); *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1259-62 (Del. 2016) (claims under entity's constitutive agreement was derivative because they were based on harm to the entity); *Yudell v. Gilbert*, 99 A.D.3d 108, 110 (1st Dep't 2012) (New York law adopts Delaware law's approach to derivative standing).

*Third*, the DAF Parties lack derivative standing to pursue contract invalidation, tort, and unjust enrichment claims on behalf of HCLOF.  The DAF Parties' derivative standing is governed by Guernsey law, where HCLOF is organized.  *See Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011) (the law of the company's place of incorporation governs "the right to sue derivatively" on its behalf); *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (similar).  Guernsey law, like Cayman Islands law, applies the English precedent from *Foss v. Harbottle*, [1843] 2 Hare 461 (Dkt. 111-20), under which "a shareholder is not permitted to bring a derivative action" subject to "four narrow exceptions" for conduct that (1) "infringed on the shareholder's personal rights;" (2) "require[s] a special majority to ratify;" (3) is "a fraud on the minority;" or (4) "consists of ultra vires acts."  *Davis v. Scottish Re Grp. Ltd.*, 160 A.D.3d 114, 116 (1st Dep't 2018) (Cayman Islands law); 2nd McGuffin Decl. ¶¶ 4.1-4.3.  The DAF Parties formerly asserted the fraud on the minority exception but fail to meet its requirements.

The fraud on the minority exception applies a "tighter screen" than American law on derivative actions by "requir[ing] proof that" (1) "the alleged wrongdoers are in control" of the company and (2) "have engaged in improper self-dealing."  *In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 100 n.6 (D.N.H. 2004) (English law); *Winn v. Schafer*, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007) (same) (English law); 2nd McGuffin Decl. ¶ 4.4.  The ACM Parties and the Trustee do not control HCLOF; they do not even own stock in it.  *See Winn*, 499 F. Supp. 2d at 398 (control element not met where plaintiff did not allege that defendants were shareholders).  HCM controls the majority of HCLOF's voting shares, but the DAF Parties do not allege that HCM engaged in self-dealing by supporting the Settlement Agreements or obtained anything beyond its *pro rata* share of their benefits.  Further, nor do the DAF Parties allege self-dealing by HCLOF's directors. *See Shenwick v. H.M. Ruby Fund, L.P.*, 106 A.D.3d 638, 639 (1st Dep't 2013) (applying Cayman

Islands law); Dkt. 182-6, *Abouraya v. Sigmund & Ors*, [2014] EWHC 277 (Ch) ¶ 57 (dismissing derivative claim because director did not "benefit[] personally from the alleged breaches of duty") (English law); 2nd McGuffin Decl. ¶¶ 4.9-4.11.   The DAF Parties allegations that HCLOF's directors were self-interested and "financially beholden to" majority shareholder HCM because it purportedly "controls their compensation awards," Dkt. 155 ¶¶ 4-5, 50, do not suffice, absent an allegation that their allegedly wrongful conduct "resulted in compensation beyond the normal emoluments of office."  *Shenwick*, 106 A.D.3d at 639 (ruling that the fraud element was not met); *see also Winn*, 499 F. Supp. 2d at 398 (allegation that directors "received substantial salaries" did not "establish [] self-dealing") (English law); *Tyco*, 340 F. Supp. 2d at 100 ("directors' normal fees and emoluments" were not "improper self-dealing") (English law); 2nd McGuffin Decl. ¶¶ 4.5-4.8.  The DAF Parties do not allege that HCLOF's directors obtained remuneration beyond their normal compensation for director duties, much less with the particularity required by Rule 9(b).  *Zohar CDO 2003-1 Ltd. v. Patriarch Partners LLC*, 2021 WL 4460547, at *8, *13 (S.D.N.Y. Sept. 29, 2021) (Castel, J.) (fraud on the minority exception failed because plaintiffs failed to allege fraud with particularity).

In addition, the DAF Parties cannot rely on the personal rights exception because their claims are predicated on alleged wrongs committed by Plaintiffs against HCLOF that harmed HCLOF and are thus derivative.  *See Saratoga Advantage Tr. Tech. & Comms. Portfolio v. Marvell Tech. Grp.*, 2016 WL 4364593, at *4 (N.D. Cal. Aug. 16, 2016) (personal rights exception did not apply to investor claims based on lost share value because a "plaintiff's personal rights as a shareholder are not implicated" if the claim is properly characterized as a derivative action); *Voss v. Sutardja*, 2015 WL 349444, at *10 (N.D. Cal. Jan. 26, 2015) (similar).  This is true though they allege      their      rights      under      the      Members      Agreement      were      interfered      with.

2nd McGuffin Decl. ¶ 3.14; Dkt. 111-21, *Marex*, [2020] UKSC 31 ¶¶ 52-54 (claim for lost share value damages "resulting from a breach of obligations owed to the company" was derivative even though "contractual obligations owed to [the shareholder]" were also breached).[5]  Further, the DAF Parties "cannot escape the 'reflective loss principle' merely by showing that [they] ha[ve] an independent cause of action" for tortious interference because they "must also have suffered 'separate and distinct' loss," and the loss they identify—reduced distributions by HCLOF to them—is not separate and distinct.  Dkt. 182-2, *Burnford v. Auto. Assoc. Devs. Ltd.*, [2022] EWCA Civ 1943 ¶ 30 ("a reduction in … distributions which is a knock-on effect of loss suffered by the company [is not] 'separate and distinct.'"); *see also* 2nd McGuffin Decl. ¶¶ 3.14-3.16.

## II. THE DAF PARTIES FAIL TO PLEAD ANY VIABLE GROUNDS TO INVALIDATE THE SETTLEMENT AGREEMENTS

Even if the DAF Parties had standing, they have not plausibly pled any viable basis to invalidate the Settlement Agreements under Texas or New York law.[6]  *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 137 (2d Cir. 2011) (dismissing claim for failure to plausibly allege grounds for invalidation).  The DAF Parties wrongly assert (Dkt. 155 ¶¶ 68-70, 75-77) that the Settlement Agreements are unenforceable because they purportedly (1) are the product of collusion, bad faith, or unclean hands, (2) violate public policy by breaching the Members Agreement, and (3) lack consideration.  These theories all fail as a matter of law.

**Collusion, Bad Faith, and Unclean Hands.** The DAF Parties' attempt to invalidate the Settlement Agreements based on "collusion, bad faith, [and/or] unclean hands" (Dkt. 155 ¶¶ 68,

---

[5]  As noted above, the same is true under New York and Delaware law.  *El Paso*, 152 A.3d at 1259-62 (claims under entity's constitutive agreement were derivative); *Yudell*, 99 A.D.3d at 110 (New York law follows Delaware law).

[6]  Texas law governs challenges to the substance of the 2021 Settlement Agreement because it selects Texas law, Dkt. 155-3 § 14, and New York law governs challenges to the substance of the 2023 Settlement Agreement because it selects New York law, Dkt. 155-4 § 12(d).  *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004) ("a choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract").

75) fails because the DAF Parties have not adequately alleged collusion.  Whatever the label, the DAF Parties' invalidation claims all turn on the contention that the Settlement Agreements were the result of collusion between Plaintiffs and HCLOF, rather than an arms' length negotiation. "[A]llegations [of] collusion … must be alleged with particularity under Rule 9(b)." *Robinson v. Nat'l R.R. Passenger Corp.*, 1995 WL 444322, at *8 (S.D.N.Y. July 26, 1995); *see also Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, 2012 WL 612358, at *12 (S.D.N.Y. Feb. 23, 2012) (similar).  Although the DAF Parties use the word "collusion" or "collusive" 12 times in their counterclaims (Dkt. 155 ¶¶ 4 n. 4, 6, 7, 33, 48, 57, 60, 65, 68, 75, 97), they do not plead any facts that give rise to a plausible inference of improper dealing between HCLOF's directors and either Plaintiffs or HCM.  There is no allegation that the Settlement Agreements gave any personal benefit to HCLOF's directors or that Plaintiffs otherwise provided any side benefit.

While the DAF Parties allege that HCM—a non-party to this action—had ulterior motives to prevent disbursement of reserved funds to HCLOF, *id.* ¶¶ 51-53, HCM's motives are irrelevant because it was HCLOF (through its directors) that entered into the Settlement Agreements.  The DAF Parties fail to plausibly allege that HCM controlled HCLOF's directors or that those directors otherwise lacked independence.  Rather, their allegation that the directors received "compensation" that HCM purportedly controlled, Dkt. 155 ¶¶ 4-5, is precisely the type of conclusory assertion that fails to show director lack of independence.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 536 (S.D.N.Y. 2008) (rejecting argument that "directors are not independent because they receive compensation").  HCM's ability to elect HCLOF's directors is also insufficient.  *See In re Gaylord Container Corp. S'holders Litig.*, 753 A.2d 462, 465 n.3 (Del. Ch. 2000) ("[T]he mere fact that a controlling stockholder elects a director does not render that director non-independent").  And, even if relevant, the DAF

Parties' conclusory allegation that HCM supported Settlement Agreements that cost it millions of dollars in distributions from HCLOF to advance a broader litigation campaign against the DAF Parties do not meet the plausibility standard, let alone the particularity requirements of Rule 9(b). *See Kalnit v. Eichler*, 99 F. Supp. 2d 327, 343 (S.D.N.Y. 2000) (theory that defendants wanted to "depress [] stock" "does not yield a reasonable inference of fraudulent intent" because it "defies economic reason"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). The Second Circuit has rejected this type of pleading in nearly identical circumstances. *See Wilson v. Dantas*, 746 F.3d 530, 536 (2d Cir. 2014) (allegation that settlement intended to harm non-settling third party was inadequate based on "far more plausible inference" that settling parties' "motive was to end nearly four years of contentious litigation," which was "nothing more than appropriate economic self-interest").

As the DAF Parties readily admit, the Settlement Agreements freed up millions in distributions that were otherwise beyond HCLOF's reach absent protracted litigation with an uncertain outcome. Dkt. 155 ¶¶ 35, 63; Dkt. 155-3 §§ 4-5; Dkt. 155-4 § 1. The DAF Parties must do more to adequately allege that HCLOF's exercise of its own economic self-interest was improper. *See, e.g., Matter of Teltronics Servs., Inc.*, 29 B.R. 139, 166 (Bankr. E.D.N.Y. 1983) (actions "motivated by a legitimate desire to protect [a party's] interest[s]" are not unclean hands); *Jones Apparel Grp., Inc. v. Piccone*, 1994 WL 260767, at *4 (S.D.N.Y. June 8, 1994) (similar) (striking unclean hands defense); *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006) ("act[ing] on [one's] own interests" is not bad faith); *Diaz v. Deutsche Bank*, 2015 WL 12777391, at *4 (S.D. Tex. Apr. 14, 2015) (similar), *aff'd*, 667 F. App'x 468 (5th Cir. 2016).

The allegation (Dkt. 155 ¶¶ 32-33) that Plaintiffs and HCLOF timed the 2023 Settlement Agreement on the DAF Parties' signaling that they intended to sue HCLOF and the Trustee, *see* Dkt. 155-1 at 2-3, likewise does not move the needle. The benefits of the 2023 Settlement

Agreement for Plaintiffs would be ephemeral if the DAF Parties could circumvent it by forcing HCLOF to distribute the Subordinated Notes to the DAF Parties so that they could bring the claims subject to that settlement.  If the 2023 Settlement Agreement made sense for HCLOF and the Plaintiffs, then *of course* it had to be completed before resolution of the DAF Parties' Guernsey lawsuit—since the relief that lawsuit sought would make the settlement impossible.  Having failed to allege that the 2023 Settlement Agreement involved collusion, the DAF Parties cannot cure that failure with an allegation that the 2023 Settlement Agreement was timed so as to be effective.

**Breach of the Members Agreement and Public Policy.** The DAF Parties' argument that the Settlement Agreements violate public policy by breaching the Members Agreement (Dkt. 155 ¶¶ 68-69, 75-76) duplicates their tortious interference with contract claim and fails for the same reasons that, as explained more fully *infra*, the DAF Parties fail to plausibly allege tortious interference.  *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir. 1990) (dismissing contract invalidation claim for failure to allege that the defendant committed "wrongful conduct … at least as substantial as that required for a claim of tortious interference").  The DAF Parties have pointed to no other "public policy interest [] outweigh[ing] the strong public policy in favor of freedom of contract." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 363 (2019).

**Lack of Consideration.** The DAF Parties conclusory allegation that the Settlement Agreements are invalid for lack of consideration (Dkt. 155 ¶¶ 70, 77) is rebutted by the Settlement Agreements themselves, which plainly provide consideration to both parties.

The 2021 Settlement Agreement provided HCLOF with multiple forms of valid consideration, including (1) ACM's dismissal of ongoing litigation against HCLOF, Dkt. 155-3 at 1-2 & § 7, (2) a general release, *id.* § 9, and (3) ACM's commitment to cooperate with HCLOF to discharge the injunction prohibiting HCLOF from redeeming the Acis CLOs, which HCLOF had

no pre-existing right to require, *id*. at 1-2 & § 4.  The 2023 Settlement Agreement likewise provided HCLOF with multiple forms of valid consideration including (1) the immediate distribution of funds that Plaintiffs contend were properly reserved, Dkt. 155-4 §§ 1-2, and (2) the provision of monthly reports on the remaining reserved funds, which Plaintiffs had no pre-existing obligation to provide, *id*. § 3.  The consideration received is sufficient under New York and Texas law.  *See Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex. App. 2011) (release of "claims that were made [in a lawsuit] or could have been made" was sufficient consideration); *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 571 (Tex. App. 2004) (granting a party "a legal right to which [it] would not otherwise be entitled" is sufficient consideration); *Jemzura v. Jemzura*, 36 N.Y.2d 496, 504 (1975) ("waiver" of a claimed entitlement to funds "constitute[s] [] consideration"); *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 495 (S.D.N.Y. 2004) (obligation that promisor had "no pre-existing duty to undertake" is valid consideration).  No additional consideration was required. *See Tobbon v. State Farm Mut. Auto. Ins. Co.*, 616 S.W.2d 243, 245 (Tex. Civ. App. 1981) ("inadequacy of consideration is not sufficient to [invalidate] a release"); *Elson v. Delaney*, 47 A.D.2d 708, 709 (4th Dep't 1975) (similar).  Moreover, because New York law does not require a "release [to] be supported by consideration," *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 401 (S.D.N.Y. 2002), the 2023 Settlement Agreement is enforceable regardless of consideration.

## III.   THE DAF PARTIES' NEW TORT CLAIMS MUST BE DISMISSED

The DAF Parties fail to adequately plead their counts for New York law tortious interference with the Members Agreement and unjust enrichment.

### A.   The Tortious Interference Claim Must Be Dismissed

Tortious interference with contract requires "the defendant's intentional procurement of the third party's breach of the contract [with plaintiff] without justification" and "actual breach of the contract."  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y.

13

2014).  The DAF Parties have not plausibly alleged a breach of the Members Agreement that Plaintiffs intentionally and unjustifiably induced, so their claim must be dismissed.  Guernsey law governs the claim's actual breach element,[7] and New York law governs the other elements.

**No Actual Breach**.  The DAF Parties base their tortious interference claim on an assertion that HCLOF breached the Members Agreement's good faith clause, which states that HCLOF must "at all times act in good faith towards [CLOH] and [] use all reasonable endeavours to ensure that this Agreement is observed."  Dkt. 155-2 § 20.5.  English and Guernsey law interpret express good faith clauses restrictively as imposing only a narrow duty to avoid bad faith, meaning dishonesty or commercially unacceptable actions.  2nd McGuffin Decl. ¶¶ 5.3-5.7, 5.14.1-5.14.3; Dkt. 182-8, *Faulkner v. Vollin Hldgs. Ltd*, [2022] EWCA Civ 1371 ¶¶ 275-76.  They neither require parties to prefer the other party's interests, nor act outside the terms of the contract, and cannot impose additional terms that the parties could have, but did not, include.  2nd McGuffin Decl. ¶¶ 5.8-5.13, 5.14.3-5.13.4; Dkt. 182-12, *CPC Grp Ltd v. Qatari Diar Real Est. Inv. Co.*, [2010] EWHC 1535 (Ch) ¶¶ 240, 243 (good faith clause did not impose a duty to "prefer the interests of the other [] party"); Dkt. 182-9, *Re Coroin*, [2013] EWCA Civ 781 ¶ 51 (good faith clause did not require party to "act … outside the terms of" the contract); Dkt. 182-8, *Faulkner*, [2022] EWCA Civ 1371 ¶¶ 255-56 (good faith clause could not imply term that parties  declined to include).[8]

Here, none of the DAF Parties' scattershot theories (Dkt. 155 ¶ 25(i-viii)) support a breach claim.  The DAF Parties' first theory—that HCLOF made "misrepresentations" and "acted

---

[7]  *See* Dkt. 155-2 § 22 (selecting Guernsey law); *Ente Nazionale Idrocarburi v. Prudential Securities Grp., Inc.*, 744 F. Supp. 450, 460 (S.D.N.Y. 1990) (contract's choice of law clause governs actual breach element).

[8]  New York's implied covenant is similar.  *See, e.g., Thyroff*, 460 F.3d at 408 ("the implied covenant does not … undermine a party's general right to act on its own interests"); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (implied covenant "does not add [] to the contract a substantive provision not included by the parties").

dishonestly" concerning its negotiation of the Settlement Agreements (Dkt. 155 ¶ 25(v), 41))—

fails to plausibly allege any dishonest statements, let alone with the particularity required by Rule

9(b). *See Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 387 (S.D.N.Y. 2016) (breach of good faith

claim "sound[ing] in fraud" was subject to Rule 9(b)); Dkt. 146-2, *Int'l Healthcare Sols. Ltd. v.

Utmost Worldwide Ltd.*, [2022] GRC 094 ¶¶ 36-40 (Guernsey law is similar); *Robinson*, 1995 WL

444322, at *8 (S.D.N.Y. July 26, 1995) (collusion allegations are subject to Rule 9(b)).  The DAF

Parties do not allege dishonesty concerning the 2021 Settlement Agreement, which was executed

in April 2021, Dkt. 155 ¶ 26, before HCLOF made any statement the DAF Parties allege was

dishonest, *id*. ¶¶ 42-47.  And while the DAF Parties theorize (*id*. ¶¶ 48-49) that HCLOF's

statements that it believed that Plaintiffs' creation of the reserves violated the Indentures must have

been dishonest because HCLOF later entered into the 2023 Settlement Agreement concerning the

reserves, this theory makes no sense.  Parties that believe they have meritorious contract claims

routinely settle those claims for consideration, as HCLOF did here, and such settlements do not

plausibly suggest that the settled claims were not honestly asserted in the first place.

The DAF Parties' second theory—that HCLOF violated a supposed duty of "transparency"

and "disclos[ur]e" to the DAF Parties by not telling them that it was pursuing settlement

discussions with Plaintiffs (Dkt. 155 ¶¶ 25(iv, viii)—also fails because good faith clauses in

shareholders agreements do not impose duties of disclosure over and above express statutory and

contractual requirements, which the DAF Parties have not alleged were violated.  *See*, *e.g.*,

Dkt. 182-8, *Faulkner*, [2022] EWCA Civ 1371 ¶¶ 274, 277, 292-293 (rejecting argument that good

faith clause imposed a "procedural duty of fair and opening dealing … going beyond the terms of"

legislative disclosure requirements).  This is especially true because the Members Agreement

guarantees certain information rights, Dkt. 155-2 §§ 11.1-11.3, 13.1-13.2, but does not require

HCLOF to inform the DAF Parties of settlement negotiations.  Dkt. 182-8, *Faulkner*, [2022] EWCA Civ 1371 ¶ 268 (rejecting attempt to use good faith clause to impose additional specific protections beyond those already obtained).  But even if the clause imposed additional disclosure obligations, the DAF Parties have not plausibly alleged any breaches because the documents the Amended Counterclaims incorporate by reference and selectively and misleadingly quote from (Dkt. 155 ¶¶ 43, 45) show that HCLOF disclosed to the DAF Parties that it was exploring settlement with Plaintiffs, so it could not be a surprise that a compromise was reached.  *See* Dkt. 179-1 at -583 (HCLOF disclosing that its counsel "communicated with US Bank" concerning the reserves dispute and that HCLOF "continues to … explore means to resolve this matter efficiently and inexpensively"); Dkt. 179-2 at -236 (HCLOF disclosing that, "[a]s reported to you previously, the Company [] ha[s] engaged with US Bank and A[CM] on [the reserves dispute]," and HCLOF "is pursuing courses of action … less costly than … litigation").  These documents control over the selective quotes from the documents in the counterclaims because they contradict the DAF Parties' erroneous and misleading suggestion that the documents do not disclose that settlement discussions were ongoing.  *See Michael Grecco Prods., Inc. v. Time USA, LLC*, 2021 WL 3192543, at *3 n.7 (S.D.N.Y. July 27, 2021) ("When documents … incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true."); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 319 (S.D.N.Y. 2021) (dismissing misrepresentation claim because "the documents Plaintiffs rely on … contradict [misrepresentation] allegation").

The DAF Parties next allege (Dkt. 155 ¶¶ 25(i-iii), (vi), 27-28, 38-39) that HCLOF treated CLOH differently from other HCLOF shareholders by (1) agreeing to restrict the transfer of HCLOF's notes to the DAF Parties, (2) agreeing to cooperate concerning the recoupment of legal

fees, and (3) not negotiating a release of Plaintiffs' claims against the DAF Parties.  The good faith clause, however, does not require HCLOF to "have regard to the interests of" CLOH as a minority shareholder when making business decisions; it merely codifies HCLOF's directors' existing duty to make decisions in HCLOF's own best interests.  Dkt. 182-8, *Faulkner*, [2022] EWCA Civ 1371 ¶¶ 274, 277 (good faith clause did not impose duty to "have regard to the interests of the Minorities … over and above any [general company law] requirements … to have regard to the interests of the Company"); *see* Dkt. 111 ¶¶ 5.1, 5.4 (directors must act in company's best interests and do not owe fiduciary duties to shareholders); 2nd McGuffin Decl. ¶ 5.7.  And the DAF Parties have not plausibly alleged that any provision they target was not in HCLOF's best interests or otherwise commercially unacceptable.  To the contrary, given the DAF Parties' intent to bring the very claims that HCLOF sought to settle, the Settlement Agreements were only made possible by including a clause prohibiting HCLOF from circumventing their terms by simply distributing the Subordinated Notes to a different party that might not be bound by the terms that HCLOF had agreed to.

The 2023 Settlement Agreement's legal fees cooperation provision (Dkt. 155-4 § 6) also furthers HCLOF's interests by requiring Plaintiffs to seek recovery of legal fees that otherwise would reduce proceeds available for distribution to HCLOF from their litigation adversaries.  That the DAF Parties and certain affiliates decided to sue Plaintiffs and cause Plaintiffs' legal fees (and HCLOF's corresponding losses) to increase does not convert this obviously self-interested protection for HCLOF under the Settlement Agreements into a breach of the Members Agreement.

Likewise, there is nothing improper about the Settlement Agreements' transfer restrictions (Dkt. 155-3 § 2; Dkt. 155-4 § 12(a)(ii)), which settlements would be meaningless if they could be circumvented by transferring the Subordinated Notes from HCLOF to the DAF Parties.  *See*, *e.g.*, *In re 321 Henderson Receivables Origination, LLC*, 19 Misc.3d 504, 506 (N.Y. Sup. Ct. 2008)

(enforcing "prohibition[s] against assignments or transfers" in settlement).  HCLOF was not required to prefer the DAF Parties' interests over its own interests in settling disputes with Plaintiffs and securing funds for distribution—settlements that would not be possible if they preserved the DAF Parties' ability to bring the very claims being settled.[9]  Dkt. 182-12, *CPC Grp.*, [2010] EWHC 1535 (Ch) ¶¶ 240, 243 (no requirement to "prefer the interests of the other [] party").

Similarly, the Members Agreement does not require HCLOF to negotiate settlements for the DAF Parties with Plaintiffs, so the good faith clause does not either.  Dkt. 182-9, *Re Coroin*, [2013] EWCA Civ 781 ¶ 51 (no "obligation to act … outside the terms of the [] agreement").

Finally, the DAF Parties' claim (Dkt. 155 ¶¶ 25(i), 35-37) that the 2023 Settlement Agreement was "commercially unacceptable" because it did not obtain immediate payment of all reserved funds fails to plausibly allege actual breach.  HCLOF's directors have authority to decide whether and how to settle potential claims.  *See* 2nd McGuffin Decl. ¶ 3.16.  The DAF Parties' bare disagreement with HCLOF's directors' decision to enter into the 2023 Settlement Agreement does not make it commercially unacceptable, nor does the good faith clause give the DAF Parties additional consent rights beyond those for which they bargained, *see* Dkt. 155-2 §§ 3.2, 12.3, 14.1.3, which did not include consent rights over settlement agreements. *See* Dkt. 182-8, *Faulkner*, [2022] EWCA Civ 1371 ¶¶ 268, 291, 297 (good faith clause did not grant consent rights beyond those "expressly" granted, and defendants who believed they were acting "in the interests of the Company" did not breach that clause in making decision that adversely impacted shareholder).

While the DAF Parties allege (Dkt. 155 ¶¶ 35-36) that HCLOF knew that Plaintiffs' maintenance of the reserves lacked "colorable contractual or other legal" support, this allegation

---

[9]  New York law is similar.  *Duane Reade v. I.G. Second Generation Partners, L.P.*, 280 A.D.2d 410, 412 (1st Dep't 2001) (implied covenant did not require party to settle with third party "on terms favorable to [its counterparty]").

is unsupported by the Indentures or industry practice and is rebutted by multiple cases holding that creating comparable reserves was permitted in similar circumstances. *See* Dkts. 108-7-10, *PIMCO Absolute Return Strategy v. Wells Fargo Bank*, Index No. 654743/17 (N.Y. Sup. Ct. Nov. 13, 2017) at 18:18-24, 20:14-16 (indentures authorized the creation of litigation reserves in the context of an optional redemption to cover the trust's indemnification obligations); Dkt. 108-11, *Matter of Tr. established under Pooling & Servicing Agreement relating to Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2007-C30*, (Minn. Dist. Ct. Oct. 26, 2022) at 10 (pooling and servicing agreement authorized servicers "to create [$38 million] trust reserves to meet significant anticipated future trust expenses," consistent with industry "custom and practice"). Plaintiffs are aware of no contrary authority on point. Moreover, contrary to the DAF Parties' suggestion (Dkt. 155 ¶ 36), HCLOF did not release claims related to reserved funds not yet disbursed, but merely agreed to forbear from asserting such claims until this Action is resolved.

The DAF Parties' conclusory allegation that HCLOF had no "legitimate business purpose[]" to make the 2023 Settlement Agreement, Dkt. 155 ¶ 81(vii), ignores the obvious benefits the agreement provided, namely Plaintiffs' agreement to distribute $16 million in reserved funds to investors in the Acis CLOs, principally HCLOF, *see* Dkt. 155-4 §§ 1, 4(b) & (c), which benefits were shared ratably with CLOH as a shareholder of HCLOF, as the DAF Parties have admitted, *see* Dkt. 77 ¶¶ 29, 31, 33. If the DAF Parties' mere disagreement with the terms of the 2023 Settlement Agreement were enough to support a claim that HCLOF acted in bad faith, no settlement entered into by a corporate entity would be safe from challenge by disgruntled stakeholders who preferred litigation to consensual resolution. That result would be irreconcilable with New York's strong public policy supporting parties' ability to settle legal disputes. *Denburg*, 82 N.Y.2d at 383.

**No Intentional Interference**. The DAF Parties also have not plausibly alleged that Plaintiffs intentionally induced any alleged breach of the Members Agreement by HCLOF. *See Alvord & Swift v. Stewart M. Muller Const. Co.*, 46 N.Y.2d 276, 281 (1978) ("[I]nterference must be intentional, not merely negligent or incidental").  Instead, their allegations of intentional interference solely "[u]pon information and belief" (Dkt. 155 ¶ 86) without any supporting facts are insufficient as a matter of law. *See*, *e.g.*, *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 626 (S.D.N.Y. 2014) (dismissing tortious interference claim because "information and belief" intentional interference allegation "lack[ed] any factual underpinning").  Relevant here, courts routinely dismiss tortious interference claims for failure to allege that the settling party intended to tortiously interfere with its counterparty's contracts with its stakeholders. *Gov't Emps. Ins. Co. v. Hazel*, 2014 WL 4628655, at *12 (E.D.N.Y. Aug. 11, 2014) (dismissing tortious interference claim for failure to plausibly allege that defendant "intended for its … settlement … to occasion [counterparty's] breach" of a contract with its stakeholder, even if the settlement had that "effect"), *aff'd*, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014); *In re George Wash. Bridge Bus Station Dev. Venture LLC*, 2022 WL 4653117, at *13 (Bankr. S.D.N.Y. Sept. 30, 2022) (similar).  That is especially the case because the DAF Parties admit that Plaintiffs made the Settlement Agreements to advance their own "economic interests" in "fund[ing] expenses,"  Dkt. 155 ¶¶ 6, 35, and thus did not "target" the Members Agreement as New York law requires. *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 328 (S.D.N.Y. 2017) (dismissing tortious interference claim); *see also Finkel v. E.A. Techs., Inc.*, 2014 WL 4364757, at *10 (E.D.N.Y. Sept. 3, 2014) (no intentional interference where defendant "acted in its own interests by ensuring its fees were paid"); *Wilson v. Dantas*, 2013 WL 92999, at *6 (S.D.N.Y. Jan. 7, 2013) ("Adversarial bargaining

to achieve [defendant's] own goals cannot be simultaneously construed as assisting [defendant's] opponent … in breaching a duty … to [plaintiff]"), *aff'd*, 746 F.3d 530 (2d Cir. 2014).

The DAF Parties' allegation (Dkt. 155 ¶ 24) that Plaintiffs had the requisite intent because they knew of the Members Agreement's existence by virtue of it having been marked as an exhibit in several bankruptcy court hearings in 2018 is also without merit.  Mere "knowledge of a contract's existence is insufficient to support allegations that the defendants 'induced' any breach," *Hazel*, 2014 WL 4628655, at *12, and under Guernsey law Plaintiffs are presumed to have acted in good faith when contracting with HCLOF and had no obligation to inquire into any purported limitations on its directors' power to bind it.  2nd McGuffin Decl. ¶¶ 6.2-6.4.  And even if the DAF Parties had alleged facts suggesting that Plaintiffs were aware of the terms of the Members Agreement or knew that the Settlement Agreements would make it impossible for HCLOF to perform the Members Agreement—they have not—that would still not constitute intentional inference.   To the contrary, it is black letter law that "a party does not induce or procure a breach of contract when he 'merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.'"  *High Falls Brewing Co., LLC v. Bos. Beer Corp.*, 852 F. Supp. 2d 306, 312 (W.D.N.Y. 2011) (dismissing tortious interference claim) (quoting Restat. (2d) Torts § 766, cmt. N (1979)), *aff'd*, 513 F. App'x 12 (2d Cir. 2013); *see also Prospect*, 256 F. Supp. 3d at 328 (defendant's "disbursing the settlement money with knowledge of [counterparty's] possible … future breach [of contract with third party] does not amount to intentional procurement"); 2nd McGuffin Decl. ¶ 6.5 (defendant's mere knowledge that its contract with the company is beyond the directors' powers is not bad faith under Guernsey law).

**No Unjustified Interference**.  Finally, the DAF Parties fail to plausibly allege that any interference was unjustified.  Plaintiffs have an "appropriate economic self-interest" in settlement,

*see Wilson*, 746 F.3d at 536, and New York law has "strong policies in favor of voluntary settlements." *Denburg*, 82 N.Y.2d at 385.  Both interests would justify any purported interference by Plaintiffs.  *See Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of New York, Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) ("the interests the defendant seeks to advance [and] the social interests at stake" can justify interference).  Plaintiffs' legal and financial interest in whether and to what extent to disburse reserved funds to HCLOF—a third-party beneficiary to the Indentures to which the Trustee is party and certain of whose provisions ACM agreed to accept in the PMAs—is also sufficient justification.  *Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*, 2021 WL 2358695, at *4 (S.D.N.Y. June 9, 2021) (noteholder's "legal and financial [] interest in [trustee's] proper management of [] funds" justified interference with trustee's contract).  Indeed, courts dismiss tortious interference claims involving settlements where, as here, the allegedly interfering party protected its own interest in avoiding liability.  *See In re George Wash. Bridge*, 2022 WL 4653117, at *13 (implausible that alleged interference was not justified by settling defendant's contractual interest in "not [] be[ing] liable").  Any other rule would undercut the "strong policy considerations favor[ing] the enforcement of settlement[s]" and the "finality and repose" they provide whenever a settling party's stakeholder disagrees with the outcome.  *Denburg*, 82 N.Y.2d at 383.

The DAF Parties have not plausibly alleged that Plaintiffs used improper means in agreeing to the Settlement Agreements and therefore cannot overcome Plaintiffs' justification in entering the settlements.  The DAF Parties do not allege illegality, and their allegation that Plaintiffs acted to advance their "economic interests" (*see* Dkt. 155 ¶ 6) contradicts their malice allegations.  *See CapLOC, LLC v. McCord*, 2018 WL 3407708, at *6 (S.D.N.Y. June 12, 2018) ("bare allegations of malice do not suffice" because they "are contradicted by [the complaint's allegations that] defendants' actions were financially [motivated].").  Further, their conclusory allegations

(Dkt. 155 ¶ 55-59) that Plaintiffs breached the Indentures and PMAs by creating the reserves and that the ACM Parties have prior disputes with Mr. Dondero and his various controlled entities do not and cannot establish malice.  *See Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, 2008 WL 2930546, at *10 (S.D.N.Y. July 29, 2008) (allegation that "reiterates plaintiffs' breach of contract theory" is insufficient); *Weitz v. Bruderman*, 14 A.D.3d 354, 354 (1st Dep't 2005) ("[T]he possible existence of prior disputes … is not enough").  And their conclusory "dishonest[y]" allegation, Dkt. 155 ¶ 88, fails because they neither allege misrepresentations, *see supra* at 14-15, nor that Plaintiffs owed any duty to correct the same, *see Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995) (no duty to disclose "[i]n the absence of a fiduciary relationship").

## B.    The Unjust Enrichment Claim Must Be Dismissed

The unjust enrichment claim must also be dismissed because it is duplicative of the breach of contract claim and the DAF Parties have not plausibly alleged that they owned the funds that Plaintiffs allegedly improperly reserved.  *First*, the Indentures, PMAs and Members Agreement bar the unjust enrichment claim because those contracts govern the subject matter of that claim.  *See Ellington Credit Fund, Ltd. v. Select Portf'o Serv., Inc.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011).  The DAF Parties admit the same by alleging that the reservation of funds breached those contracts.  Dkt. 155 ¶¶ 25(v), 56-59.  It does not matter that the DAF Parties are not parties to the Indentures and PMAs or that Plaintiffs are not parties to the Members Agreement because those contracts bar unjust enrichment claims "even if one of the parties to the lawsuit is not a party to the contract."  *Ellington*, 837 F. Supp. 3d at 202-203 (pooling and servicing agreement barred unjust enrichment claim even though defendants were not parties to that agreement).  *Second*, the unjust enrichment claim fails because the DAF Parties did not own the funds that they allege Plaintiffs wrongly retained.  Dkt. 155 ¶¶ 7(i), 63; *Curry*, 2022 WL 17342495, at *3 (dismissing unjust enrichment claim because plaintiff "never acquired a property interest" in the funds).

23

## IV.   THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS

The Court should also grant judgment on the pleadings on Plaintiffs' claims against the DAF Parties under Rule 12(c) because they turn on questions of law, nearly all of which are implicated by Plaintiffs' Rule 12(b)(6) motions to dismiss Defendants' counterclaims. *See Lively v. Warfa Inv. Adv. Grp.*, 6 F.4th 293, 301-302 (2d Cir. 2021).

*First*, the Court should grant judgment on the pleadings on Count I because the DAF Parties lack standing to bring the claims for alleged mismanagement of the Acis CLOs asserted in the 2019 and 2020 Lawsuits and subsequently threatened. AC ¶ 65. Plaintiffs are entitled to judgment on the pleadings because, as in Section I above, the Court can determine from the pleadings that the DAF Parties lack derivative standing to pursue claims in relation to the Acis CLOs on behalf of HCLOF. Further, like NexPoint, the DAF Parties lack direct standing because ACM does not owe fiduciary duties to investors in the Acis CLOs and the DAF Parties' threatened tort claims are derivative. *See* Dkt. 107 at 25-27, 31. The DAF Parties also lack derivative standing because none of the exceptions to Cayman Islands law's prohibition on derivative standing apply. *See id.* at 31-35. To the extent the DAF Parties seek to proceed double-derivatively on behalf of the Trustee, they cannot do so because the Trustee does not have authority under the Indentures to pursue claims based on the breach of the Portfolio Manager's obligations under the PMAs until an Event of Default occurs, which the DAF Parties do not allege (and has not occurred). *Id.* at 36-37.[10]

*Second*, the Court should also grant judgment on the pleadings on Count II because the 2021 Settlement Agreement bars the DAF Parties from bringing their IAA, TIA and other claims asserted in the 2019 and 2020 Lawsuits and threatened in the May 8 Letter. The 2021 Settlement

---

[10]   The DAF Parties additionally lack standing to bring their threatened IAA and TIA claims because they do not exist. *See NexPoint*, 620 F. Supp. 3d, at 43-44 (ruling that NexPoint's IAA claims do not exist), 47 (NexPoint abandoned its TIA claim against the Trustee); Dkt. 108-21 at 9-12 (the Acis 6 Indenture is not subject to the TIA).

Agreement unambiguously bars those claims. *See* Dkt. 15-12 § 10 (releasing "any and all claims … against … [ACM], and [Mr.] Terry, in any capacity, Brigade Capital Management, LP, [and] U.S. Bank National Association"); *Garza*, 345 S.W.3d at 480 (release's unambiguous meaning is a question of law); *Lively*, 6 F.4th at 302 (courts may resolve "questions of law" under Rule 12(c)). As prospective derivative plaintiffs seeking to sue on behalf of HCLOF, the DAF Parties "are subject to the same defenses as are available against [HCLOF]," *see In re Salomon Inc. S'holders Deriv. Litig.*, 1994 WL 533595, at *4 (S.D.N.Y. Sept. 30, 1994), including settlements HCLOF made, *Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Azioni*, 78 F.R.D. 1, 5 (S.D.N.Y. 1978) (corporate release barred derivative claims).  Because the release covers the DAF Parties' threatened claims, it is "a complete bar" to them.  *See Tamez*, 155 S.W.3d at 569; *see also Borden v. City of New York*, 2017 WL 744593, at *4 (S.D.N.Y. Feb. 24, 2017) (granting motion to dismiss based on unambiguous release) (Woods, J.).

## V.    LEAVE TO AMEND THE COUNTERCLAIMS SHOULD BE DENIED

"Where the problem with [a complaint] is substantive [and] better pleading will not cure it, leave to amend should be denied as futile."  *Off. Sol. Grp., LLC*, 544 F. Supp. 3d at 419.  That is precisely the situation here.  On the admitted facts, the DAF Parties' attacks on the Settlement Agreements all fail as a matter of basic doctrine.  These deficiencies, many of which were also present in the DAF Parties' initial counterclaims, persisted even after the Court granted them leave to file the Amended Counterclaims and Plaintiffs' pre-motion letters identified continued and new deficiencies.  Dkts. 146, 153, 154; *see Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) (denying leave to amend due to "[r]epeated failure to cure deficiencies by amend[ing]").

## CONCLUSION

For the above reasons, the DAF Parties' counterclaims should be dismissed with prejudice and Plaintiffs' motion for judgment on the pleadings against the DAF Parties should be granted.

Dated: New York, New York
  August 15, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:    */s/ Blair A. Adams*
 Jonathan E. Pickhardt
 Blair A. Adams
 Brendan T. Carroll
 Misha Boutilier
 Michael R. Bloom
 Jeffrey Arnier
 51 Madison Avenue, 22nd Floor
 New York, New York 10010
 (212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis*
*Capital Management, L.P.*

SEWARD & KISSEL LLP

By:    */s/ Mark D. Kotwick*
 Mark D. Kotwick
 Thomas Ross Hooper
 Julie J. Hong
 One Battery Park Plaza
 New York, New York 10004
 (212) 574-1200

*Attorneys for Plaintiff U.S. Bank National*
*Association, in its capacity as Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on August 15, 2023, he caused a true copy of the

foregoing document to be served via CM/ECF to all counsel of record.


<u>*/s/ Misha Boutilier*</u>
Misha Boutilier