# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

|  |  |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., | No. 1:21-cv-11059 GHW |
| Plaintiffs, | |
| -v- | |
| THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT STRATEGIC OPPORTUNITIES FUND, | |
| Defendants | |

## DECLARATION OF JONATHON MILNE IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS

I, Jonathon Milne of Conyers, Dill & Pearman LLP ("Conyers") SIX, 2nd Floor Cricket Square, 171 Elgin Avenue, Cayman Islands, declare as follows:

### A.      Introduction

1.      I am a Partner with Conyers, an international law firm that advises on the laws of the Cayman Islands, Bermuda, and the British Virgin Islands.  I currently serve as the Co-Head of Conyers' Cayman Islands' Litigation & Restructuring departi

1

EXHIBIT

7

2.    I have been instructed by Quinn Emanuel Urquhart & Sullivan, LLP (counsel for Joshua N. Terry and Acis Capital Management L.P.) in the above-captioned proceedings to express my opinion on certain questions of Cayman Islands law, as set out below.

3.    I understand this Declaration will be submitted in connection with the Plaintiffs' Motion to Dismiss Defendants' Counterclaims and for Judgment on the Pleadings in the above-captioned proceeding.  I have reviewed the pleadings and I provide my responses to certain assertions or assumptions as a matter of Cayman Islands law.

4.    I consider that I have the requisite qualifications and expertise to express my opinions on the matters that I have been asked to consider under Cayman Islands law, in light of the matters set out below and in my CV, a copy of which is attached as **Appendix A**.

5.    True and correct copies of any authorities cited in this Declaration are attached as **Appendix B**.  Each authority (i.e. rule, statute or judgment) is separated by a numbered tab 1-29 for each exhibit, shown as **[B/Exhibit tab reference]**.

**B.    My qualifications**

6.    I am a practicing member of the Bar of the Cayman Islands.  I am also qualified to practice in New Zealand and Ireland, and have Higher Rights of Audience in England & Wales.

7.    I first entered legal practice in New Zealand in 2008, and in the Cayman Islands in 2015.

8.    I received a conjoint Bachelor of Arts (BA, majoring in Criminology and Political Science) and Bachelor of Laws from Victoria University of Wellington.  I am a Fellow of INSOL International.  I have also obtained postgraduate qualifications

in advanced litigation skills from the College of Law and advanced international advocacy from a course held at Keble College, University of Oxford.

9.    I specialize in commercial and corporate litigation, and contentious insolvency (although I also have a broader practice, extending to corporate restructuring).  As a consequence of practicing in the Cayman Islands, the vast majority of my work involves cross-border assignments.  In addition to many unreported and confidential disputes that I have advised and worked on, I have appeared as counsel in a number of pieces of litigation that have resulted in public reported judgments of the Cayman Islands courts.

10.   I have previously provided expert opinion evidence on issues of Cayman Islands law in litigation before U.S. Courts and arbitrations.

11.   In addition to my full-time practice, I am involved in various other professional and academic activities that relate to Cayman Islands law, including the following:

(1)    I am the author or co-author of a number of articles and book chapters on issues of Cayman Islands law;

(2)    I have given presentations at a number of international conferences on legal issues and legal developments under Cayman Islands law;

(3)    I am a member of RISA Cayman Islands (being the Cayman Islands' Recovery and Insolvency Specialists Association, and the Cayman Islands' branch of INSOL International); and

(4)    I have assisted various industry bodies with law reform initiatives in the Cayman Islands.

**C.     Cayman Islands legal issues**

12.     I have been instructed to address the following questions in this Declaration, as a matter of Cayman Islands law, and having regard to the pleadings:

  (1)     Can creditors bring derivative actions under Cayman Islands law?

  (2)     In what circumstances will Cayman Islands law treat a claim as derivative?

  (3)     In what circumstances does Cayman Islands law permit a shareholder to bring and continue derivative actions?

13.     Before addressing these three questions, it may be helpful if I provide a brief summary of the sources of Cayman Islands law, an introduction to the Cayman Islands legal system and a summary of my understanding of the pertinent factual matrix.

**D.     The sources of Cayman Islands law and the Cayman Islands' legal system**

14.     The Cayman Islands are a self-governing, but dependent, territory of the United Kingdom that have their own written Constitution, their own local Parliament, and their own independent Court system.  Cayman Islands law is based on English law, as supplemented by Caymanian statute and case law.

15.     The Court system of the Cayman Islands is made up of the Grand Court of the Cayman Islands (the "**Grand Court**"), the first instance trial Court of unlimited jurisdiction; the Cayman Islands Court of Appeal, an intermediate appellate Court; and the Judicial Committee of the Privy Council (the "**Privy Council**"), the final appellate Court, whose members are also justices of the United Kingdom Supreme Court.

16.     Like English law, Cayman Islands law is based on the common law doctrine of precedent. Under that doctrine, for example, a judge of the Grand Court is bound to follow and apply any relevant decision of the Court of Appeal for the Cayman Islands, and any relevant decision of the Privy Council (assuming the appeal emanates from the Cayman Islands). The Cayman Islands courts also often follow English case law, including decisions of the U.K. Supreme Court, as persuasive authority.

17.     Matters of Cayman Islands company law are governed by the Cayman Islands Companies Act (2023 Revision) ("**Companies Act**"), Cayman Islands case law and English common law as applied in the Cayman Islands. Cayman Islands companies are subject to the jurisdiction of the Grand Court, which is governed by the Grand Court Act (as revised). The rules governing the conduct of the Grand Court's procedure are set out in the Grand Court Rules (as revised) (the "**GCR**").

**E.     Summary of the Pleadings**

18.     For the purposes of this declaration, and in the interests of brevity, I do not propose to recite the full details of the background facts and allegations (including the history of related litigation), which I understand to be well known to the parties and their respective legal advisers. However, I have regard, in particular, to the following matters set out in the pleadings.

*Plaintiffs*

19.     On 23 February 2022, the Plaintiffs U.S. Bank, National Association, in its capacity as trustee (the "**Trustee**"), Joshua N. Terry ("**Mr. Terry**"), and Acis Capital Management, L.P. ("**ACM,**" and, collectively with the Trustee and Mr. Terry, "**Plaintiffs**") filed an Amended Complaint against the Defendants Charitable Donor Advised Fund, L.P. ("**DAF**"), CLO HoldCo, Ltd. ("**CLO HoldCo,**" and, collectively with DAF, the "**DAF Parties**"), and NexPoint Strategic Opportunities Fund ("**NexPoint,**" and, collectively with the DAF Parties, "**Defendants**").

5

20.     The Trustee is the trustee of the following Cayman Islands investment funds: ACIS CLO 2014-4 Ltd ("**Acis 4**"), ACIS CLO 2014-5 Ltd ("**Acis 5**") and ACIS CLO 2015-6 Ltd ("**Acis 6**") (collectively, the "**Acis CLOs**").

21.     The Acis CLOs are not parties to this litigation.  Each Acis CLO is an exempted limited liability company incorporated in the Cayman Islands pursuant to the Companies Act.[1]  The Acis CLOs issued, among other securities, certain subordinated notes to investors by way of private offerings.

22.     ACM is the portfolio manager of the Acis CLOs pursuant to certain portfolio management agreements.

23.     Mr. Terry is the President of Shorewood GP, LLC which is the General Partner of ACM and holds, through an affiliate, 100% of the limited partnership interests in ACM.  ACM is a Delaware limited partnership and Brigade Capital Management, L.P ("**Brigade**") is ACM's sub-advisor.

*Defendants*

24.     DAF is a limited partnership in the Cayman Islands and is the sole shareholder in CLO HoldCo, a Cayman Islands exempted company.

25.     CLO HoldCo is a minority shareholder (holding 49% of the shares) in Highland CLO Funding, Ltd. ("**HCLOF**"), a collective investment scheme registered in Guernsey. Highland Capital Management, L.P. ("**Highland**") is the majority shareholder of HCLOF. HCLOF owns 100% of the subordinated notes issued by Acis 4 and Acis 5 and 87% of the subordinated notes issued by Acis 6.

---

[1] I understand that this is common ground. Paragraph 15 of the Amended Claim states "*ACIS 4, ACIS 5, and ACIS 6 are exempted limited liability companies incorporated in the Cayman Islands.*" The First and Second Defendants admit same in paragraph 20 of the First Amended Answer and Counterclaim filed on March 30, 2023.

26.    NexPoint is a Delaware statutory trust.

*Pleaded case*

27.    The Amended Complaint states that the Plaintiffs are seeking declarations that:

(1)    The DAF Parties do not have standing to assert claims against the Plaintiffs and Brigade with respect to the Acis CLOs;

(2)    NexPoint lacks standing to assert claims against Mr. Terry, ACM, and Brigade with respect to the Acis CLOs; and

(3)    The DAF Parties' threatened claims against the Plaintiffs and Brigade with respect to the Acis CLOs are barred by a settlement agreement between Mr. Terry, ACM, and HCLOF executed on or around 28 April 2021.

28.    Plaintiffs allege, among other things, that Defendants actual or threatened claims are derivative claims on behalf of the Acis CLOs under Cayman Islands law and that Defendants lack derivative standing to bring those claims.[2]

29.    On 30 March 2023, the DAF Parties filed a First Amended Answer and Counterclaim.  In particular, they advanced claims against HCLOF for alleged breaches of fiduciary duties and against the Plaintiffs (or Counter-Defendants) for allegedly aiding and abetting breaches of fiduciary duties.

30.    NexPoint in its Amended Answer filed on 30 March 2023 denies that the Plaintiffs are entitled to the relief sought and has counterclaimed against Mr. Terry and ACM on the basis of, amongst other things, alleged breaches of fiduciary duties in relation to the management of Acis 6, alleged breaches of a portfolio management agreement and tortious interference with NexPoint's rights.

---

[2] Paragraph 63 of the Amended Complaint.

31.    Against this background, I now turn to address the questions that I have been
       instructed to consider, having regard to the pleadings, to the extent that they address
       issues of Cayman Islands law.

**F.    Question One:  Can creditors bring derivative actions under Cayman law?**

32.    Creditors of a Cayman Islands company do not have standing, in their capacity as
       creditors, to bring derivative actions on that company's behalf under Cayman
       Islands law.  Furthermore, in the absence of a right to rectification of the register of
       shareholders, Cayman Islands law does not recharacterize a creditor's debt interest
       as a shareholder's equity interest for the purposes of derivative standing.

33.    *First*, only current registered shareholders, not creditors, have the right to bring
       derivative actions under Cayman Islands law.

34.    Under Cayman Islands law, a shareholder (or member) of a company is bound by
       the memorandum and articles of association of the Cayman company, which is a
       *sui generis* type of statutory contract between the company and its members.  The
       rights of shareholders of Cayman Islands companies principally derive from the
       memorandum and articles of association, common law and statute (such as, for
       example, the Companies Act).[3]

35.    As observed by the Cayman Islands Court of Appeal in *Re Lancelot Investors Fund
       Limited (In Official Liquidation)*:

              "*There is no doubt that in ordinary circumstances the rights attaching to
              shares may only be pursued by the registered shareholder*... *The principle
              is also the foundation of the rule that only a registered shareholder may
              bring proceedings to vindicate shareholder rights*: see, for example, Schultz

---

[3] See, for example, sections 12, and 25(3) of the Companies Act **[B/1]**

> *v. Reynolds (6) and Svanstrom v. Jonasson (7), both decisions of this court*
> *holding that a mere beneficial owner of shares could not maintain a*
> *derivative action on behalf of a company, and Hannoun v. R Ltd. (4), in*
> *which the Grand Court held that a beneficiary under a bare trust of shares*
> *could not petition for a winding up on the just and equitable ground..."[4]*

36.    By comparison, the rights of creditors do not derive from the memorandum and
       articles of association; they are typically derived from a separate contract governing
       the relevant debtor / creditor relationship, such as an indenture or another form of
       debt instrument.

37.    The U.K. Supreme Court's decision in *Marex Financial Ltd. v Sevilleja* [2020]
       UKSC 31('*Marex*') **[B/3]** is the most recent and authoritative discussion of whether
       creditors have the right to sue derivatively.   *Marex* addressed shareholders' and
       creditors' respective ability to sue derivatively as follows:

> *"83. The critical point is that the shareholder has not suffered a loss which*
> *is regarded by the law as being separate and distinct from the company's*
> *loss, and therefore has no claim to recover it.  **As a shareholder (and unlike***
> ***a creditor or an employee), he does, however, have a variety of other rights***
> *which may be relevant in a context of this kind, **including the right to bring***
> ***a derivative claim to enforce the company's rights if the relevant conditions***
> ***are met**, and the right to seek relief in respect of unfairly prejudicial conduct*
> *of the company's affairs."*

38.    As stated in paragraph 83 of the *Marex* judgment, a creditor does not have the right
       to bring a derivative claim to enforce the company's rights.   This is a right and
       remedy that is unique to shareholders.

---

[4] *Re Lancelot Investors Fund Limited (In Official Liquidation)* [2015 (1) CILR 328] **[B/2]** at paragraph 17

39.     The discussion of the rule of reflective loss in *Marex* **[B/3]** was then adopted by the Privy Council in the Cayman Islands case of *Primeo Fund v Bank of Bermuda (Cayman) Ltd* [2021] UKPC 22 ('*Primeo*'): "*For the present hearing, the parties are agreed that Cayman Islands law regarding the reflective loss rule is the same as English law, which is to say the law as determined by the majority in Marex...*"[5] Accordingly, under Cayman Islands law, only shareholders, not creditors, have the right to bring derivative actions.

40.     The GCR confirm that Cayman Islands law allows only shareholders, not creditors, to sue derivatively. Cayman Islands law "*prevent[s] vexatious or inappropriate claims*" from being brought on the company's behalf by requiring shareholders to apply for leave of the Grand Court to bring a derivative action.[6] The GCR provide that only shareholders may seek leave to bring derivative actions. Specifically, Order 15, rule 12A of the GCR, which addresses the leave requirement, confirms that only "***one or more shareholders***" may seek "*relief ... on [the company's] behalf*" by applying for leave to sue derivatively.[7] **[B/6]**

41.     *Second*, in the absence of a right to have the register of shareholders rectified, the Grand Court would not recharacterize creditors as shareholders for the purposes of standing to pursue derivative claims.

42.     Under Cayman Islands law, a shareholder (or member) of a company formed under the Cayman Islands Companies Act is a party that has agreed to become a member of a company and whose name is entered on the register of members of the relevant company.[8] Pursuant to Section 48 of the Companies Act, the register of members

---

[5] Paragraph 2 **[B/4]**

[6] *Renova Resources Private Equity Limited v Gilbertson* [2009] CILR 268 (Foster, Ag. 1) at paragraph 7 **[B/5]**.

[7] The remedy is not available to beneficial owners of shares (i.e., parties holding an underlying interest in the shares, but are not the legal holder of record)[7] or former shareholders. Regardless of their being a shareholder at the time the wrong against the company was committed (see, for example, *Birch v Sullivan* [1957] 1 WLR 1247) **[B/7]**.

[8] Section 38 of the Companies Act defines a 'member' as follows: "*The subscribers of the memorandum of association of any company shall be deemed to have agreed to become members of the company whose memorandum they have subscribed, and upon the registration of the company shall be entered as members on the register of members hereinafter mentioned, and every other person who has agreed to become a member of a company and whose name is entered on the register of members, shall be deemed to be a member of the company.*" **[B/1]**

is *prima facie* evidence of legal title to shares.[9]   Accordingly, a party that is not listed on the register of members of a Cayman Islands company is *prima facie* not considered a member or a shareholder of that company.

43.    If a party considers that it has a legitimate legal right to be listed on the register of members, that party may ask the Court to rectify the register by adding its name to the register under Section 46 of the Companies Act.[10]  The Court would not grant this remedy to a party that was merely an ordinary creditor of a company, unless the creditor was able to demonstrate a legal requirement for the company to convert its debt to equity by way of, for example, a valid and enforceable mortgage over shares with transfer rights on default[11].

44.    Parties that neither are listed on the register nor able to exercise the statutory remedy to rectify the register are not entitled to exercise the unique rights and remedies available to registered shareholders, including the right to sue derivatively.

45.    Cayman courts would not depart from this rule in the context of standing to sue derivatively.  To the contrary, the Cayman Courts place a great deal of weight and emphasis on privity of contract and the official record of a company's relationships with creditors and/or members when determining whether a party has standing to sue.  By way of example, in the very recent judgment in *Shinsun Holdings (Group) Co., Ltd* 21 April 2023 FSD 0192 OF 2022 (DDJ) **[B/8]**, the Grand Court held that a party which had no direct contractual relationship with the company and was not a registered holder of senior notes (pursuant to an indenture governed by New York

---

[9] Section 48 of the Companies Act provides that: "*The register of members shall be prima facie evidence of any matters by [the Companies Act] directed or authorised to be inserted therein.*" **[B/1]**
[10] Section 46 of the Companies Act provides that: "*If the name of any person is, without sufficient cause, entered in or omitted from the register of members of any company ... the person or member aggrieved or any member of the company or the company itself may, by motion to the Court, apply for an order that the register be rectified ... The Court may, in any proceeding under this section, decide any question relating to the title of any person who is a party to such proceeding to have that person's name entered in or omitted from the register, whether such question arises between two or more members or alleged members, or between any members or alleged members and the company, and generally, the Court may, in any such proceeding, decide any question that it may be necessary or expedient to decide for the rectification of the register ...*" **[B/1]**
[11] By way of further example, there are also cases in the Cayman Islands where debt is converted to equity by way of a formal restructuring by scheme of arrangement.  In that scenario, the end result would be that the former scheme creditor would be reflected on the updated shareholder register after the effective date of the scheme.

law) lacked legal standing as a creditor to present a winding up petition to place a company into insolvent liquidation, despite having an underlying beneficial interest in the relevant debt.[12]

46.    In summary, the right to bring derivative actions is unavailable to creditors of a company, as explained in *Marex* (see above **[B/3]**) and confirmed in the GCR, and Cayman Islands law would not recharacterize a creditor's interest in a company as a shareholding interest for the purposes of derivative standing in the absence of a right to rectification of the register of shareholders. Consequently, as a matter of Cayman Islands law, a creditor of a company does not have standing to seek the leave of the Cayman Courts to initiate a derivative claim, in its capacity as creditor, on behalf of the company.

### G.    Question Two: In what circumstances will Cayman law treat a claim as derivative?

47.    Cayman Islands law will treat a claim as derivative[13] if the defendant breached a duty owed to the company, the breach of the duty causes loss to the company, and the shareholder's loss is a reflection of the company's loss. This rule may apply even if the defendant also breached a duty owed to a shareholder individually - the focus is on the nature of the loss suffered.

48.    Under Cayman Islands law, a Cayman Islands company has its own, separate legal personality (which is distinct from the personalities of its various shareholders and/or creditors). The company, not its shareholders, owns its assets. Thus, the company, not its shareholders, owns the company's potential claims for damages (i.e. *choses* in action) against its directors and/or contractual counter-parties, such as professional service providers.

---

[12] See, in particular, paragraphs 79 to 84 of the judgment.
[13] I note that the GCR defines a "derivative action" as *"every action begin by writ by one or more shareholders of a company where the cause of action is vested in the company and relief is accordingly sought on its behalf"* (see GCR Order 15, rule 12A). **[B/6]**

49.     As a result, under Cayman Islands law, the company itself, not any of its
        shareholders, is the proper plaintiff in any action where: (1) the defendant allegedly
        wronged the company, and (2) that wrong allegedly causes loss to the company.[14]
        The origin of this rule is the UK judgment of *Foss v Harbottle* (1843) 2 Hare 461
        **[B/9]**.  A long line of Cayman Islands and English authorities have since applied
        it.[15]

50.     This is because:

        (1)     the relevant duty that is said to have been breached by the defendant is <u>**a
                duty owed to the company**</u> (not a duty owed to the shareholder); and

        (2)     the relevant damage that is said to have been suffered is <u>**a loss suffered by
                the company**</u> and is not a distinct loss directly suffered by the shareholder.
                Rather, any shareholder loss is suffered only indirectly in the form of
                reduced share value or distributions, and is a reflection of the company's
                loss.  This is known as the reflective loss principle.[16]

51.     By way of example, under Cayman Islands law (following English common law),
        no duties are ordinarily owed by a company's directors and officers directly to the
        company's shareholders, simply by virtue of the fact that the directors or officers
        hold an office with the company.   On the contrary, directors and officers generally
        owe their duties to the company itself, and not to individual shareholders (and/or
        the beneficial owners of such shareholders).  Similarly, directors of Cayman Islands
        companies do not, as a matter of general principle,[17] owe duties to individual
        creditors (and/or those with an indirect beneficial interest).

---

[14] i.e. the "*proper plaintiff rule*" following the English judgment of *Foss v Harbottle* (1843) 2 Hare 461, as described above **[B/9]**.
[15] See, for example, *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1982] Ch 204 **[B/10]** and *Renova Resources Private Equity Ltd v Gilbertson* [2009] CILR 268 **[B/5]**.
[16] See, in particular, the House of Lords decision in *Johnson v Gore Wood & Co* [2000] UKHL 65 **[B/11]**.
[17] However, it should be noted that directors may owe duties to act in the best interests of all creditors, if it becomes clear that insolvency is probable or imminent (see, for example, *BTI 2014 LLC v Sequana SA* [2022] UKSC 25) **[B/12]**.

13

52.     In *Primeo*, the Privy Council confirmed shareholders must sue derivatively where their losses are a reflection of company's loss, even if the defendant breached a duty to the shareholder as well as the company.   Specifically, Lords Kitchin and Sales, in a joint-judgment on behalf of the panel, ruled that:

> "... *a shareholder cannot bring a claim in respect of a diminution in the value of his shareholding, or a reduction in the distributions which he receives by virtue of his shareholding, which is merely the result of a loss suffered by the company in consequence of a wrong done to it by the defendant.*"[18]

53.     Following *Marex*, **[B/3]** they explained that such reflective loss "*is not ... separate and distinct from the damage suffered by the company,*" and "*by becoming a member of the company the shareholder agrees to "follow the fortunes of the company" in relation to losses suffered by it as a result of wrongs done to the company and agrees that the company's organs will have the right to decide whether claims should or should not be brought in respect of such wrong.*"[19]  The Privy Council confirmed that this reflective loss rule applied "*even if the defendant's conduct also involved the commission of a wrong against the shareholder.*"[20]

54.     In *Primeo*, the Privy Council also held that "*Cayman Islands law regarding the reflective loss rule is the same as English law ... as determined by the majority in Marex.*"  In *Marex*, the majority confirmed that, in cases where claims are brought by a shareholder in respect of loss which he has suffered in that capacity, "*the shareholder cannot bring proceedings in respect of the company's loss, since he has no legal or equitable interest in the company's assets ... It is only the company that has a cause of action in respect of its loss.*"

---

[18] *Primeo* para 47 **[B/4]**. This rule derives from *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1982] Ch 204 **[B/10]**
[19] *Primeo* paras 49, 52.
[20] *Primeo* para 47.

55. The *ratio decidendi* of the Privy Council's judgment in *Primeo*, and thus the *Marex* **[B/3]** decision that *Primeo* **[B/4]** adopted, is, as I have explained above, binding on all Cayman Islands courts as a matter of Cayman Islands law.[21]

56. Thus, under Cayman Islands law, claims are derivative if the defendant allegedly wronged the company, that wrong allegedly causes loss to the company, and the shareholder's loss is merely a reflection of the company's loss, even if the defendant also breached a duty owed to the shareholder individually.

57. As noted by the UK Supreme Court in *Marex*, where the reflective loss rule is engaged to bar shareholder claims, shareholders may be able to pursue relief through a derivative action on behalf of the company if "*relevant conditions are met.*"[22]   The conditions required for a derivative action are discussed in the next section.

**H.** **Question Three:**  **In what circumstances does Cayman Islands law permit a shareholder to bring and continue derivative actions?**

*Requirements for obtaining leave: exceptions to the "proper plaintiff rule"*

58. As noted above, as a matter of Cayman Islands law, where a defendant in a derivative action gives notice of an intention to defend, the plaintiff shareholder must apply to the Cayman Court for leave to continue the action.

59. Cayman Islands law prohibits shareholders from bringing derivative claims unless they can establish that (1) one or more of the narrow exceptions to the "proper plaintiff rule" apply; and (2) they have met additional conditions (explained below), including that they have established a *prima facie* case for relief.

---

[21] The *ratio decidendi* is the essential legal reasoning of the judgment.
[22] For completeness, I observe that the Cayman Islands does not have a direct equivalent to the unfair prejudice regime, which is codified in sections 994 to 996 of the UK Companies Act 2006 **[B/13]**.  Instead, aggrieved shareholders are often required to present a winding-up petition on the just and equitable basis against a Cayman Islands company to guard against alleged oppression and other misconduct.

60.   The "proper plaintiff rule" from *Foss v. Harbottle* **[B/9]** provides that the company itself, not any of its shareholders, is the proper plaintiff in any action where: (1) the defendant allegedly wronged the company, and (2) that wrong allegedly causes loss to the company. This rule generally prohibits shareholders from bringing derivative suits on behalf of the company.

61.   In order to obtain leave to continue, a shareholder must satisfy the Court (on sworn evidence) of the existence of one or more of certain limited exceptions to the proper plaintiff rule in *Foss v Harbottle*. The shareholder applicant must adduce affidavit evidence which establishes on at least[23] a *prima facie* basis[24] that the case falls within one of the following exceptions to the rule:

    (1)   Where the act complained of amounts to an infringement of the personal rights of individual shareholders (the "**Personal Rights Exception**");

    (2)   Where the action in question amounts to a fraud on the minority shareholders, and the alleged "wrongdoers" are themselves in control of the company (the "**Fraud on the Minority Exception**");

    (3)   Where the act complained of could only be validly done by a special resolution or similar mechanism, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority; and/or

    (4)   Where the act complained of is *ultra vires* the objects of the company or illegal and is, therefore, incapable of ratification by the members.[25]

---

[23] "… the approach should be a halfway house between a strike out application and a full trial" *Kuwait Ports Authority et al v Port Link GP Ltd et al* (Court of Appeal 20 January 2023 decision) **[B/14]**

[24] *Prudential* **[B/10]** and *Renova Resources Private Equity Limited v Gilbertson* [2009] CILR 268 **[B/5]**.

[25] Acts of a company or dispositions of real or personal property where the company was without capacity or power to perform the act or to dispose of or receive property are ultra vires – **[B/1]** see section 28(1) of the Companies Act. The phrase is often used to describe activity which falls outside of the purposes set out in a company's objects clause (or equivalent) and is therefore null and void; see *Rolled Steel Products (Holdings) Ltd v British Steel Corp* [1986] Ch. 246 **[B/15]**.

62.     In addition to showing that the action falls within a recognized exception, it is also necessary to satisfy the Cayman Court that additional criteria are met.[26]

63.     These include:

> (1)     Establishing a *prima facie* case on the merits of the company's entitlement to the relief claimed.  As a matter of Cayman Islands law, a *prima facie* case is more than a good arguable case.  In assessing the merits, the Court has regard to all of the evidence, including that filed by the defendants, that the case is "*not spurious or unfounded, that it is a serious as opposed to a speculative case, that it is brought bona fide on reasonable grounds, on behalf of the interests of the company and that it is sufficiently strong to justify granting leave for the action to continue rather than dismissing it at this preliminary stage*"[27];

> (2)     The plaintiff shareholder is acting in good faith, both in the sense of having not himself participated in the wrong complained of (i.e. the plaintiff brings the action with 'clean hands', and without delay);

> (3)     The plaintiff shareholder must be acting in the best interest of the company and not for some ulterior, improper or collateral purpose, such as personal gain or diverting attention from conflicts of interest, which would be regarded as an abuse of process[28]; and

> (4)     That the plaintiff shareholder has no other adequate remedy available to him.[29]

---

[26] *Renova Resources Private Equity Limited v Gilbertson* [2009] CILR 268 **[B/5]**
[27] *Renova* at paragraph 35.
[28] *Nurcombe v. Nurcombe* [1985] 1 370 **[B/16]**
[29] *Portfolios of Distinction v Laird* [2004] 2 BCLC 741 **[B/17]**.

*Fraud on the Minority Exception*

64.     Under the Fraud on the Minority Exception, a "*minority shareholder might bring a derivative action on behalf of the company against the wrongdoers if they used their controlling powers either fraudulently or negligently with the intention of benefitting themselves at the expense of the Company.*"[30]

65.     There are two essential aspects to the Fraud on the Minority Exception:

   (1)     The alleged wrongdoers must hold or control a majority of the vote, i.e. over 50% of voting shares in a company;[31] and

   (2)     The alleged wrongdoers must have obtained a benefit as a result of their actions, whether their actions were fraudulent or negligent.[32]

66.     The first element, control, requires that the alleged wrongdoers must control a majority of the voting securities by either (1) owning a majority of them, or (2) acquiring *de facto* control of them.[33]

67.     As set out previously, Cayman Islands jurisprudence places strong emphasis on the requirement that in order to exercise legal rights that a party be a registered shareholder/creditor and it would follow that the control requirement may potentially not be met if a party controls corporate action through some more remote route other than controlling a majority of the voting securities, such as by exercising an equitable, contingent or future interest in the shares. [34]

---

[30] *Schultz v Reynolds* [1992-93] CILR 59 **[B/18]**.
[31] See *Berland v Earle* [1902] AC 83 **[B/19]**.
[32] This requirement of the Fraud on the Minority Exception, that the defendant directors (as 'wrongdoers in control') had themselves improperly benefitted from their alleged wrongdoing at the expense of the company, was most recently restated by the English Court of Appeal in *Harris v Microfusion* [2017] 1 B.C.L.C. 305 at 317 (McCombe LJ) **[B/20]**.
[33] See, for example, paragraphs 36 to 38 of *Top Jet Enterprises Limited v Sino Jet* [2018 (1) CILR 18] **[B/21]**
[34] *Re Lancelot Investors Fund Limited (In Official Liquidation)* [2015 (1) CILR 328] **[B/2]** at paragraph 17; *Shinsun Holdings (Group) Co., Ltd* 21 April 2023 FSD 0192 OF 2022 (DDJ) **[B/8]**

18

68.  The second element, fraud, is *"hard to plead and difficult to prove."*[35] In *Estmanco (Kilner House) Ltd v G.L.C.* [1982] 1 W.L.R. 2, an English court held noted that the fraud requirement might be met if:

(1)  directors diverted business in their own favour (see *Cook v Deeks*);[36]

(2)  directors misappropriated assets of the company (see obiter dicta in *Pavlides v .Jensen*);[37] and

(3)  the majority of shareholders divided the company's assets more or less between themselves to the exclusion of the minority.[38]

69.  The fraud element is not met if the wrongdoers did not obtain any benefit from their actions.[39]

70.  In *Harris v Microfusion 2003-2 LLP & ors* [2016] EWCA Civ 1212 **[B/20]**, the English Court of Appeal confirmed that satisfying the fraud on the minority exception requires a high threshold to be met and applies to (a) cases of actual fraud (i.e. deliberate and dishonest breaches of duty); or (b) in the absence of actual fraud, the alleged wrongdoing must have resulted in loss to the company and personal gain by the wrongdoers.  It was observed that the majority in a company is free to excuse breaches of duty, unless they have used their power to confer benefits on themselves in breach of duty and prevent the company from recovering loss caused to it as a result.

71.  The Grand Court has also imposed certain limits on the exception as it applies to derivative claims against third parties.  In *Top Jet*[40], the Grand Court stated that the *"fraud whose existence justifies the derivative action (and an exception being made*

---

[35] *Estmanco (Kilner House) Ltd v G.L.C.* [1982] 1 W.L.R. 2 **[B/22]**.
[36] [1916] 1 AC 554 **[B/23]**.
[37] [1956] 2 All ER 518 **[B/24]**.
[38] *Menier v Hooper's Telegraph Works* LR 9 Ch App 350 at 354 **[B/25]**.
[39] *Heyting v Dupont* [1964] 1 W.L.R. 843 **[B/26]**.
[40] *Top Jet Enterprises Limited v Sino Jet Holding Limited* [2018] (1) CILR 18 at paragraph 39 **[B/21]**

*to the principle that only the company can bring a claim for wrongs done to it) must give rise to the third party's liability. The third party must be a party or accessory to or closely associated with the conduct which gives rise to the fraud on the minority."* In the absence of such a close relationship, it was observed that *"it is likely that the claim for breach of contract ... could not be brought derivatively (since... [it] would be independent of the wrongful conduct which justifies and permits... a minority shareholder, rather than the company's board, having control of litigation to enforce the company's rights)."*

### *Personal Rights Exception*

72.   For the Personal Rights Exception to apply, a plaintiff must allege a breach of duty owed uniquely to them (rather than a duty to the company generally).

73.   *Marex* **[B/3]** and *Primeo* **[B/4]** indicate that the Personal Rights Exception is not actually a ground for derivative standing, but rather, is a basis for pursuing a direct action, should such direct action exist. In either event, where a shareholder pursues claims based on rights derived not from its status as a shareholder, but rather from some other source, the reflective loss rule does not bar these claims.

74.   As *Marex* and *Primeo* indicated, the personal or direct claim exception will not apply if the loss suffered by a shareholder is limited to the diminution in their share value or in distributions, which is the consequence of loss sustained by the company. In those circumstances, the "reflective loss" principle will bar the claim. This is the case even if the defendant allegedly committed an independent wrong against the shareholder in addition to wronging the company. As the Court of Appeal of England and Wales ruled in *Burnford et al v Automobile Association Developments Limited* [2022] EWCA Civ 1943, following *Marex* and *Primeo*: *"A shareholder cannot escape the 'reflective loss' principle merely by showing that he has an independent cause of action against the defendant. He must also have suffered 'separate and distinct' loss, and the law does not regard a reduction in the*

*value of shares or distributions which is a knock-on effect of loss suffered by the company as "separate and distinct."* [41]

75.     Recent cases have held that the personal or direct claim exception does not apply where the shareholder's loss is a mere reflection of the company's loss.

76.     For example, in *De Sena & Anor v Notaro & Ors* [2020] EWHC 1031 (Ch) (01 May 2020), **[B/28]** at paragraphs 234 to 236, it was said that it is necessary to establish a "special relationship" and cogent evidence to that effect.  It was observed that "*no such [fiduciary] duties arise by virtue of the mere fact of the first defendant's being a director, but only because there is a 'special relationship' between the director and shareholder.*"

77.     Instead, the personal rights exception will only be triggered in rare and exceptional circumstances where, on the unusual acts of any particular case, a director / officer or service provider may have assumed a direct duty owed personally to a particular shareholder, whether pursuant to a specific contract or agreement, or pursuant to a specific assumption of responsibility at common law, or pursuant to a relevant statutory provision, as illustrated, for example, by the English judgment in the case of *Williams v Natural Life Health Foods Ltd* [1998] 1 WLR 830 **[B/29]**.

78.     In *Williams*, in support of the doctrine of separate legal personality, the House of Lords emphasized that a director or shareholder of a company will very rarely assume responsibility with respect to the relevant company's relationships with contractual counter-parties.  As observed in the judgment, "… *if [a joint tortfeasor] argument were to be accepted in the present case, it would expose directors, officers and employees of companies carrying on business as providers of services to a plethora of new tort claims.*"

---

[41] Paragraph 30 **[B/27]**

## I.   Conclusion

79.   In conclusion, I can answer the three specific questions that I have been instructed to address, as a matter of Cayman Islands law, in the following terms, and for the reasons addressed in further detail above:

(1)   As a matter of Cayman Islands law, the rights of creditors and shareholders are fundamentally different.   As *Marex* **[B/3]** held and the GCR **[B/6]** confirm, only current registered shareholders may bring derivative claims on behalf of a company.   Creditors of a company (suing in that capacity) do not have the ability to bring derivative claims on behalf of a Cayman Islands company.   In the absence of a right to rectification of the register of shareholders, Cayman Islands law would not permit creditors to recharacterize their interest in the company as a shareholder interest for the purpose of derivative standing;

(2)   As a matter of Cayman Islands law, a claim is characterized as derivative and belongs to the company if the defendant breached a duty owed to the company, the breach of the duty causes loss to the company, and the shareholder's loss is a reflection of the company's loss.   This rule may apply even if the defendant also breached a duty owed to a shareholder individually; and

(3)   As a matter of Cayman Islands law, in order to continue a derivative claim on behalf of a company, a current registered shareholder must establish that: (a) one or more of the narrow exceptions to the "proper plaintiff rule" apply; and (b) additional conditions are satisfied, such as showing at least a *prima facie* case.   As set out above, the Personal Rights Exception and Fraud on the Minority Exception are narrowly construed in the Cayman Islands with the Cayman Courts emphasizing the high thresholds that shareholders are required to meet.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jonathon Milne

15 May 2023

Appendix A

# CONYERS



## Jonathon Milne

Partner, Co-Head of Cayman Islands
Litigation & Restructuring
jonathon.milne@conyers.com
t + 1 345 814 7797

## Overview

Jonathon Milne is a Partner and Co-Head of the Litigation and Restructuring department in the Cayman Islands office of Conyers. Jonathon has extensive experience of complex commercial litigation and company law matters. He advises financial institutions, fiduciaries, corporates and professional service providers on matters of Cayman Islands law.

Jonathon is highly rated and recommended for litigation, restructuring and contentious insolvency mandates in the major legal directories. For example, independent sources for Legal 500 describe Jonathon as an "*exceptional lawyer with impressive analytical and writing skills and deep knowledge and understanding of commercial law issues*" and independent sources for Chambers Global say that Jonathon is "*an extremely competent litigator with a wealth of restructuring and insolvency experience in the Cayman Islands*", "*a superb communicator*", "*incredibly professional, highly technically competent*" and that "*he inspires confidence.*"

Jonathon is a Fellow of INSOL International. He was recognised as a Rising Star by Global Restructuring Review as part of their recent global research process. In 2022, he was named as one of 40 practitioners to watch by INSOL International as part of their 40 year anniversary celebrations.

Jonathon is a keen and accomplished courtroom advocate, with Higher Rights of Audience in the UK and having completed advanced advocacy training at Oxford University. Feedback from the Cayman Islands judiciary in a recent public judgment is that Jonathon "*displayed first class written and oral advocacy skills.*"

In particular, Jonathon acted for the joint official liquidators of the Primeo Fund in multi-billion dollar proceedings against service providers arising from the notorious Madoff fraud, which led to one of the seminal judgments on the proper plaintiff rule and reflective loss in the common law world. Jonathon has also acted as lead advocate or attorney in connection with various other breach of duty and professional negligence cases in the Cayman Islands.

## Professional Background

- Conyers Dill & Pearman (Grand Cayman) – Partner 2019 - date
- Mourant Ozannes (Grand Cayman) – Counsel – 2015 to 2019
- Russell McVeagh (Auckland) – Associate – 2013 to 2015
- Bryan Cave Leighton Paisner (London) – Associate – 2011 to 2013
- Philip Lee (Dublin) – Associate – 2009 – 2011
- Russell McVeagh (Auckland) – Associate – 2008 - 2009

## Bar Admissions

- Cayman Islands, Attorney-at-Law, 2015
- England and Wales, Solicitor Advocate (Higher Rights of Audience), 2012
- Republic of Ireland, Solicitor, 2011
- New South Wales, Australia, Barrister and Solicitor 2008
- New Zealand, Barrister and Solicitor, 2008

## Awards

- Recognised in the 2023 edition of the Legal 500 Caribbean as "Next Generation Partner" (and generally recognised since 2020) (Dispute Resolution)
- Recognised as "Up and Coming" in the 2022 and 2023 editions of Chambers Global Guide (Dispute Resolution)

## Appendix B

### List of Authorities

**Exhibit 1**, sections 12, 25(3), 28(1), 38, 46 and 48 of the Cayman Islands Companies Act (2023 Revision).

**Exhibit 2**, *In the Matter of Lancelot Investors Fund Limited (In Official Liquidation)* [2015] (1) CILR 328.

**Exhibit 3**, *Marex Financial Ltd. v Sevilleja* [2020] UKSC 31.

**Exhibit 4**, *Primeo Fund v Bank of Bermuda (Cayman) Ltd* [2021] UKPC 22.

**Exhibit 5**, *Renova Resources Private Equity Limited v Gilbertson* [2009] CILR 268.

**Exhibit 6**, Order 15, rule 12A of the Grand Court Rules.

**Exhibit 7**, *Birch v Sullivan* [1957] 1 WLR 1247.

**Exhibit 8**, *Shinsun Holdings (Group) Co., Ltd* 21 April 2023 FSD 0192 OF 2022 (DDJ)

**Exhibit 9**, *Foss v Harbottle* (1843) 2 Hare 461.

**Exhibit 10**, *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1982] Ch 204.

**Exhibit 11**, *Johnson v Gore Wood & Co* [2000] UKHL 65.

**Exhibit 12**, *BTI 2014 LLC v Sequana SA* [2022] UKSC 25.

**Exhibit 13**, sections 994 to 996 of the UK Companies Act 2006.

**Exhibit 14**, *Kuwait Ports Authority et al v Port Link GP Ltd et al* (Court of Appeal 20 January 2023 decision).

**Exhibit 15**, *Rolled Steel Products (Holdings) Ltd v British Steel Corp* [1986] Ch. 246.

**Exhibit 16**, *Nurcombe v. Nurcombe* [1985] 1 370.

**Exhibit 17**, *Portfolios of Distinction v Laird* [2004] 2 BCLC 741.

**Exhibit 18**, *Schultz v Reynolds* [1992-93] CILR 59.

**Exhibit 19**, *Berland v Earle* [1902] AC 83.

**Exhibit 20**, *Harris v Microfusion* [2017] 1 B.C.L.C. 305.

**Exhibit 21**, *Top Jet Enterprises Limited v Sino Jet* [2018] (1) CILR 18.

**Exhibit 22**, *Estmanco (Kilner House) Ltd v G.L. C.* [1982] 1 W.L.R. 2

**Exhibit 23**, *Cook v Deeks* [1916] 1 AC 554.

**Exhibit 24**, *Pavlides v .Jensen* [1956] 2 All ER 518.

**Exhibit 25**, *Menier v Hooper's Telegraph Works* LR 9 Ch App 350.

**Exhibit 26**, *Heyting v Dupont* [1964] 1 W.L.R. 843.

**Exhibit 27**, *Burnford et al v Automobile Association Developments Limited* [2022] EWCA Civ 1943.

**Exhibit 28**, *De Sena & Anor v Notaro & Ors* [2020] EWHC 1031 (Ch).

**Exhibit 29**, *Williams v Natural Life Health Foods Ltd* [1998] 1 WLR 830.