**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK NATIONAL ASSOCIATION, in
its capacity as Trustee, JOSHUA N. TERRY,
and ACIS CAPITAL MANAGEMENT, L.P.,

      *Plaintiffs,*

    v.

THE CHARITABLE DONOR ADVISED
FUND, L.P., CLO HOLDCO LTD., and
NEXPOINT DIVERSIFIED REAL ESTATE
TRUST,

      *Defendants.*

Case No. 1:21-cv-11059-GHW

**ORAL ARGUMENT REQUESTED**

---

### PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Misha Boutilier
  Michael R. Bloom
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis*
  *Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  *Attorneys for Plaintiff U.S. Bank National*
  *Association, in its capacity as Trustee*

**EXHIBIT**

**10**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 3

I.  NEXPOINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE .......... 3

II.  NEXPOINT LACKS DIRECT STANDING ............................................................ 6

    A.  NexPoint Lacks Direct Standing For Its Breach Of Fiduciary Duty Claim .......... 6

    B.  NexPoint Lacks Direct Standing To Pursue Its Other Claims .............................. 15

III.  NEXPOINT LACKS DERIVATIVE STANDING .................................................. 15

    A.  NexPoint Lacks Derivative Standing Under Cayman Islands Law ...................... 15

    B.  NexPoint Lacks Derivative Standing Under New York Law .............................. 19

IV.  NEXPOINT'S COUNTERCLAIMS ARE BARRED FOR ADDITIONAL REASONS ........................................................................................................ 20

    A.  NexPoint's Remaining Tort and Quasi-Contractual Claims Must Be Dismissed As Duplicative ........................................................................... 20

    B.  The Economic Loss Rule Bars The Negligence And Conversion Claims ........... 21

V.  ALL MOTION EXHIBITS RELEVANT TO NEXPOINT ARE PROPER ................... 22

VI.  LEAVE TO AMEND SHOULD BE DENIED ..................................................... 23

VII.  THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIM AGAINST NEXPOINT ................................................. 23

CONCLUSION ...................................................................................................... 25

Case 1:21-cv-10589-GHW Document 145-11 Filed 06/22/23 Page 3 of 34

## TABLE OF AUTHORITIES

**Page**

### Cases

*AG Cap. Funding Partners, L.P. v. State Street Bank & Trust Co.*,
11 N.Y.3d 146 (2008) ............................................................................................7

*ATG Cap. LLC v. MGT Cap. Invs., Inc.*,
2018 WL 1406917 (S.D.N.Y. Mar. 19, 2018) ......................................................4

*BanxCorp v. Costco Wholesale Corp.*,
723 F. Supp. 2d 596 (S.D.N.Y. 2010)..................................................................11

*Baron A. Wolman Archives Tr. v. Complex Media, Inc.*,
2022 WL 523597 (S.D.N.Y. Feb. 22, 2022).........................................................24

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011) ......................................................19

*BTI 2014 LLC v. Sequana SA*,
[2022] UKSC 25 ...................................................................................................17

*S.E.C. v. Cap. Gains Rsch. Bureau, Inc.*,
375 U.S. 180 (1963) .............................................................................................13

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
738 F. Supp. 2d 450 (S.D.N.Y. 2010)..................................................................20

*In re Chappell*,
25 Misc. 3d 704 (Sur. Ct. 2009).............................................................................8

*Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Tr.*,
1996 WL 601705 (S.D.N.Y. Oct. 18, 1996) ........................................................19

*Davis v. Scottish Re Grp. Ltd.*,
160 A.D.3d 114 (1st Dep't 2018) ...................................................................17, 18

*Deutsch v. JPMorgan Chase & Co.*,
2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019)......................................................20

*Diba Fam. Ltd. P'ship v. Ross*,
2014 WL 5438068 (S.D.N.Y. Oct. 27, 2014), *aff'd*, 606 F. App'x 628 (2d Cir.
2015) .....................................................................................................................22

*Douglass v. Beakley*,
900 F. Supp. 2d 736 (N.D. Tex. 2012) .................................................................14

*Durosene v. Bank of Am., N.A.*,
    2020 WL 3403083 (E.D.N.Y. June 19, 2020) ...................................................................21

*Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*,
    2012 WL 4473288 (S.D.N.Y. Aug. 16, 2012) ....................................................................4

*Ellington Credit Fund, Ltd. v. Select Portf'o Serv'g, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ...................................................................6, 8, 19

*In re Est. of Rubin*,
    540 N.Y.S.2d 944 (N.Y. Sur. Ct. 1989) ..............................................................................8

*Fazi v. United States*,
    935 F.2d 535 (2d Cir. 1991) ...............................................................................................14

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    2020 WL 5518146 (S.D.N.Y. Sept. 14, 2020) ...................................................................9

*In re First Cent. Fin. Corp.*,
    269 B.R. 481 (Bankr. E.D.N.Y. 2001), *aff'd*, 377 F.3d 209 (2d Cir. 2004) ...........................7

*France v. Thermo Funding Co., LLC*,
    989 F. Supp. 2d 287 (S.D.N.Y. 2013) .................................................................................6

*Gilman v. Spitzer*,
    902 F. Supp. 2d 389 (S.D.N.Y. 2012), *aff'd*, 538 F. App'x 45 (2d Cir. 2013) ......................24

*Goldenson v. Steffens*,
    2014 WL 12788001 (D. Me. Mar. 7, 2014) .......................................................................14

*Hamlen v. Gateway Energy Servs. Corp.*,
    2018 WL 1568761 (S.D.N.Y. Mar. 29, 2018) .............................................................24, 25

*HF Mgmt. Servs. LLC v. Pistone*,
    34 A.D.3d 82 (1st Dep't 2006) ..........................................................................................13

*Hill v. Philip Morris USA*,
    2004 WL 1065548 (S.D.N.Y. May 11, 2004) ....................................................................23

*Horowitz v. Nat'l Gas & Elec. LLC*,
    2018 WL 4572244 (S.D.N.Y. Sept. 24, 2018) ....................................................................5

*Howe v. Bank of New York Mellon*,
    783 F. Supp. 2d 466 (S.D.N.Y. 2011) ...........................................................................9, 16

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009) .................................................................................6

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank,*
  2013 WL 4856199 (S.D.N.Y. Sept. 10, 2013) ........................................................4

*Jus Punjabi, LLC v. Get Punjabi Inc.,*
  2015 WL 2400182 (S.D.N.Y. May 20, 2015) (Woods, J.) ......................................18

*Kargo, Inc. v. Pegaso PCS, S.A. de C.V.,*
  2008 WL 2930546 (S.D.N.Y. July 29, 2008) ..........................................................6

*King Cty., Wash. v. IKB Deutsche Industriebank AG,*
  863 F. Supp. 2d 288 (S.D.N.Y. 2012) ...................................................................22

*Klebanow v. N.Y. Produce Exch.,*
  344 F.2d 294 (2d Cir. 1965) .................................................................................19

*Kraus USA, Inc. v. Magarik,*
  2018 WL 4682016 (S.D.N.Y. Sept. 28, 2018) ......................................................24

*Lopes v. Rostad,*
  45 N.Y.2d 617 (1978) ...........................................................................................14

*Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC,*
  2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) .................................................18, 20

*Marex Financial Ltd. v. Sevilleja,*
  [2020] UKSC 31 ....................................................................................................17

*In re Materetsky,*
  28 B.R. 499 (Bankr. S.D.N.Y. 1983) ......................................................................7

*McMillian v. MTA Metro-N. R.R.,*
  2021 WL 4311318 (S.D.N.Y. Sept. 20, 2021) ...............................8, 15, 18, 19, 20

*Meckel v. Cont'l Res. Co.,*
  758 F.2d 811 (2d Cir. 1985) ...................................................................................7

*Mueller v. Michael Janssen Gallery Pte. Ltd.,*
  225 F. Supp. 3d 201 (S.D.N.Y. 2016) ...................................................................21

*N. Shipping Funds I, LLC v. Icon Cap. Corp.,*
  921 F. Supp. 2d 94 (S.D.N.Y. 2013) .....................................................................20

*Nam Tai Elecs., Inc. v. UBS PaineWebber Inc.,*
  46 A.D.3d 486 (1st Dep't 2007) ..............................................................................9

*Nat'l Credit Union Admin Bd. v. U.S. Bank Nat'l Ass'n,*
  439 F. Supp. 3d 275 (S.D.N.Y. 2020) ...................................................................22

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Woodhead*,
   917 F.2d 752 (2d Cir. 1990)................................................................................11

*NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*,
   620 F. Supp. 3d 36 (S.D.N.Y. 2022)..............................5, 6, 11, 14, 15, 17, 21, 23

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   19 N.Y.3d 584 (2012) .....................................................5, 8, 9, 10, 11, 12

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
   544 F. Supp. 3d 405 (S.D.N.Y. 2021) (Woods, J.).........................................16, 23

*In re Optimal U.S. Litig.*,
   813 F. Supp. 2d 351 (S.D.N.Y. 2011)...............................................................11, 12

*Perez v. Wells Fargo N.A.*,
   774 F.3d 1329 (11th Cir. 2014) .......................................................................24

*Primeo Fund v. Bank of Bermuda (Cayman) Ltd.*,
   [2021] UKPC 22 ...............................................................................................17

*Quintanilla v. WW Int'l, Inc.*,
   541 F. Supp. 3d 331 (S.D.N.Y. 2021)...............................................................21

*Robinson v. Nat'l R.R. Passenger Corp.*,
   1995 WL 444322 (S.D.N.Y. July 26, 1995) ........................................................18

*S.E.C. v. Markusen*,
   143 F. Supp. 3d 877 (D. Minn. 2015) ................................................................14

*In re: Salim*,
   2015 WL 1240000 (Bankr. E.D.N.Y. Mar. 16, 2015), *aff'd*, 577 B.R. 615
   (E.D.N.Y. 2017)...................................................................................................7

*Sea Crest Const. Corp. v. City of New York*,
   286 A.D.2d 652 (1st Dep't 2001) ....................................................................4, 5

*Shenwick v. HM Ruby Fund, L.P.*,
   106 A.D.3d 638 (1st Dep't 2013) ......................................................................18

*St. Clair-Hibbard v. Am. Fin. Tr., Inc.*,
   812 F. App'x 36 (2d Cir. 2020) .........................................................................16

*State Farm Fire and Cas. Co. v. Spradling Home Inspections, LLC*,
   2011 WL 4056042 (E.D. Mo. Sept. 13, 2011).....................................................24

*State ex rel. Udall v. Colonial Penn Ins. Co.*,
   812 P.2d 777 (N.M. 1991) .................................................................................14

*United States v. Elliott*,
    62 F.3d 1304 (11th Cir.1995) ............................................................12

*Winn v. Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007).............................................16, 18

*In re Zohar III, Corp.*,
    2021 WL 3124298 (Bankr. D. Del. July 23, 2021).................................8

## **Statutes**

15 U.S.C. § 80b–6.................................................................... 12-14, 20

15 U.S.C. § 80b–6(1)-(3) ................................................................ 12-14

15 U.S.C. § 80b–6(4) .................................................................... 12-14

## **Rules**

72 Fed. Reg. 44,756, 44,760 .............................................................13

FRCP 9(b) ............................................................................6, 15, 17, 18

FRCP 12(b)(6) ...........................................................................22, 24

FRCP 12(c) .................................................................................1, 24

Individual Rules of Practice in Civil Cases, Rule 3(D) ..........................23

IAA Rule 206(4)-8 ................................................................. 12-14, 20

## **Other Authorities**

*Construction and Operation of Will or Trust Provision Appointing Advisors to*
    *Trustee or Executor*, 56 A.L.R.3d 1249 § 10 (1974) ..............................8

106 N.Y. Jur. 2d Trusts § 348 ............................................................8

Restatement (Second) of Trusts § 185(c), (e) (1959) ...............................8

Plaintiffs[1] submit this reply memorandum of law in support of their motion (the "Motion" or "Mot.," Dkt. 107) to dismiss NexPoint's counterclaims and for judgment on the pleadings pursuant to FRCP 12(c) on Plaintiffs' claim against NexPoint in the Amended Complaint.[2]

## PRELIMINARY STATEMENT

In its sprawling opposition brief (Dkt. 139, "Opp."), NexPoint fails to address many of the fatal flaws identified in Plaintiffs' Motion, and where it does do so its response falls short.

NexPoint has no answer on the standing deficiencies that pervade its Amended Counterclaims. NexPoint stretches to claim direct standing based on trust law and a novel extension of New York common law fiduciary duties, but neither legal theory works. NexPoint claims that it can sue the ACM Parties directly as a beneficiary of a New York common law trust created by the Acis 6 Indenture. But NexPoint has not, and cannot, plead the most fundamental element of a New York common law trust—a fiduciary relationship between the Indenture Trustee and the Noteholders—which is fatal to NexPoint's trust theory. NexPoint's New York common law theory ignores controlling precedent and seeks to graft Investment Advisers Act ("IAA") anti-fraud rules to expand the reach of New York common law fiduciary duties to investment advisers' fund clients, where even the IAA's federal fiduciary duty standard does not reach. It fails as well.

NexPoint then turns to derivative standing. But under applicable Cayman Islands law, NexPoint all but concedes its pleading cannot survive. NexPoint primarily (if not exclusively) relies on the personal rights exception based on rights purportedly granted by statute—here the IAA. But the Court has already found that the IAA does not afford any rights to NexPoint, so its

---

[1]  Capitalized terms not defined herein have the meaning assigned to them in the Motion.

[2] Plaintiffs file this brief solely in reply to NexPoint's opposition because the Court extended the DAF Parties' time to respond to the Motion until July 5, but did not extend NexPoint's response or Plaintiffs' reply time.  *See* Dkt. 138.

personal rights claim fails on its face. NexPoint never mentions the fraud-on-the-minority exception. To the extent its discussion of ACM's purported control over the Trustee is meant to advance a fraud-on-the-minority exception argument, it is well established that control over the voting rights—not the Trustee—is required. NexPoint's conclusory allegation of collusion between ACM and the Controlling Class, HCLOF, falls well short of the particularity required for such allegations. Any assertion of the fraud-on-the-minority exception thus fails.

NexPoint thus seeks to evade application of Cayman Islands law based, again, on its New York common law trust theory. NexPoint argues that New York law governs derivative standing because it can pursue its claims on behalf of the purported trust created by the Indenture or, more precisely, on behalf of the Trustee that holds the purported trust's assets. But even if New York law governed derivative standing—and it does not—this theory fails because NexPoint has not pled the existence of a trust, as discussed above. Even if it had, NexPoint fails to plead demand or demand futility, which are necessary prerequisites to pursuing a derivative claim under New York law. And, substantively, claims by the Trustee (or derivative claims on the Trustee's behalf) are expressly barred by the Indenture prior to an Event of Default, which has not been alleged.

The only claim not barred by these standing deficiencies is NexPoint's tortious interference claim. But NexPoint points to no breach of the limited obligations of Acis 6 under the Notes, such as repaying principal and paying interest in accordance with the priority of payments. Instead, NexPoint wrongly asserts that the Notes incorporate by reference Acis 6's obligations under the Indenture. While the Notes *do* reference the Indenture, they *do not* incorporate it by reference. Even if the Notes incorporated the entire Indenture, NexPoint does not allege breaches of the Indenture, but rather alleges that the ACM Parties violated the separate Portfolio Management Agreement. Moreover, incorporation of the Indenture would make ACM an express

2

third-party beneficiary of the Notes, thus barring NexPoint's tortious interference claim. And, finally, NexPoint has no answer to the economic interest defense, which also bars that claim.

While lack of standing is sufficient to dismiss the remaining claims, NexPoint's opposition also fails to address the substantive grounds for dismissal of those claims. *First*, NexPoint argues that its tort claims are not duplicative of breach of contract claims because it chose not to bring breach of contract claims, and because the tort claims are pled in the alternative. But both arguments must be rejected where, as here, the misconduct that NexPoint alleges is specifically governed by the detailed terms of the Portfolio Management Agreement. *Second*, NexPoint seeks to cabin the applicability of the economic loss doctrine defense to product liability cases, but ignores the wealth of precedents applying it to securitized transactions like the one at issue here.

In sum, NexPoint fails to adequately respond to multiple overlapping and independent grounds for dismissal of all its claims. The Amended Counterclaims should be dismissed with prejudice, and the Court should grant judgment on the pleadings against NexPoint on Count One of Plaintiffs' Amended Complaint for the same reasons.

**ARGUMENT**

## I.     NEXPOINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

NexPoint fails to state a tortious interference claim because it does not allege any actual breach of the note by Acis 6 and the economic interest doctrine bars NexPoint's claim. *See* Mot. 24-25. NexPoint's contrary arguments (Opp. 1-2, 13-15) are unavailing.

*First*, NexPoint appears to assert for the first time (Opp. 1) that the ACM Parties caused Acis 6 to breach the Note by interfering with the Indenture's priority of payments. But NexPoint never alleged this, nor could it, and even now does not assert that the Noteholders were paid out of order. Rather, NexPoint alleges (Dkt. 78 ¶ 230) that the ACM Parties' breach of duties to Acis 6 reduced distribution proceeds. That does not breach the Note, Mot. 24, so NexPoint fails to state

3

a claim.  *See ATG Cap. LLC v. MGT Cap. Invs., Inc.*, 2018 WL 1406917, at \*4-5 (S.D.N.Y. Mar. 19, 2018) (dismissing tortious interference claim for failure to allege issuer "breached the Note").

*Second*, NexPoint attempts (Opp. 4, 13) to avoid this result by arguing that the Note incorporates the entirety of the Indenture and claiming breach of the Indenture's investment criteria provisions.  But the Note merely "reference[s] … the Indenture … for a statement of the respective rights, limitations, duties and immunities *thereunder* of the Issuer, the Trustee and the Holders of the Notes."  Dkt. 78-1 at Ex. A2-7-8 (emphasis added).  There is nothing in the Note suggesting that it *incorporates* the Indenture by that reference.  The "reference" to the Indenture thus provides "background law" and does not "clearly communicate … an intent to incorporate."  *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, 2013 WL 4856199, at \*3–4 (S.D.N.Y. Sept. 10, 2013).  When the drafters of Acis 6's governing documents wanted to *incorporate* by reference, they said so.  *See* Dkt. 140-2 at viii ("This Offering Circular … incorporate[s] by reference the provisions of the actual [governing] documents …" including the Indenture.); *id.* at 97 (ACM's "Form ADV … is incorporated by reference hereto."); *see also* Dkt. 78-1 at Ex. A2-9 ("*As provided in the Indenture*, … the Notes shall be construed in accordance with … the laws of the State of New York.") (emphasis added).  The drafters "knew how to" incorporate by reference "when that is what they intended," but did not do so for the entire Indenture.  *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2012 WL 4473288, at \*10 (S.D.N.Y. Aug. 16, 2012).

*Third*, even if the Note did incorporate the entire Indenture, NexPoint's claim would still be barred because ACM, as an express third-party beneficiary of the Indenture, *see* Dkt. 78-1 § 14.8, would also be a third-party beneficiary of the Note.  New York law does not permit tortious interference claims against third-party beneficiaries.  *See Sea Crest Const. Corp. v. City of New*

*York*, 286 A.D.2d 652, 653 (1st Dep't 2001) ("an [agreement's] intended third-party beneficiary … cannot be held liable for interfering with such agreement.").

*Fourth*, even if the Note did incorporate the Indenture's investment criteria provisions, NexPoint has not alleged that Acis 6 breached any of those provisions.  Rather, NexPoint only alleges that ACM breached its obligations to Acis 6 in the PMA, a separate contract to which NexPoint is neither a party nor a third-party beneficiary.  Dkt. 78-2 § 31.  NexPoint's tortious interference claim thus fails because it has not pled any breach of the Note by Acis 6 and cannot base that claim on ACM's alleged breaches of the PMA.  *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 595 (2012) (dismissing tortious interference with note claim against issuers' collateral managers because the "alleged [breach] … is not that of the [issuers], who were themselves victims …, but of … their managers, with which [noteholder] had no contract."); *id.* at 595 n.13 (noteholder could not base tortious interference claim on collateral managers' breach of their management agreement duties to issuer "because the management agreements disclaimed any implied third-party beneficiary status" for noteholder).  Nor can NexPoint add allegations of breach by Acis 6 through briefing.  *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 620 F. Supp. 3d 36, 49 (S.D.N.Y. 2022).

*Fifth*, NexPoint seeks (Opp. 14-15) to evade the economic interest doctrine—an independent bar to the tortious interference claim—by asserting that ACM breached the PMA with Acis 6.  But whether or not ACM breached the PMA, a separate contract to which NexPoint is neither a party nor third-party beneficiary, is irrelevant to whether ACM sought to "protect an economic interest in [Acis 6's] business" when it allegedly interfered with the Note.  *Horowitz v. Nat'l Gas & Elec. LLC*, 2018 WL 4572244, at *6 (S.D.N.Y. Sept. 24, 2018).  Far from denying that, NexPoint positively alleges that ACM has an economic interest in ensuring that Acis 6 paid

ACM's expenses, Dkt. 78 ¶¶ 8, 230, as the Indenture itself confirms by providing that ACM is a third-party beneficiary, Dkt. 78-1 § 14.8.  Further, NexPoint's bare allegation that ACM breached the PMA does not establish the fraud, malice, or illegality required to "impos[e] [] liability in spite of an economic interest defense," *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, 2008 WL 2930546, at *10 (S.D.N.Y. July 29, 2008) (allegation that "reiterates plaintiffs' breach of contract theory" is insufficient), nor was it pled with the particularity that Rule 9(b), which applies, requires.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2009) (tortious interference claim based on fraud was subject to and did not meet Rule 9(b)'s pleading standard).

## II.    NEXPOINT LACKS DIRECT STANDING

### A.    NexPoint Lacks Direct Standing For Its Breach Of Fiduciary Duty Claim

Hoping to avoid the hurdles of derivative standing, NexPoint advances (Opp. 16-26) four scattershot direct breach of fiduciary duty theories.  Each theory fails for multiple reasons.

Trust Theory: NexPoint claims (Opp. 19) that ACM owes it "direct fiduciary duties as a co-trustee" of a New York or Cayman Islands trust.  NexPoint's arguments are unavailing.

*First*, NexPoint is incorrect (Opp. 17-19) that the Indenture created a New York common law trust.  The hallmark of a New York common law trust is the fiduciary relationship between the trustee and the beneficiaries.  *France v. Thermo Funding Co., LLC*, 989 F. Supp. 2d 287, 295 n.38 (S.D.N.Y. 2013) ("A trust ... is a fiduciary relationship … arising from a manifestation of intention to create [it]").  As the Court ruled, the parties did not intend to create a pre-Event of Default fiduciary relationship between the Trustee and the Noteholders.  *NexPoint*, 620 F. Supp. 3d at 47-48; *see also* Mot. 35-36.  With no pre-default fiduciary relationship, common law trust principles do not apply, as recognized by a long line of New York state and federal precedents. *See, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portf'o Serv'g, Inc.*, 837 F. Supp. 2d 162, 193-94 (S.D.N.Y. 2011) ("[M]uch of the common law of trusts, and its corresponding fiduciary

obligations, *are not applicable* to commercial trusts.  Rather, the duties of an indenture trustee are generally strictly defined and limited to the terms of the indenture.") (emphasis added).[3]

NexPoint's reliance (Opp. 17) on the passing reference to "the trusts" in the Indenture's granting clause is misplaced.  This bare label does not create a trust because the substance of the Indenture creates a commercial security and debtor-creditor relationship, not a fiduciary relationship.  *See* Mot. 35-36 (citing cases); *In re Materetsky*, 28 B.R. 499, 502 (Bankr. S.D.N.Y. 1983) ("magic words" such as "in trust" do not create a trust if the "substance of the [contractual] relationship" does not create "a fiduciary relationship."); *In re: Salim*, 2015 WL 1240000, at *16 (Bankr. E.D.N.Y. Mar. 16, 2015) (similar), *aff'd*, 577 B.R. 615 (E.D.N.Y. 2017).  Further, NexPoint ignores the Indenture and PMA provisions that disclaim any implied fiduciary obligations or, in ACM's case, any obligations to the Noteholders.  Dkt. 78-1 § 6.1(a) (the Trustee owes "no implied covenants"); Dkt. 78-2 § 3(c) (ACM owes no "duties [not] expressly specified" in the Indenture or PMA, and owes "no implicit obligations"), § 31 (noteholders are not third-party beneficiaries of the PMA).  These provisions "show[] an intent to create ordinary contractual obligations between the parties, *not* a fiduciary relationship."  *In re First Cent. Fin. Corp.*, 269 B.R. 481, 498 (Bankr. E.D.N.Y. 2001) (emphasis in original), *aff'd*, 377 F.3d 209 (2d Cir. 2004).

*Second*, even if the Indenture did create a New York common law trust, NexPoint's argument (Opp. 19) that ACM owes "direct fiduciary duties as co-trustee" fails because the actual Trustee does not owe pre-Event of Default fiduciary duties.  Where, as here, the trustee to a securitized transaction is not subject to fiduciary obligations, the Trustee could not delegate

---

[3] *See also Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) ("Unlike an ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement."); *AG Cap. Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y.3d 146, 156 (N.Y. 2008) ("The trustee under a corporate indenture … has his rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement.").

fiduciary duties to ACM.  *Ellington*, 837 F. Supp. 2d at 193-94.[4]  NexPoint does not contest and thus concedes this argument from Plaintiffs' opening (Mot. 30-31).  *McMillian v. MTA Metro-N. R.R.*, 2021 WL 4311318, at *3 n.3 (S.D.N.Y. Sept. 20, 2021) (failure to oppose results in waiver).

*Third*, NexPoint stretches (Opp. 20) to claim that the Indenture creates a trust under Cayman law.  Rather, the Indenture's New York choice of law clause governs whether it created such a trust.  *See In re Chappell*, 25 Misc. 3d 704, 706 (Sur. Ct. 2009) (applying instrument's choice of law clause "to determine issues regarding the trusts").  Even if Cayman Islands law applied, the result is the same as under New York law—no trust arises because the parties did not intend to create a fiduciary relationship.  Milne Reply Decl. (Dkt. 150) ¶¶ 8-37; *see supra* 6-7.

*Fourth*, even if NexPoint could plead the existence of a trust under New York or Cayman law, its claims would still have to be asserted derivatively on behalf of the Trustee.  Mot. 25-27.

<u>New York Common Law Fiduciary Duty Theory</u>: NexPoint also claims (Opp. 20-23) that New York law allows direct claims by fund investors against fund advisers.  Its arguments fail.

*First*, NexPoint wrongly asserts (Opp. 22) that ACM was a fiduciary because it "manage[s] the assets for the benefit of the Noteholders."  But that conclusory allegation does not establish the "higher level of trust" (*Oddo*, N.Y.3d at 593) required to create a fiduciary relationship, as courts applying New York law have ruled in the CLO context.  *See In re Zohar III, Corp.*, 2021 WL 3124298, at *15 (Bankr. D. Del. July 23, 2021) (CLO investor's allegations that "Managers were required to manage the [CLO] [F]unds' assets for the Noteholders … are insufficient to support a

---

[4]   The cases cited by NexPoint (Opp. at 19) are inapposite because they all concern advisors to fiduciary trustees, not advisors to non-fiduciary trustees of securitized transactions, as here.  *See In re Est. of Rubin*, 540 N.Y.S.2d 944, 947 (N.Y. Sur. Ct. 1989) ("the relationship between the fiduciary [trustee] and advisor is that of a co-trustee"); 106 N.Y. Jur. 2d Trusts § 348 (similar) (citing *Rubin*); Restatement (Second) of Trusts § 185(c), (e) (1959) (discussing the duties of advisors to common-law fiduciary trustees); J.R. Kemper, *Construction and Operation of Will or Trust Provision Appointing Advisors to Trustee or Executor*, 56 A.L.R.3d 1249 § 10 (1974) (advisors to common-law fiduciary trustees are "held to the same standards … as the … trustee himself").

conclusion that a higher trust arose between the sophisticated and commercial parties") (applying New York law). That is especially the case here because the lengthy governing agreements, including the Acis 6 PMA, limit ACM's obligations to Acis 6, bar Noteholders from pursuing claims against ACM, and provide that ACM does not owe any implied obligations to the Noteholders. *See* Mot. 28 (citing Dkt. 78-2 §§ 2, 10, 31); Dkt. 78-2 § 3(c) (disclaiming implicit obligations); *Nam Tai Elecs., Inc. v. UBS PaineWebber Inc.*, 46 A.D.3d 486, 487 (1st Dep't 2007) (a third party's contract with the creditor's debtor does not create "a fiduciary relationship" between the third party and debtor); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 5518146, at *52 (S.D.N.Y. Sept. 14, 2020) (CDO collateral manager "did not owe fiduciary duties to the underlying investors"). Indeed, NexPoint has not even alleged, as New York law requires, that NexPoint had either a "contractual relationship" or "direct dealings" with ACM. *Oddo*, 19 N.Y.3d at 594. Because the parties not only declined to fashion but expressly disclaimed a relationship of higher trust between ACM and the Noteholders, "courts should not … fashion the stricter [fiduciary] duty for them." *Id*. at 593.

*Second*, NexPoint mischaracterizes (Opp. 22-23) stray *dicta* in *Oddo Asset Management v. Barclays Bank PLC* that the issuer's capital noteholders had more equity-like rights than the plaintiff noteholder as authorizing direct breach of fiduciary claims by fund investors against fund advisers. To the contrary, *Oddo* confirmed that debtors and their portfolio managers generally do not owe fiduciary duties to note-holding creditors, even if, as NexPoint alleges here, the notes in question have "some equity-like features." 19 N.Y.3d at 593; *accord Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 476 (S.D.N.Y. 2011) (rejecting argument that CDO fund Noteholders with the "residual interest in income generated by" the fund "are the [fund's] 'true equity owners'"). Even if NexPoint's note were equity, ACM would still not owe it fiduciary duties

because ACM has neither a contractual relationship nor direct dealings with NexPoint. *Oddo*, 19 N.Y.3d at 593 (treating the absence of both as "additional reasons" negating a fiduciary duty).

*Third*, NexPoint mischaracterizes (Opp. 21) two pre-*Oddo* lower court cases, *Schneider v. Lazard Freres & Co.* and *Metro. West Asset Management, LLC v. Magnus Funding, Ltd.*, as establishing that ACM owes direct fiduciary duties because it "gave advice directly for the benefit of investors." *Metro. West* relied on *Schneider*, which held that a principal's advisor might owe direct duties to the principal's investors if (i) the principal also owed those investors direct fiduciary duties, and (ii) the advisor was helping the principal advise those investors. *See Schneider*, 159 A.D.2d 291, 296-97 (1st Dep't 1990) (the Special Committee's "purpose was to advise the shareholders" and "[t]he existence of a fiduciary relationship between the Special Committee and the shareholders itself establishes [a duty] between the shareholders and [the Special Committee's advisor]"); *Metro W.*, 2004 WL 1444868, at *10 (S.D.N.Y. June 25, 2004) (the manager "owed a [fiduciary] duty to plaintiff" because it "was hired by the Issuers, who had a fiduciary relationship with plaintiff."). But NexPoint fails to state a direct claim under *Schneider* and *Metro. West* because it has not alleged that Acis 6 owed it a fiduciary duty or advised it at all, let alone with ACM's assistance. To the contrary, under Cayman Islands law Acis 6 does not owe fiduciary duties to its shareholders or creditors. Milne Reply Decl. ¶¶ 53-55; Mot. 12. Likewise, the Offering Circular on which NexPoint relies (Opp. 20-21) makes clear that Acis 6 neither owed fiduciary duties to NexPoint nor advised it. *See* Dkt. 140-2 at 28 (the "issuers … will not have a fiduciary relationship with any investor"); *id*. 29 ("None of the Co-Issuers … is providing investment … advice"). Further, even if *Schneider* and *Metro. West* supported NexPoint—and they do not—those cases are trumped by *Oddo*, which confirmed that a contractual relationship or

10

direct dealings are required to plead a direct fiduciary duty. *Oddo*, 19 N.Y.3d at 594; *accord Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Woodhead*, 917 F.2d 752, 757 (2d Cir. 1990) (similar).

*Fourth*, NexPoint mischaracterizes (Opp. 21) the PMA and the Offering Circular's statement that ACM might be "liable" for willful misconduct as establishing that ACM would owe direct fiduciary duties to the Noteholders. Neither the PMA nor the Offering Circular states that ACM is liable ***to Noteholders*** for willful misconduct.[5] Dkt. 78-2 § 11(a)(i) ("the Portfolio Manager shall be liable (i) by reason of acts or omissions constituting bad faith, willful misconduct, gross negligence, or reckless disregard"); Dkt. 140-2 at 102 (similar). Rather, the PMA provides that ACM owes duties to the Issuer and not the Noteholders, who are neither parties nor third-party beneficiaries to the PMA. *See* Mot. 28 (citing Dkt. 78-2 §§ 2, 10, 31). Likewise, the Offering Circular expressly provides that ACM only owes fiduciary duties to Acis 6, Dkt. 140-2 at 57, not noteholders, *id*. at 28-29. Further, even if the PMA and Offering Circular did create a duty not to act in bad faith towards noteholders, that does not establish a fiduciary relationship. *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 618 (S.D.N.Y. 2010) (allegations that a party breached a duty not to "act[] in bad faith" were "insufficient to plead a fiduciary relationship").

*Fifth*, NexPoint stretches (Opp. 20-21, 21 n.50) to assert that it relied on purported representations in the Offering Circular concerning ACM's "skills as Portfolio Manager" to invest in Acis 6. But NexPoint's counterclaims neither reference these representations nor allege that it relied on them, *see* Mot. 29, and NexPoint cannot amend those counterclaims through briefing, *NexPoint*, 620 F. Supp. 3d at 49. Further, those representations do not trigger direct fiduciary duties, both because NexPoint does not allege that they were inaccurate when made, *see In re*

---

[5] NexPoint's reliance (Opp. 21) on *Metro. West* is in error because in that case, unlike here, the manager's agreement with the issuer "expressly state[d] that [the manager] can be liable to noteholders." 2004 WL 1444868 at *10 n.7.

*Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 379 (S.D.N.Y. 2011) (dismissing breach of fiduciary duty claim against fund adviser because for failure to allege misrepresentations), and because they are not "direct dealings" capable of triggering a fiduciary relationship. *Oddo*, 19 N.Y.3d at 594.

Investment Advisers Act Theory: Neither Section 206 of the IAA nor IAA Rule 206(4)-8 extend fund advisers' fiduciary duties to investors in their advised funds under New York common law. Mot. 29-30. NexPoint's contrary arguments (Opp. 23-26) are baseless.

*First*, NexPoint mischaracterizes (Opp. 25-26) the D.C. Circuit's ruling in *Goldstein v. S.E.C.* as holding that the IAA's anti-fraud provision, Section 206(4), extends fund advisers' fiduciary duties to investors in their advised funds. NexPoint misleadingly cites a snippet of *Goldstein* for the proposition that Section 206(4) "applies to persons other than clients." Opp. 25 (citing *Goldstein*, 451 F.3d 874, 881 n.6 (D.C. Cir. 2006)). But the complete passage, which NexPoint's brief omits, demonstrates that the D.C. Circuit rejected NexPoint's exact argument.[6] In *Goldstein*, the D.C. Circuit ruled that Section 206(4) "only [permitted] "investors … [to] sustain an action for fraud against the fund's adviser" and rejected the SEC's contrary argument that it "created" fiduciary duties that "extend to the relationship between an adviser and the [investors] of a hedge fund." 451 F.3d 874, 881 n.6. *Goldstein* also confirmed that Sections 206(1)-(3) of the IAA, which "determin[e] to whom fiduciary duties are owed," limit those duties to an adviser's

---

[6] The full passage reads as follows (*Goldstein*, 451 F.3d at 881 n.6):

> In the *Hedge Fund Rule,* 69 Fed.Reg. at 72,070 n. 187, and again at oral argument, Tr. of Oral Argument 16–17, the Commission argued that the fiduciary duties created by the anti-fraud provisions of the Advisers Act did in fact extend to the relationship between an adviser and the limited partners of a hedge fund. The Commission relies on *Abrahamson v. Fleschner,* in which the Second Circuit found that limited partners of a hedge fund stated a cause of action against the general partner for fraud under § 206. 568 F.2d at 877–78. The anti-fraud provision also applies, however, to persons other than clients. *See* 15 U.S.C. § 80b–6(4). In the absence of further specification, *Abrahamson* can only be read for the proposition that investors in a hedge fund may sustain an action for fraud against the fund's adviser. *Cf. United States v. Elliott,* 62 F.3d 1304, 1311–13 (11th Cir.1995) (holding that adviser-client relationship was not required for criminal fraud conviction under § 206).

clients and do not extend them to non-clients, including a fund-client's investors. *Id.* at 881-82 ("The adviser owes fiduciary duties [under Section 206] only to the fund, not to the fund's investors."). As *Goldstein* observed, any other rule would "inevitably" cause "conflicts of interest" between advisers' duties to the fund and its investors. *Id.* at 881. This bars recognizing a fiduciary duty under New York law. *See HF Mgmt. Servs. LLC v. Pistone*, 34 A.D.3d 82, 86 (1st Dep't 2006) (declining to recognize a "fiduciary obligation that would … create a conflict [of interest]").

*Second*, NexPoint mischaracterizes (Opp. 26) the U.S. Supreme Court's rulings in *S.E.C. v. Capital Gains Research Bureau, Inc.* and *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis* as holding that Section 206(4) extends fund advisers' fiduciary duties to investors in their advised funds. *Capital Gains* and *TAMA* only held that Sections 206(1)-(3), which *Goldstein* confirms do not run to non-clients, *see supra* 12-13, create fiduciary duties. *See Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (Section 206(2)'s language "recogni[zes] … fiduciary" duties); *TAMA*, 444 U.S. 11, 16-17 (1979) (quoting Sections 206(1)-(3) and holding that these provisions "establish federal fiduciary standards" applicable to "any client or prospective client").

*Third*, despite acknowledging (Opp. 26) that Rule 206(4)-8 "created no *new* fiduciary duties," NexPoint mischaracterizes the rule by asserting (*id.*) that it "reflects" and "defined the scope of" supposedly pre-existing Section 206(4) IAA fiduciary duties owed by fund advisers to investors in their advised funds. But the Rule could not have recognized such pre-existing Section 206(4) fiduciary duties to non-clients because, as *Goldstein* held, there are none.[7] *Supra* 12-13.

---

[7] Rule 206(4)-8 itself rebuts NexPoint's assertion by specifying that only "other law," not Section 206(4), could create a fiduciary duty running from investment advisers to investment fund clients. 72 Fed. Reg. 44,756, 44,760 ("The rule … will permit us to bring an enforcement action against an investment adviser that violates *a fiduciary duty imposed by other law* if the violation … *also* [violates] the rule and section 206(4).") (emphasis added).

Because Section 206 and Rule 206(4)-8 do not expand federal fiduciary duties to encompass fund investors like NexPoint, they cannot be imported to expand the reach of New York common law fiduciary duties because NexPoint does not "come[] within the[ir] protective orbit." *Lopes v. Rostad*, 45 N.Y.2d 617, 623 (1978). And the only provisions of Section 206 that impose fiduciary duties—Sections 206(1)-(3)—exclude non-clients and only protect investment advisers' fund clients. *See supra* 12-13; *Fazi v. United States*, 935 F.2d 535, 540 (2d Cir. 1991) (federal regulations not intended to protect plaintiff were not "a basis for liability"). NexPoint's claim (Opp. 24) that Section 206(4) "was designed to protect" non-clients misses the point because that provision does not impose fiduciary duties, *see supra* 12-13, and NexPoint has not brought a common law fraud tort claim into which Section 206(4) anti-fraud standards might be imported.[8]

<u>Cayman Islands Law Theory</u>: Finally, NexPoint's Cayman Islands law declaration asserts that ACM owed NexPoint fiduciary duties as a "*de facto* or shadow director" of Acis 6. Dkt. 141 ¶¶ 26. This argument fails. *First*, NexPoint is precluded from advancing this argument because it did not plead it. *See Nexpoint*, 620 F. Supp. 3d at 49. *Second*, this argument fails under Cayman law because NexPoint has not alleged that ACM directed Acis 6's directors' actions as required to establish shadow director status, or that ACM held itself out as an Acis 6 director as required to establish *de facto* director status. Milne Reply Decl. ¶¶ 38-52; *see* Dkt. 141 ¶¶ 21-22 (NexPoint's

---

[8] NexPoint's reliance on out-of-state IAA cases is likewise inapposite. None of these cases extended IAA fiduciary duties to non-clients. *See Douglass v. Beakley*, 900 F. Supp. 2d 736, 745, 751-52 & n.16 (N.D. Tex. 2012) (IAA standard of care applied to breach of fiduciary duty claim because plaintiff pled that defendants "rendered investment advise to the [plaintiffs]"); *S.E.C. v. Markusen*, 143 F. Supp. 3d 877, 890-91 (D. Minn. 2015) (defendant "was a fiduciary to the Funds"); *Goldenson v. Steffens*, 2014 WL 12788001, at *86-88 (D. Me. Mar. 7, 2014) (IAA standard of care could trigger common law fiduciary duty because defendants "were investment advisers to the [plaintiffs]"); *State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 779, 784-85 (N.M. 1991) ("professional services contract … whereby [defendant] would advise [plaintiff]" triggered IAA fiduciary duties). NexPoint's reliance on *Strougo on Behalf of Brazil Fund, Inc. v. Scudder, Stevens & Clark, Inc.* is also misplaced because that case concerned an Investment Companies Act "private right of action," *see* 964 F. Supp. 783, 797 (S.D.N.Y. 1997), but the Court ruled "there is no private right of action under § 206" of the IAA. *See NexPoint*, 620 F. Supp. 3d at 43.

14

expert agreeing with these tests).  *Third*, even if ACM were a shadow or *de facto* director, it would still not owe NexPoint fiduciary duties under Cayman law.  Milne Reply Decl. ¶¶ 53-55; Mot. 12.

### B.     NexPoint Lacks Direct Standing To Pursue Its Other Claims

In their Motion, Plaintiffs explained (Mot. 25-27) that NexPoint lacks direct standing to pursue its negligence, conversion, unjust enrichment, and aiding and abetting claims.  NexPoint does not respond to these arguments and has therefore conceded the point.  *See McMillian*, 2021 WL 4311318, at *3 n.3.  Instead, NexPoint merely argues (Opp. 23-24 n.59) that Plaintiffs "failed to address [its] aiding and abetting claim."  NexPoint is wrong because Plaintiffs argued that NexPoint's tort claims, including aiding and abetting, are derivative.  *See* Mot. 25-27, 27 n.14.

NexPoint's expert also asserts (Dkt. 141 ¶ 48) that NexPoint "could" sue directly under Cayman Islands law "for fraud and/or conspiracy to defraud," as well as "unlawful means conspiracy."  But NexPoint did not plead these claims, and may not amend its counterclaims through expert declarations.  *Nexpoint*, 620 F. Supp. 3d at 49.  Further, these claims are derivative under Cayman law.  Mot. 26-27; Milne Reply Decl. ¶¶ 97-102.  Finally, NexPoint has not pled fraudulent conduct in its complaint, let alone with particularity.  *See* FRCP 9(b); Mot. 33-34.

## III.    NEXPOINT LACKS DERIVATIVE STANDING

### A.     NexPoint Lacks Derivative Standing Under Cayman Islands Law

NexPoint also lacks derivative standing under Cayman Islands law, which governs.  *See* Mot. 31-35.  NexPoint's contrary arguments are unavailing.

*First*, NexPoint attempts (Opp. 28) to evade Cayman Islands law by claiming that the Indenture's New York choice of law clause[9] governs NexPoint's derivative standing to sue on behalf of Acis 6, a Cayman Islands company.  NexPoint is wrong.  Rather, derivative standing is a "threshold issue" that "choice of law provisions can[not] govern" and is instead "'governed by the laws of the [place] of incorporation." *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 40 (2d Cir. 2020) (quoting *Howe*, 783 F. Supp. 2d at 476).  Accordingly, "under New York choice of law rules," Cayman Islands law applies" to determine derivative standing since Acis 6 is incorporated there. *Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y. 2007).[10]

*Second*, NexPoint wrongly asserts (Opp. 29) that Cayman Islands law's prohibition on creditor derivative actions does not bar its claim because it "alleged [its Note] is equity."  But that allegation is a "[l]egal conclusion[]" that need not be "accept[ed] as true." *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (Woods, J.).  Rather, neither Cayman Islands law nor New York courts would recharacterize subordinated debt as shares.  *See* Mot. 32; Milne Decl. (Dkt. 109) ¶¶ 41-46; Milne Reply Decl. ¶¶ 56-73.  Further, NexPoint's expert's unsupported suggestion (Dkt. 141 ¶¶ 33-36) that Cayman Islands courts would grant NexPoint creditor derivative standing is foreclosed by a decision of the U.K. Supreme Court

---

[9]  Dkt. 78-1 § 14.9 ("The Indenture and each Note shall be construed in accordance with and governed by the law of the State of New York.").  NexPoint's attempt (Opp. 28) to rely on the PMA's choice of law clause, which selects New York law "without giving effect to [its] conflicts of laws provisions," Dkt. 78-2 § 24, fails both because NexPoint may not enforce the PMA, *see supra* 5, and because the law of the entity's place of incorporation applies notwithstanding such language. *See St. Clair-Hibbard*, 812 F. App'x at 40 n.1 ("the law of the [entity's] state of incorporation, Maryland, applies to … Plaintiff's standing" notwithstanding the New York choice of law clause's exclusion of New York "principles of conflicts of law.").  NexPoint's contrary reliance (Opp. at 28) on *Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP* is misplaced because that case did not concern derivative standing.  539 B.R. 643, 650 n.3 (S.D.N.Y. 2015) (considering whether the internal affairs doctrine applied to privilege claims).

[10]  Rather than "rejecting the [application of the] internal affairs doctrine" to determine derivative standing as NexPoint wrongly asserts (Opp. at 28), *Greenspun v. Lindley* held that "Massachusetts law is applicable" to derivative standing to sue on behalf of an entity is "organized … under the laws of Massachusetts."  330 N.E.2d 79, 80 (N.Y. 1975).  NexPoint's reliance (Opp. at 28) on *Elliot International L.P. v. Vitro, S.A.B.* is inapposite because that case did not address derivative standing.  945 N.Y.S.2d 1, 2 (1st Dep't 2012) (declining to defer to foreign proceeding).

that the Cayman Islands' highest court has adopted. *See* Dkt. 109-3, *Marex Financial Ltd. v. Sevilleja*, [2020] UKSC 31 ¶ 83 (creditors cannot sue derivatively); Dkt. 109-4, *Primeo Fund v. Bank of Bermuda (Cayman) Ltd.*, [2021] UKPC 22 ¶ 2 ("Cayman Islands law … is the same as … *Marex*."); Milne Decl. ¶¶ 32-40; Milne Reply Decl. ¶¶ 63-66. That expert's assertion (Dkt. 141 ¶¶ 32-33) that NexPoint has derivative standing because Acis 6 is similar to an insolvent company also fails because even an insolvent company's creditors cannot sue derivatively. Dkt. 141-9, *BTI 2014 LLC v. Sequana SA*, [2022] UKSC 25 ¶ 267 (an insolvent company's creditors may not "directly or derivatively … sue the directors"); Milne Reply Decl. ¶¶ 56-67.

*Third*, NexPoint asserts (Opp. 29) that unspecified "rights granted under statute" satisfy the personal rights exception to Cayman Islands law's prohibition of derivative actions. They do not. Rather, the only statute identified by NexPoint, the IAA, does not afford NexPoint personal rights because NexPoint lacks a private right of action under the IAA. *See NexPoint*, 620 F. Supp. 3d at 43-47; Milne Reply Decl. ¶¶ 82-83. And the only Cayman Islands case NexPoint relies on (Opp. 29), a trial decision finding that the personal rights exception applied to a claim based on directors' breaches of duty to the company, Dkt. 140-5 ¶¶ 100, 105, was overturned on that very point. *See* Dkt. 150-23 ¶¶ 51, 53 (allowing appeal and ruling that claim was derivative). NexPoint's foreign law expert's pronouncement (Dkt. 141 ¶ 46) that NexPoint "satisfied the personal rights exception" does not advance the ball, and should be disregarded in favor of Plaintiffs' Cayman authorities. Mot. 34-35; Milne Decl. ¶¶ 72-78; Milne Reply Decl. ¶¶ 78-87.

*Fourth*, to the extent that NexPoint's control and collusion allegations (Opp. 29) could be construed as asserting the fraud-on-the-minority exception, NexPoint has not established that exception. NexPoint fails to establish that exception's control element because it has not plausibly alleged that ACM "own[s] a majority of [Acis 6's] voting [securities] or ha[s] acquired de facto

control of those voting [securities]." *Davis v. Scottish Re Grp. Ltd.*, 160 A.D.3d 114, 116 (1st

Dep't 2018). Instead, NexPoint does not address, and thus concedes, Plaintiffs' argument that

NexPoint's assertions that ACM colluded with the only remaining subordinated noteholder,

HCLOF, are not pled with the particularity that Rule 9(b) requires because they are made on

information and belief without any supporting factual allegations. *Robinson v. Nat'l R.R.*

*Passenger Corp.*, 1995 WL 444322, at *8 (S.D.N.Y. July 26, 1995) ("allegations [of] collusion …

must be alleged with particularity under Rule 9(b)"); *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015

WL 2400182, at *6 (S.D.N.Y. May 20, 2015) (Woods, J.) (disregarding information and belief

collusion allegations); *McMillian*, 2021 WL 4311318, at *3 n.3 (waiver); *see* Mot. 33. And

NexPoint and its expert's respective assertions that ACM controlled the Trustee (Opp. 29) or Acis

6's directors (Dkt. 141 ¶ 45) are irrelevant because neither holds any voting securities. *See* Milne

Reply Decl. ¶¶ 88-93; *Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, 2021 WL 4460547, at

*13 (S.D.N.Y. Sept. 29, 2021) (control element not met because collateral manager did not control

a majority of the voting shares). NexPoint also cannot establish the fraud element because it does

not allege that ACM "obtained a personal benefit at the company's expense" "as a result of [its]

wrongful conduct." *Shenwick v. HM Ruby Fund, L.P.*, 106 A.D.3d 638, 639 (1st Dep't 2013).

Further, NexPoint's expert's unsupported assertion (Dkt. 141 ¶ 43) that Plaintiffs' alleged

"inflation [of] assets under management" to "inflate[] fees … and expenses" satisfies the fraud

element fails because New York courts applying Cayman law reject near-identical allegations as

insufficient. *See Shenwick*, 106 A.D.3d at 638-39 (1st Dep't 2013) (allegations that fund manager

"artificially inflat[ed] the fund's net asset value … [to] receive higher compensation" do not show

fraud element); *Winn*, 499 F. Supp. 2d at 398 (similar).

## B.    NexPoint Lacks Derivative Standing Under New York Law

NexPoint claims (Opp. 27-28) that it has New York law derivative standing to bring trust claims on behalf of the Trustee.[11]  Even if the Indenture created a trust—it does not (Mot. 35-36; *supra* 6-7)—NexPoint's claims should be dismissed for lack of derivative standing.  Mot. 35-39.

*First*, NexPoint has conceded that the Indenture bars its derivative claims on behalf of the Trustee.  As set forth in the Motion, Section 15.1(a) of the Indenture, which provides that the Trustee does not have the authority to assert claims "upon the breach of an obligation of the Portfolio Manager" by ACM before an event of default, *see* Dkt. 78-1 § 15.1(a), bars NexPoint's derivative claims on behalf of the Trustee because NexPoint admits that those claims are based on breaches of the PMA and that there has been no Event of Default.  Mot. 36-37.  NexPoint does not contest that Section 15.1(a) binds it as a putative derivative plaintiff (*see id.* 37) and bars its claims, and thus waived any contrary argument.  *See McMillian*, 2021 WL 4311318, at *3 n.3.

*Second*, NexPoint's claims should be dismissed for failure to plead an adequate demand or demand futility with particularity because NexPoint has waived any argument that it did so.  NexPoint asserts (Opp. 27-28) that it has an unrestricted "right to bring … a derivative action" as a beneficiary of a New York trust and that Plaintiffs "never address why NexPoint lacks standing under New York law."  It is wrong on both counts.  As the cases NexPoint cites establish (Opp. 27), a New York trust beneficiary cannot sue derivatively if it fails to plead adequate demand or demand futility.[12]  *See* Mot. 37; *BNP Paribas*, 2011 WL 3847376, at *8 n.8 (the beneficiary must

---

[11]   NexPoint must be claiming on behalf of the Trustee because trust claims are, "properly speaking, [claims] of the trustees."  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2011 WL 3847376, at *8 (S.D.N.Y. Aug. 30, 2011).

[12]   *See Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 297 (2d Cir. 1965) (trust beneficiaries may sue derivatively "when the trustee has wrongfully refused" demand); *Ellington*, 837 F. Supp. 2d at 188 ("shareholder derivative standards" apply); *Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Tr.*, 1996 WL 601705, at *4 n.8

"show[] [] demand on the trustees to bring the suit, and of a refusal so unjustifiable so as to constitute an abuse of the trustee's discretion").  Likewise, far from "waiv[ing]" (Opp. 28) these derivative pleading arguments, Plaintiffs expressly argued that NexPoint "neither pled an adequate demand nor demand futility" because its only purported demand letter was not adequate and it failed to allege demand futility with particularity.  *Id*. at 37-39.  By failing to make any contrary arguments, NexPoint concedes the point.  *McMillian*, 2021 WL 4311318, at *3 n.3.

## IV.  NEXPOINT'S COUNTERCLAIMS ARE BARRED FOR ADDITIONAL REASONS

### A.    NexPoint's Remaining Tort and Quasi-Contractual Claims Must Be Dismissed As Duplicative

NexPoint's breach of fiduciary duty, negligence, conversion, and unjust enrichment claims must all be dismissed because they are all duplicative of and based on conduct governed by the Acis 6 PMA and Indenture.  *See* Mot. 39-40.  NexPoint's contrary arguments are unavailing.

*First*, NexPoint's assertion (Opp. 30) that its tort claims are pled in the alternative fails because "a tort claim may not be pled in the alternative" if it is "duplicative of [a] contract claim." *Deutsch v. JPMorgan Chase & Co.*, 2019 WL 4805689, at *10 (S.D.N.Y. Sept. 30, 2019).

*Second*, NexPoint argues (Opp. 30) that its claims are not duplicative because of the independent duty rule.  But that rule does not apply because the IAA, Rule 206(4)-8, and New York common law do not impose direct fiduciary duties.  *See* Mot. 25-31; *supra* 6-15.  And even assuming an independent duty existed, the tort claims are still duplicative because they are based "on allegations of fiduciary wrongdoing … raised in plaintiff's breach of contract" allegations.  *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013).

---

(S.D.N.Y. Oct. 18, 1996) (trust beneficiaries must plead that "demand has been made or is excused"); *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 477 (S.D.N.Y. 2010) (trust beneficiaries must "show[] … demand … or … [that] it is futile").

*Third*, NexPoint wrongly asserts (Opp. 31) that its conversion claim "does not depend on [] contract[]."  NexPoint, however, alleges that the ACM Parties converted its property by breaching the Indenture's expense provisions, which NexPoint alleges were incorporated into its Note, so its claim depends on contract.  Dkt. 78 ¶¶ 209-210, 212; *see Zohar*, 2021 WL 4460547, at *15 (dismissing conversion claim against CLO credit enhancer that was "based on contract").

*Fourth*, NexPoint claims (Opp. 31) that its unjust enrichment claim is not barred by the Indenture and PMA because NexPoint is not a party to those agreements and may seek to rescind them.  Neither argument works.  The first argument fails because New York law bars unjust enrichment claims based on breaches of contract "even if one of the parties to the claim is not a party to th[ose] contracts."  *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207-08 (S.D.N.Y. 2016); *see* Mot. 40.  And the second argument fails because NexPoint has not pled a rescission claim, may not amend its pleadings through briefing to do so (*see NexPoint*, 620 F. Supp. 3d at 49), and lacks standing to rescind agreements to which it is neither a party nor a third-party beneficiary.[13]  *See Durosene v. Bank of Am., N.A.*, 2020 WL 3403083, at *3 (E.D.N.Y. June 19, 2020) ("a non-party to a contract lacks standing to challenge an agreement"); *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 353-54 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of contract whose validity defendant failed to "challenge[]"); Mot. 11.

### B.     The Economic Loss Rule Bars The Negligence And Conversion Claims

NexPoint argues (Opp. 32) that the economic loss rule is inapplicable because it is limited to products liability.  But NexPoint's own case finds the opposite—that the rule "applie[s] broadly" outside of products liability and bars structured product noteholders from recovering economic

---

[13]  NexPoint's reliance (Opp. at 31) on *Lazar v. Robinson Knife Manufacturing Co.* is misplaced because plaintiffs in that case pled rescission and it did not address rescission by non-parties.  692 N.Y.S.2d 539, 540-41 (4th Dep't 1999) (shareholders could seek "rescission of [] stock option plan" because "[t]he complaint seeks [rescission]").

losses against fund managers. *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302-3 (S.D.N.Y. 2012); *see Nat'l Credit Union Admin Bd. v. U.S. Bank Nat'l Ass'n*, 439 F. Supp. 3d 275, 283 (S.D.N.Y. 2020) (rule barred investment losses claim). The rule thus applies here. And while NexPoint also asserts (Opp. 32) that the rule does not apply to the violation of a professional duty, NexPoint has not alleged any such duty.[14] *See* Mot. 27-31; *supra* 6-15.

## V. ALL MOTION EXHIBITS RELEVANT TO NEXPOINT ARE PROPER

As a last-ditch effort to avoid dismissal, NexPoint claims (Opp. 7-10) that the Court should convert the motion to dismiss its counterclaims to summary judgment because fifteen exhibits (Exs. 1-3, 5, 8-13, and 15-19) submitted in support of the Motion are inappropriate for consideration on a Rule 12(b)(6) motion. NexPoint is wrong. To be clear, thirteen of the fifteen exhibits to which NexPoint objects are relevant only to Plaintiffs' motion to dismiss the DAF Parties' counterclaims and are irrelevant as to NexPoint's motion.[15] *See* Adams Decl. (Dkt. 108) Exs. 2-3, 5, 8-12, 15-19. The two remaining exhibits, **Exhibits 1** and **13**, are properly considered on the motion to dismiss NexPoint's counterclaims because they are judicial rulings from this action or related bankruptcy proceedings. *See* Ex. 1 (Dkt. 108-1) (this Court's February 23, 2023 motion to dismiss ruling); Ex. 13 (Dkt. 108-17) (the Texas Bankruptcy Court's August 3, 2021 contempt ruling). It is well settled that "[c]ourts may … take judicial notice of … court rulings[]." *Diba Fam. Ltd. P'ship v. Ross*, 2014 WL 5438068, at *2 (S.D.N.Y. Oct. 27, 2014), *aff'd*, 606 F. App'x 628 (2d Cir. 2015). NexPoint also ignores that Plaintiffs merely cite Exhibit 13 in a footnote stating that NexPoint's factual allegations, in addition to their legal flaws, are false. Mot. 45 n.20.

---

[14] NexPoint's reliance (Opp. at 32) on *Commerzbank AG v. U.S. Bank N.A.* is misplaced because the court has already dismissed NexPoint's claims against the Trustee for breach of duties that could have triggered a professional duty not subject to the economic loss rule. 277 F. Supp. 3d 483, 496-97 (S.D.N.Y. 2017); *NexPoint*, 620 F. Supp. 3d at 47-49.

[15] The appropriateness of the thirteen other exhibits will be addressed, if necessary, in Plaintiffs' reply brief on the portion of the Motion seeking to dismiss the DAF Parties' counterclaims and judgment against the DAF Parties.

## VI.    LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should be denied because amendment would be futile, and NexPoint's contrary arguments are unavailing. *First*, NexPoint's claim (Opp. 32) that it is entitled to "an opportunity to replead" ignores that NexPoint already "elect[ed] not to amend its pleading" in response to the Motion and thus "should not expect that the Court will grant further leave to amend." Individual Rules of Practice in Civil Cases, Rule 3(D). And even if granting leave to amend were the "usual practice" as NexPoint contends (Opp. 32), the Court should still deny leave because NexPoint "fails to specify … how amendment would cure the pleading deficiencies" the Motion identified. *Off. Sol. Grp., LLC*, 544 F. Supp. 3d at 419 (Woods, J.) (denying leave to amend). *Second*, NexPoint's claim (Opp. 33) that it is entitled to amend because additional unspecified facts may "come out in discovery" fails because discovery is for "properly pleaded cause[s] of action[,] … not to discover whether a claim exists." *Hill v. Philip Morris USA*, 2004 WL 1065548, at *7 (S.D.N.Y. May 11, 2004) (denying leave to amend). *Third*, NexPoint's claim (Opp. 33) that it "has never been afforded an opportunity to replead following a 12(b)(6) ruling" ignores that NexPoint did precisely that following this Court's dismissal of the Original NexPoint Lawsuit (*see NexPoint*, 620 F. Supp. 3d at 43-51) by adding a new tortious interference claim and new direct breach of fiduciary duty theories to its counterclaims. NexPoint must live with the consequences of its failure to plead viable claims despite having had ample opportunity to do so.

## VII.    THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIM AGAINST NEXPOINT

The Court should also grant judgment on the pleadings against NexPoint on Count One of Plaintiffs' Amended Complaint. Judgment is warranted because NexPoint lacks standing to bring the claims asserted in the Original NexPoint Action for the same reasons that it lacks standing to bring its counterclaims. *See* Mot. 41-42. None of NexPoint's contrary arguments are availing.

23

*First*, NexPoint wrongly asserts (Opp. 34-35) that judgment on the pleadings is premature because Plaintiffs moved to dismiss its counterclaims instead of answering them. That argument fails because the "*pertinent* pleadings" for judgment on the pleadings—Plaintiffs' Amended Complaint and NexPoint's Answer—are closed. *Gilman v. Spitzer*, 902 F. Supp. 389, 394 n.3 (S.D.N.Y. 2012) (an "open counterclaim … does not preclude a Rule 12(c) motion"), *aff'd*, 538 F. App'x 45 (2d Cir. 2013). Even if that were not so, the Court should still grant judgment because NexPoint's counterclaims should be dismissed and the pleadings will then be closed.[16]

*Second*, NexPoint claims (Opp. 35-36) that its affirmative defenses preclude judgment on the pleadings. They do not. Instead, the law of the case doctrine bars NexPoint's five affirmative defenses (Dkt. 78 at 7-8) because the Court already rejected those defenses—that Plaintiffs failed to state a claim, should have brought their claims in the Original NexPoint Action, or were not real parties in interest—in denying Defendants' motions to dismiss. *See* Dkt. 46 at 4-8, Dkt. 41-1 at 13-15 (Defendants advancing these arguments); Dkt. 108-1 at 12-24 (Court rejecting them); *Hamlen v. Gateway Energy Servs. Corp.*, 2018 WL 1568761, at *1-2 (S.D.N.Y. Mar. 29, 2018) (Rule 12(b)(6) ruling "is the law of the case"). And far from "waiv[ing]" (Opp. 36) this argument, Plaintiffs properly briefed it in reply because NexPoint first raised its defenses in opposition and did not mention them in the pre-motion letter or conference. Dkts. 94, 108-6; *see Baron A. Wolman Archives Tr. v. Complex Media, Inc.*, 2022 WL 523597, at *5 n.8 (S.D.N.Y. Feb. 22, 2022).

---

[16]  Unlike the cases cited by NexPoint (Opp. 34-35), the omnibus Motion permits the Court to "simultaneously consider[]" and resolve both Plaintiffs' claims and NexPoint's counterclaims without leaving any open, unanswered counterclaims unresolved. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 n.10 (11th Cir. 2014) (Rule 12(c) motion was premature because there was an unanswered counterclaim that had not been dismissed); *see also State Farm Fire and Cas. Co. v. Spradling Home Inspections, LLC*, 2011 WL 4056042, at *3 (E.D. Mo. Sept. 13, 2011) (denying both parties' Rule 12(c) motions because there was an unanswered counterclaim subject to an unresolved motion to dismiss); *Kraus USA, Inc. v. Magarik*, 2018 WL 4682016, at *12-13 (S.D.N.Y. Sept. 28, 2018) (denying defendants' Rule 12(c) motion because there was an unanswered counterclaim that the court had declined to dismiss).

*Third*, NexPoint asserts (Opp. 38) that the Court "[l]acks [j]urisdiction" to grant judgment on the pleadings. But the law of the case doctrine also bars this argument because, in denying Defendants' motion to dismiss, the Court ruled that it has jurisdiction to grant relief. Dkt. 108-1 at 12-21; *see Hamlen*, 2018 WL 1568761, at *1-2. NexPoint's argument also misconstrues Count One, which does not seek judgment that "there are no set of facts that could give NexPoint standing," *contra* Opp. 38, but rather merely that NexPoint lacks standing to bring the claims it asserted in the Original NexPoint Action. AC ¶ 65. Further, NexPoint is wrong (Opp. 38) that dismissing its counterclaims would moot Count One. It would not, because NexPoint pled a breach of contract claim in the Original NexPoint Lawsuit that it did not bring here. *See* Mot. 41-42.

*Fourth*, NexPoint asserts (Opp. 36-37) that its denials of certain facts alleged in the Amended Complaint preclude judgment on the pleadings. They do not. NexPoint has admitted the material facts that the Court requires to grant judgment on the pleadings on Count One, namely NexPoint filed the Original NexPoint Lawsuit, the Indenture and PMA exist and are governed by New York law, Acis 6 is a Cayman Islands company, and NexPoint holds a Subordinated Note in Acis 6. *See* Dkt. 140-4 ¶¶ 15, 23, 44 (NexPoint accepting that it admitted these allegations). Those facts, which NexPoint admits "are to be taken as true," Opp. 36, are sufficient to meet what NexPoint admits is the legal standard: "stat[ing] a cause of action against" NexPoint. *Id*.

*Fifth*, NexPoint attempts (Opp. 37-38) to evade judgment on the pleadings by claiming that Plaintiffs rely on NexPoint's admissions in Court filings other than its answer. But the Court need not resolve whether such admissions bind NexPoint because Plaintiffs' position is that "[t]he Court can resolve [Count One] on the facts admitted by [NexPoint]" in its answer. Mot. 41 n.16.

## CONCLUSION

For the reasons stated above, NexPoint's counterclaims should be dismissed with prejudice and Plaintiffs' motion for judgment on the pleadings against NexPoint should be granted.

Dated: New York, New York
June 28, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: _____*/s/ Blair Adams*_____
Jonathan E. Pickhardt
Blair A. Adams
Brendan Carroll
Misha Boutilier
Michael R. Bloom
Jeffrey Arnier
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis
Capital Management, L.P.*

**SEWARD & KISSEL LLP**

By: _____*/s/ Mark Kotwick*_____
Mark D. Kotwick
Thomas Ross Hooper
Julie J. Hong
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Plaintiff U.S. Bank National
Association, in its capacity as Trustee*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on June 28, 2023, he caused a true copy of the

foregoing document to be served via CM/ECF to all counsel of record.


*/s/ Misha Boutilier*
Misha Boutilier