UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>*Plaintiffs,*<br><br>-against-<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>*Defendants*. | CASE NO. 1:21-cv-11059 (GHW) |

**NEXPOINT DIVERSIFIED REAL ESTATE TRUST'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS NEXPOINT'S COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS**

Defendant/Counter-Plaintiff NexPoint Diversified Real Estate Trust ("NexPoint") respectfully submits this Sur-Reply in Opposition to Plaintiffs' Motion to Dismiss NexPoint's Counterclaims and for Judgment on the Pleadings on Plaintiffs' Claims and submits the declaration of NexPoint's Cayman Island legal expert, Bhavesh Patel ("Patel").

**A. MANY OF THE DECLARATION'S LEGAL CONCLUSIONS VIOLATE RULE 12(b)(6)**

The Federal Rules of Civil Procedure provide courts "wide latitude in resolving issues of foreign law." *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244 (S.D.N.Y. 2007). This considerable discretion permits courts to consider, and parties to submit, "any relevant material or source" to "determin[e] foreign law." FED. R. CIV. P. 44.1. However, Rule 12(b)(6) controls how facts at this stage must be considered in determining law—"all well-pleaded allegations in" NexPoint's counterclaims are treated "as true" and "all reasonable inferences" drawn must be in NexPoint's "favor." *See Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d

EXHIBIT 12

86, 91 (2d Cir. 2010). This is where the Reply and the Reply Declaration of Jonathon Milne (the "Declaration") run into considerable trouble.

For instance, Plaintiffs' expert bases several legal conclusions on his "understanding" that Plaintiff/Counter-Defendant Acis Capital Management, L.P. ("ACM"), "as Portfolio Manager, was engaged in a professional capacity by ACIS-6 to perform certain administrative and advisory functions pursuant to the PMA." Dkt. 150 at ¶ 46. But his "understanding" is irrelevant here—only the allegations in NexPoint's counterclaims matter. *See Operating Local*, 595 F.3d at 91. NexPoint's counterclaims paint a different story: ACM's functions and authority granted it complete control and dominion over ACIS-6. *See, e.g.*, Dkt. 78 at ¶¶ 56, 69–70, 73–74; *see also* Ex. A, Second Decl. of Patel at ¶¶ 19–20. And this example of the Declaration's defiance of the 12(b)(6) standard is far from the only one. *See, e.g.*, Ex. A at ¶¶ 5, 21–23. This being the case, the Declaration's legal conclusions are peculiarly suspect (and many times outright improper). Therefore, the legal conclusions advanced in the Declaration should be accorded minimal weight, if any. *See Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) (emphasizing that a 12(b)(6) motion "presents a pure legal question[] based on allegations contained within the four corners of the complaint").

B. **PLAINTIFFS' NEW ARGUMENTS RELATED TO CAYMANS TRUST LAW ARE INCORRECT**

In the Reply, Plaintiffs continue to argue, based on the Declaration, that ACIS-6 did not constitute a trust under Cayman Islands law "because the parties did not intend to create a fiduciary relationship." Dkt. 151 at p. 8. Aside from completely missing the point, Plaintiffs' reliance on the Declaration here leads their legal argument astray. To start, the Declaration addresses only one of the "three certainties" required for the formation of a Cayman Islands trust, which is a concession of the two other certainties. *See* Ex. A at ¶ 6. And even with the certainty of intention, which the

Declaration does address, Plaintiffs' argument is specious because their expert "substitut[es] his own finding of fact without any legal authority compelling his conclusion." *Id.* at ¶ 6; *see id.* at ¶¶ 8–11 (explaining further why the Declaration is incorrect).

Furthermore, and in particularly egregious fashion, the Declaration offers legal conclusions based on Plaintiffs' expert's interpretation of *domestic* law. *See* Ex. A at ¶ 28. There, the Declaration asserts that "the Indenture was not intended to operate as a trust" because of this Court's ruling in *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P.*, 620 F. Supp. 3d 36 (S.D.N.Y. 2022). *See* Ex. A at ¶ 28. Federal Rule of Civil Procedure 44.1 clearly permits courts to "consider a foreign law expert's opinion[s] even on ultimate legal conclusions." *Winn v. Schafer*, 499 F. Supp. 2d 390, 396 n.28 (S.D.N.Y. 2007). But it is equally clear that the Federal Rules of Evidence preclude consideration of an expert's legal opinions of domestic law. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64–65 (S.D.N.Y. 2001). In paragraph 28 of the Declaration, Plaintiffs' foreign-law expert draws a monumental legal conclusion based on his interpretation of domestic law—this is merely an attempt to give Plaintiffs' underlying legal argument the imprimatur of an expert, which is entirely improper. Even further, and somewhat predictably, Plaintiffs' expert misreads *NexPoint*—this should come as no surprise considering he is an expert on *Cayman Islands* law. *See* Dkt. 109 at ¶ 4. Nowhere in *NexPoint* did this Court hold (or even address) that "the PMA disclaims any obligations owed by ACM to Acis 6 investors like NexPoint." *See* Dkt. 150 at ¶ 4; *see also NexPoint*, 620 F. Supp. 3d at 43–50; Ex. A at ¶ 12.

C. <u>**PLAINTIFFS FALL FAR SHORT OF DISCONNECTING THE DIRECT FIDUCIARY TIE BETWEEN NEXPOINT AND ACM**</u>

Through the Declaration, Plaintiffs raise new arguments about why ACM does not owe direct fiduciary duties to NexPoint under the de facto/shadow trustee theory of Cayman Islands law. *See* Dkt. 150 at ¶¶ 38–55. Yet again, Plaintiffs' expert misses the mark. Apart from violating

Rule 12(b)(6) in fatal fashion when rendering its legal conclusions, the Declaration offers nothing other than the expert's *ipse dixit* to argue that ACM owes no direct fiduciary duties to NexPoint. Analyzed properly, there is no authority under Cayman Islands law holding that the facts NexPoint alleged are insufficient as a matter of law to establish that ACM—as a de facto/shadow director—directly owed NexPoint fiduciary duties in relation to ACIS-6. *See* Ex. A at ¶¶ 19–23. As such, Plaintiffs' argument here fails.

## D. EVEN IF THE COURT REJECTS NEXPOINT'S TRUST THEORY, NEXPOINT STILL HAS DERIVATIVE STANDING AS A CREDITOR

One final, half-hearted attack Plaintiffs attempt is to argue that Cayman Islands law would not allow NexPoint to have derivative standing if classified only as a creditor. Patel cites Cayman Islands legal judicial authority for the premise that where, as here, a company's assets are being managed solely for the benefit of creditors (whether because of insolvency or otherwise), a fiduciary duty runs to creditors. *See* Ex. A at ¶¶ 24–25. Once again, Plaintiffs' foreign-law expert rejects this premise by citing to dictum in a concurring opinion and advancing arguments predicated on misreadings of NexPoint's arguments and mischaracterizations of Cayman Islands law. *See* Dkt. 150 at ¶¶ 56–73. These are addressed by Mr. Patel. *See* Ex. A at ¶¶ 24–26.

Whereas it is well settled under Cayman Islands law that generally (1) the directors of a company's fiduciary duties are owed to the *shareholders*, and (2) the *shareholders* have derivative standing, Patel conceded in his first declaration that the Cayman Islands authorities have not explicitly held that *creditors* have derivative standing when they hold the residuary interest, and the fiduciary duty is owed to the creditors. *See* Ex. A at ¶ 26; *see also Ins. Co. of the State of Pa. v. Equitas Ins. Ltd.*, 68 F.4th 774, 791 n.8 (2d Cir. 2023) (holding that where a seemingly unsettled question of foreign law exists, federal courts are left to their own readings of foreign law).

Patel compellingly explains, however, that the logic of why shareholders have derivative

standing applies with full force when creditors are owed fiduciary duties, and that it would not make sense to recognize a fiduciary right of creditors while denying them standing "because there is simply no other class of individual who would have such a right" to bring a case. Ex. A at ¶ 25. Notably, Patel's explanation is on all fours with New York and Delaware law. For example, the Delaware Court of Chancery has explained that fiduciary duties are owed, not to shareholders or creditors *in se*, but to the residual claimants of a company to maximize the value of available assets. *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 176 (Del. Ch. 2014) (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007)). Both Delaware and New York thus recognize that a creditor has derivative standing when creditors "take the place of the shareholders as the residual beneficiaries" of the company's assets. *See Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conveyance Litig.*), No. 11-md-2296, 2018 U.S. Dist. LEXIS 204632, at *20–24 (S.D.N.Y. Nov. 30, 2018). New York law calls this the "trust fund doctrine." *In re Sabine Oil & Gas Corp.*, 562 B.R. 211, 230 (S.D.N.Y. 2016) (holding that, when creditors are the residuary beneficiaries, fiduciaries owe duties to creditors to "exercise judgment in an informed, good faith effort to maximize the corporation's long-term wealth creating capacity" for the residual claimants). Here, there is no dispute that NexPoint is one of two residual claimants of the assets in question of ACIS-6.

## CONCLUSION

For these reasons, NexPoint renews its request that this Court deny the Rule 12(b)(6) motion (or permit repleading) and, in either event, deny the Rule 12(c) motion.

Dated: July 19, 2023        Respectfully submitted,

**SBAITI & COMPANY PLLC**

/s/ *Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
mas@sbaitilaw.com
**Griffin S. Rubin** (Admitted *Pro Hac Vice*)
Texas Bar No. 24121809
gsr@sbaitilaw.com
**Kevin N. Colquitt** (Admitted *Pro Hac Vice*)
Texas Bar No. 24072047
knc@sbaitilaw.com
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: 214.432.2899
F: 214.853.4367

*Counsel for Defendant/Counter-Plaintiff*
*NexPoint Diversified Real Estate Trust*