UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br>          Plaintiffs, <br><br>   -against- <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br>          Defendants. | **Case No. 1:21-cv-11059 (GHW)** |

**COUNTER-DEFENDANT BRIGADE CAPITAL MANAGEMENT, LP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS**

EXHIBIT

14

exhibitsticker.com

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................................................1

II.   OVERVIEW OF THE COUNTERCLAIMS .................................................................2

III.  LEGAL STANDARD ....................................................................................................4

IV.  ARGUMENT .................................................................................................................4

     A.    NexPoint Fails to State a Claim for Breach of Fiduciary Duty Against Brigade (Count One). ...................................................................................4

           1.    Brigade and NexPoint have no fiduciary relationship. ...............................5

           2.    NexPoint has not alleged that Brigade breached any fiduciary duty. ..........9

     B.    NexPoint Fails to State a Claim for Negligence or Gross Negligence Against Brigade (Count Two). .....................................................................9

     C.    NexPoint Fails to Allege Conversion Against Brigade (Count Three) .................12

     D.    NexPoint Fails to State a Claim for Unjust Enrichment / Assumpsit / Money-Had-and-Received Against Brigade (Count Four). ...................................12

     E.    NexPoint Fails to State a Claim for Tortious Interference with Contract Against Brigade (Count Five). ...............................................................13

     F.    NexPoint Fails to State a Claim for Aiding and Abetting Against Brigade (Count Six). ...................................................................................14

V.    NEXPOINT LACKS STANDING TO PURSUE ITS CLAIMS ............................................15

VI.  CONCLUSION ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abdulaziz v. McKinsey & Co., Inc.*,
  2022 WL 2444925 (2d Cir. July 5, 2022) ..............................................................................10

*In re AppOnline.com, Inc.*,
  315 B.R. 259 (Bankr. E.D.N.Y. 2004) ....................................................................................8

*Artwear, Inc. v. Hughes*,
  202 A.D.2d 76 (1st Dep't 1994) ...........................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................4

*B.D.G.S., Inc. v. Balio*,
  8 N.Y.3d 106 (2006) ..............................................................................................................13

*Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*,
  888 F. Supp. 2d 508 (S.D.N.Y. 2012) ...................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................4

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ..................................................................................................14

*Blum v. Spaha Cap. Mgmt., LLC*,
  44 F.Supp.3d 482 (S.D.N.Y. 2014) .........................................................................................4

*Bullmore v. Ernst & Young Cayman Islands*,
  45 A.D.3d 461 (1st Dep't 2007) ..............................................................................................9

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ....................................................................................................2

*Clifford v. Janklow*,
  2023 WL 2711353 (S.D.N.Y. Mar. 30, 2023) .........................................................................5

*Colnaghi, U.S.A. v. Jewelers Prot. Servs., Ltd.*,
  81 N.Y.2d 821 (1993) ............................................................................................................10

*Credit All. Corp. v. Arthur Andersen & Co.*,
  65 N.Y.2d 536 (1985) ............................................................................................................11

*DaPuzzo v. Reznick Fedder & Silverman*,
    14 A.D.3d 302 (1st Dep't 2005) ............................................................12

*EBC I, Inc. v. Goldman, Sachs & Co.*,
    5 N.Y.3d 11 (2005) ...................................................................................5

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*,
    838 F.2d 66 (2d Cir. 1988).........................................................................8

*ESI, Inc. v. Coastal Power Prod. Co.*,
    995 F. Supp. 419 (S.D.N.Y. 1998).............................................................12

*Ferreira v. City of Binghamton*,
    38 N.Y.3d 298 (2022) ...............................................................................10

*Fid. Nat'l Title Ins. Co. v. N.Y. Land Title Agency LLC*,
    121 A.D.3d 401 (1st Dep't 2014) .............................................................13

*Galin v. U. S.*,
    2008 WL 5378387 (E.D.N.Y. Dec. 23, 2008) ..........................................7

*Georgia Malone & Co., Inc. v. Rieder*,
    19 N.Y.3d 511 (2012) ...............................................................................13

*Goldberg v. Torim*,
    117 N.Y.S.3d 567 (1st Dep't 2020) ..........................................................9

*GS Plasticos Limitada v. Bureau Veritas*,
    88 A.D.3d 510 (1st Dep't 2011) ...............................................................11

*Hamilton v. Beretta U.S.A. Corp.*,
    96 N.Y.2d 222 (2001) ...............................................................................10

*In re Highland Cap. Mgmt., L.P.*,
    2021 WL 2326350 (Bankr. N.D. Tex. Jun. 7, 2021) .................................3

*Houbigant, Inc. v. Deloitte & Touche LLP*,
    303 A.D.2d 92 (1st Dep't 2003) ...............................................................11

*Kassover v. UBS AG*,
    619 F. Supp. 2d 28 (S.D.N.Y. 2008).........................................................7

*Kaufman v. Cohen*,
    307 A.D.2d 113 (1st Dep't 2003) .............................................................15

*KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*,
    2020 WL 7251172 (S.D.N.Y. June 29, 2020) ..........................................7

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ........................................................................................ 15

*Law Debenture v. Maverick Tube Corp.*,
    2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) .......................................................... 13

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ........................................................................................ 15

*Lynch v. Nat'l Prescription Adm'rs., Inc.*,
    795 F. App'x 68 (2d Cir. 2020) .................................................................................... 5

*Madison Sullivan Partners LLC v. PMG Sullivan St., LLC*,
    173 A.D.3d 437 (1st Dep't 2019) ................................................................................ 9

*Meckel v. Cont'l Res. Co.*,
    758 F.2d 811 (2d Cir. 1985) .......................................................................................... 8

*Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,
    2019 WL 1206690 (S.D.N.Y. Mar. 14, 2019) ........................................................ 10

*In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*,
    611 F. App'x 34 (2d Cir. 2015) .................................................................................. 11

*Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) ........................................................................................ 13

*Myers v. Schneiderman*,
    30 N.Y.3d 1 (2017) ...................................................................................................... 12

*Ne. Remsco Const. v. John P. Picone, Inc.*,
    2012 WL 2626946 (N.Y. Sup. Ct. 2012) ................................................................ 13

*Net2Globe Int'l v. Time Warner Telecom of N.Y.*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003) ...................................................................... 10

*Nexpoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*,
    2022 WL 3214251 (S.D.N.Y. Aug. 9, 2022) ............................................... 3, 6, 7, 8

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
    19 N.Y.3d 584 (2012) ........................................................................................ 5, 6, 8

*Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*,
    73 N.Y.2d 417 (1989) .................................................................................................. 11

*PetEdge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017) ........................................................................ 6

*Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC,*
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) ....................................................................................13

*Revonate Mfg., LLC v. Acer Am. Corp.,*
    2013 WL 342922 (S.D.N.Y. Jan.18, 2013) .............................................................................4

*Rides Unlimited of N. Y., Inc. v. Engineered Energy Sols.,*
    LLC, 184 A.D.3d 695 (2d Dep't 2020) ..................................................................................12

*RSM Prod. Corp. v. Fridman,*
    643 F.Supp.2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) .........................14

*SH575 Holdings LLC v. Reliable Abstract Co.,*
    195 A.D.3d 429 (1st Dep't 2021) ..........................................................................................13

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005)......................................................................................................15

*Sommer v. Fed. Signal Corp.,*
    79 N.Y.2d 540 (1992) ..............................................................................................................9

*Stapleton v. Barrett Crane Design & Eng'g,*
    725 F. App'x 28 (2d Cir. 2018)..............................................................................................11

*Subaru Distribs. Corp. v. Subaru of Am., Inc.,*
    425 F.3d 119, 124 (2d Cir. 2005)...........................................................................................14

*The Charitable Donor Advised Fund, L.P. v. U.S. Bank, N.A., et al.,*
    No. 20 Civ. 1036 (S.D.N.Y. Feb. 6, 2020), ECF No. 1 ...........................................................3

*Traffix, Inc. v. Herold,*
    269 F. Supp. 2d 223 (S.D.N.Y. 2003).....................................................................................12

*U. S. v. Halloran,*
    821 F.3d 321 (2d Cir. 2016).....................................................................................................5

*U.S. Fire Ins. Co. v. Raia,*
    94 A.D.3d 749 (2d Dep't 2012) ...............................................................................................6

*Williams v. N.Y.C. Hous. Auth.,*
    816 F. App'x 532 (2d Cir. 2020) .............................................................................................2

*In re Wonderwork, Inc.,*
    611 B.R. 169 (Bankr. S.D.N.Y. 2020) .....................................................................................9

Counter-Defendant Brigade Capital Management, LP ("Brigade"), respectfully submits this memorandum of law in support of its Motion to Dismiss the Counterclaims filed by Defendant NexPoint Diversified Real Estate Trust ("NexPoint").

## I.  **PRELIMINARY STATEMENT**

NexPoint's Counterclaims are the most recent salvo in a long-running litigation campaign commenced by James Dondero (who controls NexPoint) against Counter-Defendants Acis Capital Management, L.P. ("Acis") and Joshua N. Terry, who co-founded Acis with Mr. Dondero.  Since Mr. Dondero lost control of Acis through an involuntary bankruptcy proceeding, he has been suing Acis and everyone associated with it, no matter how peripheral these third parties are to his supposed grievances or how many courts reject his challenges.  This continued "ready, fire, aim" approach is reflected in NexPoint's Counterclaims, which are a collection of hindsight critiques of how Acis managed a single collateralized loan obligation ("CLO") in which NexPoint is a minority noteholder.

Brigade is barely mentioned in the present Counterclaims, and for good reason.  As the Court has already held, Brigade is neither a party to the indenture that created the CLO nor to the agreement pursuant to which Acis provides advisory services to the CLO.  Nor does Brigade have any relationship—contractual or otherwise—with NexPoint itself.  Indeed, NexPoint does not even allege that it ever directly communicated with Brigade.  Under these circumstances, Brigade owes no legal duty to NexPoint that could plausibly give rise to a claim, regardless of whether NexPoint styles that claim as one for breach of fiduciary duty, common law tort, or aiding and abetting.  Nor, for the reasons articulated in Plaintiffs' pending Motion to Dismiss, does NexPoint have standing to pursue any of its Counterclaims in the first place, particularly as to Brigade.  This is NexPoint's fifth attempt to assert claims against Brigade, and its Counterclaims should be dismissed with prejudice.

## II.    OVERVIEW OF THE COUNTERCLAIMS[1]

NexPoint holds a subordinated note (the "Subordinated Note" or the "Note") issued by ACIS CLO 2015-6, Ltd. ("Acis 6"). ECF No. 78, Countercl. ¶ 46.[2]  When Acis 6 was formed in 2014, it was controlled by Mr. Dondero.  However, this changed in August 2018, when an involuntary bankruptcy proceeding gave Mr. Terry control of Acis.  *Id.* ¶ 60.

NexPoint's investment in Acis-6 is governed by an indenture agreement (the "Indenture") among Acis 6 and U.S. Bank, N.A. ("U.S. Bank"), as trustee.  *Id.* ¶¶ 47–50; Ex. 1, Indenture. Throughout the relevant period (*i.e.,* both when Acis was controlled by Mr. Dondero and by Mr. Terry), Acis has served as Acis 6's portfolio manager pursuant to a portfolio management agreement (the "PMA").  Countercl. ¶¶ 48, 50, 60.  NexPoint does not allege Brigade is party to the Indenture or the PMA.  Nor could it.  As NexPoint admits, the "key parties" in this arrangement are the portfolio manager and advisor (Acis), and the indenture trustee (U.S. Bank).  *See id.* ¶ 28. Brigade holds none of those roles here.  Instead, Brigade was retained during Acis's bankruptcy by a court-appointed bankruptcy trustee to act as "sub-advisor" and assist Acis with certain administrative and "back-and middle-office" functions.  *Id.* ¶¶ 58, 62.  As such, NexPoint alleges Brigade performed various services for Acis, including "accounting, payments, operations,"

---

[1] References to "Ex. __" refer to the exhibits attached to the Declaration of Jason C. Hegt submitted concurrently with this motion.  In evaluating a motion to dismiss, the Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  In addition, the Court may consider and take judicial notice of public records, including other court filings.  *See Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (state court records are public and may be considered on a motion to dismiss).

[2] A CLO is a structured investment vehicle that owns a collection of loans.  *Id.* ¶¶ 17–19.  Investors like NexPoint can purchase notes issued by Acis 6, which represent a fractional interest in the cash payments owed to the CLO as owner of those loans.  *Id.* ¶¶ 17–20, 46.

"identifying potential assets," "modeling ratings, default, and price scenarios as needed," and "negotiat[ing] and execut[ing] [the] documents necessary to acquire or dispose of assets." *Id.* ¶¶ 62–63. Acis paid Brigade for the services that Brigade rendered to Acis. *Id*. ¶¶ 58, 60–62, 67.[3]

Since losing control of Acis, Mr. Dondero and various entities he controls have embarked on a serial litigation campaign against Acis and anyone in its orbit, including Brigade. These suits began with what the U.S. Bankruptcy Court for the Northern District of Texas deemed a "specious" challenge to Brigade's appointment and replacement of Highland as sub-advisor, and have continued with a series of lawsuits filed in courts around the world. This is the fourth such lawsuit involving Brigade and the second before this Court. None has been successful.[4] After dismissal of its prior claims before this Court, NexPoint filed a New York state court complaint against Brigade and the other Counter-Defendants which was nearly identical to the Counterclaims now at issue here. On February 9, 2023, during oral arguments on the pending motion to dismiss in that case, Justice Melissa Crane indicated NexPoint's claims against Brigade were likely to be dismissed once again for lack of standing.[5] Seven weeks later, NexPoint filed the Counterclaims alleging seven causes of action against Brigade in this Court.

---

[3] When Mr. Dondero controlled Acis, another of his entities (Highland Capital Management, L.P.) served as the sub-advisor. Countercl. ¶¶ 50, 60; *see also In re Highland Cap. Mgmt., L.P.*, 2021 WL 2326350, at *2–3 (Bankr. N.D. Tex. Jun. 7, 2021) (noting Mr. Dondero as co-founder, former President and CEO of Highland).

[4] In February 2020, other entities controlled by Mr. Dondero brought claims against Acis, Brigade, and U.S. Bank that are similar to those at issue here. *See The Charitable Donor Advised Fund, L.P. v. U.S. Bank, N.A., et al.*, No. 20 Civ. 1036 (S.D.N.Y. Feb. 6, 2020), ECF No. 1, Compl. That case was voluntarily dismissed later the same month. *See id.*, ECF No. 15. In August 2022, this Court dismissed another nearly identical suit brought by NexPoint. *Nexpoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 2022 WL 3214251 (S.D.N.Y. Aug. 9, 2022).

[5] Ex. 2, Court Tr., NYS Dkt. 97, at 11 ("[Standing] just isn't there; it's not there under Cayman Islands law and it's not there under New York law, either.").

III.   **LEGAL STANDARD**

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, 2013 WL 342922, at *2 (S.D.N.Y. Jan.18, 2013).[6]  To survive dismissal under Rule 12(b)(6), a claim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible only if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet ... is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

IV.   **ARGUMENT**

A.   **NexPoint Fails to State a Claim for Breach of Fiduciary Duty Against Brigade (Count One).**

NexPoint alleges that Brigade and the other Counter-Defendants breached their fiduciary duty "both under New York law and as imposed by the Investment Advisers Act of 1940." Countercl. ¶ 1.  To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Blum v. Spaha Cap. Mgmt., LLC*, 44 F.Supp.3d 482, 497 (S.D.N.Y. 2014).  NexPoint's claim fails as to Brigade because there is no fiduciary relationship between Brigade and NexPoint and, in any event, NexPoint does not allege any breach by Brigade.

---

[6] Unless otherwise specified, all emphasis within quotations has been added, and internal citations and quotations within cited sources have been omitted.

1.     Brigade and NexPoint have no fiduciary relationship.

Brigade has no fiduciary relationship with NexPoint.  *Clifford v. Janklow*, 2023 WL 2711353, at *6 (S.D.N.Y. Mar. 30, 2023).  In New York, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Lynch v. Nat'l Prescription Adm'rs., Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020).[7]  Ordinarily, the starting place for the fiduciary relationship inquiry is the contract between the parties.  *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-20 (2005).  Where—as here—there is no such contract, a plaintiff seeking to imply the existence of a fiduciary relationship must allege exactly when and how the parties "created a relationship of higher trust."  *Id.* at 20.  This is a tall order.  The New York Court of Appeals has held that "if the parties [have] not create[d] their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them."  *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012).

NexPoint offers absolutely nothing to satisfy this standard, instead alleging a series of fact-free conclusions that merely parrot the legal requirements.  *See, e.g.*, Countercl. ¶¶ 149, 190 (alleging the Counter-Defendants' relationship with NexPoint was "predicated on trust and confidence").  But New York courts routinely reject such boilerplate allegations as insufficient to establish a fiduciary relationship.[8]  NexPoint's lack of detail is hardly surprising, given its prior

---

[7] "[T]here is no meaningful difference between the federal and New York law standards" for a finding the existence of a fiduciary relationship.  *U. S. v. Halloran*, 821 F.3d 321, 338 (2d Cir. 2016).

[8] *See, e.g.*, *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 498 (S.D.N.Y. 2017) (refusing to infer fiduciary relationship from generalized allegations of awareness that plaintiff relied on defendant's company to serve in an advisory role); *U.S. Fire Ins. Co. v. Raia*, 94 A.D.3d 749, 751 (2d Dep't 2012) (allegation that defendant "owed statutory and fiduciary duties to" plaintiff is insufficient to "allege facts that would give rise to a fiduciary relationship.").

acknowledgements to this Court that it "lack[ed] a direct relationship" with Brigade, and that Brigade was "one step removed" from its relationship with Acis.[9] Indeed, NexPoint's few Brigade-specific allegations only confirm that no relationship of higher trust exists. For instance, NexPoint alleges that "*Acis* retained Brigade" and that the Bankruptcy Court "approved *Acis's* appointment of Brigade as sub-advisor and shared-services provider to *Acis*." Countercl. ¶¶ 58, 60; *see id.* ¶¶ 53–54, 57. NexPoint does not allege any direct relationship—or even one direct communication—between NexPoint and Brigade. This is dispositive. *See Oddo Asset Mgmt.*, 19 N.Y.3d at 594 (no fiduciary relationship between investor and collateral manager where there was "no contractual relationship" and no "direct communications" between them).

Nonetheless, NexPoint asks the Court to disregard New York's established framework for when to imply the existence of a fiduciary relationship. In particular, NexPoint argues that the Court should find a fiduciary relationship between NexPoint and Brigade based on (a) the Investment Advisers Act of 1940 (the "IAA"); (b) New York trust law; and/or (c) New York agency law. None of these novel theories have merit.

*First*, this Court already rejected NexPoint's argument that the IAA creates a set of fiduciary obligations that NexPoint can enforce through private litigation. *Nexpoint*, 2022 WL 3214251, at *4–7 ("[NexPoint] has not sufficiently pleaded a violation of the IAA against any defendant."). NexPoint cannot use this action to relitigate this issue.[10] Moreover, the IAA's

---

[9] *See* Ex. 3, Jan. 4, 2022 Pre-motion Conf., Hr'g. Tr. 31:11–21 (NexPoint conceding that it could, at most, pursue a claim against Brigade for *aiding and abetting* breach of fiduciary duty). NexPoint's aiding and abetting claim is addressed in Section IV.A, *infra*.

[10] NexPoint's appeal of this Court's decision dismissing its breach of fiduciary duty claims under the IAA is legally irrelevant to the preclusion analysis. A decision is final unless and until it is reversed on appeal, and the pendency of an appeal does not preclude application of res judicata. *Galin v. U. S.*, 2008 WL 5378387, at *9 (E.D.N.Y. Dec. 23, 2008) (noting "well-settled federal

standards for investment advisors are simply irrelevant to NexPoint's claim **against Brigade**. The IAA sets forth obligations that investment advisors have with respect to their clients, but it says nothing about the relationship between an investment advisor and that advisor's own third-party service provider. *See KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 2020 WL 7251172, at *10 (S.D.N.Y. June 29, 2020) (dismissing IAA claim because plaintiff failed to allege any facts showing that defendants received compensation from plaintiff); *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 34-35 (S.D.N.Y. 2008) (dismissing IAA claim because plaintiffs did not allege advisor relationship). Here, NexPoint admits that Brigade **provided services only to Acis** and **was paid only by Acis**. Countercl. ¶¶ 58, 67. As a result, NexPoint's allegations about what the IAA does or does not require have no bearing on whether a fiduciary relationship existed between NexPoint and Brigade.

*Second*, NexPoint asserts that New York trust law imposes fiduciary duties because Brigade acts as a sub-advisor to Acis, which itself "functions as a trustee" under the Indenture and PMA to "ACIS-6," which NexPoint characterizes as a trust. Countercl. ¶¶ 162, 165. At most, this reimagination of the relevant agreements is merely another way to assert that the Indenture and/or PMA give rise to a fiduciary relationship between their various parties—a group that does not include Brigade. *See Nexpoint*, 2022 WL 3214251, at *6 ("Brigade is not a party to the Indenture, nor is it a party to PMA."). And more to the point, the Court previously dismissed NexPoint's breach of fiduciary duty claim against U.S. Bank—the Indenture trustee—finding that the Indenture did not create an ordinary trustee/fiduciary relationship.[11] As result, the claim that

---

law" that appeal "does not diminish the *res judicata* effect of a judgment rendered by a federal court.").

[11] *Nexpoint*, 2022 WL 3214251, at *7 (U.S. Bank does not owe pre-Event of Default duties "resembl[ing] those of an ordinary fiduciary"); *see also Elliott Assocs. v. J. Henry Schroder Bank*

Brigade—which is not even a party to the Indenture—somehow acquired a fiduciary relationship with NexPoint, either as a "nonbeneficiary advisor" or "assistant to a trustee," Countercl. ¶¶ 161, 165, is farcical.  Even if Acis 6 were reimagined as a common law trust (and it is not, *see* ECF No. 107, Pls' Mot. to Dismiss, at 35–36), and Acis were deemed the implicit trustee, NexPoint pleads nothing evincing an intent to extend a fiduciary relationship to Acis's own advisors.  *See In re AppOnline.com, Inc.*, 315 B.R. 259, 274 (Bankr. E.D.N.Y. 2004) (a trust "is a fiduciary relationship … which arises as a result of a manifestation of an intention to create it").  To the contrary, NexPoint disavowed any such fiduciary relationship when it purchased the Note, by agreeing that the Note did not create a fiduciary relationship between NexPoint, on the one hand, and Acis or its affiliates, on the other.  Ex. 1, at 76 ("Each Person who becomes a beneficial owner of [a global Note]" agrees that Acis and its affiliates are not "acting as a fiduciary or financial or investment adviser for such beneficial owner.").

*Third*, NexPoint alleges that "Brigade is the agent of Acis and, therefore, of [Acis-6]."  Countercl. ¶ 62.  But Acis (as the portfolio manager to Acis 6) does not owe fiduciary duties directly to every Acis 6 noteholder.  *See Oddo Asset Mgmt.*, 19 N.Y.3d at 593; Pls' Mot. to Dismiss, at 25–26.  Nor can NexPoint imply a fiduciary relationship based on conclusory allegations of agency.  *Goldberg v. Torim*, 117 N.Y.S.3d 567, 567 (1st Dep't 2020).[12]

---

*& Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988) ("[T]he duties of an indenture trustee are strictly defined and limited to the terms of the indenture."); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) ("An indenture trustee is not subject to the ordinary trustee's . . . common-law duties.").

[12] NexPoint cites a variety of other cases for the uncontroversial proposition that professionals may "owe fiduciary duties to ***their clients*** . . . irrespective of their contractual duties."  *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (1st Dep't 2007); *see also Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992).  Here, however, it is undisputed that NexPoint was not Brigade's client, much less that there was a relationship of "higher trust and confidence" between them.

2.      NexPoint has not alleged that Brigade breached any fiduciary duty.

NexPoint's breach of fiduciary duty claim fails for the additional and independent reason that it has not pled the requisite "particularized facts" alleging that Brigade breached its purported fiduciary duties.  *Madison Sullivan Partners LLC v. PMG Sullivan St., LLC*, 173 A.D.3d 437, 438 (1st Dep't 2019).  NexPoint alleges only that the "Counter-Defendants" (defined collectively as Acis, Mr. Terry, and Brigade) together violated the PMA (to which Brigade is not even a party) with their investment selection and expense management.  Countercl. ¶¶ 88–139, 191–92.  This sort of "group pleading" gives no indication of each defendant's alleged wrongful actions, and, as a result, falls short of the particularity necessary to state a claim.  *In re Wonderwork, Inc.*, 611 B.R. 169, 199 (Bankr. S.D.N.Y. 2020) ("A plaintiff may not rely on group pleading to assert a breach of fiduciary duty claim.").  Indeed, NexPoint appears to acknowledge that it was not Brigade who made the decisions that are the subject of its claims.  *See, e.g.*, Countercl. ¶ 65 (alleging that another counter-defendant "effectively approve[d] all trading activity" and "exercis[ed] complete dominion over the company and its activities.").

**B.      NexPoint Fails to State a Claim for Negligence or Gross Negligence Against Brigade (Count Two).**

NexPoint asserts a claim for negligence or gross negligence against each of the Counter-Defendants.  Countercl. ¶ 200.  To sustain a claim for negligence under New York law, the plaintiff must show "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 308 (2022).[13]

---

[13] Under New York law, "gross negligence differs in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Colnaghi, U.S.A. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823-24 (1993); *see also Net2Globe Int'l v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003) (noting the "far higher mark at which New York courts place the bar. . . demanding nothing short of [] a compelling demonstration of egregious intentional misbehavior

*First*, as noted in Plaintiffs' motion to dismiss, the "economic loss rule" precludes NexPoint's tort claims because the only alleged harm is economic and no "special relationship required the defendant to protect against the risk of harm to plaintiff." *See* Pls' Mot. to Dismiss, at 40. The argument applies with particular force as to Brigade, who the Counterclaims repeatedly admit was providing services ***to Acis*** and had no relationship, much less a special one, with NexPoint.

*Second*, NexPoint does not (and cannot) plead that Brigade owed NexPoint any duties at all. To survive dismissal, a plaintiff must show more than a general duty owed to a potentially limitless class of people, but rather a "cognizable duty" owed to the plaintiff. *Abdulaziz v. McKinsey & Co., Inc.*, 2022 WL 2444925, at *2 (2d Cir. July 5, 2022) (citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001)). As with its fiduciary duty claim, NexPoint alleges three potential sources of a duty owed by Brigade: (i) the IAA, (ii) the Indenture and PMA, and (iii) New York common law. Countercl. ¶¶ 201–05. None is availing. As to the IAA, because Brigade was retained as a service provider ***to Acis***, the IAA could not possibly create duties as between Brigade and ***NexPoint***. *See supra* <u>Section IV.A.1</u>. As to the Indenture and PMA, Brigade is not a party to either so they could not create obligations as between Brigade and NexPoint.

That leaves NexPoint again looking to imply a tort duty from common law. However, in the absence of any contractual relationship, tort liability is limited to claims against a defendant with whom the plaintiff has a "bond . . . so close as to be the functional equivalent of contractual privity." *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 31 (2d Cir. 2018) (summary

---

evincing extreme culpability . . . or an extensive pattern of wanton acts"). To be sure, NexPoint does not plead such conduct, but this claim (like its negligence claim) fails because NexPoint does not plead anything creating an independent tort duty. *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, 2019 WL 1206690, at *10 (S.D.N.Y. Mar. 14, 2019).

order).  To plead the "functional equivalent" of privity, NexPoint must allege (i) that the defendant

had awareness that its work was to be used for a particular purpose; (ii) reliance by a third party

known to the defendant in furtherance of that purpose; and (iii) some conduct by the defendant

linking it to that third party evincing the defendant's understanding of the third party's reliance.

*Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 419 (1989).  The

Counterclaims fail to meet this standard for the simple reason that they fail to allege ***any*** interaction

between Brigade and NexPoint.  *See Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92,

94 (1st Dep't 2003) (dismissing negligence claim absent "'word or action on the part of [the

defendant] directed to plaintiffs,' so as to 'link' the [defendant] to the non-client" (quoting *Credit

All. Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 554 (1985))); *In re MF Glob. Holdings Ltd.

Inv. Litig. (DeAngelis v. Corzine)*, 611 F. App'x 34, 38 (2d Cir. 2015) (negligence claim properly

dismissed where the defendant never "engaged in any 'linking conduct' with [the plaintiff's]

customers."); *see also GS Plasticos Limitada v. Bureau Veritas*, 88 A.D.3d 510, 510 (1st Dep't

2011) (relationship did not "sufficiently approach[] privity so as to give rise to a negligence cause

of action" where plaintiff did not allege that it "had any dealings with" defendant).   NexPoint's

conclusory allegations that Brigade "[was] aware" that it "performed services for ACIS-6 for a

particular purpose," Countercl. ¶ 73, and "also understood, and [was] fully aware, that investors .

. . like NexPoint, relied on" Brigade, *id.* ¶ 74, are insufficient to state a negligence (or gross

negligence) claim and may be disregarded by the Court.[14]

---

[14] *See Myers v. Schneiderman*, 30 N.Y.3d 1, 11 (2017); *see also Rides Unlimited of N. Y., Inc. v. Engineered Energy Sols.*, LLC, 184 A.D.3d 695, 696 (2d Dep't 2020) ("More is needed to show the functional equivalent of privity than that a reliant party was actually known." ); *DaPuzzo v. Reznick Fedder & Silverman*, 14 A.D.3d 302, 303 (1st Dep't 2005) (allegations that defendant "knew or should have known" plaintiffs would invest in company insufficient to establish near-privity).

C.    **NexPoint Fails to Allege Conversion Against Brigade (Count Three).**

As an initial matter, NexPoint's conversion claim—which alleges that it is entitled to certain funds held by the Acis 6 CLO, Countercl. ¶ 210—is merely an impermissible way of arguing that Brigade breached a contract (the Indenture) to which it was never a party.  *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 432 (S.D.N.Y. 1998) (dismissing conversion claim because a "plaintiff may not recast a contract-based claim as a tort claim where plaintiff is essentially seeking enforcement of a [contractual] bargain.")).  This claim is also barred by the economic loss doctrine.  Pls' Mot. to Dismiss, at 40.  And finally, this claim fails because the assertion that NexPoint is entitled to a residual amount of investment returns after payment of various expenses, Countercl. ¶ 210, makes clear that NexPoint never had the requisite interest in the funds sufficient to maintain a conversion claim.  *See e.g.*, *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003) ("New York law recognizes an action for conversion of money, but requires the plaintiff to have ownership, possession or control of the money before its conversion . . . . [A] conversion action cannot be predicated on an equitable interest or a mere breach of contractual obligation.").

D.    **NexPoint Fails to State a Claim for Unjust Enrichment / Assumpsit / Money-Had-and-Received Against Brigade (Count Four).**

This collection of "claims" is properly understood as a single quasi-contract claim.  *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (unjust enrichment and quantum meruit/money-had-and-received are same claim).[15]  As Plaintiffs

---

[15] Assumpsit is not an independent cause of action, but rather a common-law writ by which a plaintiff may seek to enforce an implied contract.  *See Ne. Remsco Const. v. John P. Picone, Inc.*, 2012 WL 2626946, *4 (N.Y. Sup. Ct. 2012); *see also B.D.G.S., Inc. v. Balio*, 8 N.Y.3d 106, 113 (2006) (noting "common-law rights to sue in assumpsit, for money had and received or unjust enrichment").  Because NexPoint fails to state a claim for unjust enrichment or money-had-and-received, it is not entitled to relief by suing in assumpsit.

argue, this sort of quasi-contract claim cannot proceed where—as here—there are written contracts that govern the subject matter of the claim.  Pls' Mot. to Dismiss, at 39–40.  This is true even though Brigade is not a party to the PMA or Indenture that appear to be the relevant agreements. *Id.*; *see also Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases precluding claims "even against a third party non-signatory to the [relevant] agreement").  NexPoint's quasi-contract claims against Brigade are particularly weak because such claims only survive a motion to dismiss where the plaintiff adequately alleges "some type of direct dealing or actual, substantive relationship with a defendant."  *Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003).  Here, the Counterclaims admit that **Brigade and Acis** had an agreement, Countercl. ¶¶ 58, 60–62, 67, but allege no relationship between Brigade and NexPoint.  *See Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012) (no claim for unjust enrichment where the parties "simply had no dealings with each other"); *SH575 Holdings LLC v. Reliable Abstract Co.*, 195 A.D.3d 429, 431 (1st Dep't 2021) (no claim for money-had-and-received where no direct relationship between parties); *Fid. Nat'l Title Ins. Co. v. N.Y. Land Title Agency LLC*, 121 A.D.3d 401, 404 (1st Dep't 2014) (unjust enrichment claim fails where defendant "did not receive anything from plaintiff").

### E.      NexPoint Fails to State a Claim for Tortious Interference with Contract Against Brigade (Count Five).

NexPoint's tortious interference claim fails for several reasons.  *First*, NexPoint has not alleged a breach of any agreement to which it is a party.  Pls' Mot. to Dismiss, at 24–25.  *Second*, NexPoint does not have standing to pursue claims for tortious interference with an agreement to which neither NexPoint nor Brigade are a party.  *See Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 82 (1st Dep't 1994) (dismissing tortious interference claim because "in order for a contract to confer enforceable third-party beneficiary rights . . . the contract language should otherwise clearly

evidence "an intent to permit enforcement by the third party."); *Subaru Distribs. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 124 (2d Cir. 2005) (dismissal is appropriate where contract rules out intent to benefit claimant under the circumstances presented). *Third*, NexPoint fails to allege what Brigade, in particular, did to support, facilitate, or encourage a breach of contract by any other party. *See RSM Prod. Corp. v. Fridman*, 643 F.Supp. 2d 382, 405 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("[P]laintiff must assert, with respect to each defendant, that the defendant's actions were the 'but for' cause of the alleged breach.").

### F.    NexPoint Fails to State a Claim for Aiding and Abetting Against Brigade (Count Six).

NexPoint's aiding and abetting claims against Brigade each require NexPoint to allege: (1) an underlying tort, (2) about which Brigade had actual knowledge and (3) provided "substantial assistance." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012).

*First*, as a threshold matter, each of NexPoint's aiding and abetting claims fails because NexPoint fails to plead any of the underlying torts. *See supra* Sections IV.A–IV.E.

*Second*, NexPoint's conclusory allegations that Brigade "knew" of the fiduciary duties allegedly owed to NexPoint by others, Countercl. ¶ 165, are insufficient to carry its burden of showing actual knowledge of the duty and alleged breach. *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003); *see also Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (noting that constructive knowledge of a breach is insufficient under New York law). Here, in light of NexPoint's express waiver of any fiduciary relationship with Acis or its affiliates in the Indenture, NexPoint cannot allege facts that would make it plausible that Brigade had actual knowledge of a supposed fiduciary relationship between NexPoint and Acis. Ex. 1, at 76.

*Finally*, NexPoint fails to plead that Brigade substantially assisted in the commission of any of the alleged underlying torts. "Substantial assistance occurs when a defendant affirmatively

assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (1st Dep't 2003)).  Simply put, NexPoint does not allege what exactly Brigade did to "assist" with various torts.  If the claim is premised on "mere inaction," this fails because Brigade did not "owe[] a fiduciary duty directly to" NexPoint.  *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005); *see supra* <u>Section IV.A.1</u>.  If it premised on Brigade's performance of what NexPoint describes as "back-and middle-office" functions, Countercl. ¶¶ 58, 62, this likewise does not constitute substantial assistance.  *See, e.g., Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.,* 888 F. Supp. 2d 508, 516 (S.D.N.Y. 2012) ("[U]se[ of] the defendant's regular business operation does not rise to the level of substantial assistance.").

## V.   **NEXPOINT LACKS STANDING TO PURSUE ITS CLAIMS**

In addition to the above arguments, Brigade also joins the Plaintiffs' argument that NexPoint lacks standing to pursue the Counterclaims.  Pls' Mot. to Dismiss, at 25–39.  Moreover, even if NexPoint could somehow bring claims on behalf of Acis 6, NexPoint pleads no facts and cites no law for how Acis 6 could then stand in the shoes of Acis to bring potential claims against Brigade regarding its provision of sub-advisory services.  Finally, to the extent that NexPoint's claims against Brigade arise from rights that NexPoint alleges it has under the Indenture or the PMA—the only contracts cited in the Counterclaims—Brigade joins Plaintiff's argument that the no-action clause of the Indenture bars NexPoint's claims here.  Pls' Mot. to Dismiss, at 41–42.

## VI.   **CONCLUSION**

For the foregoing reasons, Brigade respectfully requests that NexPoint's Counterclaims be dismissed in full and with prejudice.

Dated:  May 31, 2023                    Respectfully submitted,
        New York, New York


                                        */s/ Jason C. Hegt*
                                        LATHAM & WATKINS LLP
                                        Jason C. Hegt
                                        Alexis Kellert Godfrey
                                        1271 Avenue of the Americas
                                        New York, NY 10020
                                        (212) 906-1200
                                        Jason.Hegt@lw.com
                                        Alexis.Godfrey@lw.com

                                        *Attorneys for Counter-Defendant Brigade*
                                        *Capital Management, LP*