UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,

Plaintiffs,

-against-

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

Defendants.

**Case No. 1:21-cv-11059 (GHW)**

**NEXPOINT DIVERSIFIED REAL ESTATE TRUST'S RESPONSE TO COUNTER-DEFENDANT BRIGADE CAPITAL MANAGEMENT, LP'S MOTION TO DISMISS COUNTERCLAIMS**

Dated: June 26, 2023

**SBAITI & COMPANY PLLC**

*Mazin A. Sbaiti*
Mazin A. Sbaiti
New York Bar No. 4339057
mas@sbaitilaw.com
Griffin S. Rubin
Texas Bar No. 24121809
gsr@sbaitilaw.com
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: 214.432.2899
F: 214.853.4367

**COUNSEL FOR DEFENDANT NEXPOINT DIVERSIFIED REAL ESTATE TRUST**

EXHIBIT
15

exhibitsticker.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. ARGUMENTS & AUTHORITIES ..... 2

A. Brigade's Improper Evidence Should be Excluded ..... 2

B. NexPoint Has Standing to Pursue Its Claims ..... 3

C. NexPoint Has Properly Alleged Tortious Interference Against Brigade ..... 3

D. The Counterclaims Sufficiently Plead a Direct Violation of Fiduciary Duties ..... 5

1. A Fiduciary Duty Exists to NexPoint Directly, to the Acis-6 Fund, or Both ..... 5

2. NexPoint Has Pleaded Breach of Fiduciary Duty Against Brigade ..... 8

E. The Allegations of Conversion and Unjust Enrichment/Assumpsit Are Sufficient ..... 9

F. The Allegations of Negligence and Gross Negligence are Sufficient ..... 10

G. The Allegations that Brigade is Liable for Aiding and Abetting Are Sufficient ..... 12

IV. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

**<u>Cases</u>**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc.*,
750 N.E.2d 1097 (N.Y. 2001) ....................11

*Bigio v. Coca-Cola Co.*,
675 F.3d 163 (2d Cir. 2012) ....................12

*Bullen v. Cohnreznick*,
150 N.Y.S.3d 53 (N.Y. App. Div. 2021)....................13

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....................2

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
817 F.3d 46 (2d Cir. 2016) ....................2

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
974 F.2d 270 (2d Cir. 1992) ....................14

*Feldman v. CSX Transp., Inc.*,
821 N.Y.S.2d 85 (N.Y. App. Div. 2006)....................10

*Foster v. Churchill*,
665 N.E.2d 381 (NY 1996)....................3

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) ....................3

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir.2006)....................10

*Halberstam v. Welch,*
705 F.2d 472 (D.C. Cir. 1983)....................14

*Kaufman v. Cohen*,
760 N.Y.S.2d 157 (N.Y. App. Div. 2003)....................14

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ....................2

*Ossining Union Free School District v. Anderson LaRocca Anderson*,
539 N.E.2d 91 (N.Y. 1989) .................... 10-11

*Schafer v. Direct Energy Servs., LLC*,
845 F. App'x 81 (2d Cir. 2021) .......... 2-3

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
867 N.E.2d 381 (NY 2007) .......... 3

**<u>Statutes, Rules and Regulations</u>**

17 C.F.R. § 275.206(4)-8 .......... 7, 10

15 U.S.C. § 80b-6(1) .......... 7

15 U.S.C. § 80b-6(2) .......... 7

15 U.S.C. § 80b-6(4) .......... 7

15 U.S.C. § 80b-15 .......... 7

FED. R. CIV. P. 12(b)(6) .......... *passim*

# I.

# INTRODUCTION

Defendant/Counter-Plaintiff NexPoint Diversified Real Estate Trust ("NexPoint") respectfully submits this Response to Counter-Defendant Brigade Capital Management LP ("Brigade")'s Motion to Dismiss Counterclaims under Rule 12(b)(6) (the "Motion"). Brigade takes the surprising step of claiming that NexPoint has no basis for bringing the claims under state law after confirming to the Second Circuit that if that court were to affirm the dismissal of the Investment Advisers Act (the "IAA") claim(s), NexPoint would still have recourse under state law.

The upshot of Brigade's entire defense is that it is a complete stranger because it is Plaintiff/Counter-Defendant *Acis Capital Management, L.P.* ("ACM")*'s* advisor and no one else's. Its contract is only with ACM. Though it would not dispose of much, Brigade never attached the contract. Instead, it makes factual claims without evidence. But this Court (and Brigade) needs to base this decision on the allegations in the Counterclaims. Those allegations state that Brigade was ACM's sub-advisor *for the purpose of managing the assets of Acis-6*, and for that Brigade was paid fifteen basis points directly from the Acis-6 CLO's assets under management ("AUM"). The allegations also state that Brigade took over the actual investment-advisory role from ACM because ACM could not fulfill its duties under the Portfolio Management Agreement ("PMA"). The allegations state that ACM and Brigade acted together as investment advisors in committing the bad acts that led to NexPoint's injuries. Thus, taken as true, the Counterclaims firmly seat Brigade in the middle of this game, not on the sideline. Brigade cannot wear blinders and claim its innocence. It does not even attempt to explain to this Court how it could be the only investment advisor with the way to do the things alleged, yet it had nothing but a salutary, ministerial role. Discovery will bear out the truth. The Motion should be denied.

## II.

## BACKGROUND

NexPoint references the background set forth in its response to ACM, Plaintiff/Counter-Defendant Joshua N. Terry ("Terry"), and Plaintiff U.S. Bank, N.A. ("U.S. Bank") (collectively, "Plaintiffs")' Motion to Dismiss ("Plaintiffs' Motion").[1] And to the extent Brigade makes arguments that overlap with or otherwise incorporate positions from Plaintiffs' Motion, NexPoint respectfully incorporates its arguments from its Response to Plaintiffs' Motion herein.

## III.

## ARGUMENTS & AUTHORITIES

### A. BRIGADE'S IMPROPER EVIDENCE SHOULD BE EXCLUDED

Brigade attaches transcripts and suggests that this Court treat them like definitive evidence. But they are improper extrinsic evidence, which cannot be considered at the motion-to-dismiss stage. *See Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016). A court may consider anything "qualify[ing] as part of the non-movant's pleading," which includes the non-movant's pleading itself; documents attached to the pleading; documents incorporated by reference in the pleading; documents integral to the pleading; and matters of which the Court may take judicial notice. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). "[A] document is 'integral to the complaint' only if the plaintiff himself 'relied on the terms and effect of the document[.]" *Id.* at 305 (original alterations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). However, "'merely mentioning a document in the

[1] *See* Dkt. No. 139 at pp. 3–7. Whenever NexPoint cites in this response to a court document in this action, the page number to which NexPoint cites is the page number attributed by the authoring party, not the number assigned by PACER.

complaint will not satisfy' to deem a document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 83 (2d Cir. 2021) (brackets omitted) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). Because the transcripts are not part of the Counterclaims, they should be stricken and should not be considered as they do not fit within any of the bases for considered extrinsic evidence at the 12(b)(6) stage.

### B. NexPoint Has Standing to Pursue Its Claims

Brigade joins the standing arguments Plaintiffs made, and NexPoint hereby adopts its arguments and analysis from its Response to Plaintiffs' Motion.[2]

### C. NexPoint has Properly Alleged Tortious Interference Against Brigade

Brigade adopts Plaintiffs' arguments, and NexPoint hereby adopts the analysis in its Response to Plaintiffs' Motion and incorporates it herein.[3] Additionally, NexPoint responds to certain specific issues raised. Namely, Brigade claims that it had an economic interest—here, a contractual right in its agreement with ACM—to do what it did. Brigade's contention (which resembles the one made by Plaintiffs) is that because Brigade had a contract, its actions in performing that contract give it an interest such that its actions in tortiously interfering with NexPoint's Notes were privileged or justified under New York law.

Yet what Brigade has argued is a justification defense. *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007) ("[A] defendant may raise the economic interest defense—that it acted to protect its own legal stake in the breaching party's business."); *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996) ("[E]conomic interest is a defense to an action for tortious interference with a contract."). Here, the defense does not appear on the face of the Counterclaims. It requires showing a "superior" right to do the act that is alleged to constitute

---

[2] *See* Dkt. No. 139 at pp. 16–29.
[3] *See* Dkt. No. 139 at pp. 11–16.

the interference. *See White Plains Coat*, 867 N.E.2d at 382. A contractual right can supply such a justification. But allegations of use of fraudulent means can overcome that defense. *See Foster*, 665 N.E.2d at 157.

Here, nothing in the Counterclaims in any way pleads that Brigade had the contractual right—or any interest at all—to take any action that was self-dealing or assisted others in their self-dealing; that it knew would violate the investment standards in the Indenture; that it knew would depress the value of the assets of the Acis-6 CLO, artificially inflate and prolong fees, or take expenses it was not allowed to take.[4] No contract allowed Brigade to do so, and Brigade did not attach any contract specifically giving Brigade the right to do any of the things NexPoint alleges. Furthermore, NexPoint has basically shown the deceptive course of action Counter-Defendants engaged in means it has overcome this defense.

Brigade also suggests that its role was ministerial and therefore compliance with its own contract shields it from any tortious-interference claim. At this stage of the proceedings, there is no way to know if Brigade's contention is true, and Brigade's self-serving say-so is nowhere near enough to succeed on a 12(b)(6) motion. Whether it is true that Brigade was merely an order-taker will likely be borne out in discovery. The allegations, however, are that Brigade fully participated in the actions underlying the action: Brigade assisted in all facets of management as ACM had no personnel doing so—it helped ACM identify the trades and then executed them.[5] It did so knowing both the contractual standards that had to be met and the subordinated noteholders' interests.[6]

---

[4] *See, e.g.*, Dkt. No. 78 at ¶¶ 78–139.

[5] *See* Dkt. No. 78 at ¶¶ 60–67.

[6] To the extent Brigade's argument is that the words "Brigade knew" have not been pleaded, it is not necessary at the 12(b)(6) stage to plead knowledge if the circumstances from which knowledge can be inferred have been pleaded. But if the Court holds otherwise, it is easy to remedy via simple amendment.

Even if the allegations are insufficient to make Brigade principally liable, they are certainly enough to make Brigade liable for aiding and abetting tortious interference. Brigade made no argument that it cannot be liable for aiding and abetting the tortious interference with NexPoint's Notes. New York law only requires a showing of knowledge of the violation and substantial assistance to accomplishing that outcome. The "knowledge" component merely requires knowledge of the act being assisted in and its foreseeable consequences—here, the (mis)management of the Acis-6 fund in the ways alleged, and the resulting deprivation of the subordinated noteholders' full economic benefit from their Notes.

Therefore, Brigade cannot escape the tortious-interference claim.

### D. THE COUNTERCLAIMS SUFFICIENTLY PLEAD A DIRECT VIOLATION OF FIDUCIARY DUTIES

Brigade repeats the same core arguments that Plaintiffs made on this issue, and NexPoint adopts the analysis in its Response to Plaintiffs' Motion. NexPoint responds here to certain specific issues raised by Brigade.

#### 1. A Fiduciary Duty Exists to NexPoint Directly, to the Acis-6 Fund, or Both

Brigade takes the baseless position that it can advise an investment vehicle and participate in a self-dealing scheme with impunity. This is not true in equity, under the law, or given common sense.

NexPoint respectfully submits that Brigade is primarily liable under New York law for breaches of fiduciary duty because it owed NexPoint such duties directly as an investment manager of the Acis-6 fund, or, at a minimum, it either owed them to the Acis-6 fund and is therefore liable directly or under the aiding-and-abetting theory.

As already discussed in NexPoint's Response to Plaintiffs' Motion and incorporated herein,[7] New York recognizes that the Acis-6 fund is a trust. New York recognizes that where an investment manager has power over the trust and the trustee is obligated to do what the manager says (rather than vice-versa), then the manager is essentially the trustee (or co-trustee) and owes fiduciary duties directly to the beneficiaries.[8] New York law finds this to be true irrespective of the limitations on any duties owed by the trustee. Brigade contends that because U.S. Bank, as the trustee, owes no fiduciary duties, then ACM, as advisor, and Brigade, as a subadvisor, cannot owe fiduciary duties greater than those owed by U.S. Bank. Brigade cannot feign ignorance. Brigade's hollow formalism simply does not work. Brigade's fiduciary duties emanate from those it assumed from ACM (and do not exceed the duties imposed on ACM), not from U.S. Bank. The obvious import of the law cited by NexPoint is that where the duties of a trustee have been divided into two—some going to a person who is named "trustee," and the control and management going to a person who is named "investment manager"—the latter does not escape the fiduciary duties of a trustee just because it is not nominally designated as "trustee." Therefore, Brigade's attempt to shield itself behind U.S. Bank's veil of contractual immunity fails.

New York also recognizes that investment advisers of a pooled fund owe fiduciary duties to the investors in the funds, especially where the manager controls the fund and makes the decisions of what will be invested in it—those duties are owed directly. Brigade never addresses this point or line of reasoning in its Motion and has therefore waived it. Brigade says that it is not Acis-6's or NexPoint's advisor but is an advisor to ACM. Motion at 8. This is implausible given the allegations. Not surprisingly, Brigade cites to nothing in the Counterclaims where this is

---

[7] *See* Dkt, No. 139 at pp. 16–20.
[8] *See* Dkt. No. 78 at ¶¶ 155–65,

pleaded—meaning, this is a summary-judgment issue at best. Brigade also did not attach its contract with ACM to even show how its arrangement works. The Counterclaims' allegations show that Brigade does some or all the actual investment advisory work—because, among other things, ACM cannot do it—which is why Brigade gets its *own* fifteen basis points of AUM of the Acis-6 fund directly.[9] If it were merely ACM's advisor, then why did Brigade receive payment as part of the AUM rather than directly from ACM? That Brigade charges the Acis-6 fund and not ACM permits the plausible conclusion that ACM is not Brigade's client—Acis-6 is. Brigade's attempt to distance itself from the Acis-6 CLO requires the Court to ignore the plain language of the pleadings at issue.

Additionally, Brigade's role as an investment advisor immediately triggers its fiduciary duties under the IAA, which are owed directly to investors of a managed fund.[10] Brigade is also a registered investment advisor, which makes certain fiduciary duties (including those against self-dealing and fraud) owed to clients under 15 U.S.C. § 80b-6(1) and (2), and directly to investors under 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8 ("Rule 206(4)-8").[11] Brigade's argument that this Court has already denied that there is a private right of action under the IAA is irrelevant and is intentionally misleading. Motion at 7. This Court indeed ruled that NexPoint did not plead a viable cause of action under § 215—but it had nothing to do with the merits of the fiduciary-duty standard and had everything to do with statutory construction.[12] NexPoint is not attempting to

[9] Dkt. No. 78 at ¶ 67.

[10] *See* Dkt. No. 139 at pp. 23–26.

[11] Brigade leans in heavily to the notion that NexPoint is not a "client" and that § 206 of the IAA applies only to clients. This is wrong for all the reasons already briefed in Response to Plaintiffs' Motion to Dismiss, which are incorporated herein. Furthermore, all that would mean is Plaintiffs' claim is derivative of the fund's claims, and Defendant has already shown how it has derivative standing in its Response to Plaintiffs' Motion to Dismiss, which is incorporated herein.

[12] Brigade seems to suggest that § 215 of the IAA is a fiduciary-duty claim. Not so. Any violation of the IAA can give rise to a rescission action under § 215 (15 USC § 80b-15), and it is irrelevant whether such a violation amounts to a breach of fiduciary duty.

relitigate that question, but this Court has never ruled whether the duties supplied by the IAA were actionable under New York state law (indeed, the Court dismissed that claim without prejudice). As argued against Plaintiffs' Motion, this Court will have to make an "*Erie* guess" as to whether New York courts would follow other jurisdictions in holding that the fiduciary-duty element of a state-law claim can be supplied by a federal law. This Court should find that violations of IAA fiduciary-duty standards are actionable via New York law for the reasons already briefed in the Response to Plaintiffs' Motion and incorporated herein. If the Court finds as much, then Brigade can be found liable because it has conceded that it is subject to those duties in § 206 and Rule 206(4)-8 as a registered investment advisor of the Acis-6 pooled investment fund.

To avoid all of this, Brigade rests heavily on the fact that it is not in direct privity with NexPoint or with the Acis-6 fund. But New York has made clear that whether there is a fiduciary duty is not based on contract—Brigade assumed the heavy lifting for ACM vis-à-vis the Acis-6 fund. Those duties were fiduciary and therefore, having been assumed by Brigade do not fall by the wayside.

**2. NexPoint Has Pleaded Breach of Fiduciary Duty Against Brigade**

NexPoint's breach-of-fiduciary-duty claim is based on the many allegations against all the investment advisors, including Brigade. Those allegations state that Brigade was ACM's sub-advisor *for the purpose of managing the assets of Acis-6*, and for that Brigade was paid fifteen basis points directly from the Acis-6 CLO's assets under management ("AUM"). The allegations also state that Brigade took over the actual investment advisory role from ACM because ACM could not fulfill its duties under the Portfolio Management Agreement ("PMA"). The allegations

state that ACM and Brigade acted together as investment advisors in doing the bad acts that led to NexPoint's injuries.[13] These are sufficient, and Brigade does not say how they are deficient.

### E. The Allegations of Conversion and Unjust Enrichment/Assumpsit are Sufficient

In the limited space it dedicates to the subject, Brigade seeks to preclude the conversion claim under a species of the economic-loss rule, mainly arguing that NexPoint cannot "recast a contract-based claim as a tort claim where plaintiff is essentially seeking enforcement of a [contractual] bargain." Motion at 12 (citations omitted). But these arguments are not bases for dismissal—they merely limit the remedies NexPoint may seek for conversion, *e.g.*, maybe NexPoint may not claim the lost appreciation of the value of the assets had they been properly invested or other things that could have been "gained" but for the violations. None of the arguments or cases suggest that NexPoint cannot maintain a conversion claim for moneys that would have been in the fund had they not been wrongfully taken, such as the unearned fees and improper expenses. Indeed, NexPoint specifically alleges that Brigade was paid fifteen basis points based on an inflated AUM—fees that Brigade was not entitled to take under any contract, which would still be in the fund today and ready to be paid to NexPoint.

The unjust enrichment/assumpsit claims follow along the same logical basis. Brigade's contention against all these claims is that it had "no relationship" with NexPoint. This ignores the fact that it took money directly out of a pool of funds that otherwise would have gone to the subordinated noteholders, including NexPoint.[14] Even under the caselaw cited by Brigade, that is enough of a relationship because it related to property that otherwise would be in NexPoint's proverbial pocket.

[13] *See* Dkt. No. 78 at ¶¶ 78–139.
[14] *See, e.g.*, Dkt. No. 78 at ¶¶ 210–16.

There is therefore no basis to dismiss the claims of conversion or the unjust enrichment/assumpsit/money had and received.

## F. THE ALLEGATIONS OF NEGLIGENCE AND GROSS NEGLIGENCE ARE SUFFICIENT

NexPoint pleads negligence and gross negligence based on the relationship just discussed. Brigade claims that it owes no duty.

It claims that the IAA does not support finding a duty to Acis-6 or to NexPoint because "Brigade was retained as a service provider to Acis, the IAA could not possibly create duties as between Brigade and NexPoint." Motion at 10. But NexPoint has already addressed this argument above. The IAA creates duties under § 206 to persons such as investors in a fund being advised by an adviser. *Goldstein v. SEC*, 451 F.3d 873, 881 n.6 (D.C. Cir. 2006) ("[Section 206] also applies, however, to persons other than clients. *See* 15 U.S.C. § 80b-6(4)."); 17 C.F.R. § 275.206(4)-8. New York courts have held that federal statutes provide a duty of care to anyone in the class of persons that the statute is designed to protect. *Feldman v. CSX Transp., Inc.*, 821 N.Y.S.2d 85 (N.Y. App. Div. 2006) (holding that breach of duties imposed by Federal Railroad Administration regulations gives rise to state tort claims).

Brigade also bobbles the argument about why New York common law and the Indenture do not create a standard of care by which Brigade must abide. Brigade contends that "as to the Indenture and PMA, Brigade is not a party to either so they could not create obligations as between Brigade and NexPoint." Motion at 10. Even so, that is not really the issue: as Brigade implicitly concedes, a chain of privity—as in the one among the Notes, the Indenture, the PMA, and Brigade itself—can supply the relationship bases for the duty. Brigade cites *Ossining Union Free School District v. Anderson LaRocca Anderson*, 539 N.E.2d 91 (N.Y. 1989) for the conclusion that it

cannot be liable here. *See* Motion at 11. No such conclusion flows. Nor is it the definitive statement on when or whether a duty of care will be implied and when it will not.

In *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Center, Inc*., the Court of Appeals explained, "A duty may arise from a special relationship that requires the defendant to protect against the risk of harm to plaintiff. Landowners, for example, have a duty to protect tenants, patrons and invitees from foreseeable harm caused by the criminal conduct of others while they are on the premises, because the special relationship puts them in the best position to protect against the risk. That duty, however, does not extend to members of the general public." 750 N.E.2d 1097, 1101 (N.Y. 2001). So even if ACM is Brigade's only "client" in this case, that fact is irrelevant to whether there are duties of care owed to others in the performance of Brigade's duties where Brigade knew (1) it was fulfilling some or all of ACM's duties to a defined and foreseeable class of people, and (2) it would have a measurable, foreseeable impact on that class of persons.

Even considering *Ossining Union*, which Brigade relies on, the outcome is the same. There, the Court of Appeals articulated when New York law would infer a duty of care owed by one party to another: (i) the defendant had awareness that its work was to be used for a particular purpose; (ii) reliance by a third party known to the defendant in furtherance of that purpose; and (iii) some conduct by the defendant linking it to that third party evincing the defendant's understanding of the third party's reliance. *Ossining Union*, 539 N.E.2d at 95. All of these elements are met here: (i) Brigade knew it was managing investments for Acis-6 which were subject to the rights and obligations in an Indenture and a PMA (which incorporated the indenture) and the purposes outlined therein, and it was paid based directly on the AUM of the Acis-6 fund[15]; (ii) based on the Indenture and PMA (which incorporates the Indenture's investment standards), there would be

[15] *See, e.g.*, Dkt. No. 78 at ¶ 67.

investors in Acis-6 (such as NexPoint) whose interests were directly and foreseeably subject to the performance of the duties undertaken by Brigade[16]; and (iii) Brigade both performed some or all of the investment advisory services for the Fund—and was paid fifteen basis points out of the fund—which directly impacted the value and/or return on the subordinated notes.[17]

This case is therefore a far cry from the insinuation that Brigade is being opened to negligence liability to an unlimited class of people. That Brigade owed a duty of care at the very least to the Acis-6 fund but also to NexPoint is hardly surprising. Brigade makes no other argument on negligence or gross negligence.

Accordingly, the Motion must be denied.

### G. THE ALLEGATIONS THAT BRIGADE IS LIABLE FOR AIDING AND ABETTING ARE SUFFICIENT

Brigade argues NexPoint failed to adequately plead an aiding-and-abetting claim, but Brigade's minimal arguments do not demonstrate this to be the case.

For one thing, Brigade only addresses NexPoint's claim that Brigade aided and abetted a breach of fiduciary duty. But NexPoint clearly pleaded an aiding-and-abetting claim for more than just the breach-of-fiduciary-duty claim—for example, tortious interference and conversion.[18] *See* Dkt. No. 78 at ¶ 234; *see also id.* at ¶¶ 199–232. Ironically, one of the few cases cited by Brigade explicitly states that "New York recognizes" claims for aiding and abetting conversion, which is the third tort claim NexPoint alleges in the counterclaims.[19] *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012). Thus, to the extent Brigade seeks to dismiss any aiding-and-abetting claim other than that for breach of fiduciary duty, Brigade has not made such an argument and has thereby waived them.

---

[16] *See, e.g.*, Dkt. No. 78 at ¶ 201.
[17] *See, e.g.*, Dkt. No. 78 at ¶¶ 67, 202–04.
[18] *See* Dkt. No. 78 at ¶ 234; *see also id.* at ¶¶ 199–232.
[19] *See* Dkt. No. 78 at ¶¶ 207–17.

As to the contentions offered, Brigade's sufficient-pleading argument carries no weight. Brigade starts by claiming that NexPoint only pleaded one paragraph of its counterclaims to this element.[20] This ignores all the other allegations about what Brigade did on its own or as part of its association with ACM and Terry. Fairly considered, NexPoint's counterclaims provide robust factual allegations of this claim for aiding and abetting, given the pleading's pre-discovery posture.[21]

Brigade also argues that NexPoint has not pleaded that Brigade had actual knowledge that ACM owed fiduciary duties either to Acis-6 or to NexPoint directly. The Counterclaims allege, however, that Brigade was an investment advisor and was aware of investment-advisor duties, and that it took over some or all of the investment-advisor role from ACM under the Indenture and the PMA, and took actions to fulfill that role.[22] *See, e.g.*, *Bullen v. Cohnreznick*, 150 N.Y.S.3d 53, 56 (N.Y. App. Div. 2021). Drawing all reasonable inferences in the non-movant's favor, then it has been pleaded that Brigade was aware of ACM's status as a fiduciary and that it knew the actions were self-dealing in nature.

To the extent that Brigade contends it was ignorant of the law applicable to investment advisors as fiduciaries, that is both absurd (because Brigade is an established investment advisor) and irrelevant. *See id.* Similarly, the Counterclaims alleged that Brigade acted in ways that helped generate more fees for itself and the other investment advisors. As such and drawing all reasonable inferences in the non-movant's favor, the allegations plausibly establish that Brigade knew that acts which breached the various investment criteria and quality tests in the Indenture and those that took extra expenses all provided knowing substantial assistance to ACM in breaching its

[20] *See* Dkt. No. 120 at p. 14.
[21] *See, e.g.*, Dkt. No. 78 at ¶¶ 2–8, 58–67, 73–138.
[22] *See* Dkt. No. 78 at ¶¶ 57–67.

fiduciary duty.

Finally, Brigade argues that NexPoint insufficiently pleaded that Brigade substantially assisted in Acis's breach of fiduciary duty. Specifically, Brigade takes aim at NexPoint for failing to "allege what exactly Brigade did to 'assist' with various torts."[23] "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (N.Y. App. Div. 2003). Rendering *advice* satisfies this standard. *Diduck v. Kaszycki & Sons Contractors*, Inc., 974 F.2d 270, 284 (2d Cir. 1992) (citing *Halberstam v. Welch,* 705 F.2d 472, 478 (D.C. Cir. 1983), for the proposition that advice or encouragement to act has same effect on liability as participation or physical assistance). Here, NexPoint has laid out how Brigade played a critical role in facilitating the schematics of Counter-Defendants' swindle by being the operational arm of the investment-advisor role.[24] And the peculiarity of Brigade advancing this argument is made even odder when considered with NexPoint's allegation that Brigade received *fifteen basis points* on the ACIS-6 CLO's assets under management for its investment advisory services, a hefty fee for someone who did nothing but blindly and "insubstantially" take orders.[25]

Accordingly, Brigade's motion should be denied.

[23] *See* Dkt. No. 120 at p. 21.

[24] *See, e.g.*, Dkt. No. 78 at ¶¶ 2–8, 58–67, 73–138.

[25] *See* Dkt. No. 78 at ¶ 67. It is surprising that Brigade cited to the state court hearing given that the Counterclaims before this Court are substantively different from those pending before the state court in terms of specific allegations of standing. Currently pending before that court is a motion to amend to, among other things, add the allegations in the Counterclaims to the state court pleadings and add a claim of tortious interference. Although the transcript should be stricken, if this Court intends to consider it, it should also consider the part where Brigade's counsel was expressly told by the state court justice that Brigade was assuredly on the hook for aiding and abetting if the allegations proved true. *See* Exhibit 1 (Tr. at 89:8-14.).

**IV.**

**CONCLUSION**

For these reasons, NexPoint respectfully requests that the Court deny Brigade's 12(b)(6) motion.

Dated: June 26, 2023

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*Mazin A. Sbaiti*

Mazin A. Sbaiti
New York Bar No. 4339057
mas@sbaitilaw.com
Griffin S. Rubin (Admitted *pro hac vice)*
Texas Bar No. 24121809
gsr@sbaitilaw.com
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: 214.432.2899
F: 214.853.4367

**COUNSEL FOR DEFENDANT NEXPOINT DIVERSIFIED REAL ESTATE TRUST**