# EXHIBIT 17 Part II

set

## ANALYSIS OF FACTS AND CLAIMS

The Panel first addresses Terry's claims for breach of contract stated against ACIS and ACIS GP and breach of fiduciary duty stated against ACIS GP.

The evidence establishes that Highland terminated Terry's employment on June 9, 2016. The ACIS Limited Partnership Agreement (LPA), Section 4.04 requires that, "upon the resignation, death, disability or termination of employment with the Partnership or any Affiliate Employer (for any reason whatsoever) (as such event, a 'Removal Event') of any Limited Partner, the Partnership Interest of such Limited Partner shall automatically be forfeited to the Partnership and such Limited Partner shall be entitled to receive in consideration of such interest an amount equal to (i) 100% of such Limited Partners Percentage Interest of all Net Available Cash through the first year end following the Removal Event, (ii) 66 2/3% of such Limited Partner's Percentage Interest of all Net Available Cash through the second year end following such Removal Event, (iii) 33 1/3% of such limited Partner's Percentage Interest of Net Available Cash through the third year end following such Removal Event…; provided, that if the basis of such Removal Event was termination of employment with the Partnership or any Affiliate Employer for cause…such partner shall automatically forfeit its right to any further compensation or consideration for its Partnership Interest."

Because Highland stated that Terry was terminated for cause, ACIS and ACIS GP invoked the provided clause and deemed all of Terry's limited partnership interest and entitlement to payout as forfeit. Thus, ACIS and ACIS GP claim to owe Terry nothing for his 25% limited partnership interest in ACIS, as Terry claims he is contractually owed twelve million nine hundred and eight two thousand dollars for his 25% limited partnership interest in ACIS.

The evidence establishes that ACIS and ACIS GP did not just simply rely on Highland's statement of terminating Terry for cause. ACIS and ACIS GP became part of Highland's and

Dondero's efforts to construct a pretext of "for cause" termination so Terry could be denied the value of his limited partnership interest in ACIS. ACIS and ACIS GP knowingly and willingly pretextually characterized Terry's termination from Highland as a "for cause" termination to deny Terry the value of his limited partnership interest, all in contractual breach of the ACIS LPA and in breach of fiduciary duty to Terry as its limited partner. ACIS and ACIS GP have no employees. All who act for ACIS and ACIS GP are officers or employees of Highland and perform multiple roles.

The evidence establishes that Highland's termination of Terry was, in fact, pre-textual, without basis of cause and only because Dondero wanted him gone. Terry's opposition to Dondero's Trussway/Targa plan was not self-dealing and not a breach of fiduciary duty. Terry's opposition to Dondero's plan to not pay investors and extend past due and near due notes was appropriate and was ultimately accepted by all to be the correct approach to complete the Trussway/Targa acquisition. Dondero was simply angry and realized Terry was not a "yes man" willing to let Dondero have his wrongheaded way, so Dondero fired Terry on the spot and later sought to characterize Terry's termination of employment as "for cause."

Respondents' offer to prove that Terry's termination was "for cause" is not persuasive. The contrasts between the true facts and their temporal relationship to Terry's termination, as those "facts" are characterized by Respondents as a predicate for his "for cause" termination, are not credible. The CCO's memo to Terry's file of September 1, 2016 was the first documentation of his alleged breach of fiduciary duty or self-dealing as a justification for his "for cause" termination.

There is no credible evidence that anyone ever discussed any prior sexual relationship between Terry and a co-worker, other than Terry in a "father/son" talk with Dondero in January 2015. That admitted relationship had ended months earlier, was not significant to Dondero and he told Terry there was no need to report the relationship to Human Resources. Respondents alleged

other sexual relationships between Terry and co-workers which are denied by Terry. One is alleged to have occurred in 2011, but there is no credible evidence that it even occurred. It is simply not credible that a rumored relationship four years prior was any motivation for or could be any justification for Terry's "for cause" termination. Respondents' allegation that Terry had a sexual relationship with a Highland junior attorney is most offensive, as the relationship did not occur and was denied by both Terry and the junior attorney. This allegation was based solely on someone's fantasy related to costumes they wore at an office Halloween party and their common attendance at a business conference. It is not credible that a sophisticated CCO and H/R director would reasonably rely on such as a basis for Terry's "for cause" termination and resulting forfeiture of the value of his limited partnership interest in ACIS. The evidence establishes that Terry did not have a sexual relationship with the junior attorney, and the Respondents or others, in good faith, could not have reasonably believed he did.

The Panel is persuaded that the Respondents, feeling need to find motive for the junior attorney's assistance of Terry and her involvement in the CLOVF restructure, sponsored these allegations to support their claims that Terry was seeking the restructure of the CLOVF out of self-interest and in breach of his fiduciary duties, and establish the motives of the junior attorney in "knowingly" facilitating Terry's alleged breach of duty. This is a pretextual construct of the CCO and is simply not credible.

The proposed restructure of the CLOVF began in early 2015 and was always known by Dondero, Highland's legal department and CCO. The CLOVF was small, only had a few investors, was subject to investor redemption requests, had been co-opted to be supported by Highland employee's investment of their retirement accounts and not structured in a way to attract a target

group of investors. The proposal was to restructure the CLOVF to make it more "hedge fund like", and grow the CLOVF with new investors.

The CLOVF routinely paid profit distributions to its investors. This is not "hedge fund like" because profits were distributed rather than retained to be reinvested for growth. The two primary investors, referred to as Rampart and Kyser did not require routine distributions and sought growth. Highland employees had access to investing in the CLOVF by investing in its ITA retirement accounts, which were basically IRAs. Employee investors who wished to invest more in their ITA retirement accounts were required to invest in the CLOVF's interest bearing notes at a ratio of 80% notes to support 20% investment in their ITA retirement accounts. If the CLOVF was to no longer distribute profits to accomplish "hedge fund like" reinvestment for growth, no distributions would be available to pay interest on the employee investment notes and the notes would need to be paid off. If there was no longer a vehicle to support aggressive employee investment in the CLOVF (the four to one ratio), the ITA did not need to continue to exist. The employee's retirement accounts could simply be redeemed or transferred to other IRAs.

Terry was the portfolio manager of the CLOVF and its third largest investor. Like other investors, Terry had rights to redeem his investment, but he did not seek to redeem and continued to invest in CLOVF notes and he and his wife continued to invest their retirement funds in the ITA. Nonetheless, Respondents allege that a dichotomy of interest led Terry to lie and scheme to have his investment in the CLOVF paid while others were encouraged to invest. This is the substance of Respondents' allegations of Terry's self-dealing and breach of fiduciary duty, supporting both their allegations of "for cause" termination and Highland's claims for damages and offset in the District Court suit. As noted, these claims were never documented or disclosed to Terry prior to the CCO's memo of September 1, 2016, and Highland's District Court suit.

As noted, the proposed restructure of CLOVF began in early 2015 and continued for a year thereafter. The business purpose of the restructure was well known to Dondero and the CCO. As early as the fall of 2015, Dondero and Terry were discussing the appropriateness of continuing the CLOVF without new investors. Dondero did not want to close the CLOVF and suggested that the DAF would become a major investor. The DAF (Donor Advised Fund), CLO Hold Co is the Parties' reference to a group of charitable foundations which were invested in Highland managed CLOs. The DAF's trustee is a Highland employee and Dondero's former college roommate. Apparently, Dondero knew he could direct the DAF's investment in the CLOVF and support its continuation. Dondero and the Highland CCO were aware of the planned restructure and its consequential effect on the ITA and the employee investor notes supporting the employee's retirement investments in the ITA. By December 2015, Dondero approves the restructure plan, payment of employee investor notes and the windup of the ITA. The Highland CCO expresses concern that Rampart's and Kyser's written approval is necessary for the CLOVF to stop paying profit distributions. Later the necessary approval is documented, apparently to the CCO's satisfaction, and the restructure plan proceeds. The DAF contributes sixteen million six hundred thousand dollars of Highland managed assets to the CLOVF, employee investor notes are paid and the ITA is wound up by the end of April 2016.

Following Terry's termination and later notice of "for cause" termination, Terry requested redemption of his and his wife's remaining investments in the CLOVF. Five weeks later, on July 27, 2016, he is advised that his investment has no value. Apparently, when the ITA was wound up in late April, Terry's and his wife's retirement investments were somehow re-characterized as Terry's capital account in the ACIS CLO Value Master Fund II, L.P. or his capital account in the CLOVF.

On or about July 19, 2106, Highland rescinded the DAF contributions to the CLOVF and returned the contributed assets to the DAF. Respondents state this rescission was necessary because they had "recently discovered (a) conflict of interest regarding an ex-employee." However, the Rescission Agreement itself recites that, "the Parties have each determined that it is in their respective best interests of each of the Parties to rescind and cancel the Contribution."

Incident to the rescission, the CLOVF returned all of the contributed assets to the DAF and paid in cash or transfer of additional assets the total value of seven hundred and eight thousand dollars, "to make the DAF whole", and economically in the same position as before its contribution to the CLOVF.

The "recently discovered conflict of interest" is the CCO's recent epiphany that Terry must have lied when he advised that the CLOVF investors Rampart and Kyser "requested" that distributions be terminated to accommodate reinvestment growth. The CCO's testimony that he called these investors and confirmed this lie is not persuasive and begs credibility. The only documented evidence are the investors written approvals which the CCO required.

The July 27, 2016 advice that Terry's and his wife's retirement accounts had no value is only accurate because the value was taken and used to pay the DAF following the rescission. In the District Court suit, Highland states a claim for damages and offset for the additional value paid to the DAF. Respondents' witness testified that the retirement fund's value was in Terry's capital account and it was swept pursuant to Section 3.5(c) of the ACIS CLO Value Master Fund II, L.P.'s limited partnership agreement.

Terry is a limited partner in the CLOVF and the CLOVF is a limited partner in the ACIS CLO Value Master Fund II (CLOVMF) but the evidence does not show Terry to be a partner in the CLOVMF. Assuming that Terry is a partner, as referenced in Section 3.5(c), Respondents' claimed

authority to sweep the accounts in satisfaction of or offset of damage or loss is directly dependent upon a nexus in causation between the alleged damage or loss and the conduct of Terry.

The evidence establishes that the CCO's claims of "recently discovered conflict of interest" is yet another construct and pretext to support Respondents' denial of limited partnership value based on a "for cause" termination and was not in fact the reason for the DAF rescission. It would make little difference to Highland which of its CLOs managed the DAF investments. Dondero simply reconsidered his decision to support the continuation of the CLOVF with Highland managed funds and realized, that in fact, as Terry had advised, the fund would be too small to manage without significant investors. The CLOVF was ultimately closed out because Dondero did not see benefit to its continuation. The evidence establishes that no conduct of Terry was a cause of damage or loss to the CLOVMF or the CLOVF.

Section 3.10(a) of the ACIS LPA limits compensation and reimbursement of expenses payable to the General Partner and any Affiliate of the General Partner to an amount not to exceed 20% of Revenues without the consent of all members of the Founding Partner Group. There is no dispute that Terry is a member of the Founding Partner Group. There is no evidence that Terry offered written consent to any expenses paid by ACIS in excess of 20% of Revenues. It is undisputed that ACIS habitually paid more than 20% of Revenues to Highland for providing ACIS with overhead and administration. Respondents' evidence and arguments that Terry waived or consented to ACIS's payment of excess expenses is not persuasive. At most, Terry accepted his ACIS distributions without regard to the expenses paid to Highland. This is not consent contemplated by the ACIS LPA. Highland is owned 75% by Dondero and 25% by Okada and Terry is not a partner in Highland. Terry had no reason to consent to excess expenses being paid to Highland. Additionally, the ACIS LPA has an express waiver clause at Section 6.09 which states,

"Waiver. No failure by any party to insist upon strict performance of any covenant, duty, agreement, or condition of this Agreement or exercise of any right or remedy consequent upon breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement, or condition."

The evidence establishes that Terry did not consent to ACIS payments of expenses in excess of 20% of Revenue and Terry has not waived his right to claim damages directly resulting from ACIS' and ACIS GP's breach of contract and breach of fiduciary duty. Clearly ACIS and ACIS GP ignored Terry's contractual rights and ACIS GP as a general partner has a fiduciary duty not to benefit itself or another at the expense of its limited partner, as they ignore and breach the terms of the partnership agreement and diminish Terry's distributions.

The Panel next addresses Terry's claim for conversion of the ITA retirement accounts stated against Highland, ACIS and ACIS GP.

Without again reciting the convoluted structure and history of the ITA retirement accounts in issue, it is established that there is no remaining value to the accounts because its value was swept and used by Highland or CLOVF to pay the DAF incident to the DAF rescission. It is noted that Respondents argue and offer to prove that Terry has no standing to state a claim for conversion of three of the five accounts because his wife is the trustee and owner of those three accounts. She is the trustee and owner of those accounts. Yet those accounts too were swept to pay the DAF and construct a pretextual damage and offset claim for having paid the DAF. While this establishes conversion of the accounts to the damage of Terry and his wife, the converters (CLOVF, CLOVMF, ACIS CLO VF GP), are not parties to this arbitration. The claims for breach of contract and conversion and damages should be stated against those parties or others, elsewhere.

The Panel next addresses Terry's claims for reputational damages and fraudulent transfer stated against Highland, ACIS and ACIS GP.