## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> *Defendants*. | No. 1:21-cv-11059 (GHW) |

## DAF PARTIES' JOINT RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS THE DAF PARTIES' AMENDED COUNTERCLAIMS AND <u>FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS</u>

Defendants Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF") and CLO HoldCo, Ltd. ("CLOH") (collectively "DAF Parties" or "Defendants") file this Joint Response to Plaintiffs' U.S. Bank, National Association ("U.S. Bank"), Joshua N. Terry ("Terry"), and Acis Capital Management, L.P.'s ("ACM") (U.S. Bank, Terry, and ACM are collectively "Plaintiffs" or "Plaintiffs/Counter-Defendants") Motion to Dismiss the DAF Parties' Amended Counterclaims ("Rule 12(b)(6) Motion") and Motion for Judgment on the Pleadings ("Rule 12(c) Motion") (collectively, "Motion") [Dkts. 183].

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITES ................................................................................................... i

I.      INTRODUCTION ..................................................................................................... 1
        A.  Preliminary Statement and Objections ............................................................ 1
        B.  Summary of Response ..................................................................................... 2

II.     LEGAL STANDARDS ............................................................................................ 4
        A.  Standards Relating to Rule 12(b)(6) Proceedings .......................................... 4
        B.  Standards Relating to Rule 12(c) Proceedings ............................................... 5

III.    ARGUMENTS AND AUTHORITIES ..................................................................... 6
        A.  DAF Parties Have Direct Standing to Challenge Agreements ........................ 6
        B.  The Counterclaim Alleges Plausible Claims to Invalidate the 2021 and 2023 Agreements .. 8
        C.  The Counterclaim Asserts a Plausible Claim for Tortious Interference ......... 13
        D.  The DAF Parties Have Standing to Sue Plaintiffs for Tortious Interference .... 16
        E.  Tortious Interference Claim is Properly and Plausibly Plead ........................ 18
        F.  Plaintiffs Fail to Meet Their Burden under Rule 12(c) .................................. 20

OBJECTION ......................................................................................................................... 24

PRAYER ............................................................................................................................... 25

# I.
## INTRODUCTION

The Plaintiffs' Motion includes two separate motions [Dkt. 183]. The first motion seeks relief under Rule 12(b)(6), and the second motion seeks relief under Rule 12(c). Both motions should be denied for the reasons set forth in this Response and the attached Declarations, including the Declaration of Jeremey Le Tissier, dated September 22, 2023 (Exhibit "A") and Alex Horsbrugh-Porter, September 19, 2023 (Exhibit "B"), both of whom are lawyers who are experts in Guernsey law.

### A.    Preliminary Statement and Objections

As an initial point, the Rule 12(b)(6) and Rule 12(c) motions both improperly assume that the Plaintiffs' alleged facts are true. In their pleading [Dkt. 155], the Defendants have joined issue with the material factual allegations which underlie the Motion. By way of example, the DAF Parties dispute that Dondero controlled the filing of any prior lawsuits involving the Plaintiffs or is in control of the DAF Parties at this time. [Dkt. 155 ¶¶ 29, 55] The DAF Parties also deny there was any pending threat of litigation against the Plaintiffs that could reasonably justify their initiation of this suit. [Dkt. 155 ¶ 46] Although this Court determined it had subject matter jurisdiction [Dkt. 155 ¶ 14], this ruling did not establish the factual truth of the Plaintiffs' allegations for purposes of these current motions. Indeed, the so-called "factual" justifications advanced by Plaintiffs in their Motions for their participation in the 2021 Settlement are disputed. [Dkt. 155 ¶¶ 28] The bulk of Plaintiffs' Motion that endeavors to advance the reasonableness of Plaintiffs' actions is nothing more than unproven factual rhetoric in these Rule 12(c) and 12(b)(6) proceedings.  As such, all such arguments should be disregarded because this Court must consider the facts in the light most favorable to the DAF Parties, and not indulge contested, disputed facts. *See Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 324 (S.D.N.Y. 2002). For purposes

of the Rule 12(b)(6) inquiry, the Court also should not consider arguments raised by exhibits attached to Plaintiffs' Amended Complaint [Dkt. 15] to the extent not referred to or otherwise attached to the Amended Counterclaim. *See McDowell Research Corp. v. Tactical Support Equip., Inc.*, No. 08-CV-6499, 2009 WL 2901594, at *4 (W.D.N.Y. Sept. 4, 2009), *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The DAF Parties object to such exhibits attached to the Motion or improperly referenced for purposes of the Rule 12(b)(6) inquiry.

## B.    Summary of Response

Plaintiffs' Rule 12(c) Motion [Dkt. 183 at p. 24], which consists of less than 2 pages, is properly denied because the DAF Parties have raised fact-based affirmative defenses and counterclaims. It is rare that any plaintiff in any case is entitled to Rule 12(c) relief when affirmative defenses are raised. This is even more so here because the DAF Parties have asserted fact-based defenses and a Counterclaim which has been incorporated into the Second Amended Answer.[1] To do so would deprive defendants, such as the DAF Parties, of their day in Court. *See, e.g. Gelicity UK Limited*' No. 10-civ, 5677, 2013 WL 3315398 at *5-6 (E.D.N.Y. July 1, 2013).

The Rule 12(b)(6) motion also is deficient for multiple reasons:

- The Motion forgets that notice pleading is the standard and that this Court must view the allegations in the Counterclaim in the light most favorable to the DAF Parties. *See Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 324 (S.D.N.Y. 2002). Ignoring these principles, the Rule 12(b)(6) motion devotes substantial energy arguing the merits of the Counterclaims. Indeed, pages 14-20 of the Motion are devoted to an attack on the contractual breach claim against HCLOF. But at the end of the day, the Motion raises only fact issues and not "plausibility" arguments. [2]

- The Motion claims that the DAF Parties have no standing to complain about the 2021 and 2023 Agreements because there is an absence of direct privity. But this is not true where the agreements cause injury to an aggrieved party, such as the DAF

---

[1] *Thirteenth Affirmative Defense and Incorporation* in DAF Parties' Second Amended Answer [Dkt. 155 at p. 16].
[2] *See* Le Tissier Dec. at ¶¶17-18, 49, 59(g) ("I consider that the claim pleaded at Count III of the First Amended Counterclaim is a plausible claim on the facts and matters set out within the First Amended Counterclaim.").

defendants. *Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't 2003), *Meisels v. Meisels*, No. 19-CV-4767 (EK)(RML), 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021), *Artemus USA LLC v. Leilataghinia-Milani Inc.*, No. 656115/2017, 2020 WL 5369257, at *2 (N.Y. Sup. Ct. Sep. 08, 2020), *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986).

- The Motion deliberately mischaracterizes the Counterclaims. It argues that the DAF Parties have no standing to seek invalidation of the 2021 and 2023 Agreements *on behalf of HCLOF*. But there should be no mistake that the DAF Parties are suing HCLOF, not seeking remedies on HCLOF's behalf. This renders this standing argument irrelevant.

- The Motion makes similar misleading arguments that the DAF Parties seek "reflective loss," and have no standing to do so. But this is another attempt to improperly manipulate the substance of the Counterclaim to fabricate a defense which does not otherwise exist. Under applicable law, CLOH is entitled to show that HCLOF's conduct in breaching its contractual duty is a producing cause of damage to CLOH. This has nothing to do with "reflective loss." Rather, CLOH is suing HCLOF for direct violations of the Members Agreement, which incorporates the Offering Memorandum, which requires HCLOF to monetize assets,[3] which it failed to do.

- Plaintiffs' conduct interfering with HCLOF's contractual duty was also a proximate cause of damage. This is precisely what the Counterclaim asserts, and this has nothing to do with "reflective loss," where derivative standing would be required. Rather, this is a breach of contract and interference case where CLOH and HCLOF are in privity. *See* Le Tissier Dec. at 11(a).[4]

- The Motion also complains there are no allegations that the HCLOF Directors received any benefit from HCLOF's collusive conduct. Although any such pleading is not an essential element of the asserted causes of action, the criticism is nevertheless untrue. The Counterclaim clearly alleges that the Directors are beholden to the Majority Shareholder and are the beneficiaries of excessive compensation controlled by the majority shareholder. [Dkt. 155 at ¶¶ 4, 50-51]. Both the Motion and the Declaration of McGuffin advance the same incorrect criticism.

---

[3] *See* Members Agreement [Dkt. 155-2 at pp. 4, 7].

[4] CLOH had a reasonable expectation that distributions would be made and completed following the Optional Redemption. [Dkt. 155 at 7, 28, 35-36] Accordingly, the disruption and interference with this expectation creates a right to a remedy.  In any event, CLOH is also suing the Plaintiffs for attorneys' fees caused by the torts of another which is a separate damage item unrelated to the Plaintiffs' arguments related to reflective loss. *See irth Sols., LLC v. Diversified Underground, Inc.*, 2019 WL 5690658, at *2 (W.D.N.Y. Nov. 4, 2019) (under New York law, legal fees incurred in a separate action are recoverable where caused by a defendant's wrongful conduct).

- The Plaintiffs' Motion argues that HCLOF is entitled to pursue its own "economic self-interest" [Dkt. 183, at p. 21]. But this is not a complete proposition of law. HCLOF may not pursue its economic self-interest in a manner that is either dishonest or is commercially unacceptable to ordinary and honest people. To do so, would be a violation of Section 20.5 of the Members Agreement.

- The Motion argues that the Counterclaim fails to articulate a factual basis for collusion. Although collusion is not a cause of action under New York law, there are cases that provide guidance concerning what conduct is collusive, and secrecy is a signal flag to consider. *See Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (holding that "the allegation of collusion coupled with the allegation of wrongful interference or inducement to breach, leads to the conclusion of tortious interference by the third-party."). Notwithstanding the Motion's attempt to downplay the probative significance of "secrecy," which admittedly took place, the Plaintiffs' active involvement in this conspiracy of silence is alive and well and relevant.

- Plaintiffs fail to cite a single relevant case that holds that Rule 9 pleading standards apply in a tortious interference case. [*See* Dkt. 183] However, even accepting Plaintiffs' unreasonably heightened pleading standards, which is not conceded, the DAF Parties' counterclaims are still plead with appropriate specificity, including details as to the time, scope and participants in the Plaintiffs' tortious interference, bad faith and collusive acts. [*See* Dkt. 155].

## II.
## LEGAL STANDARDS

### A.  Standards Relating to Rule 12(b)(6) Proceedings

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, ***accepted as true***, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). (emphasis added).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "The choice between two plausible inferences that may be drawn from factual allegations is *not* a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, LLC v. Am.*

*Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Doe v. Columbia Univ.*, No. 1:20-cv-06770, 2022 U.S. Dist. LEXIS 176629, at *65 (S.D.N.Y. Sept. 28, 2022) (cleaned up) (Woods, J.) (quoting *Twombly*, 550 U.S. at 556).

**B.  Standards Relating to Rule 12(c) Proceedings**

Motions for judgment on the pleadings are governed by many of the same standards applicable to Rule 12(b)(6) motions. See *Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). The court must accept the allegations contained in the non-movant's pleading as true and draw all reasonable inferences in favor of the non-moving party. *Id.*

> "[C]onsideration is limited to the factual allegations in plaintiff['s] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit."

*Id.* (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is only warranted where the disputed factual issues raised by the answer are either immaterial or too implausible to ever be supported by discovery. *See Nautical Assist, Inc. v. Patchogue Shores Marina, Inc.*, 2020 WL 2836788, at *3 (E.D.N.Y. May 28, 2020) (*citing* 5C Wright & Miller, Fed. Practice & Procedure § 1368 (3d ed. 2004)). Granting judgment on the pleadings requires a showing that: (a) there exists no issue of material fact, (b) the answer fails to meet the minimal requirements of notice pleadings pursuant to Fed. R. Civ. P. 8(b), or (c) the disputed factual issues raised in the answer are immaterial or too implausible to ever be supported by discovery. *See id.* (denying judgment on the pleadings because issues of fact existed regarding enforceability of release).

"[W]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings," courts "ask 'whether the plaintiff's [complaint], stripped of those allegations which are denied by the defendant's answer, would leave the [complaint] stating a cause of action against the defendant.'" *United Food & Com. Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (citation omitted); *see also Bailey v. Pataki*, 2010 WL 234995, at *2 (S.D.N.Y. Jan. 19, 2010) (denying 12(c) motion based on the existence of affirmative defenses), *see also* 5C Wright & Miller, Fed. Practice & Procedure § 1367-8 (3d ed. 2021) (judgment on the pleadings only helpful when materials allegations are uncontroverted).

Defendants make most Rule 12(c) motions. However, when a plaintiff is the movant, as in this case, "the plaintiff may ***not*** secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *See* 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1368 n.20 (3d ed. 2021) (emphasis added) (noting rarity of a plaintiff's judgment on the pleadings); *Gen. Conference Corp. of the Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) ("A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. ***Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.").*** (emphasis added).

### III.
### ARGUMENTS AND AUTHORITIES

## A.  DAF Parties Have Direct Standing to Challenge Agreements

"[I]t is well settled that in order to have standing to challenge a contract, a non-party to the contract must either suffer direct harm flowing from the contract or be a third-party beneficiary thereof."  *Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't 2003); *see also Artemus USA LLC v. Leilataghinia-Milani Inc.*, No.

656115/2017, 2020 WL 5369257, at *2 (N.Y. Sup. Ct. Sep. 08, 2020) ("A nonparty to a contract must suffer direct harm flowing from the contract or be a third-party beneficiary to have the requisite standing to challenge a contract . . ."); *Meisels v. Meisels*, No. 19-CV-4767 (EK)(RML), 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021) (noting that to have standing to challenge contract "third party must allege that it "suffered direct harm" from the contract"); *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986) (holding MLBPA had standing to obtain declaratory judgment as to Topps' contracts to which it was not a party because "MLBPA holds rights that are vitally affected by the scope of those contracts").

Here, there should not be any question that the DAF Parties are directly harmed and aggrieved by the two Agreements at issue. The DAF Parties are identified by name in both agreements in several provisions. [*See* Dkts. 155-3 at p. 2, 155-4 at p. 1-2, 7-8, 10] Thus, there is no credible doubt that the Agreements were intended to directly impact the DAF Parties. As structured, each of the Agreements expressly targeted the DAF Parties with covenants, representations, and warranties with direct negative impact, as follows:

- The Agreements impose severe transfer restrictions on the assets of HCLOF in perpetuity. [Dkt. 155 ¶¶ 28, 39, 62]

- The Agreements include terms that carve the DAF Parties out of the benefits of any releases. [Dkt. 155 ¶¶ 28, 61; Dkt. 155-3 ¶ 9]

- The 2023 Agreement obligates HCLOF to cooperate with the other Plaintiffs to seek attorney's fees against the DAF Parties. [Dkt. 155 ¶ 7(xii), 38, 52]

- The 2023 Agreement allows the Plaintiffs to retain wrongfully withheld reserves to fund this current litigation against the DAF Parties. [Dkt. 155 ¶¶ 35-37, 63-65]

These specific provisions, among others, reflect an intent to impact the DAF Parties substantive and procedural rights, and the Counterclaim alleges that this targeting has caused harm. [Dkt. 155 ¶¶ 27-28, 41, 49, 52-53, 60-65] There is only one conclusion that can be fairly drawn—the DAF

Parties are aggrieved. There is nothing indirect about this harm; there is nothing subtle about the Plaintiffs' and HCLOF's intent; the terms of the Agreements are unambiguous in the harm they cause.

### B. The Counterclaim Alleges Plausible Claims to Invalidate the 2021 and 2023 Agreements

Under New York law, "[a] settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007); *see also Geller v. Branic 'nt'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (explaining that "we have consistently applied the law of contract to disputes concerning the . . . enforcement of settlements").[5]

In their Motion, the Plaintiffs cite authorities for the notion that "settlements are favored." [Dkt. 183 at pp. 12, 22] But none of Plaintiffs' cited cases involve settlements challenged on the basis of bad faith, unclean hands, or collusion.[6] Thus, Plaintiffs' observation that conventional settlement agreements are typically respected is unremarkable. *See, e.g.*, *In re SageCrest II LLC*, 765 F. App'x 473, 476 (2d Cir. 2019) (collusive settlement agreement was void as an illegal contract); *Rosen v. Dick*, 1974 WL 443, at *1 (S.D.N.Y. Sept. 3, 1974) (collusive settlement agreement could be "set aside"). Here, the 2021 and 2023 Agreements are not conventional in any respect.

Settlement agreements are properly set aside if the circumstances dictate that enforcement would be improper, ***including situations where the settlement was the product of collusion.*** *See Downes v. O'Connell*, 103 F. Supp. 2d 579, 582 (E.D.N.Y. 2000) (settlement can be set aside

---

[5] The 2023 Agreement expressly stipulates the application of New York law. [Dkt. 155-4, p. 11].
[6] Motion, Dkt. 183 at pp. 12, 22. *See, e.g.*, *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (1993) (does not include allegations of collusive agreements), *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 363 (2019) (does not include allegations of collusive agreements).

"upon a showing of good cause, such as fraud, **collusion,** mistake, accident, or lack of authority");
*Hallock v. State*, 64 N.Y.2d 224, 230, 474 N.E.2d 1178, 1180 (N.Y. 1984). New York law also
recognizes that "prime and long-settled public policy closes the doors of our courts to those who
sue to collect the rewards of corruption." *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d
465, 469, 166 N.E.2d 494, 496 (1960). "[A]greements contrary to public policy, have long been
held to be unenforceable and void." *United States v. Bonanno Organized Crime Family of La Cosa
Nostra*, 879 F.2d 20, 28 (2d Cir. 1989). New Yok courts will not enforce a contract that enables a
tort. *See Anabas Exp. Ltd. v. Alper Indus. Inc.*, 603 F. Supp. 1275, 1276 (S.D.N.Y. 1985)
("Specifically, a court will not enforce a contract to commit a tort.").

Here, the Counterclaim alleges that the 2021 and 2023 Agreements should be invalidated
because they are the product of bad faith, unclean hands, collusion and against public policy.[7]
[Dkt. 155 ¶¶ 6, 48, 57, 60-65, 68, 75] The Counterclaim also alleges collusion with appropriate
particularity:[8] the identity of those involved is clearly provided [Dkt. 155 at ¶¶ 6, 7]; the dates
when improper conduct is currently known to have occurred are identified [Dkt. 155 at ¶¶ 26-39];
and the substance of the communications or actions involving collusive behavior are described
[Dkt. 26-29, 31-39, 41-49].

Plaintiffs' arguments concerning the purported insufficiency of allegations concerning
collusion is also curious, at best. Plaintiffs never identify what is lacking and they never identify

---

[7] Although "[t]he Second Circuit has declined to rule whether courts should apply federal or state law in determining
the enforceability of settlement agreements," it "has stated that New York and federal law on enforcing settlements
are 'materially indistinguishable.'" V*elazquez v. Yoh Servs., LLC,* 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017).

[8] Plaintiffs fail to cite any cases where setting aside an agreement that is the product of bad faith, collusion and unclean
hands must be plead with particularity under Rule 9. Plaintiffs' Motion at p. 10. Specifically, plaintiffs reliance on
*Robinson v. Nat'l R.R. Passenger Corp.*, 1995 WL 444322, at *8 (S.D.N.Y. July 26, 1995) and *Harborview Value
Masterfund, L.P. v. Freeline Sports, Inc.*, 2012 WL 612358, at *12 (S.D.N.Y. Feb. 23, 2012) is misplaced because
involve express allegations of fraud or claims sounding in fraud that are distinct from those alleged by the DAF Parties.

any case authority supporting their arguments.[9] On the other hand, New York Courts have found sufficient allegations of collusion include: (1) intentional misrepresentations, (2) secret negotiations, and (3) inducing a breach of duty. *See Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (holding that "the allegation of collusion coupled with the allegation of wrongful interference or inducement to breach, leads to the conclusion of tortious interference by the third-party.").

Here, the Counterclaim contains the following detailed factual allegations:

- The Agreements were negotiated in secret. [Dkt. 155 ¶¶ 26, 32-33, 90]. Secrecy is a characteristic of collusion. *Alevizopoulos* at fn. 6.

- The Agreements contain terms that represent commercially unacceptable transactions unrelated to any pending litigation. [Dkt. 155 at ¶¶ 26-40, 87, 90]

- The Agreements contain terms that are alien to a traditional settlement and release agreement and, in this case, induced a breach of HCLOF's duty of good faith. [Dkt. 155 at ¶¶ 28, 35, 48, 88-91]

- The 2021 Agreement directly harmed the DAF Parties because it targets CLOH in a manner substantially different from other HCLOF shareholders, which is unrelated to any legitimate business purpose of HCLOF;[10] [Dkt. 155 at ¶¶ 5, 26-28, 32, 41-49]

- The 2021 and 2023 Agreements contain terms that target the DAF Parties that are commercially unacceptable under Guernsey law. [Dkt. 155 at ¶¶ 26-40, 87, 90]. The application of Guernsey Law is further explained in the Declaration of Jeremy Le Tissier [Le Tissier Dec. at 17-18, 49].

Clearly, the Counterclaim also alleges a tortious interference with a contract to which CLOH was a party. [*See* Count IV: Tortious Interference with Contract, Dkt. 155 at ¶¶ 84-93] This interference arises from the specific terms in the Agreements that target the DAF Parties for which

---

[9] Plaintiffs' reliance on *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 536 (S.D.N.Y. 2008) and *In re Gaylord Container Corp. S'holders Litig.*, 753 A.2d 462, 465 n.3 (Del. Ch. 2000) are misplaced because they are relying on Delaware law and do not involve allegations of collusion.
[10] Dkt. 155 at ¶¶ 5, 26-28, 32, 41-49.

no justification exists.[11] To allow the Agreements to remain in force is to enable the perpetuation of a tort whose effects will endure in perpetuity. This is against New York public policy. *See Anabas Exp. Ltd. v. Alper Indus. Inc.*, 603 F. Supp. 1275, 1276 (S.D.N.Y. 1985). Thus, viewing the Counterclaim in the light most favorable to the DAF Parties, a tort has been alleged which, if proven at trial, will support a declaration that the 2021 and 2023 Agreements are unenforceable based upon collusion and violations of New York public policy.

Plaintiffs also argue that the DAF Parties cannot challenge the two Agreements because they are the ordinary result of the resolution of litigation [Dkt. 183 at p. 11][12] and product of "HCLOF's protection of its own self-interest" [Dkt. 183 at p. 11].[13] But these are, once again,

---

[11] The Plaintiffs are not entitled to assert economic justification under the facts and circumstances of this case. *See Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 484 (E.D.N.Y. 2012) (economic interest defense "is inapplicable because it only applies when the alleged interfering parties have acted to protect their interest in the breaching party's business—here, [HCLOF's]—not their own."); *see also Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.*, 2016 WL 2622013, at *12 (W.D.N.Y. May 5, 2016) (denying motion to dismiss where defendant not alleged to have acted to protect its interest in the breaching party), *Rotter v. Leahy*, 93 F. Supp. 2d 487, 496 (S.D.N.Y. 2000) (finding disputed issue of fact as to whether a settlement agreement was made in good faith), *Kennedy v. Basil*, 2019 WL 2348123, at *4 (S.D.N.Y. June 3, 2019) (fact issue when addressing issue of whether settlement was made in good faith).

[12] The Plaintiffs' Motion relies on *Wilson v. Dantas*, 746 F.3d 530 (2d Cir. 2014) in arguing HCLOF was justified because it is entitled to pursue its own "economic self-interest" [Dkt. 183, at p. 21]. But this is not a complete proposition of law. HCLOF may not pursue its economic self-interest in a manner that is either dishonest or is commercially unacceptable to ordinary and honest people. Furthermore, Counter-Defendants' reliance on *Wilson v. Dantas*, 746 F.3d 530 (2d Cir. 2014), which relates to aiding and abetting breach of fiduciary claims, is misplaced. In *Wilson*, the Court held the plaintiff could not establish a claim for aiding and abetting a breach of fiduciary duty based upon "*a confidential settlement agreement in the normal course of litigation." Id.* at 536 (emphasis added). Thus, *Wilson* involved different facts and a different procedural posture. Here, it defies credibility to suggest that the agreements at issue were the product of "the normal course of litigation." Indeed, the terms of these two agreements expressly target non-signatories, the Counter-Plaintiffs. The disparate targeting of the Counter-Plaintiffs in the 2021 Agreement was unrelated to the underlying issues in any litigation in which HCLOF was involved at the time. Further, the 2023 Agreement does not recite any pending litigation between Counter-Defendants and HCLOF when the 2023 Agreement was negotiated and executed, so it can hardly be described as the product of 'the normal course of litigation." Indeed, common sense strongly suggests that it is abnormal to exchange signature pages to a "*routine*" settlement agreement only after it became clear that CLOH would be entitled to pursue the Guernsey proceedings.

[13] The Plaintiffs' cited authority regarding HCLOF's "economic self-interest" is inopposite and not relevant. *See* Dkt. 183 at p. 11: *Matter of Teltronics Servs., Inc.*, 29 B.R. 139, 166 (Bankr. E.D.N.Y. 1983) (not a 12(b)(6) proceeding and defenses in creditor proceedings), *Jones Apparel Grp., Inc. v. Piccone*, 1994 WL 260767, at *4 (S.D.N.Y. June 8, 1994) (unclean hands defense rejected because no allegation of bad faith—irrelevant), *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006) (improperly quoted—court did not determine there was not bad faith); *Diaz v. Deutsche Bank*, 2015 WL 12777391, at *4 (S.D. Tex. Apr. 14, 2015) (similar), *aff'd*, 667 F. App'x 468 (5th Cir.

superficial arguments which have no true support under the facts. To be clear, the Counterclaim alleges that these Agreements are anything but ordinary, but contain terms that were not necessary to resolve any pending litigation and were not related to HCLOF's legitimate business interests. [Dkt. 155 ¶¶ 4, 7(iii), 25, 26, 34-38]

- Although the 2021 Agreement references litigation, none of the referenced lawsuits involved the DAF Parties. None of the referenced lawsuits can justify the aberrant targeting of the DAF Parties under the terms of the 2021 Agreement. To be clear, the DAF Parties were not threatening any suit at the time the 2021 Agreement was executed.

- There was no pending litigation that could justify the extraordinary terms in the 2023 Agreement allowing the continued indefinite withholding of reserves or the transfer restrictions against the DAF Parties in perpetuity. No litigation was pending or threatened that would justifiably motivate HCLOF's willingness to cooperate with the Plaintiffs to pursue attorney's fees against the DAF Parties.

- The 2023 Agreement imposes no obligation on the Plaintiffs to distribute any proceeds to HCLOF *even upon resolution of this current case*. Rather, it only commits the parties to discuss the *potential* for a further distribution of approximately $25 million which is still retained by the Plaintiffs and being wasted with each passing day. More specifically, the Agreement provides at Section 4(b) that *"Upon the aforementioned final disposition of the DAF Litigation, the parties hereto agree to meet and confer in good faith regarding the potential distribution of additional funds from the Trustee 4/5 Expense Reserve, the Manager 4/5 Expense Reserve and the Trustee 4/5 Liability Reserve and the execution of further releases of claims."* A similar provision in Section 4(c) allows the Plaintiffs to retain funds related to ACIS 6 without any commitment for actual payment. [Dkt. 155-4 at p. 6] Thus, even if any prospect of any litigation is completely eradicated, the Plaintiffs are under no obligation to distribute any money on any date certain. This is entirely inconsistent with the current business purpose of HCLOF, which is to monetize redeemed assets.[14] Under any analysis, CLOH has advanced a plausible claim that HCLOF breached its duty of good faith and that the Plaintiffs induced this breach by inducing the 2023 Agreement.

- HCLOF's Investment Objective require HCLOF to monetize the assets with the expectation that the Portfolio Manager of the company seeks monetization of the Company's investments; this is in direct contradiction with the 2023 Agreement.[15]

---

2016) (does not discuss bad faith or unclean hands—court determined that mortgagor/mortgagee relationship did not give rise to implied duty of good faith and fair dealing).

[14] *See* Members Agreement [Dkt. 155-2 at pp. 4, 7], Le Tissier Dec. at ¶58.

[15] *See* Members Agreement [Dkt. 155-2 at pp. 4, 7], Le Tissier Dec. at ¶58.

Furthermore, even if the Plaintiffs allege there was a "real threat" of litigation against them when the 2021 or 2023 Agreements were negotiated or that HCLOF had some purported justification, which the DAF Parties dispute, the Plaintiffs' claims should be tested for its credibility by a fact finder considering all of the evidence. That is the purpose of discovery and trial. Here, in this current 12(b)(6) proceeding, the Plaintiffs' protestations concerning its subjective beliefs are irrelevant because their "beliefs" are not proven facts.. Rather, the Court must view the Counterclaim in the light most favorable to the DAF Parties. The Plaintiffs are not entitled to an *ipsi dixit* indulgence of their "evidence" to justify and explain their tortious behaviors, particularly when that evidence is disputed.

### C. The Counterclaim Asserts a Plausible Claim for Tortious Interference

Plaintiffs' Motion argues that there can be no interference because there is no breach of contract, and they then devote almost seven pages of their Motion attempting to attack the credibility and plausibility of CLOH's claims against HCLOF for breach of the duty of good faith. [Dkt. 183; pp. 14-20] In doing so, however, the Motion uses unsupported, disputed factual allegations which must be disregarded because this is not a summary judgment motion. The Plaintiffs' so-called "facts" are not proven and should be disregarded for purposes of the Rule 12(b)(6) inquiry. *See McDowell Research Corp. v. Tactical Support Equip., Inc.*, No. 08-CV-6499, 2009 WL 2901594, at *4 (W.D.N.Y. Sept. 4, 2009), *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). On the other hand, when the allegations in the Counterclaim are properly viewed in the light most favorable to the DAF Parties, which is the appropriate standard of review,

it is clear that a plausible claim for breach is asserted. This conclusion is also reinforced by the Declaration of Jeremy Le Tissier.[16]

Section 20.5 of the Members Agreement defines the relationship between HCLOF and CLOH, and provides that HCLOF must exercise good faith towards the other parties, which includes CLOH. There is no doubt that HCLOF is a party to the Members Agreement and is in privity with CLOH.

As reflected in the Declaration of Mr. Le Tissier, Section 20.5 requires that HCLOF not act dishonestly or in bad faith. Under Guernsey Law, "*a duty of good faith may be breached by conduct taken in bad faith. This could include conduct which would be regarded as commercially unacceptable to reasonable and honest people, albeit that they would not necessarily regard it as dishonest.*" *See* Le Tissier Dec. at ¶ 12b (Citing *Phototonics* at 241). Bad faith is shown if the conduct at issue is "commercially unacceptable to reasonable and honest people."[17] Here, the Counterclaim sets forth plausible factual allegations that the 2021 and 2023 Agreements are the product of a breach of the Section 20.5 good faith duty (as well as bad faith) because the Agreements:

- were negotiated in secrecy [Dkt. 155 at ¶¶ 26-40];[18]

- result in disparate treatment favoring one shareholder over another [Dkt. 155 at ¶¶ 5, 25-27, 41];

- involve commitments that would be commercially unacceptable to ordinary and reasonable people [Dkt. 155 at ¶¶ 26-40, 87, 90];

- were undertaken in a dishonest manner as a result of HCLOF's specific misrepresentations to CLOH concerning its intentions to recover the wrongfully

---

[16] Le Tissier Dec. at ¶¶17-18 ("As such, I consider that the claim pleaded at Count III of the First Amended Counterclaim is a plausible claim on the facts and matters set out within the First Amended Counterclaim.").
[17] *See* Le Tissier Dec. at ¶ 18.
[18] *See* Le Tissier Dec. at ¶¶ 17, fn 6 ("[T]he fact that they were negotiated secretly from CLOH in circumstances where they are also said to have a material adverse affect on CLOH's interests is, in my view, indicative that such conduct would be found at trial to be conduct which reasonable and honest people would consider to be commercially unacceptable, where there was an express obligation of good faith between the parties.")

withheld reserves [*see* Dkt. 155 at ¶¶ 41-49]; in fact, under Sections 4(b) and 4(c) of the 2023 Agreement, the Plaintiffs have no clear and definite obligation to return any reserves even after the current litigation is resolved, but it does allow the Plaintiffs continued wasting of these reserves, and funding litigation that should have never been brought in the first instance;

- serves no useful beneficial business purpose consistent with the purposes of the Members Agreement and commits HCLOF to engage in behaviors in disregard of the rights of its 49% shareholder [Dkt. 155 at ¶¶ 37];

- contradicts the stated business purposes of the Members Agreement because it allows the Plaintiffs to interfere, if not permanently disrupt the monetization of assets at this stage of HCLOF's life—which is in wind-down mode. [Dkt. 155 at ¶¶ 6]

- requires HCLOF to cooperate with plaintiffs to seek the recovery of attorneys' fees against their 49% shareholder which is commercially unacceptable to ordinary and reasonable people [Dkt. 155 at ¶¶ 38, 52]; and,

- includes one-sided releases segregating the DAF Parties from the scope of the releases, which is commercially unacceptable to ordinary and reasonable people [Dkt. 155 at ¶¶ 5, 25, 28, 61].

Under Guernsey Law, HCLOF's actions, including its August 31, 2021 letter where it falsely represented it was "taking urgent and proportionate steps to secure unrestricted control" over the wrongfully withheld funds,[19] yet secretly entered into the 2021 and 2023 Agreements, which contradict those representations—constitutes a breach of the contractual duty of good faith under Guernsey Law. [*See* Le Tissier Dec. at ¶¶ 17, 58].

Plaintiffs' arguments invoking paragraph 5.6 of the McGuffin 2nd Declaration, relating to a 'bad faith demand,' is also misplaced. The reference to 'bad faith demand' in the *Times Travel* decision, as argued in the Motion, is of little significance. [*See* Le Tissier Dec. at ¶¶ 29-30]. The issues addressed in *Times Travel* are inapposite because they do not address whether a party has acted in bad faith in breach of an express contractual duty of good faith. *Id*. "[W]hen considering the interpretation and meaning of an express good faith clause in context, cases from other areas

---

[19] Dkt. 155 at ¶ 42.

of law or commerce, which turn upon their own particular facts, may be of limited value and must be treated with considerable caution." *In the Matter of Compound Photonics Group Limited* [2022] EWCA Civ 1371. Thus, the standards in *Time Travel* are irrelevant and the proper reference for consideration are the standards explicit in *Phototonics*. [*See* Le Tissier Dec. at 9(e)(iv) 12(b), 15, 29-33].

The DAF Parties' claims that HCLOF's participation in the 2021 and 2023 Agreements was "commercially unacceptable" is clearly pled. [Dkt. 155 at ¶¶ 5, 25, 28, 61, 80, 81]. Whether a party acted in a commercially unacceptable fashion is fact based. As stated in Mr. Le Tissier's Declaration, these factual allegations, which are set forth in Paragraph 81 of the Counterclaim, plausibly state a claim for the breach of the good faith duty. [*See* Le Tissier Dec. at ¶ 17-18, 59(g)].

The Plaintiffs' also attempt to reference selected, inapplicable, court orders[20] without attaching the underlying documents that may have led to the decisions at issue. They do so in an effort to bolster their argument that they are entitled to "withhold reserves." But, such orders are irrelevant to this inquiry. The DAF Parties have alleged that there is no contractual basis that can justify the withholding of these reserves. The Plaintiffs make no attempt to establish a nexus between those orders and the 12(b)(6) issues in the case. This is not a summary judgment proceeding. No experts have been designated. These orders, standing alone, shed no light on the plausibility of the DAF Parties' claims and allegations. The DAF Parties claims must be evaluated in the light most favorable to the DAF Parties without taking into consideration extraneous material.

### D.  The DAF Parties Have Standing to Sue Plaintiffs for Tortious Interference

---

[20] *See* Dkt. 183 at pp. 18-19. Plaintiffs attempt to reference Dkts. 108-7-11, which are not attached to or relied upon by the DAF Parties in bringing their Counterclaim, so they cannot be considered and must be stricken from the record. Furthermore, these cases are irrelevant because they have no relevance to the specific facts or the specific indentures at issue.

In another futile effort to escape accountability, the Plaintiffs mischaracterize the substance of the tortious interference and unjust enrichment claims asserted against them, and they do so to fabricate a non-existent standing defense.  The Motion makes the misleading argument that the Counterclaims are "based on breach of duties to HCLOF that purportedly directly injured HCLOF." (Motion at p. 6). This is untrue. The Counterclaim does not seek relief to which only HCLOF is entitled. Rather, the Counterclaim seeks damages that were proximately caused by the Plaintiffs' conduct and HCLOF's ***breach of HCLOF's obligations to CLOH***. CLOH has direct standing to sue HCLOF for this breach of contractual duty. CLOH is in privity with HCLOF. HCLOF breached a duty. HCLOF's breach caused damages. The other Counter-Defendants encouraged this breach. [*See* Le Tissier Dec. at ¶¶22, 24]. This is not a derivative claim, but it is instead a direct claim owned by CLOH. [*See* Le Tissier Dec. at ¶¶10-11, 22, 24-25].

One of Plaintiffs' arguments involves the notion of "reflective loss." [Dkt. 183 at p. 9]. But this argument goes nowhere because CLOH is not seeking to recover damages suffered by HCLOF. Rather, CLOH had a reasonable business expectation that it would receive distributions once the CLOs were redeemed. Notwithstanding HCLOF's admissions that the withholding of these reserves was improper, HCLOF entered into a secret agreement inconsistent with these admissions, allowing the Plaintiffs to retain millions of dollars with impunity with no clear obligation to ever undertake a distribution in the future. Because HCLOF has been in a "wind-down" mode for several years, CLOH had a clear and reasonable expectation of its contractual rights to receive distributions in the ordinary course of business. CLOH's business expectation is also echoed in the Offering Memorandum, which is incorporated into the Members Agreement.[21] The 2023 Agreement has disrupted this expectation and potentially destroyed the right to receive

---

[21] *See* Members Agreement [Dkt. 155-2 at pp. 4, 7].

these distributions indefinitely. This is not "reflective loss." Rather, this is a damage produced by HCLOF's breach of its duty of good faith.

Similarly, Plaintiffs argue that CLOH has no standing to protest a withholding of funds under the terms of the Indentures because CLOH is not a party to the Indentures. [Dkt. 183 at p.24] But CLOH is not challenging the Indentures. Rather, the terms of the Indentures constitute evidence that HCLOF breached its obligations of good faith. The Counterclaim alleges that HCLOF knew and has admitted that neither the Indentures nor the Portfolio Management Agreements provided any contractual justification for the withholding of reserves. [Dkt. 155 ¶ 37, 73]

### E. Tortious Interference Claim is Properly and Plausibly Plead

The claims for tortious interference will be governed by New York law, which generally requires (i) the existence of a valid contract with a third party, (ii) defendant's knowledge of that contract, (iii) intentional and unjustified act causing a breach of that contract, and (iv) damages caused by the breach. *Rose v. Different Twist Pretzel, Inc.*, 999 N.Y.S.2d 438, 440 (N.Y. App. Div. 2014). The third element is satisfied when a defendant employed "dishonest, unfair, or improper means." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). The Counterclaim allegations plausibly allege all of these elements.

Here, satisfying the first element, the Counterclaims clearly alleges the Members Agreement was entered into with HCLOF. [*See, e.g.*, Dkt. 155 ¶¶ 5, 22, and 23]. No party has disputed the validity of these allegations or of the Members Agreement. Regarding the second element, the Counterclaim plausibly alleges that all Plaintiffs were aware of the Members Agreement and all of its obligations, as supported by allegations the Members Agreement was an exhibit in legal proceedings (dating back to 2018), to which Plaintiffs were parties/present

interested parties, and it being referred to in exhibits attached to Plaintiffs' Original and Amended Complaints. [Dkt. 155, ¶ 24] At the very least, these allegations show Plaintiffs had actual knowledge of the Members Agreement. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 347-349 (S.D.N.Y. 2020) (email from counsel implied review of template agreement, supporting reasonable inference the template included obligation third party allegedly breached in actual contract).

The third element is whether there was an unjustified act of interference. This is also clearly alleged. To be clear, the Counterclaim alleges that the withholding of the reserves is without justification or privilege. [Dkt. 155 ¶¶ 28, 35, 73]. The Counterclaim also alleges that the extraordinary terms set forth in both the 2021 Agreement and 2023 Agreement were not justified by the threat of any pending or threatened litigation. [Dkt. 155 ¶¶ 7(iii), 26, 34-38]. The Counterclaim also alleges that the transfer restrictions were not justified under the facts. [Dkt. 155 ¶¶ 28, 39, 62].

The fourth element is whether damages have been suffered. Here, these damages are clearly alleged to include attorneys' fees that would not have been incurred but for the wrongful conduct of another. [Dkt. 155 ¶¶ 35, 38]. *See irth Sols., LLC v. Diversified Underground, Inc.*, 2019 WL 5690658, at *2 (W.D.N.Y. Nov. 4, 2019) (under New York law, legal fees incurred in a separate action are recoverable where caused by a defendant's wrongful conduct). These damages also include CLOH's reasonably expected share of distributable proceeds from the redemption of the CLOs. [Dkt. 155 ¶¶ 28, 63].[22]

---

[22] The DAF Parties are entitled to a declaration that the 2021 and 2023 Agreements are unenforceable. The DAF Parties also are entitled to their damages. Pleading in the alternative only, the DAF Parties are entitled to disgorge or otherwise receive restitution of all monies improperly withheld by the Plaintiffs and/or wasted by Plaintiffs. The plausible facts supporting the tortious interference and breach of contract claim are also sufficient to support a plausible claim of unjust enrichment.

The Counterclaim provides specificity that Plaintiffs' tortious interference with HCLOF's contractual duties was both intentional and unjustified. Plaintiffs' intentional misconduct is more than adequately pled, including Plaintiffs' motivations [Dkt. 155 at ¶ 54-60]. The 2021 and 2023 Agreements themselves show Plaintiffs' intent, including, but not limited to:

- the 2021 and 2023 Agreements secret negotiations;

- subjecting DAF to one-sided releases;

- compromising and interfering with CLOH's due process rights in the Guernsey Proceedings;

- withholding reserves with no colorable basis to do so, and using those same reserves to initiate litigation against the DAF Parties;

It is implausible that the Plaintiffs, sophisticated parties represented by sophisticated counsel, with possession and knowledge of the Member Agreement, misunderstood the rights and obligations of the Member Agreement when the 2021 and 2023 Agreement specifically target and disproportionately harm the legal and financial rights of a 49% shareholder. *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 349 (S.D.N.Y. 2020) ("[U]nder New York law, a plaintiff must have some knowledge of the terms and conditions of the allegedly-interfered-with contract but perfect or precise knowledge is not required."), *see also*, *In re Zohar III, Corp.*, 631 B.R. 133, 166–67 (Bankr. D. Del. 2021) (finding malice where defendants "pursued the challenged activities to strip control rights and other assets away from the Funds to harm them and their stakeholders"); *Bausch & Lomb*, 2016 WL 2622013, at \*12 (W.D.N.Y. May 5, 2016). In any event, the Counterclaim sets forth sufficient factual allegations that Plaintiffs had actual notice of the Members Agreement.[23]

## F.  Plaintiffs Fail to Meet Their Burden under Rule 12(c)

---

[23] Dkt. 155 at ¶24.

Motions for judgment on the pleadings are governed by many of the same standards applicable to Rule 12(b)(6) motions. *See Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). The Court must accept the allegations contained in the non-movant's pleading as true and draw all reasonable inferences in favor of the non-moving party. *Id.* "[C]onsideration is limited to the factual allegations in plaintiff['s] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Id.* (*quoting Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is only warranted where, unlike here, the disputed factual issues raised by the answer are either immaterial or too implausible to ever be supported by discovery. *See Nautical Assist, Inc. v. Patchogue Shores Marina, Inc.*, 2020 WL 2836788, at *3 (E.D.N.Y. May 28, 2020) (citing 5C Wright & Miller, Fed. Practice & Procedure § 1368 (3d ed. 2004)). More specifically, granting a motion for judgment on the pleadings requires a showing that: (a) there exists no issue of material fact, (b) the answer fails to meet the minimal requirements of notice pleadings pursuant to Fed. R. Civ. P. 8(b), or (c) the disputed factual issues raised in the answer are immaterial or too implausible to ever be supported by discovery. *See id.* (denying judgment on the pleadings because issues of fact existed regarding enforceability of release).

Additionally, "when the plaintiff, as opposed to the defendant, moves for judgment on the pleadings," courts "ask 'whether the plaintiff's [complaint], stripped of those allegations which are denied by the defendant's answer, would leave the [complaint] stating a cause of action against the defendant.'" *United Food & Com. Workers, Local 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th

Cir. 2022) (citation omitted); *see also Bailey v. Pataki*, 2010 WL 234995, at *2 (S.D.N.Y. Jan. 19, 2010) (denying 12(c) motion based on the existence of affirmative defenses). "[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Wright & Miller, Fed. Practice & Procedure § 1367-8 (3d ed. 2021) (emphasis added).

Rule 12(c) motions are typically filed by defendants, not plaintiffs, for good reason. When a plaintiff is the movant, as in this case, "the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." (emphasis added) See 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1368 n.20 (3d ed. 2021) (noting rarity of a plaintiff's judgment on the pleadings); *Gen. Conference Corp. of the Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) ("A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.").

Here, the DAF Parties' Counterclaim, affirmative defenses and denials, as set forth in their Second Amended Answer and First Amended Counterclaim [Dkt. 155], dispute that Plaintiffs are entitled to relief and raise issues of material fact.[24] These fact issues bar the Rule 12(c) Motion because a 12(c) motion "should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) ("Until both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party" –

---

[24] *See* Denials of Plaintiffs' Amended Complaint [Dkt. 155] at ¶¶ 2,8,12-14, 21, 28,29, 31, 32, 33, 38, 41, 43, 44, 45, 46, 47, 49, 50, 51, 52, 54, 55, 57, 58, 60, 61, 62, 63, 64, 66, 71, 73, 74.

seeking judgment on the pleadings prior to close of discovery); *accord Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

This is even more so when defendants, such as the DAF Parties, assert fact-based affirmative defenses requiring discovery and are asserting a fact-based Counterclaim, which is incorporated into the Answer. [Dkt.  155, Page 16] Once again, the DAF Parties allege many defenses that are fact-based precluding judgment, including but not limited to:

- In Affirmative Defense no. 8, the DAF Parties allege collusion as a basis for the lack of enforceability of the 2021 Settlement Agreement. [Dkt.155, Page 15]

- The DAF Parties deny they are controlled by James Dondero rendering selective portions of the 2021 Settlement Agreement unenforceable as to the DAF Parties, particularly Section 2 involving the representations and warranties of Highland CLO Funding Limited (HCLOF). [Dkt.  155, Page 30, ¶29]

- In Affirmative Defense no. 7, and in the Counterclaim, the DAF Parties allege a failure of consideration rendering the 2021 Settlement Agreement unenforceable. [Dkt. 155, Pages 15 and 41]

- In Affirmative Defense no. 10, the DAF Parties allege that the enforceability of the 2021 Settlement Agreement is barred under the doctrine of Unjust Enrichment. [Dkt. 155, Page 15]

- The Counterclaim alleges that the 2021 and 2023 Agreements are the product of collusion and are not enforceable. [Dkt. 155 ¶ 7]

- The Counterclaim alleges that Plaintiffs secretly negotiated the 2023 Agreement with HCLOF while HCLOF claimed it was protecting the DAF Parties' interests. [Dkt 155, ¶7(vii)]

These defenses and Counterclaim allegations, which are each fact-based, preclude judgment on the pleadings as a matter of course. *Lively*, 6 F.4th at 302 ("when a question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings. *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021)."). These defenses

and claims bar Plaintiffs' Rule 12(c) Motion to the extent it seeks declaratory relief relating to the 2021 Agreement. *See, e.g.*, *Gabilly v. City of New York*, No. 19-CV-11884, 2021 U.S. Dist. LEXIS 154925, at *6 (S.D.N.Y. Aug. 17, 2021) (denying a 12(c) motion, in part, because the nonmovant raised affirmative defenses that the movant did not address).

Plaintiffs misinterpret the *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293 (2d Cir. 2021) opinion because they rely on their claim that the DAF Parties lack derivative or direct standing to justify dismissal on purely legal grounds. As stated, however, the DAF Parties are not bringing a derivative claim for mismanagement of the CLOs as alleged in the 2019 and 2020 lawsuits. Rather, the Amended Counterclaim [Dkt. 155] asserts a direct claim for tortious interference with contract under New York law based on Plaintiff's interference with the Members Agreement between HCLOF and CLOH.

## OBJECTION

The DAF Parties object to the extraneous materials and declarations cited in Plaintiffs' Motion, including but not limited to the Second Declaration of Todd William McGuffin [Dkt. 182], to the extent the declaration seeks to argue against the merits of the DAF Parties' Counterclaims and allegations, particularly, ¶¶ 3.3, 3.4 -3.7, 3.9 – 3.11, 3.15 - 3.16, 4.6 - 4.8, 4.10 – 411, 5.2, 5.14 (in their entirety – improper opinions purportedly applicable to factual allegations and matters), and ¶ 3.14 (first sentence), 4.2 – 4.5, 4.9 (inapplicable pleading standard). These portions of the McGuffin declaration are not appropriately considered in the context of a Rule 12(b)(6) motion to dismiss. *See Friedl v. City of New York*, 210 F. 3rd 79, 83 (2d. Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must *either* exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties

the opportunity to present supporting material.'" (emphasis added) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F. 2d 24, 25 (2d. Cir. 1988)); *see generally* 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1366 (2004)).

## **PRAYER**

WHEREFORE, Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd. respectfully request that the Court deny Plaintiffs' U.S. Bank, National Association, Joshua N. Terry, and Acis Capital Management, L.P.'s Motion to Dismiss Counterclaims and for Judgment on the Pleadings on Plaintiffs' Claims and grant it further relief to which it shows it is justly entitled.

Respectfully submitted,

By: */s/ Sawnie A. McEntire*
Sawnie A. McEntire
*Admitted Pro Hac Vice*
Texas Bar No.: 13590100
Fed ID #3476
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Fax: (214) 237-4340
E-mail: smcentire@pmmlaw.com

Roger L. McCleary
*Admitted Pro Hac Vice*
Texas Bar No.: 133937000
Fed. ID #205
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah

E-mail: jtewiah@glennagre.com
GLEN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212.358.5600

**Counsel for Defendants/Counter-
Plaintiffs Charitable DAF Fund, LP a/k/a
The Charitable Donor Advised Fund,
L.P., and CLO HoldCo, Ltd.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, a true and correct copy of the foregoing was

electronically filed and served using the Court's CM/ECF system to all parties.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire