UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>                    Defendants. | Case No. 1:21-cv-11059 (GHW)<br><br>Oral Argument Requested |

## MEMORANDUM OF LAW IN OPPOSITION TO THE DAF PARTIES' MOTION TO COMPEL DISCOVERY FROM HCLOF

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park
New York, NY 10036

*Attorneys for Highland CLO Funding, Ltd.*

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Daou v. BLC Bank, S.A.L.*,
   42 F.4th 120 (2d Cir. 2022) ...................................................................................7, 8

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
   2017 WL 476720 (S.D.N.Y. Feb. 2, 2017)............................................................7

*DirecTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010).....................................................................7

*Fashion Television LLC v. APT Satellite Co. Ltd.*,
   2018 WL 4300526 (S.D.N.Y. Sept. 10, 2018)........................................................7

*Holmes v. Apple Inc.*,
   797 F. App'x 557 (2d Cir. 2019) ...........................................................................5

*Lear v. Royal Caribbean Cruises Ltd.*,
   2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021)............................................................7

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
   667 F. Supp. 2d 369 (S.D.N.Y. 2009)......................................................................7

*Reed Int'l, Inc. v. Afghanistan Int'l Bank*,
   2023 WL 2138600 (S.D.N.Y. Feb. 21, 2023).....................................................5, 6

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).........................6

Highland CLO Funding, Ltd. ("HCLOF") respectfully submits this memorandum of law in opposition to the motion (the "Motion") filed by CLOH HoldCo, Ltd. ("CLOH") and the Charitable Donor Advised Fund, L.P. ("DAF" and collectively with CLOH, the "CLOH Parties") to lift this Court's order staying all discovery against HCLOF, ECF No. 172 (the "Stay Order") to obtain "basic jurisdictional discovery" from HCLOF.  Mot. at 1.

## PRELIMINARY STATEMENT

By this case, the CLOH Parties are trying to drag a Guernsey company into New York; by the Motion, they seek authorization to embark on a fishing expedition to see if there is any actual basis to do so.  This is exactly backwards.  The burden is on the CLOH Parties to identify *some* basis for personal jurisdiction over a foreign entity.  They are not entitled to serve discovery on the foreign entity just to see if there was a basis for personal jurisdiction in the first place.  The Court issued the Stay Order precisely because the CLOH Parties' basis for personal jurisdiction is thin.  The Motion provides no reason to lift the Stay Order, and there is none.

In the Stay Order, the Court found good cause to protect HCLOF from the substantial burden of the CLOH Parties' voluminous discovery requests until HCLOF's motion to dismiss is resolved.  The Court agreed to revisit the Stay Order only if it was presented with a new argument.  But the Motion comes nowhere close to that.

Rather, the CLOH Parties try to relitigate the Stay Order by repeating the same tenuous jurisdictional grounds that the Court already rejected in the Stay Order and by misstating facts. For example, the CLOH Parties falsely claim that they could not get discovery through other channels.  The CLOH Parties recently filed *dozens* of emails they received in discovery from Plaintiffs concerning Plaintiffs' settlement negotiations with HCLOF.  The fact that the discovery was not helpful to the CLOH Parties is not a new argument, and it certainly does not justify lifting the Stay Order.  The Motion should be denied.

## RELEVANT FACTS

Plaintiffs are the trustee and portfolio manager of three CLOs.  ECF No. 155 ¶¶ 2, 10. They filed this case to put an end to the CLOH Parties' litigation threats that are preventing the distribution of millions of dollars reserved in the CLOs.  ECF No. 15 ¶ 1.  After failing to obtain dismissal, the CLOH Parties counterclaimed against Plaintiffs and added counterclaims against HCLOF, among others.  ECF No. 155.

HCLOF is a Guernsey company.  *Id.* ¶ 13.  It is an investor in the CLOs.  *Id.*  CLOH is one of HCLOF's shareholders.  *Id.* ¶ 20.  It holds about 49% of HCLOF's shares.  *Id.*  HCLOF has no relationship to the DAF.  *Id.*

In 2021 and 2023, HCLOF entered into two settlement agreements with Plaintiffs.  *Id.* ¶ 25(viii).  The 2021 agreement paved the way for HCLOF to direct the liquidation of the CLOs. *Id.* ¶ 35.  Although Plaintiffs began liquidating the CLOs in 2021, that process was thwarted by litigation filed against Plaintiffs by NexPoint Diversified Real Estate Trust, as well as by the CLOH Parties' litigation threats.  ECF No. 15 ¶ 51.  Due to the threats, Plaintiffs reserved over $40 million of the CLOs' funds to defend themselves.  ECF No. 155 ¶ 35.  HCLOF disputed Plaintiffs' right to take the reserves, but ultimately agreed to forbear on that dispute in exchange for Plaintiffs' release of over $16 million of the reserves: that was the 2023 agreement.  ECF No. 155-4 ¶¶ 1, 4.  To be sure, the CLOH Parties are not parties to either agreement.  ECF Nos. 155-3, at 1 (listing parties to agreement); ECF No. 155-4, at 12-13 (same).

Among other things, Plaintiffs contend that the CLOH Parties cannot sue Plaintiffs derivatively, on behalf of HCLOF, due to the 2021 settlement agreement.  ECF No. 15 ¶¶ 67-74. In their original counterclaims against HCLOF, the CLOH Parties sought to invalidate HCLOF's 2021 settlement agreement as a product of collusion.  ECF No. 77 ¶¶ 18-21.  In their amended counterclaims, the CLOH Parties also seek to invalidate HCLOF's 2023 agreement. ECF No.

155 ¶ 71-77.  In addition, the CLOH Parties assert that HCLOF breached HCLOF's shareholder agreement (called the "Members Agreement"), which is governed by Guernsey law and supposed to be enforced in Guernsey (albeit not exclusively).  *Id.* ¶¶ 78-83; ECF No. 155-2 ¶ 22.

In parallel to this case, the CLOH Parties are suing HCLOF in Guernsey for entering into the settlement agreements with Plaintiffs.  ECF No. 155 ¶ 1.  The CLOH Parties filed that case in March 2023.  ECF No. 155-1.  It is set for trial in October 2023.  As they concede in the Motion, the parties exchanged extensive fact affidavits during the discovery process in that proceeding.  Mot. at 5 n.8.

After adding HCLOF as a party, the CLOH Parties sought to serve voluminous third-party discovery on HCLOF in Guernsey via letters rogatory.  ECF Nos. 118, 118-1.  Through counsel, HCLOF asked the Court to refrain from ruling on the application until HCLOF formally appeared and had an opportunity to show that the letters rogatory were improper.  ECF No. 126.  After HCLOF appeared, the CLOH Parties served more voluminous discovery on HCLOF — this time in the form of party discovery.  ECF No. 194-1.  Their discovery comprised 98 document requests, 40 requests for admission, and 15 interrogatories.  *Id.*  Almost every single request sought "all" documents, and many had subparts.  *See id.*

HCLOF filed a pre-motion letter seeking leave to file a motion to dismiss and a stay of discovery in the interim.  ECF No. 167.  Among other things, HCLOF explained that it should not be dragged into this suit because it is a Guernsey entity with no business in New York, there is no personal jurisdiction over it in this Court, and the CLOH Parties do not allege otherwise.  *Id.*  In response, the CLOH Parties sought "basic jurisdictional discovery" to explore HCLOF's purported connections to New York and negotiations of the settlement agreements.  Mot. at 1.

The Court gave HCLOF leave to move to dismiss and held a conference to discuss the

discovery stay.  ECF No. 171.  After extensive argument, the Court issued the Stay Order.  ECF No. 194-2 (Aug. 3 Hearing Tr.) at 25:17-22.  The Court found that HCLOF's motion was "thoughtfully presented" and that HCLOF "made a strong showing that, if meritorious, the motion will be fully dispositive of the claims against it." *Id.* at 25:24, 26:6-7.  The Court also found that the CLOH Parties' discovery requests are "extensive and burdensome." *Id.* at 26:18.  The Court further found that there are other information channels available to the CLOH Parties, including through "the Guernsey affidavit" and through discovery "against ACIS and the other parties." *Id.* at 26:24, 27:3.

The Court also held that jurisdictional discovery was unnecessary. *Id.* at 27:16-18.  The Court based that "conclusion in part . . . on the nature of the grounds that have been asserted [by the CLOH Parties] for the assertion of personal jurisdiction over" HCLOF. *Id.* at 27:18-20.  The Court found that "at least two-thirds of them do not appear to have the basis in fact, apart from the documents, that the Court can proceed." *Id.* at 27:21-23.  Notably, the Court held that "unless they [the CLOH Parties] have nothing and this is a fishing expedition," the Court failed to see "why it is that additional jurisdictional discovery would be warranted." *Id.* at 27:24-25, 28:1-2.

The Court made a caveat for "limited jurisdictional discovery" in the event that "an argument could be presented to the Court to support a need for jurisdictional discovery during the briefing schedule that has not yet been presented to me and that I have not yet considered." *Id.* at 28:3-7, 28:11.  Following the hearing, the Court issued a minute order, staying all discovery against HCLOF pending the resolution of the motion to dismiss, including in Guernsey by "letters rogatory."  ECF No. 172.

HCLOF filed its motion to dismiss on August 15.  ECF No. 178.  Two weeks later, on

August 29, the CLOH Parties' Guernsey counsel sent their party discovery from *this case* to HCLOF's Guernsey counsel in an effort to get that discovery informally.  ECF No. 194-3. HCLOF refused, and this dispute followed.  ECF No. 194-4.

It is important to note that when the CLOH Parties filed their opposition to HCLOF's motion to dismiss, they attached 41 emails they obtained in discovery from Plaintiffs concerning negotiations of the settlement agreements between Plaintiffs and HCLOF.  ECF No. 200-12.

## ARGUMENT

The Motion fails as a matter of law.  Unable to plead any connection to New York, the CLOH Parties seek "basic jurisdictional discovery" into HCLOF's "business" or "contacts with New York."  Mot. at 1, 6-7.[1]  As the Court already recognized in the Stay Order, however, this is nothing more than a fishing expedition to determine whether there is any basis to drag HCLOF into this Court in the first instance.  That is improper under settled law in this Circuit:

> A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.  In other words, a plaintiff must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.

*Holmes v. Apple Inc.*, 797 F. App'x 557, 559 (2d Cir. 2019) (Summary Order) (cleaned up).

A recent decision by this Court, *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 2023 WL

---

[1]  To the extent that the CLOH Parties are seeking to relitigate the Stay Order, the time for a motion for reconsideration has long passed.  And to the extent they nevertheless seek to compel *all* discovery by the Motion notwithstanding the Stay Order, good cause exists for the Court to again reject that request in its entirety.  *See* ECF No. 194-2 (Aug. 3 Hearing Tr.) at 25:8-28:2 (finding that good cause factors favored granting HCLOF's request to stay discovery because: (1) HCLOF's proposed motion to dismiss was "thoughtfully presented" and "dispositive"; (2) the CLOH Parties' discovery requests are "extensive and burdensome"; and (3) there is limited risk of prejudice because the motion can be resolved in "relatively short order" and most of the arguments for personal jurisdiction "rest solely on the language of the agreement and on the effect of a docket entry and won't be affected by discovery").

2138600 (S.D.N.Y. Feb. 21, 2023) (Ramos, J.), is instructive.  There, like here, a foreign defendant moved to dismiss on personal jurisdiction grounds.  *Id.* at *1.  The plaintiff's personal jurisdiction allegations in that case were much more detailed than here, as it alleged that the foreign defendant had banking relationships and customers in New York.  *Id.* at *5.  The Court still rejected those allegations and granted the defendants' motion to dismiss on personal jurisdiction grounds.  *Id.* at *5-9.  Crucially, the Court denied jurisdictional discovery because, as here, the plaintiff had failed to allege sufficient basis for personal jurisdiction in the first place:

> Because Reed has failed to establish a prima facie case for personal jurisdiction and failed to establish a genuine issue of jurisdictional fact, its motion for jurisdictional discovery is denied.  In exercising its discretion, a court must balance the need to avoid subjecting a foreign defendant to extensive jurisdictional discovery against a plaintiff's potential difficulty proving jurisdiction without discovery.  Nevertheless, *discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts*.

*Id.* at *15 (cleaned up) (emphasis added).  The same conclusion applies with even more force here.

Specifically, the CLOH Parties' alleged personal jurisdictional grounds are even thinner than in *Reed Int'l*.  The CLOH Parties base their personal jurisdiction claims exclusively on HCLOF's settlement agreements, to which they are not a party, and the allegation that HCLOF has made a general appearance in this case.  The Court already held in the Stay Order that these grounds do not justify jurisdictional discovery, and there is no reason to depart from that ruling.  To the contrary, as the CLOH Parties failed to allege a legitimate basis for personal jurisdiction, they should not be permitted to embark on a fishing expedition against a foreign party just to determine whether any basis exists.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009) ("Discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts.") (cleaned up), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

Moreover, the specific discovery the CLOH Parties seek concerning HCLOF's settlement

agreements with Plaintiffs is entirely irrelevant, as the CLOH Parties are not parties to those agreements. It does not matter whether HCLOF came to New York to negotiate those agreements (it did not, as confirmed by the emails the CLOH Parties obtained in discovery and filed with their motion), or whether it used New York counsel to negotiate those agreements, or that HCLOF agreed with Plaintiffs to resolve any dispute over those agreements in New York.

Those considerations only matter for personal jurisdiction in disputes *between the parties to the agreement*, not non-parties like the CLOH Parties. *See Fashion Television LLC v. APT Satellite Co. Ltd*., 2018 WL 4300526, at *3 (S.D.N.Y. Sept. 10, 2018) (no personal jurisdiction over defendant where plaintiff was not party to the contract); *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp*., 2017 WL 476720, at *5 (S.D.N.Y. Feb. 2, 2017) (same); *Lear v. Royal Caribbean Cruises Ltd*., 2021 WL 1299489, at *7 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) (New York courts "generally loath" finding jurisdiction where contracts are "negotiated solely by mail, telephone, [or] fax without any New York presence by the defendant."); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (no personal jurisdiction existed because defendant's negotiations were limited to calls, faxes, and correspondence with "a center of gravity well outside" of New York); *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 377 (S.D.N.Y. 2009) (finding that remote communications to New York, single meeting in New York, and New York choice of law provision were not sufficient to subject foreign defendant to personal jurisdiction).

There is thus no fact dispute concerning the settlement agreements that actually requires jurisdictional discovery. This is yet another reason to deny the Motion. *See Daou v. BLC Bank, S.A.L.,* 42 F.4th 120, 129 (2d Cir. 2022) (affirming denial of jurisdictional discovery when "no factual dispute needs to be resolved in order to determine whether the district court had personal

jurisdiction over any of the [defendants].")

The CLOH Parties' remaining claim is that other discovery channels are unavailable. But this claim is utterly divorced from reality. For example, the CLOH Parties assert that they have been unable to obtain discovery from Plaintiffs, yet they filed 41 of the emails that *they obtained from Plaintiffs in discovery*. *See* ECF No. 200-12 (Declaration of Sawnie A. McEntire). These emails are exactly the same discovery that the CLOH Parties seek from HCLOF — they contain the communications between HCLOF and Plaintiffs concerning the negotiations of the settlement agreements. *See id.*; Mot. at 5, n. 9 (referencing emails attached to S. McEntire Declaration as email communications made in connection with the negotiations of the 2023 agreement). Unsurprisingly, these emails do not help the CLOH Parties, so they want to fish for more as a result. But, as shown above, that is no reason to lift the Stay Order; it is every reason to enforce it.

The CLOH Parties also grumble that the "85-page affidavit" they obtained from HCLOF in Guernsey "provide[d] no insight to the jurisdictional issues," and that they were unable to obtain more discovery from Guernsey to aid their case here. Motion at 5, n. 8. This makes no sense. The Stay Order explicitly barred them from seeking discovery in Guernsey to aid their case here, and in any event, discovery in the Guernsey had concluded because of the approaching trial. ECF No. 194-4 (letter from HCLOF's Guernsey counsel to CLOH's Guernsey counsel). And again, the mere fact that the CLOH Parties were not satisfied with what they obtained in discovery in Guernsey does not entitle them to fish for more here; it is every reason to bar them from burdening HCLOF further and enforce the Stay Order.

The CLOH Parties' claim that "HCLOF is strategically playing each proceeding against the other," (Mot. at 5), sounds like a sick joke. The CLOH Parties are the reason for all of this

litigation in the first place.  Their threats caused Plaintiff to take the reserves in the first instance, and were the reason HCLOF entered into the 2023 agreement.  Yet, they claim that HCLOF is not doing enough to get the reserves back and are suing HCLOF in Guernsey for that reason. Now, they are trying to drag HCLOF into a second litigation front in this Court, without any basis whatsoever, so they can undo HCLOF's effort to get part of the reserves released.  This is truly absurd.  And more recently, while the Stay Order prohibited the CLOH Parties from seeking discovery in aid of this case in Guernsey, they did it anyway and are now trying to use HCLOF's abidance by the Stay Order as a pretext to relitigate the Stay Order.

These tactics are improper to say the least, and they border on harassment.  These tactics certainly do not justify letting the CLOH Parties harass HCLOF even more through a fishing expedition to identify a basis to drag HCLOF into this Court where there is plainly no such basis. The Stay Order should remain in place.

## CONCLUSION

For all these reasons, HCLOF respectfully requests that the Court deny the Motion and keep the Stay Order in place.

Dated: October 13, 2023
New York, New York

Respectfully Submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   /s/ *Uri A. Itkin*
    Uri A. Itkin
    Shanna L. Miles
    Michael Chen

One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

*Attorneys for Highland CLO Funding, Ltd.*