**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK NATIONAL ASSOCIATION, in
its capacity as Trustee, JOSHUA N. TERRY,
and ACIS CAPITAL MANAGEMENT, L.P.,

       *Plaintiffs*,

    v.

THE CHARITABLE DONOR ADVISED
FUND, L.P., CLO HOLDCO LTD., and
NEXPOINT DIVERSIFIED REAL ESTATE
TRUST,

       *Defendants*.

Case No. 1:21-cv-11059-GHW

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## THE DAF PARTIES' MOTION TO COMPEL

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Misha Boutilier
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis*
  *Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  *Attorneys for Plaintiff U.S. Bank National*
  *Association, in its capacity as Trustee*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .......................................................................................................2

LEGAL STANDARD ...............................................................................................................7

ARGUMENT .........................................................................................................................8

I.     THE MOTION SHOULD BE DENIED AS MOOT AS TO NUMEROUS RFPs ...............................8

II.    THE REMAINING RFPs ARE UNTIMELY AND IRRELEVANT ......................................9

       A.    The Remaining RFPs Are Untimely Under The Stipulation and Amended Scheduling Order .................................................................10

       B.    The DAF Parties Failed To Timely Pursue The Additional Requests...................11

       C.    The DAF Parties' Excuses For Their Noncompliance Are Baseless....................13

       D.    The DAF Parties' Additional Discovery Requests Are Irrelevant And Disproportionate ...........................................................................15

III.   THE DAF DEFENDANTS INTERROGATORIES ARE UNTIMELY AND IMPROPER...................19

IV.   THE COURT SHOULD NOT MAKE ORDERS ON ISSUES THE MOTION DOES NOT SPECIFICALLY ADDRESS ...............................................................................21

CONCLUSION.....................................................................................................................21

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases**</u>

*Abdou v. Walker*,
  2022 WL 3334700 (S.D.N.Y. Aug. 12, 2022) ........................................................................ 21

*Deng v. N. Y. State Off. of Mental Health*,
  2016 WL 11699675 (S.D.N.Y. Feb. 23, 2016) ..................................................................... 18

*Fishon v. Peloton Interactive, Inc.*,
  2021 WL 4124661 (S.D.N.Y. Sept. 9, 2021)........................................................................ 21

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*,
  2023 WL 1991428 (S.D.N.Y. Feb. 14, 2023).......................................................................... 9

*In re Broiler Chicken Antitrust Litig.*,
  2018 WL 3398141 (N.D. Ill. July 12, 2018)............................................................... 8, 17, 18

*In re Subpoena to Loeb Loeb LLP*,
  2019 WL 2428704 (S.D.N.Y. June 11, 2019) .......................................................................... 7

*Mod. Remodeling, Inc. v. Tripod Holdings, LLC*,
  2020 WL 1984338 (D. Md. Jan. 31, 2020)............................................................................ 13

*Morelli v. Alters*,
  2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) ........................................................................... 7

*Nespresso USA, Inc. v. Williams-Sonoma, Inc.*,
  2021 WL 942736 (S.D.N.Y. Mar. 12, 2021) ........................................................................... 8

*Pasternak v. Dow Kim*,
  2011 WL 4552389 (S.D.N.Y. Sept. 28, 2011)...................................................................... 21

*R.F.M.A.S., Inc. v. So*,
  2008 WL 465113 (S.D.N.Y. Feb. 15, 2008).......................................................................... 19

*Sportvision, Inc. v. MLB Advanced Media, L.P.*,
  2022 WL 2817141 (S.D.N.Y. July 19, 2022) ................................................................. passim

*Telecom Asset Mgmt., LLC v. Cellco P'ship*,
  2016 WL 796858 (S.D.N.Y. Feb. 24, 2016)..................................................................... 12, 13

*Thyssenkrupp Materials N.A., Inc. v. W. Bulk Carriers A/S*,
  2014 WL 335595 (S.D.N.Y. Jan. 22, 2014) .......................................................................... 15

*U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*,
  2013 WL 1728933 (S.D.N.Y. Apr. 22, 2013)........................................................................... 9

*Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S DE R L DE C.V.*,
  2020 WL 7695712 (S.D.N.Y. Dec. 28, 2020) ....................................................................... 20

*Zhang v. Gonzales*,
  426 F.3d 540 (2d Cir. 2005)................................................................................................... 21

## **Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................................... 7

L.R. 33.3(b)(1) ........................................................................................................................ 20

Plaintiffs U.S. Bank, National Association, in its capacity as trustee ("U.S. Bank" or the "Trustee"), Joshua N. Terry ("Mr. Terry"), and Acis Capital Management, L.P. ("ACM" or the "Portfolio Manager," and with Mr. Terry, the "ACM Parties") (collectively, "Plaintiffs"), submit this memorandum in opposition to the motion to compel (the "Motion" or "Mot.," Dkt. 206) brought by Defendants The Charitable Donor Advised Fund, L.P. ("DAF") and CLO HoldCo, Ltd. ("CLOH," and, collectively, the "DAF Parties").

## PRELIMINARY STATEMENT

The DAF Parties' Motion belatedly seeks to compel production of documents that have either already been produced, or are irrelevant to the DAF Parties claims. For the majority of the requests that the DAF Parties move to compel, Plaintiffs have already searched for and produced the relevant documents—as they have repeatedly informed the DAF Parties on meet and confers. The remaining documents pursued in the DAF Parties' Motion are not relevant to their claims challenging the Settlement Agreements. And, except for a few categories of discrete documents, the DAF Parties' requests would force Plaintiffs to re-review tens of thousands of documents that were already collected and reviewed based on the production parameters identified in Plaintiffs' response to the DAF Parties initial requests for production—which the DAF Parties never contested. It would be unduly burdensome, not to mention unfair, to force the Plaintiffs to incur the substantial expense of re-reviewing these documents because the DAF Parties changed their mind about what they needed at the eleventh hour of fact discovery. That is especially the case where, as here, *all* of the requests that the DAF Parties move on violate the July 10 Stipulation and July 12 Amended Scheduling Order, which prohibited further document requests or interrogatories unless they concerned matters raised for the first time in the DAF Parties' amended counterclaims. Plaintiffs agreed to produce the only documents that fit this narrow description—those concerning HCLOF's Members Agreement—and the DAF Parties efforts to get documents beyond that is in

1

direct conflict with the scheduling order's restrictions.  Finally, in addition to violating the Stipulation and Order, the DAF Parties' interrogatories are a master class on the type of interrogatories that are prohibited under Local Rule 33.3 as overbroad, unduly burdensome, and not the most efficient way of obtaining the discovery sought.  In particular, nearly all the interrogatories demand that Plaintiffs "identify … all of the facts" or "identify all documents and communications," which Courts in this district have repeatedly rejected as improper.  For these reasons and more, the DAF Parties' Motion should be denied in its entirety.

**FACTUAL BACKGROUND**

At the start of fact discovery, the Court directed the parties to diligently and promptly raise discovery disputes and resolve them before the close of fact discovery.  At the March 15, 2023 Court conference, the Court required the parties to complete fact discovery in four months, by July 13, 2023.  Dkt. 88-1 at 19:13-14; *see* Dkt. 76 ¶ 7(a).  The Court emphasized that the parties should act "diligent[ly]" to meet those deadlines (Dkt. 88-1 at 26:13-15; *see also id*. at 23:11-12 ("[M]y expectation is that the parties will meet the deadlines ….")), and specifically directed the parties to "promptly" bring discovery disputes to the Court's attention so that they could be resolved and any additional discovery materials could be used "during the discovery period."  *Id*. at 24:5-10.  After cautioning the parties that the fact discovery deadlines were "deadlines for completion of discovery … not dates on which we will commence litigation about discovery," the Court stressed that parties who "sit on … discovery disputes" or "bring a late motion" should not "expect[] that I'll be tacking time onto discovery" to resolve it.  *Id*. at 24:10-20.  The DAF Parties did not object and instead confirmed they could meet these timeframes.  *Id*. at 22:16-17.

In mid-April, the DAF Parties served their initial fifty-six RFPs on each Plaintiff concerning issues raised in the DAF Parties' initial March 30, 2023 counterclaims—the Settlement Agreements, the reserves, and Plaintiffs' communications with HCLOF concerning the same—as

well as certain requests concerning trading and expenses for all three Acis CLOs.  Dkt. 192 at 4;
*see* Dkt. 77 ¶¶ 20, 29, 34 (alleging that Plaintiffs' "wrongfully retained over $41 million in funds"
and "collu[ded]" with HCLOF by entering into the Settlement Agreements).  Plaintiffs timely
responded and objected in mid-May, disclosed that they would be using a June 1, 2020 through
March 30, 2023 date range, and agreed to produce documents concerning, *inter alia*, the Settlement
Agreements, the reserves, and communications with HCLOF concerning the same.  Ex. 1 (ACM
R&Os to 1st RFPs) at 7; Ex. 2 (Trustee R&Os to 1st RFPs) at 5-6; Ex. 27 (Terry R&Os to 1st
RFPs).[1]  The DAF Parties' assertion (Mot. 7 n.20) that the ACM Parties "placed no time
restriction" on their productions is specious.  Plaintiffs' responses and objections rejected the DAF
Parties' demand for documents going back to January 1, 2014 and stated that Plaintiffs "***will
produce documents and communications covering the period June 1, 2020 to March 30, 2023,
a period which predates the first objected-to settlement by nearly an entire year.***"  Ex. 1 (ACM
R&Os to 1st RFPs) at 7 (emphasis added); *see also* Ex. 26 (Terry R&Os to 1st RFPs) at 7 (same);
Ex. 2 (Trustee R&Os to 1st RFPs) at 5-6 (similar).  Plaintiffs met and conferred with the DAF
Parties on May 24, 2023 and raised issues concerning the DAF Parties' discovery responses, but,
as the DAF Parties admit, they chose "not [to] discuss Plaintiffs' objections" to the DAF Parties'
requests at that time.  Mot. 5-6; *see also* Ex. 22 (8/18 ACM Parties' Ltr.).  In other words, the DAF
Parties did not challenge this date range.

Plaintiffs accordingly conducted a reasonable search and reviewed over 80,000 documents
consistent with the unchallenged date range and scope of responsiveness disclosed to the DAF
Parties in mid-May.  Plaintiffs substantially completed productions in mid-June, producing 6,795

---

[1]  All exhibits cited herein are attached to the Declaration of Misha Boutilier dated October 13,
2023, submitted with this motion.

documents and 47,774 pages of material with weeks to spare to complete depositions by the Court's July 13 deadline.  *See* Dkt. 192 at 4.  While the DAF Parties now claim they only intended to delay their challenge of Plaintiffs' discovery responses until after "Plaintiffs produced … document[s]," Mot. 6, that approach was neither disclosed to nor agreed to by Plaintiffs, who would never have agreed to conduct burdensome review of documents multiple times to accommodate the DAF Parties' shifting conception of relevance.  Nor did the DAF Parties raise any objections after the Plaintiffs completed their production.  Instead, they remained silent throughout June, July, and the first half of August.  They likewise did not serve any Local Rule ("L.R.") 33.3(a) or contention interrogatories by the Court's April 14 and June 13 deadlines.  Dkt. 76 ¶ 7(c), 7(d); *see* Dkt. 192 at 4.

In late June, the DAF Parties proposed a two-month extension of fact discovery to accommodate depositions, explaining that "getting depositions scheduled is … difficult."  *See* Ex. 3 (6/26 Skibell Email) at 12-13.  Plaintiffs, who had by then completed their document productions, agreed to extend fact discovery until September 15 on the condition that document discovery would be closed, subject to a narrow exception for new matters raised by the DAF Parties' anticipated Amended Counterclaims, which were filed on July 8.  *See* Dkt. 155.  The parties thus stipulated on July 10 that no requests for production, requests, for admission, or interrogatories may be served except to the extent such discovery requests "***concern[] any new matters, allegations, or claims raised by any party's amended pleading served after April 14, 2023***."  Dkt. 156 (the "Stipulation") at 1 (emphasis added).  The Court entered an Order granting the parties' agreed-upon revised deadlines (the "Amended Scheduling Order") on July 12 and confirmed that, except as modified by the Order, the Court's original discovery deadlines "remain[] in full force and effect."  Dkt. 159.

4

The DAF Parties filed their Amended Counterclaims on July 8, 2023.  Those Amended Counterclaims relied on the same core factual allegations as their original counterclaims, but added a single new theory of liability—that Plaintiffs' supposedly collusive agreement to the Settlement Agreements tortiously interfered with HCLOF's duty of good faith under its Members Agreement.  The DAF Parties' new liability theory relies on two new allegations: that the Members Agreement exists and that Plaintiffs were aware of its terms when they entered into the Settlement Agreements.  *See, e.g.*, Dkt. 155 ¶¶ 5, 7 (alleging that Plaintiffs knowingly "interfered" with the Members Agreement by "withholding … millions of dollars," and "enter[ing] into two secret agreements" in "collus[ion]" with HCLOF).  Consistent with the Stipulation, Plaintiffs served ten supplemental RFPs on July 21, all of which concerned the Members Agreement and the allegation that Plaintiffs tortiously interfered with it.  *See* Ex. 4 (Pls.' 2nd RFPs to DAF).

Rather than tailoring discovery requests to their new allegations, the DAF Parties served forty-five new RFPs (many with over ten subparts), twenty-two Interrogatories, and twenty-four Requests for Admission on each Plaintiff on July 21, 2023.  *See* Exs. 10, 23-24 (DAF discovery requests).  Six of the RFPs (Nos. 1(g), 11-12, 33(c), 34(c), 35(c)), one Interrogatory (No. 14), and two of the Requests for Admission (Nos. 3-4) relate to the Members Agreement.  Plaintiffs responded to these requests and, as a compromise, responded to all other Requests for Admission.  *See* Ex. 5  (ACM RFP Resps.) R&Os 1, 11-12, 33-35; Ex. 27 (Terry RFP Resps.) R&Os 1, 11-12, 33-35; Ex. 6 (Trustee RFP Resps.) R&Os 1, 11-12, 33-35; Ex. 7 (ACM Interrog. Resps.) R&O 14; Ex. 8 (ACM RFA Resps.); Ex. 9 (Trustee RFA Resps.).  The remainder of the DAF Parties' July 21 discovery requests concerned matters amply covered by the original counterclaims and only repeated in the Amended Counterclaims—such as the propriety of the reserves, the Settlement Agreements, and Plaintiffs' alleged collusion with HCLOF concerning the same.  *See, e.g.,* Ex. 10

(DAF 2nd requests), RFP 1 (seeking "All documents and communications concerning … [t]he withholding of any funds", "[t]he Reserves", "[t]he 2021 [Settlement] Agreement", and "[t]he 2023 [Settlement] Agreement."); *id*. Interrogs. 13, 16-17 ("Identify all documents and all communications" concerning "withholding of funds", "the 2021 [Settlement] Agreement", or "the 2023 [Settlement] Agreement").

In addition, the DAF Parties' so-called "new" RFPs were almost entirely duplicative of their original fifty-four RFPs—so much so that it appears that ***no*** effort was made to limit new requests to non-duplicative information.  A chart mapping the requests from the DAF Parties' 2nd RFPs onto requests already promulgated under their 1st RFPs is included as Exhibit 25 hereto.  To give just a few examples, 2nd RFP 17, which seeks "documents and communications concerning any contention that James Dondero currently controls DAF and/or CLOH," is a clone of 1st RFP 1, which likewise seeks "documents and communications concerning your allegations of Dondero's purported control or functional control of either or both of the DAF Defendants."  Likewise, 2nd RFP 19(a)-(b), which seeks "documents and communications concerning . . . the 2019 Lawsuit," duplicates 1st RFP 53, which similarly seeks "communications by or between U.S. Bank, ACM, HCM, Terry, Seery, and/or Brigade concerning the 2019 Lawsuit."  Indeed, when they finally sought to belatedly challenge Plaintiffs' responses to their 1st RFPs by seeking irrelevant expense- and trade-related information on August 11—nearly three months after Plaintiffs responded to the DAF Parties' 1st RFPs, and nearly two months after Plaintiffs substantially completed productions—the DAF Parties admitted that many of their 2nd RFPs duplicated their 1st RFPs.  *See* Ex. 11 (DAF 8/11 Ltr.). at 1-2.  Plaintiffs timely responded to the DAF Parties August 11 letter and explained why the information they sought was irrelevant.  See Ex. 22 (8/18 ACM Parties Ltr.); Ex. 21 (8/18 Trustee Ltr.).  The DAF Parties never responded.

During the parties' August 24, 2023 meet-and-confer, the DAF Parties refused to articulate what non-duplicative information they sought in their Second RFPs. *See* Ex. 12 (8/25 ACM Parties Ltr.) at 1. The very next day, on August 25, 2023, the Plaintiffs identified in writing, on a request-by-request basis, how the Second RFPs were already covered by the First RFPs and subject to Plaintiffs' long-past responses and objections made thereto, and invited the DAF Parties to clarify which, if any RFPs, they claimed were non-duplicative. Exs. 12 (ACM Parties 8/25 Ltr.), 13 (Trustee 8/25 Ltr.). The DAF Parties never responded, and instead only sent Plaintiffs their portion of the joint pre-motion letter on August 30, 2023—scarcely two weeks before the close of fact discovery. See Ex. 14 (8/30 Jacobsen Email). Remarkably, the DAF Parties admitted for the first time at the September 22 pre-motion conference that only "ten" of their forty-five 2nd RFPs were "legitimately … attributable to new claims" (Ex. 15 (9/22 Tr.) at 9:22-10:1)—and then failed to identify which ten RFPs they were referring to in response to Plaintiffs' post-conference request. *See* Ex. 16 (9/22 Boutilier Email to McEntire). In their motion, the DAF Parties seek to compel responses to twenty-nine 2nd RFPs (Nos. 2-10, 13-27, 29-33) and twenty-one of their twenty-two Interrogatories.

## LEGAL STANDARD

Parties may only obtain discovery regarding matters that are "relevant to a[] party's claim or defense." *Morelli v. Alters*, 2020 WL 6508858, at *4 (S.D.N.Y. Nov. 5, 2020) (Woods, J.) (quoting Fed. R. Civ. P. 26(b)(1)). "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Id*. (quoting *In re Subpoena to Loeb Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019)). Discovery should be denied if it is "substantially overbroad" or is "disproportionate to the needs of the case," especially if it has "little, if any, relevance" and is "tangential … to [the] claims" at issue. *Id*. at *6; *see also Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, 2021 WL 942736, at *4 (S.D.N.Y. Mar. 12, 2021) (denying production of

"marginally relevant" information as "disproportionate to the needs of this case").   Further, discovery should be denied where a party "unreasonably delayed in raising [] request[s]" until a "late stage" of fact discovery to prevent undue burden from having to "conduct[] an entirely new document collection and production" or re-review documents. *Sportvision, Inc. v. MLB Advanced Media, L.P.*, 2022 WL 2817141, at *5 (S.D.N.Y. July 19, 2022) (denying untimely discovery request); *see also In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *5 (N.D. Ill. July 12, 2018) (denying discovery request that would require Defendants to "re-review a large number of documents").   Indeed, as the Court warned at the start of fact discovery, parties should "promptly" raise discovery disputes and should "not sit on … [them] with the expectation that I'll be tacking time onto the discovery schedule to … resolve th[em]."   Dkt. 88-1 at 24:7, 17-20.

<u>**ARGUMENT**</u>

I.   **THE MOTION SHOULD BE DENIED AS MOOT AS TO NUMEROUS RFPS**

The Motion should be denied as moot as to twelve of the twenty-nine 2nd RFPs the Motion raises (Nos. 9-10, 14-19, 21, 27, 29, and 33) because—as Plaintiffs previously informed the DAF Parties—Plaintiffs have already conducted a reasonable search for documents responsive to requests in the 1st RFPs that cover these requests and have produced all responsive, non-privileged documents that the search identified.[2]   Indeed, the DAF Parties admit (Mot. 13, 15) that many of these 2nd RFPs are "subsumed within" and "overlap" with their 1st RFPs.   A comprehensive summary of the complete overlap between these RFPs and the 1st RFPs is presented in Exhibit 25. While the DAF Parties now claim it was "not … clear" to them whether Plaintiffs were withholding

---

[2]   Plaintiffs agreed to produce information concerning the only one of the sixteen sub-parts of 2nd RFP 33 that seeks new information related to the Members Agreement .   See Ex. 5 (ACM R&Os) R&O 33.   Plaintiffs' objections to the remaining subpart are addressed *infra* at 9-15, 18.

documents responsive to these 2nd RFPs from Plaintiffs' mid-June productions, Mot. 11, Plaintiffs have informed the DAF Parties on numerous occasions that they are not.  *See*, *e.g.*, Ex. 12 (8/25 ACM Parties Ltr.) at 1-9; Ex. 13 (8/25 Trustee Ltr.) at 2.  Because these documents have already been produced and the DAF Parties fail to identify any deficiency in that production, their motion to compel is moot as to each of these requests.  *See, e.g., Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 2023 WL 1991428, at *2 (S.D.N.Y. Feb. 14, 2023) (denying motion to compel because "Defendant [already] produced th[e] information" sought); *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2013 WL 1728933, at *3 (S.D.N.Y. Apr. 22, 2013) (denying motion to compel as "moot" because plaintiff agreed to produce all responsive, non-privileged documents).

## II.   THE REMAINING RFPS ARE UNTIMELY AND IRRELEVANT

The remaining RFPs in the Motion seek expense-related discovery concerning the Daily Cash Files (2nd RFPs 2-8, 13, 22, 24-26, 30-31),[3] trading data related to Acis CLO 4 and Acis CLO 5 (2nd RFPs 23, 25, 29),[4] unrelated litigation (2nd RFPs 20 & 33(l)), and any joint defense agreements among Plaintiffs and HCLOF (2nd RFP 32)  The Court should deny the DAF Parties' motion to compel on these RFPs because they are untimely, were not diligently pursued, seek information that is not relevant to the DAF Parties' claims, and are disproportionate to the needs of the case.

---

[3]   The DAF Parties erroneously list 2nd RFPs 9 and 21 as requesting the Daily Cash Files.  They do not.  Rather, 2nd RFP 9 requests documents concerning communications regarding reserved funds, and 2nd RFP 21 requests documents and communications concerning HCLOF's demand for an optional redemption.  Plaintiffs searched for and produced such documents in response to the DAF Parties' 1st RFPs.  *See supra* at 8-9.

[4]   The ACM Parties have already produced all documents related to challenged trades made by Acis CLO 6, which is the subject of the NexPoint lawsuit.

A.      **The Remaining RFPs Are Untimely Under The Stipulation and Amended Scheduling Order**

The DAF Parties' remaining 2nd RFPs violate the Stipulation and Amended Scheduling Order because they do not concern "new matters, allegations, or claims raised by" the DAF Parties' Amended Counterclaims, Dkt. 156 at 1.

*First*, the DAF Parties assert that the expense-related Daily Cash Files requests (2nd RFPs 2-8, 13, 22, 24-26, 30-31) "are relevant to how the so-called reserved funds ('Reserves') were (and are) being used." Mot. 6.  The Reserves, however, are unquestionably a pre-existing matter raised in Plaintiffs' Amended Complaint and the DAF Parties' initial counterclaims.  *See* Dkt. 15 ¶ 51 (Amended Complaint discussing the creation of the reserves); Dkt. 77 ¶¶ 29-32 (DAF Parties' initial counterclaims alleging that the creation of the reserves was unjustified).  For exactly that reason, the DAF Parties requested documents related to the Reserves in their 1st RFPs and Plaintiffs agreed to (and have) produced those documents.  *See* Ex. 1 (ACM R&Os to 1st RFPs) R&Os 3-5, 7, 29 ; Ex. 2 (USB R&Os to 1st RFPs) R&Os 3-5, 7, 29.  The DAF Parties' repeat request for the same documents is exactly the type of discovery abuse that the subject-matter limitation in the Stipulation was intended to prevent.

*Second*, the DAF Parties claim that their requests for trading data (2nd RFPs 23, 25, 29) related to Acis CLO 4 and Acis CLO 5 seek documents to challenge Plaintiffs' assertion that the 2019 and 2020 Lawsuits were 'vexatious' and 'meritless.'"  Mot. 10.  But this issue was raised more than a year-and-a-half ago when Plaintiffs filed their Amended Complaint.  *See* Dkt. 15 ¶ 1 (alleging that the DAF Parties "commenced vexatious and meritless lawsuits").  This, again, is not a new matter raised by the DAF Parties' Amended Counterclaims.

*Third*, the request for documents concerning an unrelated lawsuit by HCM's litigation trustee (2nd RFPs 20 & 33(l)) is not a new matter because the DAF Parties have known about it

since the litigation trustee sued them in October 2021.  *See* Ex. 17 (Kirschner Complaint).  To the extent that the DAF Parties argue this lawsuit somehow shows that HCLOF was acting to further HCM's ulterior motives, that is not a new issue either because they already made that allegation in their initial counterclaims.  *See* Dkt. 77 ¶¶ 17, 23 (alleging that HCM controls HCLOF and that HCLOF was "doing [HCM's] bidding").

*Finally*, the DAF Parties' request seeking joint defense agreements reflecting cooperation between the ACM Parties, the Trustee, and HCLOF (2nd RFP 32) is not a new matter since the original counterclaims are entirely predicated on the same specious assertion as the Amended Counterclaims that the 2021 and 2023 Settlements were collusive.  *See* Dkt. 77 ¶ 30 (alleging that Plaintiffs were "collud[ing]" with HCLOF).

The DAF Parties attempt to evade this outcome by claiming (Mot. 3) that these additional 2nd Requests concern new matters because the DAF Parties' added tortious interference with the Members Agreement as an additional theory of liability in the Amended Counterclaims.  But under this interpretation of the Stipulation, the carefully crafted limitation to "new … claims" would be meaningless because *every* category of discovery would concern a "new … claim[]"—*i.e.*, the newly pled tortious interference claim—regardless of whether it related to alleged conduct covered by the original counterclaims.  *See* Dkt. 156 at 1.  That was clearly not the intent of the Stipulation and cannot be squared with its terms.  The DAF Parties' expansive reading should be rejected.

### B.   The DAF Parties Failed To Timely Pursue The Additional Requests

Even if the additional requests could be squared with the Stipulation, they should be rejected as untimely.  The Court's directive at the start of fact discovery was crystal clear: Parties that "sit on discovery disputes" and "bring a late motion" instead of "promptly" raising them should not "expect[] that I'll be tacking time onto discovery" to resolve those disputes.  Dkt. 88-1 at 24:10-20.  The DAF Parties repeatedly violated that directive, first by declining to challenge

Plaintiffs' mid-May discovery responses "before Plaintiffs produced document[s]" in mid-June, Mot. 5-6, and next by failing to raise any issues concerning Plaintiffs' responses or productions in mid-June, July, or early August, *see supra* at 2-6.  Instead, the DAF Parties waited until mid-August to challenge the scope of responsiveness and date range disclosed by Plaintiffs in mid-May and did not seek to file a motion concerning the same until August 30, scarcely two weeks before the close of fact discovery.  *See supra* at 6-7.  In short, the DAF Parties did exactly what the Court cautioned them not to do: they treated the fact discovery deadline not as a "deadline[] for completion of discovery," but instead as a "date on which [to] commence litigation about discovery."  Dkt. 88-1 at 24:5-10.  That "unreasonabl[e] delay" in raising issues until the close of fact discovery mandates denial of their Motion.  *See, e.g., Sportvision, Inc.*, 2022 WL 2817141, at *5 ("Given that [Plaintiff] unreasonably delayed in raising this request …, [Defendant] should not be forced to incur the burden or cost, at this late stage, of conducting an entirely new document collection and production …."); *Telecom Asset Mgmt., LLC v. Cellco P'ship*, 2016 WL 796858, at *3 (S.D.N.Y. Feb. 24, 2016) (declining to compel new searches because "discovery was set to close").  Had the documents sought in this motion to compel only become relevant due to the Amended Counterclaims, the DAF Parties might have some excuse for their failure to diligently seek them sooner.  But that is not the case for any of the additional RFPs.

Moreover, if the untimeliness of the DAF Parties' requests were excused, Plaintiffs would be substantially prejudiced.  As noted above, the Plaintiffs have already expended hundreds of thousands of dollars reviewing more than 80,000 documents in reasonable reliance on the DAF Parties' original requests, and the DAF Parties' apparent agreement to the scope of production that Plaintiffs agreed to in response thereto.  If the DAF Parties were permitted to change course now, Plaintiffs would need to conduct a duplicative review of those same documents, adding to the

already substantial burden of discovery in this case.  Courts routinely reject such requests as unduly burdensome, disproportionate, and prejudicial.  *See, e.g., Sportvision, Inc.*, 2022 WL 2817141, at *5 ("Given that [Plaintiff] unreasonably delayed in raising this request …, [Defendant] should not be forced to incur the burden or cost, at this late stage, of conducting an entirely new document collection and production …."); *Telecom Asset Mgmt.*, 2016 WL 796858, at *3 (rejecting plaintiff's request to expand date range of discovery sought where the court had "narrowed the date range … until … the date litigation commenced" and "a more expansive date range would be unduly burdensome"); *Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, 2020 WL 1984338, at *1 (D. Md. Jan. 31, 2020) ("narrow[ing] the date range … until … the date litigation commenced" and rejecting "a more expansive date range [as] unduly burdensome").

### C.     The DAF Parties' Excuses For Their Noncompliance Are Baseless

The DAF Parties' excuses for their non-compliance with the Stipulation and lack of timeliness are baseless.

*First*, the DAF Parties' assertion (Mot. 6) that they "are not aware of any [time] limitation on [their] ability to challenge Plaintiffs' discovery objections" simply confirms that they did not heed the Court's clear directions to "promptly" raise discovery disputes at the start of fact discovery.  Dkt. 88-1 at 24:7; *see supra* at 2.  Having either forgotten or disregarded the Court's directive, the DAF Parties must "live with [their] decision" rather than use their lack of diligence to modify deadlines and reopen document discovery.  Dkt. 88-1 at 26:15-18, 23.

*Second*, the DAF Parties' claim (Mot. 3) that they "did not have a copy of the 2023 [Settlement] Agreement" before "the original discovery deadlines" expired is both incorrect and irrelevant.  Plaintiffs provided the DAF Parties a copy of that agreement on May 15, 2023 (*see* Dkt. 108-3), more than two months before the July 13 initial close of fact discovery deadline.  The DAF Parties, who had known about that agreement since February 28, 2023 (Dkt. 77 ¶ 33),

challenged it in their March 30 counterclaims (*id*. ¶¶ 33-36, 51-56), and served discovery concerning it on April 14 (Ex. 18 (DAF 1st RFPs) RFPs 18-21), could have served any interrogatories or further RFPs concerning it in May or June but simply failed to do so.  Further, the terms of the 2023 Settlement Agreement have no bearing on the vast majority of the DAF Parties' remaining 2nd RFPs and Interrogatories.[5]

*Third*, aside from introducing a different contract, the Members Agreement, the Amended Counterclaims' purportedly "different theory of liability" does not introduce any "different facts." *Contra* Mot. 3.  To the contrary, it is based on the same allegations as the original counterclaims— that Plaintiffs improperly reserved funds and colluded with HCLOF by entering into two Settlement Agreements with HCLOF that harmed the DAF Parties.  *Compare* Dkt. 77 ¶¶ 20, 29, 34 (alleging that Plaintiffs "wrongfully retained" the reserves and "collu[ded]" with HCLOF by entering into the Settlement Agreements) *with* Dkt. 155 ¶¶ 6-7 (Plaintiffs "formed a collusive alliance" with HCLOF by "wrongfully withholding" the reserves and "enter[ing] into two secret agreements").  The DAF Parties cannot transform pre-existing matters into new matters and reopen document discovery simply by shifting their legal theories.  *See supra* at 12-13.

*Finally*, the DAF Parties cannot reopen fact discovery based on the claim that they purportedly did not "fully appreciate" previously discovered facts, such as "the central role HCLOF would play in the Amended Counterclaim," or purported issues related to "HCLOF's

---

[5]   For example, and without limitation, the DAF Parties did not need to read the full 2023 Settlement Agreement to seek discovery concerning Daily Cash Files (2nd RFPs 2-8, 13, 22, 24-26, 30-31), collateral quality tests and communications with rating agencies (2nd RFPs 23, 25, 29), an unrelated lawsuit (2nd RFPs 20 & 33(l)), joint defense agreements (2nd RFP 32), Plaintiffs' claims (Interrogs. 1-3, 9, 22),  the 2021 Settlement Agreement (Interrogs. 16, 18), the DAF Parties' allegations that Plaintiffs' actions were not justified (Interrogs. 4-5, 7-8, 10-11, 13, 15, 20-21), or their alleged damages (Interrog. 6).

status in its lifecycle." *Contra* Mot. 16.  The DAF Parties were fully aware of HCLOF's central role when they filed their initial counterclaims, which mentioned HCLOF over 110 times.  *See* Dkt. 77 ¶¶ 2, 4-5, 11, 14, 16-36, 39-41, 43-49, 53, 55.  The central tenet of the DAF Parties' counterclaims since they filed their initial counterclaims in March 2023 is that Plaintiffs and HCLOF colluded in reaching the 2021 and 2023 Settlement Agreements.  Those are not new matters warranting departure from long-ago agreed-upon discovery parameters.

### D. The DAF Parties' Additional Discovery Requests Are Irrelevant And Disproportionate

**Expense-Related Discovery:** The DAF Parties do not need further discovery concerning Acis CLO 4 and Acis CLO 5 expenses (*see* Mot. 5-9; 2nd RFPs  2-8, 13, 22, 24-26, and 30-31), including pre-2020 discovery outside Plaintiffs' disclosed date range.  Such discovery is irrelevant because, unlike NexPoint's claims concerning Acis CLO 6, the DAF Parties do not challenge any Acis CLO expenses, but instead allege that Plaintiffs must repay all reserved funds regardless of how those funds were subsequently used.  *See*, *e.g.*, Dkt. 155 ¶ 56 ("ACM had no colorable right to withhold ***any*** reserves ....") (emphasis added).  And while the DAF Parties' claim they need this information to show Plaintiffs' "motivations" (Mot. 6), such motivations are irrelevant to the DAF Parties' allegation that the Indentures and Portfolio Management Agreements did not authorize Plaintiffs to create reserves.  *See* Dkt. 155 ¶¶ 56-57; *see also Thyssenkrupp Materials N.A., Inc. v. W. Bulk Carriers A/S*, 2014 WL 335595, at *1 (S.D.N.Y. Jan. 22, 2014) (denying motive discovery because "motive is generally irrelevant in breach of contract actions") (internal quotations omitted).  Whether Plaintiffs were using the reserved funds to indemnify themselves (Mot. 6), is equally irrelevant because, on the DAF Parties' own theory, any reserves used for indemnification were not permitted.  *See* Dkt. 155 ¶ 56.  For the same reason, how the reserves were used is irrelevant to the DAF Parties' damages.  *Contra* Mot. 9.

The DAF Parties' claim (Mot. 7) that Plaintiffs somehow "waived" these relevance objections by not stating them with "specificity" or "failing to include a withholding statement" is simply wrong.  To the contrary, Plaintiffs specifically objected to the relevance of expense-related discovery and disclosed to the DAF Parties that they would only produce the expense-related documents which NexPoint had also requested, which only concerned Acis CLO 6.  *See*, *e.g.*, Ex. 1 (ACM R&Os to DAF 1st RFPs) R&Os 30, 32-33 (raising relevance objections and directing the DAF Parties ACM's responses to NexPoint's RFPs); Ex. 19 (ACM R&Os to NexPoint RFPs) R&Os 30 (only agreeing to produce expense-related discovery concerning Acis CLO 6).  Likewise, Plaintiffs specifically disclosed that they would not search for documents that predated June 1, 2020 or postdated March 30, 2023.  *See supra* at 2-3.

Even if it had any marginal relevance, additional expense-related discovery is disproportionate because Plaintiffs have already produced ample information concerning the reserved funds and other non-reserve expenses.  Plaintiffs have produced the 2023 Settlement Agreement providing itemized reporting on the use of reserved funds from February 2022 through February 2023, *see* Dkt. 108-3 at PDF 21-64, as well as reserve balances indicating the total funds spent from the reserves through April 2023.  And even though the DAF Parties' counterclaims do not make any allegations concerning expenses incurred before the June 2021 creation of the reserves, Plaintiffs still produced detailed information concerning these expenses, including an itemized list of legal expenses incurred before the February 2019 confirmation of ACM's bankruptcy plan, as well as documents concerning categories of litigation expenses incurred in response to the DAF Parties' 2019 and 2020 lawsuits and NexPoint's 2021 and 2022 lawsuits.  Any additional discovery would duplicate the information the DAF Parties already have and is far outweighed by the burden of requiring Plaintiffs to re-review up to 80,000 documents and conduct

additional collections and searches.  *See Sportvision, Inc.*, 2022 WL 2817141, at \*5 ("[Defendant] should not be forced to incur the burden or cost, at this late stage, of conducting an entirely new document collection and production …"); *In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at \*5 (disproportionate to require party to "re-review a large number of documents").

**Trading-Related Discovery:** The same is true of the DAF Parties' requests for trading-related discovery (*see* Mot. 9-11; 1st RFPs 30, 32, 34-47, 47; 2nd RFPs 23, 25, 29), including pre-2020 trading data outside Plaintiffs' disclosed date range.  This discovery is irrelevant to both the DAF Parties' claims—which do not challenge any trades—and Plaintiffs' claims, which solely target the DAF Parties' standing to sue and whether the 2021 Settlement Agreement bars their claims.  *See* Dkt. 15 ¶¶ 56-74.  Nor is trading data relevant to the DAF Parties' defenses because none of their 14 affirmative defenses allege that any trades were improper.  *See* Dkt. 155 at 13-16.  The DAF Parties' contrary argument that they need trading data to "defen[d] against Plaintiffs' claims that the 2019 and 2020 Lawsuits were 'vexatious'" (Mot. 9) misconstrues Plaintiffs' claims, which do not seek declarations that the DAF Parties' claims are factually meritless, but rather that they are barred for lack of standing and by the 2021 Settlement Agreement.   But even if trading data had any marginal relevance, Plaintiffs have already produced Acis CLO 6 trading data in response to NexPoint's RFPs.  *See* Ex. 19 (ACM R&Os to NexPoint RFPs) R&O 63.  That data enables the DAF Parties' to make whichever trading-related arguments they wish concerning Acis CLO 4 and Acis CLO 5 because "the purchases that [] NexPoint [] and the [DAF Parties] all challenge were allocated among the [three] Acis CLOs," Dkt. 15 ¶ 54, a fact the DAF Parties do not deny.  Dkt. 155 (Answer) ¶ 54.  Any further trading discovery would duplicate the information the DAF Parties already possess and would be outweighed by the burden of requiring Plaintiffs to

"re-review a large number of documents." *In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *5; *see also Sportvision, Inc.*, 2022 WL 2817141, at *5 (similar).[6]

**Unrelated Litigation:** The DAF Parties' request for discovery concerning an unrelated Northern District of Texas bankruptcy court lawsuit by an independent litigation trustee against them (2nd RFPs 20, 33(l)) is also irrelevant and disproportionate. While the DAF Parties theorize this lawsuit somehow goes to HCM and HCLOF's motives (*see* Dkt. 155 ¶¶ 50-52), that makes no sense because the lawsuit was not brought by either company, but instead by an independent Court-appointed litigation trustee, who is not a party to this case. *See* Ex. 20 (Kirschner Am. Compl.). Further, Plaintiffs have already produced their communications with HCLOF concerning the Settlement Agreements that might be probative of HCLOF's motives, and did not withhold any such communications with HCLOF concerning this lawsuit. Any further discovery into an unrelated lawsuit is both irrelevant and grossly disproportionate because it would require Plaintiffs to re-review nearly 80,000 documents. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 3398141, at *5; *see also Sportvision, Inc.*, 2022 WL 2817141, at *5.

**Joint Defense Agreements:** The DAF Parties' request for joint defense agreements between the ACM Parties, U.S. Bank, and HCLOF (2nd RFP 32) should also be denied because no such joint defense agreements exist. *See Deng*, 2016 WL 11699675, at *3 ("Rule 34 cannot be used to compel a party to create a document" that "do[es] not exist"). Further, the DAF Parties have not shown any "substantial need" to obtain joint defense agreements because the documents

---

[6]   To the extent the DAF Parties seek to compel the production of post-June 2021 Electronic Reports concerning trading data, this request should be denied because no such reports exist. Ex. 21 (8/18/23 Kotwick Ltr.) at 1; *Deng v. N. Y. State Off. of Mental Health*, 2016 WL 11699675, at *3 (S.D.N.Y. Feb. 23, 2016) ("Rule 34 cannot be used to compel a party to create a document" that "do[es] not exist").

Plaintiffs already produced, including the Settlement Agreements, which the DAF Parties wrongly allege were collusive, are sufficient for the DAF Parties to make whichever collusion-related arguments they wish. *See R.F.M.A.S., Inc. v. So*, 2008 WL 465113, at *1 (S.D.N.Y. Feb. 15, 2008) (no "compelling need" to produce joint defense agreement because documents already produced "permit the plaintiff to make whatever arguments it chooses").

## III.   THE DAF DEFENDANTS INTERROGATORIES ARE UNTIMELY AND IMPROPER

The Court should also deny the Motion as to the DAF Parties' Interrogatories 1-13 and 15-22 because they are both untimely and improper.[7]

*First*, these Interrogatories are untimely under the Stipulation and Amended Scheduling Order.  That Order preserved the pre-existing April 14 and June 13, 2023 deadlines to serve L.R. 33.3(a) and contention interrogatories, Dkt. 159; *see* Dkt. 76 ¶¶ 7(c), 7(d), subject to the Stipulation's narrow-carve-out for interrogatories concerning "new matters, allegations, or claims raised by" the DAF Parties' Amended Counterclaims. Dkt. 156 at 1.  The ACM Parties answered the only Interrogatory that actually concerned a new matter, namely the Members Agreement.  *See* Ex. 7 R&O 14.  The remaining Interrogatories, Nos. 1-13, and 15-22, violate the Stipulation and Amended Scheduling Order because they do not concern new matters.  *First*, Interrogatories 1-3, 9, and 22 are not new matters because they concern Plaintiffs' February 2022 Amended Complaint declaratory judgment claims (*see* Dkt. 15 ¶¶ 28, 56-74) that the DAF Parties lack standing, and the 2021 Settlement Agreement bars their claims.  Ex. 7 R&Os 1-3, 9, 22.  *Second*, Interrogatories 12 and 16-19 are not new matters because they concern the Settlement Agreements, which the DAF

---

[7]  For ease of reference, Plaintiffs use the numbering in the DAF Parties' Interrogatories to the ACM Parties.  These Interrogatories correspond to the DAF Parties' Interrogatories 1-12 and 14-21 to the Trustee.

Parties' initial counterclaims challenged.  Ex. 7 R&Os 12, 16-19; *see* Dkt. 77 ¶¶ 33-41, 51-56.

*Third*, Interrogatories 4-5, 7-8, 10-11, 13, 15, and 20-21 are not new matters because they concern

the DAF Parties' allegations that Plaintiffs' reservation of funds and dealings with HCLOF were

not justified, which the DAF Parties first made in their initial counterclaims.  Ex. 7 R&Os 4-5, 7-

8, 10-11, 13, 15, 20-21; *see* Dkt. 77 ¶ 24, 52 (alleging that Plaintiffs' creation of reserves and

dealings with HCLOF were not "justifi[ed]"); *id.* ¶¶ 26, 28, 30-31, 34-35 (similar).  *Finally*,

Interrogatory 6 is not a new matter because it concerns the DAF Parties' alleged damages, which

they also sought in their initial counterclaims.  Ex. 7 R&O 6; *see* Dkt. 77 ¶ 37 ("CLOH has been

damaged in the amount of approximately $12,250,000 ….").

Further, the Interrogatories are also improper and burdensome because they seek all facts,

documents, and communications concerning numerous broad topics.  *See* Ex. 28 (Trustee's

Interrog. Resps.) at 3.  They ask Plaintiffs to "identify with particularity all of the facts …"

(Interrogs. 1-11) or "identify all documents and communications …" (Interrogs. 12-22) concerning

the same topics Plaintiffs already produced documents concerning and which the DAF Parties'

explored in deposition.  These Interrogatories are not "a more practical method of obtaining the

information sought than a request for production or a deposition."  L.R. 33.3(b)(1); *see also Vista*

*Food Exch., Inc. v. Comercial De Alimentos Sanchez S DE R L DE C.V.*, 2020 WL 7695712, at *5

(S.D.N.Y. Dec. 28, 2020) ("[D]uplicative" interrogatories are "not a more practical method.").

The DAF Parties do not dispute this and instead contend that the Interrogatories are contention

interrogatories.  Mot. 20.  If that is so, they are equally improper because "demand[s] that

defendant 'describe all facts and produce all the documents' are "not proper contention

interrogatories." *Fishon v. Peloton Interactive, Inc.*, 2021 WL 4124661, at *1 (S.D.N.Y. Sept. 9,

2021); *see also Pasternak v. Dow Kim*, 2011 WL 4552389, at *2 (S.D.N.Y. Sept. 28, 2011)

("Contention interrogatories which asked a party to describe 'all facts' that supported various allegations of the complaint … [are] improper").   Instead, they all seek information "more appropriately obtained through … depositions," *Pasternack*, 2011 WL 4552389, at *2, which the DAF Parties have already had the opportunity to take, and cannot now "claim disappointment with" by requiring Plaintiffs to answer burdensome interrogatories.  *See Fishon*, 2021 WL 4124661, at *1-2 (denying motion to compel responses to burdensome contention interrogatories seeking "all facts" after movant had already taken depositions).

## IV.   THE COURT SHOULD NOT MAKE ORDERS ON ISSUES THE MOTION DOES NOT SPECIFICALLY ADDRESS

Finally, the Motion should also be denied as to any 2nd RFPs or other issues that the Motion does not specifically raise, consistent with the DAF Parties' concession that they "are not seeking to compel" responses to "discovery requests [] not identified" in the Motion.  Mot. 3.  Specifically, there is no basis to grant the DAF Parties' request to "overrule *all* of the Plaintiffs' objections" to unspecified discovery requests, *id*. 5, as the DAF Parties have waived this argument by failing to develop it beyond a conclusory blanket assertion.  *See Abdou v. Walker*, 2022 WL 3334700, at *3 (S.D.N.Y. Aug. 12, 2022) ("[A]rguments raised in a 'single conclusory sentence' are waived." (quoting *Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005))).

## CONCLUSION

For the above reasons, the Motion should be denied in its entirety.

Dated: New York, New York
October 13, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: _____*/s/ Blair A. Adams*_____
Jonathan E. Pickhardt
Blair A. Adams
Brendan T. Carroll
Misha Boutilier
Jeffrey Arnier
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

**SEWARD & KISSEL LLP**

By: _____*/s/ Mark D. Kotwick*_____
Mark D. Kotwick
Thomas Ross Hooper
Julie J. Hong
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney certifies that on October 13, 2023, he caused a true copy of the

foregoing document to be served via CM/ECF to all counsel of record.


*<u>/s/ Misha Boutilier</u>*
Misha Boutilier