# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, and ACIS CAPITAL MANAGEMENT, L.P., <br><br> *Plaintiffs,* <br><br> v. <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., and NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> *Defendants.* | Case No. 1:21-cv-11059-GHW |

**DEFENDANTS THE CHARITABLE DONOR ADVISED FUND, L.P. AND CLO HOLDCO LTD.'S FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND SECOND REQUESTS FOR PRODUCTION TO <u>ACIS CAPITAL MANAGEMENT, L.P.</u>**

TO:   Plaintiff Acis Capital Management, L.P., by and through its counsel of record Jonathan E. Pickhardt, Blair A. Adams, and Michael Bloom, QUINN EMANUEL URQUHART & SULLIVAN, LLP, 51 Madison Avenue, 22nd Floor New York, New York 10010.

Pursuant to Federal Rules of Civil Procedure 33, 34 and 36, and any other applicable federal or local rules, Defendants The Charitable Donor Advised Fund, L.P. and CLO HoldCo Ltd. (the "DAF Parties") serve these First Request for Admissions, Interrogatories, and Second Requests for Production to Plaintiff Acis Capital Management, L.P. ("ACM").

Respectfully submitted,

By: /s/ *Sawnie A. McEntire*
Sawnie A. McEntire
*Admitted Pro Hac Vice*
Texas Bar No.: 13590100
Fed ID #3476
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Fax: (214) 237-4340
E-mail: smcentire@pmmlaw.com

Roger L. McCleary
*Admitted Pro Hac Vice*
Texas Bar No.: 133937000
Fed. ID #205
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah
E-mail: jtewiah@glennagre.com
GLEN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212.358.5600

**Counsel for Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 21, 2023 a true and correct copy of the foregoing was electronically served in compliance with the Federal Rules of Civil Procedure.

                                     */s/ Sawnie A. McEntire*
                                     Sawnie A. McEntire

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

1.      These Requests are only intended to encompass documents not previously requested from You by CLOH or DAF in this lawsuit and/or produced by You to CLOH or DAF in this lawsuit.

2.      Each Request shall be construed and answered separately and shall not be combined for the purpose of supplying a common response thereto. Each answer shall set forth verbatim the Request to which it responds. The answer to a Request shall not be supplied by referring to the answer to another Request unless the Request referred to supplies a complete and accurate answer to the Request being answered. The specificity of any Request shall not be construed or understood as limiting the generality or breadth of any other Request.

3.      If You object to any part of a Request, state with particularity both the grounds and reasons for Your objection, specify the portion(s) of the request to which You object, and answer so much of the Request as is not objectionable.

4.      These Requests require You to produce Documents and Communications and/or to provide information in Your physical possession, custody, or control, as well as in the possession, custody, or control of any spouse, agents, employees, officers, directors, shareholders, partners, general partners, legal representatives, predecessors, successors, children, heirs, and assigns. All requested Documents, Communications, or

information not subject to a valid objection that is known by, possessed by, or available to You that appears in Your records must be provided.

5.     In addition to original and final versions of Documents and Communications, each Request includes all drafts, alterations, modifications, changes, and amendments of such Documents and Communications, as well as copies non-identical to the original in any respect, including any copies bearing non-identical markings or notations of any kind.

6.     If any requested Document, Communication, or information was, but no longer is, in Your possession, state whether a copy thereof is in the possession, custody, or control of some other person, agency, entity, partnership, or corporation, and why such Document, Communication, or information is no longer available, who is responsible for the loss, and the circumstances under which the loss occurred.

7.     Responsive Documents and Communications are to be clearly designated so as to reflect their source, owner, and/or custodian.

8.     Each requested Document and Communication shall be produced in its entirety with an affixed bates stamp. If an identical copy appears in more than one person's files, each of the copies shall be produced or the extracted metadata shall reflect the source, owner, and/or custodian for all persons with identical copies. If a Document or Communication responsive to any Request cannot be produced in full, it shall be

produced to the extent possible with an explanation stating why the production of the remainder is not possible.

9.       In the event You do not answer any Request, in whole or in part, on the basis of an assertion of attorney-client privilege, the work-product doctrine, or any other claim of privilege or immunity, answer each Request to the extent consistent with the privilege or immunity. For all documents withheld on the basis of privilege, state the basis for Your claim with specificity that such a document need not be disclosed to permit the Court to determine the legal sufficiency of Your objection or position, and, for each such document, identify:

    a.  whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

    b.  whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

    c.  any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

    d.  the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and the type of document, e.g. letter or memorandum; the general subject of the document; and such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, and other recipient of the document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

10.       If there are no Documents or Communications responsive to a particular Request, please provide a written response so stating.

11.     If You find the meaning of any term in any Request unclear, without waiver of the DAF Parties' rights to seek a full and complete response to the Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

12.     The DAF Parties specifically reserve the right to serve additional requests for production.

13.     The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each Request based on the knowledge and information currently available.

14.     Your response to and the document production responsive to these Requests are due in 30 days. These Requests are continuing in nature as to require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if and when additional Documents, Communications, or information responsive to any of the Requests herein is/are obtained, discovered, or located between the time of responding to these Requests and the final disposition of this action.

## <u>INSTRUCTIONS FOR REQUESTST FOR ADMISSIONS</u>

1.     If You qualify an answer or deny only a part of the matter of which an admission is requested, You shall specify so much of it as is true and qualify or deny the remainder.

2.      If You object to any of the following Requests, set forth that objection and state the reasons for the objection. If You object only in part to any of the Requests, You shall respond to the remainder of the Request.

3.      Each Request shall be construed independently and not with reference to any other Request.

4.      The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each Request based on the knowledge and information currently available.

5.      Your response to these Requests is due in 30 days. These Requests are continuing in nature as to require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if and when additional Documents, Communications, or information responsive to any of the Requests herein is/are obtained, discovered, or located between the time of responding to these Requests and the final disposition of this action.

## INSTRUCTIONS FOR INTERROGATORIES

1.      If You answer any interrogatory by reference to a document, identify the document production number (or "Bates number") in Your interrogatory response.

2.      In answering the following interrogatories, furnish all available information, including information in the possession, custody, or control of any of Your attorneys, agents, representatives, associates, and persons under Your control, who have

the best knowledge, not merely information known to You based on Your own personal knowledge. If You cannot fully respond to any interrogatory after exercising the requisite due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the interrogatory cannot be answered fully and completely; and state what knowledge, information, or belief You have concerning the unanswered portion of any such interrogatory.

3.       Federal Rules of Civil Procedure 26 and 33 and Local Rule 26.2 shall apply to any objection or claim of privilege asserted with respect to any of the interrogatories herein. If You decline to provide a response to any interrogatory, in whole or in part, on the grounds of any privilege: (a) identify the information withheld or communications not disclosed; (b) state the nature of the privilege being asserted; and (c) provide a sufficient description of the communication or information to support the claimed privilege.

4.       In the event You object to any interrogatory below on the grounds that the interrogatory is overbroad, You shall respond to that interrogatory as narrowed in a way that renders it not overbroad in Your opinion, and state the extent to which You have narrowed that interrogatory for purposes of Your response.

5.      Each interrogatory shall be construed independently and not with reference to any other interrogatory.

6.      The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each Interrogatory based on the knowledge and information currently available.

7.      Your response to these interrogatories is due in 30 days. These Interrogatories are continuing in nature as to require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if and when additional Documents, Communications, or information responsive to any of the Requests herein is/are obtained, discovered, or located between the time of responding to these Requests and the final disposition of this action.

## RULES OF CONSTRUCTION

The following Rules of Construction shall apply to the Requests for Production of Documents, Interrogatories, and the Requests for Admissions:

1.      Unless specifically stated otherwise in a particular Request, the relevant time period is January 1, 2014, to Present.

2.      The terms "any" and "all" should be understood in either the most or the least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. "Any" includes the word "all," and "all" includes the term "any."

3.      The use of the singular form of any word shall be construed to include the plural and vice versa.

4.      All phrases following the terms "including" are intended to illustrate the kinds of information responsive to each Request, and shall be construed as "including, but not limited to." Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of a Request.

5.      The use of a verb in any tense, voice, or mood shall be construed as the use of the verb in all other tenses, voices, or moods, as necessary to bring within the scope of the Request all Documents and Communications that might otherwise be construed to be outside of its scope.

6.      These Requests specifically contemplate the production of all electronic or computer data, including associated metadata.

7.      References to an entity shall include past and present officers, directors, employees, agents, affiliates, subsidiaries, owners, partners, general partners, shareholders, representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, and/or any other person(s) acting on behalf of such entity.

## DEFINITIONS

The following definitions shall apply to the Requests for Production of Documents, Interrogatories, and the Requests for Admissions:

1.      "DAF" shall mean the Charitable DAF Fund, LP a/k/a the Charitable Donor Advised Fund, L.P., a Defendant and Counter-Plaintiff herein.

2.      "CLOH" shall mean CLO Holdco Ltd., a Defendant and Counter-Plaintiff herein.

3.      You" or "Your" shall mean any one or more of the following persons or entities: ACM and any predecessor, successor, assignee, or assignor of the foregoing, as well as any of their respective affiliates, subsidiaries, agents, employees, partners, managers, members, lawyers, representatives, and any other person acting on their behalf.

4.      "US Bank" shall mean U.S. Bank National Association, a Plaintiff and Counter-Defendant herein.

5.      "ACM" shall mean Acis Capital Management, L.P., a Plaintiff and Counter-Defendant herein.

6.      "HCLOF" shall mean Highland CLO Funding, Ltd., a Counter-Defendant herein, and its representatives and directors.

7.      "HCM" shall mean Highland Capital Management, L.P., a shareholder in HCLOF, and now a Reorganized Debtor in Bankruptcy Proceedings, pending in Case No. 19-34054-SGJ-11, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

8.      "NexPoint" shall mean defendant, NexPoint Diversified Real Estate Trust.

9.      "HCMLP Investments" shall mean HCMLP Investment, L.P., a wholly owned subsidiary of HCM.

10.     "Terry" shall mean Joshua N. Terry, as Plaintiff and Counter-Defendant herein.

11.     "Lawsuit" means the above-captioned lawsuit styled: *U.S. Bank, National Association, in its capacity as Trustee, Joshua N. Terry, and Acis Capital Management, L.P. v. The Charitable Donor Advised Fund, L.P., CLO HoldCo Ltd., and NexPoint Diversified Real Estate Trust*; Civil Action No. 1:21-cv-11059; In the United States District Court for the Southern District of New York.

12.     "Plaintiffs" shall mean and refer to ACM, US Bank, and Terry, collectively.

13.     "Complaint" shall mean the Amended Complaint (Dkt. 15) filed by ACM, Terry, and US Bank in the Lawsuit on February 23, 2022.

14.     "Amended Counterclaim/Amended Answer" shall mean and refer to Defendants The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.'s Second Amended Answer and First Amended Counterclaim (Dkt. 155) filed on July 8, 2023 in the Lawsuit, and any supplements or amendments thereto.

15.     "Counterclaims" shall mean and refer to DAF and CLOH's First Amended Counterclaim asserted on pages 17-49 of the Amended Counterclaim/Amended Answer.

16.     "Members Agreement" shall mean the Members Agreement dated November 15, 2017, which is attached as Exhibit 2 to the Amended Counterclaim/Amended Answer.

17.     "Guernsey Proceeding" shall mean the matter styled *CLO Holdco, Ltd. v. Highland CLO Funding, Ltd.,* Civil No 2479, in The Royal Court of Guernsey (Ordinary Division), filed March 6, 2023, a copy of which is attached as Exhibit 1 to the Amended Counterclaim/Amended Answer.

18.     "Acis CLO 4" means the collateralized loan obligation investment vehicle comprised of Acis CLO 2014-4 Ltd. and Acis CLO 2014-4 LLC and any of its officers, directors, employees, parents, subsidiaries, affiliates, business units, segments, or divisions, and any person or entity acting or purporting to act on behalf of it or any of the foregoing.

19.     "Acis CLO 5" means the collateralized loan obligation investment vehicle comprised of Acis CLO 2014-5 Ltd. and Acis CLO 2014-5 LLC and any of its officers, directors, employees, parents, subsidiaries, affiliates, business units, segments, or divisions, and any person or entity acting or purporting to act on behalf of it or any of the foregoing.

20.     "Acis CLO 6" means the collateralized loan obligation investment vehicle comprised of Acis CLO 2015-6 Ltd. and Acis CLO 2015-6 LLC and any of its officers, directors, employees, parents, subsidiaries, affiliates, business units, segments, or

divisions, and any person or entity acting or purporting to act on behalf of it or any of the foregoing.

21.     The "Acis CLOs" means, individually and collectively, Acis CLO 4, Acis CLO 5 and/or Acis CLO 6.

22.     The "Acis Notes" means, individually and collectively, the "secured and subordinated notes" sold by the ACIS CLOs, which are referred to in ¶ 25 of the Complaint.

23.     "Indentures" shall mean and refer to that certain indenture dated as of June 5, 2014 among ACIS-CLO 2014-4 Ltd., ACIS CLO 2014-4 LLC and US Bank, that certain indenture dated as of November 18, among ACIS CLO 2014-5 Ltd., ACIS CLO 2014-5 LLC and US Bank, and that certain indenture dated as of April 16, 2015 among ACIS CLO 2015-6 Ltd., ACIS CLO 2015-6 LLC and US Bank.

24.     "2021 Agreement" shall mean the agreement entered between HCLOF, ACM and Terry dated April 28, 2021, and which is attached to Plaintiffs' Amended Complaint (Dkt. 15-12) and the Amended Counterclaim/Amended Answer as Exhibit 3.

25.     "2023 Agreement" shall mean that agreement dated February 28, 2023 between HCLOF, ACM and US Bank, and which is attached to the Amended Counterclaim/Amended Answer as Exhibit 4.

26.     "Communication" shall mean the transmittal of information in any form or medium, including any telephone conversation, recorded conversation, voice messages,

letters, correspondence, notes, facsimiles, text messages, instant messages, emails, Bloomberg messages, posts on internet sites, call notes, internal messaging services or other forms of written or verbal (electronic or otherwise) and any documents exchanged.

27.     "Document" or "Documents" shall mean the following items regardless of origin or location, whether printed or recorded or filmed or reproduced by any other mechanical or electrical process or produced by hand, whether an original, master or copy, namely: originals and non-identical copies of any electronically stored information ("ESI"), papers, books, accounts, writings, graphs, charts, photographs, recordings, DVDs, CD-ROMs, hard drives, floppy diskettes, data compilations, contracts, wires, emails, correspondence, facsimiles, telephone records, notations, minutes of meetings, summaries and records of personal conferences, ledgers, journals, books of record, notebooks, diaries, computer data, text messages, instant messages, tape recordings, video recordings, financial statements, memoranda, transcripts, copies or reproductions of any of the foregoing of which notations and/or writings have been made which do not appear in the original and any other information containing writing or tangible items in Your possession, custody or control.

28.     "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single

page). Please also provide a Summation Pro Load File (.dii) and/or all related metadata with respect to all such Documents/ESI.

29.    "Kirschner Litigation" shall mean those proceedings styled *Marc S. Kirschner as Litigation Trustee of the Litigation Sub-Trust vs. Dondero et al*, Adversary Proceeding in the United States Bankruptcy Court for the Northern District of Texas, Matter No. 21-03076-SGJ.

30.    "Concerning," "reflecting," "regarding," "relating," or "related to" shall mean constituting, concerning, reflecting, regarding, referring to, pertaining to, describing, evidencing, supporting, and/or relating to.

31.    "Reserves" or "withholdings" shall mean or refer to the approximately $41.5 million withheld from the proceeds of the redemption of the Acis Notes in 2021, as referred to in ¶ 51 of the Complaint and ¶¶ 35-36 of the Counterclaims.

32.    "NexPoint Lawsuit" shall mean and refer to the actions styled *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P. et al*, Case No. 21-cv-04384 in the United States District Court for the Southern District of New York and *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P., et al.*, Index No. 653654/2022 (Sup. Ct. N.Y. C'ty).

33.    "PMAs" shall mean and refer to (a) the Portfolio Management Agreement between Acis CLO 2014-4 Ltd. and Acis Capital Management, L.P. dated June 5, 2014; (b) the Portfolio Management Agreement between Acis CLO 2014-5 Ltd. and Acis Capital

Management, L.P. dated November 18, 2014; and (c) the Portfolio Management Agreement between Acis CLO 2015-6 Ltd. and Acis Capital Management, L.P. dated April 15, 2015.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS
## <u>UNDER FED. R. CIV. P. 34</u>

1. All documents and communications concerning:

    a. The withholding of any funds from the proceeds of the redemption of the Acis Notes;

    b. Any demand by HCLOF to ACM, US Bank, or the Acis CLOs requesting the distribution of the proceeds of the redemption of the Acis Notes;

    c. Any notice(s) of default issued by HCLOF to ACM, US Bank, or the Acis CLOs related to the Acis Notes;

    d. Any and all indemnification to which You contend in this Lawsuit You are entitled, including but not limited to under the terms of any investment advisory agreement, trustee agreement, the Indentures, the PMAs, or any other agreement relating in any way to the Acis CLOs or Acis Notes;

    e. Valuation of the Acis CLOs;

    f. The Reserves relating to the Acis CLOs;

    g. The Members' Agreement;

    h. The 2021 Agreement; and/or

    i. The 2023 Agreement.

**RESPONSE:**

2. All documents and communications concerning:

    a. All attorneys' fees and expenses incurred by You for which Reserves have been applied or will be paid, including quantification(s) of the same; and/or

    b. All attorneys' fees and expenses incurred by You for which you seek recovery from CLOH or DAF pursuant to § 6 of the 2023 Agreement.

**RESPONSE:**

3.  All documents concerning management fees and/or expenses for which Reserves have been or will be applied or paid, including quantification(s) of the same.

    **RESPONSE:**

4.  All documents concerning trustee fees and/or expenses for which Reserves have been or will be applied or paid, including quantification(s) of the same.

    **RESPONSE:**

5.  All documents concerning any and all other costs, fees, and expenses for which Reserves have been or will be applied or paid, including quantification(s) of the same.

    **RESPONSE:**

6.  All documents concerning the amount(s), valuation(s), asset value(s), investment, redemption, handling, distribution, and/or payment(s) regarding the Acis Notes, including but not limited to any proceeds, expenses, fees, Reserves, and/or withholdings from, derived from, or relating to the Acis Notes and/or the ACIS CLOs.

    **RESPONSE:**

7.  All documents concerning any of the following in regard to funds obtained and or derived from redemption of the Acis Notes:

    a.  The amount of the funds withheld;

    b.  How those funds have been used and applied;

    c.  What percentage and amount of the funds have been used for attorneys' fees and expenses incurred by You for any matter, and any documents reflecting the allocation by matter;

    d.  Each time funds were withheld and the amount withheld; and/or

    e.  The amount of funds withheld pursuant to the 2023 Agreement and any documents reflecting the alleged justification for withholding such funds.

    **RESPONSE:**

8. All documents that form any basis for Your contention that You are entitled to withhold funds which otherwise would be distributed to CLOH.

   **RESPONSE:**

9. All documents concerning any communications regarding withholding funds which otherwise would be distributed to HCLOF or CLOH regarding the Acis CLOs.

   **RESPONSE:**

10. All documents and communications concerning the Guernsey Proceedings and/or Judge Jernigan's rulings concerning the same.

    **RESPONSE:**

11. All drafts and copies of the Members Agreement and all documents reflecting when You received the same.

    **RESPONSE:**

12. All documents reflecting any communications regarding the Members Agreement and all documents reflecting any analysis of its subject matter.

    **RESPONSE:**

13. All documents concerning the status, performance, and/or disposition of any and/or all of the Acis Notes and/or the Acis CLOs, including but not limited to internal and/or external reports.

    **RESPONSE:**

14. All documents and communications concerning HCLOF's liquidation status and decision to wind-up its business affairs.

    **RESPONSE:**

15. All documents and communications concerning actual or contemplated actions taken to collect attorneys' fees from DAF, CLOH and/or NexPoint, as referenced in § 6 of the 2023 Agreement.

**RESPONSE:**

16. All documents reflecting the basis upon which You claim the right to collect attorneys' fees from DAF, CLOH and/or NexPoint, as referenced in § 6 of the 2023 Agreement.

    **RESPONSE:**

17. All documents and communications concerning any contention that James Dondero currently controls DAF and/or CLOH.

    **RESPONSE:**

18. All documents and communications concerning any actual or contemplated offer to purchase CLOH's shareholder interests in HCLOF, in whole or in part.

    **RESPONSE:**

19. All documents and communications concerning:

    a. the 2019 Lawsuit;

    b. the 2020 Lawsuit; and/or

    c. The Guernsey Proceedings.

20. All documents and communications concerning the Kirschner Litigation.

    **RESPONSE:**

21. All documents and communications constituting and/or reflecting any demand from HCLOF to You regarding or reflecting the exercise of the optional redemption of any and/or all of the Acis Notes.

    **RESPONSE:**

22. All other documents concerning the current amount of funds that have been withheld from the proceeds of the redemption of any and/or all of the Acis Notes.

    **RESPONSE:**

23. All documents concerning Your policies and procedures applicable to the Acis CLOs or the Acis Notes for:

    a.  compliance with federal and/or state regulations, such as the Advisers Act of 1940;

    b.  selecting, identifying, and executing trades on behalf of advised or managed funds such as Acis Notes;

    c.  complying with the Collateral Quality Tests;

    d.  making distributions;

    e.  defining and complying with best execution obligations;

    f.  withholding funds from distribution;

    g.  calculating fees based upon assets under management;

    h.  calculating the value of a fund and/or assessing Net Asset Value for non-public securities; and/or

    i.  complying with indenture and other contractual parameters.

**RESPONSE:**

24. All documents concerning payments of fees and/or expenses to ACM, Terry, and/or US Bank prior to July of 2021 relating to the Acis CLOs.

**RESPONSE:**

25. All documents concerning the results of any inspection, audit, review, or investigation into Your compliance, whether with (i) applicable laws and regulations, (ii) internal policies and procedures, (iii) contractual requirements, whether in general or specifically with respect to the Acis Notes and/or the Acis CLOs, (iv) asset valuation, (v) performance under the Collateral Quality Tests, and/or (vi) performance under any other relevant metrics relating to the Acis CLOs.

**RESPONSE:**

26. All Note Valuation Reports, Monthly Reports, Redemption Reports, Post-Redemption Reports, Payment Reports, Generic Reports, Intra-Period Reports, or other similar reports prepared by US Bank for the Acis CLOs from January 1, 2014, to Present that have not been produced to date.

   **RESPONSE:**

27. All board resolutions concerning the Acis CLOs, the Acis Notes, the 2021 Agreement, or the 2023 Agreement.

   **RESPONSE:**

28. All Administration Agreements referred to in each of the Indentures.

   **RESPONSE:**

29. All communications with, and data provided to, ratings agencies concerning the Acis CLOs and/or the Acis Notes.

   **RESPONSE:**

30. Any documents concerning the purported continuing need for management of the Acis CLOs after the optional redemption of the Acis Notes.

   **RESPONSE:**

31. Any documents that show the purported justification for the continuing management, trustee, professional, and/or other fees concerning the Acis CLOs after the optional redemption of the Acis Notes.

   **RESPONSE:**

32. All joint defense agreements or common-interest agreements between one or more of the following persons or entities:

   a. US Bank;

   b. HCLOF;

    c.  ACM;

    d.  Terry;

    e.  HCM;

    f.  Brigade; and/or

    g.  Seery.

**RESPONSE:**

33. All documents and communications between You and HCLOF concerning any of the following topics:

    a.  Reserves;

    b.  Withheld funds from the redemptions;

    c.  The Members Agreement;

    d.  The Guernsey Proceedings;

    e.  CLOH's interest in HCLOF;

    f.  The 2019 Lawsuit;

    g.  The 2020 Lawsuit;

    h.  The 2021 Agreement;

    i.  The 2023 Agreement;

    j.  The Counterclaims;

    k.  Your claims in this Lawsuit;

    l.  The Kirschner Litigation;

    m.  The NexPoint Lawsuit;

    n.  Your attorneys' fees;

    o.  This Lawsuit;

    p.  Your defenses in this Lawsuit;

**RESPONSE:**

34. All documents and communications between You and HCM concerning any of the following topics:

    a.  Reserves;

    b.  Withheld funds from the redemptions;

    c.  The Members Agreement;

    d.  The Guernsey Proceedings;

    e.  CLOH's interest in HCLOF;

    f.  The 2019 Lawsuit;

    g.  The 2020 Lawsuit;

    h.  The 2021 Agreement;

    i.  The 2023 Agreement;

    j.  The Counterclaims;

    k.  Your claims in this Lawsuit;

    l.  The Kirschner Litigation;

    m.  The NexPoint Lawsuit;

    n.  Your attorneys' fees;

     o.  This Lawsuit;

     p.  Your defenses in this Lawsuit;

**RESPONSE:**

35. All documents and communications between You and Seery concerning any of the following topics:

     a.  Reserves;

     b.  Withheld funds from the redemptions;

     c.  The Members Agreement;

     d.  The Guernsey Proceedings;

     e.  CLOH's interest in HCLOF;

     f.  The 2019 Lawsuit;

     g.  The 2020 Lawsuit;

     h.  The 2021 Agreement;

     i.  The 2023 Agreement;

     j.  The Counterclaims;

     k.  Your claims in this Lawsuit;

     l.  The Kirschner Litigation;

     m. The NexPoint Lawsuit;

     n.  Your attorneys' fees;

     o.  This Lawsuit;

     p.  Your defenses in this Lawsuit;

**RESPONSE:**

36. All documents You intend to rely on in support of your factual and/or legal defenses in this Lawsuit.

    **RESPONSE:**

37. All documents that form any basis for, support, and/or otherwise concerning any and/or all of Your factual, legal, or affirmative defenses to any and/or all of the Counterclaims.

    **RESPONSE:**

38. All documents You intend to rely on in support of any and all dispositive motions You intend to file in this Lawsuit.

    **RESPONSE:**

39. All documents You intend to rely on, offer, or use at trial and/or any hearing in this Lawsuit.

    **RESPONSE:**

40. All documents which form any basis for Your denial of one or more of the below Requests for Admission.

    **RESPONSE:**

41. All documents and communications concerning Terry's termination from HCM, including but not limited to those related to Terry's personal relationships with one or more co-workers or other inappropriate conduct.

    **RESPONSE:**

42. All documents concerning communications between Terry and James Dondero concerning Terry's compensation and/or employment at HCM.

    **RESPONSE:**

43. All documents concerning communications between Terry and James Dondero concerning Terry's compensation and/or employment at ACM.

**RESPONSE:**

44. All documents concerning and/or communications between Terry and Seery regarding:

     a.  Terry's employment with HCM;

     b.  Termination of Terry's employment with HCM, including but not limited to separation agreements or settlements of any kind; and/or,

     c.  ACM or the Acis CLOs, including but not limited to all agreements between HCM and Terry regarding ACM or the Acis CLOs.

**RESPONSE:**

45. All documents concerning and/or communications between Terry and HCM regarding:

     a.  Terry's employment with HCM;

     b.  Termination of Terry's employment with HCM, including but not limited to separation agreements or settlements of any kind; and/or,

     c.  ACM or the Acis CLOs, including but not limited to all agreements between HCM and Terry regarding ACM or the Acis CLOs.

**RESPONSE:**

## REQUESTS FOR ADMISSIONS
## <u>UNDER FED. R. CIV. P. 36</u>

1.  Admit or deny You received a Notice of Default from HCLOF, dated July 28, 2021, regarding the withholding of funds following the redemption of the Acis Notes.

2.  Admit or deny You have received written communication from HCLOF, dated December 1, 2021, demanding the distribution of the proceeds from the redemption of the Acis Notes.

3.  Admit or deny that You had a copy of the Members Agreement in Your possession before You signed the 2021 Agreement.

4.  Admit or deny that You had a copy of the Members Agreement in Your possession before You signed the 2023 Agreement.

5.  Admit that You still retain funds from the proceeds of the redemption of the Acis Notes.

6.  Admit or deny that You have used funds received from the redemption of the Acis Notes to pay Your attorneys' fees and/or expenses in the current proceedings.

7.  Admit or deny that You have used funds received from the redemption of Acis Notes to reimburse You for attorneys' fees incurred in proceedings other than this Lawsuit.

8.  Admit or deny that You were not involved in litigation with HCLOF when You signed the 2023 Agreement.

9.  Admit or deny that on April 14, 2022, HCLOF's counsel advised CLOH's counsel that "[a]s your letter notes, [HCLOF] agrees, and has and continues to state affirmatively its belief that the withholding of the redemption proceeds by US Bank is unlawful under the respective CLO indentures."

10. Admit or deny that the 2021 Agreement was negotiated and executed without any notification to DAF or CLOH.

11. Admit or deny that the 2023 Agreement was negotiated and executed without any notification to DAF or CLOH.

12. Admit or deny that, if enforced, the 2021 Agreement affects CLOH's financial interests.

13. Admit or deny that, if enforced, the 2021 Agreement affects CLOH's rights to bring a legal complaint against Plaintiffs.

14. Admit or deny that, if enforced, the 2023 Agreement affects CLOH's financial interests.

15. Admit or deny that on April 19, 2022 ("April 19, 2022 Letter"), the Chairman of HCLOF's Board advised CLOH that "[i]t is the Directors' opinion, on advice, that there is no credible basis for the litigation being pursued by the [James] Dondero Parties, nor is there a proper basis in law for the withholding of the Company's assets by US Bank."

16. Admit or deny that at the time of the April 19, 2022 Letter, there were no lawsuits ongoing by CLOH or DAF against HCLOF.

17. Admit or deny that at the time of the April 19, 2022 Letter, there were no lawsuits ongoing by CLOH or DAF against Plaintiffs.

18. Admit or deny that no contractual provision in the Indentures states that funds may be withheld from distribution.

19. Admit or deny that no contractual provision in the Portfolio Management Agreements states that funds may be withheld from distribution.

20. Admit or deny that in December 2021, Plaintiffs were advised they were obligated to: "disburse the funds in the Payment Account pursuant to the Priority of Payments set out in the Indentures. *See* Indentures §§ 10.2(d), 11.1."

21. Admit or deny that in December 2021, Plaintiffs were advised "[n]o provision of the Indentures gives the Trustee any discretion to retain or reserve any amount of the funds in the Payment Account."

22. Admit that HCLOF made public statements indicating it would take steps to prevent US Bank and ACM from withholding funds while at the same time privately negotiating the 2023 Agreement to allow such withholding of funds.

23. Admit or deny that HCM terminated Terry for cause.

24. Admit or deny that HCM terminated Terry because of inappropriate conduct with one or more co-workers.

## INTERROGATORIES
## UNDER FED. R. CIV. P. 33

1. Identify with particularity all of the facts which You contend allegedly support Your claim for a declaratory judgment that "the Advisors Act, TIA, and Other Claims are Barred for Lack of Standing."

2. Identify with particularity all of the facts which You contend allegedly support Your claim for a declaratory judgment that "any Claims by Defendants Related to the ACIS CLOs are Barred by the HCLOF Settlement [2021 Agreement]."

3. Identify with particularity all of the facts which You contend allegedly support that Counter-Plaintiffs lack standing to bring their claims.

4. Identify with particularity all of the facts which You contend allegedly support that Your alleged tortious interference with contract is justified.

5. Identify with particularity all of the facts which You contend that Your tortious interference with contract is allegedly supported by the economic interest rule or similar doctrine.

6. Identify with particularity all of the facts which You contend allegedly support that Counter-Plaintiffs have not suffered damages.

7. Identify with particularity all of the facts which You contend that You allegedly have not caused HCLOF to breach the Members Agreement.

8. Identify with particularity all of the facts which You contend that You allegedly did not act with malice in causing HCLOF to breach the Members Agreement.

9. Identify with particularity all of the facts explaining why Terry was terminated from his employment at HCM.

10. Identify with particularity all of the facts which You contend allegedly support that Your tortious interference with contract should be excused.

11. Identify with particularity all of the facts which allegedly support Your defenses to Your tortious interference with contract.

12. Identify all documents and all communications that form any basis for, support, and/or otherwise concerning Your attempts to recover attorneys' fees under § 6 of the 2023 Agreement.

13. Identify all documents and all communications (whether verbal or written) that form any basis for, support, and/or otherwise concerning Your claim or contention that withholding of funds was or is justified.

14. Identify all documents and all communications (whether verbal or written) concerning the Members Agreement, including the negotiation of the same.

15. Identify all documents and all communications (whether verbal or written) that form any basis for, support, and/or otherwise relate to Your alleged defenses to the tortious interference with contract counterclaim.

16. Identify all documents and all communications (whether verbal or written) concerning the 2021 Agreement.

17. Identify all documents and all communications (whether verbal or written) concerning the 2023 Agreement.

18. Identify all documents and all communications (whether verbal or written) that form any basis for, support, and/or otherwise relate to the alleged justification of the 2021 Agreement.

19. Identify all documents and all communications (whether verbal or written) that form any basis for, support, and/or otherwise relate to the alleged justification of the 2023 Agreement.

20. Identify all documents and all communications (whether verbal or written) that You intend to rely upon in support of all of Your factual and/or legal defenses in response to the Counterclaims.

21. Identify all documents and all communications (whether verbal or written) that You contend support Your factual and/or legal defenses to any of the Counterclaims.

22. Identify all documents and all communications (whether verbal or written) that You contend support Your claims and causes of action in this Lawsuit.