# EXHIBIT 15

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JOSHUA N TERRY; U.S. BANK,
     NATIONAL ASSOCIATION, in its
 4   capacity as Trustee; and ACIS
     CAPITAL MANAGEMENT, L.P.,
 5
                      Plaintiffs,
 6
                 v.                         21 CV 11059 (GHW)
 7
     THE CHARITABLE DONOR ADVISED
 8   FUND, L.P.; CLO HOLDCO, LTD.;
     and NexPOINT DIVERSIFIED REAL
 9   ESTATE TRUST,

10                 Defendants.             Conference
                                           (via Telephone)
11   ------------------------------x
                                           New York, N.Y.
12                                         September 22, 2023
                                           1:00 p.m.
13
     Before:
14
                      HON. GREGORY H. WOODS,
15
                                           District Judge
16

17                         APPEARANCES

18   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Plaintiffs Joshua N Terry
19        and ACIS Capital Management, L.P.
     BY:  BLAIR ADAMS
20        MISHA BOUTILIER

21   SEWARD & KISSEL LLP
          Attorneys for Plaintiff U.S. Bank, National Association
22   BY:  MARK D. KOTWICK
          JULIE J. HONG
23

24

25
```

2

```
 1                        APPEARANCES (cont'd)

 2   PARSONS McENTIRE McCLEARY PLLC
          Attorneys for Defendants The Charitable Donor Advised
 3        Fund, L.P. and CLO Holdco, Ltd.
     BY:  SAWNIE A. McENTIRE
 4        ROGER L. McCLEARY
          ALLISON A. JACOBSEN
 5        -and-
     GLENN AGRE BERGMAN & FUENTES LLP
 6   BY:  REID SKIBELL

 7   SBAITI & COMPANY PLLC
          Attorneys for Defendant NexPoint Diversified
 8        Real Estate Trust
     BY:  KEVIN N. COLQUITT
 9
     AKIN GUMP STRAUSS HAUER & FELD LLP
10        Attorneys for Highland CLO Funding Ltd.
     BY:  URI A. ITKIN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  What I'd like to do is to begin by taking

2    appearances from the parties.  I am going to start with counsel

3    for plaintiff.

4          Who is on the line for plaintiffs?

5          MR. ADAMS:  This is Blair Adams from Quinn Emanuel

6    Urquhart & Sullivan on behalf of ACIS Capital Management LP and

7    Josh Terry, and I am also joined by my colleague in the room

8    Misha Boutilier.

9          THE COURT:  Who is on the line for U.S. Bank?

10         MR. KOTWICK:  Good afternoon, your Honor, this is Mark

11   Kotwick from Seward & Kissel on behalf of U.S. Bank.  I am

12   joined by my colleague Julie Hong.

13         THE COURT:  Very good.

14         Who is on the line on behalf of The Charitable Donor

15   Advised Fund?

16         MR. McENTIRE:  Your Honor, this is Sawnie McEntire in

17   Dallas, along with Allison Jacobson, who is with me here in my

18   office, and Roger McCleary, my partner, is also on the phone,

19   for both the DAF and CLO Holdco.

20         THE COURT:  Very good.  Thank you very much.

21         MR. SKIBELL:  Your Honor, also for the DAF and CLO

22   Holdco, this is Reid Skibell of Glenn Agre Bergman & Fuentes.

23         THE COURT:  Very good.  Thank you all very much.

24         Is there any lawyer on the line who has

25   not yet identified themselves?

 1          MR. COLQUITT:  Yes, your Honor.  This is Kevin

 2   Colquitt from Sbaiti & Company on behalf of NexPoint

 3   Diversified Real Estate Trust.

 4          THE COURT:  Thank you.

 5          Is there anyone else who has not yet identified

 6   themselves?

 7          Hearing none, let's begin.

 8          The first thing I'd like to do is just to remind the

 9   parties that this is a public proceeding.  As a result, any

10   member of the public or press can dial into this call.

11          Second, please state your names each time that you

12   speak.

13          Third, please keep your lines on mute at all times,

14   except when you're speaking to me or to a representative of a

15   party.

16          Next, please abide by instructions from our court

17   reporter that are designed to help the court reporter do their

18   job.

19          Finally, I am ordering that there be no recording or

20   rebroadcast of all or any portion of today's conference.

21          Counsel, I scheduled this proceeding in order to

22   address some discovery-related issues that were raised in a

23   pair of letters submitted by the parties.

24          Again, let me ask everybody to please keep your phones

25   on mute, even if you don't think there is background noise,

1    because there is some background noise that's coming across.

2              Those are September 6 and September 13 letters by the

3    parties.

4              But what I'd like to do is to begin by just asking the

5    parties to help me frame the conference.  The September 6

6    letter was presented in accordance with my rules, framed as a

7    premotion conference request letter.

8              The first issue, therefore, that I want to take up

9    with the parties is whether I should indeed treat it as that,

10   namely, request for leave to file fulsome briefing regarding

11   the issues presented here, or if it is the parties' desire that

12   I endeavor, to the extent possible, and no promises that I

13   would be able to resolve everything, but that I endeavor, to

14   the extent possible, to resolve the issues presented on the

15   basis of the letter and any argument that you present here.

16             I ask that as a threshold question because it will

17   affect how I proceed with the remainder of today's conference,

18   insofar as it pertains to the issues raised in that letter.

19             Let me hear from each of the parties.  Let me hear

20   from each set of plaintiffs first.  Let me start with the DAF

21   parties first.

22             Counsel, what's your view?

23             MR. McENTIRE:  My name is Sawnie McEntire on behalf of

24   the DAF and CLOH.

25             Your Honor, I believe a motion may be appropriate for

1    the following reasons.  In attempting to digest multiple

2    objections, synthesized multiple objections made by three

3    different parties and how they have kind of cross-pollinated

4    with each other, you really need a very long road map, and I am

5    not sure that the letter that we have submitted does that

6    justice.

7            In preparing for this hearing, I have endeavored to

8    try and put the arguments into small categories to make it

9    easier for the Court, but my instinct tells me that ultimately

10   it's a difficult walk, and that's why I'm concerned that maybe

11   a motion would be appropriate, if not necessary.

12           THE COURT:  Thank you.  That's fine.  I'm happy to

13   proceed in that way.  As I said, it affects how I want to

14   proceed here.

15           I'm happy to grant the parties the opportunity to

16   fully brief this.  I agree that there are a number of issues

17   presented here, and I certainly don't want to shortchange

18   anyone with respect to the opportunity to present the issues

19   clearly to the Court.

20           What I'd like to do then is to focus on a couple of

21   things.  First, My hope is that I'll be able to take advantage

22   of this time to hear from you to help me frame the conversation

23   for when we ultimately -- when we, that is, I and my chambers

24   staff, ultimately resolve the motion.  I would give the parties

25   the opportunity to elaborate on any of the arguments that you

1   have presented in your letter.

2          I have some questions that I'd like to focus you on,

3   based on my review of the letter, and I also have some

4   thoughts, based on my review of the letter, about things that

5   would be helpful for me to see from you in your briefing.

6          Let me start with the latter first, and then I'll open

7   the door to a discussion of the issues presented to help me

8   frame my assessment of the submissions presented ultimately.

9          A number of the arguments presented in the letter

10  relate to contentions that certain claims are, or I should say,

11  requests for production are duplicative.  The parties pointed

12  me to your underlying letter.

13         I think that what would be useful for the Court in

14  evaluating contentions that certain requests are duplicative in

15  nature would be for me to have a table.  The table would have a

16  series of columns.  One column would obviously consist of the

17  statement or requests that's asserted to be duplicative,

18  another column would note what prior request or requests it is

19  purportedly duplicative of, and then another column would

20  explain, to the extent it would be helpful for the Court, and

21  it would be helpful for the Court, why you believe that the

22  requests are duplicative.  So basically a chart that would help

23  me track allegedly duplicative requests would be very helpful

24  for me to evaluate that portion of the parties' contentions.

25         That's the principal note I wanted to make regarding

1     the ultimate briefing that's presented to the Court on that

2     issue.

3              What I'd like to see now is if I can open the floor to

4     some more discussion of the issues that are going to be

5     presented to the Court.  If I can, what I'd like to do is to

6     try to frame the conversation by reference to certain of the

7     categories of disputes.

8              The first that I'd like to hear from the parties about

9     are the arguments regarding timeliness, and those arguments are

10    driven largely by the language of the extension request that

11    the Court entered back in July in response to the parties' July

12    10 letter.

13             So let me hear first from counsel for DAF on that

14    issue, and then I'll hear from the remaining parties with

15    respect to that issue.  My hope is that we can walk through

16    each of the buckets of issues raised in the letter to help me

17    understand better the positions that you will present in your

18    written submissions.

19             Counsel for the DAF parties, let me hear first from

20    you on that.

21             MR. McENTIRE:  Yes, your Honor.

22             Your Honor, pursuant to the parties' stipulation, the

23    parties agree that additional discovery would be allowed if

24    served on or before July 21 of this year.  There was a caveat.

25    The caveat relates to new claims and defenses.  There is the

1    issue concerning timeliness.

2         At the time that we filed -- it had to relate to new

3    claims or defenses that arose after April 14 of 2023, when the

4    case management order was first issued.

5         At the time we filed our counterclaim, our original

6    counterclaim, and I can give you the date, it was on March 20

7    of 2023, we did not have in our possession a 2023 settlement

8    agreement.  That is one of the cornerstones of our

9    counterclaim.  We have been advised that there was a

10   settlement, and we simply dubbed it the 2023 settlement

11   agreement, for lack of a better term, because we did not know

12   its terms and we are not in possession of it.  In fact I would

13   ask the Court to recall that actually we raised this as an

14   issue in one of the hearings, and the Court, although not

15   instructing, suggested it would be wise that the 2023 agreement

16   be produced to us.  It finally was, but we did not obtain a

17   copy of that until May 15 of this year, and that was actually

18   attached to the new motion to dismiss that the plaintiffs had

19   filed.  That was a brand-new document we had never seen before.

20        There are details in the document that we are invoking

21   as part of our counterclaim for tortious interference, and many

22   of our requests relate specifically to that document.  I did

23   actually prepare a table for myself and of all the requests for

24   productions, I identify at least ten, if not more, that I could

25   legitimately and fairly say I think are attributable to new

1    claims that have arisen.

2            Our goal here is to obtain discovery concerning

3    documents that we had never seen before, and the terms drive

4    some of our allegations in this case.  Hopefully I have

5    answered the Court's question.  That's some of the types of

6    discovery we are seeking.  We timely served all of our

7    discovery within the deadline provided in the stipulation.  The

8    issue then is whether or not it relates to new claims or

9    defenses.

10           THE COURT:  Thank you.  Understood.  I appreciate that

11   framing.

12           Let me invite comment on the request for admissions

13   and interrogatories.  My understanding of the other parties'

14   contention is that those requests are all of your requests for

15   admission and all of your interrogatories and that they covered

16   the waterfront of claims in the case rather than being limited

17   to what can be described as the new claims.

18           How do you respond to that?  What is your view with

19   respect to the requests for admissions and interrogatories,

20   separate and apart from the ten odd RFPs that you contend fall

21   within the scope?

22           MR. McENTIRE:  I understand the question.

23           I've also done another chart to help me understand

24   exactly the nature of the objections.  I count roughly 13 or 14

25   of the interrogatories that they object to on the basis that it

1   is untimely under our stipulation.  They also object that it's

2   premature, which is somewhat kind of inconsistent, but I'll

3   address the timeliness aspect first.

4           There are several here.  Several of our

5   interrogatories have nothing to do with the claims as they

6   existed in our original counterclaim.  We are now currently

7   suing for tortious interference.  Some of the interrogatories

8   deal with issues concerning justification, the

9   economic-interest rule, the breach of the members agreement,

10  documents supporting defenses to the interference claims,

11  recovery of attorneys' fees under the 2023 agreement, which we

12  didn't even know existed until the document was produced in

13  May.  All these deal with the current counterclaim.  And there

14  are others.

15          But, by way of example, there are multiple

16  interrogatories that under no analysis that we believe fairly

17  can be considered to be untimely under the stipulation.

18          There is a separate category of being premature, which

19  I'll hold my thoughts on that until the Court wishes for me to

20  speak.

21          THE COURT:  Good.  Thank you.

22          Let me turn to counsel for plaintiffs.  I'll invite

23  any representative of the plaintiffs to speak.  Please just

24  identify yourself for the record as you do so.

25          At this point let me ask you to respond to the issues

1   related to the timeliness of the request, and we will move

2   along to the other buckets as we proceed.

3          Counsel.

4          MR. ADAMS:  Thank you, your Honor.  This is Blair

5   Adams, for the record, on behalf of ACIS Capital Management LP

6   and Josh Terry.

7          Your Honor, I think it would be helpful to take a step

8   back and consider the context in which we entered into the

9   modified scheduling order on July 10, 2023.  All the parties

10  signed onto a joint letter to the Court where the parties

11  stated that they respectfully seek a brief extension of fact

12  discovery from July 13, 2023 until September 15, 2023 to

13  complete depositions, which the parties have been unable to

14  schedule prior to the current close-of-fact-discovery deadline.

15         Then it goes on to say:  The parties do not seek an

16  extension of written discovery deadlines in paragraphs 7B, C,

17  D, and E of the CMO except, and there are two exceptions; one

18  is relevant here -- to permit the parties to serve further

19  written discovery by July 21, 2023 concerning any new matters,

20  allegations, or claims raised by any party's amended pleading.

21  And the relevant amended pleading here is the amended

22  counterclaims that were filed by the DAF parties.

23         When we agreed to stipulate to this new schedule, we

24  had substantially completed our document discovery a month

25  earlier, in the middle of June, and we only agreed to the

1    extension of the schedule on the condition that we wouldn't be

2    asked to go back and start over again.

3          And the reason for that is because we had agreed to

4    respond to substantial discovery and had in fact responded to

5    substantial discovery already.  We had reviewed 35,000

6    documents, hundreds of thousands of pages.  The parties,

7    between my client and U.S. Bank and Brigade, had produced

8    nearly 10,000 documents.  We had gone to substantial effort and

9    agreed to broadly produce the documents that were requested,

10   including agreeing to broadly produce, in response to RFPs from

11   the DAF parties, 47 of them, RFPs that were served on April 14.

12         We served our responses and objections to those RFPs

13   prior to the revised CMA.  We performed our review of

14   documents, 35,000 of them, prior to the CMA.  The parties met

15   and conferred after our responses and objections on May 24,

16   2023.  No issue was raised with respect to the scope of what we

17   had agreed to produce.  And then we entered into this amendment

18   to the scheduling order on the condition that the only thing

19   that would be reopened for document discovery, including

20   interrogatories, would be new matters that were raised.  And

21   the only new matter, the only new factual matter that was

22   raised in the amended counterclaims relates to this HCLOF

23   members agreement.  So we have agreed to produce documents in

24   response to requests related to the members agreement.

25         The other documents requested by the 45 additional

1    RFPs that were produced or that were served on us on July 21,

2    2023 are, number one, not related to new matters that were

3    raised by the amended counterclaims and, number two, are

4    essentially wholly duplicative, and we take your Honor's point.

5    We have done the work and we will -- we are happy to provide a

6    chart that walks your Honor through that duplicativeness with

7    the prior RFPs.

8           But I will note that the lead example we heard from

9    the DAF parties today regarding documents related to the 2023

10   agreement and how they didn't have that agreement, so that they

11   needed to serve supplemental requests relating to that

12   agreement, is wholly inaccurate because they asked for all

13   documents related to the 2023 settlement agreement when they

14   first served their 47 requests on us on April 14, 2023, and we

15   agreed to produce all documents and communications related to

16   that agreement.

17          I don't know what the DAF parties believed that was

18   not produced.  I do know that there is not an iota of evidence

19   in the record to support the notion that there was any

20   collusion, and maybe that is why they are coming back, to try

21   and find more.

22          The idea that they can go back and seek additional

23   discovery now, they can repeat requests that they made back in

24   April, in August and that somehow revives their ability to

25   renegotiate the scope of discovery that had long been agreed

1    upon I think is improper to impose the immense burden on the

2    plaintiffs here.  I don't think it would be appropriate.  I

3    will also note that -- on RFPs I will leave it there, your

4    Honor.

5           On the interrogatories, number one, the

6    interrogatories broadly relate to allegations that existed in

7    the original complaint, in the original counterclaims, and

8    they, therefore, should be prohibited for the same reason.

9    Even if they were not, the interrogatories are not appropriate

10   under the clear case law of this district.

11          If you look at the *Keurig* case, your Honor, the Court

12   held that courts do not typically compel responses to

13   interrogatories that seek a catalog of all facts or all

14   evidence that supports a party's contentions because such

15   interrogatories are not likely to narrow the issues.

16          Well, the first 11 interrogatories ask us to identify

17   with particularity all facts related to a number of issues,

18   like their lack of standing, why the 2023 settlement agreement

19   bars their claims, various things related to the tortious

20   interference claim.  It is a carbon copy of the type of request

21   that the courts in this district have said are not appropriate.

22          And interrogatories 12 through 22 are even worse.

23   They ask for all documents and all communications, whether

24   verbal or written, concerning a number of issues, like the

25   members agreement, the defenses to tortious interference, the

1    2021 and 2023 settlement agreement.  Those documents, to the

2    extent they exist, have been produced.  All the parties have

3    them, and what they are asking us to do is go through and

4    catalog our case before summary judgment, before expert reports

5    go in; if not, a request that will move the parties forward.

6    It is a request that will impose a substantial burden on us to

7    no real end.  We believe the interrogatories are improper, both

8    because they don't comply with the scheduling order and because

9    substantively they are just not proper under this district's

10   rules.

11           THE COURT:  Thank you.

12           Let me go back to counsel for plaintiff just for a

13   response to the argument regarding the framing of the

14   contention interrogatories, and then I would like to return to

15   a discussion of the buckets of issues presented here.

16           I think that the next issue that we will talk about

17   will be, broadly speaking, related to the propriety of

18   discovery related to additional discovery related to the Terry

19   termination.  That would be helpful to me.

20           But, first, counsel for plaintiff, how do you respond

21   to counsel's arguments regarding the nature of the contention

22   interrogatories presented here?

23           MR. ADAMS:  When you say plaintiffs, are you referring

24   to the DAF, your Honor?

25           THE COURT:  I'm sorry.  I apologize.  Yes.  I

1    apologize.  Thank you.

2          MR. McENTIRE:  This is Sawnie McIntyre on behalf of

3    the DAF and CLOH.

4          I have looked at all of their objections.  I think

5    many of our interrogatories are proper.  I don't think that

6    they violate any of the case law that he's identified.  They

7    very clearly, very clearly focus on new claims, and they are

8    refusing to provide any information at all.

9          If I can't get the information through the

10   interrogatories and they won't give me the documents, I'm up

11   against a very cold stone wall and that's kind of -- they are

12   not giving me an option because they are also refusing to give

13   me the documents.  They have basically just said, we are not

14   answering this interrogatory, period.

15         THE COURT:  Thank you.

16         MR. McENTIRE:  Yes, sir.

17         THE COURT:  Anything else regarding his arguments with

18   respect to the framing of the request here?  He has contended,

19   as you heard, that these interrogatories seek too much detail.

20   How do you respond?

21         MR. McENTIRE:  I don't think they do, your Honor.  I

22   can go back and I can -- I will take each one one by one and

23   describe exactly why we think they are focused and rifle shot.

24         THE COURT:  That's fine.  We can take that up in the

25   context of your briefing.

 1          Let's turn back to discussion regarding what I'll

 2    describe as the relevance objection.  Again, you'll have the

 3    opportunity to present your arguments to me on these topics in

 4    full in your briefs, but since you are here, I would like to

 5    take advantage of the opportunity to hear from you.

 6          There are two categories of information that seem to

 7    be particularly pertinent here:  First, the ACIS 4 and 5 CLOs

 8    and also your arguments regarding the relevance of the

 9    information regarding the use of the withheld funds.

10          Let me start with the first of those two buckets,

11    which is the information about the ACIS 4 and 5 CLOs.

12          Can I start with counsel for plaintiffs on this one.

13    I know from your letter that you have provided some information

14    for ACIS CLO 6.  What's different?  Why is there information

15    about 4 through 5 not relevant but 6 is, if that's the

16    contention?  Can you help me understand the facts here?

17          MR. KOTWICK:  Your Honor, Mark Kotwick, Seward &

18    Kissel on behalf of U.S. Bank, your Honor.

19          To take a step back to understand the three CLOs,

20    you've got 4, 5, and 6, three separate discrete vehicles.  The

21    claims that have been brought by NexPoint in this action, not

22    DAF, but NexPoint, relate broadly to allegations of

23    mismanagement, including expenses that were charged with

24    respect to 6.  There have been no allegations of mismanagement

25    of 4 and 5.

1          The trustee, U.S. Bank, produced the information with

2     respect to 6 in response to NexPoint's request, including these

3     daily cash files and the electronic reports that are referenced

4     specifically by the DAF parties.  Those two types of documents

5     are kind of the granular line item of accounting for the

6     history of the kilos.

7          DAF now seeks the same information with respect to 4

8     and 5.  NexPoint has not asked, or we have not produced

9     information with respect to 4 and 5 because they weren't

10     holders in 4 and 5, and neither the DAF nor NexPoint have made

11     any allegations about the expenses related to 4 and 5.

12          The only issue that DAF has raised with respect to all

13     three kilos is the holdback of money from the distributions to

14     secure the indemnity obligations of the issuer.  So from our

15     perspective, from U.S. Bank's perspective, there are no

16     allegations with respect to mismanagement or inappropriate

17     expenses with respect to 4 and 5., and that's what the

18     documents that they seek would go to.

19          The DAF parties make broad allegations, well, we need

20     these documents about the expenses with respect to 4 and 5

21     because they somehow relate to the reserves.  Well, they don't.

22     They don't.  There is no dispute over the fact that the

23     reserves were withheld.  There is no dispute over the amounts

24     of the reserves that were withheld.  Documents have been

25     produced showing the amounts that were withheld.  Documents

1    were produced that show the expenses or the withdrawals from

2    the reserves going up through, I think, April and the balances

3    of those reserves there.

4           The documents with respect to the historical expenses

5    of the reserves for 4 and 5 have no relevance.  They have no

6    relevance to NexPoint's claims and they certainly have no

7    relevance to the DAF parties' claims.  The DAF parties' claims,

8    remember, go to these two agreements, the 2021 agreement and

9    the 2023 agreement, and whether those agreements are

10   enforceable.  They go to whether or not there is evidence that

11   HCLOF were the actual holders of the subordinated notes behind

12   which DAF and Holdco sit breached their agreement with the

13   holders, with the DAF parties and whether there is evidence

14   that the trustee and the portfolio manager colluded or

15   tortiously interfered with their relationship.

16          And the allegations go to whether or not under the

17   indenture and the related transaction documents the trustee and

18   the portfolio manager have the authority to hold back money

19   from the distributions to secure the indemnity allegations of

20   the issuer.

21          There are no allegations at all with respect to the

22   expenses.  There are no allegations at all that go to how the

23   reserves are being spent, to the extent that the DAF parties

24   want to try to extend that.

25          Their position is, as I understand it, that the

1    reserves have no basis in law or in fact under the documents,

2    and it is not that there is a basis for the reserves, but it's

3    how the reserves are being spent.  There are allegations that

4    there is no authority under the documents to hold back the

5    reserves, and we have produced everything that we have with

6    respect to that matter.

7            That, in a nutshell, is why the documents with respect

8    to 6 are arguably relevant to NexPoint's claims and have been

9    produced and have been shared with the DAF parties and why the

10   documents concerning 4 and 5 that the DAF parties seek have no

11   relevance to any claims, not NexPoint's and certainly not the

12   DAF parties.

13           THE COURT:  Thank you, counsel.  That's helpful

14   context.

15           Counsel for the DAF parties, your reaction.

16           MR. McENTIRE:  Yes, your Honor.  The historical

17   management fees and expenses relating to ACIS 4 and 5 are

18   relevant because the amended complaint in this case, as well as

19   the original complaint, certainly the amended complaint,

20   alleges that the DAF parties are vexatious litigants somehow

21   tied to Jim Dondero, which we deny and have consistently

22   denied, and the further allegation that the claims that were

23   asserted in the 2019 and the 2020 lawsuits, where the ACIS 4

24   and 5 were put into issue, the allegation that the plaintiffs

25   have made that those claims were without merit.

1        They are using those as cornerstones to try to

2    convince this Court, and perhaps ultimately a jury, that their

3    actions are justified or somehow privileged, because they are

4    trying to minimize the risk of litigation involving meritless

5    claims.

6        Setting aside the fact, as the Court knows, our

7    position was, we were not threatening claims when this current

8    lawsuit was filed, they have advanced that allegation.  The

9    Court has denied our subject-matter jurisdiction challenge, and

10   that allegation remains in the case.  As long as that

11   allegation remains in the case, we are entitled to try to

12   demonstrate that there were excessive fees taken, that the

13   collateral quality tests did fail, and actually did fail, and

14   we gave this information to our expert to opine that these

15   claims that were made in 2019 and 2020 indeed did have

16   colorable, plausible merit.  That's number one.

17       Number two, I have to correct counsel's statement.  We

18   do make claims concerning the current use of the reserves.  We

19   are taking the position all the reserves are improperly

20   withheld, some of which perhaps one day we may get, but it's

21   not clear that we will ever get reserves.  But some of the

22   reserves are being wasted right now, to the point where we will

23   know we will never get them.  And that comes in the forms of

24   fees and expenses that are continuing to be taken out by U.S.

25   Bank and perhaps by ACIS, payment of attorneys' fees, and so

 1   all of their expenses, which would ostensibly include

 2   attorneys' fees expenses and expenses of this litigation, is,

 3   our opinion, is a waste.  It's not properly held back for

 4   indemnity purposes.

 5           And we are entitled to know that for our damage

 6   claims.  And we are entitled to know that for purposes of

 7   showing malice.  And we are entitled to know that in order to

 8   establish the level of the interference.  And we are entitled

 9   to show that in order to reinforce our claims of the breach of

10   good-faith duty by HCLOF.  Both historically and current, it's

11   all relevant.

12           Just the fact that they are withholding the money

13   doesn't tell the entire story.  How they are using the money

14   and the fact that HCLOF allowed them to use if not hundreds of

15   thousands or millions of dollars to subsidize the litigation

16   that they started against us, I think it's very relevant,

17   Judge, your Honor.

18           MR. ADAMS:  Your Honor --

19           THE COURT:  Please identify yourself.

20           MR. ADAMS:  This is Blair on behalf of ACIS Capital

21   Management and Josh Terry.

22           I want to make one point of clarification in addition

23   to what Mr. Kotwick said.  I want to make sure it's very clear

24   for your Honor.

25           We have obviously produced the 2023 settlement

1    agreement.  And attached to the 2023 settlement agreement,

2    which is from I think February 28, 2023, is an accounting of

3    all amounts spent out of the reserves up until that point.

4    They can see every dollar coming out of the reserves and what

5    it was spent on until February 28, 2023.

6            There is no surprises in there.  You've got Seward &

7    Kissel on the line representing U.S. Bank.  Money was spent to

8    pay them.  You've got Quinn Emanuel on the line representing

9    ACIS Capital Management and Josh Terry.  There is money going

10   to Quinn Emanuel.  You've got Latham & Watkins representing

11   Brigade, who is another defendant in the NexPoint action.  You

12   have funds going to pay those attorneys.

13           They know through at least February 28, and I believe

14   they also have, spending through April, every dollar that came

15   out of the reserves.  What they are asking for now, I guess, is

16   an ongoing production of how much money their adversary in this

17   litigation has spent and how much they have left, and I think

18   that that's a very invasive type of discovery.  It's

19   inappropriate.  And I don't think it's done for a proper

20   purpose.  And I think it should be approached with great

21   caution.

22           I think that when you take a step back and you

23   understand that they have this granular information up through

24   earlier this year, it's hard to imagine what other information

25   they could be legitimately seeking.  So that is the -- both the

1    clarification -- I just want to make sure it was absolutely

2    clear, they have information about the reserves for all three

3    deals, and they have it up through the beginning of this year.

4            Then the last thing I want to say, your Honor, is that

5    I think that our claims in this case have been

6    mischaracterized.  We are seeking a declaratory judgment

7    regarding their standing to pursue claims.  They are suing in

8    relation to an allegation that we colluded in entering into two

9    settlement agreements.

10           There are other allegations, as Mr. Kotwick mentioned,

11   that NexPoint has brought in relation to ACIS 6, and those are

12   a separate issue, and we have agreed to produce certain

13   documents related to ACIS 6 on those other allegations.  But

14   with respect to our claims vis-a-vis the DAF parties and the

15   ATF claims vis-a-vis us, the notion that it gets into the

16   broad-based underlying conduct is not accurate.

17           Thank you, your Honor.

18           THE COURT:  Fine.  Thank you, counsel.

19           Let me take advantage of your time just to hear about

20   one other issue that I alluded to earlier, which is -- again,

21   I'll see your briefing on this, but I appreciate the context

22   that you're providing here -- which is about the requests for

23   information about what I'll describe as the Terry termination.

24           I'd like to start here with counsel for the DAF

25   parties.  Again, I will see your arguments in the briefing, but

1    you see the contention by the other parties that this request

2    is disproportionate to the needs of the case and is unduly

3    burdensome because of the substantial record that was developed

4    in the arbitration and discovery presented there.  They point

5    to 170,000 plus pages of arbitration transcripts and exhibits.

6         Can you comment on that argument.  What's the

7    incremental value of the additional discovery that you seek on

8    that topic, given its purpose?

9         MR. McENTIRE:  First of all, our requests are not

10   broad.  They are very focused, I believe, rifle shot again.  I

11   can pull them up, but I know one of which is to direct

12   communications with Mr. Dondero concerning issues relating to

13   compensation.  I don't believe all of those issues have made

14   its way or was part of the arbitration record.  There are

15   several items that we could go through and identify that are

16   not specifically part of that arbitration record.  Mr. Terry's

17   state of mind is very relevant here.

18        Again, their argument, your Honor, is that Jim Dondero

19   is some type of oz behind the curtain, some wizard behind the

20   curtain pulling the strings, which is not true.  But even

21   assuming for a moment and indulging that argument, Mr. Terry

22   does not like Mr. Dondero.

23        So the documents that we were asking for are

24   calculated to reinforce that particular aspect of this case,

25   showing motive and malice.  Because Mr. Terry is ACIS and ACIS

1    is Mr. Terry, and they decided to bring this lawsuit, our

2    position was, this lawsuit was totally unnecessary.  It's

3    necessary now, in light of the '21 and the '23 settlement

4    agreements.  We have to bring this lawsuit now, our

5    counterclaim.

6              That would be my response.

7              THE COURT:  Thank you.

8              Counsel, accepting the purpose is to show that

9    Mr. Terry doesn't like Mr. Dondero, as you have described, the

10   question I expect I'll be focused on is, what's the incremental

11   value of this additional discovery?  What's the value of the

12   additional discovery relative to the anticipated, I'll call it,

13   value of the incremental discovery?  Why can't you tell the

14   story that he doesn't like him because he fired him, without

15   this additional discovery?

16             MR. McENTIRE:  Your Honor, are you directing that

17   question back to me again?

18             THE COURT:  Yes.  Thank you.

19             MR. McENTIRE:  I apologize.  I misunderstood.

20             I don't believe that the arbitration record is going

21   to be complete for us to tell that story.

22             Many of the document requests that we are advancing

23   are not necessarily encompassed by the materials that are part

24   of the arbitration record, and I think we can -- hopefully, we

25   can adequately brief that for the Court.

1          THE COURT:  Good.  Thank you.

2          Counsel for either set of plaintiffs, would you like

3     to comment on this topic.

4          MR. ADAMS:  Your Honor, Blair Adams for ACIS Capital

5     Management and Josh Terry.

6          I don't think there is any incremental value to the

7     additional requests other than to harass and impose burden.

8     There is a huge record with the arbitration.  The facts of the

9     arbitration and the decision are known.  The panel found that

10    Mr. Dondero made allegations against Mr. Terry and his

11    workplace conduct that were fabricated.  Anyone who wants to

12    tell a story about the history between these two individuals

13    has plenty of record with which to work.  I don't think that

14    this is a request that is one that will add any value to the

15    case.

16         THE COURT:  Thank you.

17         I apologize because I have a hard stop coming up.

18         I'd like to turn to the other letter that pertains to

19    the stay of discovery regarding the claims against HCLOF.  What

20    I'd like to do is to ask the same framing question.  I frankly

21    assumed that the same answer applied, namely, whether the

22    parties would like for the Court to engage with this issue

23    after receiving further briefing from the parties or if you'd

24    like for me to endeavor to resolve it on the basis of your

25    letters or letter, and any additional argument that you'd like

1   to present.

2           I do want to talk about the impact, if any, of this on

3   the opposition deadline for the motion, which I'm sure is top

4   of mind.

5           Let me start, if I can, with counsel for the DAF

6   parties.  I have the same threshold question that I asked at

7   the outset.  I asked it the first time around, after having

8   specifically referenced the September 6 letter, so it's not

9   clear that you would have understood me to have been referring

10  to the 13th letter as well.

11          Is this an issue that you want to present further

12  briefing on to the Court before I resolve it, or is it

13  something that you believe we can resolve on the basis of the

14  letter and arguments?

15          MR. McENTIRE:  Your Honor, I don't believe that

16  Mr. Uri Itkin is on this line.  I believe he advised us

17  yesterday, my partner, Mr. McCleary, that he did not see that

18  he was going to be participating in this call, so I feel a

19  little uncomfortable about arguing the merits of our position

20  in his absence.  I wanted to bring that to the attention of the

21  Court immediately.

22          It does have tremendous impacts on many issues,

23  including our response deadline which, frankly, is today

24          MR. ITKIN:  This is Uri Itkin on behalf of HCLOF.  I

25  did tell Mr. McIntyre and his partner that we weren't planning

 1   to make an appearance based on your minute letter that only

 2   referenced the prior letter.

 3          I am on now.  If you would like to talk about the

 4   September 13 letter, that's totally fine.

 5          THE COURT:  Thank you.

 6          Counsel, if you are not prepared to do that, I'm happy

 7   to set another date.  I appreciate the fact that you are here.

 8          Let me just ask the threshold question, counsel,

 9   because I certainly want you to have ample opportunity to

10   respond.

11          What is your view, counsel for HCLOF, about whether

12   you would like to brief this issue or this is something you

13   believe we can resolve through discussion and through the

14   parties' presentation and your letter together with my review

15   of the incoming motion?  How do you think it affects the

16   deadline for your opposition?  Counsel, any comments?  Again,

17   I'm happy to take this up in a subsequent conference early next

18   week, if that will be better for you.

19          Go ahead.

20          MR. ITKIN:  Thank you, Judge.

21          To answer your question, Judge, we believe that we

22   don't need any further briefing.  This can be resolved based on

23   the letter alone.  To the extent any further briefing is

24   warranted, we believe that should follow the conclusion of the

25   motion-to-dismiss briefing.  That's what, your Honor, I

1    believe, held at the August 3 conference, and I don't think

2    there is anything, in fact I know there is nothing that should

3    change that calculus.

4              THE COURT:  Thank you.  I'll comment on that in a

5    moment.

6              Let me do this.  Let me hear from the other side on

7    this topic.

8              Counsel, is this something that you believe we should

9    brief and, secondarily, is this something that we can defer

10   resolution of until the motion itself is fully briefed?

11             MR. McENTIRE:  Your Honor, again, we prefer a motion

12   for the following reasons.  We were operating under a 25-page

13   limit in responding to HCLOF's motion here, which is a

14   multipronged.  12(b)(1), 12(b)(2), 12(b)(6), international

15   comity, *forum non conveniens*, I believe, covers the waterfront.

16             So we have been very limited in the space that we have

17   in order to argue the need for the discovery that we requested.

18             Likewise, the letter does not do justice to the fact

19   that we have not obtained any discovery at all relating to

20   HCLOF, notwithstanding the fact that HCLOF argued to this Court

21   back when the stay was granted that we would have alternative

22   pathways to obtain this discovery.

23             We have not gotten it here in connection from the

24   existing plaintiffs because of the objections that we just have

25   reviewed or discussed.  We have not gotten it from HCLOF.

1        HCLOF suggested that we can initiate or do discovery

2   in Guernsey.  We tried, and it was rebuffed, for lots of

3   reasons.  I don't think that this type of discovery is even

4   proper in Guernsey, but he suggested that we could pursue it in

5   Guernsey.

6        He then suggested that we could be relegated just to

7   the 84 or 85-page affidavit that they submitted, but, your

8   Honor, in all due deference to both counsel and the Court, that

9   84 or 85-page declaration or affidavit they produced, one, I am

10  not sure could actually be used in this court; number two, it

11  is self-serving and does not provide true discovery, meaningful

12  discovery that we are entitled to obtain.

13       Focusing now specifically on jurisdictional discovery,

14  we had to postpone, unfortunately, U.S. Bank's deposition due

15  to my illness on Monday.  I was hoping to go forward with that

16  deposition in connection with various jurisdictional discovery

17  issues.  We have not been able to do that.

18       We have many questions that we would be able to

19  propound and can propound to HCLOF all related, at a minimum,

20  just to jurisdictional issues.

21       I think a motion is necessary and it does have a

22  direct impact on the merits of their motion.  We have done our

23  very best to respond to it, and we will respond to it today, as

24  the Court has indicated.  We need discovery from HCLOF.

25       This is a case where they have raised significant

1  12(b)(2) issues, but we have no opportunity to take any

2  discovery regarding those 12(b)(2) issues.

3         This is a situation where they are invoking

4  international comity in the jurisdiction of -- this is properly

5  in Guernsey, but I think that they know that's not really the

6  case.

7         I believe a motion is appropriate, your Honor.

8         THE COURT:  That's fine.  Let's take our remaining

9  time then to work on a schedule.

10        Counsel for the DAF parties, I'd like to set a

11  relatively tight schedule for this so we can resolve it

12  promptly.

13        Counsel, when would you propose to file a motion,

14  which I understand would address both sets of issues, both

15  requests to take jurisdictional discovery with respect to that

16  issue and then, also, the issues pertaining to the issues

17  presented in the September 6 letter.  Those could be in two

18  separate motions, depending on how you wish to frame it.  It

19  may make the most sent to do that.

20        Counsel for the DAF parties, what's your proposal?

21        MR. McENTIRE:  Can I have both motions on file by a

22  week from today?

23        THE COURT:  Fine.

24        Counsel for plaintiffs, let me hear first from you.

25  How long will it take for you to respond?

1          MR. ADAMS:  Obviously, I have not consulted.  I guess

2    not obviously.  Maybe I should have.  I have not consulted with

3    counsel for U.S. Bank, but I would ask, maybe ten days,

4    something like October 10 or October 11.

5          THE COURT:  Thank you.

6          Let me just do this so you don't have to do all this

7    work on the fly and coordinate schedules.  I accept the

8    proposed starting date suggested by counsel for the DAF

9    parties.  I would like to set an expedited briefing schedule

10   for this so it can be resolved promptly.

11         After we adjourn, which will happen in just a moment,

12   counsel, you should feel free to stay on the line here after I

13   hang up and the court reporter goes off the line to discuss

14   these issues so that you can respond promptly, if you wish,

15   understanding that it is an open line and your conversations

16   will be available to the public, which might be a reason to

17   reconvene on a separate line.

18         But I am going to ask that you submit a joint letter

19   to the Court with your proposal regarding the schedule.  I will

20   endorse that schedule, if I believe it's acceptable.  We know

21   what the starting point will be, and I'm encouraging the

22   parties to try to set a schedule that we will have the motion

23   fully briefed promptly.  My hope is to be able to be in a

24   position to resolve it no later than mid-October.

25         Very good.

```
 1              Anything else that we have to take up here before we
 2   adjourn?
 3              First, counsel for plaintiffs.
 4              MR. ADAMS:  Nothing, your Honor.
 5              THE COURT:  Thank you.
 6              Counsel for the DAF party.
 7              MR. McENTIRE:  No, your Honor.
 8              THE COURT:  Thank you.
 9              Counsel for HCLOF.
10              MR. ITKIN:  No, your Honor.  Thank you for your time.
11              THE COURT:  Thank you, all.
12              (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25
```