UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiffs,<br><br>-against-<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>Defendants. | Case No. 1:21-cv-11059 (GHW)<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF COUNTERCLAIM
DEFENDANT HIGHLAND CLO FUNDING, LTD.'S MOTION TO DISMISS**

AKIN GUMP STRAUSS HAUER & FELD LLP

One Bryant Park
New York, NY 10036

*Attorneys for Highland CLO Funding, Ltd.*

**TABLE OF CONTENTS**

                                                                                                             **Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

       I.       The Court Lacks Personal Jurisdiction Over HCLOF ............................................. 3

       II.      The Court Also Lacks Subject Matter Jurisdiction Over The
                 Counterclaims Against HCLOF ............................................................................... 5

       III.     The Doctrines Of *Forum Non Conveniens* And International Comity Also
                 Compel Dismissal .................................................................................................... 6

                A.      The CLOH Parties Have No Answer To *Forum Non Conveniens* ............... 7

                B.      The CLOH Parties Have No Answer To International Comity ................... 8

       IV.     The Counterclaims Also Fail To State Claims For Relief ........................................ 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aenergy, S.A. v. Rep. of Angl.*,
    31 F.4th 119 (2d Cir. 2022) ............................................................................................7

*Alfandary v. Nikko Asset Mgmt. Co.*,
    337 F. Supp. 3d 343 (S.D.N.Y. 2018)..............................................................................5

*Anagnostou v. Stifel*,
    204 A.D.2d 61 (1st Dep't 1994) .....................................................................................8

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
    49 F. Supp. 2d 664 (S.D.N.Y. 1999)................................................................................3

*Bensinger v. Denbury Resources Inc.*,
    2011 WL 3648277 (E.D.N.Y. Aug. 17, 2011).................................................................3

*Burgess v. Omar*,
    345 F. Supp. 2d 369 (S.D.N.Y. 2004)..............................................................................6

*Caravella v. City of N.Y.*,
    79 F. App'x 452 (2d Cir. 2003) ......................................................................................9

*Casville Invs., Ltd. v. Kates*,
    2013 WL 3465816 (S.D.N.Y. July 8, 2013) ...................................................................3

*Chen v. New Trend Apparel, Inc.*,
    8 F. Supp. 3d 406 (S.D.N.Y. 2014) .................................................................................9

*Cleft of the Rock Found. v. Wilson*,
    992 F. Supp. 574 (E.D.N.Y. 1998) .................................................................................5

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
    2017 WL 476720 (S.D.N.Y. Feb. 2, 2017).....................................................................4

*Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer*,
    P.C., 304 A.D.2d 86 (1st Dep't 2003) .........................................................................4, 9

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010)..............................................................................4

*FGP 1, LLC v. Dubrovsky*,
    197 A.D.3d 441 (1st Dep't 2021) .................................................................................10

*Holmes v. Apple Inc.*,
   797 F. App'x 557 (2d Cir. 2019) ...................................................................................3

*Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*,
   6 A.D.3d 1 (1st Dep't 2004) ..........................................................................................8

*Italiana Coke, S.r.l. v. United Coal Co., LLC*,
   2008 WL 4443852 (S.D.N.Y. Sept. 30, 2008).........................................................4, 5

*Lear v. Royal Caribbean Cruises Ltd.*,
   2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021).................................................................4

*In re Lehman Bros. Holdings Inc.*,
   515 B.R. 171 (Bankr. S.D.N.Y. 2014)...........................................................................9

*Meisels v. Meisels*,
   2021 WL 6125591 (E.D.N.Y. Dec. 28, 2021) ..............................................................4

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
   667 F. Supp. 2d 369 (S.D.N.Y. 2009)...........................................................................4

*Paulo v. Agence France-Presse*,
   2023 WL 2707201 (S.D.N.Y. Mar. 30, 2023) ..............................................................8

*Sanderson v. Horse Cave Theatre 76*,
   881 F. Supp. 2d 493 (S.D.N.Y. 2012)...........................................................................5

*Siteworks Contracting Corp. v. W. Sur. Co.*,
   461 F. Supp. 2d 205 (S.D.N.Y. 2006)...........................................................................5

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*,
   2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011)..............................................................6

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006)..........................................................................................4

*In re Sumitomo Copper Litig.*,
   120 F. Supp. 2d 328 (S.D.N.Y. 2000)...........................................................................5

*Topps Chewing Gum, Inc. v. Fleer Corp.*,
   799 F.2d 851 (2d Cir. 1986)..........................................................................................4

*Yoshida Printing Co. v. Aiba*,
   213 A.D.2d 275 (1st Dep't 1995) .................................................................................8

HCLOF respectfully submits this reply memorandum of law in further support of its motion to dismiss the Counterclaims.[1]

## PRELIMINARY STATEMENT

As shown in HCLOF's moving brief, there is no basis for HCLOF to be in this Court or this case. In their opposition ("Opp."), the CLOH Parties reveal their true motives for suing HCLOF here. They readily admit that they want to use this case to help their first-filed Guernsey proceeding. This Court should not be a pawn in the CLOH Parties' forum-shopping scheme.

The CLOH Parties all but concede there is no legitimate basis for personal jurisdiction over HCLOF. Their sole alleged basis is HCLOF's participation in the 2023 Forbearance Agreement with Plaintiffs. But the CLOH Parties are not parties to that agreement, and they cite no authority allowing a foreign non-party minority shareholder to base personal jurisdiction in New York on a contract that the foreign company made with other foreign parties. HCLOF is aware of no such case. There is thus no basis for personal jurisdiction over HCLOF.

Similarly, there is no independent subject matter jurisdiction and no factual nexus to exercise supplemental jurisdiction over the Counterclaims against HCLOF. The CLOH Parties claim that U.S. Bank signed the 2023 Forbearance Agreement, and HCLOF's alleged collusion with U.S. Bank is sufficient for supplemental jurisdiction. Not so. The agreement is a forbearance agreement, not a banking activity. And the alleged unfair treatment of CLOH as a shareholder of HCLOF is distinct from Plaintiffs' alleged mismanagement of the CLOs.

The doctrines of *forum non conveniens* and international comity also compel dismissal. Guernsey is the proper forum for HCLOF's shareholder disputes, especially with foreign entities

---

[1] Capitalized terms not defined herein have the meaning given in HCLOF's moving brief, ECF No. 178 ("moving brief" or "Mov.").

like the CLOH Parties. CLOH is already suing HCLOF in Guernsey concerning virtually identical subject matter, and they should not be able to forum shop around Guernsey's courts and loser-pays regime. The Counterclaims are meritless, but if the CLOH Parties intend to pursue them, they should do so in Guernsey.

To be sure, the Counterclaims *are* meritless. The CLOH Parties claim they can still seek to invalidate HCLOF's 2021 and 2023 agreements as non-parties, because the agreements purportedly harmed them directly. Not so fast. The CLOH Parties' alleged harm would be tangential at best. Namely, the CLOH Parties' claim is based exclusively on their status as a shareholder of HCLOF, which is, by definition, indirect. And the CLOH Parties, like other HCLOF shareholders, were harmed by the *reserves* taken and used by Plaintiffs, not by HCLOF's *agreements*, which paved the way for the reserves to be released. The CLOH Parties therefore lack standing to challenge the 2021 and 2023 agreements.

The CLOH Parties' Members Agreement claim also fails. They cite no existing obligations in the Members Agreement, but instead seek to add *new* ones through their good faith claim. As shown in HCLOF's moving brief, that is improper under Guernsey law. In any event, this claim, which seeks redress from HCLOF's unfair treatment of CLOH, is largely the same as CLOH's pending case against HCLOF in Guernsey, and only underscores that the Counterclaims are nothing more than a forum-shopping ploy and should be litigated in Guernsey, not here.

## ARGUMENT

As shown in HCLOF's moving brief, the Court should dismiss the Counterclaims against HCLOF for lack of personal jurisdiction under Rule 12(b)(2), lack of subject matter jurisdiction under Rule 12(b)(1), under the doctrines of *forum non conveniens* and international comity, and for failure to state a claim under Rule 12(b)(6).

I.      **The Court Lacks Personal Jurisdiction Over HCLOF**

The CLOH Parties fail to "make a prima facie showing" that personal jurisdiction exists. *Holmes v. Apple Inc.*, 797 F. App'x 557, 559 (2d Cir. 2019) (Summary Order) (citations omitted). The CLOH Parties' sole basis for personal jurisdiction boils down to HCLOF's "participation" in the 2023 Forbearance Agreement. Opp. at 3. Crucially, there is no other nexus to New York: neither the 2021 agreement nor the Members Agreement have anything to do with New York; HCLOF is a foreign entity based in and controlled from Guernsey; the CLOH Parties are foreign entities based in the Caymans; and the Plaintiffs are based in Delaware, Texas, and Minnesota. Countercl. ¶¶ 12-13; Compl. ¶¶ 10-11. In other words, the CLOH Parties are essentially trying to drag a foreign entity (HCLOF) into New York because they (foreign non-party shareholders) are unhappy with the substance of HCLOF's agreement with the Plaintiffs, who are also foreign. This is wrong.

*Casville Invs., Ltd. v. Kates*, is directly on point. 2013 WL 3465816 (S.D.N.Y. July 8, 2013). There, shareholders of a defunct company tried to sue the company and its officers in New York based on an asset purchase agreement that stripped the company of its assets. *Id.* at *3. The court rejected the plaintiffs' personal jurisdiction arguments despite the fact that, as here, the agreement had a New York jurisdiction provision. *Id.* at *4. The Court recognized that "shareholders of a corporation could not invoke a forum selection clause in an agreement entered into by the corporation and a third party entity." *Id.* at *5; *accord Bensinger v. Denbury Resources Inc.*, 2011 WL 3648277, at *5 (E.D.N.Y. Aug. 17, 2011) (same); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 671 (S.D.N.Y. 1999) (same).

Scouring inapposite caselaw, the CLOH Parties claim that the Court can nevertheless exercise specific jurisdiction over HCLOF because it used New York lawyers to assist with the negotiation of the 2023 Forbearance Agreement and allegedly colluded with the Plaintiff to enter

3

into that agreement. *See* Opp. at 11-12. Not so. As shown above, a non-party cannot use a party's agreement with others for personal jurisdiction. *See*, *e.g.*, *Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, 2017 WL 476720, at *4 (S.D.N.Y. Feb. 2, 2017) ("Generally, only parties in privity of contract may enforce terms of the contract such as a forum selection clause") (citations omitted); *see also id.* (rejecting personal jurisdiction even where, unlike here, plaintiff claimed that it "was intimately involved in the details of the transaction from its inception" and "participated in the transaction's negotiations" because plaintiff was "a non-party.").[2]

Moreover, as shown in HCLOF's moving brief, the mere involvement of New York lawyers is insufficient for personal jurisdiction, even in claims by actual parties to the contract. *See* Mov. at 12; *see also Lear v. Royal Caribbean Cruises Ltd.,* 2021 WL 1299489, at *7 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) (New York courts "generally loath" finding jurisdiction where contracts are "negotiated solely by mail, telephone, [or] fax without any New York presence by the defendant."); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (no personal jurisdiction existed because defendant's negotiations were limited to calls, faxes, and correspondence with "a center of gravity well outside" of New York).[3]

---

[2] The cases cited by the CLOH Parties are inapposite as they do not involve personal jurisdiction. *See* Opp. at 4, n. 21 (citing *Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer*, P.C., 304 A.D.2d 86, 90 (1st Dep't 2003) (not addressing personal jurisdiction); *Meisels v. Meisels*, 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021) (same); *Topps Chewing Gum, Inc. v. Fleer Corp.,* 799 F.2d 851, 856 (2d Cir. 1986) (same). The Court in *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006), also cited by the CLOH Parties, declined to rule on personal jurisdiction and instead remanded the case.

[3] The CLOH Parties suggest that HCLOF "apparently traveled to New York for meetings related to these negotiations." Opp. at 11. As confirmed by the emails they cite, this meeting never took place because Mr. Terry was unavailable. *See* ECF No. 200-13 at 107 (ACIS00019131) (Oct. 23, 2022 Email from J. Terry to R. Boleat) (Mr. Terry turned down offer to meet in New York because of pre-existing commitments). In any event, the law is clear that a single visit to New York is insufficient for the Court to find personal jurisdiction. *Compare Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376-77 (S.D.N.Y. 2009) ("a single visit" was insufficient for personal jurisdiction) *with* Opp. at 10-11 (citing *Italiana Coke,*

The CLOH Parties' allegations of collusion also do not help them here. The CLOH Parties assert no tort or conspiracy claim against HCLOF (nor could they). And, in any event, in the cases they cite, the tortious schemes were, unlike here, *directed at* New York. *See* Opp. at 12 (citing *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 340 (S.D.N.Y. 2000) (plaintiff brought claim and alleged sufficient facts showing defendant's conspiracy to commit fraud in New York); *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 582 (E.D.N.Y. 1998) (same); *Alfandary v. Nikko Asset Mgmt. Co.*, 337 F. Supp. 3d 343, 364 (S.D.N.Y. 2018) (plaintiff brought claim and alleged sufficient facts showing defendant's conspiracy to violate federal securities laws in New York)). There is no such nexus here. The Plaintiffs are not based in New York, the CLOH Parties are not based in New York, and there is no other alleged connection to New York. In sum, there is no basis for personal jurisdiction over HCLOF in New York.

## II. The Court Also Lacks Subject Matter Jurisdiction Over The Counterclaims Against HCLOF

As shown in HCLOF's moving brief, there is also no subject matter jurisdiction. It is of no moment that the Court has subject matter jurisdiction over the Plaintiffs' claims; the CLOH Parties must show jurisdiction over the Counterclaims against HCLOF. *See Siteworks Contracting Corp. v. W. Sur. Co.*, 461 F. Supp. 2d 205, 208 (S.D.N.Y. 2006) (no subject matter jurisdiction unless the "counterclaims . . . are so related to claims in the action within [which the Court has] such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). They fail at this too.

---

*S.r.l. v. United Coal Co., LLC*, 2008 WL 4443852, at *2 (S.D.N.Y. Sept. 30, 2008) (personal jurisdiction where, unlike here, parties engaged in more than emails and it was "undisputed that the parties met in New York" to negotiate); *Sanderson v. Horse Cave Theatre 76*, 881 F. Supp. 2d 493, 504-05 (S.D.N.Y. 2012) (personal jurisdiction where, unlike here, party had numerous contacts with New York, including signing documents in New York and performing contract in New York)).

5

The CLOH Parties appear to suggest, for the first time, that there is independent Edge Act jurisdiction over the Counterclaims against HCLOF because U.S. Bank signed the 2023 Forbearance Agreement. Opp. at 14-16. That is wrong. That agreement is a forbearance agreement, and the CLOH Parties do not even contend that it constitutes a banking arrangement. The mere fact that it was signed by U.S. Bank does not create Edge Act jurisdiction. *See Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306, at *4 (S.D.N.Y. Sept. 13, 2011) ("In order to find jurisdiction under the Edge Act, a court must be satisfied that a plaintiff's claims really involve a banking arrangement between a federally chartered bank and a foreign party. Edge Act jurisdiction will not lie merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties.") (cleaned up).

The CLOH Parties also fail to identify a factual nexus sufficient to exercise supplemental jurisdiction over the Counterclaims. In a single paragraph, entirely devoid of any factual or legal citation, the CLOH Parties repeat their mantra that HCLOF allegedly colluded with U.S. Bank. This, too, is a bridge too far. As the CLOH Parties concede, their Counterclaims against HCLOF arise out of CLOH's alleged "rights" as a "minority shareholder" of HCLOF. Opp. at 16. But this case concerns the CLOs, the rights of their noteholders, and their alleged mismanagement. Compl. ¶¶ 1-8. The two are entirely distinct, and the Court should exercise its discretion to decline the exercise of supplemental jurisdiction over the Counterclaims. *See Burgess v. Omar*, 345 F. Supp. 2d 369, 371 (S.D.N.Y. 2004) (counterclaims require nucleus of operative fact common to jurisdiction-conferring claim for supplemental jurisdiction).

### III. The Doctrines Of *Forum Non Conveniens* And International Comity Also Compel Dismissal

This dispute should be resolved in Guernsey under *forum non conveniens* and international comity principles, and the CLOH Parties fail to show otherwise.

### A. The CLOH Parties Have No Answer To *Forum Non Conveniens*

The CLOH Parties have no real response to the fact that New York should receive no deference since the CLOH Parties and HCLOF are foreign entities. Mov. at 16. They point to the New York jurisdiction provision in the 2023 agreement, Opp. at 17, but as shown above, they cannot rely on that contract provision as non-parties. *See supra* at 3-4.

The CLOH Parties also effectively admit they are forum shopping. Even though they filed their Guernsey action *before* the Counterclaims, the CLOH Parties now claim that that they need a ruling here to help them in Guernsey. *See* Opp. at 2 ("Without this Court's prior declaration that the 2021 and 2023 Agreements are unenforceable, the Guernsey Proceeding is at substantial risk."); *id.* at 6 ("the Guernsey Proceeding cannot go forward without this Court's prior adjudication related to the enforceability of the 2021 Agreement and 2023 Agreement."); *id.* at 18 ("[A] ruling in this case is a condition to CLOH's requested relief in Guernsey."). This is quintessential forum-shopping.

To be sure, the CLOH Parties filed their Counterclaims against HCLOF in this Court *after* they sued HCLOF in Guernsey for largely the same "unfair treatment" subject matter. *See* Countercl. Ex. 1 at 2 (Guernsey Proceeding application dated March 6, 2023); ECF No. 77 at Countercl. ¶ 2 (initial counterclaims dated March 30, 2023). They cite no reason why they could not include claims for breach of the Members Agreement in Guernsey. After all, it is governed by Guernsey law and can be enforced in Guernsey. So the CLOH Parties' admission that they filed this case to get a leg up in Guernsey is an admission of forum shopping. *See Aenergy, S.A. v. Rep. of Angl.*, 31 F.4th 119, 129 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023) (affirming District Court's finding of forum shopping where, as here, the plaintiff "sought a tactical advantage in New York, as [it] first chose a different forum to litigate the termination of [its] contracts: Angola, and thus far, [it] has not found success in those Angolan proceedings.")

7

(cleaned up); *Paulo v. Agence France-Presse*, 2023 WL 2707201, at *9 (S.D.N.Y. Mar. 30, 2023) (that plaintiff "filed suit alleging similar claims in a Portuguese court" was "strong evidence for [plaintiff]'s prior preference for Portuguese courts for disputes [involving the same subject matter] … until forum shopping considerations drew him to a United States court").

The CLOH Parties also provide no answer to the fact that HCLOF's documents and witnesses are located in Guernsey, and that Guernsey courts are properly situated to resolve disputes involving Guernsey companies' duties to their shareholders and agreements governed by Guernsey law. Mov. at 18-19. This case should therefore also be dismissed on *forum non conveniens* grounds, and the CLOH Parties cite no case to the contrary.[4]

### B. The CLOH Parties Have No Answer To International Comity

The CLOH Parties also have no meaningful response to dismissal based on international comity. The case they cite stand for the proposition that international comity does not apply where the case has clear ties to the U.S. and New York in particular. Opp. at 19. But, as shown, there are no such ties to New York here.

The CLOH Parties also unsuccessfully try to minimize the scope of their Guernsey Action against HCLOF. They claim it seeks different relief and is not focused on a breach of any agreement. Opp. at 20. But the CLOH Parties cannot dispute that the Guernsey Action and this case arise from the same exact alleged unfair treatment of CLOH. *Compare* Countercl. Ex. 1 (Application) ¶ 8 ("The Application arises out of the management of the Respondent in a manner which has caused ongoing unfair prejudice to the Applicant in its capacity as minority

---

[4] Opp. at 18-19 (citing *Anagnostou v. Stifel*, 204 A.D.2d 61, 62 (1st Dep't 1994) (defendants and subjects of dispute were all located in New York); *Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*, 6 A.D.3d 1, 4 (1st Dep't 2004) (defendants had New York offices); *Yoshida Printing Co. v. Aiba*, 213 A.D.2d 275, 275 (1st Dep't 1995) (defendant's residence in New York was an "important" factor in denying *forum non conveniens*)).

shareholder in the Respondent") *with* Countercl. ¶ 5 (alleging "breaches of HCLOF's duties, *inter alia*, to deal honestly with CLOH, [and] to not treat CLOH in a disparate manner in relation to other HCLOF shareholders"). Nor do they cite any reason why the CLOH Parties could not assert breach of the Members Agreement in Guernsey. In other words, this case is substantially similar to the Guernsey case, and there is no reason why it could not proceed in Guernsey. Dismissal is therefore also proper on international comity grounds.

## IV. The Counterclaims Also Fail To State Claims For Relief

The Counterclaims also fail on substantive grounds. The CLOH Parties claim that even though they are non-parties, they can still challenge the 2021 and 2023 agreements because the agreements caused the CLOH Parties direct harm. Opp. at 4 & n. 21. But the alleged harm to the CLOH Parties is decidedly *not* the type of "direct harm" required for non-parties to challenge an agreement. *See Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 437 (S.D.N.Y. 2014) ("[T]o have standing to challenge a contract, a non-party to the contract must . . . suffer direct harm flowing from the contract") (citing *Decolator*, 304 A.D.2d at 90).

To the contrary, the CLOH Parties admit that their harm is *in*direct. To begin, they base their alleged damages on their "49.015% of the outstanding equity in HCLOF" in the reserves "withheld" or "used" by the Plaintiffs. Countercl. ¶ 100(i)-(iii). In other words, the CLOH Parties concede that their alleged harm was solely as a shareholder of HCLOF. This is not direct harm. *See In re Lehman Bros. Holdings Inc.*, 515 B.R. 171, 175-78 (Bankr. S.D.N.Y. 2014) (minority shareholders lacked standing to pursue claims for corporation's agreement because they failed to show harm "independent of their status as shareholders"); *Caravella v. City of N.Y.*, 79 F. App'x 452, 453 (2d Cir. 2003) (Summary Order) (shareholder had "no individual standing" to sue city because his alleged injuries "were indirectly caused by harm to [the corporation] and therefore [we]re not distinct from those of the corporation") (quotations omitted).

9

Moreover, the same allegations also underscore the fact that the CLOH Parties' alleged injuries were caused by Plaintiffs taking and using the reserves, rather than by HCLOF's 2021 and 2023 agreements (which paved the way for the release of the CLO funds and the reserves). *See FGP 1, LLC v. Dubrovsky*, 197 A.D.3d 441, 442 (1st Dep't 2021) (affirming lack of standing to invalidate prior sale agreement because plaintiffs were harmed by defendant's sale of "the same interest . . . twice" rather than the prior sale agreement). The CLOH Parties thus lack standing to challenge the 2021 and 2023 agreements, and their First and Second Counts fail.

The CLOH Parties' Members Agreement claim (Count Three) also fails. They identify various alleged violations and omissions by HCLOF, but they identify no such duties in the Members Agreement (because there are none). Opp. at 23-24. The CLOH Parties are plainly trying to use their good faith claim to *create* those obligations. As shown in HCLOF's moving brief, however, that is improper under Guernsey law. Mov. at 21-22. The relevant provision in the Members Agreement merely requires HCLOF to act in good faith toward its shareholders and ensure in good faith that the provisions of the Members Agreement are followed. *Id.* at 22-23. The CLOH Parties fail to allege any facts showing that HCLOF's 2021 and 2023 agreements, which led to the distribution of the CLO funds and release of the reserves, were bad for HCLOF's shareholders or incompatible with HCLOF's duties under the Members Agreement. Thus, Count Three fails as well.

## CONCLUSION

For all these reasons, as well as the reasons set forth in its moving brief, HCLOF respectfully requests that the Court dismiss the Counterclaims against HCLOF with prejudice and grant such other and further relief that the Court deems just and proper.

Dated: October 19, 2023
New York, New York

                                                 Respectfully Submitted,

                                                 AKIN GUMP STRAUSS HAUER & FELD LLP

                                                 By:   /s/ *Uri A. Itkin*
                                                     Uri A. Itkin
                                                     Shanna L. Miles
                                                     Michael Chen

                                               One Bryant Park
                                               New York, NY 10036
                                             Telephone: (212) 872-1000

                                             *Attorneys for Highland CLO Funding, Ltd.*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on October 19, 2023, a true and correct copy of the foregoing was electronically filed and served using the Court's CM/ECF system to all parties.

                                              /s/ *Uri A. Itkin*
                                              Uri A. Itkin