# EXHIBIT 2

Application for leave to amend pleadings pursuant to rule 59 of the Royal Court Civil Rules 2007

**[2022]GRC094**

IN THE ROYAL COURT OF GUERNSEY
(ORDINARY DIVISION)

**Between:**

INTERNATIONAL HEALTHCARE SOLUTIONS LIMITED

Plaintiff

-AND-

UTMOST WORLDWIDE LIMITED

Defendant

Judgment circulated under the Practice Direction:  11 October 2022

Final Judgment handed down:  18th October 2022

Before:   Jessica E Roland, Deputy Bailiff

**Counsel for the Plaintiff:**   Advocate R D Breckon
**Counsel for Defendant:**    Advocate M G A Dunster

**Cases, texts & legislation referred to:**

The Royal Court Civil Rules, 2007
The Insurance Business (Bailiwick of Guernsey) Law, 2002
The Price Gouging Control (Emergency Circumstances) Law, 2015 of the Cayman Islands
Jefcoate v Spread Trustee Company Limited [2013] GLR 220
Tranquillity Holdings Limited v Invista Real Estate Investment Management (CI) Limited Royal Court 38/2015
Easyair Limited (t/a Openair) v Opal Telecom Limited [2009] EWHC 339 (Ch)
Astor Management AG v Atalaya Mining plc [2017] EWHC 425 (Comm)
UTB LLC v Sheffield United Ltd [2019] EWHC 2322 (Ch)
Inn Soo Kim v Youg [2011] EWHC 1781 (QB))
Yam Seng Pte Ltd v International Trade Corp Ltd [2013] EWHC 111 (QB)
Coco v AN Clark (Engineers) Ltd [1969] RPC 41)
Essex County Council v UBB Waste (Essex) Limited [2020] EWHC 2387 (TCC)
BP Gas Marketing Ltd v La Societe Sonatrach [2016] EWHC 2461
Cranway Limited v Playtech [2008] EWHC 550 (Pat)

**Introduction**

1. This is an application by the Plaintiff dated 28 January 2022 for leave to amend its pleadings pursuant to rule 59 of the Royal Court Civil Rules 2007 ("RCCR"). On the 30 November 2021 I handed down my judgment on various cross applications dealing with the Plaintiff's pleadings (the "30 November 2021 Judgment"). In summary, the Defendant's Application to strike out or obtain summary judgment on the relevant paragraphs of the draft amended Cause and Replique was

dismissed but on condition that identified paragraphs be subject to amendment by the Plaintiff. Further I ordered that rather than responding to the Further and Better Particulars requested by the Defendant in the normal way the Plaintiff was required to amend the Cause. I refused the application by the Plaintiff for leave to amend the Cause on the basis that the Plaintiff was required to further particularise the claims in the draft amended Cause.

2. The Defendant opposes the Plaintiff's application on the basis that it does not satisfy the requirements of my 30 November 2021 Judgment, in the absence of satisfying those requirements the Cause remains confused and due to the deficiencies if leave is given, the Defendant would need to make further applications including another application for summary judgment/strike out and further and better particulars.

3. The Plaintiff relies as it did in the previous round of applications on the affidavits of Mr Randy Skoly ("Mr Skoly") one of the directors of the Plaintiff dated 14 May 2021 and Jana Valkovska dated 2 June 2021 as well as a short affidavit of Samantha Harris dated 28 January 2022 exhibiting correspondence between counsel. Both parties filed skeleton arguments and augmented these orally at the hearing on the 6 April 2022.

**Background**

4. The Plaintiff is a Cayman Islands' company which was incorporated on 8 August 2008. The purpose of the Plaintiff is to manage the marketing of and to provide certain administration services for insurance policies issued by the Defendant in the Cayman Islands, pursuant to an Agency Agreement signed on 1 September 2016 (the "2016 Agreement").

5. The Defendant is licenced by the Guernsey Financial Services Commission to carry on long-term insurance business under the Insurance Business (Bailiwick of Guernsey) Law, 2002 and by the Cayman Islands Monetary Authority ("CIMA") as a class "A" insurer to carry on business in or from the Cayman Islands.

6. The 2016 Agreement is governed by the laws of Guernsey and contains an exclusive jurisdiction clause submitting to the Royal Court of Guernsey. This replaced an earlier version of the agreement between the parties dated 1 September 2008.

7. The 2016 Agreement provides that the Plaintiff is the Defendant's agent and sole distributor of insurance policies in the Cayman Islands. The insured's contractual relationship is with the Defendant. The Plaintiff cannot offer services similar to those it provides under the 2016 Agreement to any other party other than the Defendant. Reinsurance was provided by Generali Global Health ("GGH").

8. The dispute revolves around the decision of the Defendant to exit the Cayman Islands' market in 2020. The underlying facts are set out in more detail in the 30 November 2021 Judgment.

9. The 30 November 2021 Judgment sets out the summary of the pleadings prior to that date and I shall not repeat them here save that the Defendant has complained about the inadequacies of the Cause since it went inscrite on the 31 July 2020. After the 30 November 2021 Judgment was issued, the Plaintiff's advocates provided a copy of the draft amended Cause (the "Second Draft Amended Cause") to the Defendant's advocates on 7 January 2022 and asked for confirmation that it was agreed within 7 days noting that if there was no positive response by then they were instructed to make an application for leave to amend. The Defendant's advocates responded on 17 January 2022 setting out on a broad basis what it considered to be the inadequacies of the Second Draft Amended Cause. The Plaintiff in response set out the directions it proposed for the foreshadowed leave to amend application and the matter was set down for a hearing.

**The Law**

10. The legal principles were not in dispute.

11. Rule 59 of the RCCR provides: No party to an action may amend his pleadings except with the consent of all other parties or by leave of the Court.

12. The legal principles on amending a pleading are as set out in *Jefcoate v Spread Trustee Company Limited [2013] GLR 220*:

    "(a)  The court has a wide discretion under the Royal Court Civil Rules, r.59 to permit amendments where one or more of the parties have not consented.
    (b)   The discretion must be exercised judicially having regard to legal principles.
    (c)   The overriding objective requires that cases be dealt with justly.
    (d)   What justice requires depends on the circumstances of the particular case but includes taking account of the matters particularized in the Royal Court Civil Rules, r.1(2), which will be of special importance when a late amendment is sought.
    (e)   In general, amendments should be allowed so that the real dispute between the parties can be adjudicated provided that any injustice to the other party can be compensated for in costs.
    (f)   In the ordinary course it will not be just to allow an amendment if it will defeat a defence of prescription that may otherwise be available.
    (g)   If a defence of prescription may be defeated, it is necessary to establish whether the proposed amendment seeks to introduce a new cause of action.
    (h)   What constitutes a new cause of action is not determined by the label attaching to the proposed claim but by the factual situation which is required to be proved to entitle the plaintiff's claim to succeed. If the new cause of action which is sought to be added or substituted arises out of the same facts or substantially the same facts as a cause of action already pleaded, the court will not normally regard it as a new cause of action and hence will have a discretion to allow it.
    (i)   However, even if the new cause of action arises from similar or substantially the same facts as already pleaded, the court will disallow the amendment if the justice of the situation so requires.
    (j)   Where a new cause of action may be prescribed, the effective date as to when the limitation period expired is the date of the application, although if the amendment is permitted, the effect is that it is deemed to date back to the date of the original proceedings.
    (k)   When considering the limitation period, it is necessary to have regard to any period of time during which the plaintiff was empêché d' agir.
    (l)   An amendment will not be allowed if the case introduced by it has no realistic prospect of success.
    (m)   Apart from considerations of prescription, the mere fact that the change effected by a proposed amendment would involve introducing a new cause of action or that it would substantially alter the character of the proceedings or the burden of conducting them is not a reason for refusing leave to amend provided that the change can be made without inflicting injustice on the other parties of a kind incapable of being compensated by an order for costs."

**Brief Summary of the Submissions**

13. The Plaintiff's position is that it has complied with the 30 November 2021 Judgment. Further having made the amendments that it has, it has demonstrated that it has a realistic prospect of success on the claims. By applying the principles found in *Jefcoate v Spread Trustee Company Limited (ibid)* and from *Easyair Limited (t/a Openair) v Opal Telecom Limited [2009] EWHC (Ch)* on summary judgment, the Plaintiff in the Second Draft Amended Cause has demonstrated that it has a realistic

as opposed to fanciful prospect of success. The Plaintiff criticises the Defendant for not setting out which amendments are agreed and which are not, given it says that some must be uncontroversial. Further although the Defendant argues that the Plaintiff's case is not pleaded properly and that it cannot understand the complaint it has to meet in full, the court should take into account that it has been able to file its defence and (save to the extent that the Plaintiff says that there are matters outstanding) complied with its disclosure obligations. The threshold for permitting an amendment is a low one and the Plaintiff has overcome it.

14. At paragraphs 14A, 15H (b), 15I, 15K of the Second Draft Amended Cause the Plaintiff sets out the basis of a breach of the term of confidentiality in the 2016 Agreement. The Plaintiff relies on a number of incidents which the Plaintiff says the Defendant undertook in breach of 2016 Agreement (there is a refence at 15H(b) to paragraph 11(b) however there is no 11(b) so this will need amendment by the Plaintiff). Advocate Breckon said it is not known all that may have been said to third parties in breach of the 2016 Agreement although there has been at least one phone call as it is referred to in an email sent to offices of the Defendant by a third party. The Plaintiff says it is clear from the documentary evidence which was exhibited to the affidavit of Mr Skoly and Ms Valkovska that there has been dissemination of confidential information relating to the 2016 Agreement, as well as information and data in relation to the Cayman Islands' market provided to third parties identified as potential acquirers of the Cayman Islands' business. These third parties are identified in paragraph 15I of the Second Draft Amended Cause and the breach of the 2016 Agreement is such that the Defendant has been able to discuss success fees with at least one of potential acquirers prior to the Defendant serving the Notice terminating the 2016 Agreement (the "Termination Notice") which was served on the Plaintiff on 15 September 2020. Advocate Breckon said that there may be more evidence as a consequence of further disclosure as well as evidence from the Defendant's witnesses to support this claim. The Plaintiff also relies on correspondence between the Defendant and CIMA which refers to confusion and uncertainty within the Cayman Islands' market following various announcements that had been made by the Defendant. The Plaintiff says that the purpose of the 12 months' Notice Period (the "Notice Period") was to allow an orderly winding down of the arrangement. The breach of confidentiality is commercially unacceptable and by the Defendant failing to deal with matters appropriately, the Plaintiff has suffered loss. He said there is no issue that the Termination Notice was served and that the contract has ended. Advocate Breckon did not accept the criticisms of the Defendant with respect to this pleading, he said that it is clear that the Defendant has disseminated information and data and it will have to be *"bottomed out"* at trial and to extent the further disclosure which he said was outstanding. He submitted that Clause 14 was not respected by the Defendant. This breach undermined the purpose of the 12 months' Notice Period.

15. Paragraphs 15H, 17A, 20, 21 relate to the claims by the Plaintiff in relation to price setting. Advocate Breckon referred to documents exhibited to Mr Skoly's affidavit which the Plaintiff says demonstrates that prior to the service of the Termination Notice and as far back as March 2020, the Defendant had already put into place a policy involving a new pricing strategy to the detriment of the Plaintiff. The reaction to this strategy in the market was one of *"surprise and shock"* as recorded in a working document created either by the Defendant or by GGH with input from the Defendant. Advocate Breckon submitted that even if the prices were set by GGH it was the Defendant with whom the Plaintiff had contractual obligations and duties and the strategy that was adopted was in breach of those duties. Further the discussions between the Defendant and GGH as to the strategy failed to acknowledge or recognise the obligations the Defendant had to the Plaintiff. There is no evidence that the Defendant ever attempted to challenge the pricing strategy on the basis that it would put it in breach of its contract with the Plaintiff rather the Defendant continued with the pricing strategy despite the clear protests of the Plaintiff. The increases in the prices of the policies were across the board which is why there is no breakdown of the various polices (although the new schedule at 21B sets out the individual policies). The Defendant and GGH had a joint strategy of pricing the policy premiums out of the market which was to the detriment of the Plaintiff and caused it loss. The Defendant could join GGH to the proceedings but has not done so. Advocate Breckon

submitted that there is a triable issue as to the Defendant's role in the pricing based on a breach of contract.

16. A reference to Price Gouging remains at paragraph 21 of the Second Draft Amended Cause and Advocate Breckon submitted it should remain despite my comments in the 30 November 2021 Judgment. Advocate Breckon said this goes to background rather than a specific breach of clause 10 of the 2016 Agreement or of the Cayman Price Gouging law. He referred to an email sent by Mr Skoly exhibited to his affidavit where Mr Skoly alerts the officers of the Defendant and GGH that Covid loading on the pricing of the policy could lead to conflict with the regulators or "*worse-case scenario a complaint price gouging could open a criminal investigation.*"

17. Paragraph 45 of the 30 November 2021 Judgment provides that the Plaintiff should be allowed to test the lack of good faith claim at trial subject to the previous iteration of the claim being amended. The Plaintiff submits that the amendments in the Second Draft Amended Cause address the issues identified by me in the 30 November 2021 Judgment. There are no allegations of dishonesty and nor does the Plaintiff need to establish any. Due to the nature of the 2016 Agreement the Plaintiff was entirely reliant upon the Defendant to conduct itself in the promotion of the values and purposes of the 2016 Agreement, absent which, the Plaintiff would and has suffered losses. It is these circumstances that enable the Plaintiff to rely on the principles of an implied term of good faith derived from *Yam Seng Pte v International Trade Corp Ltd* [2013] 1 CLC. The parties acted in accordance with these values and purposes up until March 2020. However, Advocate Breckon submits, from March 2020, the Defendant set out on a course to deliberately price itself out of the market, breached the confidentiality provisions of the 2016 Agreement for its own advantage and disseminated information to third parties in a very small market in order to gain a sell side commission; and it failed to serve any notice to terminate the 2016 Agreement until it has exhausted the potential avenues for sale but had damaged the Plaintiff. Each of these caused the Plaintiff loss. Advocate Breckon was clear in his submissions that where it is pleaded that there was a combined strategy between Defendant and GGH there is no pleading as to lawful or unlawful conspiracy between the Defendant and GGH. It is the duty of good faith which the Plaintiff argues that the Defendant owed to Plaintiff that is present in this contract and that creates obligations upon the Defendant in the way it should carry out its part of the contract. Further this implied term continues during the 12 months' Notice Period but that in any event Advocate Breckon submitted that due to the conduct of the Defendant prior to the Termination Notice these contractual obligations had been undermined.

18. In relation to the complaints by the Defendant about the references in the pleadings to an "*appropriate time*" Advocate Breckon submitted that this was a reference to a date before the Defendant had breached the 2016 Agreement, before the dissemination of the confidential information into the market and before the Termination Notice had been served. The Defendant should have served the Termination Notice once it decided to leave the Cayman Islands' market which he submitted could have been March 2020 (on or around the date when GGH informed the Defendant that it had decided to stop its reinsurance support for the Defendant in Cayman Islands (and other jurisdictions)) but certainly at any time before it started to disseminate the fact of its leaving into the Cayman Islands' market. In relation to the criticism made by the Defendant of the pleading at paragraph 22 I of an agreement between the parties of on or around 19 June 2020 in relation to announcing a simultaneous exit of the Bahamas and the Cayman Islands' markets, the Plaintiff points to a series of emails between the parties which Advocate Breckon submits demonstrates the agreement. With regard to the Defendant's submissions about the failure of the Second Draft Amended Cause to show the true position in relation to the request and alleged unreasonable refusal by the Defendant to waive exclusivity contained in clause 3.1 of the 2016

Agreement, the Plaintiff argues that the further correspondence exhibited to Mr Skoly's affidavit shows that taken as a whole the pleading is correct.

19. Advocate Dunster started his submissions by focusing on parts of the 30 November 2021 Judgment which provided direction as to the changes that were needed to the Plaintiff's pleadings and the failure of the Plaintiff to make the necessary changes in order that the pleadings fulfil their function. Whilst acknowledging that Advocate Breckon made clear in his submissions that there are no allegations of dishonesty nevertheless still contained within the allegations are refences to the Defendant's conduct being "*improper, commercially unacceptable and/or unconscionable*" and in "*bad faith*" and at paragraph 15H and paragraph 22A in their references to the Defendant and GGH "*set on a deliberate course*" or "*determined on a course of conduct*" fail to take into account the Court's directions on the inadequacies of the pleadings when serious allegations are being made. Likewise, the remaining references to price gouging in the pleading has no purpose and relevance.

20. In relation to pricing the Defendant says that the Plaintiff has failed to particularise in the way I had set out in detail was required to properly plead the loss at paragraph 46 of the 30 November 2021 judgment. The Plaintiff has to do better particularly where the information on the policies set out in the schedule does not show that all policies were not renewed but rather that there was an approximate 20% drop. The pleadings therefore require better particularisation to make clear how it was the Plaintiff says that the Defendant's conduct that caused this loss. Although the Plaintiff has now pleaded a figure in the Second Draft Amended Cause in relation to certain losses based on the Schedule, at 26A of the Cause the Plaintiff is seeking additional damages for the breach of good faith and lack of commercial integrity based on loss of opportunity with such damages to be assessed based on the value of the loss of the whole of their business. This is unparticularised and contrary to the clear expectation of the 30 November 2021 Judgment at paragraph 47.

21. The Defendant has a wholesale objection to the current state of the pleadings therefore Advocate Dunster submits it would not be helpful or purposeful to pick out the words or sentences to which it does not object. The Defendant complains that paragraph 14, 17, 22, 24, 25(a) of the Second Draft Amended Cause create an impression that there remains a claim that the Defendant wrongly served notice by reference to the failure for example of the Defendant to "properly comply" with the termination clause. These pleadings are contrary to the express term that either party had the right to terminate on 12 months' notice which was contained in the contract at clause 2.4.2 of the 2016 Agreement. If these paragraphs are about conduct before or during the Notice Period that is not how it is pleaded.

22. With regard to allegation of a breach of clause 14 of the 2016 Agreement which is a term related to confidential information, Advocate Dunster submits that the pleadings do not adequately particularise what the confidential information is said to be. In particular it should be made clear, whether it is only the information defined in the 2016 Agreement which is said to be the confidential information which has been revealed to a third party and thereafter caused the Plaintiff loss or whether as the pleadings appear to allege, it is the fact of the Defendant leaving the Cayman Islands' market itself in which case, the Plaintiff needs to identify how this information has the necessary quality of confidence. In either case the Plaintiff must particularise how clause 14 is breached by its conduct and thereafter particularise how it is said that each alleged breach is said to have caused the Plaintiff loss. With regard to loss the Plaintiff still fails to plead how it is alleged that the Defendant informing third parties caused the Plaintiff loss (or the extent of the loss) in circumstances where the Plaintiff issued proceedings on 10 July 2020.

23. At paragraph 17A of the Cause there remains references to the Defendant having responsibility for the increase in the policy premiums contrary to the acknowledgement by the parties in the previous hearing that the Defendant was not responsible for the price (rather it was GGH). The Plaintiff must nail its colours to the mast about exactly what it says was the Defendant's alleged wrongdoing

in relation to price setting, what were its obligations and how it is said to have breached the contract, the causation and loss. Despite the clear direction of the court in the 30 November 2021 Judgment the Plaintiff has still failed to plead with sufficient particularity about how it is said the alleged breaches increased the cost of the polices, the only clearly articulated complaint being that attributable to Covid loading.

24. With regard to the allegation of a breach of duty of good faith, the Defendant accepts that the Plaintiff is entitled to advance this claim although it makes no admission that Guernsey law would, in fact, recognise an implied duty, or general doctrine, of good faith in contract law. However, it is clear from the English case law any implied duty of good faith cannot undermine an express term of contract (see <u>Astor Management AG v Atalaya Mining plc</u> [2017] EWHC 425 (Comm) paragraphs 97 and 98). Further Justice Leggatt in that case sets out at paragraph 98:

> *"that a duty to act in good faith, where it exists, is a modest requirement. It does no more than reflect the expectation that a contracting party will act honestly towards the other party and will not conduct itself in a way which is calculated to frustrate the purpose of the contract or which would be regarded as commercially unacceptable by reasonable and honest people. This is a lesser duty than the positive obligation to use all reasonable endeavours to achieve a specified result which the contract in this case imposed."*

25. The Defendant also relies on <u>UTB LLC v Sheffield United Ltd</u> [2019] EWHC 2322 (Ch) at paragraphs 203 and 204 that a general duty of good faith should not be implied into the contract which fails to have regard to the express terms of the contract:

> *"203……….I consider, preferable to ask oneself first as Leggatt LJ did in the Sheikh Tahnoon case whether a reasonable reader of the contract would consider that an obligation of good faith was obviously meant or whether the obligation is necessary to the proper working of the contract. The overall character of the contract in issue will of course be highly material in answering that question but so will its particular terms, as recognised by the principle that (as restated in the Marks and Spencer case) no term may be implied into a contract if it would be inconsistent with an express term.*
>
> *204. That approach is, in my respectful opinion, preferable also because the exact content of any implied obligation of fair dealing, or to act with integrity, or to act in good faith, will be highly sensitive to the particular context of the contract, as observed by Dove J in <u>D&G Cars Ltd v Essex Police Authority</u> [2015] EWHC 226 (QB) at [175]. The greater part of that context is the express terms of the contract. Thus, to imply a general obligation to act at all times in good faith towards the counterparty because the contract is a relational contract may fail to have regard to rights and obligations created by the express terms, to which any implied obligation must be tailored if it is not to be excluded as being inconsistent with them."*

26. The Plaintiff has not pleaded what the obligations were upon the Defendant in a relationship where either side could *"pull out"* on 12 months' notice. Therefore, the Plaintiff must plead when it is that the Defendant should have given notice if it says its failure to give notice until 15 September 2020 was in breach of the implied term. For example, does the Plaintiff allege that notice should have been given to the Plaintiff as soon as the Defendant first considered that it was going to the withdraw from the Cayman Islands' market even if the effect would be extending the required 12 months' notice period whilst the logistics of exiting the market were being worked out. Likewise at paragraph 22A where the Plaintiff sets out the alleged wrongdoing of the Defendant, the Plaintiff must plead for each alleged breach of the implied term, what it says were the Defendant's obligations to the Plaintiff. For example, what does it say that the Defendant could or could not do in relation to its book of policies and how the Plaintiff says the Defendant was obligated to take into account the Plaintiff in this regard. Whilst the Plaintiff says the references to GGH and the Defendant determining on a "course of conduct" are not any form of conspiracy, the Plaintiff is

using intemperate language not only in relation to the Defendant but towards a non-party and therefore must ensure its pleading complies with the rules on pleading.  At paragraph 22A (d) the Plaintiff pleads an unreasonable refusal by the Defendant to waive the exclusivity term at clause 3.1 of the 2016 Agreement however the Defendant says this pleading fails to take into account either the correspondence that was before the court from the Defendant which it says does not show that the Defendant unreasonably refused to waive exclusivity or take into account the regulatory limitations or how the express exclusivity clause at 3.1 is said to interplay with an implied term of good faith.   The Defendant further complains that at paragraph 22A(e) there is reference made to an agreement allegedly made on 19 June 2020 between the parties to coordinate the announcement on the exit of the Cayman Islands' market with the announcement that the Defendant was also exiting the Bahamian market but the Plaintiff fails to abide by the basic rules of pleading in relation to the alleged agreement (was the agreement oral or in writing, the individuals who reached agreement, the dates / circumstances, and the relevant terms) nor sets out properly how is it said to be material to the Plaintiff's claim in relation to the 2016 Agreement.

27. At paragraph 17 of the Second Draft Amended Cause the Plaintiff alleges an abuse of clause 4.2 of the 2016 Agreement, referring to a failure to engage with the Plaintiff to give *"adequate notice for there to be appropriate discussions to determine the proper proving structures for the insurance year 2020/2021"* and also referring to the Defendant having *"dominant party rights"*.  However, the Defendant says that neither of these claims appear be relevant to Clause 4.2 of the 2016 Agreement which states: *"For the avoidance of doubt,* [the Plaintiff] *shall not have underwriting or price-setting authority and shall not bind* [the Defendant] *to coverage under the Policies without* [the Defendant's] *approval."* The Plaintiff must again particularise the basis of its claim properly, set out the alleged breach and articulate the consequences for it and the loss.

28. The Defendant also complains that at paragraphs 21 and 21A the Plaintiff raises an alleged breach of clause 10 of the 2016 Agreement (which sets out the obligations of the Defendant including complying with regulatory obligations) and also makes reference to the Cayman Islands' Price Gouging Law but without asking the court to determine whether there was a breach of the law or not.  The reference to Price Gouging in the Cause serves no purpose and should be removed.  Further the Plaintiff fails to deal with what obligations clause 10 are said it impose upon the Defendant and how this clause is said to have been breached. Again, the Plaintiff must particularise the basis of its claim properly, set out the alleged breach and articulate the consequences for it and the loss.

29. The Defendant also makes further criticisms in relation to the amendments: of the pleadings being incoherent in paragraphs 11 and 19; that paragraph 15E fails to articulate what damage is said to have been done or when the damage is alleged to have happened; at 15G where the Plaintiff alleges that *"compliance with the express and implied terms of the 2016 Agreement changed in and around March 2020 with the decision of the Defendant to demit the Caribbean health insurance market"* but fails to make clear to what it is alleged that the Plaintiff is alleged to have breached; and at paragraph 15H(a) the Defendant says it is unclear what connection there is between *"offering only extensions to current policy holders in the hope that they would find insurance product offerings elsewhere"* and the potential risk of *"price gouging"* which concerns the pricing of policies. Further the Defendant argues that the references to service of the Termination Notice at an *"appropriate time"* are vague.   This the Defendant argues appears to be leaving in the issue of the breach of clause 2.4.2 of the 2016 Agreement when the 30 November 2021 Judgment makes clear that a claim based on the consequence of the service of the 12 months' notice in accordance with clause 2.4.2 was going to be an uphill task.   If it is about the conduct of the Defendant prior to the service of the notice then the Plaintiff must set out when it is said that the contract should have been terminated, what the Defendant's obligations to the Plaintiff are in relation to the timing of the termination of contract and how it said to have caused loss and what those losses were.

**Discussion**

30. The overriding objective of the RCCR is to decide cases justly and at proportionate cost. This applies to the treatment of all the litigants to an action. A properly drafted claim furthers the overriding purpose. In the 30 November 2021 Judgment I concluded that I was not prepared to grant the Defendant's application for summary judgment or strike out on the basis that I was applying the principles of *Inn Soo Kim v Youg [2011] EWHC 1781 (QB))* set out in *Tranquillity Holdings Limited v Invista Real Estate Investment Management (CI) Limited Royal Court 38/2015* that a claim should not be struck out without first giving the Plaintiff the opportunity to amend the pleadings. My decision made clear however that the dismissal of the application was conditional on the Plaintiff successfully applying (if not agreed) for leave to amend the Cause.

31. Advocate Breckon is correct in his submissions that an application to amend pleadings will be refused if it is clear that the proposed amendment has no real prospect of success. The test to be applied is the same as that for summary judgment and the court may reject an amendment seeking to raise a version of the facts of the case, which is inherently implausible, self-contradictory or is not supported by contemporaneous documentation. Where he has been challenged on the amendments in the Second Draft Amended Cause Advocate Breckon has focused on the evidence contained in the affidavits filed in support of his application which the Plaintiff says supports the claims in the Cause. However, it is also important for any amendment to the pleadings to satisfy the requirements of proper pleading. At the risk of repeating what I said in the 30 November 2021 Judgment, the opponent must know from the moment that the amendment is made, what is the amended case he has to meet with as much clarity and detail as he is entitled to under the rules. I consider that that the pleading of this Cause still remains deficient even taking account that the facts have developed partly as a result of the Plaintiff becoming aware of information that it previously did not have and that there may be more forthcoming. Whilst the Plaintiff is correct that the Defendant has pleaded defences, there can be little doubt that from the outset the Defendant has been clear that this has been subject to the limitations placed upon it by the deficiencies of the pleading.

32. The underlying basis of the claim is the 2016 Agreement which the Plaintiff says has been breached in a number of ways. As I understand the claim there are breaches alleged on the basis of express terms as well as a breach of implied term or terms. For each of the alleged breaches it should be clear to the Defendant what term is alleged to have been breached, how it is said to have been breached, and what loss is said to have been caused to the Plaintiff by the Defendant's alleged breach. In considering what should be the next step I have been mindful of the second part of the sentence from *Inn Soo Kim v Youg (ibid)* at paragraph 40 of that judgment which is not quoted in Tranquillity holdings *"unless the court has given the party concerned an opportunity of putting right the defect, provided that there is reason to believe that he will be in a position to put the defect right."*.

33. Dealing first with claims of breach of confidentiality (paragraphs 14A, 15H (b), 15I, 15K). These are introduced at paragraph 14A of the Second Draft Amended Cause based on a breach of the term of confidentiality which is at clause 14 of the 2016 Agreement defined in the Cause as the "Confidentiality Clause". Where a claim is based on breach of confidentiality, the expectation is that the pleadings will identify the information which is alleged to be confidential with some precision and how that information had the *"necessary quality of confidence about it"* (see for example *Coco v AN Clark (Engineers) Ltd [1969] RPC 41*).

34. If it is the case that the Plaintiff's claim is that clause 14 is the source of the quality of confidence in relation to the exit of the Defendant from the Cayman Islands' market, then this should be pleaded properly. It should also be clear to the Defendant how it is said that the unauthorised confidential information has alleged to have been used i.e., who it is said to have received the confidential information. I agree with Advocate Dunster's submissions that the pleading is still as yet too vague. I was unpersuaded that any issues with disclosure that may remain or the witness evidence at trial are sufficient to excuse the Plaintiff from the lack of particularity. References to the Defendant making *"known its intention to the market"* or undefined third parties are not satisfactory given the pleaded breaches at 15I (a)-(d).

35. Further, despite my reference at the hearing in June 2021 to the impact of the Plaintiff issuing proceeding on 10 July 2020, the Plaintiff appears to be relying only on alleged breaches the day before and after this date, in these circumstances it is incumbent on the Plaintiff to demonstrate how, if the claim is on the basis of the Defendant's leaving the Cayman Islands' market, it survives this. The Plaintiff still needs to nail its colours to the mast about how this alleged breach or series of breaches caused it loss. Phrases such as *"was capable of undermining"* at 15H (b) are not sufficient nor does 15K demonstrate any proper causation. If it is about opportunity to seek alternative insurers as paragraph 14A appears to indicate, then this needs to be properly pleaded i.e. why is it said that the alleged breach meant that this opportunity to seek alternative insurers was lost or irreparably damaged but also why the Defendant has any obligation to facilitate this.

36. With regard to the claim that the Defendant has breached an implied duty of good faith, Advocate Breckon is correct that in my 30 November 2021 Judgment at paragraph 45 I said in relation to the application for summary judgments that *"Given the uncertainty about the implied term of good faith in Guernsey law the correct course is to allow this to be tested with argument at trial"*. However, the Plaintiff cannot ignore the second part of the sentence which goes on to say that *"the current pleadings nor the draft amended Cause do not yet focus with sufficient care and precision on the case the Plaintiff is putting forward"*. The assertion that a party has not acted in good faith is a serious allegation even more so an allegation that a party has acted in bad faith and both must be pleaded properly. The language of the current pleading is highly critical of the Defendant and yet fails to properly plead the claim. The Defendant is right to say that the current pleading cannot be left as it is.

37. As Pepperall J said in <u>Essex County Council v UBB Waste (Essex) Limited</u> [2020] EWHC 2387 (TCC) at paragraphs 61 to 62:

> *"61. Whatever the basis for my judgment the core plank of UBB's case at trail was that the Authority had not acted in good faith. I acknowledge that Mr Stewart was careful to make clear that not positively to assert that they had acted in bad faith. Nevertheless, allegations of a lack of good faith involve the serious imputation that one or more individuals engaged in conduct that would be regarded as "commercially unacceptable" by reasonable and honest people. Put more colloquially, these were allegations of sharp practice rather than necessarily dishonest conduct.*
>
> *62. I am sure that this distinction was not of any great comfort to those accused by UBB. As professional men and women employed at a senior level by a public authority, I readily accept that these officers have a deep understanding of the importance of integrity in their dealings on behalf of their employer. I have little doubt that they will have been distressed by allegations that their professional conduct might be regarded as commercially unacceptable by reasonable and honest people. Indeed, such a finding*

> *might have put their future employment, or at least their prospects of advancement in the public sector, at risk..*"

38. In relation to the alleged breach, the Plaintiff must set out with greater particularity each alleged breach and when it happened. As set out at paragraph 382 of <u>BP Gas Marketing Ltd v La Societe Sonatrach [2016] EWHC 2461</u>:

    > *"Whatever the precise boundaries of a contractual duty of good faith, an allegation of breach of such a duty, put at its lowest, involves an assertion that the other party has not acted in good faith. This is a serious allegation. In such circumstances the party making such allegation should plead its case with proper particularity so that the other party knows the case it has to face as to what breach is alleged to have occurred and when, and the party making such allegation will generally be held to its pleaded case as to what breach of duty is said to have occurred, and when, due to the nature of the allegation being made, and the fact that the evidence that will be called, will have been called to rebut that specific allegation, and only that allegation."*

39. With regard to the references to course of conduct with GGH pleaded at paragraph 22A (a)-(c) Advocate Breckon has said that this is not an allegation of conspiracy either lawful or unlawful, however given the serious nature of the allegations the Plaintiff is making, the Plaintiff cannot simply leave these particulars in the pleadings without purpose or relevance. The Plaintiff needs to nail its colours to the mast about what this alleged joint action means to the breach of contract claim made by the Plaintiff against the Defendant. If these refences in the pleadings do not go to the breach of contract allegation they should be removed. If they do go to the breach of contract allegation, the Plaintiff must particularise how.

40. Thereafter as with any claim, the pleading in relation to good faith and/or acting in bad faith must set out how the Plaintiff seeks to establish causation and the alleged damages from the Defendant's actions. The Plaintiff needs to show how the effects of termination are said to be the Defendant's responsibility where there is an express term permitting termination of the contract on 12 months' notice in an exclusive agency contract. The current pleading at 26A in relation to damages is not satisfactory. The Plaintiff must properly plead the damages it says have been caused including how it says this alleged breach or breaches have caused it damage over and above the damages of $770,269.16 pleaded and what opportunities the Plaintiff has allegedly lost. As I said in relation to the previous version of the pleading before me it is not enough for the Plaintiff to argue that *"something will turn up"* or indeed as currently pleaded that *"it is a matter for the court"*.

41. I am not clear from the pleading to what extent that claims in relation to price setting are on the basis of an express term, an implied term or both. This must be made clear. The Defendant's criticisms of the pleadings at paragraph 17 and 17A are justified and to these I also add paragraph 20. The Plaintiff must make clear what the Defendant's obligations are in relation to the price setting of premiums including dealing with how this claim works when it appeared to be accepted in June 2021, as the Defendant has submitted, that the policy price was set by GGH. For example, if it is the Plaintiff's case that there was a positive obligation upon the Defendant to not allow the underlying price set by GGH to be too high, the Plaintiff must plead from where this obligation is derived. Again, the Plaintiff must nail its colours to the mast about exactly what it says was the Defendant's alleged wrongdoing, what were its obligations and how it is said to have breached the contract, the causation and loss. The refences to the Price Gouging Law in the Cayman Islands at paragraphs 21 and 21A are not relevant to this pleading and should be deleted. If there is a relevant purpose to the reference to clause 10 of the 2016 Agreement at paragraph 21A, then the Plaintiff needs to plead why this is relevant to the claim. Likewise paragraph 15H(a) needs to repleaded

with focus on the material facts upon which the Plaintiff relies for its claim. This sub-paragraph also contains a reference to clause 6.1 of the 2016 Agreement which is not referred to elsewhere in the Cause and also to the offering of extensions to current policy holders. It is not clear on the current pleading what the link is between these elements. Paragraph 21B does now plead the detail of the policies written over the relevant period and as I have set out above the figure of $770,269.16 has been pleaded as damages. I consider that the Plaintiff has dealt with this element of the damages sufficiently even though it has not been done in the way that I set out in the 30 November 2021 Judgment for the reasons Advocate Breckon set out at the hearing. However as I have said (and say further below) there is still work to be done on causation which is not fulfilled (if this is their purpose) by paragraphs 24, 25 and 26 which are generalised statements and not adequate particulars of what the consequences were for the Plaintiff of the conduct of the Defendant particularly in circumstances where there is a 12 months' Notice Period and the underlying reasons for the Defendant's decision.

42. In the 30 November 2021 Judgment I made it clear that the paragraphs dealing with the 12 months' notice provision required amending. It is disappointing that the Plaintiff is still making reference at paragraph 24, *"Had the Defendant properly complied with the termination clauses of the 2016 agreement at the appropriate time and conducted an orderly and professional winding down of its affairs"* and at paragraph 25 (a) *"failing to provide proper notice at the appropriate time and not before it had served Les Defences."* These are in addition to the references at clause 14 and 22 of the failure of the Defendant to act in accordance with its contractual obligations to give notice in accordance with the terms of Clause 2.4.2…" and *"the failure by the Defendant to provide any or any proper Notice of Termination before the service of Les Defences…"* respectively. In submissions Advocate Breckon appeared to fix the time as March 2020 but this is not pleaded clearly in the Second Draft Amended Cause. If the Plaintiff wishes to allege that the Defendant has failed to properly comply with the termination clauses, it must be pleaded how it is said that the Defendant did not comply with the termination provisions, particularly when Advocate Breckon says there is no issue that the Termination Notice was served and the contract has ended. If there was an obligation on the Defendant to serve notice at a particular time or at the happening of a particular event this must be pleaded (and where the obligation is said to have been derived from) so that the Defendant can properly answer the claim. If the time the Plaintiff says was the right time is on or around the time identified at paragraph 15G as March 2020 this shouldn't be supposition, this must be pleaded clearly. Similarly, the Second Draft Amended Cause at paragraph 17 refers to an alleged abuse of clause 4.2 of the 2016 Agreement, referring to a failure to engage with the Plaintiff to give *"adequate notice for there to be appropriate discussions to determine the proper proving structures for the insurance year 2020/2021"* and *"dominant party rights"*. I agree with the Defendant, that there is not a link between the alleged failure and the term of the 2016 Agreement. Clause 4.2 goes to the Plaintiff not having underwriting or price-setting authority and not binding the Defendant to coverage under the policies without the Defendant's approval. The Plaintiff must set out the how this express term of the 2016 Agreement supports the allegation by the Plaintiff and specifically what the Plaintiff means by its reference to an obligation by the Defendant to give *"adequate notice"* and *"dominant party rights"* in this context.

43. Paragraphs 11 and 19 are incoherent. I consider that the Plaintiff must have a further attempt at re-pleading these paragraphs. Importantly I agree with the complaints of the Defendant that paragraph 11 fails to demonstrate why the Defendant had to positively cooperate with the Plaintiff to waive the express clause at 3.1. Likewise at paragraph 22A (d) the Plaintiff must plead what is the source of the obligation on the Defendant to act reasonably in waiving an express term of the 2016 Agreement as to exclusivity and at all times where the Plaintiff is seeking to rely on implied terms how this interacts with the express terms of the contract. Having established that the Plaintiff does need to replead this element of the claim, it is appropriate that the Plaintiff also deals with other

complaints that the Defendant has in order to avoid what would be legitimate exceptions de formes i.e. the terms of the letter of 18 November 2020 which do not appear to be an absolute refusal and the other correspondence that led on from this letter as well as licence limitations imposed by CIMA. Paragraph 19 appears to be a remnant of the original pleading which hasn't been updated to reflect the changes that have happened since the original Cause was served. If this had been a standalone amendment, I should have been unlikely to order it however given the numerous other amendments that need to be made I consider that this should be repleaded by the Plaintiff.

44. At paragraph 22A (e) there is a typo which needs amending in the first sentence. During the hearing Advocate Breckon took me to the emails which he said are the June 2020 agreement which is pleaded at this subparagraph. However, if the Plaintiff is alleging that there was a separate agreement this is not yet sufficiently pleaded. As Advocate Dunster set out, the elements required for pleading an agreement are not present. If the Plaintiff is arguing that this accord was in fact a manifestation of the obligations that the Defendant had under the 2016 Agreement likewise it is not yet adequately pleaded. In either case it is not clear how it is material to the Plaintiff's claim in relation to the 2016 Agreement and its terms. The Plaintiff must replead this paragraph so that the import of this alleged agreement is clear, as well as abiding by the rules of pleading.

45. At paragraph 15E the Plaintiff refers to "*the damage had already been done*". This seems to be a general reference to the Defendant's conduct causing the Plaintiff damage. It seems to be superfluous comment but unless it is identifying separate causation and damage other than that captured within the allegations that the 2016 Agreement should have been terminated at the appropriate time (although see my comments about this reference) this does not need to be amended. If it is an additional claim, then it must be properly pleaded. I do not consider paragraph 15G needs to be amended as I consider that this is background information unless this is in fact the "*appropriate time*" (see paragraph 43 above) then this should be properly pleaded as I have said above.

46. To an extent although not wholly due to previous amendments in the pleadings, the shape of the current Cause is not helpful. It may be a useful exercise for the Plaintiff to stand back from the current draft and consider whether in addition to the amendments that I have directed that the claims are repleaded in an orderly way so as to clearly demonstrate the link from the pleaded material facts to the claimed relief.

47. I do consider that Advocate Breckon has shown that there are causes of action struggling to get out that are partially visible however there is still work to be done to remedy what remain defective pleadings. I do not consider that we are in a comparable situation to that alluded to by Lewison J in *Cranway Limited v Playtech* [2008] EWHC 550 (Pat) where he refers to having struck out a claim where the claimant had been given the opportunity to amend but had not done so. The Plaintiff has attempted to amend the claim, but the Second Draft Amended Cause still contains numerous defects. It seems to me that the Plaintiff has failed to grasp the importance of a properly pleaded Cause. This is not being pernickety but rather an acknowledgment that proper pleading is essential. To restate what I said in my 30 November 2021 Judgment it is a rule of justice that if a party is going to be called upon to spend time and money on answering claims made against him, he should be given a clear indication as to what is being demanded of him and the reasons for it.

48. Advocate Dunster in his skeleton argument invited me to exercise my general powers of case management to make unless orders, adverse costs orders and/or strike out sections of the pleadings I consider appropriate in the circumstances. Although I have come to the conclusion that the Plaintiff has been almost entirely unsuccessful in amending its Cause I do consider, on balance, that the Plaintiff should be given one last opportunity to amend its pleading in order that the real dispute

between the parties can be adjudicated upon, but this must be done in a timely way.  I therefore direct that the Plaintiff will have 28 days from the date of this judgment being handed down in final form to file its application for leave to amend the Cause.   If the Plaintiff makes the application in time but the Defendant does not consent to the amendments then the matter should be listed by the Plaintiff for the second Interlocutory Court after the 28 day deadline in order that directions can be made.  If the Plaintiff does not make its application in time, then the Defendant may wish to make consequential applications.

49. There appears to be no good justification for the Plaintiff not to pay the Defendant's recoverable costs of and occasioned by its amendments.  I do not consider that these should be limited given the approach of the Defendant which I consider was well-grounded in the circumstances.  However, as I did not hear the parties on costs in April, I will give the parties 7 days to make any application otherwise I will make the order that I have intimated.