**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

U.S. BANK NATIONAL ASSOCIATION, in
its capacity as Trustee, JOSHUA N. TERRY,
and ACIS CAPITAL MANAGEMENT, L.P.,

        *Plaintiffs*,

    v.

THE CHARITABLE DONOR ADVISED
FUND, L.P., CLO HOLDCO LTD., and
NEXPOINT DIVERSIFIED REAL ESTATE
TRUST,

        *Defendants*.

Case No. 1:21-cv-11059-GHW

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE DAF PARTIES' AMENDED COUNTERCLAIMS AND
FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' CLAIMS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Misha Boutilier
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis*
  *Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  *Attorneys for Plaintiff U.S. Bank National*
  *Association, in its capacity as Trustee*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ............................................................................................................................2

I.      THE DAF PARTIES LACK STANDING TO BRING THEIR COUNTERCLAIMS ............................2

II.     THE COUNTERCLAIMS FAIL TO STATE A CLAIM ................................................................4

      A.      The DAF Parties Fail To State Settlement Agreement Invalidation Claims ..........4

      B.      The DAF Parties Fail To State A Claim For Tortious Interference .......................6

            1.      The DAF Parties Do Not Allege An Underlying Breach ............................6

            2.      The DAF Parties Do Not Allege Intentional Interference ...........................8

            3.      The Economic Interest Defense Applies .......................................................9

      C.      The Unjust Enrichment Claim Must Be Dismissed.................................................10

III.    JUDGMENT ON THE PLEADINGS IS APPROPRIATE .................................................................10

CONCLUSION.........................................................................................................................10

i

**TABLE OF AUTHORITIES**

Page

**Cases**

*Abdou v. Walker,*
2022 WL 3334700 (S.D.N.Y. Aug. 12, 2022)......................................................................4

*Artemus USA LLC v. Leilataghinia-Milani Inc.,*
2020 WL 5369257 (N.Y. Sup. Ct. Sept. 8, 2020) ..............................................................3

*Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.,*
2016 WL 2622013 (W.D.N.Y. May 5, 2016) ......................................................................8

*Berrios v. New York City Hous. Auth.,*
564 F.3d 130 (2d Cir. 2009) ..............................................................................................6

*CapLOC, LLC v. McCord,*
2018 WL 3407708 (S.D.N.Y. June 12, 2018) ....................................................................9

Dkt. 182-8, *Compound Photonics Group Ltd Re,*
[2022] EWCA Civ 1371 ..................................................................................................6, 8

*Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.,*
304 A.D.2d 86 (1st Dep't 2003)......................................................................................2, 3

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff,*
152 A.3d 1248 (Del. 2016) ................................................................................................3

*Emmett Properties, Inc. v. Halliburton Energy Servs., Inc.,*
167 S.W.3d 365 (Tex. App. 2005) ....................................................................................2

*Finkel v. E.A. Techs., Inc.,*
2014 WL 4364757 (E.D.N.Y. Sept. 3, 2014) ....................................................................9

*In re George Wash. Bridge Bus Station Dev. Venture LLC,*
2022 WL 4653117 (Bankr. S.D.N.Y. Sept. 30, 2022) ......................................................9

*Gov't Emps. Ins. Co. v. Hazel,*
2014 WL 4628655 (E.D.N.Y. Aug. 11, 2014) ................................................................8, 9

*Hadami, S.A. v. Xerox Corp.,*
272 F. Supp. 3d 587 (S.D.N.Y. 2017)................................................................................8

*High Falls Brewing Co., LLC v. Bos. Beer Corp.,*
852 F.Supp.2d 306 (W.D.N.Y. 2011), *aff'd,* 513 F.App'x 12 (2d Cir. 2013) ..........................8

*In re Zohar III, Corp.,*
631 B.R. 133 (Bankr. D. Del. 2021) ..................................................................................8

*Jackson v. Wells Fargo N.A.*,
  2020 WL 7327582 (S.D. Tex. Dec. 11, 2020)...........................................................................3

*Kamdem-Ouaffo v. Pepsico, Inc.*,
  160 F.Supp.3d 553 (S.D.N.Y.), *aff'd*, 657 F.App'x 949 (Fed. Cir. 2016)................................4

Dkt. 111-21, *Marex Financial Ltd. v. Sevilleja*,
  [2020] UKSC 31 .....................................................................................................................2, 3

*Meisels v. Meisels*,
  2021 WL 6125591 (E.D.N.Y. Dec. 28, 2021)...........................................................................3

*NAF Hldgs, LLC v. Li & Fung (Trading) Ltd.*,
  772 F.3d 740 (2d Cir. 2014) ....................................................................................................2

*Robinson v. Nat'l R.R. Passenger Corp.*,
  1995 WL 444322 (S.D.N.Y. July 26, 1995) .............................................................................4

*S. Tex. Water Auth. v. Lomas*,
  223 S.W.3d 304 (Tex. 2007).....................................................................................................3

Dkt. 182-7, *Soteria Ins. Ltd. v. IBM United Kingdom Ltd.*,
  [2022] EWCA Civ 440...............................................................................................................6

*State St. Glob. Advisors Tr. Co. v. Visbal*,
  431 F.Supp.3d 322 (S.D.N.Y. 2020)........................................................................................8

*Topps Chewing Gum Inc. v. Fleer Corp.*,
  799 F.2d 851 (2d Cir. 1986) .....................................................................................................2

Dkt. 108-11, *Wachovia Bank Com. Mortg. Tr. Com. Morg. Pass-Through
  Certificates, Series 2007-C30*,
  (Minn. Dist. Ct. Oct. 26, 2022).................................................................................................8

*Wen v. New York City Reg'l Ctr., LLC*,
  2023 WL 6317995 (S.D.N.Y. Sept. 28, 2023) .........................................................................5

*Wilson v. Dantas*,
  2013 WL 92999 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014)........................9

*Wilson v. Dantas*,
  746 F.3d 530 (2d Cir. 2014) .................................................................................................5, 9

*Winter v. Stronghold Digital Mining, Inc.*,
  2023 WL 5152177 (S.D.N.Y. Aug. 10, 2023)..........................................................................2

*Yudell v. Gilbert*,
  99 A.D.3d 108 (1st Dep't 2012)............................................................................................2, 3

## **Rules**

Fed. R. Civ. P. 9(b)................................................................................................................1, 4

Fed. R. Civ. P. 12(c)................................................................................................................10

Plaintiffs submit this reply memorandum of law in support of their motion (the "Motion" or "Mot.," Dkt. 183) to dismiss the DAF Parties' counterclaims and for judgment on the pleadings on Plaintiffs' claims against the DAF Parties in the Amended Complaint.[1]

### PRELIMINARY STATEMENT

The DAF Parties' opposition (Dkt. 199, "Opp.") has no answer for the Amended Counterclaims' two core flaws: lack of standing, and the absence of any particularized, plausible allegations that Plaintiffs improperly colluded with HCLOF by entering into the 2021 and 2023 Settlement Agreements. The DAF Parties all but concede that their pleading cannot survive under applicable Guernsey law if their claims are derivative. That is fatal because their claims are based on purported injury to HCLOF that only harmed them—if at all—indirectly. There is no allegation of direct harm that might support direct standing. But even if the DAF Parties could establish standing, they still fail to plausibly plead that the Settlement Agreements were collusive—an allegation sounding in fraud—with the particularity Rule 9(b) requires. Rather, despite admitting that all their claims are based on improper collusion, their allegations show nothing more than that HCLOF advanced its own interests by agreeing to Settlement Agreement provisions that resolved claims with Plaintiffs, obtained $16 million in reserved funds, and help recover legal fees that diminish distributions to HCLOF. Their tortious interference claim fails for additional reasons, including the absence of any intentional and unjustified interference with the Members Agreement. And the DAF Parties do not attempt to substantively defend their unjust enrichment claim. The Amended Counterclaims should be dismissed with prejudice, and the Court should grant judgment on the pleadings on Plaintiffs' Amended Complaint for the same reasons.

---

[1] Capitalized terms not defined herein have the meaning assigned to them in the Motion.

<u>ARGUMENT</u>

## I.   THE DAF PARTIES LACK STANDING TO BRING THEIR COUNTERCLAIMS

Rather than defend their right to proceed derivatively under Guernsey law, the DAF Parties argue that their claims are direct, not derivative.[2]  Opp. 6-8, 16-17.  This is incorrect.

*First*, the DAF Parties claim that they have direct standing to seek invalidation of the Settlement Agreements because those agreements "directly harm[]" them.  Opp. 6-8.  But the alleged harms they point to are all plainly suffered by HCLOF.  The allegedly "wrongful" retention of reserves and limitations on HCLOF's ability to transfer its Subordinated Notes to Dondero-related entities (Opp. 7, bullet pts. 1 & 4) reduce distributions to HCLOF and, perhaps, the sale value to HCLOF of its Subordinated Notes.  In each case, the only harm is the reduction in cash at HCLOF available for distribution to its investors—a classic reflective loss that does not support a direct claim.  *See* Dkt. 111-21, *Marex Financial Ltd. v. Sevilleja*, [2020] UKSC 31 ¶¶ 79-80 (Guernsey law); Dkt. 216 ¶¶ 3.4-3.7 (same); *Yudell v. Gilbert*, 99 A.D.3d 108, 114 (1st Dep't 2012) (New York law); *Emmett Properties, Inc. v. Halliburton Energy Servs., Inc.*, 167 S.W.3d 365, 371 (Tex. App. 2005) (Texas law).  None of the other asserted harms (Opp. 7, bullet pts. 2 & 3) move the needle because the DAF Parties do not plead any pre-existing right to have HCLOF negotiate releases of claims for them or decline to seek attorneys' fees from them.[3]  *See Decolator,*

---

[2]  Importantly, the DAF Parties do not challenge Plaintiffs' contention (Mot. 7-9; Dkt. 182 ¶¶ 4.1-4.11; Dkt. 216 ¶¶ 4.1-4.2) that the exceptions to Guernsey law's general bar on derivative claims do not apply here.  *See Winter v. Stronghold Digital Mining, Inc.*, 2023 WL 5152177, at *11 (S.D.N.Y. Aug. 10, 2023) ("[F]ailure to address an issue … [is] waiver").  And while the DAF Parties' expert claims that U.S. law governs whether claims in respect of HCLOF are derivative (Dkt. 199-1 ¶ 20), it is clear that Guernsey law governs this question because HCLOF is a Guernsey entity.  *NAF Hldgs, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d Cir. 2014) ("law of the [entity's] state of incorporation" governs if "a claim is direct or derivative."); *see* Mot. 6 n.3

[3]  The DAF Parties' authorities are inapposite.  *Decolator* supports Plaintiffs' position.  *Topps Chewing Gum Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986) did not apply New York law and, unlike here, concerned a non-party whose rights were "a function of … [defendant's contractual] rights."  The remaining two trial court cases were dicta.

*Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't 2003) (direct harm exception inapplicable because contract did not "affect[] [non-party's] right" under lien). Thus, the release carve-out (Dkt. 155-3 § 9) left the DAF Parties in the same position as before the agreement and treated them the same as other investors who also were not released. *Id*. And the DAF Parties were subject to fee shifting before and after the 2023 Settlement Agreement.

*Second*, the DAF Parties argument ignores that, at least under Texas law, non-parties who are not third-party beneficiaries lack standing to challenge a contract's validity. *See Jackson v. Wells Fargo N.A*., 2020 WL 7327582, at *5 (S.D. Tex. Dec. 11, 2020); *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306-07 (Tex. 2007). Thus, if the choice-of-law provision governs, their claim to invalidate the 2021 Settlement Agreement is plainly barred by this black-letter rule.

*Third*, the DAF Parties' argument that their tortious interference claim is direct because it "seeks damages … caused by … HCLOF's breach of [its] obligations to [the DAF Parties]" (Opp. 17) also fails. The harm addressed by this claim—a reduction in distributions to HCLOF that allegedly reduced the DAF Parties' "distributions" from HCLOF (*id.*)—is a "reflective loss" that can only be pursued derivatively. Dkt. 111-21, *Marex* ¶¶ 79-80; Dkt. 182 ¶ 3.2; Mot. 6. That "CLOH is in privity with HCLOF" (Opp. 17) does not make this derivative claim, which the DAF Parties' expert did not address (Dkt. 199-1 ¶¶ 20, 24), direct. Dkt. 111-21, *Marex* ¶¶ 52-54 (claims "resulting from a breach of obligations owed to the company" are derivative even if "contractual obligations owed to [the shareholder]" were also breached); Dkt. 182 ¶ 3.14; Dkt. 216 ¶¶ 3.4-3.6; Mot. 8-9. The same is true under Delaware and New York law. Mot. 9 n.5 (citing *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1259-62 (Del. 2016); *Yudell*, 99 A.D.3d at 110.

---

*See Artemus USA LLC v. Leilataghinia-Milani Inc.*, 2020 WL 5369257, at *4 (N.Y. Sup. Ct. Sept. 8, 2020) (plaintiff had standing as "an undisclosed principal"); *Meisels v. Meisels*, 2021 WL 6125591, at *2-3 (E.D.N.Y. Dec. 28, 2021) (declining to analyze standing "in full" because plaintiff was suing for conversion, "not… to invalidate" the contract).

## II.    THE COUNTERCLAIMS FAIL TO STATE A CLAIM

### A.    The DAF Parties Fail To State Settlement Agreement Invalidation Claims

The DAF Parties wrongly claim that the allegation of collusive dealing underlying their invalidation claims need not comply with the particularity requirements of Rule 9(b).[4] Opp. 9 n.8. While they seek to distinguish Plaintiffs' cases saying the opposite (Mot. 10, 14) as "sounding in fraud" (Opp. 9 n.8), the alleged collusive dealing in those cases was no more or less fraudulent then here, as the DAF Parties all but admit (Opp. 9) by alleging that their claims sound in "corruption." *See Robinson v. Nat'l R.R. Passenger Corp.*, 1995 WL 444322, at *8 (S.D.N.Y. July 26, 1995) (Rule 9(b) applied to "collusion and … bad faith").  Nor is there an exception to Rule 9(b) for contract invalidation claims. *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F.Supp.3d 553, 567 (S.D.N.Y.) (applying Rule 9(b) to such claims), *aff'd*, 657 F.App'x 949 (Fed. Cir. 2016).

In the alternative, the DAF Parties claim (Opp. 9) that their allegations satisfy Rule 9(b) because they identify the people, dates, and communications involved.  Notably missing from these so-called "facts" is any plausible allegation that the HCLOF's directors were motivated by any improper benefit or quid-pro-quo to abandon their duties to act in the best interest of HCLOF. Without such an allegation, the DAF Parties' counterclaims rely upon mere disagreement with the HCLOF directors' judgment in agreeing to the Settlement Agreements—at best a derivative claim for breach of their duty of care to HCLOF that is insufficient to rescind an arm's length transaction. The DAF Parties cannot convert such a garden-variety derivative claim against HCLOF's directors into a rescission claim by simply labelling it "collusion" without alleging any supporting facts.

---

[4]  The DAF Parties fail to advance any viable non-collusion basis for invalidation.  The DAF Parties do not seriously defend their lack of consideration argument, relegating it a single, conclusory sentence (Opp. 23) at the back of their brief.  *See Abdou v. Walker*, 2022 WL 3334700, at *3 (S.D.N.Y. Aug. 12, 2022) ("Arguments raised in a single conclusory sentence are waived.").  And even if their tortious interference invalidation theory (Opp. 10-11) could invalidate the Settlement Agreements, that theory fails because they do not adequately allege any tortious interference.

In an effort to fill the gaps, the DAF Parties point to a list of allegations that they argue support a plausible inference of collusion.  Opp. 10.  None of those allegations move the needle.  *First*, their secrecy allegations are insufficient because the DAF Parties allege no duty to disclose (*see* Mot. 23) and, in any event, the communications they cite *did* disclose the settlement negotiations.  *Id*. 15-16; *see* Dkt. 179-1 at -583, Dkt. 179-2 at -236 (HCLOF disclosing settlement communications with Plaintiffs and that it was pursuing non-litigation resolution options).  *Second*, the conclusory assertion that the Settlement Agreements' note transfer restrictions, agreement to cooperate in recovering legal fees, and non-release of Plaintiffs' claims against the DAF Parties were "commercially unacceptable" (Opp. 10) also fail.  On the transfer restrictions and release carve-out, the DAF Parties ignore the far more plausible explanation that these terms were included in order to obtain the benefits of the Settlement Agreements—including dismissal of ongoing litigation against HCLOF under the 2021 Settlement Agreement and distribution of $16 million in previously reserved funds under the 2023 Settlement Agreement.  *Wilson v. Dantas*, 746 F.3d 530, 536 (2d Cir. 2014) (allegation that settlement intended to harm non-settling third party was inadequate based on "far more plausible inference" that settling parties' "motive was to end nearly four years of contentious litigation," which was "appropriate economic self-interest"); *see also* Mot. 16-18.  The agreement to pursue fees also benefits HCLOF because fees recovered from the DAF Parties and NexPoint would increase distributions to HCLOF by replacing amounts already disbursed from the reserves.  Mot. 17.  *Third*, the DAF Parties' bare assertions that HCLOF's directors received excessive compensation and were beholden to HCM as the majority shareholder (Opp. 3) are conclusory allegations that courts in this District routinely reject.  *See* Mot. 10.[5]

---

[5]  The DAF Parties' argument that Plaintiffs' "rely[] on Delaware law" (Opp. 10 n.9) fails because New York law is the same.  *See Wen v. New York City Reg'l Ctr., LLC*, 2023 WL 6317995, at *17 (S.D.N.Y. Sept. 28, 2023) ("Alleging that a fiduciary's decision was motivated by a desire to maintain her salary is … insufficient") (New York law).

**B.      The DAF Parties Fail To State A Claim For Tortious Interference**

**1.      The DAF Parties Do Not Allege An Underlying Breach**

The DAF Parties assert (Opp. 14-15) that they have adequately pled an underlying breach of the "good faith" provision in the Members Agreement based on the conclusory assertions that HCLOF lied to them about settlement discussions with Plaintiffs or failed to disclose the same, as well as that the terms of the Settlement Agreements were commercially unreasonable and unfairly biased against the DAF Parties.  None of these theories establish dishonesty or reprehensible bad faith conduct going beyond commercial self-interest, as Guernsey law requires,[6] Dkt. 216 ¶¶ 5.1-5.15, and no fact issues preclude dismissal (*contra* Opp. 16) because failure to state a claim is a question of law.  *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

*First*, the DAF Parties contend that the Settlement Agreements breach the "good faith" provision because HCLOF "secre[tly]" entered them without advance disclosure to the DAF Parties (Opp. 14).  But they fail to rebut Plaintiffs' argument (Mot. 16) that the documents they quote from contradict their allegations.  *See supra* at 4-5.  Even if that were not so, in *Compound Photonics*—which the DAF Parties concede is the leading case (Opp. 15-16)—the Court rejected the position that secret actions by a party pursuing its economic self-interest that "deliberately t[ook] [the plaintiff] by surprise" violated such a clause.  *See* Dkt. 182-8, *Compound Photonics*, [2022] EWCA Civ 1371 ¶¶ 274-77, 292-94; *see also* Dkt. 182 ¶¶ 5.9-5.11; Dkt. 216 ¶¶ 5.12-5.28.

*Second*, the DAF Parties attempt (Opp. 14) to manufacture an allegation of "dishonest misrepresentation" based on HCLOF's August 2021 representation that "it was taking urgent and

---

[6]  While the DAF Parties assert that they need not plead reprehensible bad faith conduct extending beyond commercial self-interest because the decision imposing that requirement was from another area of law (Opp. 15-16; Dkt. 199-1 ¶¶ 28-30), they ignore that the English Court of Appeal ruled that this standard governs good faith clauses.  *See* Dkt. 182-7, *Soteria Ins. Ltd. v. IBM United Kingdom Ltd.*, [2022] EWCA Civ 440 ¶¶ 123, 137, 139-40; Dkt. 216 ¶¶ 5.12-5.15.

proportionate steps to secure unrestricted control" over the reserves (Dkt. 215-1 at -3510), which the DAF Parties assert (Opp. 15) that HCLOF "contradict[ed]" by "enter[ing] into" the 2023 Settlement Agreement.[7]   But there is nothing inconsistent between the 2023 Settlement Agreement, which secured the release of $16 million, and the August 2021 statement.   While HCLOF may have aspired to free up all of the reserves, a settlement agreement that avoids expending those very reserves by litigating over them, while also obtaining a multimillion dollar reduction in the reserve balance taken, makes perfect sense in these circumstances.

*Third*, the DAF Parties assert (Opp. 16) that HCLOF breached the Members Agreement's "good faith" provision by not insisting on full distribution of the reserves, despite there being "no contractual basis that can justify the reserves."   The contractual basis for the reserves, however, is apparent on the face of the Acis CLOs' governing agreements, which require the Acis CLOs to indemnify Plaintiffs against adverse claims and provide for payment of those indemnification obligations ahead of any and all distributions to the Subordinated Noteholders.   *See* Indentures § 6.7(iii) (indemnification of Trustee); *id.* § 11.1 (payment of Administrative Expenses, including indemnification obligations, ahead of Subordinated Noteholders); PMAs § 11(a) (indemnification of the portfolio manager).[8]   The DAF Parties neither identify any provision of the Acis CLOs' indentures or PMAs that prohibit the taking of reserves (because none exists) nor distinguish Plaintiffs' authorities holding that creating reserves in securitization transactions with similar provisions was proper.   *See* Mot. 19.   The DAF Parties' conclusory "no contractual basis" allegation is not entitled to deference, and has been rejected in the relevant caselaw.   *See*, *e.g.*,

---

[7]   The DAF Parties' misrepresentation assertion concerning the 2021 Settlement Agreement makes no sense because the document disclosed that HCLOF "settled … with A[CM]" by entering that agreement.   Dkt. 215-1 at -3529.

[8]   The Indentures (Dkts. 78-1, 108-14, 108-16) and PMAs (Dkts. 78-2, 108-13, 108-15) are incorporated by reference in the counterclaims.   Dkt. 155 ¶¶ 7(v), 56-59.

*Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) ("Conclusory allegations that a defendant breached an agreement are insufficient"); Dkt. 108-11, *Wachovia Bank* (Minn. Dist. Ct. Oct. 26, 2022) at 9-10 (indemnification provisions authorized reserves despite challengers' argument that "[t]he PSA nowhere explicitly authorizes reserv[es]").

*Fourth*, the DAF Parties allegation (Opp. 14-15) that various provisions of the Settlement Agreements singling out the DAF Parties (along with other Dondero-affiliated entities) for disparate treatment is not sufficient to support a plausible inference of bad-faith conduct by HCLOF in breach of the Members Agreement. As discussed above, *see supra* at 4-5, each of these provisions either is equally plausibly explained as a concession to Plaintiffs necessary to obtain the benefits that the Settlement Agreements provided to HCLOF (*e.g.*, the transfer restrictions and release carve-out) or plainly benefits HCLOF (*e.g.*, the fee-recovery provision). HCLOF's pursuit of its own economic self-interest over CLOH's interests fails to support a claim of bad-faith. Dkt. 182-8, *Compound Photonics* ¶¶ 274-77, 288-91; Dkt. 182 ¶¶ 5.9-5.11; Dkt. 216 ¶¶ 5.12-5.28.

## 2.    The DAF Parties Do Not Allege Intentional Interference

The DAF Parties contend (Opp. 18-19) that Plaintiffs' alleged interference with the Members Agreement was intentional because they knew of the Members Agreement's existence. But "knowledge of a contract's existence is insufficient to support allegations that the defendants 'induced' any breach."[9] *Gov't Emps. Ins. Co. v. Hazel*, 2014 WL 4628655, at *12 (E.D.N.Y. Aug. 11, 2014); *see* Mot. 21. Rather, the DAF Parties must plausible allege that Plaintiffs entered into the Settlement Agreements with the "purpose … [of] caus[ing] [a] breach" of contract. *High Falls Brewing Co., LLC v. Bos. Beer Corp.*, 852 F.Supp.2d 306, 312 (W.D.N.Y. 2011), *aff'd*, 513

---

[9]  The DAF Parties' authorities—*State St. Glob. Advisors Tr. Co. v. Visbal*, *In re Zohar III, Corp.*, and *Bausch & Lomb Inc. v. Mimetogen Pharmaceuticals, Inc.*—do not concern intentional interference. *Visbal*, 431 F.Supp.3d 322, 348-49 (knowledge); *Zohar*, 631 B.R. 133, 166-67 (economic interest); *Bausch*, 2016 WL 2622013, at *12 (same).

F.App'x 12 (2d Cir. 2013). They do not and cannot do so. Mere allegations that Settlement Agreements had an adverse effect on the DAF Parties do not suffice. *See Hazel*, 2014 WL 4628655, at *12; *In re George Wash. Bridge Bus Station Dev. Venture LLC*, 2022 WL 4653117, at *13 (Bankr. S.D.N.Y. Sept. 30, 2022). Here, each provision of the Settlement Agreements challenged by the DAF Parties is more plausibly explained as a legitimate effort by Plaintiffs to pursue their own economic self-interest rather than to infringe on the DAF Parties' contractual rights. *See supra* at 4-5; Dkt. 216 ¶¶ 6.1-6.2 (good faith presumed). Indeed, the DAF Parties admit that Plaintiffs' aim was to advance their own "economic interest" in, for example, "fund[ing] expenses" from the reserves. *See* Dkt. 155 ¶¶ 6, 35; *Finkel v. E.A. Techs., Inc.*, 2014 WL 4364757, at *10 (E.D.N.Y. Sept. 3, 2014) (no intentional interference where defendant "acted in its own interests"); *Wilson v. Dantas*, 2013 WL 92999, at *6 (S.D.N.Y. Jan. 7, 2013) ("[a]dversarial bargaining to achieve [party's] own goals cannot be simultaneously construed as assisting [party's] opponent … in breaching a duty … to [plaintiff]"), *aff'd*, 746 F.3d 530 (2d Cir. 2014).

### 3.    The Economic Interest Defense Applies

Finally, the DAF Parties' assertion that the Settlement Agreements must have been motivated by malice based on their disproportionate treatment of the DAF Parties and supposedly unjustified terms (Opp. 20), fails to rebut Plaintiffs' economic interest defense. While the DAF Parties assert that these conclusory allegations must be credited on a motion to dismiss, that is not so. To the contrary, courts routinely dismiss tortious interference claims in the absence of non-conclusory allegations of malice overcoming the defense. *CapLOC, LLC v. McCord*, 2018 WL 3407708, at *6 (S.D.N.Y. June 12, 2018) ("bare allegations of malice do not suffice"). As discussed above, *see supra* at 4-5, the "far more plausible inference" is that the Plaintiffs were motivated by "appropriate economic self-interest" in ending disputes with HCLOF in a way that its stakeholders wishing to continue them could not circumvent. *See Wilson*, 746 F.3d at 536.

### C.      The Unjust Enrichment Claim Must Be Dismissed

The DAF Parties only mention the unjust enrichment claim in a footnote.  *See* Opp. 19 n.22 (asserting that "[t]he plausible facts supporting the tortious interference and breach of contract claim are also sufficient to support a plausible claim of unjust enrichment").  They do not respond to Plaintiffs' position (Mot. 23) that this claim must be dismissed because the Indentures, PMAs and Members Agreement govern the subject matter of that claim, thereby conceding the point.

## III.    JUDGMENT ON THE PLEADINGS IS APPROPRIATE

The Court should also grant judgment on the pleadings on the Amended Complaint.  *First*, the DAF Parties fail to rebut Plaintiffs' argument that judgment on Count One is appropriate because the DAF Parties lack standing to bring their claims from the 2019 and 2020 Lawsuits. Mot. 24.   The DAF Parties admit that these lawsuits advanced "a derivative claim for mismanagement of the CLOs" (Opp. 24) and do not assert that any exception to Guernsey and Cayman Islands law's prohibition on derivative claims applies.  Their further assertion that their Amended Counterclaim is not derivative (*id*.) is irrelevant because Count One seeks judgment on the claims advanced in the 2019 and 2020 Lawsuits, not the Amended Counterclaim.  Their further assertion that "fact-based" defenses "bar Plaintiffs' Rule 12(c) Motion to the extent it seeks declaratory relief relating to the 2021 [Settlement] Agreement" (Opp. 23-24) is also irrelevant because that agreement has no bearing on the DAF Parties' derivative standing.

*Second*, the DAF Parties' affirmative defenses also do not preclude judgment on Count Two (contra Opp. 23) because they are based on the same counterclaim allegations challenging the 2021 Settlement Agreement that fail to state a claim, and thus do not require further discovery.

### CONCLUSION

For the above reasons, the DAF Parties' counterclaims should be dismissed with prejudice and Plaintiffs' motion for judgment on the pleadings against the DAF Parties should be granted.

Dated: New York, New York
      October 19, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:      */s/ Blair A. Adams*
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan T. Carroll
  Misha Boutilier
  Michael R. Bloom
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

**SEWARD & KISSEL LLP**

By:      */s/ Mark D. Kotwick*
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200

*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

11

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on October 19, 2023, he caused a true copy of the

foregoing document to be served via CM/ECF to all counsel of record.


*/s/ Misha Boutilier*
Misha Boutilier