UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> *Defendants*. | No. 1:21-cv-11059 (GHW) <br><br> (Oral Argument Requested) |

**THE DAF PARTIES' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY FROM HCLOF**

Defendants/Counter-Plaintiffs, Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF") and CLO HoldCo, Ltd. ("CLOH") (collectively, the "DAF Parties"), file this Reply Memorandum of Law in Support of the DAF Parties' Motion to Compel Discovery from Counter-Defendant Highland CLO Funding, Ltd. ("HCLOF") ("Motion" [Dkt. 205]), and respectfully would show:

**OVERVIEW**

HCLOF's Response relies upon factually distinguishable authorities, old arguments, a distortion of the Guernsey Proceedings, and a mischaracterization of this Court's prior Stay Order. [Dkt. 194-2]. Although HCLOF's Motion to Dismiss [Dkt. 177-178], places HCLOF's New York contacts squarely into issue, it asks this Court to accept its *ipsi dixit* that no such contacts exist, and then resists discovery that would allow the DAF Parties an opportunity to further test this bald assertion. Clearly, based upon known information, HCLOF's assertion appears disingenuous. To

1

be clear, HCLOF entered into the 2023 Agreement [Dkt. 205-3] that was negotiated in New York, that allows the Plaintiffs (Counter-Defendants) to retain and waste millions of dollars of funds that are not theirs to retain—much less use. HCLOF also acknowledged that this Agreement should be governed by New York law; HCLOF then consented to jurisdiction concerning disputes arising under this Agreement; yet HCLOF claims it has no contacts relating to the breach of its express duty of good faith when it entered into this Agreement. There is something wrong with this picture.

If HCLOF's contentions are true—which existing documents strongly suggest is not the case—then jurisdictional discovery will present minimal burdens. HCLOF's arguments are also inconsistent with its comment that, while HCLOF does not concede jurisdiction, the DAF Parties have presented at least a "thin" basis for the exercise of such jurisdiction. (*See* Respons*e* at 1).

HCLOF's argument that jurisdictional discovery was available via the Guernsey Proceeding is also a legal and factual distortion. Since the Court's Stay Order [Dkt. 205], HCLOF rejected the DAF Parties' request for discovery in the Guernsey Proceedings. (*See* Motion Exhibits [Dkt. 205-5, 6]). HCLOF's next suggestion - that all jurisdictional discovery should be sought from Plaintiffs - makes no sense. In any event, the federal discovery rules do not contemplate HCLOF's strategy to lateral discovery obligations. The DAF Parties are entitled to seek discovery directly from HCLOF concerning internal communications, as well as external communications bearing on the jurisdictional inquiry.

The DAF Parties respectfully submit that the Court should grant their Motion, compel HCLOF to respond to targeted jurisdictional discovery, and compel HCLOF to produce a Rule 30(b)(6) corporate representative regarding jurisdictional and *forum non conveniens* issues.

## ARGUMENT AND AUTHORITIES

**A. <u>Discovery is Warranted</u>**

HCLOF ignores the correct discovery standard. As stated in the DAF Parties' Motion, "[i]t is well settled under Second Circuit law that, even where plaintiff has not made prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014). Here, the record indicates that critical actions giving rise to the DAF Parties' Counterclaims were carried out in New York.[1] HCLOF's apparent concession of a "thin" basis for jurisdiction also corroborates that the requested discovery is warranted and not a mere "fishing expedition."

The cases cited in HCLOF's Response are distinguishable. In *Holmes v. Apple, Inc.*, 797 F. App'x 557 (2d Cir. 2019) (Summary Order), the court focused on an absence of factual allegations supporting jurisdiction. *Id*. at 560. Here, the DAF Parties made ample and specific allegations in their Counterclaim – of connections related to this matter tying HCLOF directly to New York - to support personal jurisdiction and which also warrant the requested discovery. *See* [Dkt. 155], *e.g.*, pp. 24 – 25, ¶ 16.[2] The DAF Parties have pled that "*HCLOF actively participated in negotiations within the State of New York that resulted in at least one of the secret agreements at issue in this Counterclaim.*" *Id*. (emphasis added). Additionally, there are email communications suggesting that the Directors of HCLOF were seeking to hold meetings in New York for those negotiations in New York in connection with the negotiations of the 2023 Agreement.[3] HCLOF's

---

[1] *See* Amended Counterclaim [Dkt. 155] at ¶¶ 16, 44, 80-81 (specific allegations regarding HCLOF's nexus of activities and litigation in New York); s*ee also,* Exhibits 12-13 to Declaration of Sawnie A. McEntire [Dkt. 200-12] ("SAM Dec."), attached as Exhibit C to the DAF Parties Joint Response and Memorandum of Law in Opposition to Highland's Motion to Dismiss Counterclaim ("DAF Parties' Response") (email communications that HCLOF seeking meetings in New York in connection with the negotiations of the 2023 Agreement).
[2] Moreover, these jurisdictional allegations clearly extend beyond the language of the agreements at issue.
[3] *Id. See also* DAF Parties Response [Dkt. 200] at pp. 3-4.

3

reliance on *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009) (finding no specific allegations of jurisdiction), is similarly misplaced.[4]

As outlined in the DAF Parties' Motion, e-mail communications to and from HCLOF, as well as its attorneys in New York, confirm a several month pattern of business dealings between the principals and their lawyers. HCLOF had several lawyers in New York doing its bidding throughout these negotiations, including several partners from the Akin Gump firm, King & Spalding, as well as the Pachulski Stang Ziehl & Jones LLP firm.[5] There were over 30 email communications involving HCLOF in New York.[6] HCLOF's lawyers were all located in New York,[7] and their involvement was not tangential. Other specific allegations supporting jurisdiction are set forth in detail in the Amended Counterclaim.[8] HCLOF should produce the discovery related to these contacts (and all others) with New York related to the DAF Parties' First Amended Counterclaim.

The DAF Parties' discovery requests [Dkt. 205-1] are related to the issues presented in the DAF Parties' First Amended Counterclaim - which seeks damages and a declaratory judgment that the 2021 and 2023 Agreements (to which HCLOF is a party) are the product of collusion and a violation of HCLOF's duty of good faith under the Members Agreement. That duty is an express contractual obligation which has been properly pleaded and is directly related to HCLOF's alleged conduct in New York.[9] That agreement allows Plaintiffs to wrongfully use funds to which they have improperly retained to underwrite their litigation expenses and attorneys' fees incurred in this case — as well as funding further anticipated litigation *in New York*.[10] Clearly, HCLOF's

---

[4] *See supra* notes 2-3 herein.
[5] SAM Dec., Exhibits 1-8.
[6] SAM Dec., Exhibits 1-3, 5-8, 12, 14-15, 21-41
[7] *See e.g.*, SAM Dec. Exhibits 1, 6-7, 9-11.
[8] *See* Amended Counterclaim [Dkt. 155] at ¶¶ 16, 34-40.
[9] *See* Amended Counterclaim [Dkt. 155] at ¶¶ 80-81.
[10] *Id*.

participation in the 2023 Agreement gives rise to and relates to the claims asserted against it in this case.

Another case cited by HCLOF, *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 2023 WL 2138600 (S.D.N.Y. Feb. 21, 2023), is also factually distinguishable. In *Reed*, the banking misconduct was related to conduct of an Afghan bank.[11] Here, however, the DAF Parties seek discovery relevant to any banking activity in New York related to the claims at issue.[12]

HCLOF's argument that the DAF Parties must be a party to the 2023 Agreement is also wrong and misses the point.[13] HCLOF could reasonably anticipate litigation in this forum, which is directly relevant to the due process analysis in a personal jurisdiction inquiry and the multi-prong standard for *forum non conveniens*. Also, while the DAF Parties are not a party to the 2023 Agreement, they are an aggrieved party and CLOH is entitled to use this 2023 Agreement and its

---

[11] *Reed* also involved a guarantee and account agreement both of which had forum selection clauses designating forum and venue outside of New York. Not so here. The misconduct at issue in this case involves a 2023 Agreement that has a New York venue and forum selection clause. Under these circumstances, both specific jurisdiction and fairness protocol warrant jurisdiction in New York. *See Italiana Coke, S.r.l. v. United Coal Co., LLC*, 2008 WL 4443852, at *3 (S.D.N.Y. Sept. 30, 2008) (establishing personal jurisdiction "[b]y negotiating a contract in New York, and by invoking New York laws"); *see also*, *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F.Supp.3d 399, 409 (S.D.N.Y. 2019) (similar for *forum non conveniens*).

[12] *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012) ("repeated use of [a] correspondent account shows not only transaction of business, but an articulable nexus or substantial relationship"). Here, the DAF Parties are entitled to undertake discovery concerning, for example, what bank accounts, if any, are used to hold the "reserves," and which accounts have been used to undertake partial distributions of money that was never the Plaintiffs money to withhold.

[13] *Fashion Television LLC v. APT Sat. Co*., 2018 WL 4300526, at *3 (S.D.N.Y. Sept. 10, 2018) does not support HCLOF's assertion that a choice of forum provision in a contract cannot be used by a non-party to show the reasonableness of jurisdiction. *Id*. (finding that forum selection clause did not apply because cause of action had nothing to do with contract). Here, the 2023 Agreement is directly at issue. *See* Amended Counterclaim at ¶¶80-81. Further, the other cases relied on by HCLOF address whether personal jurisdiction existed rather than the right to jurisdictional discovery supported by the allegations and facts presented here by the DAF Parties.

jurisdictional provisions to support the exercise of personal jurisdiction in this case.[14] The cases cited at page 7 pf HCLOF's Response are inapposite.[15]

## B. Facts Suggesting HCLOF Contacts with New York are Likely Significant

The 2023 Agreement was negotiated in New York by HCLOF's New York counsel, involving email communications, drafting and potential meetings between lawyers and principals. However, the DAF Parties are currently prevented from undertaking reasonable discovery on a variety of fact-intensive topics regarding: (i) personal meetings in New York involving HCLOF's Directors or other representatives; (ii) Highland Capital's lawyers in New York representing the interests of HCLOF in the negotiations at issue; and (iii) the location of bank accounts from where distributions may have been sent or received. Discovery is appropriate concerning each of these matters.

HCLOF cites several irrelevant authorities to suggest that its counsel's negotiations in New York are inconsequential:

- *DirecTV Latin Am., LLC v. Park 610, LLC* does not apply because the Court held that the contacts at issue were not made for the purpose of conducting business in New York - nor was there any indication that the defendant was purposefully availing himself of the "privileges of and benefits of New York's laws." 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010).

---

[14] *See Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't 2003)("[I]t is well settled that in order to have standing to challenge a contract, a non-party to the contract must either suffer direct harm flowing from the contract or be a third-party beneficiary thereof."); *Meisels v. Meisels*, No. 19-CV-4767(EK)(RML), 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021) (non-party plaintiff could challenge validity of contract where the defendants attempted to use the contract as a defense to conversion claim); *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986) (non-party plaintiff could seek declaratory judgment regarding the meaning of a contract "to ascertain the scope of its own residual rights" where the plaintiff held "rights that [we]re vitally affected by the scope of [the] contract[]").

[15] Again, HCLOF mischaracterizes *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022). First, there clearly are fact issues regarding the issue of jurisdiction here that are not present in *Daou*. *See supra* note 2. Additionally, in *Daou*, the court found that use of a correspondent New York bank account would *normally be sufficient to establish personal jurisdiction*, but in that case there was no requisite direct effect in the United States for commercial activity because of the exception under the Foreign Sovereign Immunities Act (FSIA) to provide jurisdiction over contract claims against a central bank where the bank was regulated under the FSIA. *Id*. at 136. That distinction does not apply here.

jurisdictional provisions to support the exercise of personal jurisdiction in this case.[14] The cases cited at page 7 pf HCLOF's Response are inapposite.[15]

## B. Facts Suggesting HCLOF Contacts with New York are Likely Significant

The 2023 Agreement was negotiated in New York by HCLOF's New York counsel, involving email communications, drafting and potential meetings between lawyers and principals. However, the DAF Parties are currently prevented from undertaking reasonable discovery on a variety of fact-intensive topics regarding: (i) personal meetings in New York involving HCLOF's Directors or other representatives; (ii) Highland Capital's lawyers in New York representing the interests of HCLOF in the negotiations at issue; and (iii) the location of bank accounts from where distributions may have been sent or received. Discovery is appropriate concerning each of these matters.

HCLOF cites several irrelevant authorities to suggest that its counsel's negotiations in New York are inconsequential:

- *DirecTV Latin Am., LLC v. Park 610, LLC* does not apply because the Court held that the contacts at issue were not made for the purpose of conducting business in New York - nor was there any indication that the defendant was purposefully availing himself of the "privileges of and benefits of New York's laws." 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010).

---

[14] *See Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C.*, 304 A.D.2d 86, 90 (1st Dep't 2003)("[I]t is well settled that in order to have standing to challenge a contract, a non-party to the contract must either suffer direct harm flowing from the contract or be a third-party beneficiary thereof."); *Meisels v. Meisels*, No. 19-CV-4767(EK)(RML), 2021 WL 6125591, at *2 (E.D.N.Y. Dec. 28, 2021) (non-party plaintiff could challenge validity of contract where the defendants attempted to use the contract as a defense to conversion claim); *Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2d Cir. 1986) (non-party plaintiff could seek declaratory judgment regarding the meaning of a contract "to ascertain the scope of its own residual rights" where the plaintiff held "rights that [we]re vitally affected by the scope of [the] contract[]").

[15] Again, HCLOF mischaracterizes *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022). First, there clearly are fact issues regarding the issue of jurisdiction here that are not present in *Daou*. *See supra* note 2. Additionally, in *Daou*, the court found that use of a correspondent New York bank account would *normally be sufficient to establish personal jurisdiction*, but in that case there was no requisite direct effect in the United States for commercial activity because of the exception under the Foreign Sovereign Immunities Act (FSIA) to provide jurisdiction over contract claims against a central bank where the bank was regulated under the FSIA. *Id*. at 136. That distinction does not apply here.

- *Navaera Scis., LLC v. Acuity Forensic Inc.* is inapposite because the plaintiff attempted to establish jurisdiction by pointing to a single meeting in New York and a New York choice of law provision. 667 F. Supp. 2d 369, 377 (S.D.N.Y. 2009). That was insufficient as the contract at issue was "negotiated, executed, and performed . . . in Canada." *Id.*

"New York contacts underlying a contract" establish personal jurisdiction if "the parties' activities in New York and the asserted claim are substantially related." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102-03 (2d Cir. 2006) (instructing court to consider parties' conduct in negotiating, consummating, and performing the contract as "transacting business" in New York). Here, the DAF Parties are entitled to discovery related to the 2021 and 2023 Agreements, including negotiations, meetings, communications, emails, use of New York bank accounts for wire transfers or any other contacts related to those agreements. *See id*.

C. *Forum Non Conveniens* **and Due Process Warrant Discovery**

HCLOF's contacts with New York also are directly related to due process considerations under the specific personal jurisdiction test, which requires that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 170 (quoting *Int'l Shoe*, 326 U.S. at 316). HCLOF's contacts also are central to the *forum non conveniens* analysis.[16] The DAF Parties' discovery is tailored to the issues relevant to jurisdictional discovery, which is important to rebut an argument that HCLOF has raised that it "has no contacts to New York" despite its active engagement in negotiating the 2021 and 2023 Agreements.

---

[16] HCLOF ignores the authority regarding *forum non conveniens* entirely. *See also Italiana Coke, S.r.l. v. United Coal Co., LLC*, 2008 WL 4443852, at *3 (S.D.N.Y. Sept. 30, 2008) ("By negotiating a contract in New York, and by invoking New York laws and an arbitral forum in New York . . . [the] parties [have] availed themselves of the benefits of [New York] . . .[t]he meeting itself represents a minimum contact with New York). *See Accent Delight Int'l Ltd. v. Sotheby's*, 394 F.Supp.3d 399, 409 (S.D.N.Y. 2019) ("Ultimately, an action should be dismissed on grounds of *forum non conveniens* only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable").

D. **This Court's Order and the Guernsey Proceedings**

HCLOF's argues that the Court's Stay Order (Minute Order [Dkt. 178]) was a decision on the merits which stayed discovery in the Guernsey Proceeding. This misstates the Court's ruling. Rather, the Stay Order anticipated the potential need for future discovery when the Court made its ruling with the *caveat* that future discovery may be warranted. [Dkt. 205-4 at 28:3-18].

HCLOF claimed during the August 3, 2023 hearing that "other information channels" are available for discovery.[17] After the August 3, 2023 hearing, the DAF Parties sought an agreement for further discovery in Guernsey, which HCLOF immediately declined. [Dkt. 205-6] Moreover, the "85-page affidavit," which HCLOF represented included jurisdictional information [Dkt. 205-4 at 6:6-16], was void of any such jurisdictional information whatsoever—a fact HCLOF does not deny in its Opposition.[18] In any event, the DAF Parties requested discovery in Guernsey, and they were rebuffed. *See* Motion [Dkt. 205-5 and 6].

In conclusion, the Court should compel the documents and response to interrogatories, and admissions [Dkt. 205-1] and allow a Rule 30(b)(6) deposition on the compelled discovery.

Respectfully submitted,

By: /s/Sawnie A. McEntire
Sawnie A. McEntire
*Admitted Pro Hac Vice*
Texas Bar No.: 13590100
Fed ID #3476
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201

---

[17] *See* August 3, 2023 Hearing TR. [Dkt. 205-4] at 20:23-25; 21:1-7 ("I disagree completely with counsel's statements that Guernsey doesn't permit disclosure. That's just not true. My understanding is that disclosure is permitted, but it's subject to the agreement of the parties... If they want more discovery, they can.").

[18] HCLOF's representation that the DAF Parties seek "exactly the same discovery" (Response [Dkt. 210] at p. 8) from Plaintiffs as from HCLOF is blatantly false. While some discovery was produced by Plaintiffs which suggests far more involvement than HCLOF has suggested—other complete categories of discovery are uniquely available from HCLOF—for example, its meetings in New York and its use of New York bank accounts. *See* Discovery Requests at [Dkt. 205-1].

Telephone: (214) 237-4300
Fax: (214) 237-4340
E-mail: smcentire@pmmlaw.com

Roger L. McCleary
*Admitted Pro Hac Vice*
Texas Bar No.: 133937000
Fed. ID #205
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah
E-mail: jtewiah@glennagre.com
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212.358.5600

**Counsel for Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2023, a true and correct copy of the foregoing was electronically filed and served using the Court's CM/ECF system to all parties.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

3133195.1

9