UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>*Defendants*. | No. 1:21-cv-11059 (GHW)<br><br>(Oral Argument Requested) |

**THE DAF PARTIES' REPLY MEMORANDUM OF LAW TO PLAINTIFFS' RESPONSE TO MOTION TO COMPEL DISCOVERY**

Defendants/Counter-Plaintiffs, Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF") and CLO HoldCo, Ltd. ("CLOH") (collectively, the "DAF Parties"), file this Reply Memorandum of Law to Plaintiffs'[1] Memorandum of Law in Opposition to the DAF Parties' Motion to Compel [Dkt. 212] ("Plaintiffs' Response"),[2] and respectfully would show:

**INTRODUCTION**

The Plaintiffs' Response seeks to cloud the issues. Notwithstanding their "blame game," and the confusion apparently intended by their Response, empirical facts remain undisputed that undermine the Plaintiffs' discovery positions:

---

[1] Plaintiffs U.S. Bank National Association, in its capacity as trustee ("US Bank"), Acis Capital Management, L.P. ("ACM"), and Joshua N. Terry ("Terry") (collectively "Plaintiffs").
[2] The DAF Parties' Motion to Compel Discovery from Plaintiffs [Dkt. 206] is referred to as the "Motion."

[1]

- The Plaintiffs are withholding documents arguing a lack of relevance (Response at 1); but it is clear that these documents are highly relevant;

- The Plaintiffs are also withholding relevant documents by imposing a self-serving time period of June 1, 2020 through March 30, 2023 as the outside parameters for their document responses (Motion at 3) even though their misappropriation of "reserves" continues to this day, and even though they have made factual allegations pre-dating June 1, 2020;

- The Plaintiffs' defined time parameters are employed to prevent discovery concerning their allegations that the DAF Parties' prior claims were not meritorious, when they were; curiously, Plaintiffs also suggest that the DAF Parties can rely on discovery relating to expenses and trades involving Acis CLO 6, but should not be allowed to pursue similar discovery concerning CLO 4 and 5 because such discovery is purportedly irrelevant (Motion at 14); this argument makes no sense;

- There is no dispute Plaintiffs did not produce the 2023 Agreement until May 15, 2023 when they attached it to a motion [Dkt. 108-3]. The DAF Parties' Amended Counterclaim sets forth new factual allegations and new causes of action based upon the 2023 Agreement that the DAF Parties had not seen prior to the filing of their Original Counterclaim on March 30, 2023 [Dkt. 77]; but the Plaintiffs argue that the DAF Parties should not be allowed to conduct discovery concerning conduct enabled by this Agreement which had been kept secret until May of 2023;

- The DAF Parties initiated timely, new discovery relating to the new claims pursuant to the Stipulation and Amended Scheduling Order, which required service of this discovery on or before July 21, 2023. [Dkt 156]

- Plaintiffs' resistance to this new discovery did not become apparent until August 21, 2023, when they served their boilerplate objections; [Dkt. 192 at p. 4] The DAF Parties then moved expeditiously to meet, confer and resolve the ensuing discovery disputes on August 24, 2023, but this effort was unsuccessful;

- The Plaintiffs argued they should not be required to answer interrogatories because they were allegedly untimely (Motion at 4), but the interrogatories involve contention interrogatories relating to the new claims specifically contemplated by the Stipulation and Amended Scheduling Order dated July 12, 2023, and were timely served by July 21, 2023 [Dkt. 161];

- The DAF Parties did not sit on their rights and moved expeditiously with their pre-motion discovery dispute letter when it became apparent that relevant discovery was being withheld and the Plaintiffs would not withdraw their objections [Dkt. 192].

The Plaintiffs' Response also includes a repeated refrain that they should not be forced to re-review 80,000 plus pages of documents. Although it is not clear whether this is a combined total among all Plaintiffs, the DAF Parties nevertheless are not requesting they do so. Rather, the DAF Parties are requesting that the Plaintiffs' objections be withdrawn if, in fact, Plaintiffs have produced all responsive, non-privileged documents to a specific document request. This is what the rules require.

Lastly, and notably, Plaintiffs make no effort in their Response to describe, much less prove, any burden associated with producing the specific documents at issue in the DAF Parties' Motion.

### A. The Stipulation and ASO

Plaintiffs are seeking to impose hidden conditions to the Stipulation (dated July 10, 2023) and the Amended Scheduling Order (July 12, 2023). The Stipulation states that discovery may be conducted "concerning any new matters, allegations or claims raised by any parties' amended pleading served after April 14, 2023" [Dkt. 156]. But the Stipulation contains no criteria concerning "knowledge" of facts that may become relevant to "new matters, allegations or claims." The Plaintiffs are overreaching in their efforts to weaponize the Stipulation to prevent legitimate discovery. An example of this overreaching is the reference to the Kirschner Litigation (Motion at 14). Plaintiffs contend that those requests do not concern "new matters" simply "because the DAF Parties had known about it." (Response at 10-11). But the relevance of the Kirschner Litigation is alleged for the first time in the Amended Counterclaim.

Other than Count I, which deals with declaratory relief, ***all of the causes of action in the DAF Parties' Amended Counterclaim are new***. These new claims involve different elements and seek different remedies. These new claims also involve specific provisions of the 2023 Agreement

which were *unknown* when the original Counterclaim was initially filed. To suggest that the DAF Parties' original discovery should have been more robust concerning the details of an agreement that was kept secret is silly.[3] The DAF Parties had no ability to fully appreciate the degree and details of HCLOF's involvement and the Plaintiffs' interferences until it could actually see the 2023 Agreement, which recites the details of how the "reserves" were being allocated or used to pay expenses, how "reserves" would be managed after all litigation ceased, and how HCLOF and the Plaintiffs agreed to covenants alien to the relevance of any pending litigation. Plaintiffs' interpretation of the Stipulation and Amended Scheduling Order would also eviscerate, for example, *any* discovery regarding Plaintiffs' affirmative defenses to the DAF Parties' Amended Counterclaim. This is illogical, one-sided, and patently unfair.

The DAF Parties' agreement to the original discovery schedule pre-dated the substantial evolution of this lawsuit and the claims currently asserted. (*See* Motion at 3-4; *compare* Amended Counterclaim [Dkt. 155] at 41-48, *with*, Original Counterclaim [Dkt. 77] at 27-31) Moreover, in the March 15, 2023 hearing, the DAF Parties clearly stated that they had "not even seen the [2023 Agreement] yet. It's only been referred to in a letter." [Dkt 88-1, at 18:12-14]. Although Plaintiffs advance spurious allegation of "delay," Plaintiffs did not produce the 2023 Agreement until two months later. Interestingly, Plaintiffs' counsel also acknowledged that they were "not in a position . . . to know whether [the Amended Counterclaims] would require additional discovery," and "[t]hat might be difficult within the timeframe we've requested." [Dkt. 88-1 at 21:3-22:6].

B. *Improper Objections*

Plaintiffs argue that their objections are sufficiently "specific" (Response, p. 16). But even a casual review of these objections reveals that all such objections are repetitive, generic,

---

[3] Amended Counterclaim at ¶¶ 80-81.

boilerplate and asserted without any effort to discriminate. *See Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 773694, *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he responses to requests 1-2 stating that the requests are 'overly broad and unduly burdensome' [without explanation of how the requests are overly broad or unduly burdensome] is meaningless boilerplate."). Plaintiffs also make no attempt to explain their objections on a request-by-request basis. Although they claim that they have included a withholding statement (Response at 16), they clearly did not comply with the spirit of the federal rules. As the 2015 Advisory Committee Notes state:

> An objection may state that a request is overboard, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. *When there is such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.*

*Id.* at *1 (quoting Fed. R. Civ. P. 34 Advisory Committee Notes) (emphasis added). Here, if the general objections are considered, Plaintiffs' objections track the first part of the Advisory Committee's note, but the second part—"the statement of what has been withheld" is absent from Plaintiff's objections or responses. (*See, e.g.*, Motion, Ex. 9, p. 3).

C. *Improper Time Period Limitations*

Plaintiffs' unilateral decision to impose limitations on the requested timeframe is also buried in their "General Objections," which is improper in the Southern District. *Fischer*, 2017 WL 773694 at *3 ("[I]ncorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection."). The *Fischer* opinion also noted that "[g]eneral objections should rarely be used after December 1, 2015 unless each such objection applies to each document request." (*id.*) This is not the case here because Plaintiffs

admitted they produced documents dating back to February 2019—over a year before their designated timeframe. (Response at 16). Thus, Plaintiffs apply their so-called time parameters in an arbitrary and chaotic fashion. Curiously, Plaintiffs also allege that the DAF Parties engaged in vexatious and meritless claims, which is denied, but Plaintiffs now want to prevent any discovery concerning the merits of the DAF Parties' prior claims. The DAF Parties are entitled to this requested discovery to demonstrate that their claims in the earlier lawsuits were not "vexatious" and did have merit. These are issues Plaintiffs injected into these proceedings.

Plaintiffs' statement that they "do not seek declarations that the DAF Parties claims are factually meritless, but rather that they are barred for lack of standing and by the 2021 Settlement Agreement" (Response, p. 17) is misleading due to their representations to this Court throughout these proceedings. During one of the parties' conferences, counsel for the DAF Parties specifically proposed that Plaintiffs stipulate that their "vexatiousness" allegations did not depend on the factual merits of the 2019 or 2020 Lawsuits. Plaintiffs refused.

The DAF Parties conferred with Plaintiffs about the discovery matters at issue, and the parties had numerous conferences as discovery issues unfolded. It makes no sense for Plaintiffs to now contend that the DAF Parties waived their right to challenge Plaintiffs' responses to the DAF Parties' first requests for production because they purportedly did not discuss Plaintiffs' objections during an isolated specific meet and confer – when they did so at later dates before Plaintiffs had produced any documents.[4] *See* Response, p. 3.

### D. *Plaintiffs' "Duplication" Arguments Fail*

Plaintiffs argue that the DAF Parties should rely on Nexpoint's discovery requests to fully protect its own interests. But Nexpoint's discovery is not duplicative. As also stated in the Motion,

---

[4] By contrast, the DAF Parties' document production was already substantially complete at that time.

at 10, the DAF Parties would not have standing to argue, negotiate or compel a third party's discovery, thus the DAF Parties must serve their own discovery requests. Plaintiffs also cannot legitimately claim that producing information regarding ACIS 6 frees them of the obligation to produce the similar documentation concerning ACIS 4 or 5, which Plaintiff's pleadings make an issue in this case.

Plaintiffs' remaining arguments regarding duplication miss the mark. First, Exhibit 25 to the Response purports to correlate various requests to establish purported "duplication." However, a fair review of this chart reflects that Plaintiffs are taking liberties in their descriptions and are essentially trying to force a square peg in a round hole in their effort to establish "duplication." (*See, e.g.*, Ex. 25 to Response, Nos. 10, 15, 27). A review of Exhibit 25 reflects a pattern— Plaintiffs use a broad request to argue that a specific request is duplicative, yet they fail to identify what produced documents are purportedly responsive to the more specific request.

Furthermore, simply because some documents may be responsive to more than one request (*e.g.*, the Electronic Reports and Trustee Reports), does not mean that the requests are duplicative – or that this is a legitimate basis to refuse to produce documents in response to *any* request. Second, as set forth in the DAF Parties' Motion, many of the requests "are 'duplicative' only to the extent Plaintiffs intend to rely on previously produced documents" in support of Plaintiffs' responses to the new discovery. (*See* Motion at 9). But the DAF Parties do not have a crystal ball that would enable them to make that connection without a proper written response. This applies to virtually all of the items described in Plaintiffs' Exhibit 25 to their Response.

### E. *Plaintiffs' Mischaracterizations*

Plaintiffs represent that "the DAF Parties admitted for the first time at the September 22 pre-motion conference that only 'ten' of their forty-five 2nd RFPs were 'legitimately …

attributable to new claims," when the transcript actually shows that the DAF Parties were able to "identify *at least ten, if not more*" requests. Response, p. 7, Ex. 15 at 9:22-10:1 (emphasis added). This is not true based upon a fair reading of the transcript.

Finally, Plaintiffs argue that US Bank's August 18, 2023 letter confirms that no post-June 2021 Electronic Reports exist, but that clearly is not true. Nowhere in US Bank's August 18, 2023 letter does it say that, and, in fact, Electronic Reports are explicitly identified in post-June 2021 Trustee Reports. *See* Response, Ex. 11, p. 2 (identifying Electronic Reports from November 2021).

### F. Prior Identification of Deficiencies

Plaintiffs take issue with the fact that the DAF Parties supposedly "fail[ed] to identify any deficiency in [Plaintiffs'] production" (Response, p. 9), but this ignores not only that the DAF Parties *have* identified deficiencies, which are the subject of prior meet and confers, the pre-motion discovery letter, and the Motion, but also that the DAF Parties have no way of knowing what documents are in Plaintiffs' possession, especially in light of the boilerplate objections Plaintiffs assert.[5]

### G. Relevance of the Reserves-Related Documents

Plaintiffs' contention that they "have already produced ample information concerning the [so-called] reserved funds and other non-reserve expenses" misses the mark. (Response at 16). The DAF Parties are seeking to compel *current* information, not just historical information, and

---

[5] In several other instances, Plaintiffs claim that they have produced all responsive documents or that responsive documents do not exist. If this is true, then Plaintiffs could have simply said as much. Had Plaintiffs clearly communicated the purported lack of (additional) responsive documents rather than hiding behind invalid objections, which they still have not withdrawn despite the professed apparent absence of documents, many of the current disputes could have been significantly narrowed.

Plaintiffs admitted they only produced this information through March, 2023. (Motion at 7).[6] The DAF Parties are entitled to current information because such information is highly relevant.

By admitting that they have produced "ample information" concerning the co-called reserves, Plaintiffs effectively concede relevance. In any event, under any analysis, the DAF Parties are entitled to measure the entirety of the wasted "reserves" and not be subject to an arbitrary cut-off date of February 2023. Plaintiffs ignore the DAF Parties' claims that their use of these funds constitutes a misappropriation, waste, and damages. This is directly relevant to the DAF Partis' counterclaims. (*See* Motion at 6). Moreover, this information is relevant to state of mind and HCLOF's breach of the duty of good faith by allowing this ongoing waste. The relevance of this information is not reasonably challenged.

### H. Interrogatories

Aside from their "timeliness" objection, Plaintiffs' justification for their refusal to respond to the DAF Parties' interrogatories depends entirely on their argument regarding the availability of "more practical methods" for obtaining the information requested in the DAF Parties' interrogatories. But this argument relies on LR 33.3(b), which applies solely to LR 33.3(a) interrogatories. There is no similar limitation on contention interrogatories under LR 33.3(c), and there is no reasonable argument that the DAF Parties' interrogatories are anything but contention interrogatories, because each and every one seeks "support" for particular allegations made by Plaintiffs. The *Fishon* case, which Plaintiffs cite, addresses interrogatories that were "not drafted to ask for an 'opinion or a contention that relates to a fact,' but rather are addressed to finding the facts in the first place." 2021 WL 4124661 at *1 (citation omitted). The DAF Parties'

---

[6] Plaintiffs now claim that they have produced information concerning the Reserves "through April 2023," but did not actually identify the documents supposedly containing that information. (Response at 16). Moreover, this contention conflicts with the documents that the DAF Parties were able to locate. (*See* Motion at 7, n. 22).

interrogatories are not seeking to discover new facts, only the facts that Plaintiffs rely on to support certain contentions as opposed to others.

Regarding Interrogatory 6, Plaintiffs have read it backwards: it does not seek information regarding the DAF Parties' damages, but rather Plaintiffs' *defenses* to the DAF Parties' damage claims, which have not even been formally asserted yet since Plaintiffs have not answered the DAF Parties' Amended Counterclaim. Like Plaintiffs' other arguments, barring this interrogatory based on the Stipulation and ASO is nonsensical.

## CONCLUSION

In sum, Plaintiffs have failed to carry their burden. They have asserted boilerplate objections. They seek to impose unreasonable time parameters on their responses. They have distorted the discovery record, as well as the intent of the Stipulation dated July 10, 2023. They have failed to establish any legitimate basis to resist discovery concerning the use and allocation of reserves after February 2023, as well as discovery of information relating to trading activity and expenses at issue in the 2019 and 2020 lawsuits. The Plaintiffs' arguments concerning the contention interrogatories are also flawed. Plaintiffs are clearly refusing to provide discovery that is relevant to both liability and damages based on specious objections. For these reasons, Plaintiffs' objections should be overruled, and Plaintiffs should be ordered to produce all non-privileged responsive documents and otherwise answer Interrogatories.

Respectfully submitted,

By: */s/ Sawnie A. McEntire*
Sawnie A. McEntire
*Admitted Pro Hac Vice*
Texas Bar No.: 13590100
Fed ID #3476
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201
Telephone: (214) 237-4300
Fax: (214) 237-4340
E-mail: smcentire@pmmlaw.com

Roger L. McCleary
*Admitted Pro Hac Vice*
Texas Bar No.: 133937000
Fed. ID #205
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah
E-mail: jtewiah@glennagre.com
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212.358.5600

**Counsel for Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2023, a true and correct copy of the foregoing was electronically filed and served using the Court's CM/ECF system to all parties.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

3133207.1