UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, and ACIS CAPITAL MANAGEMENT, L.P.,

*Plaintiffs*,

v.

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., NEXPOINT DIVERSIFIED REAL ESTATE TRUST, and NHF TRS, LLC,

*Defendants*.

Case No. 1:21-cv-11059-GHW

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFFS AND BRIGADE'S SUPPLEMENTAL OPENING BRIEF IN SUPPORT OF THEIR MOTIONS TO DISMISS NEXPOINT'S COUNTERCLAIMS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Jonathan E. Pickhardt
Blair A. Adams
Brendan Carroll
Misha Boutilier
Jeffrey Arnier
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

SEWARD & KISSEL LLP
Mark D. Kotwick
Thomas Ross Hooper
Julie J. Hong
One Battery Park Plaza
New York, New York 10004
(212) 574-1200
*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

LATHAM & WATKINS LLP
Jason C. Hegt
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
*Attorneys for Counter-Defendant Brigade Capital Management, LP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.     RULE 23.1 BARS NEXPOINT'S DERIVATIVE CLAIMS ........................................... 3

II.    RULE 23.1 BARS NHF TRS'S CLAIMS ....................................................................... 4

CONCLUSION ............................................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**                        **Page**

*In re Bank of N.Y. Deriv. Litig.*,
  320 F.3d 291 (2d Cir. 2003)..............................................................................................4, 5

*In re Citigroup Inc. S'holder Deriv. Litig.*,
  2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009)........................................................................4

*Ensign Corp., S.A. v. Interlogic Trace, Inc.*,
  1990 WL 213085 (S.D.N.Y. Dec. 19, 1990) ...........................................................................5

*In re Facebook, Inc., Initial Pub. Offering Deriv. Litig.*,
  797 F.3d 148 (2d Cir. 2015)........................................................................................2, 3, 4, 5

*In re Harbinger Cap. Partners Funds Inv. Litig.*,
  2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013) .........................................................................3

*N. S. Fin. Corp. v. Al-Turki*,
  1996 WL 50526 (S.D.N.Y. Feb. 8, 1996), *aff'd*, 100 F.3d 1046 (2d Cir. 1996) .....................3

*Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*,
  2015 WL 2359358 (S.D.N.Y. May 18, 2015) .........................................................................3

*R.R. Donnelley & Sons Co. v. Marino*,
  505 F. Supp. 3d 194 (W.D.N.Y. 2020) ....................................................................................3

*Saltzman v. Birrell*,
  78 F. Supp. 778 (S.D.N.Y. 1948) ............................................................................................3

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*,
  934 F. Supp. 2d 516 (E.D.N.Y. 2013) .....................................................................................2

*SDF Funding LLC v. Fry*,
  2022 WL 1511594 (Del. Ch. May 13, 2022)...........................................................................4

*Smith v. Stevens*,
  957 F. Supp. 2d 466 (S.D.N.Y. 2013)......................................................................................4

## Other Authorities

7C Fed. Prac. & Proc. Civ. § 1828 (3d ed.) ......................................................................................5

Fed. Rule of Civ. Proc. 9(b)..............................................................................................................4

Fed. Rule of Civ. Proc. 23.1...........................................................................................1, 2, 3, 4, 5

Fed. Rule of Civ. Proc. 23.1(b)(1) ....................................................................................................5

Plaintiffs and Brigade[1] submit this supplemental opening brief pursuant to the Stipulation and Order (Dkt. 223) in support of their motions to dismiss NexPoint's counterclaims (the "Motions," Dkts. 107, 120) to argue that NexPoint and NHF TRS, LLC ("NHF TRS," and with NexPoint, the "NexPoint Parties") lack derivative standing under Federal Rule of Civil Procedure 23.1.

## PRELIMINARY STATEMENT

In addition to the other standing deficiencies addressed in the Motions, the NexPoint Parties lack derivative standing because they fail the contemporaneous and continuous ownership requirement under Rule 23.1.  The NexPoint Parties allege that the ACM Parties and Brigade engaged in misconduct by charging inflated expenses and entering into imprudent trades between February 2019 and the end of 2020.  As the NexPoint Parties now admit, NexPoint transferred its Acis 6 notes to its subsidiary, NHF TRS, in March 2021, months before NexPoint first filed suit in May 2021—divesting it of derivative standing under the continuous ownership rule.  Meanwhile, NHF TRS acquired the Acis 6 notes for the first time in March 2021, months after the last allegations of misconduct by the ACM Parties and Brigade in late 2020.  NHF TRS therefore lack derivative standing under the contemporaneous ownership rule.  Unable to allege contemporaneous and continuous ownership of the Acis 6 notes, the NexPoint Parties lack derivative standing to bring their claims.

## BACKGROUND

NexPoint acquired subordinated notes (the "Notes") issued by Acis 6 in 2016.  Dkt. 220-1 ¶ 46.  NexPoint then transferred the Notes to its wholly-owned subsidiary, NHF TRS, on March

---

[1] Capitalized terms not defined herein have the meaning assigned to them in the Motions.

1

31, 2021.  *Id*.  Thus, NexPoint does not currently own those Notes and did not own them at the time of filing the May 2021 NexPoint Lawsuit or its March 2023 initial counterclaims.  *Id* ¶ 46.1.

The NexPoint Parties' Amended Counterclaims allege that the ACM Parties and Brigade began to charge excessive expenses and engage in improper trades starting on February 15, 2019.  Dkt. 220-1 ¶ 75.  Specifically, the NexPoint Parties allege that the ACM Parties and Brigade have charged improper "expenses … since February 15, 2019," *id*. ¶ 75, purchased bad assets in 2019, *id*. ¶ 173, and sold assets they should have retained "in late 2020," *id*. ¶¶ 173, 183.  The NexPoint Parties allege that these failures caused the net asset value of Acis 6 to decline between February 15, 2019 and spring 2020.  *Id*. ¶ 83.  NexPoint sent the Trustee a letter "regarding th[is] alleged malfeasance" in August 2019.  *Id*. ¶ 244.  However, NHF TRS did not hold the Notes during this period and only acquired ownership of the Notes on March 31, 2021.  *Id* ¶ 46.1.  The NexPoint Parties do not allege any misconduct by Plaintiffs or Brigade since that date.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 23.1 requires that the plaintiff in a derivative action demonstrate possession of an ownership interest in the company it seeks to represent that is contemporaneous with the conduct for which it seeks recovery."  *In re Facebook, Inc., Initial Pub. Offering Deriv. Litig.*, 797 F.3d 148, 157 (2d Cir. 2015).  The rule both prevents a plaintiff from "challeng[ing] wrongdoing that predated the time the plaintiff became a shareholder" and bars former shareholders from suing derivatively.  *Id*. at 156-57.  Because Rule 23.1 is "procedural," *Facebook*, 797 F.3d at 159, it applies to derivative claims that are litigated in federal court, including where, as here, the Court has federal question jurisdiction.  *See* Dkt. 15 ¶ 21 (federal question); *SC Note Acquis., LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 528 n.4 (E.D.N.Y. 2013) (Rule 23.1 "appl[ies] … where jurisdiction is based on a federal question").  To plead standing under Rule 23.1, "[P]laintiffs [must] allege facts adequately suggesting that they

owned [] stock throughout the course of the activities that constitute the primary basis of the complaint," *Facebook*, 797 F.3d at 159, and at the time of filing claims, *see N. S. Fin. Corp. v. Al-Turki*, 1996 WL 50526, at *8 (S.D.N.Y. Feb. 8, 1996), *aff'd*, 100 F.3d 1046 (2d Cir. 1996).

## ARGUMENT

In addition to the reasons outlined in the Motions (*see* Dkt. 107 at 25-39; Dkt. 120 at 15), the NexPoint Parties lack derivative standing because Rule 23.1 bars their claims.

### I.   RULE 23.1 BARS NEXPOINT'S DERIVATIVE CLAIMS

Rule 23.1 bars NexPoint from suing derivatively because, as NexPoint admits, it does not own the Notes now and did not own them when it filed its counterclaims. *See* Dkt. 220-1 ¶ 46.1. Accordingly, the Court should dismiss NexPoint's derivative claims. *See*, *e.g.*, *In re Harbinger Cap. Partners Funds Inv. Litig.*, 2013 WL 7121186, at *5-6 (S.D.N.Y. Dec. 16, 2013) (applying Rule 23.1 and dismissing derivative claims on behalf of fund because plaintiffs did not invest in fund); *Al-Turki*, 1996 WL 50526, at *8 (Rule 23.1 bars "plaintiffs [from] su[ing] derivatively on behalf of a corporation in which they are no longer shareholders").

Further, NexPoint cannot assert derivative claims on behalf of its subsidiary and the current holder of the Notes, NHF TRS. Parent companies may not "proactively pierce the corporate veil" by "assert[ing] the legal rights belonging to [their] subsidiary," *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 204-05 (W.D.N.Y. 2020), because "the mere fact that a company owns … another does not give it an independent basis to bring suit on the other's behalf." *Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*, 2015 WL 2359358, at *3 (S.D.N.Y. May 18, 2015). Such a suit would only be possible if NHF TRS was controlled by wrongdoers who refused to sue Acis 6, which is not the case here because NexPoint wholly owns NHF TRS. Dkt. 220-1 ¶ 9.1; *Cf.*, *e.g.*, *Saltzman v. Birrell,* 78 F. Supp. 778, 783 (S.D.N.Y. 1948) (company's stockholder could sue on behalf of subsidiary because company and subsidiary were "controlled by … defendants").

## II. RULE 23.1 BARS NHF TRS'S CLAIMS

Rule 23.1 also bars NHF TRS's claims because the NexPoint Parties' allegations of wrongdoing predates NHF TRS's acquisition of the Notes. *See Facebook*, 797 F.3d at 157. The NexPoint Parties allege that the ACM Parties and Brigade engaged in wrongdoing in 2019 and 2020 by charging excessive expenses and making improper trades. *Supra* at 2; Dkt. 220-1 ¶¶ 75, 83, 173, 183. Because this alleged conduct all preceded NHF TRS's March 2021 acquisition of the Notes, *id*. ¶ 46, NHF TRS cannot assert the NexPoint Parties' claims derivatively. *See Facebook*, 797 F.3d at 159-160 (dismissing derivative claims concerning IPO because plaintiffs did not become stockholders "until well after the IPO"); *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 299 (2d Cir. 2003) (similar). It does not matter that NHF TRS received the Notes from its parent company; the rule equally applies in these circumstances. *See SDF Funding LLC v. Fry*, 2022 WL 1511594, at *6-10 (Del. Ch. May 13, 2022) (contemporaneous ownership rule applied even though plaintiff, a subsidiary, received its shares from another entity under common control).

The NexPoint Parties' vague continuing wrong allegation that the ACM Parties and Brigade's allegedly wrongful conduct continued "to the present" (Dkt. 220-1 ¶ 75) cannot evade dismissal. This conclusory allegation should be disregarded because it does not specify any purported wrongful conduct that occurred after NHF TRS's March 31, 2021 acquisition of the Notes, and certainly not with the particularity Rule 9(b) requires. *See, e.g., Smith v. Stevens*, 957 F. Supp. 2d 466, 469-70 (S.D.N.Y. 2013) (rejecting attempts to "defin[e] a 'continuing wrong' using … vague and conclusory pleading"); *In re Bank of N.Y.*, 320 F.3d at 299 ("merely tacking on [] words" such as "beyond" or "thereafter" to allegations concerning the timing of wrongdoing "is insufficient to confer standing"); *In re Citigroup Inc. S'holder Deriv. Litig.*, 2009 WL 2610746, at *9-11 (S.D.N.Y. Aug. 25, 2009) (dismissing derivative claims under Rule 23.1 because plaintiffs did not plead the underlying fraud allegations with particularity under Rule 9(b)).

But even assuming that some alleged wrongs continued after March 31, 2021, Rule 23.1 still bars NHF TRS's claims because it is evident from the Amended Counterclaims that the "core of the allegedly wrongful conduct transpired" before that date. *See In re Bank of N.Y.*, 320 F.3d at 298. The NexPoint Parties allege that the ACM Parties and Brigade began charging improper expenses and buying bad loans in early 2019 and proceeded to sell good loans in late 2020—all before NHF TRS became a noteholder. *Supra* at 2; Dkt. 220-1 ¶¶ 75, 83, 173, 183. As in *Bank of N.Y.*, where plaintiff acquired stock after the conduct its claims were based on occurred, here "the crux of the Complaint" and "the events which constitute [its] primary basis … were completed long before" NHF TRS acquired the Notes. *See* 320 F.3d at 299; *see also Facebook*, 797 F.3d at 160 (dismissing claims because "the core activity … predated [plaintiff's] acquisition of Facebook stock"). Further, because the NexPoint Parties knew of the alleged wrongful conduct since August 2019, before the transfer to NHF TRS, Dkt. 220-1 ¶ 244, NHF TRS cannot sue on a continuing wrongdoing theory. *See, e.g., Ensign Corp., S.A. v. Interlogic Trace, Inc.*, 1990 WL 213085, at *3 (S.D.N.Y. Dec. 19, 1990) ("Since [plaintiff] had notice of the challenged transaction prior to the time it purchased stock …, it may not invoke the continuing wrong exception.").

NHF TRS also cannot rely on Rule 23.1(b)(1)'s exception for shares acquired "by operation of law" because it has not alleged any nonconsensual transfer of the Notes. *See* 7C Fed. Prac. & Proc. Civ. § 1828 (3d ed.) (this exception requires a "nonconsensual transaction"). To the contrary, the NexPoint Parties admit that "NexPoint transferred the [] Note[s] … to NHF [TRS]." Dkt. 220-1 ¶ 46.1. Such voluntary contractual transfers do not meet this exception. *See Facebook*, 797 F.3d at 159 ("plaintiffs became stockholders not by operation of law but by contract").

## Conclusion

For the reasons stated above, the NexPoint Parties' counterclaims should be dismissed with prejudice and Plaintiffs' motion for judgment on the pleadings against NexPoint should be granted.

Dated: New York, New York
     November 3, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:    */s/ Blair Adams*
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Misha Boutilier
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

**SEWARD & KISSEL LLP**

By:    */s/ Mark Kotwick*
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200

*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

**LATHAM & WATKINS LLP**

By:    */s/ Jason Hegt*
  Jason C. Hegt
  Alexis Kellert Godfrey
  1271 Avenue of the Americas
  New York, New York 10020
  (212) 906-1200

*Attorneys for Counter-Defendant Brigade Capital Management, LP*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on November 3, 2023, he caused a true copy of the foregoing document to be served via CM/ECF to all counsel of record.

*/s/ Misha Boutilier*
Misha Boutilier
