UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, AND ACIS CAPITAL MANAGEMENT, L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., AND NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br> *Defendants*. | No. 1:21-cv-11059 (GHW) <br><br> (Oral Argument Requested) |

**DEFENDANTS/COUNTER-PLAINTIFF CHARITABLE DAF FUND, L.P. AND CLO HOLDCO, LTD.'S JOINT RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' AND HIGHLAND CLO FUNDING, LTD.'S SUPPLEMENTAL OPENING BRIEFS <u>IN SUPPORT OF THEIR MOTIONS TO DISMISS</u>**

Defendants/Counter-Plaintiffs, Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. ("DAF") and CLO HoldCo, Ltd. ("CLOH") (collectively "DAF Parties"), file this Joint Response ("Response") to Plaintiffs' and Highland CLO Funding, Ltd.'s ("HCLOF") Supplemental Opening Briefs in Support of their Motions to Dismiss ("Supplemental Briefs") (Dkts. 237, 241), and respectfully show:

<u>OVERVIEW OF RESPONSE</u>

This Response demonstrates that the Guernsey Judgment[1] is not entitled to the preclusive effect that Plaintiffs and HCLOF claim. Plaintiffs and HCLOF take excessive liberties in how they characterize the Guernsey Judgment. The chart in HCLOF's Supplemental Brief (regarding the

---
[1] The "Guernsey Judgment" shall refer herein to the Judgment, dated December 1, 2023 (Dkt. 229-1) in the Royal Court of Guernsey ("Guernsey Court"). "Guernsey Proceeding" shall generally refer herein to the matter styled *CLO Holdco, Ltd. v. Highland CLO Funding, Ltd.,* Civil No 2479, in The Royal Court of Guernsey (Ordinary Division), filed March 6, 2023.

1

issues allegedly litigated in Guernsey) is also misleading. This Response, which addresses principles of international comity, collateral estoppel, and *res judicata*, shows why each doctrine advanced in the Supplemental Opening Briefs is inapplicable.

The Guernsey Proceeding was a narrow, statutory proceeding limited to the issue whether HCLOF acted in an "unfairly prejudicial" manner toward CLOH under guidelines under a specific statute – the *Guernsey Companies Law*.[2] The Plaintiffs were not parties to the Guernsey Proceeding, and neither was DAF.[3] There are multiple claims in these current proceedings that were **never** before the Guernsey Court.

The Guernsey Court was concerned with the application of a unique standard to a statutory framework which governed CLOH's claim, and this required a determination that *"the affairs of [HCLOF] are being or have been conducted in a manner that is unfairly prejudicial to the interests of the members generally or of some part of the members (including at least [itself])."*[4] When applying this standard, the Guernsey Court focused on whether CLOH was entitled to an in-kind (*in specie*) partition of its equity interest or shares. Not only are the legal standard and issues different here, but the portions of the Guernsey Judgment upon which Plaintiffs and HCLOF rely were not integral to the decision in Guernsey. Also, from the outset, the Guernsey Court made dispositive determinations that it lacked jurisdiction to order the requested relief.[5]

The Guernsey Court specifically determined that CLOH failed to join an indispensable

---

[2] Guernsey Judgment (Dkt. 229-1) at p. 3 ("CLOH brings this Application against the company, HCLOF, under ss 349 (1)(a) and 350 of the Companies (Guernsey) Law 2008….").
[3] *See* the Application, filed March 6, 2023 in the Guernsey Proceedings (Dkt. 155-1) ("Guernsey Application") at pp. 1-2; *See generally*, Guernsey Judgment (Dkt. 229-1).
[4] Guernsey Judgment (Dkt. 229-1) at p. 4-5 (ital. in original) (citing ss 349(1)(a) and 350 of the Companies (Guernsey) Law 2008).
[5] Guernsey Judgment (Dkt. 229-1) at p. 4-5, ¶5(iv) (adopted by the Guernsey Court at pp. 40-42, ¶¶ 209-210, 213, 220(vii)).

party,[6] and also noted that CLOH "was emphatic that it was <u>not</u> alleging bad faith."[7] Taken together or separately, these holdings render any of the Guernsey Judgment's "fact findings" which are now urged in the Plaintiffs' and HCLOF's Supplemental Opening Briefs—as mere surplusage and non-essential to the Guernsey Court's Judgment. Therefore, collateral estoppel and *res judicata* do not apply. In short, the Guernsey Judgment is nothing more than a unique foreign statutory proceeding that leaves open the disputed issues that must be resolved in this Court.

## ARGUMENT AND AUTHORITIES

### I.  Background Regarding Guernsey Judgment

### A.  No Jurisdiction

The Guernsey Court found that the "unfair prejudice" claim was not legally viable because there was no jurisdiction because: (i) the claim contravened the Guernsey Companies Law where (2) CLOH failed to join a necessary party (*i.e.*, majority shareholder):

> iv.   that the relief sought by CLOH is not relief which the court has jurisdiction to grant (again, in any event) because it would involve either (a) contravening provisions of Guernsey company law, specifically, s 314 of the Companies (Guernsey) Law 2008 ("**the Companies Law**"), or (b) overriding contractual provisions of the Members' Agreement or HCLOF's Articles of Association, and neither of these courses is possible in the absence of the other members of HCLOF – and in particular the majority shareholder – who are not convened as parties to this action, and, indeed who cannot be so convened, for reasons which will emerge….[8]

Indeed, the Guernsey Court took great care in its Judgment to limit the scope of the Guernsey Court's opinion to include only the narrow statutory framework applicable to Sections 349 and

---

[6] Guernsey Judgment (Dkt. 229-1) at p. 40-41, ¶¶ 213.
[7] Guernsey Judgment (Dkt. 229-1) at p. 21, ¶¶ 96-97 (emphasis in the original).
[8] *See* Guernsey Judgment (Dkt. 229-1) at pp. 4-5, ¶5(iv) (adopted by the Guernsey Court at Judgment pp. 40-42, ¶¶ 209-210, 213, 220, *see also*, p. 41, ¶ 213 ("reasons which will emerge" as the inability to join HCM without permission to do so by the bankruptcy court).

3

350 of the Guernsey Companies Law. [9]

Because the Guernsey Court determined that it lacked jurisdiction to evaluate the non-derivative claims under the Guernsey Companies Law, only a small portion of the legal findings (and *none* of the "factual findings" upon which Plaintiffs and HCLOF rely) were necessary to the Guernsey Judgment. Furthermore, many of the so-called "factual findings" upon which the Plaintiffs and HCLOF rely were not actually or fairly litigated.

Here, the DAF Parties' First Amended Counterclaim ("Counterclaim") (Dkt. 155) makes clear that it involves neither a shareholder dispute nor is it a derivative claim. Rather, the Counterclaim involves a breach of contract claim against HCLOF concerning the 2017 HCLOF Members Agreement and Plaintiffs' tortious interference with that contract.[10] The DAF Parties' claim for damages in this case is distinct from the remedy at issue in the Guernsey Proceeding. No derivative capacity is required to assert the claims in this Court.[11] There also is no need to join the majority shareholder in our current proceedings, which was <u>fatal</u> to the Guernsey Proceeding.[12]

Here, the DAF Parties also seek a declaratory judgment, which could not be brought in Guernsey because all necessary parties were not present. The Guernsey Court also did not undertake any determination whether the Plaintiffs could withhold "reserves" under U.S. law under the terms of the Indentures or the Portfolio Management Agreements ("PMAs") for the

---

[9] Guernsey Judgment at p. 17-18 at ¶¶ 85-86 ("By way of background, the power of the [Guernsey Court] to grant relief in a case of the 'unfairly prejudicial conduct' of a company's affairs under ss 349 and 350 of the Companies Law ***is entirely statutory***.") (emphasis added).
[10] *See* Counterclaim (Dkt. 155) at ¶ 25-40, 54-65, 84-93.
[11] Declaration of Jeremy Le Tissier (Dkt.199-1) ¶ 11.
[12] *See* Guernsey Judgment (Dkt. 229-1) at ¶ 5(iv) (adopted by the Guernsey Court at Judgment pp. 40-42, ¶¶ 209-210, 213, 220); *See also* Guernsey Judgment at ¶ 213 ("HCM is not a party to the Application, so that it cannot be bound by any order which might be made by the Court under which… HCM cannot be convened as a party to this Application without the permission of the Texas Court, because doing so would fall foul of the gatekeeper provisions in the HCM Bankruptcy proceedings.").

CLOs in question.[13] There also was no express adjudication of bad faith, collusion, or malice. So, under any fair analysis, the nature of the claims in our current proceeding is fundamentally different.

### B. Bad Faith Not Fully and Fairly Litigated in the Guernsey Proceeding

The Guernsey Court noted that CLOH was not alleging any "bad faith" in the Guernsey Proceeding[14] which, of course, the DAF Parties allege in this case as a basis for affirmative relief and in connection with the requested declarations that the 2021 and 2023 Agreements are not enforceable.[15] The Guernsey Court explained that the absence of a "bad faith" allegation was dispositive:

> 115. Thus, the Lt-Bailiff has held that it is not open to CLOH to allege breach of the "act in good faith" clause whilst simultaneously *disavowing any intention to allege bad faith*, but it is also the case that that breach is the only actual breach which is alleged of the express contractual terms which govern the parties' relations *inter se*. *That first ground is therefore dismissed as any possible basis for CLOH's claim to relief.* She has also rejected Advocate Horsbrugh-Porter's alternative proposition that, in the circumstances of this case, there is scope for invoking equitable considerations as a constraint on HCLOF's exercise of its legal powers in support of an assertion of unfairly prejudicial conduct. *Having done so, the Lt-Bailiff agrees with Advocate Dunster that that is really the end of the case.* (Emphasis added)[16]

Therefore, in light of this holding in the Guernsey Judgment, the Guernsey Court's further "findings" (including, without limitation, regarding the 2021 Settlement Agreement, the 2023 Settlement Agreement or Section 20.5 of the Members Agreement (duty of good faith)) were non-

---

[13] Paragraph 84 of the Guernsey Judgment notes that that CLOH limited any arguments of unfair prejudice, which did not include bad faith allegations. Thus, the bad faith allegations presented in this case were not considered by the Guernsey Court. *See* Guernsey Judgment at p. 17, ¶ 84.
[14] *See* Guernsey Judgment (Dkt. 229-1) at p. 21, ¶¶ 96-97.
[15] *See* Counterclaim (Dkt. 155) at ¶¶ 25, 68, 75, and 80-81.
[16] Guernsey Judgment at p. 25, ¶ 115 (adopting argument at ¶ 101 of the Guernsey Judgment).

5

essential to the Guernsey Judgment and cannot serve to preclude the current claims.

To be clear, the Plaintiff's Supplemental Brief takes excessive liberties in how it addresses the "bad faith" issue. Notwithstanding Plaintiffs' allegations that these claims were "abandoned,"[17] As an initial matter, Plaintiffs incorrectly assert that "[CLOH] initially alleged that HCLOF acted in bad faith" in Paul Murphy's Affidavit. *See* Plaintiffs' Supplemental Brief at p. 2. This is plainly not true—no where in Paul Murphy's affidavit does he specifically allege "bad faith."[18] Plaintiffs nevertheless argue that the Guernsey Court addressed the issue of bad faith and made fact findings accordingly.[19] But, fairly read, the Guernsey Judgment does not make express fact findings of "bad faith" because it notes that this claim was not pursued. As such, Plaintiffs' argument that declaratory relief as to the 2021 and 2023 Settlement Agreements are precluded because of adverse findings relating to bad faith misrepresents the Guernsey Court's treatment of this issue.[20] The Guernsey Court never made a specific adjudication that there was no bad faith.[21]

Similarly, in its Supplemental Brief, HCLOF admits that because CLOH disavowed "'any intention to allege bad faith' by HCLOF, the Guernsey court held that CLOH's claims fail as a matter of Guernsey law."[22] As such, both Plaintiffs' Supplemental Brief and HCLOF's Supplemental Brief effectively concede that CLOH's bad faith claim was not fully and fairly litigated. This failure leads to the inevitable conclusion that any further "fact findings" were immaterial to the Guernsey Judgment, which erases the argument that the Guernsey Judgment has a preclusive effect.

---

[17] Plaintiffs' Supplemental Brief (Dkt. 241) at p. 6. It defies logic how the claims could be "abandoned" if CLOH stated in the Guernsey proceeding that it was not alleging "bad faith."
[18] *See, generally*, Paul Murphy's First Affidavit (Dkt. 242-1). Moreover, due to elements of collateral estoppel, this affidavit should not be considered by this court. *See, infra* at FN 38.
[19] Plaintiffs' Supplemental Brief (Dkt. 241) at p. 3.
[20] Guernsey Judgment at p. 25, ¶ 115 ("CLOH…disavowing any intention to allege bad faith…").
[21] *See* Gurnsey Judgment at ¶ 115.
[22] HCLOF Supplemental Brief (Dkt. 237) at p. 4 (quoting the Guernsey Judgment at ¶ 115).

C.   **The Counterclaims are Different**

The DAF Parties sued HCLOF and counterclaimed against Plaintiffs for breach of contract, tortious interference with contract, and declaratory relief. The DAF Parties are not suing derivatively nor is derivative standing required.[23] Among other claims, the Counterclaims (Dkt. 155) sets forth the following specific allegations:

- Paragraphs 25, 80-81: The Counterclaim alleges "bad faith" - which was **not** actually litigated in the Guernsey Proceeding.

- Paragraphs 41-49: The Counterclaim identifies specific allegations concerning misrepresentations concerning HCLOF's intent to recover all wrongfully held reserves while secretly negotiating the 2023 Agreement to not do so. The issue of misrepresentations – or dishonesty – was **not** actually litigated in the Guernsey Proceeding.

- Paragraphs 89-90: The Counterclaim allegations are clear that the so-called "settlement" agreements were crafted in secrecy, in collusion, and they were born from malice and that they are unenforceable under pertinent New York law. The specific allegations of collusion, malice, and unenforceability were **not** actually litigated in the Guernsey Proceeding.

- Paragraphs 66-77, 84-93: Plaintiffs tortiously interfered with the Members Agreement resulting in damages to the DAF Parties and unjust enrichment of Plaintiffs – these claims were **not** actually alleged or litigated in the Guernsey Proceeding.

The declaration of CLOH's foreign law expert, Mr. Jeremy Le Tissier (Dkt. 199-1), was previously submitted to the Court, and is now incorporated herein for all purposes.[24] This declaration provides details establishing the legal basis for the claims against HCLOF under Guernsey law, and the specific allegations in the Counterclaim that plausibly allege facts as a basis for relief. These claims are patently different from the narrow statutory claim described in the Guernsey Judgment.[25]

---

[23] Declaration of Jeremy Le Tissier (Dkt.199-1) ¶ 11.
[24] Declaration of Jeremy Le Tissier (Dkt.199-1).
[25] Declaration of Jeremy Le Tissier (Dkt.199-1) at ¶¶ 10, 11 20-23 (a damage claim for breach of a contract under the Members Agreement is not a claim under the Companies Law in Guernsey); *See* Declaration of Alexander Andrew Marshall Horsbrugh-Porter (Doc.199-11) at ¶5.

## II. International Comity Does Not Warrant Dismissal

The doctrine of international comity involves a demanding standard, which is not satisfied in our case. *See Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178–79 (S.D.N.Y. 1995) ("It is well-established that United States courts are not obliged to recognize judgments rendered by a foreign state, but may choose to give [preclusive] effect to foreign judgments on the basis of comity."); *accord Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (The mere existence of parallel foreign proceedings does not negate the district courts' "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them.")). "Exceptional circumstances must exist in order to warrant dismissal in deference to a foreign action." *Taub v. Marchesi Di Barolo S.p.A.*, 2009 WL 4910590, at *5 (E.D.N.Y. Dec. 10, 2009).

When determining if a case is properly dismissed based upon international comity, this Court should consider:

> [T]he similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternative forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Id.* (declining to dismiss declaratory judgment action because, among other things, case had "clear ties to United States and to New York in particular"); *see also Elcan Indus., Inc. v. Cuccolini, S.R.L.,* 2014 WL 1173343, at *7 (S.D.N.Y. Mar. 21, 2014) (declining to dismiss on international comity grounds where defendant failed to identify exceptional circumstances and action had strong connections to New York and United States).

Here, deference to the Guernsey Court based upon international comity is inappropriate for several reasons. The Guernsey Judgment held that that the Guernsey Court did not have

8

jurisdiction to grant the requested relief because to do so would be against the Guernsey Companies Law and because there was an absence of indispensable parties.[26] The Guernsey Court also noted it was not educated by the parties regarding US law or the potential claims thereunder.[27] The Guernsey Proceedings also involved different parties, with different claims (*e.g.*, bad faith, collusion, malice and declaratory relief were not even part of the Guernsey Proceedings), with no adequate remedy available under Guernsey Companies Law.[28]

Here, the Counterclaims have strong connections to New York. The damages and declaratory relief (unavailable in Guernsey) are subject to a determination that the 2021 and 2023 Settlement Agreements are unenforceable due to ***collusion, bad faith***, ***unclean hands, or contrary to New York public policy.***[29] None of these issues were before the Guernsey Court.[30]

Furthermore, the 2023 Agreement is governed by New York law and a forum selection clause mandating New York as a venue. Clearly, Plaintiffs were not (and could not have been) parties to the narrow statutory claim in Guernsey, and the Guernsey Court could not (and did not) address the enforceability of the agreements at issue to the extent Plaintiffs in this case would be necessary parties. *See Ryan v. Volpone Stamp Co., Inc*, 107 F. Supp. 2d 369, 386-391 (S.D.N.Y. 2000) (company that was agent for trademark licensor was necessary party, required to be joined in trademark infringement action by licensor against licensee; agent and licensor both signed agreement, and agent was mentioned in agreement as both obligor and beneficiary).

---

[26] Guernsey Judgment (Dkt. 229-1) at p. 4-5, ¶5(iv) (adopted by the Guernsey Court at pp. 40-42, ¶¶ 209-210, 213, 220(vii)).
[27] *See id.* at p. 35, ¶ 174.
[28] These facts undermine Plaintiffs' argument that the Judgment is "persuasive authority," which, in any event, certainly does not warrant dismissal of the DAF Parties' claims.
[29] Counterclaim (Dkt. 155) at ¶¶ 68, 70, 75. A settlement agreement can be set aside if the circumstances dictate that enforcement would be improper, which includes situations where the settlement was the product of collusion. *See Downes v. O'Connell*, 103 F. Supp. 2d 579, 582 (E.D.N.Y. 2000) (explaining that a settlement can be set aside "upon a showing of good cause, such as fraud, collusion, mistake, accident, or lack of authority"); *Hallock v. State*, 474 N.E.2d 1178, 1180 (N.Y. 1984).
[30] *See, generally,* Guernsey Judgment (Dkt. 229-1).

The cases cited by HCLOF are readily distinguishable. *See FT Maritime Servs. Ltd*. v. *Lambda Shipholding, Ltd*., 533 F. Supp.3d. 149, 155 (S.D.N.Y. 2021) (only allowing comity when "the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy"); *State St. Glob Advisors Tr. Co. v. Visbal*, 2023 WL 4053170 at *10 (S.D.N.Y. June 16, 2023) (J. Woods) (finding that foreign court had jurisdiction to decide all claims only such that there was no intrusion on domestic public policy, and declining to apply preclusive effect of collateral estoppel due to "crowning" consideration of fairness).

### B. **Collateral Estoppel and *Res Judicata* Do Not Apply**

HCLOF's Supplemental Brief improperly conflates the doctrines of collateral estoppel and *res judicata*. Each is distinct and requires a different burden on the party seeking preclusion. *In re HS 45 John LLC*, 585 B.R. 64, 77-78 (S.D.N.Y. 2018) (res judicata); *BBS Norwalk One, Inc. v. Raccolta, Inc*., 117 F.3d 674 (2d Cir. 1997) (collateral estoppel). But, neither doctrine applies here.

As this Court previously observed, preclusion doctrines do not apply to judgments issued by foreign courts **unless** comity requirements are first met. *See Visbal*, 2023 WL 4053170 at *10 (J. Woods); *Gordon and Breach Science Pub. S.A. v. American Institute of Physics*, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995) ("It is well-established that United States courts are not *obliged* to recognize judgments rendered by a foreign state, but may *choose* to give res judicata effect to foreign judgments on the basis of comity." (emphasis in original)). Here, comity requirements are not met because the Guernsey Proceedings involved different parties, different claims, and different requested relief. In addition, the Guernsey Court stated it lacked jurisdiction to award the requested relief.[31] Meanwhile, the strong connections to New York and New York public policy

---

[31] Guernsey Judgment (Dkt. 229-1) at p. 4-5, ¶5(iv) (adopted by the Guernsey Court at pp. 40-42, ¶¶ 209-210, 213, 220(vii)).

preclude application of the comity doctrine to bar litigation of the DAF Parties' claims. Therefore, collateral estoppel and *res judicata* cannot apply.

### 1. Collateral Estoppel

Collateral estoppel prevents relitigating an issue when: (1) the identical issue was raised in a previous proceeding; (2) the issue was **actually litigated and decided** in the previous proceeding; (3) **the resolution of the issue was necessary to support a valid and final judgment on the merits (which was never argued)**; and (4) the party had a full and fair opportunity to litigate the issue. *Visbal*, 2023 WL 4053170 at *11-12 (J. Woods) (emphasis added) (declining to apply collateral estoppel preclusive effect due to failure to show identical issues were decided by foreign court in matters essential to the judgment).

Here, the elements of collateral estoppel are not satisfied because the issues litigated in Guernsey were not identical to the New York claims and the various "fact findings" were not necessary to support the Guernsey Court's holding. At the outset, the Guernsey Court emphasized in the Judgment that: (1) it lacked jurisdiction to grant any relief under Guernsey Companies Law; (2) could not litigate the issues because the majority shareholder could not be joined and was an indispensable party;[32] and (3) the Guernsey Court noted that the failure to allege "bad faith" was "really the end of the case."[33] As a result, collateral estoppel does not (and cannot) apply. *See Gordon and Breach Science Pub.*, 905 F. Supp. at 179 (declining to give preclusive effect to Swiss and German actions, in part, due to absence of identity of parties and civil law procedural differences); *Alesayi Bev. Corp. v. Canada Dry Corp.*, 947 F. Supp 658, 666 (S.D.N.Y. 1996) (declining to apply collateral estoppel where the standards governing the foreign jurisdiction claim

---

[32] Guernsey Judgment (Dkt. 229-1) at p. 4-5, ¶5(iv) (adopted by the Guernsey Court at pp. 40-42, ¶¶ 209-210, 213, 220(vii)).
[33] Guernsey Judgment (Dkt. 229-1) at p. 4-5 at p. 5 ¶ (ii).

11

were not identical to the domestic claims).

The fourth element of collateral estoppel also is not met. The argument that Guernsey is a "sister common law court" affording the DAF Parties the opportunity to fully and fairly litigate their claims ignores the fact that the Guernsey Proceeding centered on a narrow issue of a statutory remedy under Guernsey Companies law. The claims, parties, and standards are unique to Guernsey and are far more restricted than the claims asserted here under New York law—involving, in part, invalidation of the 2021 and 2023 Agreements, and when the 2023 Agreement includes a New York choice of law and forum selection provision.[34] Discovery in Guernsey also was severely limited.[35] *See Fabian v. Pappalardo*, 395 F Supp. 3d 257, 266 (S.D.N.Y. 2019) (Woods, J.) (declining to apply collateral estoppel where no evidence was presented in prior proceeding on issue, and thus identical issues were not actually litigated and decided).

The cases cited in Plaintiffs' Supplemental Brief are inapposite. *Soc'y of Lloyd's v. Edelman*, 2005 WL 639412 at *4 (S.D.N.Y. Mar. 21, 2005) (prior foreign proceeding involved nearly identical claims and procedures, which gave litigants proper notice and opportunity to litigate their claims); *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 629-30 (2d Cir. 1976) (argument that foreign judgment was erroneous did not preclude application of collateral estoppel for determination of New York statute in foreign proceeding); *Narumanchi v. Am. Home Assur. Co.*, 317 F. App'x 56, 59 (2d Cir. 2009) (plaintiff could not relitigate a claim under different theory of recovery where issue of whether motor vehicle accident caused plaintiff's stroke had already been decided against him); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (collateral estoppel applied to foreign judgment because agreement at issue included a forum selection clause

---

[34] *See* 2023 Agreement (Dkt. 155-4) at § 12(d).
[35] *See* Declaration of Alexander Andrew Marshall Horsbrugh-Porter (Doc.199-11) at ¶¶7-9 (limited claims subject to discovery in Guernsey).

requiring litigation in foreign forum); *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 618 (Bankr. S.D.N.Y. 2018) (finding that foreign proceeding over bankruptcy where foreign entity was incorporated provided orderly and equitable distribution of assets).

The Guernsey Court also did not make any specific fact findings of bad faith or malice. The Guernsey Judgment makes clear, at Paragraphs 95-96, 115, and 220, that bad faith was not factually argued by CLOH and there was no conclusion in the Judgment regarding malice.

Plaintiffs' Opening Supplemental Brief (at p. 6) expressly argues that any claims of bad faith were "abandoned" by CLOH in the unfair prejudice proceeding. *See also* HCLOF Supplemental Brief at p. 7. Plaintiffs cases suggesting that "abandoned" claims are still barred by collateral estoppel (at p. 7, n. 4) are distinguishable because the cases involved claims which were actually litigated and then abandoned – here, the Guernsey Court made clear that was not factually the case in Guernsey.[36] As a result, collateral estoppel does not bar any determination regarding bad faith, dishonesty, or malice in this case. *See, e.g., In re Qiao Lin*, 576 B.R. 32, 40 and 42 (E.D.N.Y. 2017) (due to "'no evidence of actual malice and no aggravating factor sufficient to deny the discharge normally granted to the "honest but unfortunate" debtor,' the plaintiffs were not entitled to summary judgment based on collateral estoppel with respect to the element of malice"—court found it immaterial that other evidence in the record pointed to malice).[37]

---

[36] *See* Guernsey Judgment at ¶ 115, *see also*, Guernsey Judgment (Dkt. 229-1) at p. 21, ¶ 96 ("[CLOH] was emphatic that [it] was not alleging bad faith . . ." (emphasis in original)) and ¶ 97 (CLOH was not arguing "dishonesty, or even a conclusion of malevolent intent or alternative motive, which were the ingredients of bad faith"). As stated, Plaintiffs' cases are inapposite. *Hassan v. Marks*, 2017 WL 4233038 at *10 (E.D.N.Y. August 15, 2017 (*pro se* litigant who sued New York state courts for collusion had full opportunity to argue claims and then abandoned them after several unfavorable decisions); *Papapietro v. Clott*, 2023 WL 2185150 at *10 (E.D.N.Y. Mar. 31, 2023) (applying New York state law to find that plaintiff's prior action previously dismissed after full litigation established collateral estoppel). Additionally, because CLOH never argued bad faith, it is hard to see how the claim was "abandoned" or how collateral estoppel would apply. *See Fabian v. Pappalardo*, 395 F Supp. 3d 257, 266 (S.D.N.Y. 2019) (Woods, J.) (declining to apply collateral estoppel where no evidence was presented in prior proceeding on issue such that identical issue was not actually litigated).

[37] For this same reason, the Court should not consider the Paul Murphy affidavits recently submitted by Plaintiffs counsel under seal (Dkt. 242-2) due to their narrow focus based on the limited statutory Guernsey Companies law

The argument that a bad faith breach of the Members Agreement (and tortious interference with contract) was actually litigated is also undermined by the lack of discovery in Guernsey on collusion, dishonesty, or malice. The DAF Parties repeatedly requested discovery—both here and in Guernsey—to no avail. *See* September 13, 2023 Pre-Motion Letter Regarding Discovery (Dkt. 194) and Response and Memorandum of Law in Opposition to HCLOF's Motion to Dismiss Counterclaim (Dkt. 200) at pp. 1-2, p. 4 n. 16, 11.

Plaintiffs' suggestion that this Court should recognize the Guernsey Judgment because the DAF Parties are not United States citizens and, accordingly, are not entitled to the same level of protection as a United State citizen,[38] ignores the fact that the agreements at issue and the tortious interference claim are grounded in New York law—laws ***not*** considered by the Guernsey Court.[39] Moreover, Plaintiffs initiated this lawsuit in New York concerning the alleged validity of the 2021 Agreement, and the DAF Parties then filed a compulsory counterclaim. Plaintiffs chose the New York forum and should be required to litigate the issues they presented in New York.

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F. Supp 610 (S.D.N.Y. 1979), cited in Plaintiffs' Supplemental Brief, does not support application of collateral estoppel to a declaratory judgment claim. The case involved relitigating whether a contract existed—not whether an existing contract was enforceable. *Visbal*, 2023 WL 4053170, at *11-12, a decision from this Court cited in the Supplemental Brief, emphasized the "crowning" consideration of fairness when denying the application of collateral estoppel to claims not previously litigated. Here, Plaintiffs were not (and could not be) parties to the Guernsey Proceedings and the New York claims (enforceability of the 2021 and 2023 Agreements, and

---

standard. Instead, this Court should limit its inquiry concerning collateral estoppel only to the four-corners of the judgment at issue. *See, In re Qiao Lin*, 576 B.R. 32, 40 and 42 (E.D.N.Y. 2017).
[38] Plaintiffs' Supplemental Brief (Dkt. 241) at p. 5.
[39] *See generally*, Guernsey Judgment (does not consider or adjudicate causes of action under New York law).

14

tortious interference with contract) were not considered, much less fully and fairly litigated in Guernsey.[40]

Moreover, once the Guernsey Court decided that it lacked jurisdiction, the remainder of the judgment was dicta and not entitled to preclusive effect. The non-essential character of the court's fact findings was then reinforced by the court's determination that the absence of "bad faith" claim effectively rendered the balance of the proceedings moot. The Guernsey Court's opinion is not the equivalent of a decision which can be supported on several grounds—the court specifically stated that it lacked jurisdiction to award any relief. Under these circumstances, the remainder of the opinion was dicta and collateral estoppel should not apply. *See Ford Motor Credit Co. v. New York City Police Dept.*, 394 F. Supp 600, 617 (S.D.N.Y. 2005) (appellate court's advisory dicta not entitled to collateral estoppel preclusive effect).

### 2. Non-Mutual Collateral Estoppel

---

[40] The cases cited in the Supplemental Briefs to support application of collateral estoppel are distinguishable because they involve the ***same*** parties arguing the ***same*** claims seeking the ***same or substantially similar*** relief—facts which do not exist here. *China Shipping Container Lines Co. v. Big Port Serv. DMCC*, 2019 WL 9362547 at *7 (S.D.N.Y. Jan 15, 2019) (issue of whether the parties agreed to an arbitration clause was fully litigated in foreign jurisdiction); *FT Maritime Servs. Ltd.*, 533 F. Supp.3d. at 155 (relying on *China Shipping* to conclude the same*); Zherka v. City of N.Y.,* 459 F. App'x 10, 13 (2d Cir. 2021) (applying collateral estoppel because issue of racially-discriminatory conspiracy under identical § 1983 claim already had been litigated); *Cerny v. Rayburn*, 972 F. Supp. 2d 308 (E.D.N.Y. 2013) (citing *Zherka* and requiring identical issues and standards to be litigated and stating that issues are not identical if the legal standards governing their resolution are significantly different); *M.J. Woods, Inc. v. Conopco, Inc*. 271 F. Supp. 2d 576 (S.D.N.Y. 2003); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 257 (S.D.N.Y. 2003) (arbitration award denying copyright infringement claim collaterally estopped litigation of legal malpractice claim based on infringement advice where litigant failed to establish an attorney-client relationship in the arbitration); *DeCastro v. City of New York*, 278 F. Supp. 3d 753, 765 (S.D.N.Y. 2017) (finding that issue preclusion barred city from relitigating issue of whether instrumentality of crime exception to the Fourth Amendment's warrant requirement applied to warrantless seizure of vehicles based on suspected violations of vehicle for hire licensing provisions; issue was actually litigated and decided by entering summary judgment against city); *He v. United States*, 2023 WL 3045516, at *2 (S.D.N.Y. Apr. 21, 2023) (*pro se* plaintiff was collaterally estopped for relitigating identical claims previously brought against the United States, the States of New York and New Jersey, several state and federal judges, and a multitude of other entities based on plaintiff's claimed dissatisfaction over housing issues and seeking the relief of "arresting the criminals"); *Ranasinghe v. Kennell*, 2017 WL 384357, at *4 (S.D.N.Y. Jan. 25, 2017) (plaintiff brought duplicative, identical claim in different courts (though seeking some additional relief in the more recent action) and finding that there was no reason to decide the issue of whether defendant filed a false affidavit in the underlying action where the issue was already pending in that court); *Kowsh v. Bd. Of Elections of N.Y.C.*, 99 F.3d 78 (2d. Cir. 1996) (candidate's complaint that his name was not on election ballot could not be relitigated after state court determined that name was properly excluded from the ballot).

Plaintiffs next argue that their absence from the Guernsey Proceeding is immaterial because of the application of defensive, nonmutual collateral estoppel.[41] But that doctrine only applies when all four elements of collateral estoppel have been satisfied. As demonstrated in this Response, these elements have not been met. *Bifolck v. Phillip Morrise USA, Inc.*, 936 F.3d 74, 80 (2d Cir. 2019).

Defensive, nonmutual collateral estoppel is only allowed when the litigated issues were fully and fairly litigated against a party with the same legal theories. *Id*. at 84 (declining to apply nonmutual collateral estoppel even though the four prongs of the standard were met because it would be unfair to do so) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). When determining fairness, the court should consider whether the party had the same procedural opportunities and incentive to raise the same issues in the earlier action. *Id*. Here, the DAF Parties had no procedural opportunity to raise its claims under New York law in the Guernsey Proceeding—the Guernsey Court would have no jurisdiction to decide such claims in the limited statutory proceeding it conducted.[42] Additionally, the Plaintiffs could not be joined as parties to the proceeding.

Neither the facts of this case, nor the cases cited by Plaintiffs, support the application of nonmutual collateral estoppel. *Wilder v. Thomas*, 854 F.2d 605, 620-21 (2d Cir. 1988) (privity between initial plaintiffs and new plaintiffs was such that new plaintiffs were effectively represented in the prior proceeding based on the same claims, which would not vary based on the individual interests of any of the plaintiffs); *Brandon v. NPG Recs., Inc.*, 840 F. App'x 605, 609 (2d Cir. 2020) (plaintiff "had ample opportunity to litigate" identical claims in prior proceeding, which involved same copyright infringement); *Peralta v. 32 BJSEIU*, 2021 WL 2227922, at *4

---

[41] Plaintiffs' Supplemental Brief (Dkt. 241) at pp. 9-10.
[42] Declaration of Alexander Andrew Marshall Horsbrugh-Porter (Doc.199-11) at ¶4-5.

16

(S.D.N.Y. June 1, 2021) (barring *pro se* plaintiff's repeated relitigation of identical Title VII Civil Rights Act employment discrimination claims against new adversaries).

### 3. *Res Judicata*

HCLOF's Supplemental Brief confounds the legal authorities by citing a case applying *res judicata* and identifies them as collateral estoppel authority but does not address *res judicata*.[43] Plaintiffs also do not raise *res judicata*. Accordingly, the elements of *res judicata* are not briefed by either Plaintiffs or HCLOF. With that said, *res judicata* does not apply for several reasons.

First, *res judicata* is not available because the Guernsey Judgement was rendered by a foreign court and comity should not apply.[44] Second, there is no final judgment on the merits that can justify the application of *res judicata* because, at the outset, the Guernsey Court lacked jurisdiction to award any relief where the HCLOF majority shareholder was not (and could not) be joined as a party.[45] Third, the causes of action also are not the same. As stated, the Guernsey Proceeding involved a narrow, statutory claim that was not the same cause of action as set forth in the DAF Parties' counterclaims. As a result, *res judicata* cannot apply here because the DAF Parties' counterclaims were not (and could not have been) litigated to conclusion in the Guernsey Proceedings.

The Guernsey Court specifically explained why ***it could not grant any relief*** requested by CLOH due to the narrow Guernsey Companies Law cause of action, which required joinder of

---

[43] *See generally*, HCLOF's Supplemental Brief (Dkt. 237).
[44] *See infra,* Argument at Section II,, *Visbal*, 2023 WL 4053170 at *10 (J. Woods); *Gordon and Breach Science Pub. S.A. v. American Institute of Physics*, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995); *see also, MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 91 (2d Cir. 2023) ("A dismissal for lack of jurisdiction is by its nature a dismissal without prejudice: it "does not preclude another action on the same claims."), *Hassoun v. Searls*, 976 F.3d 121, 134 (2d Cir. 2020) ("Although a jurisdictional decision may preclude relitigation of the issues determined in ruling on the jurisdiction question, such preclusion is limited to 'the *precise issue* of jurisdiction,'"), *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367 (2d Cir. 2010) (state court dismissal without prejudice for failure to join necessary party is not decision on merits so res judicata does not bar plaintiff's subsequent federal lawsuit for disability discrimination).
[45] *See* Guernsey Judgment at ¶¶ 208-10, 213.

17

HCLOF's majority shareholder:

> 208. However, as had been pointed out to CLOH, and as Advocate Dunster submitted in his argument, there were three reasons why the court could not, or should not, order such relief.
>
> 209. The first is that HCLOF ***is not lawfully competent to undertake the share buyback*** proposed in the Exit Proposals because of the provisions of s 314 of the Companies Law, which requires a buyback of a company's shares to be authorised by an ordinary resolution of the company's membership. This would therefore require the support of HCM, as the majority shareholder, and that support had been enquired about, but is not forthcoming.
>
> 210. Second, the position is actually more acute, because under s 3.2 of the Members' Agreement, it was provided (for the protection of shareholders' rights *inter se*) that ***HCLOF cannot take any action*** at any meeting requiring the sanction of an ordinary resolution of the company without that, in fact, being authorised by an extraordinary majority, namely an affirmative vote of 75% of the members. This provision expressly refers to actions such as the "*conversion or redemption of shares*" (except in particular circumstances of default, not applicable here): see Clause 3.2.3. Once again, the required majority could not be obtained without the support of HCM as majority shareholder which is not forthcoming.
>
> 213. The two former reasons ***are also insurmountable at present, because HCM is not a party to the Application***, so that it cannot be bound by any order which might be made by the Court under which, possibly, its refusal of consent might be overridden, (without conceding that the Court could, should or would do so). This difficulty, moreover, would not be surmountable either, at present, because HCM cannot be convened as a party to this Application without the permission of the Texas Court, because doing so would fall foul of the gatekeeper provisions in the HCM Bankruptcy proceedings. [46]

HCLOF's reliance on *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995) is unpersuasive. There, the court found that *res judicata* did not apply because a building vendor and purchaser were not in privity and the parties had different incentives in their litigation of a property damage claim. Similarly, here the narrow statutory claims alleged in the Guernsey Proceedings are entirely distinct from the New York claims—indeed, the New York claims could not be brought in Guernsey where there was limited jurisdiction under the Guernsey Companies

---

[46] Guernsey Judgment at ¶¶ 208-10, 213 (emphasis added).

Law over the claims, coupled with the inability to join an indispensable party.[47] These are the exact circumstances where *res judicata* does not (and should not) apply. *See Alesayi Bev. Corp. v. Canada Dry Corp.*, 947 F. Supp 658, 665 (S.D.N.Y. 1996) (declining to apply *res judicata* under well recognized exception to rule against clams splitting where plaintiff is unable to seek relief in first action due to lack of foreign court's jurisdiction).

Because the Guernsey Court determined that it lacked jurisdiction to grant any relief on the claims, *res judicata* does not apply. As with collateral estoppel, mere *dicta* from the Guernsey Court on issues unnecessary to the judgment will not support any *res judicata* preclusive effect. *Generale Bank, New York Branch v. Wassel,* 1993 WL 106051 at *2 (S.D.N.Y. April 8, 1993).

## **PRAYER**

WHEREFORE, Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P. and CLO HoldCo, Ltd. respectfully request that the Court deny Plaintiffs' and HCLOF's Motions to Dismiss and grant all further relief to which they are justly entitled.

Respectfully submitted,

By: */s/ Sawnie A. McEntire*
Sawnie A. McEntire
*Admitted Pro Hac Vice*
Texas Bar No.: 13590100
Fed ID #3476
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Fax: (214) 237-4340
E-mail: smcentire@pmmlaw.com

Roger L. McCleary

---

[47] *See* Declaration of Alexander Andrew Marshall Horsbrugh-Porter (Doc.199-11) at ¶¶4-5.

*Admitted Pro Hac Vice*
Texas Bar No.: 133937000
Fed. ID #205
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Fax: (713) 960-7347
E-mail: rmccleary@pmmlaw.com

Lindsey R. Skibell
E-mail: rskibell@glennagre.com
Jewel K. Tewiah
E-mail: jtewiah@glennagre.com
GLENN AGRE BERGMAN & FUENTES LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: 212.358.5600

**Counsel for Defendants/Counter-Plaintiffs Charitable DAF Fund, LP a/k/a The Charitable Donor Advised Fund, L.P., and CLO HoldCo, Ltd.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2024, a true and correct copy of the foregoing was electronically filed and served using the Court's CM/ECF system to all parties.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire