UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION, in its capacity as Trustee, JOSHUA N. TERRY, and ACIS CAPITAL MANAGEMENT, L.P.,

*Plaintiffs*,

v.

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO LTD., and NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

*Defendants*.

Case No. 1:21-cv-11059-GHW

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE DAF PARTIES' COUNTERCLAIMS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jonathan E. Pickhardt
  Blair A. Adams
  Brendan Carroll
  Jeffrey Arnier
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  (212) 849-7000
  *Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

SEWARD & KISSEL LLP
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong
  One Battery Park Plaza
  New York, New York 10004
  (212) 574-1200
  *Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

**TABLE OF CONTENTS**

| | Page |
|---|---|
| ARGUMENT | 1 |
| CONCLUSION | 5 |

## TABLE OF AUTHORITIES

**Page**

### Cases

*Brandon v. NPG Records*,
   2020 WL 2086008 (S.D.N.Y. Apr. 30, 2020) *aff'd* 840 F. App'x 605 (2d Cir.
   2020) ..................................................................................................................1, 4

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982)..........................................................................................................5

*Ranasinghe v. Kennell*,
   2017 WL 384357 (S.D.N.Y. Jan. 25, 2017) ...................................................................2, 5

*Trikona Advisors Ltd. v. Chugh*,
   846 F.3d 22 (2d Cir. 2017)................................................................................................5

*Zherka v. City of N.Y.*,
459 F. App'x 10 (2d Cir. 2012) ..........................................................................................2, 5

## ARGUMENT

The DAF Parties' arguments mischaracterize the Judgment and misstate the applicable law. Correcting these factual and legal errors, application of collateral estoppel is plainly warranted.[1]

*First*, the DAF Parties incorrectly contend in their opposition ("Opp.," Dkt. 245 at 11 & n.32) that the Guernsey court found "[a]t the outset" that "it lacked jurisdiction to grant any relief under Guernsey Companies Law … because the majority shareholder [HCM] could not be joined and was an indispensable party …." *See also id.* at 15 ("[O]nce the Guernsey Court decided that it lacked jurisdiction, the remainder of the judgment was dicta and not entitled to preclusive effect."); *id.* § I(A). The cited reference to jurisdiction at paragraph 5(iv) is a summary of HCLOF's arguments in the case, not the court's ruling. Judgment ¶ 5(iv). Jurisdiction is not mentioned again until paragraph 206 of the Judgment, *after* the Guernsey court rejects CLOH's substantive claims on the merits. *Id.* ¶ 206. And the court states that jurisdiction "can be dealt with quite shortly, in view of the fact that the court has rejected CLOH's case that it is entitled to any relief." *Id.*; *see also id.* ¶ 218 ("Since the Court has already concluded that CLOH's application fails on the merits, it is not necessary for the Court to decide the above points."). Thus, the jurisdictional discussion is, for these purposes *dicta* and not a substantive ruling. And even if it were an alternative grounds for dismissal, that would still meet the necessity requirement for collateral estoppel. *See Brandon v. NPG Records*, 2020 WL 2086008, at *9 n.6 (S.D.N.Y. Apr. 30, 2020) (Woods, J.) *aff'd* 840 F. App'x 605 (2d Cir. 2020) ("The general rule in this Circuit is that if a court decides a case on two grounds, each is a good estoppel").

---

[1] Capitalized terms not defined herein have the meaning assigned to them in Plaintiffs' Motion to Dismiss (Dkt. 183) and Supplemental Brief in Support of the Motion to Dismiss ("Opening Brief," Dkt. 241). Exhibits 1 and 2 cited herein are attached to the Declaration of Misha Boutilier, dated January 10, 2024, submitted with the Opening Brief. Exhibits 3, 4, and 5 cited herein are attached to the Declaration of Blair Adams, dated January 26, 2024, submitted with this brief. Unless noted, internal citations, quotation marks, and alterations are omitted from citations.

*Second*, the DAF Parties wrongly argue (Opp. 5) that because "CLOH was not alleging any 'bad faith' in the Guernsey Proceeding," the Judgment lacks issue-preclusive effect. But the DAF Parties' reliance on a lesser showing of "unfair prejudice" and "commercially unacceptable conduct," Judgment ¶¶ 97, 192, 205, does not evade the application of collateral estoppel.

For the DAF Parties' breach of contract and tortious interference claims, CLOH's strategic decision in Guernsey to argue that HCLOF violated Clause 20.5 of the Members Agreement with conduct short of "bad faith" does not limit the preclusive effect of the Guernsey court's ruling that there was no breach. *See, e.g.*, *Ranasinghe v. Kennell*, 2017 WL 384357, at *4 (S.D.N.Y. Jan. 25, 2017) (holding that "[t]he fact that [plaintiff] repackaged his claims slightly and presented them in the guise of new legal theories is immaterial" for purposes of collateral estoppel); *Zherka v. City of N.Y.*, 459 F. App'x 10, 13 (2d Cir. 2012) ("The doctrine of collateral estoppel developed to address precisely this situation, where a party seeks to repeatedly litigate the same issue by means of more specific pleadings, by repackaging the same factual allegations under different causes of action, or by filing identical actions against different defendants."). CLOH raised Clause 20.5 in response to HCLOF's position that "there is really no room for equitable considerations to modify … the express terms of the relevant contracts where the context is a commercial relationship … between commercially sophisticated parties." Judgment ¶ 109. The Judgment clearly states that CLOH argued "that there has in fact been a breach of … Clause 20.5 of the Members' Agreement, … which obliges HCLOF to act *'in good faith'* towards the other parties such as CLOH." *Id*. ¶ 95. The Judgment rejects that breach claim because "it is not open to CLOH to allege breach of [that] clause whilst simultaneously disavowing any intention to allege bad faith …." *Id.* ¶ 115. The Judgment further states that this ruling is dispositive of CLOH's unfair prejudice claim, *id.*— meeting the necessity prong of collateral estoppel. Having litigated and lost the issue in Guernsey,

2

the DAF Parties cannot now relitigate it here by reversing their prior, strategic decision to pursue breach theories not involving bad faith.

For the DAF Parties' contract invalidation claims, the Guernsey court considered each of the factual allegations from the DAF Parties' Amended Counterclaims[2] and ruled that the alleged conduct was neither "commercially unreasonable" nor "unfairly prejudicial." For example:

- The Judgment rejects CLOH's challenge to the Settlement Agreements' transfer restrictions because "CLOH has never enjoyed any right as a shareholder to … acquire the underlying assets of HCLOF," and "[o]nce it is accepted (as is [HCLOF's] unchallenged evidence) that [those restrictions were] a provision which was sought and required by ACIS," HCLOF's agreement to the provision was a "matter of business judgment … quite well within the ambit of what would be a reasonable decision in the circumstances." *Id.* ¶¶ 148-152; *see also id.* ¶ 158 (accepting transfer restrictions was "*prima facie* well within the ambit of an objectively reasonable business judgement").

- The Judgment rejects CLOH's claim that settlement discussions should have been disclosed because "[t]here is no obligation, express or implied, … in the relevant documents in this case which would oblige the Directors of HCLOF to inform the shareholders, or a shareholder, about anything they were doing or proposing to do in their day to day management of the company's affairs, still less to consult any such shareholder or seek its approval." *Id.* ¶ 125.

- The Judgment rejects CLOH's claim that HCLOF should have sued U.S. Bank over the reserves because "[t]here is ample evidence that [HCLOF] made carefully considered, and apparently reasonable decisions, based on taking appropriate advice, as to which approach to obtaining release of funds to HCLOF from US Bank was most likely to be cost-effective." *Id.* ¶ 178; *id.* (finding 2023 Settlement Agreement "perfectly … within the range of decisions which a reasonable board of directors might take in the circumstances of this case.").

Accepting the Guernsey court's determination that HCLOF's challenged actions each constituted a commercially reasonable exercise of business judgment, then, *a fortiori*, those actions

---

[2] *Compare* Judgment ¶ 84 (summarizing allegations forming basis of "unfair prejudice" claim), *with* Dkt. 155 ¶ 7 (summarizing allegations of collusion); 25¶¶ 26, 41 (failure to disclose settlement discussions); ¶¶ 27-28, 34-39, 61 (unfair settlement terms, including transfer restriction, release carve-out, and pursuit-of-fees provision); ¶¶ 34-39 (alleging that Settlement Agreements prevented CLOH from acquiring HCLOF's Subordinated Notes); ¶¶ 60-65 (alleging that Settlement Agreements failed to advance HCLOF's legitimate business interests).

3

do not support a plausible inference of bad faith or collusion. The DAF Parties cannot overcome this by claiming that these matters were not actually litigated, because the Judgment itself states the opposite. *See* Judgment ¶ 116 ("[I]n case the latter finding is wrong, *and since the matter was fully examined and argued at the hearing* the Court has gone on to examine the various matters of allegedly unfairly prejudicial conduct ultimately relied on by CLOH … as facts capable of constituting 'unfairly prejudicial conduct' against HCLOF within the meaning of [§] 349 of the Companies Law") (emphasis added); *see also Brandon*, 2020 WL 2086008, at *9 n.6.

But even if collateral estoppel required that "bad faith" be raised in the Guernsey Proceeding, it was raised, only to be abandoned. In the proceeding, CLOH submitted affidavits from its director, Paul Murphy, asserting intentional misconduct and collusion by HCLOF. *See, e.g.*, Ex. 3 (3rd Murphy Aff.) ¶ 17 (asserting that the 2023 Settlement Agreement "intentionally sought to stifle and sabotage [CLOH's] Exit Proposals and has no intention of considering [them] in good faith"); Ex. 2 (4th Murphy Aff.) ¶ 10.5 (accusing HCLOF of "collusi[on]" in agreeing to the 2021 Settlement Agreement).[3] On the first day of trial, CLOH asserted that unfair prejudice does not "have to go to the level of dishonesty," but that "[w]e say the evidence goes to that level, yes." Ex. 5 (Day 1 Trial Tr.) 65:5-25; *see also id.* 68:15-17 ("It is said against you that you are not alleging bad faith but you have essentially said today that you are alleging bad faith."). Up to that point, CLOH sought to preserve its "bad faith" arguments, and only later, under heavy scrutiny from the Guernsey court, did CLOH walk back its position. *See id.* 85:4-13. That strategic decision does not mean that CLOH lacked a full and fair opportunity to litigate "bad faith" if it

---

[3] *See also* Ex. 1 (1st Murphy Aff.) ¶ 23 (accusing HCLOF of "intentionally prejudicing the interests of [CLOH] as minority shareholder"); Ex. 2 ¶ 10.3 (accusing HCLOF of "abuse of the Company's position of power and … abuse of process"); *Id*. ¶ 60 ("[T]he HCM Shareholders are colluding with [HCLOF] to cause detriment to [CLOH] and have improper influence and control over the actions of the Company."); Ex. 4 (CLOH Skeleton Arg.) ¶ 44 (describing 2021 and 2023 Settlement Agreements as "a contrivance to cause harm and prejudice to [CLOH]").

wanted to and is not an excuse for retrying the case on the bad faith theory it chose to abandon. *See supra* at 2 (citing *Ranasinghe* and *Zherka*).

Finally, the DAF Parties other, kitchen-sink arguments against collateral estoppel fare no better:

- The limitations on discovery in Guernsey, *see* Opp. 14—a forum that CLOH *chose*—do not prevent collateral estoppel because decisions from similar regimes are routinely granted preclusive effect, *see, e.g.*, *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 32 (2d Cir. 2017) (granting collateral estoppel effect to judgment in statutory winding up proceeding in Cayman Islands), and, in any event, CLOH completed extensive discovery in this action before the trial commenced in Guernsey, and could have addressed any evidentiary deficiency ahead of trial.

- The opinions of the DAF Parties' Guernsey law expert, *see* Opp. 7, are irrelevant to the collateral estoppel analysis. If anything, the apparent conflict between the Judgment and those opinions raises serious credibility questions.

- The exclusive New York forum selection clause in the 2023 Settlement Agreement does not prevent collateral estoppel because, as a non-party to that agreement, the DAF Parties were not bound by the forum selection clause (or, for that matter, entitled to pursue claims under the agreement), nor did the Judgment require the Guernsey court to interpret the 2023 Settlement Agreement.

- The DAF Parties' *ipse dixit* claim that "strong connections to New York and New York public policy preclude application of the comity doctrine," Opp. 10-11, cannot overcome "the strong presumption in favor of granting foreign judgments …." *Trikona Advisers Ltd.*, 846 F.3d at 35 (2d Cir. 2017). That is particularly true where, as here, the parties' dispute centers around the conduct of Guernsey company and its directors. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine … recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationship between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.").

## CONCLUSION

For the reasons stated above and in the Plaintiffs' Opening Brief, the Counterclaims should be dismissed with prejudice.

5

Dated: New York, New York
      January 26, 2024

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Blair A. Adams
   Jonathan E. Pickhardt
   Blair A. Adams
   Brendan Carroll
   Jeffrey Arnier
   51 Madison Avenue, 22nd Floor
   New York, New York 10010
   (212) 849-7000

*Attorneys for Plaintiffs Joshua N. Terry and Acis Capital Management, L.P.*

**SEWARD & KISSEL LLP**

By: /s/ Mark D. Kotwick
   Mark D. Kotwick
   Thomas Ross Hooper
   Julie J. Hong
   One Battery Park Plaza
   New York, New York 10004
   (212) 574-1200

*Attorneys for Plaintiff U.S. Bank National Association, in its capacity as Trustee*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on January 26, 2024, he caused a true copy of the foregoing document to be served via CM/ECF to all counsel of record.

*/s/ Blair A. Adams*